Ashley M. McDow (245114)
**FOLEY & LARDNER LLP**
555 S. Flower St., Suite 3300
Los Angeles, CA 90071
Telephone:     213.972.4500
Facsimile:     213.486.0065
Email:         amcdow@foley.com

[Proposed] Attorneys for Debtors and Debtors in Possession, Scoobeez, Scoobeez Global, Inc., and Scoobur, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SCOOBEEZ, *et al.*[1]<br><br>    Debtors and Debtors in Possession.<br><br>Affects:<br><br>■ All Debtors<br><br>☐ Scoobeez, ONLY<br><br>☐ Scoobeez Global, Inc., ONLY<br><br>☐ Scoober LLC, ONLY | Case Nos.: 2:19-bk-14989; 2:19-bk-14991; 2:19-bk-14997<br><br>Chapter 11<br><br>***EMERGENCY* MOTION FOR ORDER (1) AUTHORIZING THE MAINTENANCE OF EXISTING BANK ACCOUNTS AND (2) AUTHORIZING THE CONTINUED USE OF CASH MANAGEMENT SYSTEM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF SHAHAN OHANESSIAN IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:   May 1, 2019<br>Time:  3:00 p.m.<br>Place:  Courtroom 1375<br>        U.S. Bankruptcy Court<br>        255 East Temple Street<br>        Los Angeles, Ca 90012 |

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS, 20 LARGEST UNSECURED CREDITORS, AND ALL INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:**

The Debtors hereby move on an emergency basis for authorization to continue to maintain the existing bank accounts into which revenues are deposited, and for the authority to transfer funds among the existing accounts as necessary and appropriate in the ordinary course of the Debtors' business(es).

The Debtors cannot set this Motion on regular notice as they are required to close all their existing bank accounts on the petition date. The closure of these accounts, however, would result in a substantial disruption of the Debtors' revenue stream and, thus, ability to meet their obligations as they come due in the course of the Bankruptcy Cases, including, without limitation, the payment of vendors and employee wages and benefits. Accordingly, the need for the requested relief is immediate.

**I.    STATEMENT OF FACTS**

    **A.    Jurisdiction and Venue**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue of these Bankruptcy Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

    **B.    The Debtors and the Chapter 11 Filing**

2. On April 30, 2019 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "<u>Court</u>"). The Debtors continue to operate and manage their affairs as debtors and debtors-in-possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner, and no committee has been appointed in any of the Bankruptcy Cases.

3. The Debtors are a logistics and delivery company headquartered at 3463 Foothill Boulevard, Glendale, California 91214.

4. Over the past two years, an increasing number of lawsuits have been filed against the Debtors, including various labor disputes. Most recently, on or about April 22, 2019, Hillair Capital Management LLC ("Hillair") filed a three-count complaint against the Debtors, alleging breach of contract, breach of guaranty and replevin and delivery, which is currently pending as case number 19GDCV00492 in the Superior Court of the State of California, County of Los Angeles, North Central District (the "Los Angeles Case"). On April 24, 2019, Hillair filed an *Ex Parte* Application to Appoint Receiver, Issue Temporary Restraining Order and Set Order to Show Cause Why Receiver Should Not Be Confirmed and Why Preliminary Injunction Should Not Be Issued (the "Ex Parte Application") in the Los Angeles Case. The hearing on the Ex Parte Application is scheduled for May 1, 2019 at 1:30 p.m. In addition, within the past 90-120 days, a number of creditors have filed UCC-1 financing statements asserting purported liens against the Debtors' property.

5. Based on the foregoing issues, the Debtors consulted with insolvency counsel to explore and evaluate potential reorganizational strategies to preserve the Debtors' operations, including bankruptcy and potential exit strategies. After evaluating potential options, the Debtors determined that bankruptcy provided the best option for the Debtors, their clients, and creditors.

6. By and through the Bankruptcy Cases, the Debtors intend to restructure their obligations and reorganize their operations in order to maximize revenues and, thus, their ability to pay creditors of the bankruptcy estates through a plan of reorganization.

**C.    The Debtors' Cash Management System**

7. Prior to the commencement of the Bankruptcy Cases and in the ordinary course of their business operations, the Debtors held three (3) separate business checking accounts with Wells Fargo (collectively, the "Accounts"), into which funds were remitted on account of services

rendered by the Debtors. Specifically, the Debtors used the following accounts:

| Account Name and Number | Description of Account |
|---|---|
| Wells Fargo Acct. x4303 | Operating Account |
| Wells Fargo Acct. x1982 | Operating Account |
| Wells Fargo Acct. x1330 | Operating Account |

8.     The Debtors anticipate that approximately eight hundred thousand dollars and zero cents ($800,000.00) is to be deposited into one or more of the Accounts on Saturday, May 4, 2019 on account of outstanding accounts receivable. If the Debtors are required to close the Accounts prior to that date, the Debtors will not timely receive these revenues, which will have a devastating impact on the ability of the Debtors to operate given the current status of the cash flow of the Debtors' operations and the size of the deposit expected to be made. More specifically, if these revenues are not timely received, the Debtors will not be able to meet their impending payroll obligations and their critical vendor obligations, which could result in the loss of key vendors and employees and, ultimately, the inability to operate—thereby creating an accounts receivable deficit that would cause reductions in future revenues. Accordingly, the maintenance and continued use of the Accounts are vital to ensure that the Debtors' operations can continue uninterrupted.

## II.    DISCUSSION

### A.    Authorizing The Use Of The Accounts Is Warranted

The maintenance and continued use of the Accounts by the Debtors is authorized under sections 105(a) and 363 of the Bankruptcy Code. Bankruptcy Code section 363(c)(1) authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The authority granted by section 363(c)(1) extends to a debtor in possession's continued use of its customary cash management system and, thus, supports the relief requested. *See, e.g., Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to

employ a cash management system that was "usual and customary in the past" was "entirely consistent" with section 363(c)(1)) (internal quotation omitted).

Alternatively, to the extent the Court finds that the continued use of the Accounts by the Debtors is beyond the ordinary course of the Debtors' business(es), such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). Where there is a valid business justification for using property outside of the ordinary course of business, the law presumes that, "in making a business decision the directors of a corporation acted on an informed basis, in good faith[,] and in the honest belief that the action was taken in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (internal quotation marks omitted) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Indeed, bankruptcy courts routinely permit chapter 11 debtors to continue using its existing cash management system, generally treating requests for such relief as a relatively simple matter. *See In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992).

Prior to the Petition Date, the Debtors used the Accounts in the ordinary course of their business for, among other things, the receipt of revenues and the payment of vital operational expenses. As such, the maintenance and continued use of the Accounts may be authorized under Bankruptcy Code section 363(c)(1). Moreover, to the extent the Court and/or the Office of the United States Trustee would like the Debtors to periodically sweep any and all funds received in the Accounts into a designated debtor-in-possession account, the Debtors are willing to do so. However, the continued use of the Accounts is supported by a sound business justification and, thus, permissible under sections 105 and 363(b). More precisely, the maintenance and use of the

Accounts are necessary to ensure the Debtors timely receive the revenue required to continue to operate uninterrupted, preserve their viability, and ultimately reorganize through these bankruptcy proceedings.

### B. Authorization To Pay Expenses Related To The Maintenance Of The Accounts Is Warranted

In the ordinary course of the maintenance and use of the Accounts, the Debtors may incur fees and other charges (the "Bank Fees") in connection with, among other things, (a) bank services, (b) check processing and deposits, including fees associated with any overdrafts or any prepetition checks being dishonored as a result of the bankruptcy filing, and (c) transferring funds by wire or other electronic means. Accordingly, pursuant to section 105 and 363 of the Bankruptcy Code, the Debtors seek authority to continue to pay, in their sole and absolute discretion, any Bank Fees relating to the Accounts while they remain open and operative. As with the maintenance of the Accounts, the payment of the related Bank Fees constitutes the use of assets in the ordinary course of the Debtors' business(es). Additionally, the payment of the Bank Fees will ensure that the Debtors are able to effectively and efficiently utilize the funds deposited into the Accounts for the continued operation of the Debtors.

### C. Request For Immediate Relief

As discussed *supra*, the Debtors require the immediate relief sought herein in order to avoid the inevitable adverse impact closing the Accounts would have on operations. In addition to adjudicating the Motion on an emergency basis (and thus a waiver of the notice requirements under rule 6004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")), the Debtors respectfully request that the Court waive the fourteen-day stay provided for under Bankruptcy Rule 6004(h) to the extent the relief requested hereunder is granted pursuant to section 363 of the Bankruptcy Code. Absent such relief, the Debtors will be unable to maintain the Accounts for the benefit of the estates and creditors without running afoul of their responsibilities as debtors-in-possession. Accordingly, immediate relief and waiver of any stay on the order granting such relief is warranted.

### III. NOTICE

As reflected in the proof of service that was filed concurrently with the Notice of Emergency Hearing on Debtors' First Day Motions (Docket No. 6), on or about April 30, 2019, and in accordance with the directives of the Court, the Debtors served all known parties-in-interest with notice of the emergency hearing on the First Day Motions. Prior to the hearing, the Debtors will serve a copy of the Motion in the same manner as service of the notice of the emergency hearing. In the event that the Court grants the relief requested by the Motion, the Debtors shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs. The Debtors submit that such notice is sufficient and that no other or further notice need be given.

### IV. CONCLUSION

Based on the foregoing, the Debtors respectfully request that the Court enter an order:

a) granting the Motion in its entirety;

b) authorizing the Debtors to maintain the Accounts;

c) authorizing the Debtors to transfer any and all funds amongst the Accounts in a manner consistent with the ordinary course of their business;

d) authorizing the Debtors to pay, in their sole and absolute discretion, any and all Bank Fees related to the Accounts;

e) waiving the notice requirements of LBR 9075-1 and finding notice of the Motion due and proper;

f) waiving the fourteen-day stay of an order authorizing the use, sale, or lease of property, to the extent applicable, under Bankruptcy Rule 6004(h), and;

g) granting any further or additional relief the Court deems just and appropriate.

Dated: April 30, 2019                              Respectfully submitted,

**FOLEY & LARDNER LLP**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: */s/ Ashley M. McDow*
　　　Ashley M. McDow

[Proposed] Attorneys for Scoobeez, Scoobeez Global, Inc., and Scoobur, LLC, Debtors and Debtors-in-Possession

- 7 -

## DECLARATION OF SHAHAN OHANESSIAN

I, Shahan Ohanessian, hereby declare:

1. I am an individual over 18 years of age. I have personal knowledge of the facts stated herein as more fully set forth below or have gained such knowledge by review of the file and if called as a witness, I could and would competently testify thereto.

2. I make this declaration in support of the motion for entry of an order, pursuant to sections 105(a), 345, and 363 of title 11 of the United States Code, authorizing the Debtors to maintain and utilize certain existing bank and/or depository accounts presently designated by the Debtors for the remittance of revenues pending the designation of an alternate, debtor in possession account for such purpose (the "Motion").[2]

3. I am the Chief Executive Officer ("CEO") for the Debtors, and, in that capacity, among other things maintain books, records, files and documents relating to the Debtors. As such, I am generally responsible for managing the operations of the Debtors and, thus, am familiar with the Debtors' operations, assets, and liabilities. In the ordinary course of business, I rely on the maintenance of true and correct copies of various documents relating to the Debtors. I have personally worked on books, records, files and documents, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from my business records, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of the Debtors' business at or near the time of the acts, conditions or events to which they related. Additionally, as the CEO, I have been involved in discussions and planning sessions related to the potential reorganization options and, thus, am familiar with the objectives the Debtors intend to achieve through the Bankruptcy Cases.

4. I have read the contents of the Motion, and to best of my knowledge, all the representations made therein are true and correct.

5. By and through the Bankruptcy Cases, the Debtors intend to restructure their obligations and reorganize their operations in order to maximize revenues and, thus, their ability to pay

---

[2] Capitalized terms otherwise not defined herein have the same meaning as in the underlying Motion.

creditors of the bankruptcy estates through a plan of reorganization.

6. Prior to the commencement of the Bankruptcy Case, the Debtors held three (3) separate accounts with Wells Fargo in the course of their operations (collectively, the "Accounts"). The Accounts included accounts into which Debtors deposit payments from customers relating to services rendered by the Debtors. Specifically, the Debtors used the following accounts:

| Account Name and Number | Description of Account |
| --- | --- |
| Wells Fargo Acct. x4303 | Operating Account |
| Wells Fargo Acct. x1982 | Operating Account |
| Wells Fargo Acct. x1330 | Operating Account |

7. The Debtors have significant receivables, $800,000.00 of which are scheduled to be deposited on Saturday, May 4, 2019. If the Debtors are required to close the Accounts, the Debtors will be unable to receive the revenues or the receipt of such revenues will be substantially delayed. In either case, depriving the Debtors of the revenues, even temporarily, at such a critical moment will have disastrous effects on the Debtors and their ability to operate. Indeed, if the revenues were unavailable, the Debtors would be unable to pay their obligations as they came due, including vendor invoices for goods and services and employee wages, which may result in the loss of key vendors and employees and, ultimately, the inability to operate—thereby creating an accounts receivable deficit that would cause reductions in future revenues. Accordingly, the maintenance and continued use of the Accounts are vital to Debtors' operations.

8. Based on the foregoing and as explained in more detail in the Motion, the Debtors seek the Court's authority on ***an emergency basis*** to maintain the existing bank accounts into which revenues are deposited, and the authority to periodically transfer the funds among the existing accounts.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of April, at Glendale, California.

|   |   |
|---|---|
| 1 |   |
| 2 | _____ |
|   | Shahan Ohanessian |

- 10 -
EMERGENCY MOTION FOR ORDER AUTHORIZING THE USE OF CASH MANAGEMENT SYSTEM

4819-3939-9573.3