Ashley M. McDow (245114)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA  90071
Telephone:     213.972.4500
Facsimile:      213.486.0065
Email:           amcdow@foley.com

[Proposed] Attorneys for Debtors and Debtors in Possession, SCOOBEEZ, *et al.*

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| In re | Case Nos.: 2:19-bk-14989; 2:19-bk-14991; 2:19-bk-14997 |
|---|---|
| SCOOBEEZ, *et al.*[1] | Chapter 11 |
| Debtors and Debtors in Possession. | **DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS; DECLARATION OF SHAHAN OHANESSIAN IN SUPPORT THEREOF** |
| Affects:  ■ All Debtors  ☐ Scoobeez, ONLY  ☐ Scoobeez Global, Inc., ONLY  ☐ Scoober LLC, ONLY | Hearing:<br>Date:   May 1, 2019<br>Time:   3:00 p.m.<br>Place:  Courtroom 1375<br>          U.S. Bankruptcy Court<br>          255 East Temple Street<br>          Los Angeles, CA 90012 |

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343).  The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

*EMERGENCY* MOTION TO AUTHORIZE USE OF CASH COLLATERAL

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS, 20 LARGEST UNSECURED CREDITORS, AND ALL INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:**

**I.    BASIS FOR EMERGENCY RELIEF**

1.    The Debtors move for entry of an interim order on an emergency basis pursuant to rule 9075-1 of the Local Rules.  The Debtors provide on-demand logistics and delivery services in California, Nevada, Illinois, New York, and Texas.  They offer door-to-door delivery service that facilitates same day deliveries for enterprise clients.  Hillair Capital Management, LLC ("Hillair") asserts a security interest in most, if not all, of the Debtors' assets, including, without limitation, inventory, equipment, accounts receivables, fixtures and general intangibles (collectively, the "Collateral").  The Debtors require the use of cash collateral in order to pay the costs and expenses associated with their operations, which the Debtors must pay in short order in order to avoid serious and irreparable injury to the business and the envisioned reorganization.

**II.    STATEMENT OF FACTS**

**A.    Jurisdiction and Venue**

1.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue of the Bankruptcy Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

**B.    The Debtors and the Chapter 11 Filing**

2.    On April 30, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court").  The Debtors continue to operate and manage their affairs as debtors and debtors in possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner, and no committee has been appointed in any of the Bankruptcy Cases.

3.  The Debtors are a logistics and delivery company headquartered at 3463 Foothill Boulevard, Glendale, California 91214.

4.  Over the past two years, an increasing number of lawsuits have been filed against one or more of the Debtors, including various labor disputes. Most recently, on or about April 22, 2019, Hillair Capital Management LLC ("Hillair") filed a three-count complaint against the Debtors, alleging breach of contract, breach of guaranty and replevin and delivery, which is currently pending as case number 19GDCV00492 in the Superior Court of the State of California, County of Los Angeles, North Central District (the "Los Angeles Case"). On or about April 24, 2019, Hillair filed an *Ex Parte* Application to Appoint Receiver, Issue Temporary Restraining Order and Set Order to Show Cause Why Receiver Should Not Be Confirmed and Why Preliminary Injunction Should Not Be Issued (the "Ex Parte Application") in the Los Angeles Case. The hearing on the Ex Parte Application was set for May 1, 2019 at 1:30 p.m. In addition, within the past 90-120 days, a number of purported creditors have filed UCC-1 financing statements asserting purported liens against substantially all, if not all, of the Debtors' personal property, including but not limited to accounts receivable.

5.  Based on the aforementioned events and circumstances, amongst others, the Debtors began to explore and evaluate potential reorganization strategies aimed towards preserving and strengthening the Debtors' operations. After significant deliberation by the Debtors in this regard, the Debtors determined, in conjunction with insolvency counsel, that pursing reorganization under chapter 11 of the Bankruptcy Code provided the best option for the Debtors, their customers, and their creditors.

6.  By and through the Bankruptcy Cases, the Debtors intend to restructure their obligations and reorganize their operations in order to maximize revenues and, thus, their ability to pay creditors of the bankruptcy estates through a plan of reorganization.

7.  The Debtors have begun to engage in good faith discussions and negotiations with a number of its larger creditors in order to continue to assess the most viable exit strategy. The

Debtors have also endeavored to ensure substantial compliance with the guidelines and requirements of the Office of the United States Trustee (the "UST").

8.  In the interim, and for the Interim Period, the Debtors seeks to use their cash in accordance with the budget (the "Budget") appended to the Declaration of Shahan Ohanessian (the "Ohanessian Declaration") as Exhibit A, and incorporated herein by reference.

## III.    DISCUSSION

### A.    Section 363 of the Bankruptcy Code Authorizes a Debtor to Use Cash Collateral Either With (i) Consent or (ii) Court Approval.

Section 363(c)(2) of the Bankruptcy Code governs a debtor's use of cash collateral and provides, in pertinent part, as follows:

> (2) The trustee may not use, sell or lease cash collateral…. unless: …[¶]… (A) each entity that has an interest in such cash collateral consents; or …[¶]… (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363 (c)(2).  Pursuant to § 1107(a), a debtor-in-possession has all the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in accordance with § 363. *See* 11 U.S.C. § 1107(a).  As with most debtors whose primary assets are or may be subject to liens, the Debtor has an exigent and compelling need to use cash collateral.  As noted in *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild.  Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

727 F.2d 1017, 1019 (11th Cir. 1984) (internal citation omitted). (upholding lower court's finding that, where a secured lender's collateral was worth less than the amount of the secured lender's claims, lender would nevertheless be adequately protected even if the debtor used gross profits obtained in the debtor's business operation so long as the debtor paid the secured lender the amount the lender would receive from the inventory in liquidation).

3

Section 363(e) of the Bankruptcy Code provides, however, that upon the request of an entity that has an interest in property proposed to be used by the debtor, the court may prohibit or condition such use "as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363. In other words, the Court may authorize the Debtors' use of any cash collateral of any creditor upon determining that the interest thereof will be adequately protected if such use is authorized. *See In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988).

Section 361 of the Bankruptcy Code identifies various methods for providing adequate protection. 11 U.S.C. § 361. The interest requiring adequate protection under § 363(e) is the value of the collateral subject to the secured creditor's security interest. *See United States v. Timbers of Inwood Forest*, 484 U.S. 362, 108 S.Ct 626 (1988). Such security interest is adequately protected, regardless of the method utilized, so long as the debtor's use of the collateral will not place the collateral at risk. *Id.*, 108 S.Ct at 633. In evaluating the sufficiency of adequate protection, courts must (1) establish the value of the secured creditor's interest in the debtor's property, (2) identify the risk, if any, to the value of the secured creditor's cash collateral resulting from the debtor's use, and (3) determine whether the proposed adequate protection protects the value of the cash collateral as nearly as possible against risk to the diminution of that value. *McCombs, supra*, 86 B.R. at 267, *quoting In re Martin*, 761 F.2d 472 (8th Cir. 1985).

If there is a question as to whether any creditor which requires and/or requests adequate protection is adequately protected, the Court should find that the proposed adequate protection is sufficient in deference to the public policy favoring reorganization. *See Chrysler Credit Corp., supra*, 727 F.2d at 1019.

> Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor … are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of Cash Collateral shall be permitted during the early stages of administration.
>
> The first effort of the court must be to insure the value of the collateral will be preserved. Yet, prior to confirmation of a plan of reorganization, the test of that protection is not by the same measurements applied to the treatment of a secured creditor in a proposed plan. In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard.

*Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1397-98 (10th Cir. 1987) (internal citations omitted).  In granting the debtor's motion to use cash collateral, the Court in *In re Heaton Inc.* further stated:

> At the beginning of the reorganization process, the Court must work with less evidence than might be desirable and should resolve issues in favor of the reorganization, where the evidence is conflicting.

6 B.R. 493, 496 (Bankr. W.D. Mo. 1980).

In the instant case, the purported cash collateral includes, *inter alia*, cash and deposits and accounts receivables.  Due to the nature of Debtors' business, the value of the Collateral depends on the continued operation of the Debtors, which ensures that the Debtors continue generating accounts receivable and revenues necessary to maintain the business during the Bankruptcy Cases.  Thus, the greatest threat to the value of the cash collateral (and creditors' purported interest therein) is not its use; rather, it is the harm coincident with the cessation or reduction of the Debtors' operation, which is all but guaranteed if the Debtors are not permitted to utilize cash collateral immediately.  *See In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, (Bankr. D. Del. 1996)("[I]f there is no actual diminution in the value of collateral through the date of the hearing, and the [Debtor] can operate profitably post-petition, [the secured creditor] is adequately protected for the use of its cash collateral."); *see also In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) ("as long as the debtor generates a continuous income stream, the debtors use of [cash collateral] does not diminish the value of the collateral."); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 52, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral); *In re Cardinal Indus., Inc.*, 118 B.R. 971, 981 (Bankr. S.D. Ohio 1990) (ruling that secured lenders were adequate protected by debtors' use of funds to maintain and manage the encumbered assets).  As shown in the Budget, the Debtors project a continuous income stream over the next 90 days.  Accordingly, the Debtors' continued operation, in and of itself, constitutes adequate protection for the interests of Hillair in the Collateral, if any.

### C. The Debtors Are Not Aware of Any Other Parties Asserting Valid Liens on Cash Collateral.

Other than Hillair, the Debtors are not aware of any other entity that is asserting or could assert an interest in the Debtors' property, including their cash.

### D. The Court Should Authorize the Debtors' Use of Cash Collateral on an Interim Basis.

The Debtors submit that the Court should authorize the Debtors' use of cash collateral on an interim basis pursuant to the terms of the Budget.  The Debtors are negotiating an agreement in principal on adequate protection with the only entity who could claim or is claiming any interest in the Cash Collateral, and the Debtors believe in good faith that any liens claimed on the Debtors' Cash Collateral by any other entities are invalid.  Given the Debtors' urgent need to use its cash to ensure the payment of, amongst other things, payroll on May 1, 2019, the Debtors respectfully request that the Court approve the Debtors' use of Cash Collateral on the terms set forth herein and in the Budget.

**IV. NOTICE**

As reflected in the proof of service that was filed concurrently with the Notice of Emergency Hearing on Debtors' First Day Motions (Docket No. 6), on or about April 30, 2019, and in accordance with the directives of the Court, the Debtors served all known parties-in-interest with notice of the emergency hearing on the First Day Motions.  Prior to the hearing, the Debtors will serve a copy of the Motion in the same manner as service of the notice of the emergency hearing.  In the event that the Court grants the relief requested by the Motion, the Debtors shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs.  The Debtors submit that such notice is sufficient and that no other or further notice need be given.

**V. CONCLUSION**

Based on the foregoing, the Debtors respectfully request that the Court enter an order (a) granting the Motion in its entirety; (b) authorizing the use of Cash Collateral, if any, on the terms

6

set forth herein and in the Budget for the Interim Period; and (c) granting any further or additional relief the Court deems just and appropriate.

Dated: May 1, 2019

Respectfully submitted,

**FOLEY & LARDNER LLP**

By: /s/ Ashley M. McDow
Ashley M. McDow

[Proposed] Attorneys for Scoobeez, Scoobeez Global, Inc., and Scoobur, LLC, Debtors and Debtors in Possession

# DECLARATION OF SHAHAN OHANESSIAN

I, Shahan Ohanessian, hereby declare:

1. I am an individual over 18 years of age. I have personal knowledge of the facts stated herein as more fully set forth below or have gained such knowledge by review of the file and if called as a witness, I could and would competently testify thereto.

2. I make this declaration in support of the the Motion.[2]

3. I am the Chief Executive Officer ("CEO") for the Debtors, and, in that capacity, among other things maintain books, records, files and documents relating to the Debtors. In the ordinary course of business, I rely on the maintenance of true and correct copies of various documents relating to the Debtors. I have personally worked on books, records, files and documents, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from my business records, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of the Debtors' business at or near the time of the acts, conditions or events to which they related. Additionally, as the CEO, I have been involved in discussions and planning sessions related to the potential reorganization options and, thus, am familiar with the objectives the Debtors intend to achieve through the Bankruptcy Cases.

4. I have read the contents of the Motion, and to best of my knowledge, all the representations made in reference to my declaration are true and correct.

5. A true and correct copy of the budget in support of the Motion is attached hereto as Exhibit A, and incorporated herein and into the Motion by reference (the "Budget").

6. As set forth in the Motion, the Debtors seek to use their cash in accordance with the Budget, which represents the expenses that are necessary and vital to the Debtors' operations.

7. In April 2019, the Debtors received approximately $3,100,000.00 in revenues. The Debtors estimate to receive approximately the same amount in May 2019.

///

///

///

---

[2] Capitalized terms otherwise not defined herein have the same meaning as in the underlying Motion.

4824-0674-1909.3

1 | I declare under penalty of perjury that the foregoing is true and correct. Executed this
2 | 1st day of May, at Glendale, California.

_____
Shahan Ohanessian

4824-0674-1909.3

# EXHIBIT A

|  | May | June | July | TOTAL |
|---|---:|---:|---:|---:|
| **Ordinary Income/Expense** | | | | |
|   **Income** | | | | |
|     **44000 · Sales** | | | | |
|       40200 · AMZL | | | | |
|     Total 44000 · Sales | 3,100,000 | 3,100,000 | 3,200,000 | 9,400,000 |
|   **Total Income** | 3,100,000 | 3,100,000 | 3,200,000 | 9,400,000 |
|   **Cost of Goods Sold** | | | | |
|     50100 · Amazon Prime Now - COS | | | | |
|     **50200 · AMZL-COS** | | | | |
|       Fues | 194,000 | 194,000 | 194,000 | 582,000 |
|       Vehicle | 550,000 | 550,000 | 550,000 | 1,650,000 |
|       Direct Labor | 1,782,000 | 1,782,000 | 1,852,000 | 5,416,000 |
|       Citations | 4,600 | 4,600 | 4,600 | 13,800 |
|       Office Supplies | 1,000 | 1,000 | 1,000 | 3,000 |
|       Rent | 13,753 | 13,753 | 13,753 | 41,259 |
|       Accidents | 4,500 | 4,500 | 4,500 | 13,500 |
|       Payroll Tax | 140,000 | 150,000 | 160,000 | 450,000 |
|       Tolls | 10,000 | 10,000 | 10,000 | 30,000 |
|       Parking Lot | 5,000 | 5,000 | 5,000 | 15,000 |
|   **Total COGS** | 2,704,853 | 2,714,853 | 2,794,853 | 8,214,559 |
| **Gross Profit** | 395,147 | 385,147 | 405,147 | 1,185,441 |
|   **Expense** | | | | |
|     60015 · Bank Charges | 1,700 | 1,700 | 1,700 | 5,100 |
|     60020 · Dues & Subscriptions | 9,000 | 9,000 | 9,000 | 27,000 |
|     60175 · Workers Compensation and Reserve | 110,000 | 110,000 | 110,000 | 330,000 |
|     60180 · Janitorial Expense | 2,000 | 2,000 | 2,000 | 6,000 |
|     60500 · Recruitment Expense | 2,000 | 2,000 | 2,000 | 6,000 |
|     60650 · Uniforms | 1,000 | 1,000 | 1,000 | 3,000 |
|     60700 · Marketing | 500 | 500 | 500 | 1,500 |
|     60750 · Meals and Entertainment | 500 | 500 | 500 | 1,500 |
|     60950 · Phones - Amazon Rabits For Driver Routing | 28,000 | 28,000 | 28,000 | 84,000 |
|     61000 · Professional Fees | 40,000 | 40,000 | 40,000 | 120,000 |
|     61400 · Tax & License Fees | | | | |
|     62100 · Employee benefits | | | | |
|     **62700 · Payroll Taxes** | | | | |
|       62140 · SUTA | 2,000 | 2,000 | 2,000 | 6,000 |
|       62710 · FICA- Medicare-ER | 1,500 | 1,500 | 1,500 | 4,500 |
|       62720 · FICA- Social Security-ER | 1,500 | 1,500 | 1,500 | 4,500 |
|       62730 · FUTA | 300 | 300 | 300 | 900 |
|     Total 62700 · Payroll Taxes | 5,300 | 5,300 | 5,300 | 15,900 |
|     62750 · Pre-Employment Screening | | | | |

|  | May | June | July | TOTAL |
|---|---:|---:|---:|---:|
| 62760 · Employee Drug Test | - | - | - | - |
| 62770 · Employee Background Test | 10,000 | 10,000 | 10,000 | 30,000 |
| 62750 · Pre-Employment Screening - Other | - | - | - | - |
| Total 62750 · Pre-Employment Screening | 10,000 | 10,000 | 10,000 | 30,000 |
| 62800 · Payroll Expenses |  |  |  |  |
| 62810 · Payroll Check Processing Fees | 6,000 | 6,000 | 6,000 | 18,000 |
| Total 62800 · Payroll Expenses | 6,000 | 6,000 | 6,000 | 18,000 |
| 64010 · Information Technology | 15,000 | 15,000 | 15,000 | 45,000 |
| 65000 · Insurance | 51,000 | 51,000 | 51,000 | 153,000 |
| 65030 · Insurance - Liability | 2,712 | 2,712 | 2,712 | 8,136 |
| 66000 · Travel |  |  |  |  |
| 66100 · Travel - Auto | 2,941 | 2,941 | 2,941 | 8,822 |
| 66200 · Travel - Hotel | 5,000 | 5,000 | 5,000 | 15,000 |
| 66300 · Travel - Airfare | 5,000 | 5,000 | 5,000 | 15,000 |
| 66400 · Travel Meals & Entertainment | 1,000 | 1,000 | 1,000 | 3,000 |
| Total 66000 · Travel | 13,941 | 13,941 | 13,941 | 41,822 |
| 67000 · Rent or Lease |  |  |  |  |
| 67050 · Rent - SAT5 - San Antonio | 2,233 | 2,233 | 2,233 | 6,699 |
| 67060 · Rent - DCH1- Chicago | 4,182 | 4,182 | 4,182 | 12,545 |
| Total 67000 · Rent or Lease | 6,415 | 6,415 | 6,415 | 19,244 |
| 67150 · Utilities | 3,265 | 3,265 | 3,265 | 9,796 |
| 68000 · Repair & Maintenance | 1,000 | 1,000 | 1,000 | 3,000 |
| 68120 · Shipping and delivery expense | 2,000 | 2,000 | 2,000 | 6,000 |
| **Total Expense** | 311,333 | 311,333 | 311,333 | 933,998 |
| **Net Ordinary Income** | 83,814 | 73,814 | 93,814 | 251,443 |