1  STEVEN M. SPECTOR (SBN: 51623)
    sspector@buchalter.com
2  ANTHONY J. NAPOLITANO (SBN: 227691)
    anapolitano@buchalter.com
3  BUCHALTER, A Professional Corporation
    1000 Wilshire Boulevard, Suite 1500
4  Los Angeles, CA  90017-2457
    Telephone: (213) 891-0700
5  Facsimile:: (213) 896-0400

6  ADAM H. FRIEDMAN (pro hac vice to be filed)
    afriedman@olshanlaw.com
7  OLSHAN FROME WOLOSKY LLP
    1325 Avenue of the Americas
8  New York, NY  10019
    Telephone:  (212) 451-2216
9  Facsimile:  (212) 451-2222

10

    Attorneys for secured creditor
11  HILLAIR CAPITAL MANAGEMENT, LLC

12  **UNITED STATES BANKRUPTCY COURT**

13  **CENTRAL DISTRICT OF CALIFORNIA**

14  **LOS ANGELES DIVISION**

| 15 | In re | Lead Case No. 2:19-bk-14989-WB |
|---|---|---|
| 16 | SCOOBEEZ, INC., et al. | Chapter 11 |
| 17 | Debtors and Debtors in Possession. | (Jointly Administered with Case Nos. 2:19-bk-14991; 2:19-bk-14997) |
| 18 | | |
| 19 | Affects: | **STIPULATION BETWEEN THE DEBTORS AND HILLAIR CAPITAL MANAGEMENT FOR (1) AUTHORIZATION TO USE CASH COLLATERAL ON AN INTERIM BASIS; (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER** |
| 20 | ☒  All Debtors | |
| 21 | ☐  SCOOBEEZ, INC., only | |
| 22 | ☐  SCOOBEEZ GLOBAL, INC. only | |
| 23 | ☐  SCOOBUR, LLC only | **Hearing:** |
| 24 | | Date:  May 14, 2019 |
| 25 | | Time:  2:00 p.m. |
| 26 | | Place:  U.S. Bankruptcy Court Courtroom 1375 255 East Temple Street Los Angeles, CA 90012 |
| 27 | | |
| 28 | | |

1

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER

BN 36439861V9

**TO THE HONORABLE JULIA BRAND, UNITED STATES BANKRUPTCY JUDGE, THE DEBTORS, THEIR COUNSEL AND ALL PARTIES IN INTEREST:**

Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital Investments LP (collectively, "Hillair"), on the one hand, and Scoobeez, Inc., a California corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the "Debtors"), on the other hand, hereby enter into this *Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer* as follows.

**RECITALS**

**I.      The Debtors' secured obligations to Hillair.**

A.      On October 7, 2016, Scoobeez Global and Hillair entered into that certain Securities Purchase Agreement (the "First SPA").  Under the First SPA, Scoobeez Global issued to Hillair its 8% Senior Secured Convertible Debenture Due October 1, 2018 in the principal sum of $5,800,000 due on October 1, 2018 (the "First Debenture").

B.      On January 30, 2017, Scoobeez Global and Hillair entered into that certain Securities Purchase Agreement (the "Second SPA").  Under the Second SPA, Scoobeez Global issued to Hillair its 8% Senior Secured Convertible Debenture Due January 1, 2019 in the principal sum of $8,584,000 (the "Second Debenture") due on or before January 1, 2019 (the "Maturity Date").  The Second Debenture includes the obligations of Scoobeez Global to Hillair due under the First Debenture.

C.      On October 7, 2016, the Debtors entered into that certain Subsidiary Guarantee in favor of Hillair.  Under the Subsidiary Guarantee, Scoobeez and Scoobur, jointly and severally, unconditionally guaranteed the repayment of Scoobeez Global's obligations to Hillair.  To secure repayment of all obligations owing to Hillair, on October 7, 2016, the Debtors, jointly and severally, executed a Security Agreement.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V9

1    D.    The Security Agreement granted Hillair a security interest in substantially all of

2    the assets of the Debtors, including cash, cash equivalents, accounts receivable and the proceeds

3    thereof.    Hillair duly perfected its security interest in the assets by filing UCC-1 financing

4    statements as follows:  (a) as to Scoobeez Global, a financing statement was filed with the Idaho

5    Secretary of State on October 11, 2016, as File No. B-2016-1183112-1; (b) as to Scoobeez, a

6    financing statement was filed with the California Secretary of State on October 11, 2016 as File

7    No. 16-7550581531; (c) as to Scoobur, a financing statement was filed with the California

8    Secretary of State on October 11, 2016 as file no. 16-7550581210.  The First SPA, the First

9    Debenture, the Second SPA, the Second Debenture, the Subsidiary Guarantee, the Security

10    Agreement and the UCC-1 Financing Statements are collectively referred to herein as the "Loan

11    Documents."

12        **II.    The Debtors file their chapter 11 bankruptcy cases.**

13    E.    On April 30, 2019 (the "Petition Date"), the Debtors each filed their own voluntary

14    chapter 11 petitions thereby commencing the above-captioned chapter 11 bankruptcy case.  On

15    May 1, 2019, at the hearing on the Debtors' "first-day" motions seeking authorization (1) for the

16    Debtors' interim use of cash collateral [Docket No. 13]; (2) to continue the maintenance of

17    existing bank accounts and cash management systems [Docket No. 7]; and (3) the payment of

18    prepetition wages and continuation of employee programs [Docket No. 8], the Court authorized

19    interim use of cash collateral though May 14, 2019, subject to further briefing and a further

20    hearing on the continued use of cash collateral.

21        NOW, THEREFORE, based upon the foregoing Recitals, and for good and valuable

22    consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, and

23    the parties hereto intending to be legally bound hereby, by and through their respective attorneys

24    of record, hereby agree and stipulate as follows:

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

3

BN 36439861V9

**AGREEMENT**

1.    **Incorporation of Recitals.**

1.1    The Recitals set forth above is incorporated herein by this reference and shall be deemed a material part of this Stipulation.

2.    **Prepetition Obligations and Security Interests.**

2.1    Without prejudice to the rights of any other party until such time as a further order is entered granting continued use of cash collateral, the Debtors admit, stipulate and agree as follows:

(a)    Prepetition Obligations.  As of the Petition Date, the Debtors were obligated to Hillair for the obligations arising under or relating to the prepetition Loan Documents (collectively, the "Prepetition Obligations").  The Prepetition Obligations (a) were fully accelerated, due and payable to Hillair; (b) constitute legal, valid, binding and enforceable obligations of the Debtors, and (c) are not subject to any objection, offset, avoidance, subordination or other claim or challenge of any nature under the Bankruptcy Code, any other applicable law, contract or otherwise.  Hillair alleges that the Debtors owe the aggregate principal amount of $11,153,098.00, accrued interest in the amount of not less than $370,363.00, plus additional interest, costs, fees and charges recoverable under the Loan Documents or by law.

(b)    Prepetition Liens and Collateral.  As of the Petition Date, the Prepetition Obligations were secured by certain liens and security interests in favor of Hillair (the "Prepetition Liens").  The Prepetition Liens (a) encumber all of the Debtors' right, title and interest in assets described in the Loan Documents and existing as of the Petition Date including, without limitation, all accounts, equipment, inventory, general intangibles and proceeds, attachments and accessions to the foregoing (as previously defined, the "Collateral"), (b) secure performance of the Prepetition Obligations pursuant to the Loan Documents, (c) constitute legal, valid, enforceable, non-avoidable and duly perfected security interests and liens in and upon the Collateral in favor of Hillair, (d) are not subject to any objection, offset, avoidance, subordination or other claim or challenge of any nature by the Debtors under the Bankruptcy Code, any other

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V9

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

applicable law, contract or otherwise, and (e) were granted by the Debtors for fair and sufficient consideration and reasonably equivalent value, contemporaneously with the making of the loans or commitments to make loans and other financial accommodations secured thereby.  Pursuant to the Loan Documents, Hillair has a valid, perfected, and unavoidable security interest in the cash collateral, which includes, at a minimum, all "Cash Collateral" as that term is defined in Section 363(a) (collectively, the "Cash Collateral").  The Collateral includes the Debtors' Cash Collateral.

(c)      No Claims Against Hillair.  The Debtors have no valid claims (as such term is defined in section 101(5)) or causes of action against Hillair with respect to the Loan Documents or the Prepetition Obligations, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive.

3.      **Authorization for Use of Cash Collateral.**

3.1      Request for Use of Cash Collateral.  The Debtors have requested the use of the Cash Collateral, and Hillair is willing to consent to such use of Cash Collateral upon the admissions, agreements, terms and conditions contained in this Stipulation and the entry of an order approving this Stipulation.

3.2      Need for Use of Cash Collateral.  The Debtors have an immediate need for the use of Cash Collateral in order to permit, among other tasks, the orderly continuation of the operation of their business, to minimize the disruption of their business operations, and to manage and preserve the assets of their estates.

3.3      Authorized Use of Cash Collateral.  Subject to the terms and conditions of this Stipulation, the Debtors shall only be entitled to use the Cash Collateral for payment of the following expenses:

(a)      "Authorized Expenses" comprising only the current necessary, reasonable, and ordinary expenses of the Debtors actually incurred after the Petition Date as set forth and not to exceed the amounts set forth in the weekly budget attached hereto as **Exhibit "A"**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36439861V9

for the period from May 14, 2019 through June 7, 2019 and incorporated herein by this reference (the "Budget"), subject only to modification by express mutual consent of the parties in writing. The Debtors may not exceed any line item budget amount by a variance of 10% for each category line item in the Budget. Allowed amounts not paid by the Debtors in each budget category during each week may carry over to the next succeeding week only on a line item by line item basis.

(b)     An "Emergency Expense" comprising only that expense relating to an emergency which is not an Authorized Expense and for which it is not feasible to provide advance notice to Hillair and for which the Debtors and the Chief Restructuring Officer in good faith believe must be incurred immediately in order to mitigate damage to the Collateral or to avoid (i) possible health and safety concerns, or (ii) damage or harm to the Collateral, not to exceed the amount of $2,500 for any one particular expense. In each circumstance when the Debtors has paid an Emergency Expense, the Debtors shall advise Hillair as soon as possible but not later than the next business day, in writing by fax, the amount of the expenditure, the nature of the emergency, and the reason that advance approval was not practical. If Hillair believes that such expenditure or the amount thereof was not warranted under the circumstances, Hillair shall be entitled to an *ex parte* hearing on forty-eight (48) hours' notice regarding termination of this Stipulation, prohibition of any further use of the Cash Collateral by Debtors, and other remedies available to Hillair pursuant to this Stipulation, or by contract or law.

3.4     Limitation on the Use of Cash Collateral. Notwithstanding any other term to the contrary in this Stipulation, the Debtors shall not use the Cash Collateral after the date hereof:

(a)     to pay any obligation owed to any party (other than to Hillair) on account of or relating to services and/or product provided prior to the Petition Date, including without limitation, obligations relating to the provision or sale of goods, materials or services, or obligations on account of purchase orders;

(b)     from the sale or disposition of assets of the Debtors outside the ordinary course of business of the Debtors;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER

BN 36439861V9

(c)     to pay to or for the benefit of the Debtors or any principal, shareholder, or insider of the Debtor, any management person or entity retained by the Debtors or the Debtors' estate, whether directly or indirectly, except as expressly approved and agreed in writing by Hillair; or

(d)     in connection with any action or proceeding against Hillair.

3.5     <u>Ordinary Course of Business</u>.  Except as otherwise permitted by Court order or as authorized by Hillair, the Debtors shall conduct their business operations in the ordinary course and on ordinary and customary terms consistent with the terms and manner by the Debtors prior to the Petition Date.

3.6     <u>Adequate Protection for Use of Cash Collateral</u>.  As adequate protection of Hillair's interest in the Cash Collateral, the Debtors shall pay Hillair the sum of $40,000 per week commencing on May 15, 2019 and payable on each Wednesday thereafter for the period from May 14, 2019 through June 7, 2019.  All payments made under this Stipulation shall be made in accordance with the terms expressly set forth in the loan documents and in effect before the Petition Date.

4.     **Appointment of a Chief Restructuring Officer.**

4.1     By no later than May 16, 2019, the Debtors shall file an application seeing the appointment of a Chief Restructuring Officer ("CRO"), who is acceptable to Hillair, to oversee the financial and operational functions of the Debtors, and maintain an oversight role over the administration of the Debtors' bankruptcy cases.  The application shall be heard on shortened time at a hearing set by the Court for May 28, 2019 at 10:00 a.m. with oppositions to be filed and served by no later than May 23, 2019.

4.2     The Debtors hereby agree that, subject to entry of an order approving the appointment of the CRO, (1) all use of Cash Collateral shall be authorized and approved by the CRO; (2) Hillair shall be permitted to obtain financial reporting directly from the Debtors, the CRO, the Debtors' financial advisors or investment banker, and the Debtors' counsel.  The financial reporting shall include, among other things, financial statements (including balance

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36439861V9

sheets, income statements and statements of cash flow), budget reports, inventory schedules, accounts receivable schedules, accounts payable schedules, pro forma financial statements, bank account statements, payroll reports and any other report respecting the assets, liabilities, financial condition or operation of the Debtors in addition to the reporting specified in Paragraph 8.1 of this Stipulation.

4.3    Subject to the entry of an order approving the appointment of the CRO, the Debtors acknowledge and agree that (1) the CRO shall liaise with the current interim co-CEOs, George Voskanian and Scott Sheikh with respect to the operations and management of the Debtors and the admintraton of the Debtors' bankruptcy cases; and (2) the duties and responsibilities of the CRO shall include the following:

(a)    Review and analyze the Debtors and their financial results, projections, operational data and compliance with the Budget;

(b)    Gain an understanding of the existing contractual arrangements and obligations with customers, advisors/consultants and suppliers;

(c)    Assist the Debtors in the preparation and approval of the reporting specified in Paragraph 8.1 of this Stipulation;

(d)    Advise the Debtors with regard to the development and implementation of a turnaround and restructuring plan;

(e)    Assist the Debtor in managing key constituents, including communications and meetings with, and requests for information made by, creditor constituents, including secured lenders, vendors, customers and employees;

(f)    Oversee key customer relationships;

(g)    Provide expert testimony, if required and permitted;

(h)    Manage cash forecasting and liquidity management procedures. In particular, assume responsibility and oversight of day-to-day cash management and initiatives to protect, preserve, and enhance liquidity;

(i)    Review and evaluate the go-forward business;

8

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER

BN 36439861V9

(j)    Conduct a review and analysis of the existing workforce and direct recruitment of new employees, where and if appropriate; and

(k)    Execute on identified cost saving initiatives.

4.4    The United States Trustee reserves the right to seek the entry of a court order terminating the appointment of the Chief Restructuring Officer for cause shown.

5.    **Post-Petition Replacement Liens.**  As additional adequate protection, the Debtors hereby grant Hillair post-petition liens in accordance with the following provision:

5.1    <u>Post-petition Lien Granting</u>.  Hillair shall have and is hereby granted by the Debtors, effective as of the Petition Date, a post-petition security interest and replacement lien pursuant to sections 361 and 363(e) (the "Post-petition Lien") in all present and future, prepetition and post-petition real and personal property assets in which and to the extent the Debtors hold an interest, whether tangible or intangible, including without limitation, all accounts (including post-petition accounts receivable arising post-petition notwithstanding the provisions of Section 552), chattel paper, deposit accounts, documents, documents of title, goods (including all inventory, equipment and fixtures), instruments, investment property (including all certificated and uncertificated securities, securities entitlements, securities accounts, commodity contracts and commodity accounts), letter of credit rights, money, and general intangibles, all supporting obligations and security for any of the foregoing and all proceeds of the foregoing (including all distributions made on account of any of the foregoing, all claims arising from the loss, nonconformity, or interference with the use of, or defects or infringement of rights in, any of the foregoing and any insurance payable by reason of any such loss, nonconformity, interference, defects or infringement), and all rents, issues, profits and proceeds thereof (collectively, the "Post-petition Collateral"), solely to the extent of any post-petition diminution in value of the prepetition assets of the Debtor (the "Prepetition Collateral," and collectively with the Post-petition Collateral, the "Collateral") which were encumbered by prepetition liens and security interests in favor of Hillair securing the Debtors' obligations owed to Hillair; <u>provided, however</u>, with respect to the Debtors' interest in any unexpired lease of real property, the Post-

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V9

petition Lien shall only extend to the Debtors' rights to the proceeds arising from the assignment, sale, disposition or termination of such lease.

5.2    <u>Post-petition Lien Priority</u>.  The Post-petition Lien shall be senior and have priority over all other liens and interests on and in the Collateral, except that the Post-petition Lien shall be junior only to (a) the Prepetition Lien in favor of Hillair and (b) such other valid, existing, and perfected liens or security interests existing as of the Petition Date with respect to such assets existing as of the Petition Date encumbered by such liens, and to the extent such liens or security interests were senior to the Prepetition Lien in favor of Hillair as of the Petition Date and are not otherwise avoided.

5.3    <u>Automatic Perfection of Post-petition Lien</u>.  The Post-petition Lien shall be granted, attached, perfected and validated by virtue of the Order approving this Stipulation, without any further act required under federal, state, or local law requiring notice, filing, registration, recording, possession or other act to validate or perfect a security interest or lien, including without limitation deposit account control agreements, merchant payment agreements, merchant payment direction letters, cash transport agreements, and such other agreements with any party possessing or asserting an interest in the Collateral (a "Perfection Act").  Notwithstanding the foregoing, if Hillair, in its sole discretion, elects to effectuate a Perfection Act, Hillair is authorized to perform such act, and if requested by Hillair, the Debtors are authorized to perform such act to the extent necessary or required, and in such event, the subject filing or recording office or agency is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law.  No defect or failure in connection with an attempt to perform a Perfection Act shall limit, waive, or alter the validity, enforceability, attachment, or perfection of the Post-petition Lien by virtue of entry of the Order approving this Stipulation.

5.4    <u>Validity and Perfection of Post-petition Lien</u>.  Upon entry of the Order approving this Stipulation, the Post-petition Lien granted to Hillair by virtue of this Stipulation shall be valid, enforceable and perfected without any further act by Hillair.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V9

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

6.      **Segregation of Cash Collateral.**

6.1      <u>Segregation of the Cash Collateral.</u>  Unless otherwise agreed upon in writing by Hillair, the Cash Collateral shall be collected, received, maintained, and segregated by the Debtors in trust for Hillair.  The Cash Collateral shall be maintained in the accounts separate and apart from any other revenue or property of the Debtors or the Debtors' estates, shall not be commingled or intermingled with any other income or property of the Debtors or the Debtors' estates not constituting the Cash Collateral, and shall not be used except in accordance with the terms and conditions of this Stipulation.

6.2      <u>Segregated Accounts.</u>  The Debtors shall maintain separate debtor in possession accounts (collectively, the "Operating Accounts") for:  (a) operating funds, (b) payroll, and (c) taxes.  All of the funds in each of the Operating Accounts are Cash Collateral.  All cash in the Operating Accounts shall remain Cash Collateral and may only be withdrawn in accordance with this Stipulation and the attached Budget.

7.      **Insurance.**

7.1      The Debtors shall maintain and insure the Collateral in sufficient amounts to adequately protect Hillair's interest in such Collateral, and include Hillair as a loss payee in accordance with the requirements of the Loan Documents.  Debtors shall promptly provide in writing evidence of insurance to Hillair.

8.      **Reporting Requirements.**

8.1      <u>Periodic Reporting Requirements.</u>  The Debtors shall maintain records adequate and sufficient to account for the Cash Collateral and expenses, and shall make such records available for inspection by Hillair upon 24 hours' notice.  The Debtors shall provide Hillair within five (5) business days from the date of the entry of the order approving this Stipulation a complete accounting of the Cash Collateral and expenses relating to the Collateral from the Petition Date to the date of the entry of the Order approving this Stipulation.  The Debtors shall (i) timely perform all reporting and other requirements of the Office of the United States Trustee, and (ii) provide Hillair with (A) all information and reports as required under the

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36439861V9

Loan Documents and (B) copies of all documents and papers filed or submitted by the Debtors with the Office of the United States Trustee or with the Court.  The Debtors shall further provide the following periodic reports to Hillair:

(a)    a weekly report delivered on each Wednesday at 2:00 p.m. (Pacific Time) for the immediately prior week (ending on Saturday) reflecting actual receipts and expenditures by line item against those set forth in the approved cash collateral budget for such weekly period;

(b)    on each Wednesday at 2:00 p.m. (Pacific Time), an update to the approved cash collateral budget extending the term of the budget for an additional week to reflect a rolling 13- week budget;

(c)    a current accounts receivable aging covering post-petition receivables (with respect to payments received by the Debtors and entered into the Debtors' financial reporting system), on each Wednesday by 2:00 p.m. (Pacific Time), and current through the immediately prior week (ending on Saturday);

(d)    a current accounts payable aging covering post-petition payables (with respect to payables where invoices have been received by the Debtors and entered into the Debtors' financial reporting system), on each Wednesday by 2:00 p.m. (Pacific Time), and current through the immediately prior week (ending on Saturday);

(e)    monthly financial statements prepared by the Debtors' financial advisor and/or reviewed by the Chief Restructuring Officer (provided that the fees for the same shall be included in the Budget), and such other reports required to be delivered by the Debtors pursuant to the loan documents with such financial statements being delivered within seven (7) business days following the month end closing;

(f)    monthly bank account statements to be provided to Hillair on the 5th business day following the statement closing date;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

(g)     upon request, on each Thursday at 2:00 p.m. (Pacific Time), a written update regarding the operations of the Debtors, including, without limitation, information regarding (i) relationships with key suppliers, carriers and customers since the Petition Date, and (ii) a written update of the Debtors' sales and refinancing efforts including, without limitation, potential lenders, buyers, investors, the status of any negotiations and the and terms contemplated, and the likely time frame; and

(h)     copies of all periodic reports provided to the U.S. Trustee on the date that such reports are due.

8.2     Outstanding Requests for Documents.  The Debtors hereby consent to entry of the order granting *Hillair Capital Management, LLC's Motion for Entry of Order Authorizing Examination Under Federal Rule of Bankruptcy Procedure 2004* [Docket No. 35] (the "Rule 2004 Motion").  By no later than 5:00 p.m. PDT on May 20, 2019, the Debtors shall provide to Hillair all outstanding documents specified in that certain email dated May 2, 2019 at 1:57 p.m. PDT from Anthony J. Napolitano, counsel for Hillair, to Debtors' counsel.  By no later than 9:00 a.m. PDT on June 3, 2019, the Debtors shall provide to Hillair all outstanding documents specified in the Rule 2004 Motion.

8.3     Access to Collateral and Records.  Within 48 hours of a request of Hillair, the Debtors shall permit Hillair or an agent of Hillair, reasonable access to any of the Collateral for the purpose of enabling such party to inspect, audit and appraise the Collateral and the Debtors' books and records, and to inspect books and records maintained by any agent of the Debtors at the location that those books and records are maintained.

9.     **Section 507(b) Priority.**

9.1     As additional adequate protection, the Debtors hereby agree and acknowledge that, if the protections provided by the liens and security interests under the Loan Documents or this Stipulation are later determined inadequate, Hillair shall have an allowed super priority administrative claim of the kind and priority specified in section 503(b) or 507(b):

13

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

(1) with priority over all costs and expenses of administration of the bankruptcy case that are incurred under any provision of the Bankruptcy Code, including, without limitation, sections 503(b), 506(c), 507(a), or 522(b); and (2) with the same priority as the Replacement Lien as set forth in this Stipulation.

10.     **Waiver of Section 506(c) Surcharge.**

10.1     Without prejudice to the rights of any other party until such time as a further order is entered granting continued use of cash collateral, based on the authorization of the Debtors' use of the Cash Collateral pursuant to this Stipulation, the Debtors waive their rights and shall not seek to surcharge the Collateral or Hillair under Section 506(c).

11.     **Forbearance of Remedies.**

11.1     Providing that there are no defaults hereunder, during the term of this Stipulation, and subject to the terms and conditions hereof, Hillair will forbear from exercising any of Hillair's rights and remedies against the Debtors under the Loan Documents.

12.     **Event of Default.**

12.1     An event of default under this Stipulation (each, a "Default") shall include the following:

(a)     The Debtors' failure to perform or comply with any of the terms of this Stipulation or any other order of the Court;

(b)     Following the entry of the order approving this Stipulation, any material misrepresentation of fact made by any representative of the Debtors to Hillair about the Debtors' business or financial condition or the Collateral;

(c)     The granting in favor of any party other than Hillair of a security interest in or lien upon any property of the Debtors or the Debtors' estate, or a claim against the Debtors having priority over the security interests, liens or claims in favor of Hillair except to the extent that such party had a security interest in or lien upon any property of Debtors on the Petition Date which had priority over the security interests, liens or claims of Hillair existing on Petition Date;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V9

1               (d)     The Debtors' failure to perform or comply with their obligations

2 under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or of the requirements of

3 the Office of the United States Trustee;

4               (e)     The termination of this Stipulation by its own terms, operation of

5 law, or Court order;

6               (f)     The dismissal of the Bankruptcy Case;

7               (g)     The appointment of a trustee or an examiner under the Bankruptcy

8 Code;

9               (h)     The conversion of the Bankruptcy Case to a case under another

10 chapter of the Bankruptcy Code;

11             (i)     Submission by the Debtors of any chapter 11 plan of reorganization

12 inconsistent in any material respect with the terms of this Stipulation;

13             (j)     Failure of the Debtors to comply with the requirements of the

14 Office of the United States Trustee; or

15             (k)     The stay, modification, amendment, vacating, or reversal of any

16 term herein or Order approving this Stipulation, or any of the rights and acknowledgments

17 conferred hereunder, without the express prior written consent of Hillair.

18       13.     **Rights and Remedies Upon Default.**

19          13.1    <u>Effect of Default</u>.     Immediately upon the occurrence of a Default, and

20 subject only to voiding the Default, as set forth in paragraph 13.2, all of the following shall be

21 deemed to have occurred:

22               (a)     Hillair's consent regarding the Debtors' use of the Cash Collateral

23 pursuant to this Stipulation is terminated without further notice;

24               (b)     The Debtors shall not use any Cash Collateral for any purpose;

25               (c)     The Debtors shall not seek authority to use any Cash Collateral;

26               (d)     The Debtors shall hold in trust for Hillair, and shall segregate, all

27 Cash Collateral in its possession or to come into its possession in the future; and

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

(e)    Hillair is granted immediate relief from the automatic stay of Section 362 for cause, without any further notice, motion, hearing, or order, to take any action or exercise of any or all rights and remedies available under the Loan Documents, this Stipulation, or applicable law, including (i) the continuation of the state court receivership and (ii) the commencement and completion of a judicial or non-judicial foreclosure under the Loan Documents.  The parties specifically waive the provisions of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

13.2    If Default is "Curable."    If the Default is a type that is curable by the Debtors and the Debtors cure the Default within three (3) business days from the date of service of such notice of the Default, the Default is voided, and the Debtors may then be allowed to use Cash Collateral under the terms and conditions set forth in this Stipulation, and as provided in the Budget.

14.    **Cash Collateral Term.**

14.1    The authorization to use the Cash Collateral pursuant to this Stipulation shall terminate as of the earliest of the following (the "Termination Date"):

(a)    June 7, 2019;

(b)    The occurrence of a Default; or

(c)    The occurrence of the Effective Date of a confirmed plan of reorganization.

14.2    Notwithstanding the occurrence of the Termination Date or a Default, this Stipulation may be extended by Hillair and the Debtor by written agreement without further order of this Court.

14.3    The Parties stipulate and agree to a continued cash collateral hearing to occur on June 6, 2019 at 10:00 a.m. in the above-captioned court.

15.    **No Modification or Stay of the Stipulation or Order.**

15.1    Unless expressly consented to in writing by Hillair, (a) this Stipulation, (b) an Order approving this Stipulation, and (c) the rights and remedies of Hillair under the Loan

16

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

Documents and this Stipulation, shall not be subject to any stay, modification, alteration, amendment, vacating, or reversal by any order of this Court or other tribunal.

16. **Power To Waive Rights; Duties To Third Parties.**

16.1    Hillair shall have the right to waive any of the terms, rights, and remedies provided in this Stipulation or the Loan Documents ("Hillair Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce any Hillair Rights.  Any waiver by Hillair of any Hillair Rights shall not be or constitute a continuing waiver.  Hillair's delay in or failure of exercising or enforcing any of Hillair Rights shall neither constitute a waiver of such Hillair Rights, subject Hillair to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligations or indebtedness owed to Hillair.

17. **Reservation of Rights.**

17.1    This Stipulation is in addition to and without prejudice to Hillair's right to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents, and any other applicable agreement or law, including seeking an order prohibiting or restricting the Debtors' use of cash collateral, granting further or additional relief from the automatic stay, providing for adequate protection, or imposing an injunction, and to object to applications for allowance or payment of compensation of professionals retained pursuant to the Bankruptcy Code.

18. **The Debtors' Acknowledgment.**

18.1    Notwithstanding any other provision of this Stipulation, the Debtors acknowledge and agree that (a) the Obligations are valid and indefeasible obligations of the Debtors and their estate, in accordance with their terms; and (b) the liens and security interests in favor of Hillair with respect to the Collateral, both prepetition and post-petition, including the Cash Collateral, are valid, enforceable, perfected, and unavoidable under the Bankruptcy Code, including Section 552, and any other applicable law.  The Obligations shall include all reasonable attorneys' fees and costs incurred by Hillair in connection with the representation of Hillair in all

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V9

aspects of this matter, including the enforcement of its rights and remedies under the Loan Documents and the representation of Hillair in all aspects of the Bankruptcy Case.

19. **No Action for Purposes of the One Form of Action Rule.**

19.1 The Debtors hereby waive each of the provisions of Code of Civil Procedure Sections 726, 580a, 580b or 580d or other similar law which provide for an election of remedies or an "action" to the extent such law is applicable.

20. **Notice.**

20.1 When notice is required in this Stipulation, it shall be delivered or served upon the parties as follows:

| | |
|---|---|
| If to Hillair: | Hillair Capital Management, LLC<br>345 Lorton Avenue, Suite 303<br>Burlingame, California 94010 |
| with a copy to counsel for Hillair, which shall not constitute notice hereunder: | Steven M. Spector, Esq.<br>Buchalter, a Professional Corporation<br>1000 Wilshire Boulevard, 15th Floor<br>Los Angeles, California 90017<br>Telephone:  (213) 891-0700<br>Facsimile:    (213) 896-0400 |
| If to the Debtors, as applicable: | Soobeez, Inc.<br>3463 Foothill Boulevard<br>Glendale, California 91214 |
| | Scoobeez Global, Inc.<br>3463 Foothill Boulevard<br>Glendale, California 91214 |
| | Scoobur, LLC<br>3463 Foothill Boulevard<br>Glendale, California 91214 |
| with a copy to counsel for the Debtors, which shall not constitute notice hereunder: | Ashley M. McDow, Esq.<br>Foley & Lardner LLP<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071<br>Telephone:  (213) 972-4500<br>Facsimile:    (213) 486-0065 |

21. **Dismissal of Bankruptcy Case.**

21.1 In the event that any of the Debtors' bankruptcy cases are dismissed, the Debtors shall turnover all Cash Collateral then held in its possession to Hillair within five (5)

18

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36439861V9

business days from the date that Hillair provides notice of its turnover demand to the parties specified in paragraph 20.  This provision shall survive the termination of this Stipulation, the dismissal of the applicable Bankruptcy Case, and shall be binding on the applicable Debtors and may be enforced under bankruptcy and non-bankruptcy law.

22.     **No Responsible Person Liability.**

22.1     In making decisions or in taking other actions reasonably related to the Debtors' Cash Collateral Motion or this Stipulation, Hillair shall have no liability to any third party including creditors and equity interest holders of the Debtors.  Hillair shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "owner" or "operator" with respect to the operation or management of the Debtors.

23.     **No Agreement to Provide Financial Accommodation.**

23.1     This Stipulation shall not impose any duty or obligation to provide any financing or financial accommodation to the Debtors, or to any other entity, to collect, sell, lease or otherwise dispose of any of the Collateral, to proceed against any entity, to proceed against or exhaust any security, or to otherwise pursue any of Hillair's Rights.

24.     **Access to the Debtors' Books and Records.**

24.1     Hillair shall have full, complete, unqualified and unlimited access to the books and records of the Debtors during normal business hours for the purpose of inspection, photocopying and audit upon 24 hours' notice from Hillair to the Debtors.

25.     **Miscellaneous Provisions.**

25.1     <u>Jointly Negotiated Stipulation</u>.    This Stipulation is the product of negotiation among the parties hereto and represents the joint, conceived, bargained for and agreed upon language mutually determined by the parties to express their intentions in entering into this Stipulation.  Any ambiguity or uncertainty herein shall be deemed to be caused by, or attributable to, all parties collectively.  In any action to enforce or interpret this Stipulation, it shall be construed in a neutral manner and no term or condition herein shall be construed more or less

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36439861V9

favorably to any one party or groups of parties.  Each party will act in good faith in the performance of its obligations hereunder.

       25.2    Consent to Entry of Order.  The parties each consent to entry of an order approving this Stipulation.

       25.3    Binding Effect.  This Stipulation shall be binding upon Hillair and the Debtors and their respective successors and assigns, including any trustee appointed in this Bankruptcy Case or any subsequently converted bankruptcy case of the Debtors.  This Stipulation shall also inure to the benefit of Hillair and the Debtors, and their respective successors and assigns.

       25.4    Counterparts.  This Stipulation may be executed in counterparts, and such signatures may be by facsimile.

       25.5    Time of the Essence. Each of the parties expressly acknowledges and agrees that time is of the essence and that all dates and time periods provided for in this Stipulation are absolute and final.

       25.6    Survival of Terms.  Notwithstanding any term to the contrary herein, with the exception of paragraph 21, the terms and conditions of this Stipulation shall apply only during the term of this Stipulation prior to the Termination Date, provided, however, that the rights and remedies granted Hillair shall survive the term of this Stipulation and Termination Date.

       25.7    No Benefit to Non-Parties.  This Stipulation is not intended, nor shall it be construed or deemed to confer any rights, powers or privileges on any entity that is not the Debtors, Hillair as express signatories to this Stipulation.  Specifically, no benefit is extended to any surety or guarantor of the Obligations, and Hillair reserves all of its rights with respect to such non-parties.  This Stipulation is without prejudice to the rights of any third-party holding claims against any of the Debtors.

       25.8    Further Assurances.  Debtor is authorized and shall perform all acts and execute and deliver to Bank all agreements, financing statements, instruments or documents as

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36439861V9

1   may be reasonably requested by Bank to effectuate the terms of this Stipulation or as

2   contemplated herein.

3   **IT IS SO STIPULATED:**

4   DATED: May 16, 2019                    BUCHALTER, a Professional Corporation

5

6                                          By: _____

7                                              STEVEN M. SPECTOR
                                               ANTHONY J. NAPOLITANO

8                                          Attorneys for Secured Creditor Hillair Capital
                                           Management, LLC
9

10

11  DATED: May 16, 2019                    FOLEY & LARDNER, LLP

12

13                                         By: _____
                                               ASHLEY M. McDOW

14                                         Attorneys for the Debtors

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V9

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

1  may be reasonably requested by Bank to effectuate the terms of this Stipulation or as

2  contemplated herein.

3  **IT IS SO STIPULATED:**

4  DATED:  May 16, 2019                      BUCHALTER, a Professional Corporation

5

6                                            By: _____

7                                                     STEVEN M. SPECTOR
                                                     ANTHONY J. NAPOLITANO

8                                            Attorneys for Secured Creditor Hillair Capital
                                             Management, LLC

9

10

11 DATED:  May 22, 2019                      FOLEY & LARDNER, LLP

12

13                                           By:   /s/ Ashley M. McDow
                                                     ASHLEY M. McDOW

14                                           Attorneys for the Debtors

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V9

**EXHIBIT A**

**Scoobeez, Inc. et al**

*4 Week Cash Flow Forecast*

| | Week No. | 1 | 2 | 3 | 4 | |
|---|---|---|---|---|---|---|
| | | *Forecast* | *Forecast* | *Forecast* | *Forecast* | 4-Week |
| | Week Ended | 5/17/2019 | 5/24/2019 | 5/31/2019 | 6/7/2019 | Total |
| **Beginning Cash** | | 1,140,000 | 766,000 | 973,000 | 479,000 | |
| **Collections** | | 800,000 | 800,000 | 800,000 | 800,000 | 3,200,000 |
| **Cash Disbursements:** | | | | | | |
| Fuel | | 55,000 | 55,000 | 55,000 | 55,000 | 220,000 |
| Payroll & Payroll Expenses | | 1,057,000 | - | 1,057,000 | - | 2,114,000 |
| Vehicle - Hertz | | - | 460,000 | 110,000 | - | 570,000 |
| Rent & Utilities | | - | - | - | 22,000 | 22,000 |
| Insurance | | - | - | - | 255,000 | 255,000 |
| Phones | | - | 14,000 | - | 14,000 | 28,000 |
| Travel | | - | 12,000 | - | 12,000 | 24,000 |
| IT Expenses | | 10,000 | - | 10,000 | - | 20,000 |
| Dues & Subscriptions | | - | - | 10,000 | - | 10,000 |
| Other Expenses | | 12,000 | 12,000 | 12,000 | 12,000 | 48,000 |
| **Total Operating Cash Disbursements** | | 1,134,000 | 553,000 | 1,254,000 | 370,000 | 3,311,000 |
| **Operating Cash Flow** | | (334,000) | 247,000 | (454,000) | 430,000 | (111,000) |
| **Debt & Non-Operating Payment & Receipts** | | | | | | |
| Debt Principal | | - | - | - | - | - |
| Debt Interest | | 40,000 | 40,000 | 40,000 | 40,000 | 160,000 |
| Bank Fees | | - | - | - | - | - |
| **Debt & Non-Operating Payments** | | 40,000 | 40,000 | 40,000 | 40,000 | 160,000 |
| **Bankruptcy Fees** | | | | | | |
| Debtor Counsel | | - | - | - | - | - |
| Debtor Advisor | | - | - | - | - | - |
| Committee Professionals | | - | - | - | - | - |
| Post Petition US Trustee Fees | | - | - | - | - | - |
| **Net Total Cash Flow In / (Out)** | | **(374,000)** | **207,000** | **(494,000)** | **390,000** | **(271,000)** |
| Cumulative Cash Flow | | (374,000) | (167,000) | (661,000) | (271,000) | |
| Ending Cash Balance | | 766,000 | 973,000 | 479,000 | 869,000 | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Foley & Lardner LLP, 555 South Flower Street, Suite 3300, Los Angeles, CA 90072-2411
A true and correct copy of the foregoing document entitled (*specify*): **STIPULATION BETWEEN THE DEBTORS AND HILLAIR CAPITAL MANAGEMENT FOR (1) AUTHORIZATION TO USE CASH COLLATERAL ON AN INTERIM BASIS; (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 05/22/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

John-Patrick M Fritz    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
Alvin Mar    alvin.mar@usdoj.gov
Ashley M McDow    amcdow@foley.com, sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
Rejoy Nalkara    rejoy.nalkara@americaninfosource.com
Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
David L. Neale    dln@lnbyb.com
Gregory M Salvato    gsalvato@salvatolawoffices.com,
calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.** **SERVED BY UNITED STATES MAIL**:
On (*date*) 05/22/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Julia W. Brand
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/22/2019 | Sonia Gaeta | /s/ Sonia Gaeta |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
4848-0930-6261.1

**F 9013-3.1.PROOF.SERVICE**