1  PETER C. ANDERSON
   UNITED STATES TRUSTEE
2  JILL M. STURTEVANT, State Bar No. 089395
   ASSISTANT UNITED STATES TRUSTEE
3  ALVIN MAR, State Bar No. 151482
   TRIAL ATTORNEY
4  OFFICE OF THE UNITED STATES TRUSTEE
   915 Wilshire Boulevard, Ste 1850
5  Los Angeles, California 90017
   (213) 894-4219 telephone
6  (213) 894-2603 facsimile
   Email: alvin.mar@usdoj.gov
7
                        UNITED STATES BANKRUPTCY COURT
8
          CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION
9

10
   In re:                              )  Case No.: 02:19-bk-14989-WB
11                                      )
   SCOOBEEZ et al,                      )  Chapter 11
12                                      )
            Debtor,                      )  Jointly Administered with case nos. 2:19-bk-
13                                      )  14991-WB and 2:19-bk-14997-WB
   Affects:                             )
14 X All Debtors,                       )  OBJECTION TO APPLICATION FOR AN
                                        )  ORDER AUTHORIZING AND APPROVING
15                                      )  (1) APPOINTMENT OF BRIAN WEISS AS
                                        )  CHIEF RESTRUCTURING OFFICER OF
16                                      )  THE DEBTORS *NUNC PRO TUNC* TO
                                        )  MAY 16, 2019 (Doc. no. 63)
17                                      )
                                        )  Hearing Date:  [HEARING REQUESTED]
18                                      )  Time:
                                        )  Place:        Courtroom 1375
19                                      )                255 East Temple Street
                                        )                Los Angeles, CA  90012
20
            TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE,
21
   DEBTOR, DEBTOR'S COUNSEL AND OTHER INTERESTED PARTIES:
22
            The United States Trustee has reviewed the "Application for an Order Authorizing and
23
   Approving (1) Appointing Brian Weiss as Chief Restructuring Officer of the Debtors *Nunc Pro*
24
   *Tunc* to May 16, 2019", hereinafter 'Application', filed on May 16, 2019 (doc. no. 63) and submits
25
   his objections as follows:
26

27

28
                                          1

## I.  (A) OBJECTION TO THE APPOINTMENT OF CHIEF RESTRUCTURING OFFICER IN LIEU OF APPOINTMENT OF CHAPTER 11 TRUSTEE IN LIGHT OF THE FACT THAT SOLE BOARD MEMBER HAS BEEN IMPLICATED IN MISAPPROPRIATION OF DEBTOR'S FUNDS AND (B) REQUEST FOR CONTINUANCE OF HEARING ON CRO MOTION

### a.  A CRO is an Inadequate Remedy

When a debtor files a petition under chapter 11 of the Bankruptcy Code, the debtor ordinarily becomes a "debtor in possession." 11 U.S.C. §1107(a).  The debtor in possession has virtually all the rights, powers, and duties of a trustee, and accordingly serves as a fiduciary for the bankruptcy estate. Id.

When a fiduciary of a debtor is unable or unwilling to fulfill these fiduciary obligations to the estate, a bankruptcy court may direct the appointment of a chapter 11 trustee.  Moreover, when "cause" exists, the use of the word "shall" in §1104(a) mandates the appointment of a trustee.  See Escoe v. Zerbst, 295 U.S. 490, 493 ("shall" indicates congressional intent that a provision is mandatory).

Section 1104(a) of the Bankruptcy Code states:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –

  (1) for *cause*, including *fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management*, either *before* or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

  (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

(emphasis added)

Accordingly, when "cause" exists for the appointment of a trustee, Congress has established a remedy that can supplant management, while allowing the case to remain in chapter 11 – the appointment of a trustee pursuant to §1104(a).  Because §1104(a) expressly and specifically sets

forth a mechanism for the appointment of an independent fiduciary to replace management of a debtor in possession, debtors and bankruptcy courts may not ignore this provision by writing alternative remedies into the Code, such as the employment of a "CRO" who would act as quasi-trustee. The court must be faithful to the plain meaning of the Bankruptcy Code's provisions, as drafted by Congress. *See, e.g.,* Lamie v. United States Trustee, 540 U.S. 526, 533 (2004)(strictly interpreting 11 U.S.C. §330(a)(1)). There is no "quasi-trustee" provision in the Code, and Congress has provided for no such entity. Any such alternative remedy would nullify the mandatory nature of trustee appointments as expressed in §1104(a). *See* H.R. Rep. No. 95-595. 95th Cong., 1st Sess. 402 (1977). Thus, nothing in the Bankruptcy Code or Rules authorizes a court to appoint a CRO or "responsible person" to exercise the duties of a §1104(a) trustee when there is evidence to support the appointment of a trustee. Rather, the appointment of a chapter 11 trustee is the sole statutory remedy set out in the Bankruptcy Code in such circumstances.

"The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in-possession defaults in this respect, section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee." In re Marvel Entertainment Group, Inc., 140 F.3d 463, 474 (3rd Cir.2000), *quoting* In re V. Savino Oil & Heating Co., Inc., 99 B.R. 518, 526 (Bankr.E.D.N.Y. 1989); *see also* In re Oklahoma Refining Company, 838 F.2d 1133, 1136 (10th Cir.1988).

The facts in Debtors' case compels the appointment of a Chapter 11 trustee and not that of a chief restructuring officer.

### b.  Officers of California Corporations are Accountable to the Board of Directors.

Under California law, a corporation's chief officers are required to report to a board of directors. As the Tamarack Resort LLC, 2010 WL 4117459 (Bankr.D.Idaho 2010) court found,

Chapter 11 is a flexible process. It tolerates debtors-in-possession, chapter 11 trustees, examiners and a host of potential professionals. The Bankruptcy Code clearly outlines the statutory duties of a Chapter 11 trustee but not those of a CRO. And as stated by the <u>Tamarack Resort</u> court, all creditors are entitled to a debtor-in-possession bound to the full performance and accountability required by the Code and in the circumstances which appears in the Stipulation, in lieu of a debtor-in-possession, a Chapter 11 trustee.

In the case at hand, the United States Trustee is informed that the *sole* member of the board of directors is Shahan Ohanessian, who may no longer be the Debtors' CEO but remains in sole control of the Scoobeez's Board of Directors. As represented in Hillair Capital Management, LLC's May 13, 2019 filed opposition to the entry of an order authorizing interim use of cash collateral, Mr. Ohanessian is the subject of an internal 'Whistleblower Report' written by the Debtors' former CFO Imran Firoz in which Mr. Firoz states that Shahan Ohanessian transferred sums totaling $1,698,500 from ABT Holdings (aka Scoobeez Global, Inc.) to business accounts of which Mr. Ohansessian was the ultimate beneficiary. From those business accounts, $390,580 was transferred to Mr. Ohanessian's personal account, withdrawals of $715,006 were made at the Wynn Hotel in Las Vegas, Nevada, and collective cash withdrawals totaling $473,699 were made at various Wells Fargo banking locations. This report, based on Hillair's opposition to use of cash collateral, was sent to the Board of Directors of ABT Holdings, Inc. n/k/a Scoobeez Global on March 15, 2017. Mr. Firoz concluded in his report that:

Known and Unknown Negative Impact of These Unauthorized Transactions

As a result of this (sic) these unauthorized transactions, the Company is unable to account for $1,579,285. Therefore, the Company will not be able to complete its Fiscal 2016 audit by April 14, 2017. If the Company is unable to become a fully reporting company, it will impede its chances to raise necessary capital from the public and private markets. ....

Later in the same report, Mr. Firoz added:

Further these activities violated several covenants of Hillair Convertible Debentures dated 10/07/16 and 01/31/17. These violations will trigger not only Hillair conversion, diluting all existing shareholders, but also create a total asset lien on the Company and its subsidiaries. Further, it will result in legal and reputational harm to the Company, the Board and its Officers which at minimum could be more than Hillair's face value of the note, accrued interest, and penalties (>$10,000,000).[1]

As stated above, Shahan Ohanessian is the Debtors' sole member on the Board of Directors of Scoobeez. Based on the allegations against Mr. Ohanessian and his departure as the Debtors' CEO, the appointment of a Chief Restructuring Officer would be inappropriate under the circumstances as any appointed CRO would ultimately be reporting and taking directions from an individual who has allegedly diverted funds of the estate, and therefore put into jeopardy the Debtors' going concern, as he, Shahan Ohanessian, does not qualify to be a fiduciary of this estate.

Indeed, the Debtors have not demonstrated why engaging a CRO will cure or remedy its managerial problems given that the Debtors' current management through its Board of Directors would continue its oversight of the Debtors.

### c.  Appointment of a Chapter 11 Trustee is the Appropriate Remedy

In instances in which fraud, dishonesty, incompetence or gross mismanagement of the affairs of a debtor by current management is demonstrated as in Debtors' cases, the Bankruptcy Code statutorily provide relief by way of the appointment of a Chapter 11 trustee. *See* 11 U.S.C. §1104. Furthermore, the Bankruptcy Code statutorily outlines the duties of a Chapter 11 trustee. *See* 11 U.S.C. 1106. Moreover, the Bankruptcy Code statutorily outlines the compensation schedule for a Chapter 11 trustee. *See* 11 U.S.C. §326.

For the reasons set forth in subsections (a) to (c) above, the United States Trustee opposes the appointment of a Chief Restructuring Officer as a substitute for the appointment of a Chapter 11

---

[1] A true and correct copy of the 'Declaration of Sean M. McAvoy in Support of Hillair Capital Management, LLC's Opposition to Debtors' Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis' along with Exhibit 10 thereto filed on May 13, 2019 (doc. no. 47), is attached hereto as Exhibit 1; the United States Trustee requests this Court to take judicial notice of the aforementioned document pursuant to FRE Rule 201.

1   trustee in the absence of a Board of Directors whose members do not bear the badges of self-

2   dealing, dishonesty and incompetence.

3       While the United States Trustee is aware of the Ninth Circuit's ruling in In re Bibo, Inc.,

4   76 F3d 256 (9th Cir. 1996) which affirmed a bankruptcy court's power to sua sponte appoint a

5   Chapter 11 trustee where the court findings established fraud, dishonesty, gross mismanagement

6   and finding ultimately that such appointment was in the best interests of the estate, the United

7   States Trustee requests a continuance of the hearing so that he may bring his motion for the

8
    appointment of a Chapter 11 trustee as the proper and appropriate alternative to the instant motion.
9

10  **II. ALTERNATIVE REPORTING TO CO-CEOs IS EQUALLY INAPPROPRIATE**
    **UNDER THE CIRCUMSTANCES BASED ON ACTUAL CONFLICTS OF**
11  **INTEREST HELD BY BOTH CO-CEOs.**

12      California state law states that corporate officers are responsible to its Board of Directors.

13      The Application states that Mr. Weiss (ie: the proposed CRO) will be '[w]orking with the

14
    Debtors' senior management team and the board of directors…"[2]    Additional information
15

16  regarding the identity of the co- CEOs is revealed in the '[Proposed] Stipulation Between the

17  Debtors and Hillair Capital Management for (1) Authorization to Use Cash Collateral on an Interim

18  Basis; (2) Appointment of a Chief Restructuring Officer', hereinafter 'Proposed Stipulation for

19  Interim Use of Cash Collateral', which is attached as Exhibit 1 of the 'Hillair Capital Management,

20  LLC's Notice of Motion and Motion to Approve Terms of Proposed Stipulation for Interim Use of

21

22

23

24

25

26

27
    _____
    [2] See Application, page 3, line 17.
28

Cash Collateral' filed on May 16, 2019 (doc. no. 61)[3], as reference is made that the proposed CRO

"..shall liase with the current interim co-CEOs, George Voskanian and Scott Sheikh...."[4]

These same two individuals, (ie: George Voskanian and Scott Sheikh), now the Debtors' co-

CEOs which the CRO will be liaising with,  appear to be the same two individuals, who Hillair

avers may be involved in the formation of at least one entity within a month of Debtors' Chapter 11

filing.  This raises significant fraudulent transfer and continuation concerns.[5]  Specifically, Hillair

expressed its concerns that George Voskanian, the Debtor's CFO and now one of Debtor's co-

CEOs executed the Articles of Incorporation of a new entity, Scoobeez Deliveries, which is located

on the Debtors' premises.  Hillair also suggests that the Debtors' estates may hold fraudulent

transfer claims against this newly formed entity and that "the Debtors' estates and others may likely

hold successor liability and mere continuation claims against Scoobeez Deliveries in the event that

the Debtors have diverted business or assets to the new entity."  Additionally, in the same pleading,

Hillair noted that George Voskanian also holds executive roles at a company called Serve where

Mr. Voskanian serves as that entity's CFO as well.  In Exhibit 5 to the 'Declaration of Steven M.

Spector In Support of Hillair Capital Management, LLC's Opposition to Debtors' Motion for Entry

of Interim Order Authorizing Use of Cash Collateral on an Interim Basis' filed on May 13, 2018

(doc. no. 46), Mr. Voskanian is identified as Serve's CFO and Scott Sheikh, Debtors' other co-CEO

---

[3] The United States Trustee requests this Court to take judicial notice of the 'Hillair Capital Management, LLC's Notice of Motion and Motion to Approve Terms of Proposed Stipulation for Interim Use of Cash Collateral' filed on May 16, 2019 (doc. no. 61), a true and correct copy of which is attached hereto as Exhibit 2, pursuant to FRE Rule 201

[4] *See* paragraph 4.3 of the Proposed Stipulation for Interim Use of Cash Collateral.

[5] *See* 'Hillair Capital Management, LLC's Opposition to Debtors' Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis' filed on May 13, 2019 , a true and correct copy of which is attached hereto as Exhibit 3, (doc. no. 45), page 7, line 24 to page 8, line 27; the United States Trustee requests this Court to take judicial notice of the aforementioned document pursuant to FRE Rule 201.

is reflected as Serve's Chief Legal Officer. [6] Hillair added in its objection to continued use of cash collateral on an interim basis, its concern "whether assets of the Debtors have been secreted to [Serve] and whether the Debtors' proposed use of cash collateral will be for the benefit of this non-debtor entity".

Because all of these allegations suggest that Mr. Voskanian and Mr. Sheikh may not be acting in good faith, the United States Trustee expresses his concern that the CRO may be reporting and taking instructions from individuals who are conflicted and who do not have or who appear not to have the Debtors' best interests at heart.

As set forth above, the United States Trustee contends the CRO's reporting or liaising with either of the interim co-CEOs is not appropriate based on the questionable allegiances that both have based on their connection with suspect entities which the Debtors may ultimately have claims against. In any case, the CRO would ultimately be responsible for reporting to the Debtors' Board of Directors and as stated above, such is untenable under the present situation. Again, the United States Trustee contends that the appointment of a Chapter 11 trustee is the most appropriate alternative given the present circumstances of Debtors' case.

## III. ADDITIONAL ISSUES REGARDING APPOINTMENT OF BRIAN WEISS AS DEBTORS' CRO.

### a.    Duplication of Services

The Application makes reference to the anticipated employment of Conway MacKenzie as Debtors' proposed Financial Advisors.[7] While the Application states that the CRO will avoid unnecessary duplication of services, including that of Conway, the expressed listing of CRO

---

[6] A true and correct copy of the 'Declaration of Steven M. Spector in Support of Hillair Capital Management, LLC's Opposition to Debtors' Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis' filed on May 13, 2019 (doc. no. 46) with Exhibit 4 only thereto is attached hereto as Exhibit 3; the United States Trustee requests this Court take judicial notice of the aforementioned document pursuant to FRE Rule 201.

[7] *See* Application, page 4, line 18.

8

Services appear to include services which would be expected of a financial advisor[8], in particular, (a) reviewing and analyzing financial results, financial projections, operational data and compliance with budgets, (b) gaining understanding of existing contractual arrangements and obligations, (c) manage cash forecasting and liquidity management procedures, (d) evaluating an entity's going concern, and (e) executing identified cost savings initiatives.   Based on the above, it is unclear how the CRO can avoid the duplication of services with Debtors' Financial Advisors.

### b.    Services of Other Members of Force Ten Partners, LLC

The Application indicates that the proposed CRO, Brian Weiss, is a partner with Force Ten Partners, LLC.  Elsewhere in the Application, reference is made that '[i]n the rare instances where other Force 10 personnel are required, they will be charged at their customary hourly rates of $225-650 per hour.'[9]

In this respect, the United States Trustee objects to this provision as it results in an end run around the requirements of 11 U.S.C. §327 regarding professional employment in the guise of a CRO appointment.

### c.    Objection to Terms of Employment for Compensation.

The Application indicates that the CRO "not be required to submit fee applications under sections 330 and 331 of the Bankruptcy Code." [10]

To the extent this Court is inclined to approve the appointment of a CRO, the U. S. Trustee requests that the CRO be required at the very least,  provide notice to the U.S. Trustee, Debtors, all official committees and secured lenders, reports of compensation earned and expenses incurred on at least a quarterly basis with the opportunity to object and request such compensation be set for hearing under a negative notice procedure such as set forth in Local Bankruptcy Rule 9013-1(o)[11].

---

[8] For listing of CRO Services, *see* Application, page 3, line 20 to page 4, line 9.
[9] *See* Application, page 5, line 3 to 5.

[10] *See* Application, page 4, line 26 and 27.

[11] A true and correct copy of the 'Order Granting on a Final Basis Emergency Motion for Order Authorizing Debtor to Retain and Employ James Wong as Chief Restructuring Officer Under 11 U.S.C. §§105(a), 363(b), 1107 and 1108' entered on August 31, 2018 is attached hereto as Exhibit 5; the United States Trustee requests this Court to take judicial notice of the aforementioned document pursuant to FRE Rule 201.

d.  **Request for Disclosure of Any Prior Connection with the Debtors**

In the Declaration of Brian Weiss in support of the Application, he declares that "[t]o the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, *other than my work for the Debtors in this case*, neither I, nor Force 10, not any of Force 10's principals, employees, agents, or affiliates (a) have any connection with the Debtors, ….."[12] (emphasis added)

While the United States Trustee notes that the Application requests nunc pro tunc relief to May 16, 2019, the United States Trustee requests disclosure of any other work performed by either Force 10 or Mr. Weiss, prior to May 16, 2019 on behalf of any of the Debtors.

## IV. CONCLUSION

WHEREFORE, based on the above, the United States Trustee submits his objections to Debtors' application for order authorizing and approving the appointment of Brian Weiss and Chief Restructuring Officer and (1) requests that the Application for appointment of a Chief Restructuring Officer be denied, (2) that the objections of the United States Trustee to the Application be sustained for the reasons set forth herein, or (3) alternatively, continue the hearing such that the United States Trustee may file his motion for the appointment of a Chapter 11 trustee and (4) in the event that the Court overrules the U.S. Trustee's objection, that the Court requires (i) additional disclosure as to how duplication of services will be mitigated, (ii) deny Force 10's other employees to be employed absent further order of the Court, (iii) that the CRO provide, at least on a quarterly basis, his compensation requests to parties in interest subject to a 14 day negative notice period to

---

[12] *See* Application, page 3 of the Declaration of Brian Weiss in support of Application, line 20 to 23.

1   object and (iv) require additional disclosure by Brian Weiss as to any other connections with the

2   Debtor.

3   Dated: May 23, 2018                                    Respectfully Submitted,

4
                                                            Peter C. Anderson
5                                                           United States Trustee

6                                                           By: _____
                                                                Alvin Mar, Trial Attorney
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

1  STEVEN M. SPECTOR (SBN: 51623)
     sspector@buchalter.com
2  ANTHONY J. NAPOLITANO (SBN: 227691)
     anapolitano@buchalter.com
3  BUCHALTER, A Professional Corporation
   1000 Wilshire Boulevard, Suite 1500
4  Los Angeles, CA 90017-2457
   Telephone: (213) 891-0700
5  Facsimile:: (213) 896-0400

6  ADAM H. FRIEDMAN (pro hac vice to be filed)
     afriedman@olshanlaw.com
7  OLSHAN FROME WOLOSKY LLP
   1325 Avenue of the Americas
8  New York, NY 10019
   Telephone: (212) 451-2216
9  Facsimile: (212) 451-2222

10  Attorneys for secured creditor
    HILLAIR CAPITAL MANAGEMENT, LLC

11            UNITED STATES BANKRUPTCY COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13               LOS ANGELES DIVISION

14

15  In re                          Lead Case No. 2:19-bk-14989-WB

16  SCOOBEEZ, INC., et al.         Chapter 11

17            Debtors and Debtors   (Jointly Administered with
                in Possession.     Case Nos. 2:19-bk-14991; 2:19-bk-14997)

18  ───────────────────────────
    Affects:                       DECLARATION OF SEAN M. MCAVOY IN
19                                 SUPPORT OF HILLAIR CAPITAL
    ☒  All Debtors                 MANAGEMENT, LLC'S OPPOSITION TO
20                                 DEBTORS' MOTION FOR ENTRY OF
    ☐  SCOOBEEZ, INC., only        INTERIM ORDER AUTHORIZING USE OF
21                                 CASH COLLATERAL ON AN INTERIM BASIS
    ☐  SCOOBEEZ GLOBAL, INC.
22     only                        [Opposition and Declaration of Steven Spector
                                   concurrently filed.]
23  ☐  SCOOBUR, LLC only
24                                 Hearing:
                                   Date:     May 14, 2019
25                                 Time:     2:00 p.m.
                                   Place:    U.S. Bankruptcy Court
26                                           Courtroom 1375
                                             255 East Temple Street
27                                           Los Angeles, CA 90012

28
                                      1

BN 36439690V2

# DECLARATION OF SEAN M. MCAVOY

I, Sean M. McAvoy, hereby declare, as follows:

1.      I am a member and co-founder of Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital Investments LP (collectively, "Hillair"), senior secured creditor of Scoobeez, Inc., a California corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the "Debtors").

2.      I submit this declaration in support of Hillair's concurrently filed supplemental *Opposition to Debtors' Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis* (the "Motion"). The following facts are true to the best of my own personal knowledge, except where stated on information and belief, and as to those facts, I believe them to be true. If called as a witness, I could and would testify competently to the facts set forth herein.

3.      As it relates to the Debtors, I am one of the individuals at Hillair responsible for overseeing and managing the Debtors' credit facility. Additionally, as part of my duties at Hillair, I am one of the custodians of the books, correspondence, agreements, records, files and other banking-related documents maintained at Hillair as they pertain to the Debtors.

4.      In the ordinary course of Hillair's business and consistent with its policies and procedures, a record of all contracts and agreements to which Hillair is a party is maintained by Hillair, along with written and computerized records of all sums loaned or advanced to customers, payments made, interest and other charges of the balance owing (collectively, the "Records"). I am informed and believe that (i) the Records constitute writings taken or made and kept in the course of the regularly conducted business activity of Hillair; (ii) it is the regular practice of Hillair to have these Records made, kept, and preserved; (iii) such Records are made at or near the time of the acts or events recorded, by employees or contractors of Hillair with a business duty to do so; and (iv) the Records are made by, or are made from information transmitted by, employees or contractors of Hillair who have personal knowledge of the acts and events recorded

1

DECLARATION OF SEAN M. MCAVOY IN SUPPORT OF OPPOSITION TO
MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

BN 36439690V2

1  in such Records and with a business duty to so record such acts and events. Hillair operates in

2  reliance upon these procedures.

3      5.   I have access to Hillair's Records, either through Hillair's computer systems or in

4  hard-copy files maintained in my office or in the offices of Hillair's personnel from whom I can

5  obtain the business records. To the best of my abilities and resources, I have reviewed Hillair's

6  applicable books, documents, and records relating to the Debtors.

7      6.   Based upon my role as a co-founding partner of Hillair and my duties and

8  responsibilities in that role, I am sufficiently acquainted with the method and manner of

9  preparation and maintenance of the business records of Hillair for the relevant time period. As of

10 the date of this Declaration, I have reviewed the Records relating to Hillair's dealings with the

11 Debtors in connection with the Debtors' outstanding obligatins owing to Hillair. By virtue of my

12 personal involvement in this matter and with the transactions at issue, and in reviewing the

13 documents and correspondence by, between and among Hillair and the Debtors, I affirm the

14 documents referred to herein and attached as exhibits to be authentic business records of Hillair,

15 and I know the following to be true.

16     **A.  Hillair provides Secured Financing to the Debtors.**

17     7.   On October 7, 2016, Scoobeez Global and Hillair entered into that certain

18 Securities Purchase Agreement (the "First SPA"). A true and complete copy of the First SPA is

19 attached hereto as **Exhibit 1**. Under the First SPA, Scoobeez Global issued to Hillair its 8%

20 Senior Secured Convertible Debenture Due October 1, 2018 in the principal sum of $5,800,000

21 due on October 1, 2018 (the "First Debenture"). A true and complete copy of the First Debenture

22 is attached hereto as **Exhibit 2**.

23     8.   On January 30, 2017, Scoobeez Global and Hillair entered into that certain

24 Securities Purchase Agreement (the "Second SPA"). A true and complete copy of the Second

25 SPA attached hereto as **Exhibit 3**. Under the Second SPA, Scoobeez Global issued to Hillair its

26 8% Senior Secured Convertible Debenture Due January 1, 2019 in the principal sum of

27 $8,584,000 (the "Second Debenture") due on or before January 1, 2019 (the "Maturity Date"). A

28 true and complete copy of the Second Debenture is attached hereto as **Exhibit 4**.

2

DECLARATION OF SEAN M. MCAVOY IN SUPPORT OF OPPOSITION TO<br>MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

BN 36439690V2

Case 2:19-bk-14989-WB    Doc 47    Filed 05/13/19    Entered 05/13/19 12:34:34    Desc
Main Document    Page 4 of 55

9.    The Second Debenture includes the obligations of Scoobeez Global to Hillair due under the First Debenture.

10.    On October 7, 2016, the Debtors entered into that certain Subsidiary Guarantee in favor of Hillair.  A true and complete copy of the Subsidiary Guarantee is attached hereto as **Exhibit 5**.Under the Subsidiary Guarantee, Scoobeez and Scoobur, jointly and severally, unconditionally guaranteed the repayment of Scoobeez Global's obligations to Hillair.

11.    To secure repayment of all obligations owing to Hillair, on October 7, 2016, the Debtors, jointly and severally, executed a Security Agreement.  A true and complete copy of the Security Agreement is attached hereto as **Exhibit 6**.  The Security Agreement granted Hillair a security interest in substantially <u>all</u> of the assets of the Debtors, including accounts receivable and the proceeds thereof.  Hillair duly perfected its security interest in the assets by filing UCC-1 financing statements as follows: (a) as to Scoobeez Global, a financing statement was filed with the Idaho Secretary of State on October 11, 2016, as File No. B-2016-1183112-1; (b) as to Scoobeez, a financing statement was filed with the California Secretary of State on October 11, 2016 as File No. 16-7550581531; (c) as to Scoobur, a financing statement was filed with the California Secretary of State on October 11, 2016 as file no. 16-7550581210.  A true and complete copy of the UCC-1 are collectively attached hereto as **Exhibit 7**.

**B.    The Debtors defaults on their obligations owing to Hillair.**

12.    Events of monetary and non-monetary default by the Debtors under both the Second Debenture and the Subsidiary Guarantee have occurred, and continue to occur.  Specfically, the Debtors failed to pay the entire amount due and owing to Hillair under the Second Debenture on the Maturity Date.

13.    Other significant defaults include but are not limited to: (i) the incurrence of indebtedness greater than the agreed maximum as referenced in Section 7(a) of the Second Debenture without the prior written consent of Hillair; (ii) the failure to make Periodic Redemption Payments and the failure to pay accrued interest thereon; (iii) the failure to make Quarterly Interest Payments; and (iv) suffering a material adverse change in its financial condition which has impaired its ability to perform under the Second SPA and Second Debenture.

3

DECLARATION OF SEAN M. MCAVOY IN SUPPORT OF OPPOSITION TO
MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

BN 36439690V2

15

14.     As a result of the Debtors' failure to pay the obligations owing to Hillair by the Maturity Date, Hillair sent a notice of default and demand for payment to Scoobeez Global (the "Default Letter").  Scoobeez has failed and refused, and continues to fail and refuse, to pay the sums due thereunder or any part thereof.

15.     As a result, there is due, owing and unpaid to Hillair by the Debtors the principal sum of $11,153,098, plus accrued and accruing unpaid interest, late charges, and legal fees together with other miscellaneous charges set forth in the Second Debenture.

**C.     The Debtors' most recent annual report reveals a significant number of financial issues affecting the company.**

16.     Scoobeez Global's shares are publically traded on the OTC Market "Pink Sheets". As a publicly traded company, Scoobeez Global files reports pursuant to the Pink Basic Disclosure Guidelines.  Scoobeez Global's most recent annual report is dated April 12, 2019 for the year ending December 31, 2018 (the "2018 Annual Report").  A true and correct copy of the 2018 Annual Report is attached hereto as **Exhibit 8.**

17.     In their 2018 Annual Report, Note 10 to the Debtors' Consolidated Financial Statements discloses the Debtors' obligations owing to Hillair.  The Debtors state:

> [T]he Company recently conducted due diligence and found inconsistencies in the total balances of the Note documents that Hillair has provided.  The Company is in the process of working with Hillair to identify the correct amount of the combined loans, as the terms were negotiated and signed electronically by the prior CFO, with whom the Company is in current litigation.  **There may be a markdown of the total amount of the Loan due to moneys missing and/or renegotiating of the entire note.**

However, this statement is false. This statement in a public securities filing is astonishing and false.  The "note documents" were not signed by the "former CFO" (*i.e.*, Imran Firoz) electronically or in any other manner.  The note documents were signed by Shahan Ohanessian.

18.     Moreover, the Debtors are not "working with" Hillair to "identify the correct amount of the combined loans" nor is there a "markdown" or any "money missing."

19.     On March 19, 2019, Hillair sent the Default Letter to the Debtors formally placing them on notice and demanding payment. On March 26, 2019, counsel for Scoobeez Global sent a letter to Hillair acknowledging the receipt of the Default Letter.

4

DECLARATION OF SEAN M. MCAVOY IN SUPPORT OF OPPOSITION TO
MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

BN 36439690V2

16

20.    Under the Pink Sheet Guidelines, the Default Letter constituted a material corporate event requiring a public disclosure filing. This disclosure was required by March 25, 2019 at the latest. Hillair has searched the public records and found no such disclosure.

21.    Similarly, the filing of a bankruptcy petition is a material event which requires public company disclosure. The Debtors did not timely make the required public disclosures of their bankruptcy filing.

**D.    The formation of the Debtors' affiliate, Scoobeez Deliveries, Inc.**

22.    Hillair recently discovered that the Debtors or their insiders have incorporated a new entity called Scoobeez Deliveries, Inc., a California corporation ("Scoobeez Deliveries"), on April 3, 2019—less than a month prior to the commencement of the Debtors' bankruptcy cases. A copy of the Articles of Incorporation for this entity is attached hereto as **Exhibit 9.**

23.    The existence of this entity (which is required to execute a guaranty in favor of Hillair under the Guaranty Agreement) was not disclosed to Hillair (or the Debtors' public shareholders in securities filings) and raises many red flags.

**E.    The Debtors' former CFO's Whistleblower Report.**

24.    During the time that financing was provided to Scoobeez, Hillair dealt with the Debtors' CFO, Imran Firoz. On March 15, 2017, Firoz, sent a twenty-five page unsolicited report (the "Whistleblower Report") to the Board of Directors of ABT Holdings, Inc. n/k/a Scoobeez Global, of which Hillair was a member, outlining various actions taking by the Debtors' majority shareholder and CEO resulting in the misappropriation of $1.7 million in funds of the Debtor among other things. A true and complete copy of the Whistleblower Report is attached hereto **Exhibit 10.**

25.    On February 7, 2019, Firoz filed a Cross-Complaint for, among other things, breach of fiduciary duty, breach of contract, wrongful termination, retaliation, and conversion in the state court action designated as *Firoz v. Scoobeez Global, Inc., et al.*, Case No. EC067690 (L.A. Sup. Ct.). A true and complete copy of the Cross-Complaint is attached hereto as **Exhibit 11.**

5

DECLARATION OF SEAN M. MCAVOY IN SUPPORT OF OPPOSITION TO
MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

BN 36439690V2

26.     Further, the misappropriation of these funds resulted in the Debtors' inability to pay Hillair as well as an entity called Avitus, Inc.—an entity that made payroll advances.  By virtue of Scoobeez' Pink Sheets Disclosure, Hillair became aware of a lawsuit filed by a payroll service company called Avitus. Hillair obtained a copy of the lawsuit from the public records of the court in which the lawsuit was filed. This gave rise to a lawsuit filed by Avitus against Scoobeez, Scoobeez Global, and Shahan Ohanessian designated as *Avitus, Inc. v. Scoobeez, Inc., et al.*, Case No. CV-18-146-BLG-SPW-TJC (D. Mont.) seeking damages in excess of $16 million.  The Avitus debt was itself a breach of the Hillair loan agreements.

**F.     Hillair commences its state court action against the Debtors and seeks the appointment of a receiver.**

27.     Because of the foregoing defaults and issues, on April 22, 2019 Hillair filed its Complaint for (1) Breach of Contract, (2) Breach of Guaranty, and (3) Replevin in the Los Angeles Superior Court commencing the action designated *Hillair Capital Management, LLC v. Scoobeez Global, Inc., et al.*, Case No. 19GDCV00492 (L.A. Sup. Ct. 2019) (the "State Court Action").

28.     Thereafter, on April 24, 2019 Hillair filed its *Ex Parte Application to Appoint Receiver, Issue Temporary Restraining Order and Set Order to Show Cause why Receiver Should not be Confirmed* (the "Receivership Application") in the State Court Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 13, 2019, at Siasconset, Massachusetts.

SEAN M. MCAVOY

6

BN 36439690V2

# EXHIBIT 10

Exhibit 10. Page 250

19

BY US CERTIFIED MAIL

To the Board of Directors of ABT Holdings:

Shahan Ohanessian
Mahesh Shetty
Lance Brinker

Cc:    Gil Cabrera, Esq., The Cabrera Firm, APC
         Kenneth Bart, Esq.
         Dick Dolan, Noteholder, Shareholder
         Javan Khazali
         Marc J. Ross, Esq.,
         Henry Niser
         Neal Kaufman, Hillair Capital
         William B. Barnett, Esq.

Please be informed that unilateral action dated March 14, 2017, taken by Mr. Shahan Ohanessian (Mr. Ohanessian) by invoking Article 10 (3) of ABT Holdings, Inc. (aka Scoobeez Global, Inc., "ABT") Articles of Incorporation is invalid. This action is binding only in the absence of fraud. Further, this action by Mr. Ohanessian is in violation of 2011 Idaho Code, Title 30, Chapter 1, Part 7, 30-1-704, Action Without Meeting.

This document covers all major items, events, discussions (non-exhaustive) relating to unauthorized transfer of monies by Mr. Ohanessian from ABT and Scoobeez business account to - Business Account xxx-xxx-4724, where he is the ultimate benficial owner.

**Discoveries and Findings by Imran Firoz**
On March 1, 2017, Justin Cary, CPA reported a major difference between balance sheet of ABT (Loan Receivable from Scoobeez) and Scoobeez, Inc. (Loan Payable to ABT).

From March 3 to March 4, 2017, upon further investigation conducted by me as the CFO of the. Company, it was evident that Mr. Ohanessian transferred a total sum of $1,698,500 from ABT Business Account xxx-xxx-7830 ($2,000) and Scoobeez Business Account xxx-xxx-1330 ($1,696,000) to his Business Account xxx-xxx-4724.

Please note, Mr. Ohanessian is the ultimate beneficiary owner of this Business Account xxx-xxx-4724 account. I've documented details of these transfers to Business xxx-xxx-4724 documented in Exhibit A.

As the CFO and Director of the Company, I asked Mr. Ohanessian for the explanation for these transfers. On March 5, 2017, Mr. Ohanessian provided view access to Business xxx-xxx-4724 accounts, and following conclusions were made:

    a)  Mr. Ohanessian made a collective payments of $149,012 to Enterprise Rent-A-Car, San Antonio (Business Expense). There were no other significant business related expenses from this account.

    b)  Mr. Ohanessian transferred $390,580 from Business xxx-xxx-4724 to his personal Premier Checking xxx-xxx-2672.

    c)  Mr. Ohanessian made a collective cash withdrawn of $715,006 at Wynn Hotel, Las Vegas.

Exhibit 10. Page 251

d)  Mr. Ohanessian made a collective cash withdrawn of $473,699 at various Wells Fargo Branches.

e)  The balance on the account was a combination of bank fees, ATM fees, funds transferred to Scoobeez Business Account xxx-xxx-1330 and ending balance.

I recorded these cash withdrawals as a shareholder loan taken (or owed) by Mr. Ohanessian until the Company, and the Board come to a proper resolution.

Meeting with Hillair Capital Pasadena, CA and Newport Beach, CA
Mr. Ohanessian and I met with Neal Kaufman, Partner/Founding Member of Hillair Capital dated 02/10/17 at 396 S. Pasadena, Pasadena, CA 91105. At the end of the meeting Neal Kaufman wanted to have further discussion on Company's plan to raise additional capital from public market. Neal Kaufman requested a follow up meeting on March 8, 2017, to understand the revenue/hub model of Scoobeez (Exhibit B). In his email, he asked of us to provide him profitability of the Company at the hub and corporate level, and a genral update on 10-K and Form 10. On March 8, 2017, at Duke Hotel, Newport Beach, Juniper Boardroom – following individuals attended the meeting to discuss items listed in Exhibit B:

Mr. Ohanessian (ABT), Imran Firoz (ABT), Neal Kaufman (Hillair), Sean McAvoy (Hillair) and Javan Khazali (Independent/friend).

From Scoobeez balance sheet, it was self evident that Mr. Ohanessian unilaterllay took a shareholder loan of significant amount. During the meeting, I disclosed all of the above findings to Hillair Capital, including the Company's inability to meet its short term and long term obligations. Among many things, these discussions included Company's ability to meet obligations with other account payables, noteholders – Avitus Group, Mr. Dick Dolan's and Mr. Peter Rosenthal's note. At the end of the meeting, all parties in principle agreed that Hillair may consider (not obligated to) additional working capital in the Company as a 'white knight' if Company's Board make certain necessary changes. Hillair made these recommendations to keep the market integrity, protect all shareholders from potential unlawful activities, act on its own fiduciary responsbilities and comply with all legally binding clauses in the convertible debenture and stock purchase agreement. Hillair capital infusion was also conditioned upon the economic viability of Company's business model. From March 9 to March 13, a signifcant work was done between Hillair and myself to evaluate commercial viability of the Company.

On March 9, 2017, I informed Mahesh Shetty, Board Member of ABT and provided him of my findings and instructed him to contact and inform Lance Brinker, Board Member of ABT. I further explained to Mahesh Shetty breifly the 'white knight' offer from Hillair.

All parties (including Mr. Ohanessian) agreed that the following actions should be taken:

a)  Shoushana and Shahan Ohanessian's resignation from the Board of ABT and CEO of ABT and Scoobeez respectively. (03/10/17, signed and notarized)

b)  Appoint Javan Khazali to the Board as the fifth member. (03/13/17, Board Meeting held on the phone in the presence of Marc Ross and Henry Niser as witnesses)

c)  Appoint Imran as the interim CEO of ABT/Scoobeez. (03/13/17, Agreed by all parties in a Board Meeting held on the phone in the presence of Marc Ross and Henry Niser as witnesses)

Exhibit 10. Page 252

d) To remove access of Mr. Ohanessian, Shoushana Ohanessian, and Minas Sarafian from all Company's Bank accounts to avoid potential unauthorized transactions.

e) To give access to all bank accounts to Imran Firoz, and to Mahesh Shetty in due course to implement proper checks and balances

## Known and Unknown Negative Impact of These Unauthorized Transactions

As a result of this these unauthorized transactions, the Company is unable to account for $1,579,285. Therefore, the Company will not be able to complete its Fiscal 2016 audit by April 14, 2017. If the Company is unable to become a fully reporting company, it will impede its chances to raise necessary capital from the public and private markets. The Company has to withdraw its Form 10 to avoid being in violation of the Securities Exchange Act of 1934.

There is a strong possibility that our auditor DBB Mckennon may withdraw their opinion on fiscal 2014 and 2015 audit and review of nine-month period ending September 30, 2016, including the Form 10. Moreover, due to these unauthorized off balance sheet transactions, the Company financial reporting to the general public would not have been accurate. For example, $149,012 was paid from Business xxx-xxx-4724 to Enterprise Rent-A-Car, San Antonio. The Company is not aware of these expenses as of 10/01/16 since these are being deducted from Business xxx-xxx-4724. This will cause our Cost of Sales and Net Operating Loss to be understated by this amount.

As a publicly trading company, it is our responsibility to keep the integrity of the public market. Mr. Ohanessian actions has created legal and reputational liability to the Company, the Board and me.

Further, these activities violated several covenants of Hillair Convertible Debenture dated 10/07/16 and 01/31/17. These violations will trigger not only Hillair conversion, diluting all existing shareholders, but also create a total asset lien on the Company and its subsidiaries. Further, it will result in legal and reputational harm to the Company, the Board and its Officers which at minimum could be more than Hillair's face value of the note, accrued interest, and penalties (>$10,000,000).

Because of these unauthorized transfers, the Company did not have available cash from 10/16 to 03/17, despite receiving close to $5 million and $2 million from Hillair Debenture dated 10/07/16 and 01/31/17. The Company was unable to meet following business activities:

a) Working Capital
b) Payment Due salaries (See below),
c) Payment Outstanding loans/interests of Mr. Dick Dolan and Mr. Peter Rosenthal, and
d) Payment Outstanding balance with Avitus, Scoobeez's Professional Employer Organization.

Due to lack of availability of funds, Mr. Ohanessian took 17 high interest cash advances loans on ABT (5) and Scoobeez (12). He gave personal guarantees to many of these loans with affidavit of advanced judgment taken against him and the Company should there be a default. These loans caused the Company close to $2 million in fees and interest payments. Mr. Ohanessian was made aware that any loan which is more than $50,000 during normal course of business will violate Hillair Convertible Debenture dated 10/07/16. Mr. Ohanessian and Neal Kaufman had the similar conversation before Hillair invested additional monies in 01/31/17. However, Mr. Ohanessian continued to claim that if he did not take these loans and pay Avitus, then Avitus will not make payroll to our employees, which includes Drivers, Officer Staff, Dispatchers, and others. Company funds were available in Mr. Ohanessian's account Business xxx-xxx-4724. At this moment, I'm unable to assess the financial and legal liability of the Company in line with various state and federal labor laws.

Exhibit 10. Page 253

To make the matter worse, Mr. Ohanessian transferred funds from his personal/business account back to the Company's (ABT/Scoobeez) from January 2017 to date (See Exhibit C). He claimed that this is his loan to the Company. Regardless of one's intention and money returned, this creates a misleading information on our financial reporting.

**Immediate Remedies**

    a)  As per Article X, due to fraudulent, unauthorized transactions on Company's business account, the email dated 03/14/17 by Gil Cabrera is invalid as it is in direct violation of our Articles of Incorporation (See attached).

    b)  Both Mahesh Shetty and I are still the Directors of the Company.

    c)  Due to above discoveries and findings, any actions by Mr. Ohanessian invoking Article 10 (3) as the majority shareholder is null and void.

    d)  The Company needs to take necessary actions to remove Officers and Individuals who have caused harm to the Company.

    e)  The Company to commence negotiating terms with Hillair Capital to continue as a going concern.

    f)  If this issue is not resolved internally between the Board, Mr. Ohanessian and Hillair Capital and follow the US laws, I will have no choice but to inform proper regulatory and relevant authorities, including but not limited to Securities Exchange Commission, FINRA, IRS and the US Postal Inspectors.

**Termination of Imran Firoz as the CFO.**

Based on the above findings and discoveries, my termination as the CFO of the Company by Mr. Ohanessian constitutes unlawful retaliation and wrongful termination. The Company and the Board is hereby informed that Federal law protects me from such retaliation, or revenge, for participating in protected activities, such as reporting unlawful activities or participating in an investigation into the practices of the employer.

I strongly believe that my discoveries as the CFO on activities of Mr. Ohanessian is both reasonable and in good faith for all concerned. I believe these activities by Mr. Ohanessian is in violation of our by-laws, articles of incorporation, tax codes, mail and wire fraud, the Patriot Act which amends the Bank Secrecy Act and IRS tax fraud.

I'm further stating that the Company owes me unpaid salaries from both ABT and Scoobeez as below:

    a)  Net = $281,433 from January 2012 to March 14, 2017, for services rendered to ABT as its Officer (CEO from January 2012 to May 2015, and CFO from May 2015 to March 2017).

    b)  Net = $277,500 from August 2015 to March 14, 2017, for services rendered to Scoobeez as its CFO and Director.

    **Total Unpaid Salary = $558,933**

    c)  The past few days have caused an emotional diststress. I take my fiduciary responsibility very seriously and execute my duties with extreme pride in being an officer of a publicly traded company.

Exhibit 10. Page 254

I urge the Board to take necessary actions immediately to secure the financial wellbeing of the Company and restore the integrity of its business and protect its stakeholders. Further, I would appreciate if my unpaid salaries are paid in full by March 22, 2017, and I'm also open to a reasonable payment plan.

Yours truly,

*Imran Firoz*

(Imran Firoz)

Exhibit 10. Page 255

**EXHIBIT A**

**RED FLAG REPORT**

**BACKGROUND**

ABT Holdings, Inc. ("ABT") is a holding company that has ~ 90% equity interest in Scoobeez, Inc ("Scoobeez").

Scoobeez is the only operating entity of ABT as of fiscal year ended 12/31/16. There are two operating units of Scoobeez:

- Scoobeez (Enterprise), which mainly deals with B2B side of the business and includes clients like Amazon, Yelp – Eat 24 and Thistle.

- Scoobeez (Glendale), which is Scoobeez legacy business and includes local business customers in the GTLA are.

**KEY PERSONNEL**
Shahan Ohanessian, CEO, Director of ABT and Scoobeez
Imran Firoz, CFO, Director of ABT and Scoobeez
Justin Cary, CPA (external), Consolidated Financial Statements, Account Notes
Diane Horm, Accounts Receivables, Revenues, Cost of Sales
Tanya Saucedo, Bookkeeper, Account Payables/Expenses Entries

**Auditors – DBBMckennon**
Russ Boyer, Partner
Marianne D'Elia, Manager

Exhibit 10. Page 256

**BANKING**

**ABT** has only one checking account at Wells Fargo, ███7830. Imran Firoz opened the account in January 2012.

At present, Shahan Ohanessian (CEO) and Imran Firoz (CFO) have complete access and authority to manage this account. There are two debit cards assigned to these individuals.

Bookkeepers have view only access to this account.

**Scoobeez Enterprise** (Main account for Amazon related transactions) has only one checking account at Wells Fargo, ███1330. Shahan Ohanessian opened the account in August 2015, after the acquisition of Scoobeez by ABT.

At present, Shahan Ohanessian (CEO), Minas Sarafian (Accountant at Scoobeez) have complete access and authority to manage this account. There are two debit cards assigned to these individuals.

Imran Firoz and Bookkeepers have view only access to this account.

**Scoobeez Glendale** has only one checking account at US Bank, ███1330. Grigori Sedrakyan/Beno Art (founders of Scoobeez) opened the account in January 2015.

At present, Grigori Sedrakyan has complete access and authority to manage this account.

**[This account is immaterial for this report]**

Exhibit 10. Page 257

26

**EVENT 1 – 02/28/17, Completion of Books for Fiscal 2016**

ABT finished its Form 10 filings on 02/14/17. From 02/15/17 to 02/28/17, staff completed books for both ABT and Scoobeez (including Glendale) for fiscal year ended 2016.

Subsequently, financial statements were handed to Justin Cary to consolidate financial statements of ABT, Scoobeez Enterprise, Scoobeez Glendale.

Exhibit 10. Page 258

**EVENT 2 -- 03/01/17, Error in Loan Elimination between Funds Transferred From ABT to Scoobeez**

From: Justin Cary [mailto:jcary.cpa@gmail.com]
Sent: Wednesday, March 1, 2017 11:31 PM
To: imran@scoobeez.com
Subject: FS status

Hi Imran. I've put together a consolidation for the entities and it appears there will be some work related to reconciling the intercompany accounts. The main difference is the following:

Per ABT loan to Scoobeez: $5,559,029
Per Scoobeez loan from ABT: $3,159,029

That's a difference of $2.4M. That one may be easy but there is also some other various entries that I'll need to track down and reconcile from other intercompany accounts, including booking the non-controlling interest income from 2015 in the main Scoobeez entity. Please let me know though if you know offhand what the aforementioned $2.4M variance is when you're available.

Justin Cary, CPA
307 32nd Street
Newport Beach, CA 92663
Phone: 269-209-7566
JCary.CPA@gmail.com

From: Imran - Scoobeez [mailto:imran@scoobeez.com]
Sent: Thursday, March 2, 2017 12:56 AM
To: Justin Cary <jcary.cpa@gmail.com>
Cc: Diane - Scoobeez <diane@scoobeez.com>
Subject: RE: FS status

Thank you. Let me have a look; the loan should be $5,559,029 on Scoobeez books.

Imran

Sent via the Samsung Galaxy S7 edge, an AT&T 4G LTE smartphone

Exhibit 10. Page 259

**EVENT 3 – 03/03/17, Imran Firoz evaluated the discrepancy of $2.4 million**

Shahan transferred $1,000,000 from ABT Account (xxx-7830) to Scoobeez (xxx-1330) from Hillair 1 funding.

| | | | | |
|---|---|---|---|---|
| 10/20/2016 | Expense | WITHDRAWAL MADE IN A BRANCH/STORE | 10000 WF-▇▇▇7830 | 500,000.00 |
| 10/31/2016 | Expense | WITHDRAWAL MADE IN A BRANCH/STORE | 10000 WF-▇▇▇7830 | 250,000.00 |
| 11/04/2016 | Expense | WITHDRAWAL MADE IN A BRANCH/STORE | 10000 WF-▇▇▇7830 | 250,000.00 |

The above transfers were misclassified to Avitus Payroll Credit. So there was no foul.

However, upon reviewing the details in QuickBooks, the remaining balance of $1.4 million (as of 12/31/16) was transferred to an account named 'AutoClaim, Inc. Business 5▇▇▇4724'. This account belongs to Shahan Ohanessian.

Details of these transfers to AutoClaim, Inc. Business xxx-4724 is documented below (See AutoClaim Inc.xls).

| Posted Transactions | | Debit | Credit |
|---|---|---|---|
| 3/2/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB0372LDHL ON 03/01/17 | | $2,000.00 |
| 2/28/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB0377W6RG ON 02/27/17 | | $5,000.00 |
| 2/22/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB036TXMB8 ON 02/22/17 | | $5,000.00 |
| 2/17/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB036JFZZT ON 02/17/17 | | $3,000.00 |
| 2/10/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB035WM2SS ON 02/10/17 | | $10,000.00 |
| 2/7/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB035PCWML ON 02/07/17 | | $5,000.00 |
| 1/30/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB034YQ3FF ON 01/30/17 | | $10,000.00 |
| 1/17/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB034CZ8BZ ON 01/16/17 | | $40,000.00 |
| 1/17/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB034CFLZC ON 01/15/17 | | $40,000.00 |
| 1/10/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBENC6RWZP ON 01/10/17 | | $40,000.00 |
| 1/4/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBER86SYDM ON 01/04/17 | | $10,000.00 |
| 1/3/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBER86HGRY ON 01/03/17 | | $30,000.00 |
| 1/3/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEY28WCTS ON 01/01/17 | | $50,000.00 |
| 1/3/2017 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEY28PDDG ON 12/31/16 | | $30,000.00 |
| 1/3/2017 | ONLINE TRANSFER FROM AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE5TVLZCT ON 01/03/17 | $5,000.00 | |

Exhibit 10. Page 260

**Posted Transactions**

| | | Debit | Credit |
|---|---|---|---|
| 12/30/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEGJZ4SYS ON 12/30/16 | | $50,000.00 |
| 12/28/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEV56FKJ9 ON 12/28/16 | | $20,000.00 |
| 12/21/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEYZ6KV3X ON 12/21/16 | | $35,000.00 |
| 12/16/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE8QRP29K ON 12/16/16 | | $25,000.00 |
| 12/15/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBER7ZNS4B ON 12/14/16 | | $25,000.00 |
| 12/14/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE5TPM6TG ON 12/14/16 | | $75,000.00 |
| 12/12/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEV52GS66 ON 12/11/16 | | $85,000.00 |
| 12/7/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB033J39KS ON 12/07/16 | | $5,000.00 |
| 12/5/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IB033GYBVH ON 12/05/16 | | $5,000.00 |
| 11/14/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBER7QLZKQ ON 11/13/16 | | $15,000.00 |
| 11/14/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEV4RWJ38 ON 11/12/16 | | $20,000.00 |
| 11/14/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEV4RNWNL ON 11/11/16 | | $30,000.00 |
| 11/9/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE8QG4NMK ON 11/09/16 | | $50,000.00 |
| 11/9/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE5TDKGGS5 ON 11/08/16 | | $50,000.00 |
| 11/4/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBENBLQRV2 ON 11/04/16 | | $10,000.00 |
| 11/1/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE5T9TN36 ON 11/01/16 | | $30,000.00 |
| 10/31/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEV4N2RFX ON 10/31/16 | | $60,000.00 |
| 10/31/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEV4MWTX8 ON 10/31/16 | | $50,000.00 |
| 10/21/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEST6YQS6 ON 10/21/16 | | $40,000.00 |
| 10/20/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBECH9QVBL ON 10/20/16 | | $60,000.00 |
| 10/20/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBECH9K6R5 ON 10/20/16 | | $60,000.00 |
| 10/19/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE2X4TFGQ ON 10/19/16 | | $50,000.00 |
| 10/17/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEKFCNYGY ON 10/17/16 | | $20,000.00 |
| 10/17/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE2X3YNPZ ON 10/15/16 | | $40,000.00 |
| 10/17/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBECH6DZ4K ON 10/15/16 | | $50,000.00 |
| 10/17/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEXZJ2VYW ON 10/15/16 | | $50,000.00 |
| 10/14/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEGJ9DMNV ON 10/14/16 | | $100,000.00 |
| 10/11/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEKF9SJXN ON 10/11/16 | | $30,000.00 |
| 10/11/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBENBBYQ92 ON 10/10/16 | | $30,000.00 |
| 10/11/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBT77L8S5G ON 10/09/16 | | $40,000.00 |
| 10/7/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBENBBHXMR ON 10/07/16 | | $50,000.00 |
| 10/6/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE8Q4S33P ON 10/06/16 | | $45,000.00 |
| 10/4/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEGJ6BDMW ON 10/03/16 | | $20,000.00 |
| 10/3/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBEGJ62PXF ON 10/03/16 | | $20,000.00 |
| 10/3/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBER7BCP2J ON 10/02/16 | | $25,000.00 |
| 9/26/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBE2WVL24M ON 09/25/16 | | $20,000.00 |
| 9/26/2016 | ONLINE TRANSFER TO AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 REF #IBECLZWQ6Z ON 09/25/16 | | $25,000.00 |
| Totals | | $5,000.00 | $1,695,000.00 |

Exhibit 10. Page 261

**EVENT 4 – 03/03/17, Shahan asked to provide explanation for these transfers to his business account.**

From: Scoobeez - Imran [mailto:imran@scoobeez.com]
Sent: Friday, March 3, 2017 9:06 AM
To: 'shahan@scoobeez.com' <shahan@scoobeez.com>
Subject: Auto Claim Transfers


Hi Shahan:


These are transfers from Scoobeez to AutoClaim Inc. for over $1.6 million


What are these for and what is this AutoClaim Inc. business checking account? This does not make any sense.


Imran

_____

Shahan claimed the funds from these accounts are used for Business purposes:

    a)  Enterprise Rentals
    b)  Payments to Technology Team (Roman/Steven/Sytepoint)
    c)  Client entertainment

Shahan did not provide access to this bank account as of 03/04/17.

Exhibit 10. Page 262

Since I had no access to this account, I confirmed with Roman/Steven if they have received funds from Business Account xxx-xxx-4724. Roman confirmed that he has never received payments from this account. Steven has received $1,200.00 in July 2015:

---------------------------

**From:** Roman Tsarovsky [mailto:roman@scoobeez.com]
**Sent:** Saturday, March 4, 2017 9:53 AM
**To:** Scoobeez - Imran <imran@scoobeez.com>
**Subject:** Re: Payments Received

Yes confirmed!

Thank you,

Roman Tsarovsky

Cell: (818) 606-9522

On Mar 4, 2017, at 7:00 AM, Scoobeez - Imran <imran@scoobeez.com> wrote:

Hi Roman:

Thank you for the breakdown and details of the invoices needed for our audit. It also confirms that you (dba Appeni – IT Company) have not received any payments from the AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 below for development of AutoClaim App, Beezkeeper/Instabeez, and any other projects on behalf of ABT/Scoobeez since September of 2016.

All the payments you have received are from Scoobeez WF Business Account – xxx-xxx-1330.

Please confirm.

Best,

| Imran Firoz – CFO | Los Angeles |
|---|---|
| p: 844-Scoobeez | m: 818-300-5792 |
| w: www.Scoobeez.com | e: imran@scoobeez.com |

Exhibit 10. Page 263

---

From: Steven Karapetyan [mailto:steven@sytepoint.com]
Sent: Saturday, March 4, 2017 10:14 AM
To: Scoobeez - Imran <imran@scoobeez.com>
Subject: Re: Sytepoint Expenses - From Business Checking xxx-xxx-4724

Hi Imran,

From what I have on file, there is one check from AUTOCLAIM, INC. – 4724

Check No: 1001

To: BizCrate (previous business)

Date: 07/11/2015

Amount: 1,200

Steven Karapetyan - Designer, Developer

--

Sytepoint / 323.988.5600

Exhibit 10. Page 264

At 06:00 PM, after making several requests via text and on the phone, Imran Firoz officially sent the request to Shahan as per following email:

From: Scoobeez - Imran [mailto:imran@scoobeez.com]
Sent: Friday, March 3, 2017 6:01 PM
To: 'Shahan@Scoobeez.com' <Shahan@Scoobeez.com>
Subject: RE: Unaccounted Funds from ABT/Scoobeez

Shahan:

I confirm the $1 million cash withdrawn on 10/20/16, 10/31/16 and 11/04/16 from ABT is accounted and recorded in Scoobeez account.

I need full access to AutoClaim Business account, where the total transfer of $1,695,000 from Scoobeez Account has taken place for the period from 09/26/16 to 03/03/17. We need to know how and where the monies were spent from that account so that our true income statement and the balance sheet is reported to the auditors. This is an off balance sheet transaction and needs to be disclosed in our filings.

You need to inform the Board on how much money has been spent on AutoClaim App development, as this money has to be added to the book value of the App to obtain fair value.

ABT acquired the App in May 2015, with the premise that App was ready for launch with the beta testing (software developed, UI completed, back-end completed, a database developed, etc.). Based on these claims, the Company (ABT) issued $500,000 note, 150 million common stock, and 18.6 million preferred stock. I think the Board and I would like to know what level the App was in May 2015 (the date of Acquisition).

Best,

Imran

Exhibit 10. Page 265

**EVENT 4 – 03/04/17, Meeting Shahan, Imran and Javan at Shahan's Residence from 02:00 PM to 06:00 PM**

Exhibit 10. Page 266

EVENT 5 – 03/05/17, Shahan provided view only access to his account AutoClaim, Inc. Business xxx-4724. Transaction details in Checking XXX-XXX-4724.xls.

### SUMMARY REPORT:

| | Debit | Credit | UBO [1] |
|---|---|---|---|
| **Event 1 (From 09/01/16 to 03/08/17)** | | | |
| Funds Transfer from Scoobeez Checking Account xxx-xxx-1330 | 1,696,500 | | Scoobeez |
| Funds Transfer to Shahan/AutoClaim Checking Account xxx-xxx-4724 | | 1,696,500 | Shahan |
| | 1,696,500 | 1,696,500 | |
| **Event 2 (From 09/01/16 to 03/08/17)** | | | |
| Funds Transfer from Shahan/AutoClaim Checking Account xxx-xxx-4724 | 1,696,500 | | Shahan |
| Funds from Shahan Personal Account (Premier Checking xxx-xxx-2672) | 16,110 | | Shahan |
| Funds from ABT Holdings (Business Checking xxx-xxx-7830) | 2,800 | | Shahan |
| Funds Deposited by Shahan (Source Unkown) | | | Shahan |
| Funds to Shahan Personal Account (Premier Checking xxx-xxx-2672) | | 390,580 | Shahan |
| Cash Withdrawal by Shahan at Wynn | | 715,006 | Shahan |
| ATM Fees at Wynn | | 10,774 | Wynn |
| Cash Withdrawal by Shahan at the Branch | | 473,699 | Shahan |
| **Business Related** | | | |
| Funds Transfer to Scoobeez Checking Account xxx-xxx-1330 | | 5,000 | Scoobeez |
| Enterprise | | 149,012 | Enterpise |
| Bank Fees | | 121 | Wells Fargo |
| Ending Balance | 28,782 | | |
| | 1,744,192 | 1,744,192 | 0 |

Exhibit 10. Page 267

36

2011 Idaho Code
TITLE 30 CORPORATIONS
CHAPTER 1 GENERAL BUSINESS CORPORATIONS

PART 7. SHAREHOLDERS
30-1-704 ACTION WITHOUT MEETING.

Universal Citation: ID Code § 30-1-704 (2011 through Reg Sess)
30-1-704. Action without meeting. (1) Action required or permitted by this chapter to be taken at a shareholders' meeting may be taken without a meeting if the action is taken by all the shareholders entitled to vote on the action. The action must be evidenced by one (1) or more written consents bearing the date of signature and describing the action taken, signed by all the shareholders entitled to vote on the action, and delivered to the corporation for inclusion in the minutes or filing with the corporate records.

(2) If not otherwise fixed under section 30-1-703 or 30-1-707, Idaho Code, the record date for determining shareholders entitled to take action without a meeting is the date the first shareholder signs the consent under subsection (1) of this section. No written consent shall be effective to take the corporate action referred to therein unless, within sixty (60) days of the earliest date appearing on a consent delivered to the corporation in the manner required by this section, written consents signed by all shareholders entitled to vote on the action are received by the corporation. A written consent may be revoked by a writing to that effect received by the corporation prior to the receipt by the corporation of unrevoked written consents sufficient in number to take corporate action.

(3) A consent signed under this section has the effect of a meeting vote and may be described as such in any document.

(4) If this chapter requires that notice of proposed action be given to nonvoting shareholders and the action is to be taken by unanimous consent of the voting shareholders, the corporation must give its nonvoting shareholders written notice of the proposed action at least ten (10) days before the action is taken. The notice must contain or be accompanied by the same material that, under this chapter, would have been required to be sent to nonvoting shareholders in a notice of meeting at which the proposed action would have been submitted to the shareholders for action.

Exhibit 10. Page 268

| From: | Justin Cary |
|---|---|
| To: | Imran@scoobeez.com |
| Subject: | FS status |
| Date: | Wednesday, March 1, 2017 11:31:40 PM |

Hi Imran. I've put together a consolidation for the entities and it appears there will be some work related to reconciling the intercompany accounts. The main difference is the following:

Per ABT loan to Scoobeez: $5,559,029
Per Scoobeez loan from ABT: $3,159,029

That's a difference of $2.4M. That one may be easy but there is also some other various entries that I'll need to track down and reconcile from other intercompany accounts, including booking the non-controlling interest income from 2015 in the main Scoobeez entity. Please let me know though if you know offhand what the aforementioned $2.4M variance is when you're available.

Justin Cary, CPA
307 32nd Street
Newport Beach, CA 92663
Phone: 269-209-7566
JCary.CPA@gmail.com

Exhibit 10. Page 269

| | |
|---|---|
| **From:** | Imran - Scoobeez |
| **To:** | Justin Cary |
| **Cc:** | Diane - Scoobeez |
| **Subject:** | RE: FS status |
| **Date:** | Thursday, March 2, 2017 12:55:38 AM |
| **Attachments:** | Untitled attachment 02150.txt |
| | Untitled attachment 02153.txt |
| | Untitled attachment 02156.htm |
| | Untitled attachment 02159.txt |

Thank you. Let me have a look, the loan should be $5,559,029 on Scoobeez books.

Imran

Sent via the Samsung Galaxy S7 edge, an AT&T 4G LTE smartphone

Exhibit 10. Page 270

| From: | Scoobeez - Imran |
| To: | "shahan@scoobeez.com" |
| Subject: | Auto Claim Transfers |
| Date: | Friday, March 3, 2017 9:05:00 AM |
| Attachments: | AutoClaim Inc..xlsx |

Hi Shahan:

These are transfers from Scoobeez to AutoClaim Inc. for over $1.6 million

What are these for and what is this AutoClaim Inc. business checking account? This does not make any sense.

Imran

Exhibit 10. Page 271

40

| From: | Scoobeez - Imran |
|---|---|
| To: | "Shahan@Scoobeez.com" |
| Subject: | RE: Unaccounted Funds from ABT/Scoobeez |
| Date: | Friday, March 3, 2017 6:00:00 PM |
| Attachments: | Image002.png |
| | Image004.png |
| | Image006.png |

Shahan:

I confirm the $1 million cash withdrawn on 10/20/16, 10/31/16 and 11/04/16 from ABT is accounted and recorded in Scoobeez account.

I need full access to AutoClaim Business account, where the total transfer of $1,695,000 from Scoobeez Account has taken place for the period from 09/26/16 to 03/03/17. We need to know how and where the monies were spent from that account so that our true income statement and the balance sheet is reported to the auditors. This is an off balance sheet transaction and needs to be disclosed in our filings.

You need to inform the Board on how much money has been spent on AutoClaim App development, as this money has to be added to the book value of the App to obtain fair value.

ABT acquired the App in May 2015, with the premise that App was ready for launch with the beta testing (software developed, UI completed, back-end completed, a database developed, etc.). Based on these claims, the Company (ABT) issued $500,000 note, 150 million common stock, and 18.6 million preferred stock. I think the Board and I would like to know what level the App was in May 2015 (the date of Acquisition).

Best,

Imran

From: Shahan@Scoobeez.com [mailto:Shahan@Scoobeez.com]
Sent: Friday, March 3, 2017 4:07 PM
To: Scoobeez - Imran <Imran@scoobeez.com>
Subject: Re: Unaccounted Funds from ABT/Scoobeez

**10/31/2016 - Money transferred from ABT to Scoobeez**

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 10/31 | | Deposit Made In A Branch/Store | 250,000.00 | | |
| 10/31 | | Purchase authorized on 10/28 Omni Fort Worth Fort Worth TX 8586398704000203 Card 5837 | | 1,056.87 | |

**$500K transferred from ABT to Scoobeez**

| | | | | | |
|---|---|---|---|---|---|
| 10/20 | | Purchase Return authorized on 10/19 Southwes 528249 800-435-9792 TX 883029454326M023 Card 1303 | 544.96 | | |
| 10/20 | | Deposit Made In A Branch/Store | 500,000.00 | | |
| 10/20 | | Purchase authorized on 10/17 Omni Fort Worth Fort Worth TX 8305230616101444 Card 5837 | | 18.72 | |

11/4

**$250 K transferred from ABT to Scoobeez**

| | | | | | |
|---|---|---|---|---|---|
| 11/4 | | Purchase Return authorized on 11/02 Wynn Las Vegas Hot 702-770-2546 NV 883050664 7025063 Card 1303 | 165.83 | | |
| 11/4 | | Deposit Made In A Branch/Store | 250,000.00 | | |
| 11/4 | | Purchase authorized on 11/02 Wynn Las Vegas Hot 702-770-2546 NV 8336305044975621 Card 1303 | | 10.16 | |

Exhibit 10. Page 272

Thanks

Shahan - Scoobeez Global
Cell: (818) 400-0338
Office: 844-Scoobeez

Email: Shahan@Scoobeez.com
Website: www.Scoobeez.com



NOTICE: This e-mail and any attachments are confidential and legally privilege. If you the reader of this message are not the intended recipient(s), be aware than any disclosure, copying, distribution or use of this e-mail or any attachments is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. This communicated is not intended as a waiver or comprehensive statement of our rights, or legal contentions with regards to this matter, all of which are hereby expressly reserved. Thank you for your cooperation. Scoobeez, Inc. Visit us on the web at www.Scoobeez.com

On Friday March 3, 2017, at Friday 3:36 PM, Scoobeez - Imran <imran@scoobeez.com> wrote:

Hi Shahan:

WF called and confirmed the Branch and address where these withdrawals were made:

10/20/16 – Las Vegas Tower, 3800 Howard Hughes Parkway, Las Vegas, NV 89169, Shahan Ohanessian (WF Branch)

10/31/16 - 250,000 3433 S. Maryland Parkway, Las Vegas, NV 89169, Shahan Ohanessian (WF Branch)

11/04/16 - 250,000, 201 Main Street, Fort Worth, Texas 76102, Shahan Ohanessian (WF Branch)

I'm sure it matches with your travel itinerary.

Are you sure that you still did not withdraw these monies?

Best,

Imran

From: Scoobeez - Imran [mailto:imran@scoobeez.com]
Sent: Friday, March 3, 2017 3:14 PM
To: 'shahan@scoobeez.com' <shahan@scoobeez.com>
Subject: RE: Unaccounted Funds from ABT/Scoobeez

Hi Shahan:

Wells Fargo just confirmed that Shahan Ohanessian withdrew the monies in cash on 10/20/16, 10/31/16 and 11/04/16.

I will go to the bank tomorrow to get this confirmation in writing.

Exhibit 10. Page 273

Imran

From: Scoobeez - Imran [mailto:imran@scoobeez.com]
Sent: Friday, March 3, 2017 12:58 PM
To: 'shahan@scoobeez.com' <shahan@scoobeez.com>
Subject: Unaccounted Funds from ABT/Scoobeez

Hi Shahan:

We need to account for these funds that were withdrawn by you:

From ABT Account after Hillair 1 funding = $1,000,000:

| | | | | |
|---|---|---|---|---|
| 10/20/2016 | Expense | WITHDRAWAL MADE IN A BRANCH/STORE | 10000 WF-▮▮▮▮830 | 500,000.00 |
| 10/31/2016 | Expense | WITHDRAWAL MADE IN A BRANCH/STORE | 10000 WF-▮▮▮▮830 | 250,000.00 |
| 11/04/2016 | Expense | WITHDRAWAL MADE IN A BRANCH/STORE | 10000 WF-▮▮▮▮830 | 250,000.00 |

Scoobeez did not receive the above funds.

Transfer to AutoClaim Inc./Shahan Account Business Checking xxx4724: $1,695,000

Total = $2,695,000.

Please provide details of this transaction and view only access to account 4724.

Best,

<image001.png> | Imran Firoz – CFO          Los Angeles
                 p: 844-Scoobeez           m: 818-300-5792
                 w: www.Scoobeez.com       e: imran@scoobeez.com

43

Exhibit 10. Page 274

From:        Roman Tsarovsky
To:          Scoobeez – Imran
Subject:     Re: Payments Received
Date:        Saturday, March 4, 2017 9:52:52 AM

Yes confirmed!

Thank you,

Roman Tsarovsky
Cell: (818) 606-9522

On Mar 4, 2017, at 7:00 AM, Scoobeez - Imran <imran@scoobeez.com> wrote:

Hi Roman:

Thank you for the breakdown and details of the invoices needed for our audit. It also confirms that you (dba Appeni – IT Company) have not received any payments from the AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724 below for development of AutoClaim App, Beezkeeper/Instabeez, and any other projects on behalf of ABT/Scoobeez since September of 2016.

All the payments you have received are from Scoobeez WF Business Account – xxx-xxx-1330.

Please confirm.

Best,

<image001.png>  |  **Imran Firoz – CFO**              Los Angeles
                   p: 844-Scoobeez                  m: 818-300-5792
                   w: www.Scoobeez.com              e: imran@scoobeez.com

From: Roman Tsarovsky [mailto:roman@scoobeez.com]
Sent: Friday, March 3, 2017 9:06 PM
To: Imran Scoobeez <imran@scoobeez.com>
Subject: Payments Received

Exhibit 10. Page 275

Hello,

please find the breakdown.

Sent with Unibox

Exhibit 10. Page 276

| | |
|---|---|
| **From:** | Steven Karapetyan |
| **To:** | Scoobeez - Imran |
| **Subject:** | Re: Sytepoint Expenses - From Business Checking xxx-xxx-4724 |
| **Date:** | Saturday, March 4, 2017 10:14:15 AM |
| **Attachments:** | image001.png |

Hi Imran,

From what I have on file, there is one check from AUTOCLAIM, INC. – 4724

Check No: 1001
To: BizCrate (previous business)
Date: 07/11/2015
Amount: 1,200

Steven Karapetyan - Designer, Developer

--

Sytepoint / 323.986.5600

---

**From:** Scoobeez - Imran <imran@scoobeez.com>
**Date:** Saturday, March 4, 2017 at 6:50 AM
**To:** Steven Karapetyan <steven@sytepoint.com>
**Subject:** Sytepoint Expenses - From Business Checking xxx-xxx-4724

Hi Steven:

I hope you are doing well.

Please email me total funds received by Sytepoint or you from AutoClaim Business Account ending
as:
AUTOCLAIM, INC. BUSINESS CHECKING XXXXXX4724

If you have not received any payments from the above account, please let me know. I do have all the
payments from Scoobeez WF account ending xxx-xxx-1330 to Sytepoint.

Best,



Imran Firoz – CFO          Los Angeles
p: 844-Scoobeez           m: 818-300-5792
w: www.Scoobeez.com       e: imran@scoobeez.com

Exhibit 10. Page 277

| | |
|---|---|
| **From:** | Neal Kaufman |
| **To:** | Imran Firoz; Shahan Ohanessian |
| **Cc:** | Vienna Chen; Sean M. McAvoy |
| **Subject:** | Meeting tomorrow (Wed) |
| **Date:** | Tuesday, March 7, 2017 9:46:55 PM |
| **Attachments:** | image001.png |

Shahan / Imran

Tomorrow I should be available around 11am, and I'll come right to the meeting. I have a hard stop at 3pm for a Board Call, so – if it's okay with you guys – it would be great if I could use the conference room for that call.

In addition to reviewing the financials (income statement, balance sheet) for 2016 and Jan / Feb 2017, I am especially interested in understanding the economics of each of the 4 major locations: Chicago, LA, SF, Texas. I would like to see projections for March for each location:

- Number of routes (Same Day, Next Day, 10 hour and 6 hour)
- Revenue per route from Amazon
- Revenue from Amazon for dispatchers and fuel (does this match the actual expenditures in each location?)
- Driver compensation per hour (how much the drivers receive, and then fully loaded with benefits and workman's comp)
- Fuel and maintenance costs
- Personnel in each region - # of dispatchers, admin, etc., and monthly cost per employee fully loaded with benefits. Total personnel costs per region
- This should give us the amount of profit / loss that we have per region at an operational level
- Then, it would be good to understand the corporate costs (payroll, rent, etc.). This should take into account the impact of allocating benefits and workmans comp to the regions.

Look forward to seeing you guys tomorrow.

Thanks
NK


**Neal Kaufman**
*Partner / Founding Member*
**HILLAIR**
CAPITAL
NealK@HillairCapital.com
415-420-6600

47

Exhibit 10. Page 278

| From: | Neal Kaufman |
|---|---|
| To: | Shahan Ohanessian; Imran Firoz |
| Cc: | Javan Khazali; Sean M. McAvoy; Neal Kaufman |
| Subject: | Path forward for ABOT / Hillair |
| Date: | Thursday, March 9, 2017 11:55:46 AM |
| Attachments: | Image001.png |

Shahan and Imran

Thank you for taking the time to meet with Sean and I yesterday in Irvine, CA. It was helpful to
get an update on the situation at ABOT, and hopefully we can work together to build a
successful business.

Hillair is interested in working on a follow-up investment in ABOT, if the following measures
are taken by Friday, March 9, we could start working on docs early next week with the
objective of formalizing the transaction as soon as possible:

- Shahan resigns as CEO, and Imran is appointed interim CEO
- Shahan's wife resigns from the Board of Directors
- Shahan contributes at least $170,000 to ABOT between March 9 and March 14, which
  can be returned upon successful completion of the larger investment by Hillair
- Shahan will be removed from having signatory power on any ABOT bank accounts,
  including all subsidiaries. The signatory power will only reside with Imran, one other
  Board member, and any other people in the finance department identified by Imran and
  approved by the independent Board members.

Upon successful negotiation with Amazon regarding the go forwards payment terms such that
the company generates cash on a go forwards basis, the terms below cover the key points of a
follow-on investment:

- Hillair would have the right to invest additional capital (amount to be determined based
  on Amazon arrangement, analysis of financial model, Board approval) to enable ABOT to
  continue to grow. In exchange for the investment, Hillair would:
  - Receive preferred stock that would convert into 55% of the common stock of the
    company. This preferred stock would have an 8% PIK coupon, and would have 2 4
    to 1 voting rights.
  - Hillair's debentures would remain in place
- Shahan's arrangement would be as follows:
  - Shahan would convert all preferred shares into common, and would surrender all
    of his shares such that he had 25% of the outstanding common shares after the
    conversion of the Hillair preferred shares
    - Shahan would have the option to purchase shares representing up to 10%
      of the Hillair shares at a fixed price, to be mutually determined
  - Shahan would receive a cash salary as Chairman, at a level of at least $180,000
    per year

Exhibit 10. Page 279

48

# EXHIBIT 2

# EXHIBIT 2

1  STEVEN M. SPECTOR (SBN: 51623)
      sspector@buchalter.com
2  ANTHONY J. NAPOLITANO (SBN: 227691)
      anapolitano@buchalter.com
3  BUCHALTER, A Professional Corporation
   1000 Wilshire Boulevard, Suite 1500
4  Los Angeles, CA 90017-2457
   Telephone: (213) 891-0700
5  Facsimile:: (213) 896-0400

6  ADAM H. FRIEDMAN (pro hac vice to be filed)
      afriedman@olshanlaw.com
7  OLSHAN FROME WOLOSKY LLP
   1325 Avenue of the Americas
8  New York, NY 10019
   Telephone: (212) 451-2216
9  Facsimile: (212) 451-2222

10 Attorneys for secured creditor
   HILLAIR CAPITAL MANAGEMENT, LLC

11              UNITED STATES BANKRUPTCY COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                   LOS ANGELES DIVISION

14 | In re                          | Lead Case No. 2:19-bk-14989-WB
15 |                                 |
   | SCOOBEEZ, INC., et al.          | Chapter 11
16 |                                 |
   |              Debtors and Debtors | (Jointly Administered with
17 |              in Possession.     | Case Nos. 2:19-bk-14991; 2:19-bk-14997)

18 | Affects:                        | HILLAIR CAPITAL MANAGEMENT, LLC'S
19 | ☒   All Debtors                 | NOTICE OF MOTION AND MOTION TO
   |                                 | APPROVE TERMS OF PROPOSED
20 | ☐   SCOOBEEZ, INC., only        | STIPULATION FOR INTERIM USE OF CASH
21 |                                 | COLLATERAL
   | ☐   SCOOBEEZ GLOBAL, INC.       |
22 |     only                        | Hearing:
   |                                 | Date:      June 6, 2019
23 | ☐   SCOOBUR, LLC only           | Time:      10:00 a.m.
24 |                                 | Place:     U.S. Bankruptcy Court
   |                                 |            Courtroom 1375
25 |                                 |            255 East Temple Street
   |                                 |            Los Angeles, CA 90012
26
27
28

1   TO THE HONORABLE JULIA BRAND, UNITED STATES BANKRUPTCY JUDGE,

2   THE DEBTORS, THEIR COUNSEL AND ALL PARTIES IN INTEREST:

3        PLEASE TAKE NOTICE THAT Hillair Capital Management LLC and its affiliates

4   (collectively, "Hillair"), senior secured creditor of Scoobeez, Inc., a California corporation, debtor

5   in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its affiliated debtors,

6   Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez

7   Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the

8   "Debtors"), hereby move the Court (the "Motion") for entry of an order approving the terms of

9   the *[Proposed] Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of*

10  *Chief Restructuring Officer* (the "Proposed Stipulation").

11       PLEASE TAKE FURTHER NOTICE THAT the Proposed Stipulation between Hillair

12  and the Debtors governs the Debtors' proposed use of Hillair's cash collateral in exchange for

13  (1) the payment of $40,000 per week to Hillair in adequate protection, (2) the granting of post-

14  petition liens in substantially all of the Debtors' and the Debtors' bankruptcy estates ("Estates")

15  assets and administrative claims to Hillair, (3) the acknowledgment of the validity and the

16  enforceability of Hillair's secured claims and liens, (4) the waiver of certain rights of the Debtors

17  and their Estates against Hillair and (5) the requirement of the Debtors to provide various reports

18  to Hillair.  A copy of the Proposed Stipulation is attached hereto as **Exhibit 1** and sets forth the

19  precise terms of the agreement on the useage of cash collateral.

20       PLEASE TAKE FURTHER NOTICE THAT the Court has set a continued hearing on

21  the Debtors' continued use of cash collateral for June 6, 2019 at 10:00 a.m. in Courtroom 1375 in

22  the above-captioned court located at 255 East Temple Street, Los Angeles, CA 90012.

23       PLEASE TAKE FURTHER NOTICE THAT under Local Bankruptcy Rule 9013-1(f),

24  any objection to the relief sought in this Motion or to the terms of the Proposed Stipulation must

25  be filed with the Court and served on counsel for Hillair and counsel for the Debtors not less than

26  14 days before the hearing on the Motion and the Proposed Stipulation.  The Debtors reserve the

27  right to file an objection to the Motion and the terms of the Proposed Stipulation.  If any objection

28  is not filed and served strictly as prescribed herein, the objecting party may be barred from

1

1    objecting to the Motion and the Proposed Stipulation Disclosure Statement and may not be heard

2    at the hearing.

3        **PLEASE TAKE FINAL NOTICE THAT** this Motion and the Proposed Stipulation is

4    based on the Debtors' prior motions seeking authorization to use cash collateral [Docket Nos. 13

5    and 29], Hillair's opposition and supporting documentation filed with respect to the Debtors' cash

6    collateral motions [Docket Nos. 3, 16, 45, 46, and 47], the Court's prior orders granting interim

7    use of cash collateral [Docket No. 52], the records on file with the Court in this above-captioned

8    case and such other evidence as may be presented to the Court at a subsequent hearing.   The

9    foregoing Docket entries are on file with the Court and may be examined by interested parties by

10   accessing the Court's Electronic Case Filing System which can be located through

11   http://www.cacb.uscourts.gov/. In addition, copies of the foregoing may be obtained upon written

12   request to counsel for Hillair at the address listed on the top-left corner of the first page of this

13   Motion.

14   DATED: May 16, 2019                         BUCHALTER, a Professional Corporation

15

16                                              By   /s/ Anthony J. Napolitano
                                                    STEVEN M. SPECTOR
                                                    ANTHONY J. NAPOLITANO

17

18                                              Attorneys for secured creditor
                                                HILLAIR CAPITAL MANAGEMENT, LLC

19

20

21

22

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

Hillair Capital Management LLC and its affiliates (collectively, "Hillair"), senior secured creditor of Scoobeez, Inc., a California corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the "Debtors"), respectfully submits this memorandum of points and authorities in support of its Motion to Approve Terms of Proposed Stipulation for Interim Use of Cash Collateral.

### I.

### INTRODUCTION

The Debtors have been authorized previously to use Hillair's cash collateral pursuant to a a stipulation between the Debtors and Hillair and interim orders of this Court. At the prior cash collateral hearing, the Court set a continued hearing date of June 6, 2019 in order to provide sufficient notice to any interested party of the terms of the *[Proposed] Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer* (the "Proposed Stipulation"), a copy of which of is attached hereto as Exhibit 1. The Court has afforded any interested party an opportunity to review, comment on or object to the Proposed Stipulation as certain provisions are binding upon the Debtors and the Debtors' Estates.

The Proposed Stipulation between Hillair and the Debtors governs the Debtors' proposed use of Hillair's cash collateral in exchange for (1) the payment of $40,000 per week to Hillair in adequate protection, (2) the granting of post-petition liens in substantially all of the Debtors' and the Debtors' bankruptcy estates ("Estates") assets and administrative claims to Hillair, (3) the acknowledgment of the validity and the enforceability of Hillair's secured claims and liens, (4) the waiver of certain rights of the Debtors and their Estates against Hillair and (5) the requirement of the Debtors to provide various reports to Hillair.

While Hillair and the Debtors have agreed to a number of the provisions set forth in the Proposed Stipulation, the filing of this Motion is without prejudice to either party addressing any further additional open issues prior to the hearing on the Motion.

3

## II.

## BACKGROUND

**A.    Hillair provides Scoobeez Global with $8.5 million of financing to fund the Debtors' business operations.**

On October 7, 2016, Scoobeez Global and Hillair entered into that certain Securities Purchase Agreement (the "First SPA"). A true and complete copy of the First SPA is attached as **Exhibit 1** to the previously filed Declaration of Sean M. McAvoy [Docket No. 47] (the "McAvoy Decl."). Under the First SPA, Scoobeez Global issued to Hillair its 8% Senior Secured Convertible Debenture Due October 1, 2018 in the principal sum of $5,800,000 due on October 1, 2018 (the "First Debenture"). A true and complete copy of the First Debenture is attached as **Exhibit 2** to the McAvoy Decl. On January 30, 2017, Scoobeez Global and Hillair entered into that certain Securities Purchase Agreement (the "Second SPA"). A true and complete copy of the Second SPA is attached as **Exhibit 3** to the McAvoy Decl. Under the Second SPA, Scoobeez Global issued to Hillair its 8% Senior Secured Convertible Debenture Due January 1, 2019 in the principal sum of $8,584,000 (the "Second Debenture") due on or before January 1, 2019 (the "Maturity Date"). A true and complete copy of the Second Debenture is attached as **Exhibit 4** to the McAvoy Decl. The Second Debenture includes the obligations of Scoobeez Global to Hillair due under the First Debenture. McAvoy Decl., ¶ 9.

On October 7, 2016, the Debtors entered into that certain Subsidiary Guarantee in favor of Hillair. A true and complete copy of the Subsidiary Guarantee is attached as **Exhibit 5** to the McAvoy Decl. Under the Subsidiary Guarantee, Scoobeez and Scoobur, jointly and severally, unconditionally guaranteed the repayment of Scoobeez Global's obligations to Hillair. McAvoy Decl., ¶ 10. To secure repayment of all obligations owing to Hillair, on October 7, 2016, the Debtors, jointly and severally, executed a Security Agreement. A true and complete copy of the Security Agreement is attached as **Exhibit 6** to the McAvoy Decl. The Security Agreement granted Hillair a security interest in substantially <u>all</u> of the assets of the Debtors, including accounts receivable and the proceeds thereof. McAvoy Decl., ¶ 11. Hillair duly perfected its security interest in the assets by filing UCC-1 financing statements as follows:  (a) as to Scoobeez

4

1  Global, a financing statement was filed with the Idaho Secretary of State on October 11, 2016, as

2  File No. B-2016-1183112-1; (b) as to Scoobeez, a financing statement was filed with the

3  California Secretary of State on October 11, 2016 as File No. 16-7550581531; (c) as to Scoobur,

4  a financing statement was filed with the California Secretary of State on October 11, 2016 as file

5  no. 16-7550581210.  True and complete copies of the UCC-1 Financing Statements are attached

6  collectively as **Exhibit 7** to the McAvoy Decl.

7      **B.     The Debtors have defaulted on their obligations owing to Hillair.**

8      Events of monetary and non-monetary default by the Debtors under both the Second

9  Debenture and the Subsidiary Guarantee have occurred, and continue to occur.  The penultimate

10  default was failure of the Debtors to pay the entire amount due and owing to Hillair under the

11  Second Debenture on the Maturity Date.  McAvoy Decl., ¶ 12.  Other significant defaults include

12  but are not limited to: (i) the incurrence of indebtedness greater than the agreed maximum as

13  referenced in Section 7(a) of the Second Debenture without the prior written consent of Hillair;

14  (ii) the failure to make Periodic Redemption Payments and the failure to pay accrued interest

15  thereon; (iii) the failure to make Quarterly Interest Payments; and (iv) suffering a material

16  adverse change in its financial condition which has impaired its ability to perform under the

17  Second SPA and Second Debenture.  McAvoy Decl., ¶ 13.

18      As a result of the Debtors' failure to pay the obligations owing to Hillair by the Maturity

19  Date, Hillair sent a notice of default and demand for payment to Scoobeez Global (the "Default

20  Letter").  Scoobeez has failed and refused, and continues to fail and refuse, to pay the sums due

21  thereunder or any part thereof.  McAvoy Decl., ¶ 14.  As a result, there is due, owing and unpaid

22  to Hillair by the Debtors the principal sum of $11,153,098, plus accrued and accruing unpaid

23  interest, late charges, and legal fees together with other miscellaneous charges set forth in the

24  Second Debenture.  McAvoy Decl., ¶ 15.

25

26

27

28

5

HILLAIR CAPITAL MANAGEMENT, LLC'S MOTION TO APPROVE TERMS OF
PROPOSED STIPULATION FOR INTERIM USE OF CASH COLLATERAL

BN 36489560V1

# III.

## ARGUMENT

**A.   Hillair, as the Debtors' senior secured creditor, is entitled to adequate protection of its interests.**

Section 363 of the Bankruptcy Code provides that a debtor-in-possession may only use cash collateral with the secured creditor's consent or upon order of the Court.  Protection of a secured lender's interest in collateral is rooted in the Fifth Amendment of the United States Constitution and the secured lender's interest is universally recognized as a property right afforded the highest protection under the law.  *See Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273 (1940); H.R. Rep. No. 595, 95th Cong., 1st Sess. 339 (1977) ("The concept is derived from the fifth amendment protection of property interests").  "Adequate protection" is intended to safeguard Hillair's constitutional right to have the value of its secured claim, as it existed on the petition date, preserved.  *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370 (1988).; *see also In re Keystone Camera Prods. Corp.*, 126 B.R. 177, 183 (Bankr. D.N.J. 1991) ("A secured creditor has a constitutional right to have the value of its secured claim on the petition date preserved.").

In order to authorize the use of cash collateral without the secured creditor's consent, the Court must make a finding that the secured creditor's interest in the cash collateral is adequately protected.  Section 361 of the Bankruptcy Code provides three non-exclusive means of providing adequate protection.  These alternatives include (i) requiring the debtor to make a cash payment or periodic cash payments to the secured party; (ii) providing an additional or replacement liens to the secured party; or (iii) granting other relief that will result in the indubitable equivalent of the interest in the property.  *See* 11 U.S.C. § 361.  The debtor has the burden of proving the issue of adequate protection.  *See* 11 U.S.C. § 363(p)(1).  If adequate protection cannot be provided, then the use of the cash collateral must be prohibited.  *See In re Megan-Racine Assocs Inc.*, 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996).

In determining whether a creditor's interest will be adequately protected, the debtor's prior conduct may be a relevant factor.  *In re Colonial Center, Inc.*, 156 B.R. 452, 463 (Bankr.

1   E.D. Pa. 1993).   Moreover, "[e]ven in situations where adequate protections are available cash

2   collateral can not be used for a nonbusiness purpose."   *In re Plaza Family P'ship*, 95 B.R. 166,

3   174 (E.D. Ca. 1989) (even where there is an equity cushion, the debtor cannot use discharge its

4   duties by using funds for "personal use.").

5                                                          **IV.**

6                                                  **CONCLUSION**

7          Based on the foregoing, Hillair respectfully requests that the Court enter an order

8   approving the terms of the Proposed Stipulation, and grant such other relief as is just and proper.

9   DATED: May 16, 2019                          BUCHALTER, a Professional Corporation

10
                                                 By   */s/ Anthony J. Napolitano*
11                                                     STEVEN M. SPECTOR
                                                       ANTHONY J. NAPOLITANO
12
                                                 Attorneys for secured creditor
13                                               HILLAIR CAPITAL MANAGEMENT, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BN 36489560V1

# EXHIBIT 1

1  STEVEN M. SPECTOR (SBN: 51623)
       sspector@buchalter.com
2  ANTHONY J. NAPOLITANO (SBN: 227691)
       anapolitano@buchalter.com
3  BUCHALTER, A Professional Corporation
   1000 Wilshire Boulevard, Suite 1500
4  Los Angeles, CA 90017-2457
   Telephone: (213) 891-0700
5  Facsimile:: (213) 896-0400

6  ADAM H. FRIEDMAN (pro hac vice to be filed)
       afriedman@olshanlaw.com
7  OLSHAN FROME WOLOSKY LLP
   1325 Avenue of the Americas
8  New York, NY 10019
   Telephone: (212) 451-2216
9  Facsimile: (212) 451-2222

10

11 Attorneys for secured creditor
   HILLAIR CAPITAL MANAGEMENT, LLC

12              UNITED STATES BANKRUPTCY COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                    LOS ANGELES DIVISION

15 In re                                Lead Case No. 2:19-bk-14989-WB

16 SCOOBEEZ, INC., et al.               Chapter 11

17              Debtors and Debtors     (Jointly Administered with
                in Possession.         Case Nos. 2:19-bk-14991; 2:19-bk-14997)
18

19 Affects:                            [PROPOSED] STIPULATION BETWEEN THE
                                       DEBTORS AND HILLAIR CAPITAL
20 ☒ All Debtors                       MANAGEMENT FOR (1) AUTHORIZATION
                                       TO USE CASH COLLATERAL ON AN
21 ☐ SCOOBEEZ, INC., only              INTERIM BASIS; (2) APPOINTMENT OF A
                                       CHIEF RESTRUCTURING OFFICER
22 ☐ SCOOBEEZ GLOBAL, INC.
     only
23                                     Hearing:
   ☐ SCOOBUR, LLC only                 Date:    May 14, 2019
24                                     Time:    2:00 p.m.
                                       Place:   U.S. Bankruptcy Court
25                                              Courtroom 1375
                                                255 East Temple Street
26                                              Los Angeles, CA 90012

27

28                                              1

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v2

[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER    Exhibit 1, Page 000009

58

1  **TO THE HONORABLE JULIA BRAND, UNITED STATES BANKRUPTCY JUDGE,**

2  **THE DEBTORS, THEIR COUNSEL AND ALL PARTIES IN INTEREST:**

3       Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general partner of

4  Hillair Capital Investments LP (collectively, "Hillair"), on the one hand, and Scoobeez, Inc., a

5  California corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"),

6  and its affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT

7  Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company

8  ("Scoobur") (collectively, the "Debtors"), on the other hand, hereby enter into this *Stipulation for*

9  *(1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer* as

10  follows.

11                          **RECITALS**

12       **I.     The Debtors' secured obligations to Hillair.**

13       A.    On October 7, 2016, Scoobeez Global and Hillair entered into that certain

14  Securities Purchase Agreement (the "First SPA"). Under the First SPA, Scoobeez Global issued

15  to Hillair its 8% Senior Secured Convertible Debenture Due October 1, 2018 in the principal sum

16  of $5,800,000 due on October 1, 2018 (the "First Debenture").

17       B.    On January 30, 2017, Scoobeez Global and Hillair entered into that certain

18  Securities Purchase Agreement (the "Second SPA"). Under the Second SPA, Scoobeez Global

19  issued to Hillair its 8% Senior Secured Convertible Debenture Due January 1, 2019 in the

20  principal sum of $8,584,000 (the "Second Debenture") due on or before January 1, 2019 (the

21  "Maturity Date"). The Second Debenture includes the obligations of Scoobeez Global to Hillair

22  due under the First Debenture.

23       C.    On October 7, 2016, the Debtors entered into that certain Subsidiary Guarantee in

24  favor of Hillair. Under the Subsidiary Guarantee, Scoobeez and Scoobur, jointly and severally,

25  unconditionally guaranteed the repayment of Scoobeez Global's obligations to Hillair. To secure

26  repayment of all obligations owing to Hillair, on October 7, 2016, the Debtors, jointly and

27  severally, executed a Security Agreement.

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v2

2

[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER
59                                                    Exhibit 1, Page 000010

1      D.     The Security Agreement granted Hillair a security interest in substantially <u>all</u> of

2 the assets of the Debtors, including cash, cash equivalents, accounts receivable and the proceeds

3 thereof.  Hillair duly perfected its security interest in the assets by filing UCC-1 financing

4 statements as follows:  (a) as to Scoobeez Global, a financing statement was filed with the Idaho

5 Secretary of State on October 11, 2016, as File No. B-2016-1183112-1; (b) as to Scoobeez, a

6 financing statement was filed with the California Secretary of State on October 11, 2016 as File

7 No. 16-7550581531; (c) as to Scoobur, a financing statement was filed with the California

8 Secretary of State on October 11, 2016 as file no. 16-7550581210.  The First SPA, the First

9 Debenture, the Second SPA, the Second Debenture, the Subsidiary Guarantee, the Security

10 Agreement and the UCC-1 Financing Statements are collectively referred to herein as the "Loan

11 Documents."

12      **II.**     **The Debtors file their chapter 11 bankruptcy cases.**

13      E.     On April 30, 2019 (the "Petition Date"), the Debtors each filed their own voluntary

14 chapter 11 petitions thereby commencing the above-captioned chapter 11 bankruptcy case.  On

15 May 1, 2019, at the hearing on the Debtors' "first-day" motions seeking authorization (1) for the

16 Debtors' interim use of cash collateral [Docket No. 13]; (2) to continue the maintenance of

17 existing bank accounts and cash management systems [Docket No. 7]; and (3) the payment of

18 prepetition wages and continuation of employee programs [Docket No. 8], the Court authorized

19 interim use of cash collateral though May 14, 2019, subject to further briefing and a further

20 hearing on the continued use of cash collateral.

21      NOW, THEREFORE, based upon the foregoing Recitals, and for good and valuable

22 consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, and

23 the parties hereto intending to be legally bound hereby, by and through their respective attorneys

24 of record, hereby agree and stipulate as follows:

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

# AGREEMENT

1. **Incorporation of Recitals.**

    1.1    The Recitals set forth above is incorporated herein by this reference and shall be deemed a material part of this Stipulation.

2. **Prepetition Obligations and Security Interests.**

    2.1    The Debtors, on their own behalf and on behalf of their bankruptcy estates (the "Estates"), admit, stipulate and agree as follows:

        (a)    <u>Prepetition Obligations</u>.  As of the Petition Date, the Debtors were obligated to Hillair for the obligations arising under or relating to the prepetition Loan Documents (collectively, the "Prepetition Obligations").  The Prepetition Obligations (1) were fully accelerated, due and payable to Hillair in the aggregate principal amount of not less than $11,153,098.00 and accrued interest in the amount of not less than $370,363.00, plus additional interest, costs, fees and charges recoverable under the documents or by law, (2) constitute legal, valid, binding and enforceable obligations of the Debtors, and (3) are not subject to any objection, offset, avoidance, subordination or other claim or challenge of any nature under the Bankruptcy Code, any other applicable law, contract or otherwise.

        (b)    <u>Prepetition Liens and Collateral</u>.  As of the Petition Date, the Prepetition Obligations were secured by certain liens and security interests in favor of Hillair (the "Prepetition Liens").  The Prepetition Liens (a) encumber all of the Debtors' right, title and interest in assets described in the Loan Documents and existing as of the Petition Date including, without limitation, all accounts, equipment, inventory, general intangibles and proceeds, attachments and accessions to the foregoing (as previously defined, the "Collateral"), (b) secure performance of the Prepetition Obligations pursuant to the Loan Documents, (c) constitute legal, valid, enforceable, non-avoidable and duly perfected security interests and liens in and upon the Collateral in favor of Hillair, (d) are not subject to any objection, offset, avoidance, subordination or other claim or challenge of any nature by the Debtors under the Bankruptcy Code, any other applicable law, contract or otherwise, and (e) were granted by the Debtors for fair and sufficient

4

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v2

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

Exhibit 1, Page 000012

61

1  consideration and reasonably equivalent value, contemporaneously with the making of the loans

2  or commitments to make loans and other financial accommodations secured thereby.  Pursuant to

3  the Loan Documents, Hillair has a valid, perfected, and unavoidable security interest in the cash

4  collateral, which includes, at a minimum, all "Cash Collateral" as that term is defined in

5  Section 363(a) (collectively, the "Cash Collateral").  The Collateral includes the Debtors' Cash

6  Collateral.

7          (c)      <u>No Claims Against Hillair</u>.  The Debtors have no valid claims (as

8  such term is defined in section 101(5)) or causes of action against Hillair with respect to the Loan

9  Documents or the Prepetition Obligations, whether arising at law or at equity, including, without

10  limitation, any recharacterization, subordination, avoidance or other claims arising under or

11  pursuant to sections 105, 510, 541 or 542 through 553, inclusive.

12      3.    **Authorization for Use of Cash Collateral.**

13        3.1    <u>Request for Use of Cash Collateral</u>.  The Debtors have requested the use of

14  the Cash Collateral, and Hillair is willing to consent to such use of Cash Collateral upon the

15  admissions, agreements, terms and conditions contained in this Stipulation and the entry of an

16  order approving this Stipulation.

17        3.2    <u>Need for Use of Cash Collateral</u>.  The Debtors have an immediate need for

18  the use of Cash Collateral in order to permit, among other tasks, the orderly continuation of the

19  operation of their business, to minimize the disruption of their business operations, and to manage

20  and preserve the assets of their estates.

21        3.3    <u>Authorized Use of Cash Collateral</u>.  Subject to the terms and conditions of

22  this Stipulation, the Debtors shall only be entitled to use the Cash Collateral for payment of the

23  following expenses:

24          (a)      "Authorized Expenses" comprising only the current necessary,

25  reasonable, and ordinary expenses of the Debtors actually incurred after the Petition Date as set

26  forth and not to exceed the amounts set forth in the weekly budget attached hereto as **Exhibit "A"**

27  for the period from May 14, 2019 through June 4, 2019 and incorporated herein by this reference

28

5

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v2

62

Exhibit 1, Page 000013

1  (the "Budget"), subject only to modification by express mutual consent of the parties in writing.

2  The Debtors may not exceed any line item budget amount by a variance of 10% for each category

3  line item in the Budget. Allowed amounts not paid by the Debtors in each budget category during

4  each week may carry over to the next succeeding week only on a line item by line item basis.

5  The fees and costs for the Debtors' proposed counsel (Foley and Lardner LLP) and the Debtors'

6  proposed financial advisor (Conway MacKenzie LLP) shall be capped at $10,000 and $5,000 per

7  week, respectively, for the period from June 8, 2019 to _____.

8         (b)     An "Emergency Expense" comprising only that expense relating to

9  an emergency which is not an Authorized Expense and for which it is not feasible to provide

10  advance notice to Hillair and for which the Debtors and the Chief Restructuring Officer in good

11  faith believe must be incurred immediately in order to mitigate damage to the Collateral or to

12  avoid (i) possible health and safety concerns, or (ii) damage or harm to the Collateral, not to

13  exceed the amount of $2,500 for any one particular expense. In each circumstance when the

14  Debtors has paid an Emergency Expense, the Debtors shall advise Hillair as soon as possible but

15  not later than the next business day, in writing by fax, the amount of the expenditure, the nature of

16  the emergency, and the reason that advance approval was not practical. If Hillair believes that

17  such expenditure or the amount thereof was not warranted under the circumstances, Hillair shall

18  be entitled to an *ex parte* hearing on forty-eight (48) hours' notice regarding termination of this

19  Stipulation, prohibition of any further use of the Cash Collateral by Debtors, and other remedies

20  available to Hillair pursuant to this Stipulation, or by contract or law.

21         3.4    <u>Limitation on the Use of Cash Collateral</u>. Notwithstanding any other term

22  to the contrary in this Stipulation, the Debtors shall not use the Cash Collateral:

23         (a)     to pay any obligation owed to any party (other than to Hillair) on

24  account of or relating to services and/or product provided prior to the Petition Date,

25  including without limitation, obligations relating to the provision or sale of goods,

26  materials or services, or obligations on account of purchase orders, that were provided by

27  the Debtors prior to the Petition Date;

28

6

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v2

[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER
63

Exhibit 1, Page 000014

(b)    from the sale or disposition of assets of the Debtors outside the ordinary course of business of the Debtors;

(c)    to pay to or for the benefit of the Debtors or any principal, shareholder, or insider of the Debtor, any management person or entity retained by the Debtors or the Debtors' estate, whether directly or indirectly, except as expressly approved and agreed in writing by Hillair; or

(d)    in connection with any action or proceeding against Hillair.

3.5    <u>Ordinary Course of Business</u>.  Except as otherwise permitted by Court order or as authorized by Hillair, the Debtors shall conduct their business operations in the ordinary course and on ordinary and customary terms consistent with the terms and manner by the Debtors prior to the Petition Date.

3.6    <u>Adequate Protection for Use of Cash Collateral</u>.  As partial adequate protection of Hillair's interest in the Cash Collateral, the Debtors shall pay Hillair the sum of $40,000 per week commencing on May 15, 2019 and payable on each Wednesday thereafter for the period from May 14, 2019 through _____, 2019.  All payments made under this Stipulation shall be made in accordance with the terms expressly set forth in the loan documents and in effect before the Petition Date or as further directed by Hillair.

4.    **Appointment of a Chief Restructuring Officer.**

4.1    The Debtors [have consented] to the appointment of a Chief Restructuring Officer ("CRO"), who is acceptable to Hillair, to oversee the financial and operational functions of the Debtors, and to maintain an oversight role over the administration of the Debtors' bankruptcy cases and their Estates.

4.2    The Debtors agree that (1) all use of Cash Collateral shall be authorized and approved by the CRO.  Hillair shall be permitted to obtain financial reporting directly from the Debtors, the CRO, the Debtors' financial advisors or investment banker, and the Debtors' counsel.  The financial reporting shall include, among other things, financial statements (including balance sheets, income statements and statements of cash flow), budget reports,

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

Exhibit 1, Page 000015

BN 36480565v2

inventory schedules, accounts receivable schedules, accounts payable schedules, pro forma financial statements, bank account statements, payroll reports and any other report respecting the assets, liabilities, financial condition or operation of the Debtors in addition to the reporting specified in Paragraph 8.1 of this Stipulation.

       4.3     The Debtors acknowledge and agree that (1) the CRO shall liase with the current interim co-CEOs, George Voskanian and Scott Sheikh, with respect to the operations and management of the Debtors and the administration of the Debtors' bankruptcy cases and their Estates; and (2) the duties and responsibilities of the CRO include the following:

       (a)     Review and analyze the Debtors and their financial results, projections, operational data and compliance with the Budget;

       (b)     Gain an understanding of the existing contractual arrangements and obligations with customers, advisors/consultants and suppliers;

       (c)     Advise the Debtors with regard to the development and implementation of a turnaround and restructuring plan;

       (d)     Assist the Debtor in managing key constituents, including communications and meetings with, and requests for information made by, creditor constituents, including secured lenders, vendors, customers and employees;

       (e)     Oversee key customer relationships;

       (f)     Provide expert testimony, if required and permitted;

       (g)     Manage cash forecasting and liquidity management procedures. In particular, assume responsibility and oversight of day-to-day cash management and initiatives to protect, preserve, and enhance liquidity;

       (h)     Review and evaluate the go-forward business;

       (i)     Conduct a review and analysis of the existing workforce and direct recruitment of new employees, where and if appropriate; and

       (j)     Execute on identified cost saving initiatives.

8

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

4.4    The United States Trustee reserves the right to seek entry of a court order terminating the appointment of the CRO for cause shown.

5.    **Post-Petition Replacement Liens.**  As additional adequate protection, the Debtors and their Estates hereby grant Hillair post-petition liens as follows:

5.1    <u>Post-petition Lien Granting.</u>  Hillair shall have and is hereby granted by the Debtors, effective as of the Petition Date, a post-petition security interest and replacement lien pursuant to sections 361 and 363(e) (the "Post-petition Lien") in all present and future, prepetition and post-petition real and personal property assets in which and to the extent the Debtors hold an interest, whether tangible or intangible, including without limitation, all accounts (including post-petition accounts receivable arising post-petition notwithstanding the provisions of Section 552), chattel paper, deposit accounts, documents, documents of title, goods (including all inventory, equipment and fixtures), instruments, investment property (including all certificated and uncertificated securities, securities entitlements, securities accounts, commodity contracts and commodity accounts), letter of credit rights, money, and general intangibles, all supporting obligations and security for any of the foregoing and all proceeds of the foregoing (including all distributions made on account of any of the foregoing, all claims arising from the loss, nonconformity, or interference with the use of, or defects or infringement of rights in, any of the foregoing and any insurance payable by reason of any such loss, nonconformity, interference, defects or infringement), and all rents, issues, profits and proceeds thereof (collectively, the "Post-petition Collateral"), solely to the extent of any post-petition diminution in value of the prepetition assets of the Debtor (the "Prepetition Collateral," and collectively with the Post-petition Collateral, the "Collateral") encumbered by liens and security interests in favor of Hillair securing the Debtors' obligations owed to Hillair; <u>provided, however,</u> with respect to the Debtors' interest in any unexpired lease of real property, the Post-petition Lien shall only extend to the Debtors' rights to the proceeds arising from the assignment, sale, disposition or termination of such lease.

9

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**    Exhibit 1, Page 000017

BN 36480565v2                                         66

1    5.2    Post-petition Lien Priority. The Post-petition Lien shall be senior and have

2    priority over all other liens and interests on and in the Collateral, except that the Post-petition

3    Lien shall be junior only to (a) the Prepetition Lien in favor of Hillair and (b) such other valid,

4    existing, and perfected liens or security interests existing as of the Petition Date with respect to

5    such assets existing as of the Petition Date encumbered by such liens, and to the extent such liens

6    or security interests were senior to the Prepetition Lien in favor of Hillair as of the Petition Date

7    and are not otherwise avoided.

8    5.3    Automatic Perfection of Post-petition Lien. The Post-petition Lien shall be

9    granted, attached, perfected and validated by virtue of the Order approving this Stipulation,

10   without any further act required under federal, state, or local law requiring notice, filing,

11   registration, recording, possession or other act to validate or perfect a security interest or lien,

12   including without limitation deposit account control agreements, merchant payment agreements,

13   merchant payment direction letters, cash transport agreements, and such other agreements with

14   any party possessing or asserting an interest in the Collateral (a "Perfection Act").

15   Notwithstanding the foregoing, if Hillair, in its sole discretion, elects to effectuate a Perfection

16   Act, Hillair is authorized to perform such act, and if requested by Hillair, the Debtors are

17   authorized to perform such act to the extent necessary or required, and in such event, the subject

18   filing or recording office or agency is authorized to accept, file, and/or record any document in

19   regard to such act in accordance with applicable law. No defect or failure in connection with an

20   attempt to perform a Perfection Act shall limit, waive, or alter the validity, enforceability,

21   attachment, or perfection of the Post-petition Lien by virtue of entry of the Order approving this

22   Stipulation.

23   5.4    Validity and Perfection of Post-petition Lien. Upon entry of the Order

24   approving this Stipulation, the Post-petition Lien granted to Hillair by virtue of this Stipulation

25   shall be valid, enforceable and perfected without any further act by Hillair.

26

27

28

10

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER

Exhibit 1, Page 000018

BN 36480565v2

67

6.   **Segregation of Cash Collateral.**

    6.1   <u>Segregation of the Cash Collateral.</u>   Unless otherwise agreed upon in writing by Hillair, the Cash Collateral shall be collected, received, maintained, and segregated by the Debtors in trust for Hillair.  The Cash Collateral shall be maintained in the accounts separate and apart from any other revenue or property of the Debtors or the Debtors' estates, shall not be commingled or intermingled with any other income or property of the Debtors or the Debtors' estates not constituting the Cash Collateral, and shall not be used except in accordance with the terms and conditions of this Stipulation.

    6.2   <u>Segregated Accounts.</u>   The Debtors shall maintain separate debtor in possession accounts (collectively, the "Operating Accounts") for:  (a) operating funds, (b) payroll, and (c) taxes.  All of the funds in each of the Operating Accounts are Cash Collateral.  All cash in the Operating Accounts shall remain Cash Collateral and may only be withdrawn in accordance with this Stipulation and the attached Budget.

7.   **Insurance.**

    7.1   The Debtors shall maintain and insure the Collateral in sufficient amounts to adequately protect Hillair's interest in such Collateral, and include Hillair as a loss payee in accordance with the requirements of the Loan Documents.  Debtors shall promptly provide in writing evidence of insurance to Hillair.

8.   **Reporting Requirements.**

    8.1   <u>Periodic Reporting Requirements.</u>   The Debtors shall maintain records adequate and sufficient to account for the Cash Collateral and expenses, and shall make such records available for inspection by Hillair upon 24 hours' notice.  The Debtors shall provide Hillair within five (5) business days from the date of the entry of the order approving this Stipulation a complete accounting of the Cash Collateral and expenses relating to the Collateral from the Petition Date to the date of the entry of the Order approving this Stipulation.  The Debtors shall (i) timely perform all reporting and other requirements of the Office of the United States Trustee, and (ii) provide Hillair with (A) all information and reports as required under the

11

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v2

Exhibit 1, Page 000019

68

1    Loan Documents and (B) copies of all documents and papers filed or submitted by the Debtors

2    with the Office of the United States Trustee or with the Court.  The Debtors shall further provide

3    the following periodic reports to Hillair:

4              (a)    a weekly report delivered on each Wednesday at 2:00 p.m. (Pacific

5    Time) for the immediately prior week (ending on Saturday) reflecting actual

6    receipts and expenditures by line item against those set forth in the approved cash

7    collateral budget for such weekly period;

8              (b)    on each Wednesday at 2:00 p.m. (Pacific Time), an update to the

9    approved cash collateral budget extending the term of the budget for an additional

10   week to reflect a rolling 13- week budget;

11             (c)    a current accounts receivable aging covering post-petition

12   receivables (with respect to payments received by the Debtors and entered into the

13   Debtors' financial reporting system), on each Wednesday by 2:00 p.m. (Pacific

14   Time), and current through the immediately prior week (ending on Saturday);

15             (d)    a current accounts payable aging covering post-petition payables

16   (with respect to payables where invoices have been received by the Debtors and

17   entered into the Debtors' financial reporting system), on each Wednesday by 2:00

18   p.m. (Pacific Time), and current through the immediately prior week (ending on

19   Saturday);

20             (e)    monthly financial statements prepared by the Debtors' financial

21   advisor and/or reviewed by the CRO (provided that the fees for the same shall be

22   included in the Budget), and such other reports required to be delivered by the

23   Debtors pursuant to the loan documents with such financial statements being

24   delivered within seven (7) business days following the month end closing;

25             (f)    monthly bank account statements to be provided to Hillair on the

26   5th business day following the statement closing date;

27

28

12

[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER

Exhibit 1, Page 000020

(g)    upon request, on each Thursday at 2:00 p.m. (Pacific Time), a written update regarding the operations of the Debtors, including, without limitation, information regarding (i) relationships with key suppliers, carriers and customers since the Petition Date, and (ii) a written update of the Debtors' sales and refinancing efforts including, without limitation, potential lenders, buyers, investors, the status of any negotiations and the and terms contemplated, and the likely time frame; and

(h)    copies of all periodic reports provided to the U.S. Trustee on the date that such reports are due.

8.2    <u>Access to Collateral and Records</u>.  Within 48 hours of a request of Hillair, the Debtors shall permit Hillair or an agent of Hillair, reasonable access to any of the Collateral for the purpose of enabling such party to inspect, audit and appraise the Collateral and the Debtors' books and records, and to inspect books and records maintained by any agent of the Debtors at the location that those books and records are maintained.

9.    **Section 507(b) Priority.**

9.1    As additional adequate protection, the Debtors, on their own behalf and on behalf of their Estates, hereby agree and acknowledge that, if the protections provided by the liens and security interests under the Loan Documents or this Stipulation are later determined inadequate, Hillair shall have an allowed super priority administrative claim of the kind and priority specified in section 503(b) or 507(b): (1) with priority over all costs and expenses of administration of the bankruptcy case that are incurred under any provision of the Bankruptcy Code, including, without limitation, sections 503(b), 506(c), 507(a), or 522(b); and (2) with the same priority as the Replacement Lien as set forth in this Stipulation.

10.    **Waiver of Section 506(c) Surcharge.**

10.1    Based on the authorization of the Debtors' use of the Cash Collateral pursuant to this Stipulation, the Debtors, on behalf of themselves and their Estate, waives their rights and shall not seek to surcharge the Collateral or Hillair under Section 506(c).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 36480565v2

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

Exhibit 1, Page 000021

**11.    Forbearance of Remedies.**

11.1    Providing that there are no defaults hereunder, during the term of this Stipulation, and subject to the terms and conditions hereof, Hillair will forbear from exercising any of Hillair's rights and remedies against the Debtors under the Loan Documents.

**12.    Event of Default.**

12.1    An event of default under this Stipulation (each, a "Default") shall include the following:

(a)    The Debtors' failure to perform or comply with any of the terms, conditions, representations, warranties or covenants of the Loan Documents (except monetary defaults contained therein), this Stipulation, or any other order of the Court;

(b)    Following the entry of the order approving this Stipulation, any material misrepresentation of fact made by any representative of the Debtors to Hillair about the Debtors' business or financial condition or the Collateral;

(c)    The granting in favor of any party other than Hillair of a security interest in or lien upon any property of the Debtors or the Debtors' estate, or a claim against the Debtors having priority over the security interests, liens or claims in favor of Hillair except to the extent that such party had a security interest in or lien upon any property of Debtors on the Petition Date which had priority over the security interests, liens or claims of Hillair existing on Petition Date;

(d)    The Debtors' failure to perform or comply with their obligations under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or of the requirements of the Office of the United States Trustee;

(e)    The termination of this Stipulation by its own terms, operation of law, or Court order;

(f)    The dismissal of the Bankruptcy Case;

(g)    The appointment of a trustee or an examiner under the Bankruptcy Code;

14

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

1    (h)    The conversion of the Bankruptcy Case to a case under another

2    chapter of the Bankruptcy Code;

3    (i)    Submission by the Debtors of any chapter 11 plan of reorganization

4    inconsistent in any material respect with the terms of this Stipulation;

5    (j)    Failure of the Debtors to file a disclosure statement and proposed

6    plan within the exclusivity period;

7    (k)    The stay, modification, amendment, vacating, or reversal of any

8    term herein or Order approving this Stipulation, or any of the rights and acknowledgments

9    conferred hereunder, without the express prior written consent of Hillair.

10    13.    **Rights and Remedies Upon Default.**

11    13.1    Effect of Default.    Immediately upon the occurrence of a Default, and

12    subject only to voiding the Default, as set forth in paragraph 13.2, all of the following shall be

13    deemed to have occurred:

14    (a)    Hillair's consent regarding the Debtors' use of the Cash Collateral

15    pursuant to this Stipulation is terminated without further notice;

16    (b)    The Debtors shall not use any Cash Collateral for any purpose;

17    (c)    The Debtors shall not seek authority to use any Cash Collateral;

18    (d)    The Debtors shall hold in trust for Hillair, and shall segregate, all

19    Cash Collateral in its possession or to come into its possession in the future; and

20    (e)    Hillair is granted immediate relief from the automatic stay of

21    Section 362 for cause, without any further notice, motion, hearing, or order, to take any action or

22    exercise of any or all rights and remedies available under the Loan Documents, this Stipulation,

23    or applicable law, including (i) the continuation of the state court receivership and (ii) the

24    commencement and completion of a judicial or non-judicial foreclosure under the Loan

25    Documents. The parties specifically waive the provisions of Rule 4001(a)(3) of the Federal Rules

26    of Bankruptcy Procedure.

27

28

BUCHALTER
A Professional Corporation
Los Angeles

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v2

Exhibit 1, Page 000023

13.2    If Default is "Curable."    If the Default is a type that is curable by the Debtors and the Debtors cure the Default within three (3) business days from the date of service of such notice of the Default, the Default is voided, and the Debtors may then be allowed to use Cash Collateral under the terms and conditions set forth in this Stipulation, and as provided in the Budget.

14.    **Cash Collateral Term.**

14.1    The authorization to use the Cash Collateral pursuant to this Stipulation shall terminate as of the earliest of the following (the "Termination Date"):

(a)    June 4, 2019;

(b)    The occurrence of a Default; or

(c)    The occurrence of the Effective Date of a confirmed plan of reorganization.

14.2    Notwithstanding the occurrence of the Termination Date or a Default, this Stipulation may be extended by Hillair and the Debtor by written agreement without further order of this Court.

14.3    The Parties stipulate and agree to a continued cash collateral hearing to occur on _____, 2019 at ___:00 ___.m. in the above-captioned court or to such other date and time as is convenient to the Court.

15.    **No Modification or Stay of the Stipulation or Order.**

15.1    Unless expressly consented to in writing by Hillair, (a) this Stipulation, (b) an Order approving this Stipulation, and (c) the rights and remedies of Hillair under the Loan Documents and this Stipulation, shall not be subject to any stay, modification, alteration, amendment, vacating, or reversal by any order of this Court or other tribunal.

16.    **Power To Waive Rights; Duties To Third Parties.**

16.1    Hillair shall have the right to waive any of the terms, rights, and remedies provided in this Stipulation or the Loan Documents ("Hillair Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to

16

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

Exhibit 1, Page 000024

BN 36480565v2

73

1    exercise or enforce any Hillair Rights. Any waiver by Hillair of any Hillair Rights shall not be or

2    constitute a continuing waiver. Hillair's delay in or failure of exercising or enforcing any of

3    Hillair Rights shall neither constitute a waiver of such Hillair Rights, subject Hillair to any

4    liability to any other party, nor cause or enable any other party to rely upon or in any way seek to

5    assert as a defense to any obligations or indebtedness owed to Hillair.

6         **17.**    **Reservation of Rights.**

7         17.1    This Stipulation is in addition to and without prejudice to Hillair's right to

8    pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents, and any

9    other applicable agreement or law, including seeking an order prohibiting or restricting the

10    Debtors' use of cash collateral, granting further or additional relief from the automatic stay,

11    providing for adequate protection, or imposing an injunction, and to object to applications for

12    allowance or payment of compensation of professionals retained pursuant to the Bankruptcy

13    Code.

14         **18.**    **The Debtors' Acknowledgment.**

15         18.1    Notwithstanding any other provision of this Stipulation, the Debtors

16    acknowledge and agree that (a) the Obligations are valid and indefeasible obligations of the

17    Debtors and their estate, in accordance with their terms; and (b) the liens and security interests in

18    favor of Hillair with respect to the Collateral, both prepetition and post-petition, including the

19    Cash Collateral, are valid, enforceable, perfected, and unavoidable under the Bankruptcy Code,

20    including Section 552, and any other applicable law. The Obligations shall include all reasonable

21    attorneys' fees and costs incurred by Hillair in connection with the representation of Hillair in all

22    aspects of this matter, including the enforcement of its rights and remedies under the Loan

23    Documents and the representation of Hillair in all aspects of the Bankruptcy Case.

24         **19.**    **No Action for Purposes of the One Form of Action Rule.**

25         19.1    The Debtors hereby waive each of the provisions of Code of Civil

26    Procedure Sections 726, 580a, 580b or 580d or other similar law which provide for an election of

27    remedies or an "action" to the extent such law is applicable.

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v2

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

Exhibit 1, Page 000025

20.    **Notice.**

20.1    When notice is required in this Stipulation, it shall be delivered or served upon the parties as follows:

| | |
|---|---|
| If to Hillair: | Hillair Capital Management, LLC<br>345 Lorton Avenue, Suite 303<br>Burlingame, California 94010 |
| with a copy to counsel for Hillair, which shall not constitute notice hereunder: | Steven M. Spector, Esq.<br>Buchalter, a Professional Corporation<br>1000 Wilshire Boulevard, 15th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 891-0700<br>Facsimile:   (213) 896-0400 |
| If to the Debtors, as applicable: | Soobeez, Inc.<br>3463 Foothill Boulevard<br>Glendale, California 91214 |
| | Scoobeez Global, Inc.<br>3463 Foothill Boulevard<br>Glendale, California 91214 |
| | Scoobur, LLC<br>3463 Foothill Boulevard<br>Glendale, California 91214 |
| with a copy to counsel for the Debtors, which shall not constitute notice hereunder: | Ashley M. McDow, Esq.<br>Foley & Lardner LLP<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071<br>Telephone: (213) 972-4500<br>Facsimile:   (213) 486-0065 |

21.    **Dismissal of Bankruptcy Case.**

21.1    In the event that any of the Debtors' bankruptcy cases are dismissed, the Debtors shall turnover all Cash Collateral then held in its possession to Hillair within five (5) business days from the date that Hillair provides notice of its turnover demand to the parties specified in paragraph 20. This provision shall survive the termination of this Stipulation, the dismissal of the applicable Bankruptcy Case, and shall be binding on the applicable Debtors and may be enforced under bankruptcy and non-bankruptcy law.

18

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER
75
Exhibit 1, Page 000026
BN 36480565v2

1  **22.**  **No Responsible Person Liability.**

2    22.1  In making decisions or in taking other actions reasonably related to the

3 Debtors' Cash Collateral Motion or this Stipulation, Hillair shall have no liability to any third

4 party including creditors and equity interest holders of the Debtors. Hillair shall not be deemed to

5 be in control of the operations of the Debtors or to be acting as a "responsible person," "owner"

6 or "operator" with respect to the operation or management of the Debtors.

7  **23.**  **No Agreement to Provide Financial Accommodation.**

8    23.1  This Stipulation shall not impose any duty or obligation to provide any

9 financing or financial accommodation to the Debtors, or to any other entity, to collect, sell, lease

10 or otherwise dispose of any of the Collateral, to proceed against any entity, to proceed against or

11 exhaust any security, or to otherwise pursue any of Hillair's Rights.

12  **24.**  **Access to the Debtors' Books and Records.**

13    24.1  Hillair shall have full, complete, unqualified and unlimited access to the

14 books and records of the Debtors during normal business hours for the purpose of inspection,

15 photocopying and audit upon 24 hours' notice from Hillair to the Debtors.

16  **25.**  **Miscellaneous Provisions.**

17    25.1  <u>Jointly Negotiated Stipulation</u>. This Stipulation is the product of

18 negotiation among the parties hereto and represents the joint, conceived, bargained for and agreed

19 upon language mutually determined by the parties to express their intentions in entering into this

20 Stipulation. Any ambiguity or uncertainty herein shall be deemed to be caused by, or attributable

21 to, all parties collectively. In any action to enforce or interpret this Stipulation, it shall be

22 construed in a neutral manner and no term or condition herein shall be construed more or less

23 favorably to any one party or groups of parties. Each party will act in good faith in the

24 performance of its obligations hereunder.

25    25.2  <u>Consent to Entry of Order</u>. The parties each consent to entry of an order

26 approving this Stipulation.

27

28

19

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v2

Exhibit 1, Page 000027

25.3    <u>Binding Effect</u>.    This Stipulation shall be binding upon Hillair and the Debtors and their respective successors and assigns, including any trustee appointed in this Bankruptcy Case or any subsequently converted bankruptcy case of the Debtors. This Stipulation shall also inure to the benefit of Hillair and the Debtors, and their respective successors and assigns.

25.4    <u>Counterparts</u>.    This Stipulation may be executed in counterparts, and such signatures may be by facsimile.

25.5    <u>Time of the Essence</u>. Each of the parties expressly acknowledges and agrees that time is of the essence and that all dates and time periods provided for in this Stipulation are absolute and final.

25.6    <u>Survival of Terms</u>.    Notwithstanding any term to the contrary herein with the exception of paragraph 21, the terms and conditions of this Stipulation shall apply only during the term of this Stipulation prior to the Termination Date, provided, however, that the rights and remedies granted Hillair shall survive the term of this Stipulation and Termination Date.

25.7    <u>No Benefit to Non-Parties</u>.    This Stipulation is not intended, nor shall it be construed or deemed to confer any rights, powers or privileges on any entity that is not the Debtors or Hillair as express signatories to this Stipulation. Specifically, no benefit is extended to any surety or guarantor of the obligations, and Hillair reserves all of its rights with respect to such non-parties.

25.8    <u>Further Assurances</u>.    Debtor is authorized and shall perform all acts and execute and deliver to Bank all agreements, financing statements, instruments or documents as may be reasonably requested by Bank to effectuate the terms of this Stipulation or as contemplated herein.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

Exhibit 1, Page 000028
BN 36480565v2

1  **IT IS SO STIPULATED:**

2  DATED:                                    BUCHALTER, a Professional Corporation

3

4                                            By: _____
                                                      STEVEN M. SPECTOR
5                                                     ANTHONY J. NAPOLITANO

6                                            · Attorneys for Secured Creditor Hillair Capital
                                               Management, LLC
7

8
   DATED:                                    FOLEY & LARDNER, LLP
9

10

11                                           By: _____
                                                      ASHLEY M. McDOW

12                                           Attorneys for the Debtors

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
[PROPOSED] STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER     Exhibit 1, Page 000029

BN 36480565v2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
BUCHALTER, 1000 Wilshire Blvd, Suite 1500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (specify) **HILLAIR CAPITAL MANAGEMENT, LLC'S NOTICE OF MOTION AND MOTION TO APPROVE TERMS OF PROPOSED STIPULATION FOR INTERIM USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) May 16, 2019_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Alvin Mar    alvin.mar@usdoj.gov
- Ashley M McDow    amcdow@foley.com, sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com
- Rejoy Nalkara    rejoy.nalkara@americaninfosource.com
- Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
- David L. Neale    dln@lnbyb.com
- Gregory M Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) May 16, 2019_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) May 16, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

VIA COURIER
Presiding Judge
Hon. Julia W. Brand
U.S. Bankruptcy Court – Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

| May 16, 2019 | Sandra Alarcon | /s/ Sandra Alarcon |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Debtor
Scoobeez, Inc.
3463 Foothill Blvd.
Glendale, CA 91214

Debtor
Scoobur LLC
3463 Foothill Blvd.
Glendale, CA 91214

Avitus, Inc.
c/o David M. Wagner, Esq.
Crowley Fleck, PLLP
P.O. Box 10969
Bozeman, MT 59719

Emil Davtyan
Davtyan Professional Law Corp.
21900 Burbank Blvd., Suite 300
Woodland Hills, CA 91367

Jassim M. Addal
c/o Law Office of Arash Alizadeh
7545 Irvine Center Drive
Suite 200
Irvine, CA 92618

App Group International, LLC
85 Broad Street, 17th Floor
New York, NY 10004

De'Von Walker
c/o David Yeremian & Associates, In
535 N. Brand Blvd., Suite 705
Glendale, CA 91203

Hop Capital
323 Sunny Isles Blvd., Suite 501
Sunny Isles Beach, FL 33160

Marwan Griffin
c/o Aegis Law Firm, PC
9811 Irvine Center Drive
Suite 100
Irvine, CA 92618

Bernardo Parra
c/o Mancini Law Group, P.C.
7170 W. Grand Avenue
Elmwood Park, IL 60707

GTR Source LLC
1006 Monmouth Ave
Lakewood, NJ 08701

Lockton Companies, LLC
Attn: Nate Mundy, COO
Lockton Insurance Brokres, LLC
725 S. Figueroa, 35th Floor
Los Angeles, CA 90017

Mostafa Joharifard
1651 E. Edinger Ave.
Suite 100
Santa Ana, CA 92705

Debtor
Debtor
Scoobeez Global, Inc.
3463 Foothill Blvd.
Glendale, CA 91214

Alissa Guler
c/o Albert G. Stoll, Jr.
55 Francisco Street
Suite 403
San Francisco, CA 94133

CT Corporation System
as Representative
Attn: SPRS
330 N. Brand Blvd., Suite 700
Glendale, CA 91203

Hillair Capital Management LLC
330 Primrose Road
Suite 660
Burlingame, CA 94010

Maria Salgado
c/o Nicholas J. Tsakas, Esq.
4267 Marina City Drive
Suite 512
Marina Del Rey, CA 90292

Azad Baban
c/o Justin Silverman, Esq.
Reisner & King LLP
14724 Ventura Blvd., Suite 1210
Sherman Oaks, CA 91403

Garo and Aroussiak Dekirmendjian
c/o Bulldog Commercial Real Estate
Attn: John Raudsep, President
3634 Woodcliff
Sherman Oaks, CA 91403

LeClairRyan
44 Montgomery Street, Suite 3100
San Francisco, CA 94104

AT&T Corp.
c/o CT Corporation
818 Seventh Street, Suite 930
Los Angeles, CA 90017

Deputy General Counsel
The Hertz Corporation
8501 Williams Rd., 2DO40
Estero, FL 33928

Jacob Lee DeGough
c/o Glenn Law Firm
1017 William D. Tate Ave.
Suite 100
Grapevine, TX 76051

Minas Sarafian
c/o Simonian & Simonian, PLC
144 N. Glendale Ave., #228
Glendale, CA 91206

Pex Cards
462 7th Avenue
21st Floor
New York, NY 10018

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1.PROOF.SERVICE

Raef Lawson
8601 Lincoln Blvd.
Ste. 180-276
Los Angeles, CA 90045

Sean McNair
c/o Hamed Yazdanpanah &
Associates
9454 Wilshire Blvd., 6th Floor
Beverly Hills, CA 90212

Premier Business Bank
700 S. Flower Street, #2000
Los Angeles, CA 90017

The Hertz Corporation
Attn: Casey Rodriguez, Division VP
2 Schoephoester Road
Windsor Locks, CT 06096

Peter Rosenthal Irrevocable Trust
dated 10/31/2012
3450 N. Verdugo Rd.
Glendale, CA 91208

Steve & Millessa Oberhauser
c/o Sanders Bajwa LLP
919 Congress Ave., Suite 750
Austin, TX 78701

Scoobeez SD, LLC
c/o Law Offices of Daniel A. Kaplan
555 W. Beech St., Suite 230
San Diego, CA 92101

Edvin Amzayan,
c/oState of CA Dept. of Industrial Relations
Labor Commission Office
455 Golden Gate Ave., 10th Floor
San Francisco, CA 94102

Imran Firoz
c/o Brent Finch
Brent Finch Law
27200 Agoura Rd., Ste. 102
Agoura Hills, CA 91301

Kirk Davis
c/o Law Offices of Daniel A. Kaplan
555 W. Beech St., Suite 230
San Diego, CA 92101

Nate Mundy, COO
Lockton Companies, LLC-Pacific Seri
Lockton Insurance Brokres, LLC
725 S. Figueroa, 35th Floor
Los Angeles, CA 90017

Roy Castelanos
c/o Employees' Legal Advocates, LLP
811 Wilshire Blvd.
Suite 800
Los Angeles, CA 90017

Salvador Rivas
c/o Law Offices of Daniel A. Kaplan
555 W. Beech St., Suite 230
San Diego, CA 92101

Queen Funding LLC
2221 NE 164 ST
North Miami Beach, FL 33160

Hamed Yazdanpanah & Associates
9454 Wilshire Blvd., 6th Floor
Beverly Hills, CA 90212

Arturo Vega, et. al.
c/o Eric K. Yaeckel
Sullivan Law Group, APC
2330 Third Ave.
San Diego, CA 92101

Enterprise Holdings, Inc.
600 Corporate Park Drive
Saint Louis, MO 63105

NexGen Capital, LLC
c/o David Neale
Levene Neale Bender
10250 Constellation Blvd., #1700
Los Angeles, CA 90067

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.