# EXHIBIT 3

# EXHIBIT 3

STEVEN M. SPECTOR (SBN: 51623)
  sspector@buchalter.com
ANTHONY J. NAPOLITANO (SBN: 227691)
  anapolitano@buchalter.com
BUCHALTER, A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile:: (213) 896-0400

ADAM H. FRIEDMAN (pro hac vice to be filed)
  afriedman@olshanlaw.com
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, NY 10019
Telephone: (212) 451-2216
Facsimile: (212) 451-2222

Attorneys for secured creditor
HILLAIR CAPITAL MANAGEMENT, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SCOOBEEZ, INC., et al.<br><br>               Debtors and Debtors<br>               in Possession. | Lead Case No. 2:19-bk-14989-WB<br><br>Chapter 11<br><br>(Jointly Administered with<br>Case Nos. 2:19-bk-14991; 2:19-bk-14997) |
| Affects:<br><br>☒   All Debtors<br><br>☐   SCOOBEEZ, INC., only<br><br>☐   SCOOBEEZ GLOBAL, INC.<br>     only<br><br>☐   SCOOBUR, LLC only | **HILLAIR CAPITAL MANAGEMENT, LLC'S OPPOSITION TO DEBTORS' MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS**<br><br>[Declarations of Sean M. McAvoy and Steven M. Spector concurrently filed.]<br><br>**Hearing:**<br>Date:      May 14, 2019<br>Time:      2:00 p.m.<br>Place:     U.S. Bankruptcy Court<br>              Courtroom 1375<br>              255 East Temple Street<br>              Los Angeles, CA 90012 |

BN 36439854V2

# TABLE OF CONTENTS

Page

I. INTRODUCTION .............................................................................. 1

II. BACKGROUND ............................................................................... 3

    A.    Hillair provides Scoobeez Global with $8.5 million of financing to fund the Debtors' business operations.................................................... 3

    B.    The Debtors have defaulted on their obligations owing to Hillair............. 4

    C.    The Debtors' most recent annual report reveals a significant number of financial issues plaguing the company................................................ 5

            1.    *Scoobeez Global's 2018 Annual Report reveals many financial issues and casts doubt as to whether the Debtors can continue as a going concern.* ............................................................... 5

            2.    *The Debtors blatantly mischaracterize the execution of the Hillair indebtedness and fabricate that Hillair and the Debtors are renegotiating the entire note.* ................................................ 6

            3.    *As a publicly traded company, the Debtors have failed to comply with the mandatory reporting requirements for material corporate events.* ............................................................................. 7

    D.    The formation of the Debtors' affiliate, Scoobeez Deliveries, Inc., raises significant fraudulent transfer and mere continuation concerns. ................ 7

    E.    The Debtors' majority shareholder and current CEO ousts the Debtors' former interim CEO and CFO as a whistleblower. ................................... 9

            1.    *Firoz notifies the Board of Directors of Scoobeez Global of significant misappropriation of funds by the Debtors' principal.* ............... 9

            2.    *Firoz is terminated and pursues a wrongful termination claim against the Debtors and Shahan and Shoushana Ohanessian.* ................... 10

    F.    Hillair commences its state court action against the Debtors and seeks the appointment of a receiver..................................................................... 11

    G.    The impending appointment of the receiver precipitates the filing of the Debtors' bankruptcy cases. ............................................................... 12

            1.    *The Commencement of the Debtors' Chapter 11 Bankruptcy Cases.* ......... 12

            2.    *The First-Day Motions were significantly deficient precluding the Court and interested parties from evaluating the precise relief sought by the Debtors.* .................................................... 12

            3.    *The Debtors' attempt to cure their evidentiary deficiencies raises more concerns about the Debtors' financial affairs.* ................... 13

    H.    At the Debtors' First-Day Hearing, Nex Gen Financial asserts that the Debtors sold their accounts receivable to Nex Gen notwithstanding Hillair's blanket security interest in the same accounts receivable...................... 14

III. ARGUMENT ................................................................................ 15

i

HILLAIR CAPITAL MANAGEMENT, LLC'S OPPOSITION TO DEBTORS' MOTION FOR ENTRY
OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS

BN 36439854V2

83

A.    Hillair, as the Debtors' senior secured creditor, is entitled to adequate protection of its interests. ............................................................................. 15

B.    The Debtors' undisclosed and questionable prepetition and post-petition expenses may not be essential or ordinary course. ....................................... 16

C.    The proposed cash collateral budget must include adequate protection payments to Hillair. ............................................................................... 17

D.    The Debtors must provide replacement liens and an administrative expense claim to Hillair.  A Rule ............................................................. 18

E.    The Debtor must provide adequate reporting to Hillair. ......................... 18

IV. CONCLUSION............................................................................................. 19

ii

HILLAIR CAPITAL MANAGEMENT, LLC'S OPPOSITION TO DEBTORS' MOTION FOR ENTRY
OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS

BN 36439854V2

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Colonial Center, Inc.*
  156 B.R. 452 (Bankr. E.D. Pa. 1993)............................................................16

*In re Del–a–Rae, Inc.*
  448 B.R. 303 (Bankr. S.D. Ga. 2011)............................................................17

*In re Keystone Camera Prods. Corp.*
  126 B.R. 177 (Bankr. D.N.J. 1991)..............................................................16

*In re Liberty Warehouse Assoc., L.P.*
  220 B.R. 546 (Bankr. S.D.N.Y. 1998)..........................................................17

*In re Megan-Racine Assocs Inc.*
  202 B.R. 660 (Bankr. N.D.N.Y. 1996)..........................................................16

*In re Plaza Family P'ship*
  95 B.R. 166  (E.D. Ca. 1989).................................................................16, 17

*United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*
  484 U.S. 365 (1988)..................................................................................16

*Wright v. Union Cent. Life Ins. Co.*
  311 U.S. 273 (1940)..................................................................................15

## Statutes

11 U.S.C.
  § 361.......................................................................................................16

11 U.S.C.
  § 363...................................................................................................2, 15

11 U.S.C.
  § 503(b)....................................................................................................18

11 U.S.C.
  § 507(b)................................................................................................3, 18

11 U.S.C.
  § 544(b).....................................................................................................8

11 U.S.C.
  § 548..........................................................................................................8

Cal. Civ. Code
  § 3439.04....................................................................................................8

iii

HILLAIR CAPITAL MANAGEMENT, LLC'S OPPOSITION TO DEBTORS' MOTION FOR ENTRY
OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS

**Rules**

Fed. R. Bankr. P.
  2004 ....................................................................................................................... 2, 3

**Constitutional Provisions**

U.S. Const.
  am. 5 ........................................................................................................................ 15

**Other Authorities**

H.R. Rep. No. 595, 95th Cong., 1st Sess. 339 (1977) .......................................... 15

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

Hillair Capital Management LLC and its affiliates (collectively, "Hillair"), senior secured creditor of Scoobeez, Inc., a California corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the "Debtors"), respectfully submits this opposition to the *Motion for Interim Order Approving Use of Cash Collateral* [Docket No. 13] and the supplemental *Memorandum of Points and Authorities in support of the Cash Collateral Motion* [Docket No. 29] (collectively, the "Cash Collateral Motion")

## I.

## <u>INTRODUCTION</u>

Hillair has significant concerns over about both the pre-petition and post-petition conduct of the Debtors, as well as the Debtors continued failure to disclose financial information, which warrants heightened scrutiny in the context of cash collateral usage. Prior to the commencement of these cases, the Debtors' principal, Shahan Ohanessian, allegedly misappropriated over $1.5 million dollars from the companies for his own personal use. The Debtors' former CFO prepared a Whistleblower Report (as defined below), which was provided to Hillair, outlining the scope of the misappropriation and Shahan Ohanessian's conduct.

Equally as troubling are the Debtors' significant financial issues, which has resulted in the Debtors declaring in their 2018 Annual Report filed in April 2019 that there is "substantial doubt for the Company to continue as a going concern." At this same time, the principals of the Debtors have formed a new entity named Scoobeez Delivery, Inc. with the Debtors' current CFO serving as the incorporator and agent for service of process. This new entity was formed after the Debtors' default to Hillair and several other significant creditors, and less than 30 days prior to the commencement of the bankruptcy cases.

This behavior is emblematic of a debtor that perpetually seeks to hide the ball and operate in a shroud of secrecy with sleight of hand. Given the existence of serious red flags, the Los Angeles Superior Court issued a temporary restraining order in connection with Hillair's

1

1    application for the appointment of a receiver.  It was only on the eve of that hearing (which

2    Hillair believes would surely have been granted given alleged financial improprieties) that the

3    Debtors filed their chapter 11 cases. And since the first-day hearing, it has been discovered that a

4    significant amount the initial cash collateral budget was on account of pre-petition expenses,

5    including to insiders.  However, such pre-petition expenses were neither disclosed nor a proper

6    motion filed to authorize their payment.

7        While Hillair will support the payment of required and essential expenses to maintain the

8    business, the Debtors have refused to provide timely or adequate information to Hillair.  Routine

9    information requests to validate expenses and the quantum of cash collateral usage have not been

10    timely or adequately provided (weekly budgets, bank account statements, payroll reports, and the

11    like.  While routine information requests concerning the use of cash collateral were requested by

12    Hillair on May 2, 2019, it was only after Hillair was forced to file objections to entry of first day

13    orders, on May 9, 2019, that information (much of which is non-responsive) has begun to be

14    provided.

15        What has been provided raises more questions than answers.  Serious questions remain

16    and back-up has not been provided.  This is troubling in any sense but even more troubling given

17    that the information is not been provided to the very secured creditor whose cash collateral is

18    being used.  Simply said, such action by a debtor runs afoul of section 363 and smacks of bad

19    faith.  As a result, Hillair has filed its *Motion for Entry of Order Authorizing Examinations*

20    *Pursuant to Federal Rule of Bankruptcy Procedure 2004* [Docket No. __] (the "Rule 2004

21    Motion") in order to obtain the routine and necessary information that the Debtors' have been

22    withholding.

23        For these reasons, Hillair does not believe that its interest in its cash collateral will be

24    adequately protected.  To the extent cash collateral usage is allowed:  (i) it should be solely for

25    post-filing expenses that are documented and critical to the operation of the business;

26    (ii) financial reporting must be provided to Hillair on a weekly basis; (iii) Hillair must be granted

27    replacement liens and super-priority administrative claims under Section 507(b); (iv) Hillair

28

2

1   should be paid monthly adequate protection payments and (v) the Debtors should be ordered to

2   comply with the requests that have been sought in the Rule 2004 Motion.

3                                           **II.**

4                                    **BACKGROUND**

5       **A.    Hillair provides Scoobeez Global with $8.5 million of financing to**
            **fund the Debtors' business operations.**

6       On October 7, 2016, Scoobeez Global and Hillair entered into that certain Securities

7   Purchase Agreement (the "First SPA"). A true and complete copy of the First SPA is attached as

8   **Exhibit 1** to the concurrently filed Declaration of Sean M. McAvoy (the "McAvoy Decl.").

9   Under the First SPA, Scoobeez Global issued to Hillair its 8% Senior Secured Convertible

10  Debenture Due October 1, 2018 in the principal sum of $5,800,000 due on October 1, 2018 (the

11  "First Debenture"). A true and complete copy of the First Debenture is attached as **Exhibit 2** to

12  the McAvoy Decl. On January 30, 2017, Scoobeez Global and Hillair entered into that certain

13  Securities Purchase Agreement (the "Second SPA"). A true and complete copy of the Second

14  SPA is attached as **Exhibit 3** to the McAvoy Decl. Under the Second SPA, Scoobeez Global

15  issued to Hillair its 8% Senior Secured Convertible Debenture Due January 1, 2019 in the

16  principal sum of $8,584,000 (the "Second Debenture") due on or before January 1, 2019 (the

17  "Maturity Date"). A true and complete copy of the Second Debenture is attached as **Exhibit 4** to

18  the McAvoy Decl. The Second Debenture includes the obligations of Scoobeez Global to Hillair

19  due under the First Debenture. McAvoy Decl., ¶ 9.

20      On October 7, 2016, the Debtors entered into that certain Subsidiary Guarantee in favor of

21  Hillair. A true and complete copy of the Subsidiary Guarantee is attached as **Exhibit 5** to the

22  McAvoy Decl. Under the Subsidiary Guarantee, Scoobeez and Scoobur, jointly and severally,

23  unconditionally guaranteed the repayment of Scoobeez Global's obligations to Hillair. McAvoy

24  Decl., ¶ 10. To secure repayment of all obligations owing to Hillair, on October 7, 2016, the

25  Debtors, jointly and severally, executed a Security Agreement. A true and complete copy of the

26  Security Agreement is attached as **Exhibit 6** to the McAvoy Decl. The Security Agreement

27  granted Hillair a security interest in substantially <u>all</u> of the assets of the Debtors, including

28

<center>3</center>

1   accounts receivable and the proceeds thereof.  McAvoy Decl., ¶ 11.  Hillair duly perfected its

2   security interest in the assets by filing UCC-1 financing statements as follows:  (a) as to Scoobeez

3   Global, a financing statement was filed with the Idaho Secretary of State on October 11, 2016, as

4   File No. B-2016-1183112-1; (b) as to Scoobeez, a financing statement was filed with the

5   California Secretary of State on October 11, 2016 as File No. 16-7550581531; (c) as to Scoobur,

6   a financing statement was filed with the California Secretary of State on October 11, 2016 as file

7   no. 16-7550581210.  True and complete copies of the UCC-1 Financing Statements are attached

8   collectively as **Exhibit 7** to the McAvoy Decl.

9          **B.**    **The Debtors have defaulted on their obligations owing to Hillair.**

10      Events of monetary and non-monetary default by the Debtors under both the Second

11   Debenture and the Subsidiary Guarantee have occurred, and continue to occur.  The penultimate

12   default was failure of the Debtors to pay the entire amount due and owing to Hillair under the

13   Second Debenture on the Maturity Date.  McAvoy Decl., ¶ 12.  Other significant defaults include

14   but are not limited to: (i) the incurrence of indebtedness greater than the agreed maximum as

15   referenced in Section 7(a) of the Second Debenture without the prior written consent of Hillair;

16   (ii) the failure to make Periodic Redemption Payments and the failure to pay accrued interest

17   thereon; (iii) the failure to make Quarterly Interest Payments; and (iv) suffering a material

18   adverse change in its financial condition which has impaired its ability to perform under the

19   Second SPA and Second Debenture.  McAvoy Decl., ¶ 13.

20      As a result of the Debtors' failure to pay the obligations owing to Hillair by the Maturity

21   Date, Hillair sent a notice of default and demand for payment to Scoobeez Global (the "Default

22   Letter").  Scoobeez has failed and refused, and continues to fail and refuse, to pay the sums due

23   thereunder or any part thereof.  McAvoy Decl., ¶ 14.  As a result, there is due, owing and unpaid

24   to Hillair by the Debtors the principal sum of $11,153,098, plus accrued and accruing unpaid

25   interest, late charges, and legal fees together with other miscellaneous charges set forth in the

26   Second Debenture.  McAvoy Decl., ¶ 15.

27

28

HILLAIR CAPITAL MANAGEMENT, LLC'S OPPOSITION TO DEBTORS' MOTION FOR ENTRY
OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS

BN 36439854V2

**C.  The Debtors' most recent annual report reveals a significant number of financial issues plaguing the company.**

    *1.  Scoobeez Global's 2018 Annual Report reveals many financial issues and casts doubt as to whether the Debtors can continue as a going concern.*

Scoobeez Global's shares are publically traded on the OTC Market "Pink Sheets". As a publicly traded company, Scoobeez Global files reports pursuant to the Pink Basic Disclosure Guidelines. Scoobeez Global's most recent annual report is dated April 12, 2019 for the year ending December 31, 2018 (the "2018 Annual Report"). McAvoy Decl., ¶ 16; a true and correct copy of the 2018 Annual Report is attached as **Exhibit 8** to the McAvoy Decl.

The 2018 Annual Report highlights several areas of substantial concern for Hillair. First, the Debtors' consolidated balance sheet as of December 31, 2018 shows assets of $6.2 million and liabilities of $23.7 million resulting in a shareholders' equity deficit of $17.5 million. McAvoy Decl., Ex. 1, at p. 226. Second, the accounts receivable balance has decreased from $4.1 million from December 31, 2017 to $1.6 million for December 31, 2018. *Id.* This is a $2.5 million reduction in Hillair's collateral while the cash balance has increased only by $1.18 million for the same period. Third, the accounts payable balance has increased from $13.6 million from December 31, 2017 to $17.9 million for December 31, 2018. *Id.* Fourth, approximately $224,000 in related party loans was paid off between December 31, 2017 and December 31, 2018. *Id.* Finally, the company sustained a net loss of $2.9 million for 2018. McAvoy Decl., Ex. 1, at p. 227.

As a result of this financial distress, the Debtors readily admit that there is **substantial doubt** that they can continue as a going concern. The 2018 Annual Report states:

> The Company's consolidated financial statements have been prepared on a going concern basis, which contemplates the realization of assets and the settlement of liabilities and commitments in the normal course of business. The Company reported a net operating loss of $2,903,000 (excluding noncontrolling interest) and an accumulated deficit of $34,171,000 for the Year ended December 31, 2018. **These factors raise substantial doubt for the Company to continue as a going concern.**

McAvoy Decl., Ex. 1 (2018 Annual Report), at p.234.

5

HILLAIR CAPITAL MANAGEMENT, LLC'S OPPOSITION TO DEBTORS' MOTION FOR ENTRY
OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS

BN 36439854V2

91

1    This statement is even more remarkable in light of Note 8 to the 2018 Annual Report,

2    which discloses that the Debtors advanced $800,000 to their principal shareholder, Shahan

3    Ohanessian, during 2018 notwithstanding the financial distress that the Debtors had sustained

4    during that year.  Specifically, the 2018 Annual Report provides:

5        During the Year ended December 31, 2018 and 2017, the Company advanced a
         total of approximately $800,000 and $260,000, respectively, to its Chief
6        Executive Officer (CEO), who is also the majority shareholder.  The amount is
         offset by the Related party notes payable to its CEO.  The balance as of December
7        31, 2018 of approximately $446,900 is reflected on the balance as an advance to
         shareholder.  The remaining balance of advance to shareholder will be expected to
8        [be] paid off by February 2019.

9    McAvoy Decl., Ex. 1 (2018 Annual Report), at p.238.

10       It is clear that significant insider transfers were being made at a time when the Debtors

11   were insolvent and legitimate non-insider creditors were not being paid.  The 2018 Annual Report

12   indicates an expectation that Shahan Ohanessian would pay the remaining balance of $446,900

13   due to the Debtors.  Whether such payment was made is but one of the many requests set forth in

14   the instant Motion.

15       2.    *The Debtors blatantly mischaracterize the execution of the Hillair*
16             *indebtedness and fabricate that Hillair and the Debtors are*
               *renegotiating the entire note.*

17       In their 2018 Annual Report, Note 10 to the Debtors' Consolidated Financial Statements

18   discloses the Debtors' obligations owing to Hillair.  In that note, the Debtors acknowledge that

19   "[t]he Debenture is secured by all of the Company's real and personal property (tangible and

20   intangible)."  However, the Debtors continue to state that:

21       [T]he Company recently conducted due diligence and found inconsistencies in the
         total balances of the Note documents that Hillair has provided.  The Company is
22       in the process of working with Hillair to identify the correct amount of the
         combined loans, as the terms were negotiated and signed electronically by the
23       prior CFO, with whom the Company is in current litigation.  **There may be a**
24       **markdown of the total amount of the Loan due to moneys missing and/or**
         **renegotiating of the entire note.**
25

26   McAvoy Decl., Ex. 1 (2018 Annual Report), at p. 239 (emphasis added).

27       This statement in a public securities filing is astonishing and false.  The "note documents"

28   were not signed by the "former CFO" (*i.e.*, Imran Firoz) electronically or in any other manner.

6

HILLAIR CAPITAL MANAGEMENT, LLC'S OPPOSITION TO DEBTORS' MOTION FOR ENTRY
OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS
BN 36439854V2

92

1   McAvoy Decl., ¶ 17. The note documents were signed by Shahan Ohanessian. Moreover, the

2   Debtors are not "working with" Hillair to "identify or correct" anything. There is no

3   "markdown." There is no "money missing." There is no "renegotiating the entire note."

4   McAvoy Decl., ¶ 18. These statements are completely and utterly false and fabricated for the

5   purpose of misleading anyone who reads the report into believing there will be a negotiated

6   reduction in the $11 million debt owed to Hillair.

7          3.      *As a publicly traded company, the Debtors have failed to comply
                   with the mandatory reporting requirements for material corporate*
8                  *events.*

9          Based on the publically accessible Pink Sheet Guidelines, the Debtors have an obligation

10  to report material corporate events within four days of occurrence. On March 19, 2019, Hillair

11  sent the Default Letter to the Debtors formally placing them on notice and demanding payment.

12  On March 26, 2019, counsel for Scoobeez Global sent a letter to Hillair acknowledging the

13  receipt of the Default Letter. McAvoy Decl., ¶ 19.

14         Under the Pink Sheet Guidelines, the Default Letter constituted a material corporate event

15  requiring a public disclosure filing. This disclosure was required by March 25, 2019 at the latest.

16  Hillair has searched the public records and found no such disclosure. McAvoy Decl., ¶ 20. The

17  consequence of this disclosure failure misleads all parties who buy and sell Scoobeez Global's

18  stock. Further, the Debtors had every opportunity to include such a disclosure when they filed

19  their 2018 Annual Report on April 12, 2019. They did not. Similarly, the filing of a bankruptcy

20  petition is a material event which requires public company disclosure. To date, the Debtors have

21  still not made public disclosures of their bankruptcy filing: an egregious and continuing violation

22  of securities law. McAvoy Decl., ¶ 21.

23      **D.     The formation of the Debtors' affiliate, Scoobeez Deliveries, Inc.,
                raises significant fraudulent transfer and mere continuation concerns.**
24
        Hillair has recently discovered that the Debtors or their insiders have incorporated a new
25
    entity called Scoobeez Deliveries, Inc., a California corporation ("Scoobeez Deliveries"), on
26
    April 3, 2019—less than a month prior to the commencement of the Debtors' bankruptcy cases.
27
    McAvoy Decl., ¶ 22; a copy of the Articles of Incorporation for Scoobeez Deliveries is attached
28

                                                    7

1    as **Exhibit 9** to the McAvoy Decl. The existence of this entity (which is required to execute a

2    guaranty in favor of Hillair under the Guaranty Agreement) was not disclosed to Hillair (or the

3    public in securities filings) and raises many red flags. McAvoy Decl., ¶ 23.

4        Further, the Articles of Incorporation have been signed by George Voskanian, who is also

5    the Chief Financial Officer of the Debtors. Mr. Voskanian also appointed himself as the Agent

6    for Service of Process for the Scoobeez Deliveries. McAvoy Decl., Ex. 2. Additionally, the

7    Articles provided that the address for Scoobeez Deliveries is 3463 Foothill Boulevard, Glendale,

8    California 91214, which is the same address for the Debtors. Curiously, the Articles state that the

9    mailing address for Scoobeez Deliveries is 12710 Oxnard Street, North Hollywood, California

10   91606, a residence, which is also the same address provided for Mr. Voskanian as Agent for

11   Service of Process. McAvoy Decl., Ex. 2.

12       The implication of the formation of Scoobeez Deliveries post-default and within the last

13   30 days is clear and requires immediate investigation. To the extent that there has been a

14   prepetition transfer of assets from the Debtors to Scoobeez Deliveries, the Debtors' estates hold

15   fraudulent transfer claims against Scoobeez Deliveries under 11 U.S.C. § 544(b) (incorporating

16   the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439.04 *et seq.*) and

17   11 U.S.C. § 548. Additionally, the Debtors' estates and others may likely hold successor liability

18   and mere continuation claims against Scoobeez Deliveries in the event that the Debtors have

19   diverted business or assets to the new entity.

20       Additionally, Hillair has learned that several of the Debtors' insiders have executive roles

21   at a company called Serve (www.serve.io.) including Shahan Ohanessian, CEO of the Debtors

22   and CEO of Serve.io, George Voskanian, CFO of the Debtors and CFO of Serve.io, Suzy

23   Ohanessian, board member of the Debtors and President of Serve.io. Spector Decl., ¶ 22; a true

24   and complete copy of the Serve.io webpages are attached as Exhibit 5 to the Spector Decl.

25   Naturally, Hillair is concerned whether assets of the Debtors have been secreted to this new entity

26   and whether the Debtors' proposed use of cash collateral will be for the benefit of this non-debtor

27   entity.

28

<center>8</center>

E.    **The Debtors' majority shareholder and current CEO ousts the Debtors' former interim CEO and CFO as a whistleblower.**

Imran Firoz was the interim CEO and CFO of the Debtors.  He began work in July 2012 as the President and CEO of the Debtors.  In May 2015, Shahan Ohanessian became the majority shareholder of Scoobeez Global and as a result became the CEO of the Debtors.  Firoz agreed to remain employed as the CFO and a member of the Board of Directors of the Company.  In March 2017, Firoz was removed as a member of the Board and was terminated from the Debtors as a whistleblower for the reasons described below.

   1.    *Firoz notifies the Board of Directors of Scoobeez Global of significant misappropriation of funds by the Debtors' principal.*

On March 15, 2017, Firoz sent a twenty-five page report (the "Whistleblower Report") to the Board of Directors of ABT Holdings, Inc. n/k/a Scoobeez Global outlining various actions taking by the Debtors' majority shareholder and CEO resulting in the misappropriation of $1.7 million in funds of the Debtor among other things.  McAvoy Decl., ¶ 24; a true and complete copy of the Whistleblower Report is attached as **Exhibit 10** to the McAvoy Decl..  Specifically, the Whistleblower Report states that Shahan Ohanessian transferred the total sum of $1,698,500 from two of ABT Holdings' bank accounts (Acct. No. xxx-xxx-7380 and Acct. No. xxx-xxx-1330) to a Business Account in which Shahan Ohanessian is the ultimate beneficiary designated as Acct. No. xxx-xxx-4724.  McAvoy Decl., Ex. 3, at p. 251.  From that account, Shahan Ohanessian (i) transferred $390,580 to his personal Premier Checking Account No. xxx-xxx-2672; (ii) made collective cash withdrawals totaling $715,006 at the Wynn Hotel in Las Vegas, Nevada; (iii) made collective cash withdrawals totaling $473,699 at various Wells Fargo banking locations.  McAvoy Decl., Ex. 3, at pp. 251-52.

As a result of these actions, Firoz states in the Whistleblower Report that the Debtors at that time were unable to "meet its short term and long term obligations."  McAvoy Decl., Ex. 3, at p. 252.  Ultimately, Firoz concluded that:

> As a result of this (sic.) these unauthorized transactions, the Company is unable to account for $1,579,285.  Therefore, the Company will not be able to complete its Fiscal 2016 audit by April 14, 2017.  If the Company is unable to become a fully

reporting company, it will impede its chances to raise necessary capital from the public and private markets.

McAvoy Decl., Ex. 3, at p. 253.

> 2.    *Firoz is terminated and pursues a wrongful termination claim against the Debtors and Shahan and Shoushana Ohanessian.*

On February 7, 2019, Firoz filed a Cross-Complaint for, among other things, breach of fiduciary duty, breach of contract, wrongful termination, retaliation, and conversion in the state court action designated as *Firoz v. Scoobeez Global, Inc., et al.*, Case No. EC067690 (L.A. Sup. Ct.). McAvoy Decl., ¶ 25; a true and complete copy of the Cross-Complaint is attached as **Exhibit 11** to the McAvoy Decl. In that Cross-Complaint, Mr. Firoz disclosed that on March 3, 2017 he had demanded that Shahan Ohanessian show cause and provide explanation with respect to the misappropriation of company funds. On March 5, 2017, Shahan Ohanessian provided documentation to Mr. Firoz which confirmed the misappropriation of funds in excess of $1.5 million. On March 10, 2017, Shahan Ohanessian and Shoushana Ohanessian resigned as CEO and member of the Board, respectively. McAvoy Decl., Ex. 4 at p. 289.

On March 13, 2017, Firoz was appointed as interim CEO. On March 14, 2017, Shahan Ohanessian informed the Board that since he was the majority shareholder he had reinstated himself as CEO and reappointed his wife to the Board. That same day Shahan Ohanessian terminated Firoz's employment with the Debtors. On March 15, 2017, Firoz submitted his Whistleblower Report to the Board of Scoobeez Global, among others. McAvoy Decl., Ex. 4 at pp.289-90.

In addition to the misappropriation of funds discussed above based upon the Whistleblower Report, the February 2019 Cross-Complaint explains that Shahan Ohanessian had withdrawn approximately $3.3 million from the Company depositing $1.695 million into his own accounts and withdrawing $1.6 million from Scoobeez Global's bank account without authority from the Board or any agreement with the company. As a result, the Cross-Complaint alleges that Shahan Ohanessian caused the company to take seventeen high-interest cash advance loans

10

1    totaling $3.7 million which cost the company approximately $2,000,000 in fees, charges and

2    interest payments. McAvoy Decl., Ex. 4 at pp. 286-87.

3        Further, the misappropriation of these funds resulted in the Debtors' inability to pay

4    Hillair as well as an entity called Avitus, Inc.—an entity that made payroll advances. McAvoy

5    Decl., ¶ 26. This gave rise to a lawsuit filed by Avitus against Scoobeez, Scoobeez Global, and

6    Shahan Ohanessian designated as *Avitus, Inc. v. Scoobeez, Inc., et al.*, Case No. CV-18-146-BLG-

7    SPW-TJC (D. Mont.) seeking damages in excess of $16 million. The Avitus debt was itself a

8    breach of the Hillair loan agreements. *Id.*

9        **F.**    **Hillair commences its state court action against the Debtors and seeks the appointment of a receiver.**

10

11        Because of the foregoing defaults and issues plaguing the Debtors, on April 22, 2019

12    Hillair filed its Complaint for (1) Breach of Contract, (2) Breach of Guaranty, and (3) Replevin in

13    the Los Angeles Superior Court commencing the action designated *Hillair Capital Management,*

14    *LLC v. Scoobeez Global, Inc., et al.*, Case No. 19GDCV00492 (L.A. Sup. Ct. 2019) (the "State

15    Court Action"). McAvoy Decl., ¶ 27. Having realized the precarious financial situation in which

16    the Debtors found themselves and given the number and magnitude of the irregularities occurring,

17    on April 24, 2019 Hillair filed its *Ex Parte Application to Appoint Receiver, Issue Temporary*

18    *Restraining Order and Set Order to Show Cause why Receiver Should not be Confirmed* (the

19    "Receivership Application") in the State Court Action. McAvoy Decl., ¶ 28. The Receivership

20    Application sought the appointment a receiver over the Debtors. *See* Declaration of Steven M.

21    Spector concurrently filed herewith (the "Spector Decl."), ¶ 3.

22        The Court held a preliminary hearing on the Receivership Application on April 26, 2019

23    and set a continued hearing for May 1, 2019 at 1:30 p.m. A temporary restraining order was

24    issued at that hearing limiting the Debtors' operations to only ordinary course transactions. The

25    Superior Court also established April 30, 2019 at 12:00 p.m. PDT as the deadline for the Debtors

26    to file any opposition to the Receivership Application. Spector Decl., ¶ 4.

27

28

<div align="center">11</div>

HILLAIR CAPITAL MANAGEMENT, LLC'S OPPOSITION TO DEBTORS' MOTION FOR ENTRY
OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS

BN 36439854V2

97

**G.** **The impending appointment of the receiver precipitates the filing of the Debtors' bankruptcy cases.**

*1.* *The Commencement of the Debtors' Chapter 11 Bankruptcy Cases.*

Rather than file an opposition to the Receivership Application by the 12:00 p.m. deadline on April 30, 2019, the Debtors opted to file the above-referenced chapter 11 bankruptcy cases at 12:12 p.m. on April 30, 2019. *See* Docket No. 1.[1] Notably, the Debtors did not file schedules or statements of financial affairs. Nor did the Debtors file their first day motions until well into the late evening on April 30, 2019/May 1, 2019. In fact, the *Motion for Interim Order Approving Use of Cash Collateral* [Docket No. 13] (the "Cash Collateral Motion") was not filed until less than four hours prior to the "first-day" hearings set for May 1, 2019 at 3:00 p.m. *See* Docket No. 13.

*2.* *The First-Day Motions were significantly deficient precluding the Court and interested parties from evaluating the precise relief sought by the Debtors.*

In addition to the protracted delay in the filing of the first-day motions, there were significant deficiencies in the motions that prevented the parties from being able to fully evaluate the relief sought. Missing from the routine and customary first-day filings was an omnibus declaration of Shahan Ohanessian, the Debtors' principal, setting forth the general background of the Debtors' business and operations, the capital structure of the Debtors, the issues precipitating the filing of the chapter 11 cases, the key issues to be addressed in the early stages of the cases and the necessary evidentiary support for the relief sought in the first-day motions. Spector Decl., ¶ 5.

Missing from the *Motion to Authorized Payment of Prepetition Wages* [Docket No. 8] (the "Wage Motion") was a report itemizing the employees and the precise wages to be paid. Spector Decl., ¶ 6. Missing from the Cash Collateral Motion was a customary 13-week cash collateral budget setting forth with specificity the precise expenses to be paid. Instead, the Debtors submitted monthly income statement projections for a three-month period providing only high level categorization of the expenses sought to be paid. Spector Decl., ¶ 7. Missing from the first-

---

[1] All docket references are to the docket for the lead case *In re Scoobeez, Inc.*, Case No. 2:19-bk-14989-WB.

12

1    day motions was a critical vendor motion to enable the Debtors to pay prepetition vendors that

2    they have decried as being critical to the Debtors' operation.  And finally, missing from the first-

3    day motions was a customary motion prohibiting the trading of the Debtors' securities so as to

4    preserve any beneficial tax attributes that the Debtors may have.  Spector Decl., ¶ 8.

5           3.    *The Debtors' attempt to cure their evidentiary deficiencies raises*
                  *more concerns about the Debtors' financial affairs.*
6

7           In connection with the Debtors' *Emergency Motion for Order (1) Authorizing the*

8    *Maintenance of Existing Bank Accounts, etc.* [Docket No. 7] (the "Cash Management Motion"),

9    the Debtors provided on May 6, 2019 at 1:58 p.m. their proposed order granting that motion, but,

10   more importantly, a spreadsheet containing a list outstanding prepetition checks that had not

11   cleared the Debtors' prepetition bank accounts.  Spector Decl., ¶ 9; a true and complete copy of

12   this spreadsheet is attached as **Exhibit 1** to the Spector Declaration.  There are sixty-seven checks

13   on this list totaling $134,006.76.  Spector Decl., Ex. 1.  What is troubling is that approximately

14   $45,000 of these checks was issued on April 30, 2019 (*i.e.*, the Petition Date), and at least two of

15   the checks were issued to insiders of the Debtors:  $7,500.00 to Shoushana Ohanessian (the

16   Debtors' principal's wife and board member); $2,000 to Nazareth Ohanessian and $3,000 to

17   Jowita Chometowska (a board member).  Spector Decl., ¶ 11.  Equally concerning is that of the

18   twenty-five checks issued on the petition date fifteen of them are for amounts greatly in excess of

19   $1,000.  Spector Decl., Ex. 1.

20          In order to address the Debtors' informational deficiencies, on May 2, 2019 counsel for

21   Hillair sent Debtors' counsel an email detailing the documents and information necessary to fully

22   evaluate the Debtors' financial projections and the relief being requested in the first-day motions.

23   Spector Decl., ¶ 12; a copy of that email is attached as **Exhibit 2** to the Spector Decl.  Basic

24   financial information relevant to relief sought in the first-day motions, like an ADP payroll report,

25   bank statements, insurance policies, truck rental agreements, and other basic easily obtainable

26   financial information was requested.  Hillair requested that the Debtors provided that information

27   my no later than May 6, 2019 so that the Hillair could review the data prior to a meeting of

28

<div align="center">13</div>

BN 36439854V2

1    counsel and the parties' principals on May 7, 2019.  Spector Decl., ¶ 14.  That information was

2    never provided and the meeting set for May 7th was cancelled.  *Id.*

3         Thereafter, a meeting was proposed for Friday, May 10, 2019 with a document production

4    deadline of Thursday, May 9, 2019.  Spector Decl., ¶ 15.  No documents were provided and no

5    meeting occurred.  *Id.*  Given the operational and management issues of the Debtors and the self-

6    dealing by the Debtors' principal, access to this information is critical.

7         On May 10, 2019, Hillair received several emails from counsel from the Debtors

8    purporting to provide the documents requested in the May 2nd Email.  Spector Decl., ¶ 16.

9    Following the notification of the Debtors' counsel of the significant deficiencies in the documents

10   provided, Hillair proceeded with filing its *Motion for Entry of an Order Authorizing an*

11   *Examination Under Federal Rule of Bankruptcy Procedure 2004* [Docket No. 35].  Spector Decl.,

12   ¶¶ 16-18, Ex. 3.

13        **H.    At the Debtors' First-Day Hearing, Nex Gen Financial asserts that the**
14        **Debtors sold their accounts receivable to Nex Gen notwithstanding**
          **Hillair's blanket security interest in the same accounts receivable.**

15        A third-party has alleged that the Debtors sold some of their receivables to them as part of

16   a secured merchant financing transaction notwithstanding that Hillair has a blanket security

17   interest in the same receivables.  At the hearing on the Debtors' first-day motion, counsel

18   appeared on behalf of Nex Gen Financial with respect to the Cash Collateral Motion.  Spector

19   Decl., ¶ 19.  Counsel disclosed that Nex Gen apparently asserts an interest in the cash collateral

20   since the Debtors had allegedly sold their accounts receivable to Nex Gen.  Spector Decl., ¶ 20.

21   Hillair, through its counsel, has attempted to get documentation supporting this claim from

22   counsel for Nex Gen and from counsel for the Debtors.  To date, nothing has been provided.

23   Spector Decl., ¶ 21.

24        If this is true, then certainly the Debtors' sale of its accounts receivable to a third party

25   amounts to fraud.  The accounts receivables were encumbered by Hillair's valid and senior lien,

26   and no sophisticated financial institution would engage in such a factoring transaction in the face

27   of a senior security interest.  For whatever reason, the Debtors' and Nex Gen's counsel have not

28   been forthcoming with this information.

                                                    14

1    In the weeks prior to the commencement of the Debtors' bankruptcy cases, Hillair has

2    uncovered other financing statements and judgment filings that raise additional concerns for

3    Hillair. Simply stated, there are numerous and very recent UCC filings and judgments which are

4    causes for concern. Further, these UCC filings and judgments have not been reported as required

5    disclosure by the Pink Sheet Guidelines. A true and complete copy of a *Comprehensive Business*

6    *Report* listing these UCC filings and judgment is attached as **Exhibit 4** to the Spector Decl. The

7    Comprehensive Business Report shows the following:

      1.    A UCC filing in California on February 14, 2019, in favor of a secured
            party named GTR Source LLC.

      2.    A civil judgment filed in Steuben County, New York on March 13, 2019,
            in the amount of $326,957 in favor of a company called Chrome Cap.

      3.    A civil judgment filed in Albany County, New York on March 12, 2019,
            in the amount of $404,560 in favor of a company called Palm Funding
            LLC.

      4.    A UCC-1 filing in California on March 22, 2019 in favor of secured party
            CT Corporation System as Representative.

      5.    A UCC-1 filing in California on February 25, 2019 in favor of secured
            party HOP Capital.

Spector Decl., Ex. 5. On May 10, 2019, Hillair filed its Rule 2004 Motion to facilitate the

transparency that is necessary for all interested parties to evaluate the Debtors, their businesses,

their assets and liabilities.

## III.

## ARGUMENT

**A.**    **Hillair, as the Debtors' senior secured creditor, is entitled to adequate
protection of its interests.**

Section 363 of the Bankruptcy Code provides that a debtor-in-possession may only use

cash collateral with the secured creditor's consent or upon order of the Court. Protection of a

secured lender's interest in collateral is rooted in the Fifth Amendment of the United States

Constitution and the secured lender's interest is universally recognized as a property right

afforded the highest protection under the law. *See Wright v. Union Cent. Life Ins. Co.*, 311 U.S.

273 (1940); H.R. Rep. No. 595, 95th Cong., 1st Sess. 339 (1977) ("The concept is derived from

15

HILLAIR CAPITAL MANAGEMENT, LLC'S OPPOSITION TO DEBTORS' MOTION FOR ENTRY
OF INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS
BN 36439854V2

101

1   the fifth amendment protection of property interests").   "Adequate protection" is intended to

2   safeguard Hillair's constitutional right to have the value of its secured claim, as it existed on the

3   petition date, preserved.  *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S.

4   365, 370 (1988).; *see also In re Keystone Camera Prods. Corp.*, 126 B.R. 177, 183 (Bankr.

5   D.N.J. 1991) ("A secured creditor has a constitutional right to have the value of its secured claim

6   on the petition date preserved.").

7        In order to authorize the use of cash collateral without the secured creditor's consent, the

8   Court must make a finding that the secured creditor's interest in the cash collateral is adequately

9   protected.  Section 361 of the Bankruptcy Code provides three non-exclusive means of providing

10   adequate protection.  These alternatives include (i) requiring the debtor to make a cash payment

11   or periodic cash payments to the secured party; (ii) providing an additional or replacement liens to

12   the secured party; or (iii) granting other relief that will result in the indubitable equivalent of the

13   interest in the property.  *See* 11 U.S.C. § 361.  The debtor has the burden of proving the issue of

14   adequate protection.  *See* 11 U.S.C. § 363(p)(1).  If adequate protection cannot be provided, then

15   the use of the cash collateral must be prohibited.  *See In re Megan-Racine Assocs Inc.*, 202 B.R.

16   660, 663 (Bankr. N.D.N.Y. 1996).

17        In determining whether a creditor's interest will be adequately protected, the debtor's

18   prior conduct may be a relevant factor.  *In re Colonial Center, Inc.*, 156 B.R. 452, 463 (Bankr.

19   E.D. Pa. 1993).   Moreover, "[e]ven in situations where adequate protections are available cash

20   collateral can not be used for a nonbusiness purpose."  *In re Plaza Family P'ship*, 95 B.R. 166,

21   174 (E.D. Ca. 1989)(even where there is an equity cushion, the debtor cannot use discharge its

22   duties by using funds for "personal use.").

23       **B.**    **The Debtors' undisclosed and questionable prepetition and post-petition expenses may not be essential or ordinary course.**

24        From both the initial budget and the new budget [Docket No. 29, Ex. A] filed for the

25   upcoming two week period, it is unclear which expenses are post-filing administrative expenses

26   and which are for pre-petition invoices.  To the extent they are for pre-filing expenses, no cash

27   collateral should be used absent a showing that such expenses are critical, necessary, and that the

28

<div align="center">16</div>

1   vendor will agree to continue to provide services. Hillair has requested proof of same, and was

2   provided wholly inadequate information. The initial budget filed contains significant pre-petition

3   expenses (rent, auto rental, supplies, insurance, fuel, utilities, phone etc) which are objectionable

4   absent further information and back up, which has been withheld by the Debtors.

5   Also, some expense items may be for the benefit of insiders, such as pre-petition wages

6   and payment of other expenses. Hillair has requested documents necessary to inquire on these

7   issues. The new Budget also contains line items for unspecified amounts of "Miscellaneous"

8   expenses in various places, totaling $100,000. These line items should be deleted and assurance

9   should be made that none of Hillair s cash collateral is being used to pay insiders or any other

10  expenses to or for the benefit of insiders (provided, that Hillair does not object to payment of the

11  current CFO's post-filing ordinary course wages and reasonable expenses). *See, e.g.,* In re Plaza

12  *Family P'ship.*, 95 B.R. at 174 ("The individual partners of the debtor are not entitled to a

13  distribution before . . . secured creditors. The effect of such use would be to subordinate secured

14  claims to the claims of the debtor and others. Such a result is inconsistent with the intent and

15  purpose of the Bankruptcy Code.").

16  **C.    The proposed cash collateral budget must include adequate protection
        payments to Hillair.**

17  The payment of post-petition interest to secured creditor is an appropriate and customary

18  form of adequate protection to a secured lender and should be ordered in this case. The Debtors

19  contend that they will generate $498,027.52 in positive net income for the period between

20  May 15, 2019 to June 1, 2019. Yet, the Budget does not provide for any payments to Hillair.

21  Hillair should be paid adequate protection of at least $200,000 per month on account of its

22  secured claim which exceeds $11.5 million. To the extent the Debtor believes Hillair is over-

23  secured, Hillair is also entitled to post-petition interest at the default rate. *See, e.g., In re Del–a–*

24  *Rae, Inc.*, 448 B.R. 303 (Bankr. S.D. Ga. 2011) (a secured lender is entitled to pendency interest

25  at the default rate); *In re Liberty Warehouse Assoc., L.P.*, 220 B.R. 546 (Bankr. S.D.N.Y. 1998)

26  (secured creditor was entitled to pendency interest on its oversecured claim calculated at default,

27  rather than nondefault, interest rate).

28

1  **D.    The Debtors must provide replacement liens and an administrative**
**expense claim to Hillair.  A Rule**

2      While the Debtors propose to provide Hillair additional and replacement security interests

3  and liens in and upon all prepetition and post-petition assets, they should also provide Hillair with

4  a super-priority administrative claim against the Debtors as provided in sections 503(b) and

5  507(b) of the Bankruptcy Code to the extent of any diminution in the value of their interests.

6      **E.    The Debtor must provide adequate reporting to Hillair.**

7      The Debtors should be ordered to provide sufficient reporting so that Hillair can monitor

8  the use of its cash collateral, the value of the collateral, the Debtors' operational performance, and

9  the diminution resulting from such use, which reports should include at the bare minimum:

10

11      1.    a weekly report delivered on each Wednesday at 2:00 p.m. (Pacific Time) for the

12  immediately prior week (ending on Saturday) reflecting actual receipts and expenditures by line

13  item against those set forth in the approved cash collateral budget for such weekly period;

14      2.    on each Wednesday at 2:00 p.m. (Pacific Time), an update to the approved cash

15  collateral budget extending the term of the budget for an additional week to reflect a rolling 13-

16  week budget;

17      3    a current accounts receivable aging covering post-petition receivables (with

18  respect to payments received by the Debtors and entered into the Debtors' financial reporting

19  system), on each Wednesday by 2:00 p.m. (Pacific Time), and current through the immediately

20  prior week (ending on Saturday);

21      4.    a current accounts payable aging covering post-petition payables (with respect to

22  payables where invoices have been received by the Debtors and entered into the Debtors'

23  financial reporting system), on each Wednesday by 2:00 p.m. (Pacific Time), and current through

24  the immediately prior week (ending on Saturday);

25      5    monthly financial statements reviewed by an independent accountant, and such

26  other reports required to be delivered by the Debtors pursuant to the loan documents with such

27

28

18

1    financial statements being delivered within seven (7) business days following the month end

2    closing;

3          6.     monthly bank account statements to be provided to Hillair on the 5th business day

4    following the statement closing date;

5          7.     on each Thursday at 2:00 p.m. (Pacific Time), a written update regarding the

6    operations of the Debtors, including, without limitation, information regarding (i) relationships

7    with key suppliers, carriers and customers since the Petition Date, and (ii) a written update of the

8    Debtors' sales and refinancing efforts including, without limitation, potential lenders, buyers,

9    investors, the status of any negotiations and the and terms contemplated, and the likely time

10   frame; and

11         8.     copies of all periodic reports provided to the U.S. Trustee on the date that such

12   reports are due.

13   <center>**IV.**</center>

14   <center>**<u>CONCLUSION</u>**</center>

15       Based on the foregoing, Hillair hereby objects to the relief requested in Debtors' Cash

16   Collateral Motion and requests that any order granting the continued use of cash collateral be

17   limited in time and contain such conditions and protections set forth in this opposition, and in the

18   form of proposed cash collateral stipulation attached hereto as **Exhibit 1**. Hillair further requests

19   that the Court grant such other relief as is just and appropriate under the circumstances.

20   DATED:  May 13, 2019               BUCHALTER, a Professional Corporation

21

22                          By   */s/ Steven M. Spector*
                           STEVEN M. SPECTOR

23                              ANTHONY J. NAPOLITANO

24                          Attorneys for secured creditor
                       HILLAIR CAPITAL MANAGEMENT, LLC

25

26

27

28
<center>19</center>

BN 36439854V2

# EXHIBIT 1

1  STEVEN M. SPECTOR (SBN: 51623)
      sspector@buchalter.com
2  ANTHONY J. NAPOLITANO (SBN: 227691)
      anapolitano@buchalter.com
3  BUCHALTER, A Professional Corporation
   1000 Wilshire Boulevard, Suite 1500
4  Los Angeles, CA 90017-2457
   Telephone: (213) 891-0700
5  Facsimile:: (213) 896-0400

6  ADAM H. FRIEDMAN (pro hac vice to be filed)
      afriedman@olshanlaw.com
7  OLSHAN FROME WOLOSKY LLP
   1325 Avenue of the Americas
8  New York, NY 10019
   Telephone: (212) 451-2216
9  Facsimile: (212) 451-2222

10

11 Attorneys for secured creditor
   HILLAIR CAPITAL MANAGEMENT, LLC

                  UNITED STATES BANKRUPTCY COURT
12
                  CENTRAL DISTRICT OF CALIFORNIA
13
                       LOS ANGELES DIVISION
14

15 In re                          Lead Case No. 2:19-bk-14989-WB

16 SCOOBEEZ, INC., et al.         Chapter 11

17            Debtors and Debtors  (Jointly Administered with
               in Possession.      Case Nos. 2:19-bk-14991; 2:19-bk-14997)
18

19 Affects:                       STIPULATION BETWEEN THE DEBTORS
                                  AND HILLAIR CAPITAL MANAGEMENT
20 ☒  All Debtors                 FOR (1) AUTHORIZATION TO USE CASH
                                  COLLATERAL; (2) APPOINTMENT OF
21 ☐  SCOOBEEZ, INC., only        CHAPTER 11 TRUSTEE OR CHIEF
                                  RESTRUCTURING OFFICER
22 ☐  SCOOBEEZ GLOBAL, INC.
        only                      Hearing:
23                                Date:    May 14, 2019
   ☐  SCOOBUR, LLC only           Time:    2:00 p.m.
24                                Place:   U.S. Bankruptcy Court
                                           Courtroom 1375
25                                         255 East Temple Street
                                           Los Angeles, CA 90012
26

27                                        1

28
                    STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
BUCHALTER             (2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER
A PROFESSIONAL CORPORATION
   LOS ANGELES       BN 36439861V1

**TO THE JULIA BRAND, UNITED STATES BANKRUPTCY JUDGE, THE DEBTORS, THEIR COUNSEL AND ALL PARTIES IN INTEREST:**

Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital Investments LP (collectively, "Hillair"), on the one hand, and Scoobeez, Inc., a California corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the "Debtors"), on the other hand, hereby enter into this *Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer* as follows.

## RECITALS

I.    **The Debtors' secured obligations to Hillair.**

A.    On October 7, 2016, Scoobeez Global and Hillair entered into that certain Securities Purchase Agreement (the "First SPA"). Under the First SPA, Scoobeez Global issued to Hillair its 8% Senior Secured Convertible Debenture Due October 1, 2018 in the principal sum of $5,800,000 due on October 1, 2018 (the "First Debenture").

B.    On January 30, 2017, Scoobeez Global and Hillair entered into that certain Securities Purchase Agreement (the "Second SPA"). Under the Second SPA, Scoobeez Global issued to Hillair its 8% Senior Secured Convertible Debenture Due January 1, 2019 in the principal sum of $8,584,000 (the "Second Debenture") due on or before January 1, 2019 (the "Maturity Date"). The Second Debenture includes the obligations of Scoobeez Global to Hillair due under the First Debenture.

C.    On October 7, 2016, the Debtors entered into that certain Subsidiary Guarantee in favor of Hillair. Under the Subsidiary Guarantee, Scoobeez and Scoobur, jointly and severally, unconditionally guaranteed the repayment of Scoobeez Global's obligations to Hillair. To secure

2

STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER

1    repayment of all obligations owing to Hillair, on October 7, 2016, the Debtors, jointly and

2    severally, executed a Security Agreement.

3        D.    The Security Agreement granted Hillair a security interest in substantially <u>all</u> of

4    the assets of the Debtors, including accounts receivable and the proceeds thereof.  Hillair duly

5    perfected its security interest in the assets by filing UCC-1 financing statements as follows:  (a) as

6    to Scoobeez Global, a financing statement was filed with the Idaho Secretary of State on October

7    11, 2016, as File No. B-2016-1183112-1; (b) as to Scoobeez, a financing statement was filed with

8    the California Secretary of State on October 11, 2016 as File No. 16-7550581531; (c) as to

9    Scoobur, a financing statement was filed with the California Secretary of State on October 11,

10   2016 as file no. 16-7550581210.

11       **II.**    **The Debtors file their chapter 11 bankruptcy cases.**

12       E.    On April 30, 2019 (the "Petition Date"), the Debtors each filed their own voluntary

13   chapter 11 petitions thereby commencing the above-captioned chapter 11 bankruptcy case.  On

14   May 1, 2019, at the hearing on the Debtors' "first-day" motions seeking authorization (1) for the

15   Debtors' interim use of cash collateral [Docket No. __]; (2) to continue the maintenance of

16   existing bank accounts and cash management systems [Docket No. __]; and (3) the payment of

17   prepetition wages and continuation of employee programs [Docket No. __], the Court authorized

18   interim use of cash collateral though May 14, 2019, subject to further briefing and a further

19   hearing on the continued use of cash collateral.

20       NOW, THEREFORE, based upon the foregoing Recitals, and for good and valuable

21   consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, and

22   the parties hereto intending to be legally bound hereby, by and through their respective attorneys

23   of record, hereby agree and stipulate as follows:

24       **AGREEMENT**

25       1.    **Incorporation of Recitals.**

26       1.1    The Recitals set forth above is incorporated herein by this reference and

27   shall be deemed a material part of this Stipulation.

28

3

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

Exhibit 1, Page 28

2.   **Prepetition Obligations and Security Interests.**

2.1   Without prejudice to the rights of any other party, the Debtors admit, stipulate and agree as follows:

(a)   <u>Prepetition Obligations</u>. As of the Petition Date, the Debtors were obligated to Hillair for the obligations arising under or relating to the prepetition Loan Documents (collectively, the "Prepetition Obligations"). The Prepetition Obligations (a) were fully accelerated, due and payable to Hillair; (b) included indebtedness in the aggregate principal amount of not less than $_____ and accrued interest in the amount of not less than $_____, plus additional interest, costs, fees and charges recoverable under the documents or by law, (c) constitute legal, valid, binding and enforceable obligations of the Debtors, and (d) are not subject to any objection, offset, avoidance, subordination or other claim or challenge of any nature under the Bankruptcy Code, any other applicable law, contract or otherwise.

(b)   <u>Prepetition Liens and Collateral</u>. As of the Petition Date, the Prepetition Obligations were secured by certain liens and security interests in favor of Hillair (the "Prepetition Liens"). The Prepetition Liens (a) encumber all of the Debtors' right, title and interest in assets described in the Loan Documents and existing as of the Petition Date including, without limitation, all accounts, equipment, inventory, general intangibles and proceeds, attachments and accessions to the foregoing (as previously defined, the "Collateral"), (b) secure performance of the Prepetition Obligations pursuant to the Loan Documents, (c) constitute legal, valid, enforceable, non-avoidable and duly perfected security interests and liens in and upon the Collateral in favor of Hillair, (d) are not subject to any objection, offset, avoidance, subordination or other claim or challenge of any nature by the Debtors under the Bankruptcy Code, any other applicable law, contract or otherwise, and (e) were granted by the Debtors for fair and sufficient consideration and reasonably equivalent value, contemporaneously with the making of the loans or commitments to make loans and other financial accommodations secured thereby. Pursuant to the Loan Documents, Hillair has a valid, perfected, and unavoidable security interest in the cash collateral, which includes, at a minimum, all "Cash Collateral" as that term is defined in

4

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

110

Exhibit 1, Page 29

1    Section 363(a) (collectively, the "Cash Collateral"). The Collateral includes the Debtors' Cash

2    Collateral.

3            (c)    <u>No Claims Against Hillair</u>. The Debtors have no valid claims (as

4    such term is defined in section 101(5)) or causes of action against Hillair with respect to the Loan

5    Documents or the Prepetition Obligations, whether arising at law or at equity, including, without

6    limitation, any recharacterization, subordination, avoidance or other claims arising under or

7    pursuant to sections 105, 510, 541 or 542 through 553, inclusive.

8        3.    **Authorization for Use of Cash Collateral.**

9            3.1    <u>Request for Use of Cash Collateral</u>. The Debtors have requested the use of

10    the Cash Collateral, and Hillair is willing to consent to such use of Cash Collateral upon the

11    admissions, agreements, terms and conditions contained in this Stipulation and the entry of an

12    order approving this Stipulation.

13            3.2    <u>Need for Use of Cash Collateral</u>. The Debtors have an immediate need for

14    the use of Cash Collateral in order to permit, among other tasks, the orderly continuation of the

15    operation of their business, to minimize the disruption of their business operations, and to manage

16    and preserve the assets of their estates.

17            3.3    <u>Authorized Use of Cash Collateral</u>. Subject to the terms and conditions of

18    this Stipulation, the Debtors shall only be entitled to use the Cash Collateral for payment of the

19    following expenses:

20            (a)    "Authorized Expenses" comprising only the current necessary,

21    reasonable, and ordinary expenses of the Debtors actually incurred after the Petition Date as set

22    forth and not to exceed the amounts set forth in the monthly budget attached hereto as **Exhibit**

23    **"A"** and incorporated herein by this reference (the "Budget"), subject only to modification by

24    express mutual consent of the parties in writing. The Debtors may not exceed any line item

25    budget amount by a variance of 10% for each category line item in the Budget. Allowed amounts

26    not paid by the Debtors in each budget category during each calendar month may carry over to

27    the next succeeding calendar month only on a line item by line item basis without a cap except for

28

5

STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

111

Exhibit 1, Page 30

1  the Debtors' professionals' fees and costs which shall be capped at $_____ in the aggregate

2  for the period commencing on the Petition Date and continuing through the last day of the

3  operative period of the Budget.

4          (b)    An "Emergency Expense" comprising only that expense relating to

5  an emergency which is not an Authorized Expense and for which it is not feasible to provide

6  advance notice to Hillair and for which the Debtors in good faith believes must be incurred

7  immediately in order to mitigate damage to the Collateral or to avoid (i) possible health and

8  safety concerns, or (ii) damage or harm to the Collateral, not to exceed the amount of $2,500 for

9  any one particular expense.  In each circumstance when the Debtors has paid an Emergency

10  Expense, the Debtors shall advise Hillair as soon as possible but not later than the next business

11  day, in writing by fax, the amount of the expenditure, the nature of the emergency, and the reason

12  that advance approval was not practical.  If Hillair believes that such expenditure or the amount

13  thereof was not warranted under the circumstances, Hillair shall be entitled to an *ex parte* hearing

14  on forty-eight (48) hours' notice regarding termination of this Stipulation, prohibition of any

15  further use of the Cash Collateral by Debtors, and other remedies available to Hillair pursuant to

16  this Stipulation, or by contract or law.

17          3.4    <u>Limitation on the Use of Cash Collateral</u>.  Notwithstanding any other term

18  to the contrary in this Stipulation, the Debtors shall not use the Cash Collateral:

19          (a)    to pay any obligation owed to any party (other than to Hillair) on

20  account of or relating to services and/or product provided prior to the Petition Date, including

21  without limitation, obligations relating to the provision or sale of goods, materials or services, or

22  obligations on account of purchase orders, that were provided by the Debtors prior to the Petition

23  Date;

24          (b)    from the sale or disposition of assets of the Debtors outside the

25  ordinary course of business of the Debtors;

26          (c)    to pay to or for the benefit of the Debtors or any principal,

27  shareholder, or insider of the Debtor, any management person or entity retained by the Debtors or

28

6

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND**
**(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

1    the Debtors' estate, whether directly or indirectly, except as expressly approved and agreed in

2    writing by Hillair (the "Cash Collateral"); or

3             (d)    in connection with any action or proceeding against Hillair.

4         3.5    <u>Ordinary Course of Business</u>.    Except as otherwise permitted by Court

5    order or as authorized by Hillair, the Debtors shall conduct their business operations in the

6    ordinary course and on ordinary and customary terms consistent with the terms and manner by the

7    Debtors prior to the Petition Date.

8    **4.    Appointment of a Chapter 11 Trustee or Chief Restructuring Officer.**

9         4.1    The Court shall appoint either a Chapter 11 Trustee or Chief Restructuring

10    Officer to oversee the financial and operational functions of the Debtors, and shall maintain an

11    oversight role over the administration of the Debtors' bankruptcy cases. Hillair shall be permitted

12    to obtain financial reporting directly from the Debtors, the Chapter 11 Trustee or the Chief

13    Restructuring Officer, the Debtors' financial advisors or investment banker, and the Debtors'

14    counsel.    The financial reporting shall include, among other things, financial statements

15    (including balance sheets, income statements and statements of cash flow), budget reports,

16    inventory schedules, accounts receivable schedules, accounts payable schedules, pro forma

17    financial statements, bank account statements, payroll reports and any other report respecting the

18    assets, liabilities, financial condition or operation of the Debtors in addition to the reporting

19    specified in Paragraph 8.1 below.

20    **5.    Post-Petition Replacement Liens.**

21         5.1    <u>Postpetition Lien Granting</u>.  Hillair shall have and is hereby granted by the

22    Debtors, effective as of the Petition Date, a postpetition security interest and replacement lien

23    pursuant to sections 361 and 363(e) (the "Postpetition Lien") in all present and future, prepetition

24    and postpetition real and personal property assets in which and to the extent the Debtors hold an

25    interest, whether tangible or intangible, including without limitation, all accounts (including

26    postpetition accounts receivable arising post-petition notwithstanding the provisions of Section

27    552), chattel paper, deposit accounts, documents, documents of title, goods (including all

28

7

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1  inventory, equipment and fixtures), instruments, investment property (including all certificated

2  and uncertificated securities, securities entitlements, securities accounts, commodity contracts and

3  commodity accounts), letter of credit rights, money, and general intangibles, all supporting

4  obligations and security for any of the foregoing and all proceeds of the foregoing (including all

5  distributions made on account of any of the foregoing, all claims arising from the loss,

6  nonconformity, or interference with the use of, or defects or infringement of rights in, any of the

7  foregoing and any insurance payable by reason of any such loss, nonconformity, interference,

8  defects or infringement), and all rents, issues, profits and proceeds thereof (collectively, the

9  "Postpetition Collateral"), to the extent of any postpetition diminution in value of the prepetition

10  assets of the Debtor (the "Prepetition Collateral," and collectively with the Postpetition Collateral,

11  the "Collateral") encumbered by liens and security interests in favor of Hillair securing the

12  Debtors' obligations owed to Hillair; provided, however, with respect to the Debtors' interest in

13  any unexpired lease of real property, the Postpetition Lien shall only extend to the Debtors' rights

14  to the proceeds arising from the assignment, sale, disposition or termination of such lease.

15          5.2  <u>Postpetition Lien Priority</u>.  The Postpetition Lien shall be senior and have

16  priority over all other liens and interests on and in the Collateral, except that the Postpetition Lien

17  shall be junior only to (a) the Prepetition Lien in favor of Hillair and (b) such other valid,

18  existing, and perfected liens or security interests existing as of the Petition Date with respect to

19  such assets existing as of the Petition Date encumbered by such liens, and to the extent such liens

20  or security interests were senior to the Prepetition Lien in favor of Hillair as of the Petition Date

21  and are not otherwise avoided.

22          5.3  <u>Automatic Perfection of Postpetition Lien</u>.  The Postpetition Lien shall be

23  granted, attached, perfected and validated by virtue of the Order approving this Stipulation,

24  without any further act required under federal, state, or local law requiring notice, filing,

25  registration, recording, possession or other act to validate or perfect a security interest or lien,

26  including without limitation deposit account control agreements, merchant payment agreements,

27  merchant payment direction letters, cash transport agreements, and such other agreements with

28

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

1    any party possessing or asserting an interest in the Collateral (a "Perfection Act").

2    Notwithstanding the foregoing, if Hillair, in its sole discretion, elects to effectuate a Perfection

3    Act, Hillair is authorized to perform such act, and if requested by Hillair, the Debtors are

4    authorized to perform such act to the extent necessary or required, and in such event, the subject

5    filing or recording office or agency is authorized to accept, file, and/or record any document in

6    regard to such act in accordance with applicable law. No defect or failure in connection with an

7    attempt to perform a Perfection Act shall limit, waive, or alter the validity, enforceability,

8    attachment, or perfection of the Postpetition Lien by virtue of entry of the Order approving this

9    Stipulation.

10         5.4    <u>Validity and Perfection of Postpetition Lien.</u>    Upon entry of the Order

11    approving this Stipulation, the Postpetition Lien granted to Hillair by virtue of this Stipulation

12    shall be valid, enforceable and perfected without any further act by Hillair.

13         6.    **Segregation of Cash Collateral.**

14         6.1    <u>Segregation of the Cash Collateral.</u>    Unless otherwise agreed upon in

15    writing by Hillair, the Cash Collateral shall be collected, received, maintained, and segregated by

16    the Debtors in trust for Hillair. The Cash Collateral shall be maintained in the accounts separate

17    and apart from any other revenue or property of the Debtors or the Debtors' estates, shall not be

18    commingled or intermingled with any other income or property of the Debtors or the Debtors'

19    estates not constituting the Cash Collateral, and shall not be used except in accordance with the

20    terms and conditions of this Stipulation.

21         6.2    <u>Segregated Accounts.</u>    The Debtors shall maintain separate debtor in

22    possession accounts (collectively, the "Operating Accounts") for: (a) operating funds, (b) payroll,

23    and (c) taxes. All of the funds in each of the Operating Accounts are Cash Collateral. All cash in

24    the Operating Accounts shall remain Cash Collateral and may only be withdrawn in accordance

25    with this Stipulation and the attached Budget.

26

27

28

<div align="center">9</div>

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

7.    **Insurance.**

7.1    The Debtors shall maintain and insure the Collateral in sufficient amounts to adequately protect Hillair's interest in such Collateral, and include Hillair as a loss payee in accordance with the requirements of the Loan Documents.  Debtors shall promptly provide in writing evidence of insurance to Hillair.

8.    **Reporting Requirements.**

8.1    The Debtors shall maintain records adequate and sufficient to account for the Cash Collateral and expenses, and shall make such records available for inspection by Hillair upon 24 hours' notice.  The Debtors shall provide Hillair within five (5) business days from the date of the entry of the order approving this Stipulation a complete accounting of the Cash Collateral and expenses relating to the Collateral from the Petition Date to the date of the entry of the Order approving this Stipulation.  The Debtors shall (i) timely perform all reporting and other requirements of the Office of the United States Trustee, and (ii) provide Hillair with (A) all information and reports as required under the Loan Documents and (B) copies of all documents and papers filed or submitted by the Debtors with the Office of the United States Trustee or with the Court.  The Debtors shall further provide the following periodic reports to Hillair:

(a)    a weekly report delivered on each Wednesday at 2:00 p.m. (Pacific Time) for the immediately prior week (ending on Saturday) reflecting actual receipts and expenditures by line item against those set forth in the approved cash collateral budget for such weekly period;

(b)    on each Wednesday at 2:00 p.m. (Pacific Time), an update to the approved cash collateral budget extending the term of the budget for an additional week to reflect a rolling 13- week budget;

(c)    a current accounts receivable aging covering post-petition receivables (with respect to payments received by the Debtors and entered into the Debtors' financial reporting system), on each Wednesday by 2:00 p.m. (Pacific Time), and current through the immediately prior week (ending on Saturday);

10

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

116

(d)     a current accounts payable aging covering post-petition payables (with respect to payables where invoices have been received by the Debtors and entered into the Debtors' financial reporting system), on each Wednesday by 2:00 p.m. (Pacific Time), and current through the immediately prior week (ending on Saturday);

(e)     monthly financial statements reviewed by an independent accountant, and such other reports required to be delivered by the Debtors pursuant to the loan documents with such financial statements being delivered within seven (7) business days following the month end closing;

(f)     monthly bank account statements to be provided to Hillair on the 5th business day following the statement closing date;

(g)     on each Thursday at 2:00 p.m. (Pacific Time), a written update regarding the operations of the Debtors, including, without limitation, information regarding (i) relationships with key suppliers, carriers and customers since the Petition Date, and (ii) a written update of the Debtors' sales and refinancing efforts including, without limitation, potential lenders, buyers, investors, the status of any negotiations and the and terms contemplated, and the likely time frame; and

(h)     copies of all periodic reports provided to the U.S. Trustee on the date that such reports are due.

8.2     Within 48 hours of a request of Hillair, the Debtors shall permit Hillair or an agent of Hillair, reasonable access to any of the Collateral for the purpose of enabling such party to inspect, audit and appraise the Collateral and the Debtors' books and records, and to inspect books and records maintained by any agent of the Debtors at the location that those books and records are maintained.

11

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER
BN 36439861V1

117                                                                    Exhibit 1, Page 36

9.    **Section 507(b) Priority.**

9.1    If the protections provided by the liens and security interests under the Loan Documents or this Stipulation are later determined inadequate, Hillair shall have an allowed super priority administrative claim of the kind and priority specified in section 503(b) or 507(b): (1) with priority over all costs and expenses of administration of the bankruptcy case that are incurred under any provision of the Bankruptcy Code, including, without limitation, sections 503(b), 506(c), 507(a), or 522(b); and (2) with the same priority as the Replacement Lien as set forth in this Stipulation.

10.    **Waiver of Section 506(c) Surcharge.**

10.1    Based on the authorization of the Debtors' use of the Cash Collateral pursuant to this Stipulation, the Debtors, on behalf of itself and its estate, waives its right and shall not seek to surcharge the Collateral or Hillair under Section 506(c).

11.    **Forbearance of Remedies.**

11.1    Providing that there are no defaults hereunder, during the term of this Stipulation, and subject to the terms and conditions hereof, Hillair will forbear from exercising any of Hillair's rights and remedies against the Debtors under the Loan Documents.

12.    **Event of Default.**

12.1    An event of default under this Stipulation (each, a "Default") shall include the following:

(a)    The Debtors' failure to perform or comply with any of the terms, conditions, representations, warranties or covenants of the Loans (except monetary defaults contained therein), this Stipulation, or any other order of the Court;

(b)    Any material misrepresentation of fact made by any representative of the Debtors to Hillair about the Debtors' business or financial condition or the Collateral;

(c)    The granting in favor of any party other than Hillair of a security interest in or lien upon any property of the Debtors or the Debtors' estate, or a claim against the Debtors having priority over the security interests, liens or claims in favor of Hillair except to the

12

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND**
**(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

1   extent that such party had a security interest in or lien upon any property of Debtors on the

2   Petition Date which had priority over the security interests, liens or claims of Hillair existing on

3   Petition Date;

4       (d)    The Debtors' failure to perform or comply with their obligations

5   under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or of the requirements of

6   the Office of the United States Trustee;

7       (e)    The termination of this Stipulation by its own terms, operation of

8   law, or Court order;

9       (f)    The dismissal of the Bankruptcy Case;

10       (g)    The appointment of a trustee or an examiner under the Bankruptcy

11   Code;

12       (h)    The conversion of the Bankruptcy Case to a case under another

13   chapter of the Bankruptcy Code;

14       (i)    Submission by the Debtors of any chapter 11 plan of reorganization

15   inconsistent in any material respect with the terms of this Stipulation;

16       (j)    Failure of the Debtors to file a disclosure statement and proposed

17   plan within 120 days after the Petition Date; or

18       (k)    The stay, modification, amendment, vacating, or reversal of any

19   term herein or Order approving this Stipulation, or any of the rights and acknowledgments

20   conferred hereunder, without the express prior written consent of Hillair.

21       13.    **Rights and Remedies Upon Default.**

22       13.1    <u>Effect of Default</u>.    Immediately upon the occurrence of a Default,

23   whether or not the Default is curable, and whether or not Hillair provides notice of any Default to

24   the Debtors, the Debtors must cease all use of Cash Collateral for any purpose whatsoever. As an

25   accommodation, Hillair will provide the Debtors with written notice of such Default via email to

26   the Debtors' counsel of record in the above-captioned bankruptcy cases. Without limiting the

27   generality of the foregoing, and more specifically, immediately upon Default, and subject only to

28   

13

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

1  voiding the Default within five (5) calendar days, as set forth in this paragraph ___, all of the

2  following shall be deemed to have occurred:

3       (a)    Hillair's consent regarding the Debtors' use of the Cash Collateral

4  pursuant to this Stipulation is terminated without further notice;

5       (b)    The Debtors shall not use any Cash Collateral for any purpose;

6       (c)    The Debtors shall not seek authority to use any Cash Collateral;

7       (d)    The Debtors shall hold in trust for Hillair, and shall segregate, all

8  Cash Collateral in its possession or to come into its possession in the future; and

9       (e)    Hillair is granted immediate relief from the automatic stay of

10  Section 362 for cause, without any further notice, motion, hearing, or order, to take any action or

11  exercise of any or all rights and remedies available under the Loan Documents, this Stipulation,

12  or applicable law, including (i) the continuation of the state court receivership and (ii) the

13  commencement and completion of a judicial or non-judicial foreclosure under the Loan

14  Documents.  The parties specifically waive the provisions of Rule 4001(a)(3) of the Federal Rules

15  of Bankruptcy Procedure.

16      13.2   If Default is "Curable."    If the Default is a type that is curable by the

17  Debtors and the Debtors cure the Default within five (5) calendar days from the date of service of

18  such notice of the Default, the Default is voided, and the Debtors may then be allowed to use

19  Cash Collateral under the terms and conditions set forth in this Stipulation, and as provided in the

20  Budget.

21      14.    **Cash Collateral Term.**

22      14.1   The authorization to use the Cash Collateral pursuant to this Stipulation

23  shall terminate as of the earliest of the following (the "Termination Date"):

24       (a)    July 31, 2019;

25       (b)    The occurrence of a Default; or

26       (c)    The occurrence of the Effective Date of a confirmed plan of

27  reorganization.

28

14

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 36439861V1

14.2     Notwithstanding the occurrence of the Termination Date or a Default, this Stipulation may be extended by Hillair and the Debtor by written agreement without further order of this Court.

**15.     No Modification or Stay of the Stipulation or Order.**

15.1     Unless expressly consented to in writing by Hillair, (a) this Stipulation, (b) an Order approving this Stipulation, and (c) the rights and remedies of Hillair under the Loan Documents and this Stipulation, shall not be subject to any stay, modification, alteration, amendment, vacating, or reversal by any order of this Court or other tribunal.

**16.     Power To Waive Rights; Duties To Third Parties.**

16.1     Hillair shall have the right to waive any of the terms, rights, and remedies provided in this Stipulation or the Loan Documents ("Hillair Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce any Hillair Rights. Any waiver by Hillair of any Hillair Rights shall not be or constitute a continuing waiver. Hillair's delay in or failure of exercising or enforcing any of Hillair Rights shall neither constitute a waiver of such Hillair Rights, subject Hillair to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligations or indebtedness owed to Hillair.

**17.     Reservation of Rights.**

17.1     This Stipulation is in addition to and without prejudice to Hillair's right to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents, and any other applicable agreement or law, including seeking an order prohibiting or restricting the Debtors' use of cash collateral, granting further or additional relief from the automatic stay, providing for adequate protection, or imposing an injunction, and to object to applications for allowance or payment of compensation of professionals retained pursuant to the Bankruptcy Code.

15

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

121

Exhibit 1, Page 40

18.  **The Debtors' Acknowledgment.**

18.1    Notwithstanding any other provision of this Stipulation, the Debtors acknowledge and agree that (a) the Obligations are valid and indefeasible obligations of the Debtors and their estate, in accordance with their terms; and (b) the liens and security interests in favor of Hillair with respect to the Collateral, both prepetition and postpetition, including the Cash Collateral, are valid, enforceable, perfected, and unavoidable under the Bankruptcy Code, including Section 552, and any other applicable law. The Obligations shall include all reasonable attorneys' fees and costs incurred by Hillair in connection with the representation of Hillair in all aspects of this matter, including the enforcement of its rights and remedies under the Loan Documents and the representation of Hillair in all aspects of the Bankruptcy Case.

19.  **No Action for Purposes of the One Form of Action Rule.**

19.1    The Debtors hereby waive each of the provisions of Code of Civil Procedure Sections 726, 580a, 580b or 580d or other similar law which provide for an election of remedies or an "action" to the extent such law is applicable.

20.  **Notice.**

20.1    When notice is required in this Stipulation, it shall be delivered or served upon the parties as follows:

If to Hillair:

Hillair Capital Management, LLC
345 Lorton Avenue, Suite 303
Burlingame, California 94010

with a copy to counsel for Hillair, which shall not constitute notice hereunder:

Steven M. Spector, Esq.
Buchalter, a Professional Corporation
1000 Wilshire Boulevard, 15th Floor
Los Angeles, California 90017
Telephone: (213) 891-0700
Facsimile:  (213) 896-0400

If to the Debtors, as applicable:

Soobeez, Inc.
3463 Foothill Boulevard
Glendale, California 91214

Scoobeez Global, Inc.
3463 Foothill Boulevard
Glendale, California 91214

16

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BN 36439861V1

1

2
|  | Scoobur, LLC |
|---|---|
|  | 3463 Foothill Boulevard |
|  | Glendale, California 91214 |

3  with a copy to counsel for the Debtors,    Ashley M. McDow, Esq.
4  which shall not constitute notice    Foley & Lardner LLP
   hereunder:    555 South Flower Street, Suite 3300
              Los Angeles, CA 90071
5              Telephone:  (213) 972-4500
              Facsimile:  (213) 486-0065
6

7    21.    **Dismissal of Bankruptcy Case.**

8        21.1    In the event that any of the Debtors' bankruptcy cases are dismissed, the

9  Debtors shall turnover all Cash Collateral then held in its possession to Hillair within five (5)

10 business days from the day that Hillair provides notice of its turnover demand to the parties

11 specified in paragraph 20.  This provision shall survive the termination of this Stipulation, the

12 dismissal of the applicable Bankruptcy Case, and shall be binding on the applicable Debtors and

13 may be enforced under bankruptcy and non-bankruptcy law.

14    22.    **No Responsible Person Liability.**

15        22.1    In making decisions or in taking other actions reasonably related to the

16 Debtors' Cash Collateral Motion or this Stipulation, Hillair shall have no liability to any third

17 party including creditors and equity interest holders of the Debtors.  Hillair shall not be deemed to

18 be in control of the operations of the Debtors or to be acting as a "responsible person," "owner"

19 or "operator" with respect to the operation or management of the Debtors.

20    23.    **No Agreement to Provide Financial Accommodation.**

21        23.1    This Stipulation shall not impose any duty or obligation to provide any

22 financing or financial accommodation to the Debtors, or to any other entity, to collect, sell, lease

23 or otherwise dispose of any of the Collateral, to proceed against any entity, to proceed against or

24 exhaust any security, or to otherwise pursue any of Hillair's Rights.

25

26

27

28

17

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36439861V1

24. **Access to the Debtors' Books and Records.**

24.1    Hillair shall have full, complete, unqualified and unlimited access to the books and records of the Debtors during normal business hours for the purpose of inspection, photocopying and audit upon 24 hours' notice from Hillair to the Debtors.

25. **Miscellaneous Provisions.**

25.1    <u>Jointly Negotiated Stipulation</u>.    This Stipulation is the product of negotiation among the parties hereto and represents the joint, conceived, bargained for and agreed upon language mutually determined by the parties to express their intentions in entering into this Stipulation. Any ambiguity or uncertainty herein shall be deemed to be caused by, or attributable to, all parties collectively.    In any action to enforce or interpret this Stipulation, it shall be construed in a neutral manner and no term or condition herein shall be construed more or less favorably to any one party or groups of parties.    Each party will act in good faith in the performance of its obligations hereunder.

25.2    <u>Consent to Entry of Order</u>.    The parties each consent to entry of an order approving this Stipulation.

25.3    <u>Binding Effect</u>.    This Stipulation shall be binding upon Hillair and the Debtors and their respective successors and assigns, including any trustee appointed in this Bankruptcy Case or any subsequently converted bankruptcy case of the Debtors.    This Stipulation shall also inure to the benefit of Hillair and the Debtors, and their respective successors and assigns.

25.4    <u>Counterparts</u>.    This Stipulation may be executed in counterparts, and such signatures may be by facsimile.

25.5    <u>Time of the Essence</u>.    Each of the parties expressly acknowledges and agrees that time is of the essence and that all dates and time periods provided for in this Stipulation are absolute and final.

25.6    <u>Survival of Terms</u>.    Notwithstanding any term to the contrary herein with the exception of paragraph ___, the terms and conditions of this Stipulation shall apply only

18

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

BN 36439861V1

124

Exhibit 1, Page 43

1   during the term of this Stipulation prior to the Termination Date, provided, however, that the

2   rights and remedies granted Hillair shall survive the term of this Stipulation and Termination

3   Date.

4        25.7   <u>No Benefit to Non-Parties</u>. This Stipulation is not intended, nor shall it be

5   construed or deemed to confer any rights, powers or privileges on any entity that is not the

6   Debtors, Hillair as express signatories to this Stipulation. Specifically, no benefit is extended to

7   any surety or guarantor of the Obligations, and Hillair reserves all of its rights with respect to

8   such non-parties.

9        25.8   <u>Further Assurances</u>. Debtor is authorized and shall perform all acts and

10   execute and deliver to Bank all agreements, financing statements, instruments or documents as

11   may be reasonably requested by Bank to effectuate the terms of this Stipulation or as

12   contemplated herein.

13

14   **IT IS SO STIPULATED:**

15   DATED: May 14, 2019            BUCHALTER, a Professional Corporation

16

17                                  By: _____

18                                      STEVEN M. SPECTOR
                                     ANTHONY J. NAPOLITANO

19                                  Attorneys for Secured Creditor Hillair Capital
                                 Management, LLC

20

21

22   DATED: May 14, 2019            FOLEY & LAUDNER, LLP

23

24                                  By: _____
                                     ASHLEY M. McDOW

25                                  Attorneys for the Debtors

26

27

28                                  19

**STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND
(2) APPOINTMENT OF CHAPTER 11 TRUSTEE OR CHIEF RESTRUCTURING OFFICER**

# EXHIBIT 4

# EXHIBIT 4

1   STEVEN M. SPECTOR (SBN: 51623)
        sspector@buchalter.com
2   ANTHONY J. NAPOLITANO (SBN: 227691)
        anapolitano@buchalter.com
3   BUCHALTER, A Professional Corporation
    1000 Wilshire Boulevard, Suite 1500
4   Los Angeles, CA 90017-2457
    Telephone: (213) 891-0700
5   Facsimile:: (213) 896-0400

6   ADAM H. FRIEDMAN (pro hac vice to be filed)
        afriedman@olshanlaw.com
7   OLSHAN FROME WOLOSKY LLP
    1325 Avenue of the Americas
8   New York, NY 10019
    Telephone: (212) 451-2216
9   Facsimile: (212) 451-2222

10  Attorneys for secured creditor
    HILLAIR CAPITAL MANAGEMENT, LLC

11

12              UNITED STATES BANKRUPTCY COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                  LOS ANGELES DIVISION

15  In re                            | Lead Case No. 2:19-bk-14989-WB

16  SCOOBEEZ, INC., et al.           | Chapter 11

17          Debtors and Debtors      | (Jointly Administered with
            in Possession.           | Case Nos. 2:19-bk-14991; 2:19-bk-14997)

18  Affects:

19                                    **DECLARATION OF STEVEN M. SPECTOR IN**
    ☒     All Debtors                 **SUPPORT OF HILLAIR CAPITAL**
20                                    **MANAGEMENT, LLC'S OPPOSITION TO**
    ☐     SCOOBEEZ, INC., only        **DEBTORS' MOTION FOR ENTRY OF**
21                                    **INTERIM ORDER AUTHORIZING USE OF**
    ☐     SCOOBEEZ GLOBAL, INC.       **CASH COLLATERAL ON AN INTERIM BASIS**
22        only
    ☐     SCOOBUR, LLC only           [Motion and Declaration of Sean M. McAvoy
23                                    concurrently filed.]

24                                    **Hearing:**
                                      Date:    May 14, 2019
25                                    Time:    2:00 p.m.
                                      Place:   U.S. Bankruptcy Court
26                                             Courtroom 1375
                                               255 East Temple Street
27                                             Los Angeles, CA 90012

28

                                    1

BN 36441610V1

# DECLARATION OF STEVEN M. SPECTOR

I, Steven M. Spector, hereby declare, as follows:

1.      I am an attorney duly admitted to practice in the State of California and the United States District Court for the Central District of California.  I am a shareholder of Buchalter, a Professional Corporation ("Buchalter") and a member of Buchalter's Insolvency & Financial Law practice group.  I am one of the co-counsel representing Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital Investments LP (collectively, "Hillair"), senior secured creditor of Scoobeez, Inc., a California corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the "Debtors").  I have personal knowledge of the matters stated in this Declaration, and if called upon as a witness, I could and would testify competently thereto.

2.      I submit this declaration in support of Hillair's concurrently filed supplemental *Opposition to Debtors' Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis* (the "Motion").  The following facts are true to the best of my own personal knowledge, except where stated on information and belief, and as to those facts, I believe them to be true.  If called as a witness, I could and would testify competently to the facts set forth herein.

3.      I am the lead counsel for Hillair in connection with the action pending in the California Superior Court, County of Los Angeles, designated as *Hillair Capital Management, LLC v. Scoobeez Global, Inc., et al.*, Case No. 19GDCV00492 (L.A. Sup. Ct. 2019) (the "State Court Action").  On April 24, 2019, I caused to be filed the *Ex Parte Application to Appoint Receiver, Issue Temporary Restraining Order and Set Order to Show Cause why Receiver Should not be Confirmed* (the "Receivership Application") in the State Court Action.  The Receivership Application sought the appointment a receiver over the Debtors.

4.      The Court held a preliminary hearing on the Receivership Application on April 26, 2019 and set a continued hearing for May 1, 2019 at 1:30 p.m.  A temporary restraining order was issued at that hearing limiting the Debtors' operations to only ordinary course transactions.  The

1

1    Superior Court also established April 30, 2019 at 12:00 p.m. PDT as the deadline for the Debtors

2    to file any opposition to the Receivership Application.

3        5.    In addition to the protracted delay in the filing of the first-day motions, there were

4    significant deficiencies in the motions that prevented the parties from being able to fully evaluate

5    the relief sought.  Missing from the routine and customary first-day filings was an omnibus

6    declaration of Shahan Ohanessian, the Debtors' principal, setting forth the general background of

7    the Debtors' business and operations, the capital structure of the Debtors, the issues precipitating

8    the filing of the chapter 11 cases, the key issues to be addressed in the early stages of the cases

9    and the necessary evidentiary support for the relief sought in the first-day motions.

10        6.    Missing from the *Motion to Authorized Payment of Prepetition Wages* [Docket

11    No. 8] (the "Wage Motion") was a report itemizing the employees and the precise wages to be

12    paid.

13        7.    Missing from the Cash Collateral Motion was a customary 13-week cash collateral

14    budget setting forth with specificity the precise expenses to be paid.  Instead, the Debtors

15    submitted monthly income statement projections for a three-month period providing only high

16    level categorization of the expenses sought to be paid.

17        8.    Missing from the first-day motions was a critical vendor motion to enable the

18    Debtors to pay prepetition vendors that they have decried as being critical to the Debtors'

19    operation.  And finally, missing from the first-day motions was a customary motion prohibiting

20    the trading of the Debtors' securities so as to preserve any beneficial tax attributes that the

21    Debtors may have.

22        9.    In connection with the Debtors' *Emergency Motion for Order (1) Authorizing the*

23    *Maintenance of Existing Bank Accounts, etc.* [Docket No. 7] (the "Cash Management Motion"),

24    the Debtors provided on May 6, 2019 at 1:58 p.m. their proposed order granting that motion, but,

25    more importantly, a spreadsheet containing a list outstanding prepetition checks that had not

26    cleared the Debtors' prepetition bank accounts.

27        10.    A true and complete copy of the uncleared checks spreadsheet is attached hereto as

28    **Exhibit 1.**

<div align="center">2</div>

1    11.    What is troubling is that approximately $45,000 of these checks was issued on

2    April 30, 2019 (*i.e.*, the Petition Date), and at least two of the checks were issued to insiders of

3    the Debtors:    $7,500.00 to Shoushana Ohanessian (the Debtors' principal's wife and board

4    member); $2,000 to Nazareth Ohanessian and $3,000 to Joweta Jowita Chometowska (a board

5    member).

6    12.    In order to address the Debtors' informational deficiencies, on May 2, 2019

7    counsel for Hillair sent Debtors' counsel an email detailing the documents and information

8    necessary to fully evaluate the Debtors' financial projections and the relief being requested in the

9    first-day motions.

10    13.    A true and complete copy of the email dated May 2, 2019 1:57 p.m. on which I

11    was copied is attached hereto as **Exhibit 2** (the "May 2nd Email").

12    14.    Over the course of the following week from when the May 2nd Email was sent, I

13    attempted on a number of occasions to meet and confer via email with various counsel for the

14    Debtors regarding the production of documents.    The hope was that the Debtors' would provide

15    the information requested, which should have been routine and customary information readily

16    available, by no later than Monday, May 6, 2019 in anticipation of a meeting between the

17    prinicpals of the Debtors (and their counsel) and the principal of Hillair (and its counsel) at 2:00

18    p.m. on Tuesday, May 7, 2019.    No douments were provided and no meeting occurred.

19    15.    Thereafter, I sent a number of emails to various counsel for the Debtors inquiring

20    about the status of the document requests and suggesting a Thursday production deadline in

21    contemplation of a Friday, May 10, 2019 meeting between the Debtors and Hillair.    No

22    documents were provided by Thursday and no meeting occurred.

23    16.    On Friday morning, I received several emails from counsel from the Debtors

24    purporting to provide the douments requested in the May 2nd Email.    Those documents were

25    deficient.    Accordingly, on May 10, 2019 at approximately 9:30 a.m., I and my colleague, Tony

26    Napolitano, called Ashley McDow, counsel for Debtors, to discuss the document production

27    deficiencies and to discuss Hillair's forthcoming motion for an examination of the Debtors and its

28    insiders under Bankruptcy Rule 2004.

3

17.    Thereafter, I and Mr. Napolitano called Mark Hebbeln, counsel for the Debtors, to discuss the document production deficiencies and to discuss a forthcoming motion for a Rule 2004 examination.

18.    At 10:59 p.m. on May 10, 2019, I sent an email to Ms. McDow and Mr. Hebbeln advising them of the document deficiencies and that Hillair intended to proceed with the filing of a Rule 2004 Motion.  A true and complete copy of that email is attached hereto as **Exhibit 3**.  At 1:30 p.m. on Friday, May 10, 2019, counsel for Hillair spoke with Mr. Hebblen regarding the scope and necessity of the Rule 2004 Motion.

19.    At the hearing on the Debtors' first-day motion, David Neale appeared on behalf of Nex Gen Financial with respect to the Cash Collateral Motion.

20.    Mr. Neale disclosed that Nex Gen apparently asserts an interest in the cash collateral since the Debtors had allegedly sold their accounts receivable to Nex Gen.

21.    Attached hereto as **Exhibit 4** is a true and complete copy of a LexisNexis Comprehensitve Business Report that I caused to be obtained.

22.    Attached hereto as **Exhibit 5** is a true an complete copy of a printout of the business Serve (www.serve.io) in which several of the Debtors' principals and insiders have executive roles, including Shahan Ohanessian, CEO of the Debtors and CEO of Serve.io, George Voskanian, CFO of the Debtors and CFO of Serve.io, Suzy Ohanessian, board member of the Debtors and President of Serve.io.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 13, 2019, at Los Angeles, California.

/s/ Steven M. Spector
STEVEN M. SPECTOR

4

# EXHIBIT 5



# Decentralizing Logistics Services on the Blockchain

Everything to Everyone, Everyone to Everything

REQUEST A DEMO          WHITE PAPER

132

5/13/2019

Case 2:19-bk-14989-WB    Doc 86-1    Filed 05/23/19    Entered 05/23/19 12:37:16    Desc
Case 2:19-bk-14989-WB    Doc 48    Filed 05/13/19    Entered 05/13/19 12:08:29    Desc
Main Document    Page 40 of 46

## Serve Core



- Open source

- Fully immutable & decentralized

- Complete APIs, SDKs and SaaS technologies

- Global Access

- Smart Contracts - Transaction Data - Reputation - Accountability - Incentives

## Current State of Logistics

Sample Transaction:










**$8.20**

**$11.40**

**$4.50**

**$24.10**

The end result is the user paying **$24.10** for an **$11** pizza. Of this, the Pizza Place only receives **$8.20** because existing platforms charge up to 40% in fees.

## Future Powered by Serve

  

### $11.00             $4.50             $15.50

Creating efficient markets while maximizing performance



## Challenges in the Industry Today

- High platform fees up to 40%
- Very difficult for small vendors to compete against large players
- High cost barriers to entry
- No clear reputation and accountability systems
- Lack of quality control
- Limited service areas

## Serve's Global Solutions

- Transaction Fees will be as low as 0.00%
- Up to 100% of the services will go to the service providers

134

https://serve.io

Exhibit 5, Page 41

5/13/2019

Case 2:19-bk-14989-WB    Doc 86-1    Filed 05/23/19    Entered 05/23/19 12:37:16    Desc
Case 2:19-bk-14989-WB    Doc 46    Filed 05/13/19    Entered 05/13/19 12:08:29    Desc
Exhibit 3    Filed 05/13/19 06:8669
Main Document    Page 42 of 46

- Up to 100% of the listing price will go to the businesses

- Serve provides Enterprise technology to every level in the chain

- Add Decentralization, Transparency, Reputation and Accountability to the market





# HOW BLOCKCHAIN CAN SOLVE THESE PROBLEMS



- Provide full transparency into the entire supply chain & order process

- Creates trust between service providers and customers through transparency

- Accountability Supported by the Community

- Incentivize good behavior while disincentivizing bad behavior

- Marketplace and Vendor Verification & Staking

- Establishing a global economy and giving access to people who had none

# PLATFORM ECONOMICS

135





**OUR ROADMAP**

FOUNDERS

5/13/2019

Meet our leadership team

TEAM



Shahan Ohanessian
CEO



George Voskanian
CFO



Roman Tsarovsky
CTO



Scott Sheikh
CLO



Suzy Ohanessian
PRESIDENT



Ycaza Thrush
CVO

## ADVISORS

Some of our amazing advisors

137

5/13/2019
Case 2:19-bk-14989-WB    Doc 40-1    Filed 05/13/19    Entered 05/13/19 12:08:29    Desc
Exhibit 3 to 5    Page 59 of 66





**Bill Shihara**
CEO of Bittrex

**Liam Robertson**
CEO of Alphabit Fund



**Phu Styles**
Global Strategy Blockchain Expert





**Michael K. Kalman**
Global Marketing & Advertising

**Margaux Avedisian**
Marketing & PR Blockchain Expert

# PROFESSIONALS





138

https://serve.io

5/13/2019    Case 2:19-bk-14989-WB    Doc 46    Filed 05/13/19    Entered 05/13/19 12:08:29    Desc
Serve
Exhibit 3    Page 60 of 66

# INITIAL USE CASES

          

**Last Mile Logistics**
(Food Deliveries, Product
Deliveries & Others)

**Transportation**
(Rideshare)

**Logistics**
(Trucking & Shipping & Air)

**E-Commerce**
(Transaction & Delivery)

---

Limo Service
Car Rental

Influencer
Touring Industry

Events (Service Providers)
Freelancer Market

Home Improvement
Others

# CONTACT US TO SEE THE FUTURE

Any question? Reach out to us and we'll get back to you shortly.

✉ info@serve.io        🌐 serve.io        📞 866-40-SERVE

Your Name

Your Email

Your Message

139

Exhibit 5, Page 46

# EXHIBIT 5

# EXHIBIT 5

1  | Robert P. Goe – SBN 137019
   | Stephen P. Reider – SBN 287820
2  | **GOE & FORSYTHE, LLP**
   | 18101 Von Karman Ave., Ste. 510
3  | Irvine, CA 92612
   | Email: rgoe@goeforlaw.com
4  |        sreider@goeforlaw.com
   | Telephone:  (949) 798-2460
5  | Facsimile:  (949) 955-9437

```
┌─────────────────────────────┐
│     FILED & ENTERED         │
│                             │
│      AUG 31 2018            │
│                             │
│  CLERK U.S. BANKRUPTCY COURT│
│  Central District of California │
│  BY tatum    DEPUTY CLERK   │
└─────────────────────────────┘
```

6  | Attorneys for Playhut, Inc.

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11

12  | In re:                              | Case No.  2:18-bk-15972-WB

13  | PLAYHUT, INC.,                      | Chapter 11 Case

14  |                                     | **ORDER GRANTING ON A FINAL BASIS
    |                                     | EMERGENCY MOTION FOR ORDER
15  |          Debtor and Debtor in Possession. | AUTHORIZING DEBTOR TO RETAIN
    |                                     | AND EMPLOY JAMES WONG AS CHIEF
16  |                                     | RESTRUCTURING OFFICER UNDER 11
    |                                     | U.S.C. §§ 105(a), 363(b), 1107 and 1108**

17

18  |                                     | Hearing :
    |                                     | Date:       August 16, 2018
19  |                                     | Time:       10:00 a.m.
    |                                     |             Courtroom:  1375

20

21        The Emergency Motion for Order Authorizing Debtor to Retain and Employ James Wong

22  as Chief Restructuring Officer under 11 U.S.C. §§ 105(a), 363(b), 1107 and 1108, filed by Playhut,

23  Inc., Debtor and Debtor in Possession herein, on July 18, 2018 as Docket No. 113 ("Motion")

24  came on for final hearing on the date and time noted above.  Upon consideration of the Motion, the

25  Office of the United States Trustee's ("UST") oppositions having been withdrawn, and good cause

26  appearing,

27

28

1

**IT IS ORDERED:**

1.    The Motion is granted on a final basis.

2.    James Wong is hereby appointed Chief Restructuring Officer ("CRO"), effective as of July 12, 2018.

3.    James Wong is the principal of Armory Consulting Co.

4.    Armory Consulting Co., has ceased to act as Debtor's financial advisor effective as of July 11, 2018.

5.    The CRO shall be compensated as provided in the Motion subject to the modification set forth immediately below.

6.    The CRO shall file quarterly compensation reports on a calendar quarter basis (i.e.: January to March, April to June, July to September and October to December) identifying services rendered and time spent in the same vein as set forth in Exhibit 2 to the Motion which already indicates that, "Mr. Wong will record his billing time pursuant to US Trustee billing standards for financial advisors (i.e., 1/10 hour increments, etc.)" and document requested reimbursement of expenses and that such quarterly compensation report be served on the Debtor, Debtor's counsel, the UST, the Debtor's secured creditors, the members of the Unsecured Creditor's Committee and their counsel and all parties requesting special notice (i.e.: this is consistent with the local bankruptcy rule for interim fee apps) and allow for 14 days to object (i.e.: should the court sustain the objection, CRO would be called upon to disgorge any prior payment).

# # #

Date: August 31, 2018

*Julia W Brand*

Julia W. Brand
United States Bankruptcy Judge

2

141

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**915 Wilshire Boulevard, Ste 1850, Los Angeles, CA  90017**

A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION TO APPLICATION FOR AN ORDER AUTHORIZING AND APPROVING (1) APPPOINTMENT OF BRIAN WEISS AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS *NUNO PRO TUNC* TO MAY 16, 2019 (doc. no. 63)**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) 05/23/2019 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**SEE ATTACHED SERVICE LIST (IF APPLICABLE)**

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On 05/23/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**SEE ATTACHED SERVICE LIST (IF APPLICABLE)**

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 05/23/2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SEE ATTACHED SERVICE LIST (IF APPLICABLE)**

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/23/2019 | Helen Cruz | |
|---|---|---|
| Date | Print Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## ADDITIONAL SERVICE INFORMATION

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

John-Patrick M Fritz on behalf of Interested Party Levene, Neale, Bender, Yoo & Brill L.L.P.
jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com

Alvin Mar on behalf of U.S. Trustee United States Trustee (LA)
alvin.mar@usdoj.gov

Ashley M McDow on behalf of Debtor Scoobeez
amcdow@foley.com, sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com

Rejoy Nalkara on behalf of Creditor BMW Financial Services NA, LLC, c/o AIS Portfolio Services, LP
rejoy.nalkara@americaninfosource.com

Anthony J Napolitano on behalf of Creditor Hillair Capital Management LLC
anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com

David L. Neale on behalf of Interested Party Levene, Neale, Bender, Yoo & Brill L.L.P.
dln@lnbyb.com

Gregory M Salvato on behalf of Interested Party INTERESTED PARTY
gsalvato@salvatolawoffices.com,
calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com

Steven M Spector on behalf of Creditor Hillair Capital Management LLC
sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

*SEE NEF FOR CONFIRMATION OF ELECTRONIC TRANSMISSION TO THE U.S. TRUSTEE AND ANY TRUSTEE IN THIS CASE, AND TO ANY ATTORNEYS WHO RECEIVE SERVICE BY NEF.*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

2.    **SERVED BY U.S. MAIL**

Debtor:
**Scoobeez**
Scoobeez Global, Inc.
Scoobur, LLC
3463 Foothill Blvd.
Glendale, CA 91214

Members of the Committee:

Yitzchak Abadi, CEO
Nexgen Capital, LLC
101 Chase Avenue, Suite 206
Lakewood, NJ 08701

Avitus, Inc.
Attn: Donald Reile, CCO
175 N. 27th Street, Suite 800
Billings, MT  59101

Minas Sarafian
c/o Simonian & Simonian, PLC
144 N. Glendale Avenue, Ste 228
Glendale, CA 91206

3.    **SERVED BY (state method for each person served):**

**BY OVERNIGHT DELIVERY**

Judge's Copy
The Honorable Julia W. Brand
U.S. Bankruptcy Court
255 E. Temple Street
9th Floor-Judge's Bin
Los Angeles, CA  90012

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.