Ashley M. McDow (245114)
**FOLEY & LARDNER LLP**
555 S. Flower St., Suite 3300
Los Angeles, CA 90071
Telephone:     213.972.4500
Facsimile:     213.486.0065
Email:          amcdow@foley.com

Proposed Attorneys for Debtors and Debtors-in-
Possession, Scoobeez, Scoobeez Global, Inc., and
Scoobur, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SCOOBEEZ, *et al.*[1]<br><br>　　　Debtors and Debtors in<br>　　　Possession.<br><br>Affects:<br><br>■ All Debtors<br><br>□ Scoobeez, ONLY<br><br>□ Scoobeez Global, Inc., ONLY<br><br>□ Scoobur LLC, ONLY | Case Nos.: 2:19-bk-14989-WB<br>Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br>Chapter 11<br><br>**DEBTORS' REPLY IN SUPPORT OF APPLICATION FOR AN ORDER AUTHORIZING AND APPROVING (I) APPOINTING BRIAN WEISS AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS NUNC PRO TUNC TO MAY 16, 2019**<br><br><u>Hearing:</u><br>Date:      May 28, 2019<br>Time:      10:00 a.m.<br>Place:     Courtroom 1375<br>　　　　　U.S. Bankruptcy Court<br>　　　　　255 East Temple Street<br>　　　　　Los Angeles, CA 90012 |

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND ALL INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:**

Debtors and debtors-in-possession Scoobeez, Scoobeez Global, Inc. and Scoobur, LLC (collectively, the "Debtors") submit this Reply in support of their Application for an Order Authorizing and Approving (I) Appointing Brian Weiss as Chief Restructuring Officer of the Debtors Nunc Pro Tunc to May 16, 2019 (the "CRO Application").  In support of the CRO Application, the Debtors respectfully state as follows:

**I.    INTRODUCTION**

Despite what the United States Trustee (the "UST") would like this Court to believe, the only relevant inquiry to be answered by this Court in determining whether to grant the relief sought by and through the CRO Application is whether it believes the proposed retention of Brian Weiss as the chief restructuring officer (the "CRO") of the Debtors is a proper exercise of the Debtors' business judgment, thus warranting relief pursuant to section 363(b)(1) of Title 11 of the United States Code (the "Bankruptcy Code").  The position advanced by the UST in the UST Opposition (as that term is defined below) puts every debtor-in-possession in an untenable position – if a debtor-in-possession takes *proactive* measures to ensure complete transparency and neutrality in management by and through the appointment of a CRO, those very measures are used as a sword to punish the debtor-in-possession by seeking the appointment of a chapter 11 trustee; however, if no such measures are taken to provide this extra layer of visibility and comfort to any and all parties-in-interest, the failure to take such measures is also used as a "basis" to seek the appointment of a chapter 11 trustee.   The alarming rate at which the UST increasingly seeks to routinely deprive a debtor-in-possession of the fundamental right to operate as a debtor-in-possession - even when faced with a complete dearth of evidence (let alone clear and convincing evidence) warranting the imposition of one of the most extraordinary remedies

- 1 -

provided for in the Bankruptcy Code - has created a no-win situation for any company seeking bankruptcy protection (at least in the Ninth Circuit). In fact, the position being advanced by the UST at an alarming rate has simply perpetuated the unfortunate maxim that no good deed goes unpunished while ignoring the fundamental legal maxim of innocent until proven guilty.

As detailed both below and in the CRO Application, the Debtors have determined – in the exercise of their sound business judgment - that the retention of Brian Weiss as the CRO is in the best interest of the Debtors' constituents, and no meaningful arguments to the contrary have been advanced. Rather, the UST filed a route opposition (the "UST Opposition") rife with unsubstantiated conclusions (such as the CRO is an "inadequate remedy") and more wrought with substantive and procedural defects than pleadings of similar import filed by the UST. As a threshold matter, the UST Opposition completely disregards well established procedural maxims by impermissibly seeking affirmative relief available only to a party-in-interest by way of motion (a point they essentially concede, yet blatantly ignore). Moreover, the UST doesn't even feign the need to include evidence (let alone clear and convincing evidence) to support *a single allegation* espoused in the UST Opposition (many of which border on defamatory), but rather impermissibly appends exhibits – most of which are completely inadmissible from an evidentiary perspective in their own right (not to mention based almost exclusively upon an improper and unauthorized pleading that implicates Federal Rule of Bankruptcy Procedure 9011) – to the UST Opposition. Not only is the retention of a CRO an express condition to the consent of Hillair Capital Management to the Debtors' use of "cash collateral" (which is crucial in enabling the Debtors to operate effectively), the Debtors have (independently) determined that the proposed retention is in the best interest of the Debtors and their constituents. As set forth below, the Debtors are more than willing to make certain reasonable accommodations in response to legitimate concerns raised by the UST and the Official Committee of Unsecured Creditors (the

"Committee"), including but not limited to expressly agreeing to more definitive compliance with what has become known as the "J. Alix Protocols." Based upon this, and the arguments advanced below and in the Application, the Debtors respectfully submit that the appointment of the CRO is a proper exercise of the Debtors' business judgment, thus warranting the relief sought by and through the CRO Application.

## II.    BACKGROUND

On May 16, 2019, the Debtors filed their CRO Application. In the CRO Application, the Debtors requested that the Court enter an order authorizing and approving the retention of Brian Weiss as the Debtors' CRO. Among other things, the Debtors proposed that Mr. Weiss provide certain services to the Debtors, including (i) review and analyze the Debtors and their financial results, financial projections, operational data and compliance with the Budget; (ii) gain an understanding of the existing contractual arrangements and obligations with customers, advisors/consultants and suppliers; (iii) assist the Debtors in managing key constituents, including communications and meetings with, and requests for information made by, creditor constituents, including secured lenders, vendors, customers and employees; (iv) oversee key customer relationships; and (v) execute on identified cost saving initiatives.

In sum, the Debtors believe that the appointment of an independent chief restructuring officer is in the best interests of the Debtors and their constituents, including their secured and unsecured creditors. In addition, the appointment of a chief restructuring officer was part of the adequate protection package granted by the Debtors to Hillair Capital Management, LLC ("Hillair") in exchange for Hillair's consent to the Debtors' use of cash collateral. The Debtors understand that Hillair continues to support the appointment of the CRO.

On May 23, 2019, the UST filed his Objection to Application for an Order Authorizing and Approving (1) Appointment of Brian Weiss as Chief Restructuring Officer of the Debtors *Nunc Pro Tunc* to May 16, 2019 (the "UST Opposition"). In the UST Opposition, the UST argues that (i) the appointment of a CRO is inadequate and a chapter 11 trustee should be appointed, (ii) nothing in the Bankruptcy Code authorizes the appointment of a chief restructuring

- 3 -

1    officer, (iii) because the board of directors of Scoobeez consists solely of Mr. Ohanessian, the

2    CRO cannot be independent, (iv) the co-interim CEO's of Scoobeez are conflicted and, thus, the

3    CRO should not be "taking instructions" from them, (v) the Court should require additional

4    disclosure regarding how duplication of efforts will be mitigated, (vi) Force 10's other employees

5    not be employed absent further order of Court, (vii) the CRO should provide, on at least a

6    quarterly basis, his compensation requests to parties in interest subject to a 14 day negative notice

7    period, and (viii) the Court require further disclosure from Mr. Weiss as to any other connections

8    with the Debtors.

9        Further, on May 23, 2019, the Official Committee of Unsecured Creditors (the

10    "Committee") filed its Opposition to Debtors' Application for an Order Authorizing and

11    Approving (I) Appointing Brian Weiss as Chief Restructuring Officer of the Debtors *Nunc Pro*

12    *Tunc* to May 16, 2019 (the "Committee Opposition" and collectively with the UST Opposition,

13    the "Oppositions").  In the Committee Opposition, the Committee argues that (i) there is no

14    budget for the CRO's fees and expenses and, thus, the Committee cannot evaluate the benefit to

15    the estates of a CRO, (ii) there is no delineation of services to be rendered by the CRO, (iii) the

16    Court is being asked to give the CRO a "blank check" because his fees and expenses will not be

17    subject to review by the Court, the UST, creditors or the Committee, (iv) the Committee needs

18    additional time to evaluate whether the CRO's services are "necessary and essential" to the

19    Debtors, (v) the CRO's services should not be terminable without notice to the parties and the

20    Court, (vi) the Committee has not had an opportunity to form a position on whether the

21    appointment of the CRO is in the best interests of unsecured creditors of the Debtors.

22        For the reasons set forth below and in the Application, the Debtors submit that the

23    Application should be granted and that the Oppositions should be overruled.

24    **III.    DISCUSSION**

25        **A.    The Court Should Approve the Appointment of a Chief Restructuring Office**

26            **in Accordance with the Debtors' Business Judgment.**

27            **(i) The Court Has the Authority to Approve the Appointment of a Chief**

28                **Restructuring Officer.**

- 4 -

1    The employment of Mr. Weiss to serve as CRO is a reasonable exercise of the Debtors'

2    business judgment.  To the extent that engaging a CRO is a transaction involving the use of

3    property outside the ordinary course of business, it is appropriate under section 363(b)(1). Section

4    363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a

5    hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

6    estate." 11 U.S.C. § 363(b)(1). Further, under section 105(a) of the Bankruptcy Code, the "court

7    may issue any order, process, or judgment that is necessary to carry out the provisions of this

8    title." 11 U.S.C. § 105(a).

9    Courts have repeatedly held that a bankruptcy court may authorize a debtor to use estate

10    property under section 363(b)(1) whenever the request is supported by some rational, articulated

11    business purpose. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting

12    that under normal circumstances, the court defers to the trustee's judgment so long as there is a

13    "legitimate business justification"); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del.

14    1991) (courts have applied the "sound business purpose" test to evaluate motions brought under

15    section 363(b)); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1990) (applying "business

16    justification" test to transactions outside the ordinary course of business); *Stephens Indus., Inc. v.

17    McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (applying the "sound business purpose" test); *Comm.

18    of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)

19    (requiring "articulated business justification"); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14,

20    19-20 (B.A.P. 9th Cir. 1987). As set forth in *Walter*:

21    [T]here must be some articulated business justification for
using, selling, or leasing the property outside the ordinary course of

22    business . . . . Whether the proffered business justification is
sufficient depends on the case. As the Second Circuit held in

23    *Lionel*, the bankruptcy judge should consider all salient factors
pertaining to the proceeding and, accordingly, act to further the

24    diverse interests of the debtor, creditors and equity holders, alike.

25    *Id.*

26    Companies operating in chapter 11 commonly use the services of turnaround firms to fill

27    key officer positions. *See, e.g.*, Panel Discussion, *The Judge's Role in Insolvency Proceedings:*

28    *The View from the Bench; The View from the Bar*, 10 Am. Bankr. Inst. L. Rev. 511, 523 (2002)

- 5 -

1   ("With public companies in large chapter 11 cases, management is replaced 90% of the time.

2   Those of you, and I think that includes almost all of you who travel from time to time on business

3   to the United States, know that we have an industry of turnaround specialists; people who are

4   installed as interim management to replace the people that didn't do very well."). The practical

5   realities of operating in chapter 11 often require that debtors look to turnaround firms to supply

6   such personnel. *See id.* Moreover, chapter 11 debtors face unique issues that often require persons

7   having expertise operating in the chapter 11 environment.  As set forth in the CRO Application,

8   numerous courts, including this Court, have authorized retention of officers using section

9   363(b)(1) of the Bankruptcy Code.  Courts routinely permit debtors to retain professional firms

10  under section 363 for the purpose of providing employees to act as officers and providing

11  additional personnel to assist those officers.

12      The employment of a CRO is not subject to the requirements of 11 U.S.C. § 327(a).  As a

13  general matter, an officer of a debtor corporation is not a "professional person" within the

14  meaning of 11 U.S.C § 327(a). *See, e.g.*, *In re All Seasons Indus., Inc.*, 121 B.R. 822, 825 (Bankr.

15  N.D. Ind. 1990) (existing management is not subject to section 327). Management and turnaround

16  specialists who are engaged by a debtor corporation to serve as officers likewise fall outside the

17  scope of section 327(a). *See, e.g.*, *In re eToys, Inc.*, 331 B.R. 176, 195, 201-02 (Bankr. D. Del.

18  2005) (turnaround specialist hired postpetition as president and CEO of debtor in possession was

19  not a "professional person" under Bankruptcy Code section 327(a)).

20      That being said courts often require disclosure of connections with parties in interest that

21  may be considered conflicts of interest. *See, e.g., eToys*, 331 B.R. at 201-02 (debtor's officers

22  should disclose extent of relationships that might affect loyalty to the debtor or give rise to a

23  potential conflict of interest); *In re Coram Healthcare Corp.*, 271 B.R. 228, 239 n.16 (Bankr. D.

24  Del. 2001) (court expects disclosure of agreements senior management might have with largest

25  creditors).  Here, the Declaration of Brian Weiss provided in support of the CRO Application

26  provides disclosure regarding Weiss's and Force10's connections to the Debtors and parties in

27  interest. Based thereon, Weiss does not have any actual or potential conflict of interest with

28

respect to the Debtors and thus is "disinterested" within the meaning of the Bankruptcy Code.

Thus, the Court has the authority to approve the appointment of Weiss as CRO.

### (ii) The Decision to Appoint a Chief Restructuring Officer is Appropriate Exercise of the Debtors' Business Judgment.

The Debtors are seeking to employ Weiss, who has substantial experience and knowledge

with restructuring cases, to advise and guide them through the chapter 11 process and to assist

with the prosecution of these chapter 11 cases. Weiss's services are necessary and essential to the

Debtors' restructuring efforts.

Concurrently herewith and in order to more specifically address the concerns raised in the,

the Debtors are filing the (i) Supplemental Declaration of Brian Weiss in Support of the Debtors'

Application for an Order Authorizing and Approving the Employment and Retention of Brian

Weiss as Chief Restructuring Officer of the Debtors' Nunc Pro Tunc to May 16, 2019 (the

"Supplemental Weiss Declaration") and (ii) the Declaration of George Voskanian in Support of

the Debtors' Application for an Order Authorizing and Approving the Employment and Retention

of Brian Weiss as Chief Restructuring Officer of the Debtors' Nunc Pro Tunc to May 16, 2019

(the "Voskanian Declaration").

### 1. The Appointment of a Chief Restructuring Officer is in the Best Interests of the Debtors and Their Creditors.

Retention of an experienced restructuring consultant to direct the Debtors is the

responsible thing to do – it brings a needed skill set to the Debtors and restores creditor

confidence in the debtors in possession.  It is common practice for chapter 11 debtors to retain

one or more restructuring professionals, including "Chief Restructuring Officers" under Section

363 to manage the debtor through the process.  *See, e.g.*, *In re Blue Stone Real Estate, Const. &*

*Dev. Corp.*, 392 B.R. 897 (Bankr. M.D. Fla 2008); *Comtel Telcom Assets LP v. Alvarez &*

*Marshal, Inc.*, 2009 U.S. Dist. LEXIS 68190 (D.C. N.D. Tex. 2009); *In re Exide Technologies*,

2004 U.S. Dist. LEXIS 11921 (D. Del. 2004); *see also In re LTV Steel Company, Inc.*, 2011 U.S.

Dist. LEXIS 25338 (N.D. Ohio) (professional entitled business consultant, crisis manager, and

restructuring accountant). Given the concerns raised by the UST and at least one party in interest

1
2
3

(whether warranted and accurate or not) the Debtors believe – in the exercise of their sound business judgment – that the retention of the CRO is necessary to assuage these concerns and enable the Debtors to focus on successfully reorganizing.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

The principal objection asserted by the UST is that "nothing in the Bankruptcy Code or Rules authorizes a court to appoint a CRO or 'responsible person' to exercise the duties of a §1104(a) trustee when there is evidence to support the appointment of a trustee" and that "the appointment of a chapter 11 trustee is the sole statutory remedy set out in the Bankruptcy Code in such circumstances." First, as discussed in greater detail below, there is no evidence to support the appointment of a chapter 11 trustee in these Bankruptcy Cases, especially at this early stage when the Debtors should be entitled to operate their business with the "breathing space" of the automatic stay and the Debtors are taking action to correct prior issues with their business, including appointing Weiss as an independent decision maker and removing Mr. Ohanessian as CEO with his agreement. Second, courts have authorized the appointment of a CRO, even over the objection of a UST, when such appointment was in the best interest of the Debtors. For example, in *Blue Stone Real Estate*, the principal of a debtor in possession made certain post-petition transfers of estate assets, which he contended were in the ordinary course of business, but which the local UST contended were avoidable transfers. 392 B.R. at 900. The UST made an "emergency" motion for the appointment of a Chapter 11 Trustee, raising similar arguments as those asserted in the UST Opposition. In response, the Debtor sought to employ a professional fiduciary as its "Chief Restructuring Officer" to provide new management independent of the arguably errant principals of the debtor. The UST strenuously objected. The court overruled the objection, noting the following:

23
24
25
26
27
28

It quickly became apparent to all at the Hearing that the real concern of the United States trustee is its own organizational interest in maintaining control when it seeks the appointment of a Chapter 11 trustee, **nevermind that the Debtors' retention of this particular CRO in these particular cases just might be (and the Court determines it is, clearly) in the best interests of Debtors.** The United States trustee argued that the CRO Motion is effectively an "end run" on sections 1104's mandate that only the United States trustee is empowered to select a Chapter 11 trustee. Therefore, the United States trustee submits, the Court has no power to authorize the engagement of a CRO that would be the functional equivalent of a Chapter 11 trustee

DEBTORS' REPLY IN SUPPORT OF APPLICATION FOR APPOINTMENT OF CHIEF RESTRUCTURING OFFICER

4835-1294-9912.4

1    In essence, the United States trustee argues that once its office has filed a
2    motion to appoint a Chapter 11 trustee, there are no facts or circumstances that
     would allow a debtor in possession to change management, even if a change in
3    management would obviate the perceived need for a Chapter 11 trustee. Stated
     alternatively, if a debtor in possession is guided by management that can be
4    proved to be incompetent, or to have engaged in fraud or dishonesty or to have
     grossly mismanaged the debtor, then the appointment of a Chapter 11 trustee is a
5    *fait accompli* and no salutory action can be taken by the debtor to cure that
     problem.

6    The United States trustee's argument widely misses the mark because it
     overlooks two important principles concerning a Chapter 11 debtor in possession.
7    First, the legislative history of section 1107 . . . clearly dictates that the debtor in
     possession is *already* the functional equivalent of a Chapter 11 trustee. . . .
8    Second, the legislative history of section 1104, which reflects the grounds for
     appointment of a Chapter 11 trustee reflects a decided preference for leaving a
9    debtor in possession in place.

10   *Id.* at 903-04 (emphasis added).

11   The *Blue Stone* court further noted that the appointment of a disinterested CRO in

12   corporate bankruptcy cases is "not unusual." *Id.* at 904 n.9. The court cited and relied on circuit-

13   level authority rejecting the claim that a Chapter 11 debtor in possession lacked authority to

14   effectuate a complete change of post-petition management. *See id.* at 905 (citing *In re Gaslight*

15   *Club*, 782 F.2d 767 (7th Cir. 1986)).

16   Concluding with comments particularly apt to the instant matter, the *Blue Stone* court

17   found the arguments of the UST in that case "troubling" and held:

18   [I]t is disappointing that the United States trustee has shown more regard
     for its "turf" – its territorial or organization interests – than the larger interests of
19   the bankruptcy system it is designed to serve. In other words, the United States
     trustee has sought to advance its own view of its role in preserving the integrity of
20   the system ahead of the apparently critical need of the Debtors to change
     management immediately.
21

22   *Blue Stone*, 392 B.R. at 905-06.

23   The only ways in which *Blue Stone* can be distinguished from the instant case are

24   favorable to the Debtors. The Debtors' did the responsible thing here in changing management to

25   remove Mr. Ohanessian as CEO and replace him with others, and to appoint the CRO as an

26   independent decision maker, *on their own initiative*. The CRO Motion to appoint Mr. Weiss as

27   the CRO was not filed in reaction to a Motion to Appoint a Chapter 11 Trustee. Rather, the UST

28

- 9 -

4835-1294-9912.4

1    Opposition and request for a chapter 11 trustee was filed in reaction to the Debtors' CRO Motion.

2    Moreover, unlike in *Blue Stone*, here, there has been no allegation of post-petition misconduct by

3    the Debtors' prepetition management.

4              2.   The Debtors are Taking Steps to Address Certain of the UST's and the

5                        Committee's Specific Concerns.

6         The Debtors note the following with respect to certain of the concerns raised by the UST

7    and the Committee:

8

9         Duplication of Efforts.  The CRO will avoid duplication of efforts with the

10   Debtors' current management and Conway.  In particular, the CRO will only perform the services

11   set forth in the Application.  Further, the CRO will not engage in any of the services being

12   provided by Conway, including financial projections or cash flow forecasting or be intimately

13   involved in the Debtors' operations, including the accounting, information technology or human

14   resources functions, which will continue to be handled by the Debtors' current management.

15   Supplemental Weiss Declaration, at ¶ 2.

16

17        Compensation.  The United States Trustee argues that the CRO should provide "at

18   least on a quarterly basis, his compensation requests to parties in interest subject to a 14 day

19   negative notice period to object."  See UST Opposition, at pp. 10-11.  The CRO will provide such

20   compensation requests. Parties will have an opportunity to object to CRO's fees, including on the

21   basis that of any inadvertent duplication of efforts with either Conway or the Debtors' current

22   management.  Supplemental Weiss Declaration, at ¶ 3.

23

24        Corporate Governance.  The UST Opposition expresses concern that the CRO's

25   reporting to or liaising with the interim co-CEO's of the Debtors in inappropriate.  See UST

26   Opposition, at pp. 10-11. However, it is contemplated that the co-interim CEO's will report to the

27   CRO.  Supplemental Weiss Declaration, at ¶ 4; Voskanian Declaration, at ¶ 5.

28

1         <u>Additional Disclosures</u>.  In the UST Opposition, the UST requests "disclosure of

2    any other work performed by either Force 10 or Mr. Weiss, prior to May 16, 2019 on behalf of any

3    of the Debtors".  <u>See</u> UST Opposition, at p. 10.   Neither Force 10 nor Weiss performed any work

4
5    on behalf of the Debtors prior to May 16, 2019.  Supplemental Weiss Declaration, at ¶ 5.

6         <u>Scoobeez Deliveries</u>.  In the UST Opposition, the UST expresses concerns about

7    Scoobeez Deliveries.  <u>See</u> UST Opposition, at p. 7.  Additional disclosure regarding Scoobeez

8    Deliveries is set forth in the Voskanian Declaration.  Voskanian Declaration, at ¶ 6.

9         <u>Serve</u>.  In the UST Opposition, the UST expresses concerns about a business known

10    as Serve.  <u>See</u> UST Opposition, at p. 7.  Additional disclosure regarding Serve is set forth in the

11    Voskanian Declaration.  Voskanian Declaration, at ¶ 7.

12
13         <u>Public Disclosures</u>.  In the UST Opposition, the UST argues that the Debtors have

14    an obligation to make public securities filings of alleged defaults under the loan documents with

15    Hillair, and recent Uniform Commercial Code and judgment filings.  However, as set forth more

16    fully in the Declaration of Richard W. Lasater in Support of the Debtors' Application for an

17    Order Authorizing and Approving Appointment of Brian Weiss as Chief Restructuring Officer of

18    the Debtors Nunc Pro Tunc to May 16, 2019 (the "<u>Lasater Declaration</u>"), attached hereto, the

19    Debtors are not "registrants" under the Securities Exchange Act of 1934 (the "<u>Exchange Act</u>")

20
21    and are not required to make disclosures under the Exchange Act.  Lasater Declaration, at ¶ 5-7.

22         <u>The J. Alix Protocols</u>.  Mr. Weiss will comply with what have become known as the

23    J. Alix Protocols.  Supplemental Weiss Declaration, at ¶ 6.

24      **B.**    **The Appointment of a Chapter 11 Trustee is Procedurally Improper,**

25             **Extraordinary, and Substantively Improper.**

26
27
28

1    The UST argues that the appointment of a Chief Restructuring Officer is "an inadequate

2    remedy" and that that a chapter 11 trustee should be appointed instead. But the appointment of a

3    chapter 11 trustee would be premature, for at least three reasons.

4    *First*, a request for the affirmative relief of the appointment of a chapter 11 trustee

5    requires, as the UST seems to concede, the filing of a motion.  *Second*, the UST lacks statutory

6    authority to veto, or even object to, a chapter 11 debtor-in-possession's application to employ a

7    disinterested professional person. *Third*, it is too early to determine whether a chapter 11 trustee

8    is necessary or appropriate in these cases, especially in light of the strong presumption that a

9    debtor-in-possession should remain in control of its estate and that the appointment of a trustee is

10    an extraordinary remedy

11    **(i) The Appointment of a Chapter 11 Trustee Would be Premature.**

12    The UST attempts to request the appointment of a chapter 11 trustee in the UST

13    Opposition to the CRO Motion.  However, courts have concluded that a request for affirmative

14    relief is not properly presented when raised for the first time in an opposition brief.  *See SolarCity*

15    *Corp. v. Doria*, 2018 WL 4204024, at *6, n.4; *Pac. Coast Steel v. Stoddard*, Civil No. 11cv2073

16    H(RBB), 2013 U.S. Dist. LEXIS 199213, at *41, 2013 WL 12064545 (S.D. Cal. Feb. 15, 2013)

17    (stating that the court "will not grant affirmative relief, precluding an expert witness from

18    testifying at trial, based on a request included in an opposition to a motion[ ]); *Thomasson v. GC*

19    *Servs. L.P.*, Case No. 05cv0940-LAB(CAB), 2007 U.S. Dist. LEXIS 54693, at *21 (S.D. Cal.

20    July 16, 2007) ("[T]he court rejects any discovery-related or other requests for affirmative relief

21    Plaintiffs attempt to piggy-back on their Opposition as inappropriate, untimely, and

22    obfuscating.").[2]

23

24    [2] Several times in the UST Opposition, the UST requests that the Court take judicial notice, pursuant to Federal Rule of Evidence 201, of certain pleadings attached to the UST Opposition.  "A court may take judicial notice of 'matters of public record.' " *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001) (internal citation omitted).

25    Documents on file in federal or state courts are considered undisputed matters of public record. *Harris v. Cnty. of Orange,* 682 F.3d 1126, 1132 (9th Cir.2012) (internal citations omitted). Notice is taken of the existence of such

26    filings, not the truth of the facts recited herein. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001) ("[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but

27    for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.") (internal citation and quotation marks omitted)."  *Electronic Waveform Lab, Inc. v. EK Health Services*, 2016 WL 1622505, at *2

28    (C.D. Cal. 2016).  Thus, while the Court may take judicial notice of the fact that those pleadings were filed, it may not take judicial notice of the facts set forth in those pleadings.

- 12 -

1

**(ii) The Appointment of a Chapter 11 Trustee Is Not Warranted in These**

2

**Cases.**

3

1. Under the Standard for the Appointment of a Chapter 11 Trustee Includes a

4

Strong Presumption In Favor of the Debtor-in-Possession that Has Not

5

Been Rebutted

6

Appointment of a chapter 11 trustee is an "extraordinary remedy" and there is a strong

7

presumption that a debtor-in-possession should remain in control of his or her estate. *See* 7 COLLIER

8

ON BANKRUPTCY ¶ 1104.02[1] (Alan N. Resnick and Henry J Sommer, eds. 16th); *see also In re*

9

*Costa Monita Beach Resort*, 479 B.R. 14, 44 (D.P.R. 2012); *In re Real Estate Partners*, 2009 WL

10

3246619, at *1 (C.D. Cal. 2009) (citing *In re Bayou Group, LLC*, 564 F. 3d 541, 546 (2d Cir. 2009)

11

("[g]enerally speaking, the appointment of a trustee under Chapter 11 is an extraordinary

12

remedy").

13

"It is well settled that appointment of a trustee should be the exception, rather than the

14

rule." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3rd Cir. 1989); *In re Marvel Entertainment*

15

*Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1989). The "standard for § 1104 appointment is very

16

high." *In re Smart World Techs., LLC*, 423 F.3d 166, 176 (2d Cir. 2005). The appointment of a

17

Chapter 11 Trustee represents an "extraordinary" remedy." *In re Ionosphere Clubs, Inc.*, 113

18

B.R. 164, 167 (Bankr. S.D. N.Y. 1990); *In re Adelphia Communications Corp.*, 336 B.R. 610,

19

658 (Bankr. S.D. N.Y. 2006), *aff'd.*, 342 B.R. 122 (S.D.N.Y. 2006). The appointment of a trustee

20

is an extraordinary remedy because the trustee displaces the debtor and assumes decision making

21

functions. *In re General Oil Distributors*, 42 B.R. 402, 408-09 (Bankr. E.D.N.Y. 1984). ("[t]he

22

appointment of a trustee under 11 U.S.C. 1104 is an extraordinary remedy which should not be

23

taken lightly. There is a strong presumption that a debtor remain in possession absent a

24

showing of need."); *In re BAJ Corp.*, 42 B.R. 595, 597 (Bankr. D. Conn. 1984) ("[c]ase law on

25

this subject supports the view that the appointment of a trustee in a Chapter 11 case is an

26

extraordinary remedy and that interpretation is consistent with the design of Chapter 11 which

27

mandates management by the debtor unless a party in interest is able to prove that the

28

appointment of a trustee is warranted."). This strong presumption is based upon the fact that there is no need for a trustee in most cases because the debtor in possession is already a fiduciary for the estate and has an obligation to refrain from acting in a manner that could damage the estate. *See Marvel*, 140 F.3d at 471. This strong presumption also finds its basis in the debtor in possession's usual familiarity with the business it has already been managing at the time of the bankruptcy filing, often making it the best party to conduct the operations during the reorganization. *Id.*

In the usual chapter 11 proceeding, the debtor remains in possession throughout reorganization because 'current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate.'" *In re Marvel Entertainment Group, Inc.*, 140 F. 3d 463, 471 (3d Cir. 1998) (quoting *In re Sharon Steel*, 871 F.2d 1217, 1226 (3d Cir. 1989)); *see In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989). Only the rare case warrants the appointment of a trustee. Indeed, the bankruptcy court must consider many factors related to the Debtors' estates, as well as the Debtors' ability to reorganize successfully, before disregarding the clear Congressional mandate that the debtor remain in possession. Accordingly, under the Bankruptcy Code, the appointment of a trustee is an extraordinary remedy, exercised only in the direst of circumstances and requiring a level of conduct and mismanagement so egregious as to override the debtor's statutory entitlement to a "second chance." *See, e.g.*, *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 705 (Bankr. E.D. Pa 1989); *In re BAJ Corp.*, 42 B.R. 595. 597 (Bankr. D. Conn. 1984); *In re Tyler*, 18 B.R. 574, 577 (Bankr. S.D. Fla. 1982).

"In determining whether a 1104 appointment [of a trustee] is warranted or in the best interests of creditors, the bankruptcy court must bear in mind that the appointment of a trustee 'may impose a substantial financial burden on a hard pressed debtor seeking relief under the Bankruptcy Code,' by incurring the expenditure of 'substantial administrative expenses'

caused by further delay in the bankruptcy proceedings." *In re Bayou Group, LLC*, 564 F.3d 541, 546-47 (2d Cir. 2009) (citations omitted).

In the instant case, the requisite burden necessary to be met in order for a chapter 11 trustee has not been met, particularly considering that since the commencement of the Bankruptcy Cases, the Debtors have done more than required of them as fiduciaries. Moreover, to the extent such instances even exist, isolated instances of prepetition mismanagement, fraud, dishonesty or other misconduct by the debtor or its management are not sufficient to support a finding of cause under § 1104(a)(1). *See Gomez v. J.S. Trustee*, No. 7:09-CV-496, 2010 WL 582706, at *2 (W.D. Va. Feb. 18, 2010) (recognizing that even "the mere existence of a prior felony conviction will not justify the appointment of a trustee in every Chapter 11 case"*)*. In those situations, courts have been reluctant to appoint a trustee absent signs of post-petition mismanagement or misconduct because "[s]peculation that a debtor may do something in the future does not overcome the strong presumption that the debtor should be permitted to remain in possession in a chapter 11 case or justify the additional costs of a trustee." *In re Sletteland*, 260 B.R. 657, 672 (Bankr. S.D. N.Y. 2001); s*ee also In re Crescent Beach Inn*, 22 B.R. 155, 159 (Bankr. D. Me. 1982) (holding that the debtor's mismanagement, which was due to lack of sophistication, did not constitute gross mismanagement required under § 1104(a)(1), particularly in the absence of any signs of postpetition mismanagement).

Finally, as set forth in more detail in the Voskanian Declaration, the Debtors' current management has made great strides in turning the Debtors into profitable enterprises.  Voskanian Declaration, at ¶ 8.  Appointing a chapter 11 trustee at this time would jeopardize important customer relationships and result in negative cash flow.  Voskanian Declaration, at ¶ 9.

2. Appointment of a Chapter 11 Trustee Requires Clear and
Convincing Evidence.

DEBTORS' REPLY IN SUPPORT OF APPLICATION FOR APPOINTMENT OF CHIEF RESTRUCTURING OFFICER

4835-1294-9912.4

1

2      The majority of courts have held that because appointment of a chapter 11 trustee is such

3      an extraordinary remedy, the moving party must meet a high burden of proof and show cause for

4      appointment by "clear and convincing" evidence. *See Bayou Group*, 564 F. 3d at 546 ("[movant]

5      has the burden of showing by 'clear and convincing evidence' that the appointment is warranted.");

6      *see also In re Cajun Elec. Power Co-op, Inc.*, 69 F.3d 746, 749 (5th Cir. 1995) ("[t]he parties

7      moving for the appointment of a trustee have the burden of proof, which they must meet by clear

8
9      and convincing evidence."); *In re G-I Holdings, Inc.*, 385 F.3d 313, 317-18 (3d Cir. 2004); *In re*

10     *Colorado-Ute Elec. Ass'n, Inc.*, 120 B.R. 164, 173 (Bankr. D. Colo. 1990) ("the burden is on the

11     movant to show by clear and convincing evidence that there is cause to appoint a trustee."); *In re*

12     *Aardvark, Inc.*, 1997 WL 129346, at *3 (Bankr. D. Del. 1997) ("Because there is a strong

13     presumption in Chapter 11 cases that the debtor should continue in control and possession of its

14     business, the appointment of a trustee is seen as an extraordinary remedy justified only by 'clear

15     and convincing' evidence of 'fraud, dishonesty, incompetence or gross mismanagement.'").
16

17     The Ninth Circuit has not affirmatively addressed the issue, but decisions therein have

18     followed the majority view. *See, e.g., In re Briarwood Capital, LLC*, 2010 WL 2884949, at *3

19     (Bankr. S.D. Cal. 2010) (applying the clear and convincing standard in determining whether cause

20     exists under § 1104(a)(2) to appoint a trustee); *see also In re Sonicblue, Inc.*, 2007 WL 926871, at

21     *12 (Bankr. N.D. Cal. 2007); *In re TS Indus., Inc.*, 125 Bankr. 638, 643 (Bankr. D. Utah 1991)

22
23     ("The appointment of a trustee is an extraordinary remedy as there is a strong presumption that

24     debtor should remain in possession absent a showing by clear and convincing evidence that grounds

25     exist for appointment of a trustee.").

26     Based on the foregoing, the Debtors submit that the proper standard to be applied in this

27     case is the clear and convincing standard; however, even if the Court were to adopt a lower

28     burden, there has not been sufficient evidence proffered to overcome the strong presumption that

- 16 -

4835-1294-9912.4

the Debtors should continue to manage their affairs as the debtors-in-possession, particularly

given the actions taken by the Debtors to demonstrate that they are willing and able to not only

discharge their fiduciary duties as debtors-in-possession, but to go above and beyond by

consenting to and proposing the imposition of a well-reputed chief restructuring officer.

3. <u>There is No "Cause" To Justify the Extraordinary Remedy of the</u>

<u>Appointment of a Chapter 11 Trustee.</u>

Section 1104 of the Bankruptcy Code governs the appointment of a chapter 11 trustee

or examiner, and provides, in relevant part, as follows:

> "At any time after the commencement of the case but before
> confirmation of a plan, on request of a party in interest or the United
> States trustee, and after notice and a hearing, the court shall order
> the appointment of a trustee (1) for cause, including fraud,
> dishonesty, incompetence, or gross mismanagement of the affairs of
> the debtor by current management, either before or after the
> commencement of the case, or similar cause, but not including the
> number of holders of securities of the debtor or the amount of assets
> or liabilities of the debtor; or (2) if such appointment is in the
> interests of creditors, any equity security holders, and other interests
> of the estate, without regard to the number of holders of securities
> of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. §1104(a).

Under section 1104(a)(1) of the Bankruptcy Code, the "determination of cause . . . is

within the discretion of the court and due consideration must be given to the various interests

involved in the bankruptcy proceeding." *Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d

239, 242 (4th Cir. 1987) (quoting *In re General Oil Distrs., Inc.*, 42 B.R. 402, 409 (Bankr.

E.D.N.Y. 1984)). Although, "under 1104(a)(1), the court is not directly called upon to weigh the

costs and benefits of appointing a trustee, it nevertheless cannot ignore the competing benefit and

harm that such an appointment may place upon the estate." *In re General Oil Distrs., Inc.*, 42

B.R. at 409. Even "in circumstances where fraud or mismanagement is present, the legislative

history of Section 1104(a)(1) suggests that the court . . . balance the benefit to be gained from

such an appointment against the detriment to the reorganization effort and the rights of the debtor

may result from such an appointment." *In re Hamilton*, No 11-07491, 2012 WL 2204904, at *3

- 17 -

1  (Bankr. E.D.N.C. June 14, 2012) (quoting 7 Collier on Bankruptcy 1104.02[3][b] (Alan N.

2  Resnick & Henry J. Sommer eds., 16th ed.)).

3       Although the plain language of Section 1104(a)(1) calls for an examination of both

4  prepetition and post-petition conduct of the debtor or its management, *see Fraidin v. Weitzman  (In*

5  *re Fraidin)*, No. 94-1658 WL 687306, at *2 (4th Cir. Dec. 9, 1994), the general focus "is on the

6  debtor's current management, not the deeds of past management." *In re 1013 Tax Group*, 374 B.R.

7  78, 86 (S.D.N.Y. 2007); *In re Sletteland*, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001) (holding that

8  "on a motion for the appointment of a trustee, the focus is on the debtor's current activities, not

9  past misconduct."); *In re Eagle Creek Subdivision, LLC*, No. 0804292, 2009 WL 613173, at *2

10  (Bankr. E.D.N.C. Mar. 9, 2009) ("Generally, the court must narrow its focus to the actions of

11  current management when investigating cause for appointment of a trustee.").

12       The reluctance of the courts to find gross mismanagement by a debtor in the absence of any

13  post-petition mismanagement is also attributable to the fact that "some degree of mismanagement (or

14  misconduct) exists in virtually every insolvency case." *Crescent Beach Inn*, 22 B.R. at 159. In

15  *Crescent Beach*, evidence that the debtor mismanaged its affairs, including numerous overdrawn

16  checks, inadequate and messy bookkeeping, lapse of insurance coverage and failure to file requisite

17  reports with the United States Trustee, "did not rise to the level of gross mismanagement." *Id.* at

18  159-160. Gross mismanagement on the contrary "suggests some extreme ineptitude on the part of

19  management to the detriment of the organization . . . rising above simple mismanagement to achieve

20  the level envisioned by the Code." *In re Sundale, Ltd.*, 400 B.R. 890, 907 (Bankr. S.D. Fla. 2009).

21  *See also In re Sundale*, 400 B.R. at 907 (recognizing that "poor management alone does not warrant

22  appointment of a trustee"). Although the actions of the Debtors prior to the commencement of the

23  Bankruptcy Cases may have been less than perfect (particularly with the benefit of hindsight), the

24  Debtors dispute that the actions of the Debtors or their business were intentional or fraudulent and

25  submit that any errors in judgment prepetition should not be grounds to establish cause for the

26  appointment of a trustee. *See In re Cardinal Indus., Inc.*, 109 B.R. 755, 759 (Bankr. S.D. Ohio 1990)

27  ("Most Chapter 11 debtors have histories of past errors in judgment so those mistakes alone should

28  not be sufficient grounds to establish cause for the appointment of a trustee."). Since the

- 18 -

1   commencement of the Bankruptcy Cases, the Debtors have endeavored to comply in good faith with

2   their obligations as debtors-in-possession, and will continue to do so. In fact, as discussed above, the

3   Debtors have taken extra steps – including filing a motion seeking to approve the appointment of

4   the CRO – in order to provide additional transparency and comfort to not only the Court and the

5   U.S. Trustee, but to all parties-in-interest, and the Debtors should not now be punished for having

6   done the responsible thing on their own. To this end, and for the reasons detailed in the CRO

7   Motion, the appointment of a CRO is a superior alternative to the appointment of a chapter 11

8   trustee given the particular circumstances of these Bankruptcy Cases.

9                         4. <u>It Has Not Been Demonstrated that the Appointment of a Trustee Is in</u>

10                             <u>the Best Interest of the Creditors</u>

11       Section 1104(a)(2) of the Bankruptcy Code authorizes the appointment of a trustee if it "is

12   in the interests of creditors, any equity security holders, and other interests of the estate . . . ." In

13   reconciling the "interests" standard (1104(a)(2)) with the "cause" standard (1104(a)(1)), <u>Collier</u>

14   <u>on Bankruptcy</u> notes that

15         the "interests" standard may initially seem less stringent than the

16         "cause" standard. After all, no showing of wrongful behavior on the
part of management is required, as long as interested parties can

17         show a <u>meaningful</u> benefit from the appointment of a trustee.
However, it is important to remember that the "interests" standard

18         requires a finding that appointment of a trustee would be in the
interest of essentially **all interested constituencies**. (*Emphasis*

19         *added*).

20   7 <u>Collier on Bankruptcy</u> 1104.02 at 1104-14 (Alan N. Resnick & Henry J. Sommer eds., 16th

    ed.).

21       As stated above, to the extent any party-in-interest believes that sufficient grounds exist to

22   warrant the appointment of a chapter 11 trustee at any time during the pendency of the

23   Bankruptcy Cases, they are free to seek such relief from this Court and to prove up their case with

24   actual evidence.

25

26   **IV.**    **CONCLUSION**

27       Based upon the foregoing, the Debtors respectfully request that the Court enter an order

28

authorizing and approving the retention of Weiss as Chief Restructuring Officer of the Debtors

*Nunc Pro Tunc* to May 16, 2019; overruling the UST Opposition and the Committee Opposition;

and for such other and further relief as the Court deems just and proper.

Dated:  May 28, 2019                    Respectfully submitted,

**FOLEY & LARDNER LLP**

By:      /s/ Ashley M. McDow
              Ashley M. McDow

Proposed Attorneys for Scoobeez, Scoobeez Global,
Inc., and Scoobur, LLC, Debtors and Debtors-in-
Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Foley & Lardner LLP, 555 South Flower Street, Suite 3300, Los Angeles, CA 90072-2411

A true and correct copy of the foregoing document entitled (*specify*): **Debtors' Reply in Support of Application for an Order Authorizing and Approving (I) Appointing Brian Weiss a Chief Restructuring Officer of the Debtors Nunc Pro Tunc to May 16, 2019**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 05/28/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
John-Patrick M Fritz    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
Alvin Mar    alvin.mar@usdoj.gov
Ashley M McDow    amcdow@foley.com,
sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
Rejoy Nalkara    rejoy.nalkara@americaninfosource.com
Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
David L. Neale    dln@lnbyb.com
Gregory M Salvato    gsalvato@salvatolawoffices.com,
calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 05/28/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Honorable Julia W. Brand
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/28/2019 | Sonia Gaeta | /s/ Sonia Gaeta |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**