STEVEN M. SPECTOR (SBN: 51623)
  sspector@buchalter.com
ANTHONY J. NAPOLITANO (SBN: 227691)
  anapolitano@buchalter.com
BUCHALTER, A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile:: (213) 896-0400

ADAM H. FRIEDMAN (pro hac vice to be filed)
  afriedman@olshanlaw.com
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, NY 10019
Telephone: (212) 451-2216
Facsimile: (212) 451-2222

Attorneys for secured creditor
HILLAIR CAPITAL MANAGEMENT, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:19-bk-14989-WB |
| SCOOBEEZ, INC., et al. | Chapter 11 |
| Debtors and Debtors in Possession. | (Jointly Administered with Case Nos. 2:19-bk-14991; 2:19-bk-14997) |
| Affects: | **SECOND STIPULATION BETWEEN THE DEBTORS, THE COMMITTEE AND HILLAIR CAPITAL MANAGEMENT FOR (1) AUTHORIZATION TO USE CASH COLLATERAL ON AN INTERIM BASIS; (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER** |
| ☒  All Debtors | |
| ☐  SCOOBEEZ, INC., only | **Hearing:** |
| ☐  SCOOBEEZ GLOBAL, INC. only | Date:  June 6, 2019<br>Time:  10:00 a.m. |
| ☐  SCOOBUR, LLC only | Place:  U.S. Bankruptcy Court<br>Courtroom 1375<br>255 East Temple Street<br>Los Angeles, CA 90012 |

1

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

**TO THE HONORABLE JULIA BRAND, UNITED STATES BANKRUPTCY JUDGE, THE DEBTORS, THEIR COUNSEL AND ALL PARTIES IN INTEREST:**

Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital Investments LP (collectively, "Hillair"), Scoobeez, Inc., a California corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee"),[1] by and through their respective counsel of record, hereby enter into this *Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer* (the "Stipulation") as follows.

## RECITALS

**I.    The Debtors' secured obligations to Hillair.**

A.    On October 7, 2016, Scoobeez Global and Hillair entered into that certain Securities Purchase Agreement (the "First SPA").  Under the First SPA, Scoobeez Global issued to Hillair its 8% Senior Secured Convertible Debenture Due October 1, 2018 in the principal sum of $5,800,000 due on October 1, 2018 (the "First Debenture").

B.    On January 30, 2017, Scoobeez Global and Hillair entered into that certain Securities Purchase Agreement (the "Second SPA").  Under the Second SPA, Scoobeez Global issued to Hillair its 8% Senior Secured Convertible Debenture Due January 1, 2019 in the principal sum of $8,584,000 (the "Second Debenture") due on or before January 1, 2019 (the "Maturity Date").  The Second Debenture includes the obligations of Scoobeez Global to Hillair due under the First Debenture.

C.    On October 7, 2016, the Debtors entered into that certain Subsidiary Guarantee in favor of Hillair.  Under the Subsidiary Guarantee, Scoobeez and Scoobur, jointly and severally,

---

[1] Hillair, Scoobeez, Scoobeez Global, Scoobur, and the Committee are collectively referred to here in as the "Parties" and as to each, a "Party".

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

unconditionally guaranteed the repayment of Scoobeez Global's obligations to Hillair.  To secure repayment of all obligations owing to Hillair, on October 7, 2016, the Debtors, jointly and severally, executed a Security Agreement (the "Security Agreement").

D.    The Security Agreement granted Hillair a security interest in substantially <u>all</u> of the assets of the Debtors, including cash, cash equivalents, accounts receivable and the proceeds thereof.  Hillair duly perfected its security interest in the assets by filing UCC-1 financing statements as follows:  (a) as to Scoobeez Global, a financing statement was filed with the Idaho Secretary of State on October 11, 2016, as File No. B-2016-1183112-1; (b) as to Scoobeez, a financing statement was filed with the California Secretary of State on October 11, 2016 as File No. 16-7550581531; (c) as to Scoobur, a financing statement was filed with the California Secretary of State on October 11, 2016 as file no. 16-7550581210.  The First SPA, the First Debenture, the Second SPA, the Second Debenture, the Subsidiary Guarantee, the Security Agreement and the UCC-1 Financing Statements are collectively referred to herein as the "Loan Documents."

## II.    The Debtors file their chapter 11 bankruptcy cases.

E.    On April 30, 2019 (the "Petition Date"), the Debtors each filed their own voluntary chapter 11 petitions thereby commencing the above-captioned, jointly-administered, chapter 11 bankruptcy case (the "Bankruptcy Case").  On May 1, 2019, at the hearing on the Debtors' "first-day" motions seeking authorization (1) for the Debtors' interim use of cash collateral [Docket No. 13]; (2) to continue the maintenance of existing bank accounts and cash management systems [Docket No. 7]; and (3) the payment of prepetition wages and continuation of employee programs [Docket No. 8], the Court authorized interim use of cash collateral though May 14, 2019, subject to further briefing and a further hearing on the continued use of cash collateral.

F.    On May 15, 2019, the Court entered its *Order Regarding Debtors' Emergency Motion for Entry of Interim Order:  (1) Authorizing Use of Cash Collateral on an Interim Basis and (2) Granting Related Relief* [Docket No. 52].

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

G. On May 16, 2019, the Debtors filed its *Application for an Order Authorizing and Approving (I) Appointing Brian Weiss as Chief Restructuring Officer of the Debtors Nunc Pro Tunc to May 16, 2019* [Docket No. 63] (the "CRO Application").  On June 6, 2019, the Court granted the CRO Application.

H. On May 20, 2019, the United States Trustee filed its *Notice of Appointment and Appointment of Committee of Creditors Holding Unsecured Claims* [Docket No. 72] thereby appointing the Committee.

I. This Stipulation came before the Court for a duly noticed hearing on June 6, 2019.

NOW, THEREFORE, based upon the foregoing Recitals, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, and the parties hereto intending to be legally bound hereby, by and through their respective attorneys of record, hereby agree and stipulate as follows:

## AGREEMENT

1. **Incorporation of Recitals.**

1.1 The Recitals set forth above is incorporated herein by this reference and shall be deemed a material part of this Stipulation, provided that such Recitals only bind the Debtors and do not prejudice the rights of the Committee, subject to the provisions in Paragraph 5.6 of this Stipulation..

2. **Prepetition Obligations and Security Interests.**

2.1 The Debtors, on their own behalf, (without binding the Committee or their bankruptcy estates (the "Estates"), but subject to the provisions in Paragraph 5.6 of this Stipulation) admit, stipulate and agree as follows:

(a) <u>Prepetition Obligations</u>.  As of the Petition Date, the Debtors were obligated to Hillair for the obligations arising under or relating to the prepetition Loan Documents (collectively, the "Prepetition Obligations").  The Prepetition Obligations (1) were fully accelerated, due and payable to Hillair in the aggregate principal amount of not less than $11,108,500.00, plus additional interest, costs, fees and charges recoverable under the documents

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

or by law, if any, and net of prepayments, if any, (2) constitute legal, valid, binding and enforceable obligations of the Debtors, and (3) are not subject to any objection, offset, avoidance, subordination or other claim or challenge of any nature under the Bankruptcy Code, any other applicable law, contract or otherwise.

(b)    <u>Prepetition Liens and Collateral</u>.    As of the Petition Date, the Prepetition Obligations were secured by certain liens and security interests in favor of Hillair (the "Prepetition Liens").    The Prepetition Liens (a) encumber all of the Debtors' right, title and interest in all of the assets defined in the Security Agreement as "Collateral" and as more particularly described in **Exhibit A** attached hereto to this Stipulation (the "Prepetition Collateral"), (b) secure performance of the Prepetition Obligations pursuant to the Loan Documents, (c) constitute legal, valid, enforceable, non-avoidable and duly perfected security interests and liens in and upon the Prepetition Collateral in favor of Hillair, subject to the Carve-Out (as defined below), (d) are not subject to any objection, offset, avoidance, subordination or other claim or challenge of any nature by the Debtors under the Bankruptcy Code, any other applicable law, contract or otherwise, and (e) were granted by the Debtors for fair and sufficient consideration and reasonably equivalent value, contemporaneously with the making of the loans or commitments to make loans and other financial accommodations secured thereby.    Pursuant to the Loan Documents, Hillair has a valid, perfected, and unavoidable security interest in the Prepetition Collateral, which includes, at a minimum, all "Cash Collateral" as that term is defined in Section 363(a) (collectively, the "Cash Collateral").

(c)    <u>No Claims Against Hillair</u>.    The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against Hillair with respect to the Loan Documents or the Prepetition Obligations, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, and are deemed to have released any such claim or cause of action.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

(d)  <u>Right to Credit Bid</u>.  In connection with any sale of assets pursuant to section 363 of the Bankruptcy Code, the Debtors are aware of the applicability of section 363(k) and expressly waive any right to object to a credit bid submitted by Hillair under section 363(k) in connection with the sale of Hillair's collateral.  This waiver does not extend to the rights of any other parties in interest, including the Committee.

3.  **Authorization for Use of Cash Collateral.**

3.1  <u>Request for Use of Cash Collateral</u>.  The Debtors have requested the use of the Cash Collateral, and Hillair is willing to consent to such use of Cash Collateral upon the admissions, agreements, terms and conditions contained in this Stipulation and the entry of an order approving this Stipulation.

3.2  <u>Need for Use of Cash Collateral</u>.  The Debtors have an immediate need for the use of Cash Collateral in order to permit, among other tasks, the orderly continuation of the operation of their business, to minimize the disruption of their business operations, and to manage and preserve the assets of their estates.

3.3  <u>Authorized Use of Cash Collateral</u>.  Subject to the terms and conditions of this Stipulation, the Debtors shall only be entitled to use the Cash Collateral for payment of the following expenses:

(a)  "Authorized Expenses" comprising only the current necessary, reasonable, and ordinary expenses of the Debtors actually incurred after the Petition Date as set forth and not to exceed the amounts set forth in the weekly budget attached hereto as **Exhibit B** for the period from June 7, 2019 through June 28, 2019 and incorporated herein by this reference (the "Budget"), subject only to modification by express mutual consent of the parties in writing. The Debtors may not exceed any line item budget amount by a variance of 10% for each category line item in the Budget.  Allowed amounts not paid by the Debtors in each budget category during each week may carry over to the next succeeding week only on a line item by line item basis.

(b)  An "Emergency Expense" comprising only that expense relating to an emergency which is not an Authorized Expense and for which it is not feasible to provide

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

advance notice to Hillair and for which the Debtors and the Chief Restructuring Officer in good faith believe must be incurred immediately in order to mitigate damage to the Collateral or to avoid (i) possible health and safety concerns, or (ii) damage or harm to the Collateral, not to exceed the amount of $2,500 for any one particular expense.  In each circumstance when the Debtors has paid an Emergency Expense, the Debtors shall advise Hillair as soon as possible but not later than the next business day, in writing by fax, the amount of the expenditure, the nature of the emergency, and the reason that advance approval was not practical.  If Hillair believes that such expenditure or the amount thereof was not warranted under the circumstances, Hillair shall be entitled to an *ex parte* hearing on forty-eight (48) hours' notice regarding termination of this Stipulation, prohibition of any further use of the Cash Collateral by Debtors, and other remedies available to Hillair pursuant to this Stipulation, or by contract or law.

       3.4    <u>Limitation on the Use of Cash Collateral</u>.  Notwithstanding any other term to the contrary in this Stipulation, the Debtors shall not use the Cash Collateral:

       (a)    to pay any obligation owed to any party (other than to Hillair) on account of or relating to services and/or product provided prior to the Petition Date, including without limitation, obligations relating to the provision or sale of goods, materials or services, or obligations on account of purchase orders, that were provided by the Debtors prior to the Petition Date, unless authorized by the Court pursuant to a properly noticed motion;

       (b)    from the sale or disposition of assets of the Debtors outside the ordinary course of business of the Debtors;

       (c)    to pay to or for the benefit of the Debtors or any principal, shareholder, or insider of the Debtor, any management person or entity retained by the Debtors or the Debtors' estate, whether directly or indirectly, except as expressly approved and agreed in writing by Hillair; or

       (d)    in connection with any action or proceeding against Hillair.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

3.5     <u>Ordinary Course of Business</u>.  Except as otherwise permitted by Court order or as authorized by Hillair, the Debtors shall conduct their business operations in the ordinary course and on ordinary and customary terms consistent with the terms and manner by the Debtors prior to the Petition Date.

3.6     <u>Adequate Protection for Use of Cash Collateral</u>.  As additional adequate protection of Hillair's interest in the Cash Collateral, the Debtors are authorized and directed to pay Hillair $40,000 in cash via wire transfer per week as set forth in the Budget, plus the reasonable and documented fees and expenses of Hillair's professionals as set forth in the Budget subject to the requirements of Paragraph 3.7 of this Stipulation.  Immediately upon entry of the Order approving this Stipulation, the Debtors shall commence payment of the weekly $40,000 adequate protection payments on June 12, 2019, and then payable on each Wednesday thereafter for the period from June 7, 2019 through June 28, 2019.  All payments made under this Stipulation shall be made in accordance with the terms expressly set forth in the loan documents and in effect before the Petition Date or as further directed by Hillair.  The adequate protection payments shall first be applied to accrued, but unpaid interest and expenses; provided, however, that if Hillair's secured claim is undersecured, then the postpetition payments received (regardless of how previously applied) shall be applied to reduce the principal balance of the secured portion of Hillair's claim, if any.

3.7     <u>Reimbursement of Hillair's Professional's Fees and Expenses</u>.  Hillair's entitlement to the reimbursement of reasonable fees and expenses incurred by its professionals shall be without the need for the filing of a formal fee application in the Bankruptcy Cases.  However, prior to the Debtors' payment of Hillair's fees and expenses, Hillair shall submit via email to counsel for the Debtors and counsel for the Committee supporting documentation related to the fees at issue for review.  The Debtors and the Committee shall have 14 days to review such documentation.  If neither the Debtors nor the Committee file in the Bankruptcy Cases an objection to the payment of such fees, the Debtors shall reimburse Hillair for the professional fees and costs as submitted.

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

3.8     <u>Submission of Sale Proposal and Related Timeline.</u>  On or before June 14, 2019, Hillair shall provide the Debtors with a proposed term sheet for the purchase and sale of the Debtors' assets with Hillair being the stalking horse bidder.  On or before June 14, 2019, the CRO shall begin the process of interviewing potential investment bankers to evaluate a proposed sale of the assets.  The Debtors shall have until June 27, 2019 to evaluate, after negotiation with Hillair, whether such a sale is in the best interest of the Estates.  In connection with those negotiations, if Hillair and the Debtors agree upon such a sale and a process for such a sale, the Debtors and Hillair shall submit a timeline for the proposed sale in a subsequent pleading to be filed with the Court in connection with the continued use of cash collateral.  The Debtors reserve the right to include a "fiduciary out" provision within any sale procedures motion.

4.      **Appointment of a Chief Restructuring Officer.**

4.1     The Debtors have consented to the appointment of a Chief Restructuring Officer ("CRO"), who is acceptable to Hillair, to oversee the financial and operational functions of the Debtors, and to maintain an oversight role over the administration of the Debtors' Bankruptcy Case and their Estates.  On June 6, 2019, the Court granted the CRO Application.

4.2     The Debtors agree that all use of Cash Collateral shall be authorized and approved by the CRO.  Hillair and the Committee shall be permitted to obtain financial reporting directly from the Debtors, the CRO, the Debtors' financial advisors or investment banker, and the Debtors' counsel.  The financial reporting shall include, among other things, financial statements (including balance sheets, income statements and statements of cash flow), budget reports, inventory schedules, accounts receivable schedules, accounts payable schedules, pro forma financial statements, bank account statements, payroll reports and any other report respecting the assets, liabilities, financial condition or operation of the Debtors in addition to the reporting specified in Paragraph 8.1 of this Stipulation.

4.3     The Debtors acknowledge and agree that (1) the current co-CEOs, George Voskanian and Scott Sheikh, shall report to the CRO, including with respect to the operations and

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

management of the Debtors and the administration of the Debtors' Bankruptcy Case and their Estates; and (2) the duties and responsibilities of the CRO include the following:

(a)     Review and analyze the Debtors and their financial results, projections, operational data and compliance with the Budget;

(b)     Gain an understanding of the existing contractual arrangements and obligations with customers, advisors/consultants and suppliers;

(c)     Advise the Debtors with regard to the development and implementation of a turnaround and restructuring plan;

(d)     Assist the Debtor in managing key constituents, including communications and meetings with, and requests for information made by, creditor constituents, including secured lenders, vendors, customers and employees;

(e)     Oversee key customer relationships;

(f)     Provide expert testimony, if required and permitted;

(g)     Manage cash forecasting and liquidity management procedures. In particular, assume responsibility and oversight of day-to-day cash management and initiatives to protect, preserve, and enhance liquidity;

(h)     Review and evaluate the go-forward business;

(i)     Conduct a review and analysis of the existing workforce and direct recruitment of new employees, where and if appropriate; and

(j)     Execute on identified cost saving initiatives.

4.4     The United States Trustee reserves the right to seek entry of a court order terminating the appointment of the CRO for cause shown.

4.5     The Committee and Hillair shall withdraw their objections to the Notices of Insider Compensation for George Voskanian and Scott Sheikh, and Joweta Chowmentoska as to Hillair.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

5.    **Postpetition Replacement Liens.**  As additional adequate protection, the Debtors and their Estates hereby grant Hillair postpetition liens to secure the Prepetition Obligations as follows:

5.1    Postpetition Lien Granting.  Hillair shall have and is hereby granted by the Debtors, effective as of the Petition Date, a postpetition security interest and replacement lien pursuant to sections 361 and 363(e) of the Bankruptcy Code (the "Postpetition Lien") in all present and future, prepetition and postpetition assets of the Debtors (as more particularly described in **Exhibit A** to this Stipulation**)**, in which and to the extent that the Debtors hold an interest (collectively, the "Postpetition Collateral").[2]  The liens granted by this paragraph are subject to the Carve-Out and solely to the extent of any postpetition diminution in value of the Prepetition Collateral; provided, however, with respect to the Debtors' interest in any unexpired lease of real property, the Postpetition Lien shall only extend to the Debtors' rights to the proceeds arising from the assignment, sale, disposition or termination of such lease.  The parties reserve all rights as to the determination of whether Hillair is entitled to a security interest in causes of action arising under sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) of the Bankruptcy Code, which shall be brought on a properly noticed motion or other proceeding.

5.2    Postpetition Lien Priority.  The Postpetition Lien shall be senior and have priority over all other liens and interests on and in the Collateral, except that the Postpetition Lien shall be junior only to (a) the Prepetition Lien in favor of Hillair, (b) the Carve-Out, and (c) such other valid, existing, and perfected liens or security interests existing as of the Petition Date with respect to such assets existing as of the Petition Date encumbered by such liens, and to the extent such liens or security interests were senior to the Prepetition Lien in favor of Hillair as of the Petition Date and are not otherwise avoided.

5.3    Automatic Perfection of Postpetition Lien.  To the extent permissible under applicable law, the Postpetition Lien shall be granted, attached, perfected and validated by virtue of the Order approving this Stipulation, without any further act required under federal, state, or

---

[2]  The Prepetition Collateral and the Postpetition Collateral are collectively the "Collateral"

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

local law requiring notice, filing, registration, recording, possession or other act to validate or perfect a security interest or lien, including without limitation deposit account control agreements, merchant payment agreements, merchant payment direction letters, cash transport agreements, and such other agreements with any party possessing or asserting an interest in the Collateral (a "Perfection Act"). Notwithstanding the foregoing, if Hillair, in its sole discretion, elects to effectuate a Perfection Act, Hillair is authorized to perform such act, and if requested by Hillair, the Debtors are authorized to perform such act to the extent necessary or required, and in such event, the subject filing or recording office or agency is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law. Within ten business days following entry of an order approving this Stipulation, the Debtors shall endeavor to enter into a Deposit Account Control Agreement with Hillair and any financial institution that holds the Debtors' deposit account. No defect or failure in connection with an attempt to perform a Perfection Act shall limit, waive, or alter the validity, enforceability, attachment, or perfection of the Postpetition Lien by virtue of entry of the Order approving this Stipulation.

       5.4   <u>Validity and Perfection of Postpetition Lien</u>. Upon entry of the Order approving this Stipulation, the Postpetition Lien granted to Hillair by virtue of this Stipulation shall be valid, enforceable and perfected without any further act by Hillair.

       5.5   <u>Carve-Out</u>. "Carve-Out" means a carve-out from the liens and super-priority claims granted to Hillair herein for: (a) the unpaid fees of the Clerk of the Bankruptcy Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), (b) unpaid and allowed fees and expenses of professionals of the Debtors and the professionals of the Committee (the "Professionals") but only to the extent approved by Hillair in the Budget, and only if incurred before the delivery of a Carve-Out Trigger Notice (as defined below), and (c) unpaid and allowed fees and expenses of Professionals in an aggregate amount not to exceed $100,000 (the "Professional Expense Cap") incurred after delivery of a written notice by the Hillair to the Debtors (and their counsel), the U.S. Trustee, and counsel to the Committee, that a default under the Stipulation has occurred and is continuing (a "Carve-Out Trigger Notice"). For the avoidance

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

of doubt, the Professional Expense Cap applies only after delivery of a Carve-Out Trigger Notice. The Professional Expense Cap shall be reduced, dollar-for-dollar, by the amount of any fees, costs and expenses incurred and paid to Professionals after delivery of a Carve-Out Trigger Notice. The Debtor may pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. §§ 328, 330, 331, and 363 to Professionals as the same may be due and payable, and the same shall not reduce the Carve-Out prior to the delivery of a Carve-Out Trigger Notice. For clarity, the Prepetition Liens and the Postpetition Lien are subject to the Carve-Out.

        5.6   <u>Committee Investigation of Hillair Liens.</u>   Notwithstanding anything contained herein to the contrary, the Committee may investigate the liens and claims of Hillair, and may challenge the validity, enforceability, priority, extent, or amount of such liens and claims; provided, however, that the aggregate expense for such investigation or challenge may not exceed $25,000.00; and provided further that any action brought by the Committee pursuant to this paragraph (a "Challenge") shall be commenced on or before July 24, 2019. In the event a Challenge is not filed on or before July 24, 2019, the Committee and all creditors and interested parties shall be bound by the provisions of this Stipulation (including without limitation, the Recitals and Sections 1, 2, 5 and 18 of this Stipulation) that confirm the validity and amount of Hillair's claims and the validity, extent and priority of Hillair's Prepetition Liens and Postpetition liens, and the Debtors' lack of claims against Hillair.

      **6.**    **Segregation of Cash Collateral.**

        6.1   <u>Segregation of the Cash Collateral.</u>   Unless otherwise agreed upon in writing by Hillair, the Cash Collateral shall be collected, received, maintained, and segregated by the Debtors for Hillair. The Cash Collateral shall be maintained in the accounts separate and apart from any other revenue or property of the Debtors or the Debtors' estates, shall not be commingled or intermingled with any other income or property of the Debtors or the Debtors' estates not constituting the Cash Collateral, and shall not be used except in accordance with the terms and conditions of this Stipulation.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

6.2     <u>Segregated Accounts</u>.  To the extent required by the United States Trustee, the Debtors shall maintain separate debtor in possession accounts for (a) Scoobeez, consisting of an account for (i) operating funds, (ii) payroll, and (ii) taxes, (b) Scoobeez General, consisting of an account for operating funds, and (c) Scoobur, consisting of an account for operating funds.  All of the funds in each of the Operating Accounts are Cash Collateral.  All cash in the Operating Accounts shall remain Cash Collateral and may only be withdrawn in accordance with this Stipulation and the attached Budget.

7.     **Insurance.**

7.1     The Debtors shall maintain and insure the Collateral in sufficient amounts to adequately protect Hillair's interest in such Collateral, and include Hillair as a loss payee in accordance with the requirements of the Loan Documents.  Debtors shall promptly provide in writing evidence of insurance to Hillair.

8.     **Reporting Requirements.**

8.1     <u>Periodic Reporting Requirements</u>.  The Debtors shall maintain records adequate and sufficient to account for the Cash Collateral and expenses, and shall make such records available for inspection by Hillair upon 24 hours' notice.  The Debtors shall provide Hillair and the Committee within five (5) business days from the date of the entry of the order approving this Stipulation a complete accounting of the Cash Collateral and expenses relating to the Collateral from the Petition Date to the date of the entry of the Order approving this Stipulation.  The Debtors shall (i) timely perform all reporting and other requirements of the Office of the United States Trustee, and (ii) provide Hillair and the Committee with the following periodic reports:

(a)     a weekly report delivered on each Wednesday at 2:00 p.m. (Pacific Time) for the immediately prior week (ending on Saturday) reflecting actual receipts and expenditures by line item against those set forth in the approved cash collateral budget for such weekly period;

14

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

(b)    on each Wednesday at 2:00 p.m. (Pacific Time), an update to the approved cash collateral budget extending the term of the budget for an additional week to reflect a rolling 13- week budget;

(c)    a current accounts receivable aging covering postpetition receivables (with respect to payments received by the Debtors and entered into the Debtors' financial reporting system), on each Wednesday by 2:00 p.m. (Pacific Time), and current through the immediately prior week (ending on Saturday);

(d)    a current accounts payable aging covering postpetition payables (with respect to payables where invoices have been received by the Debtors and entered into the Debtors' financial reporting system), on each Wednesday by 2:00 p.m. (Pacific Time), and current through the immediately prior week (ending on Saturday);

(e)    monthly financial statements prepared by the Debtors' financial advisor and/or reviewed by the CRO (provided that the fees for the same shall be included in the Budget) with such financial statements being delivered within thirty-five (35) calendar days (to account for closing of the books and records) following the last day of the month at issue;

(f)    monthly bank account statements to be provided to Hillair on the 5th business day following the statement closing date;

(g)    upon request, on each Thursday at 2:00 p.m. (Pacific Time), a written update regarding the operations of the Debtors, including, without limitation, information regarding (i) relationships with key suppliers, carriers and customers since the Petition Date, and (ii) a written update of the Debtors' sales and refinancing efforts including, without limitation, potential lenders, buyers, investors, the status of any negotiations and the and terms contemplated, and the likely time frame; and

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

(h)     copies of all periodic reports provided to the U.S. Trustee on the date that such reports are due, subject to the Parties entering into a confidentiality agreement with respect to any confidential information provided to the U.S. Trustee.

8.2     <u>Access to Collateral and Records</u>.  Within 48 hours of a request of Hillair, the Debtors shall permit Hillair or an agent of Hillair, reasonable access to any of the Collateral for the purpose of enabling such party to inspect, audit and appraise the Collateral and the Debtors' books and records, and to inspect books and records maintained by any agent of the Debtors at the location that those books and records are maintained.

8.3     <u>Outstanding Requests for Documents</u>.  The Debtors shall have until June 15, 2019, to produce any outstanding documents set forth in (i) the *Motion for Entry of Order Authorizing Examination Under Federal Rule of Bankruptcy Procedure 2004* [Docket No. 35] as granted under Docket No. 49, or (ii) the prior written requests of Hillair.

9.     **Section 507(b) Priority.**

9.1     As additional adequate protection, the Debtors, on their own behalf and on behalf of their Estates, hereby agree and acknowledge that, if the protections provided by the liens and security interests under the Loan Documents or this Stipulation are later determined inadequate, then to the extent of such inadequacy, Hillair shall have an allowed super priority administrative claim of the kind and priority specified in section 503(b) or 507(b): (1) with priority over all costs and expenses of administration of the Bankruptcy Case that are incurred under any provision of the Bankruptcy Code, including, without limitation, sections 503(b), 506(c), 507(a), or 522(b); and (2) with the same priority as the Postpetition Lien as set forth in this Stipulation, subject to the Carve-Out.  The parties reserve all rights as to the determination of whether Hillair is entitled to a super-priority administrative claim with respect to the proceeds of causes of action arising under sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) of the Bankruptcy Code, which shall be brought on a properly noticed motion or other proceeding.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

10.    **Waiver of Section 506(c) Surcharge.**

10.1    Based on the authorization of the Debtors' use of the Cash Collateral pursuant to this Stipulation, the Debtors, on behalf of themselves and their Estates, waive their rights and shall not seek to surcharge the Collateral or Hillair under Section 506(c).

11.    **Forbearance of Remedies.**

11.1    Providing that there are no uncured defaults hereunder, during the term of this Stipulation, and subject to the terms and conditions hereof, Hillair will forbear from exercising any of Hillair's rights and remedies against the Debtors under the Loan Documents and applicable law.

12.    **Event of Default.**

12.1    Following the entry of the order approving this Stipulation, an event of default under this Stipulation (each, a "Default") shall include the following:

(a)    The Debtors' failure to perform or comply with the term of this Stipulation or any other order of the Court;

(b)    Any material misrepresentation of fact made by any representative of the Debtors to Hillair about the Debtors' business or financial condition or the Collateral;

(c)    The granting in favor of any party other than Hillair of a security interest in or lien upon any property of the Debtors or the Debtors' estate, or a claim against the Debtors having priority over the security interests, liens or claims in favor of Hillair except to the extent that such party had a security interest in or lien upon any property of Debtors on the Petition Date which had priority over the security interests, liens or claims of Hillair existing on Petition Date, provided that any financing obtained with Hillair's consent or approved by the Court shall not constitute a Default under this section;

(d)    The Debtors' failure to perform or comply with their obligations under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or of the requirements of the Office of the United States Trustee;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

(e)      The termination of this Stipulation by its own terms (other than the natural expiration of the term as provided for under Paragraph 14.1) or Court order;

(f)      The dismissal of the Bankruptcy Case;

(g)      The appointment of a trustee under the Bankruptcy Code;

(h)      The conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code;

(i)      The submission by the Debtors of any chapter 11 plan of reorganization inconsistent in any material respect with the terms of this Stipulation unless Hillair consents to such submission;

(j)      The stay, modification, amendment, vacating, or reversal of any term herein or Order approving this Stipulation, or any of the rights and acknowledgments conferred hereunder, without the express prior written consent of Hillair.

13.      **Rights and Remedies Upon Default.**

13.1      <u>Effect of Default</u>.      Immediately upon the occurrence of a Default, and subject only to the rights and remedies set forth in Paragraphs 13.2 and 13.3 of this Stipulation, all of the following shall be deemed to have occurred:

(a)      Hillair's consent regarding the Debtors' use of the Cash Collateral pursuant to this Stipulation is terminated without further notice;

(b)      The Debtors shall not use any Cash Collateral for any purpose;

(c)      Hillair may seek relief from the automatic stay of Section 362 of the Bankruptcy Code for cause, on an emergency basis with no less than three days' notice to the Debtors and the Committee (and the Debtors and the Committee shall not oppose the expediting of such hearing provided that all parties' substantive arguments and defenses are preserved).  The parties specifically waive the provisions of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure to the extent that the Court grants relief from stay.

13.2      <u>If Default is "Curable."</u>  If the Default is a type that is curable by the Debtors and the Debtors cure the Default within five (5) business days from the date of service of

18

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

1    such notice of the Default, the Default is cured, and the Debtors' rights under this Stipulation

2    shall be restored as if no Default occurred.

3        13.3    <u>Request for Emergency Hearing.</u>    In the event of a Default under this

4    Stipulation or the Debtors contesting that such Default occurred, the Parties hereby stipulate and

5    agree that such Default or the contest of the Default may be heard on an emergency basis with no

6    less than three days' notice to the Parties.    This provision is subject to the Court's willingness to

7    set the matter on an emergency basis.

8        14.    **Cash Collateral Term.**

9        14.1    The authorization to use the Cash Collateral pursuant to this Stipulation

10    shall terminate as of the earliest of the following (the "Termination Date"):

11            (a)    June 28, 2019;

12            (b)    The occurrence of a Default, subject to the rights under Paragraphs

13    13.2 and 13.3; or

14            (c)    The occurrence of the Effective Date of a confirmed plan of

15    reorganization.

16        14.2    Notwithstanding the occurrence of the Termination Date or a Default, this

17    Stipulation may be extended by Hillair and the Debtor by written agreement without further order

18    of this Court.

19        14.3    The Parties stipulate and agree to a continued cash collateral hearing to

20    occur on June 27, 2019 at 10:00 a.m. in the above-captioned court or to such other date and time

21    as is convenient to the Court.

22        15.    **No Modification or Stay of the Stipulation or Order.**

23        15.1    Unless expressly consented to in writing by Hillair, (a) this Stipulation, (b)

24    an Order approving this Stipulation, and (c) the rights and remedies of Hillair under the Loan

25    Documents and this Stipulation, shall not be subject to any stay, modification, alteration,

26    amendment, vacating, or reversal by any order of this Court or other tribunal.

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

16.     **Power To Waive Rights; Duties To Third Parties.**

16.1     Hillair shall have the right to waive any of the terms, rights, and remedies provided in this Stipulation or the Loan Documents ("Hillair Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce any Hillair Rights.  Any waiver by Hillair of any Hillair Rights shall not be or constitute a continuing waiver.  Hillair's delay in or failure of exercising or enforcing any of Hillair Rights shall neither constitute a waiver of such Hillair Rights, subject Hillair to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligations or indebtedness owed to Hillair.

17.     **Reservation of Rights.**

17.1     Except as otherwise stated herein, the Parties reserve all of their respective rights and remedies.

18.     **The Debtors' Acknowledgment.**

18.1     Notwithstanding any other provision of this Stipulation, the Debtors acknowledge and agree that (a) the Prepetition Obligations are valid and indefeasible obligations of the Debtors and their estate, in accordance with their terms; and (b) the liens and security interests in favor of Hillair with respect to the Collateral, both prepetition and postpetition, including the Cash Collateral, are valid, enforceable, perfected, and unavoidable under the Bankruptcy Code, including Section 552, and any other applicable law.  The Prepetition Obligations and any postpetition obligations arising hereunder shall include reasonable professional fees and costs incurred by Hillair in connection with the representation of Hillair in this matter, including the enforcement of its rights and remedies under the Loan Documents and the representation of Hillair in all aspects of the Bankruptcy Case, to the extent permitted to be charged to the Debtors under the Loan Documents or applicable law.  Hillair acknowledges that payments of postpetition interest and fees are subject to 11 U.S.C. § 506(b).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

19.    **No Action for Purposes of the One Form of Action Rule.**

19.1    The Debtors hereby waive each of the provisions of Code of Civil Procedure Sections 726, 580a, 580b or 580d or other similar law which provide for an election of remedies or an "action" to the extent such law is applicable.

20.    **Notice.**

20.1    Except as otherwise provided herein, when notice is required in this Stipulation, it shall be delivered or served upon the parties via overnight mail with a courtesy to counsel via email as follows:

| | |
|---|---|
| If to Hillair: | Hillair Capital Management, LLC<br>Attn:  Sean McAvoy<br>345 Lorton Avenue, Suite 303<br>Burlingame, California 94010 |
| with a copy to counsel for Hillair, which shall not constitute notice hereunder: | Buchalter, a Professional Corporation<br>Attn:  Steven M. Spector, Esq.<br>1000 Wilshire Boulevard, 15th Floor<br>Los Angeles, California 90017<br>Telephone:  (213) 891-0700<br>Facsimile:    (213) 896-0400<br>Email:          sspector@buchalter.com |
| If to the Debtors, as applicable: | Soobeez<br>Attn:  George Voskanian<br>3463 Foothill Boulevard<br>Glendale, California 91214 |
| | Scoobeez Global, Inc.<br>Attn:  George Voskanian<br>3463 Foothill Boulevard<br>Glendale, California 91214 |
| | Scoobur, LLC<br>Attn:  George Voskanian<br>3463 Foothill Boulevard<br>Glendale, California 91214 |
| with a copy to counsel for the Debtors, which shall not constitute notice hereunder: | Foley & Lardner LLP<br>Attn:  Ashley M. McDow, Esq.<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071<br>Telephone:  (213) 972-4500<br>Facsimile:    (213) 486-0065<br>Email:          amcdow@foley.com |
| | Foley & Lardner LLP<br>Attn:  John A. Simon, Esq. |

21

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

500 Woodward Avenue, Suite 2700
Detroit, MI 48326
Telephone: (313) 234-7100
Facsimile: (313) 234-2800
Email:         jsimon@foley.com

If to the Committee:         Avitus, Inc.
Attn: Donald Reile, Chairman of the Committee
175 North 27th Street, Suite 800
Billings, MT 59101

with a copy to counsel for the Committee,     Levene Neale Bender Yoo & Brill L.L.P.
which shall not constitute notice     Attn: David Neale, Esq.
hereunder:     10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email:         dln@lnbyb.com

21.    **No Responsible Person Liability.**

21.1    In making decisions or in taking other actions reasonably related to this Stipulation, Hillair shall have no liability to any third party including creditors and equity interest holders of the Debtors. Hillair shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "owner" or "operator" with respect to the operation or management of the Debtors.

22.    **No Agreement to Provide Financial Accommodation.**

22.1    This Stipulation shall not impose any duty or obligation to provide any financing or financial accommodation to the Debtors, or to any other entity, to collect, sell, lease or otherwise dispose of any of the Collateral, to proceed against any entity, to proceed against or exhaust any security, or to otherwise pursue any of Hillair's Rights.

23.    **Access to the Debtors' Books and Records.**

23.1    Hillair shall have full, complete, unqualified and unlimited access to the books and records of the Debtors during normal business hours for the purpose of inspection, photocopying and audit upon 24 hours' notice via email from counsel to Hillair to counsel to the Debtors.

22

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

24.    **Miscellaneous Provisions.**

24.1    <u>Jointly Negotiated Stipulation</u>.    This Stipulation is the product of negotiation among the parties hereto and represents the joint, conceived, bargained for and agreed upon language mutually determined by the parties to express their intentions in entering into this Stipulation.  Any ambiguity or uncertainty herein shall be deemed to be caused by, or attributable to, all parties collectively.   In any action to enforce or interpret this Stipulation, it shall be construed in a neutral manner and no term or condition herein shall be construed more or less favorably to any one party or groups of parties.   Each party will act in good faith in the performance of its obligations hereunder.

24.2    <u>Authorization to Execute this Stipulation.</u>  Counsel for the parties to this stipulation represent and warrant that they have authorization to execute this Stipulation on behalf of their respective parties, and subject to Court approval.

24.3    <u>Consent to Entry of Order</u>.  The Parties each consent to the entry of an order acceptable to the Parties approving this Stipulation.

24.4    <u>Binding Effect</u>.  Except as otherwise provided herein, this Stipulation shall be binding upon the Parties and their respective successors and assigns, including any trustee appointed in this Bankruptcy Case or any subsequently converted bankruptcy case of the Debtors. This Stipulation shall also inure to the benefit of Hillair and the Debtors, and their respective successors and assigns.

24.5    <u>Counterparts</u>.  This Stipulation may be executed in counterparts, and such signatures may be by facsimile.

24.6    <u>Time of the Essence</u>. Each of the Parties expressly acknowledges and agrees that time is of the essence and that all dates and time periods provided for in this Stipulation are absolute and final.

24.7    <u>Survival of Terms</u>.  Notwithstanding any term to the contrary herein, the terms and conditions of this Stipulation shall apply only during the term of this Stipulation prior

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

1   to the Termination Date, provided, however, that the rights and remedies granted the Parties shall

2   survive the term of this Stipulation and Termination Date.

3           24.8    <u>No Benefit to Non-Parties</u>.  This Stipulation is not intended, nor shall it be

4   construed or deemed to confer any rights, powers or privileges on any entity that is not the

5   Debtors or Hillair as express signatories to this Stipulation.  Specifically, no benefit is extended to

6   any surety or guarantor (other than the Debtors) of the obligations, and Hillair reserves all of its

7   rights with respect to such non-parties.

8           24.9    <u>Further Assurances</u>.  The Debtors are authorized and shall perform all acts

9   and execute and deliver to Hillair all agreements, financing statements, instruments or documents

10  as may be reasonably requested by Hillair to effectuate the terms of this Stipulation or as

11  contemplated herein.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 36480565v8

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

**[SIGNATURE PAGE FOLLOWS]**

**IT IS SO STIPULATED:**

DATED:  June 6, 2019               BUCHALTER, a Professional Corporation

By: _____
                         STEVEN M. SPECTOR
                         ANTHONY J. NAPOLITANO

Attorneys for Secured Creditor
Hillair Capital Management, LLC

DATED:  June 6, 2019               FOLEY & LARDNER, LLP

By: _____
                         ASHLEY M. McDOW
                         JOHN A. SIMON

Proposed Attorneys for the Debtors

DATED:  June 6, 2019               LEVENE NEALE BENDER YOO & BRILL L.L.P.

By: _____
                         DAVID NEALE
                         J.P. FRITZ

Proposed Attorneys for the Committee

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

**Exhibit A**

**Collateral Description**

The following collateral description is taken from that certain Security Agreement executed on October 7, 2016 by ABT Holdings, Inc., Scoobeez Global, Inc., Scoobeez Inc. and Scoobur LLC, on the one hand, and Hillair Capital Investments L.P., on the other hand. Capitalized terms not defined herein are as they are defined in the Security Agreement.  To the extent of any conflict between this Collateral description and the description in the Security Agreement, the Security Agreement controls.

(a)    "Collateral" means the collateral in which the Secured Parties are granted a security interest by this Agreement and which shall include the following personal property of the Debtors, whether presently owned or existing or hereafter acquired or coming into existence, wherever situated, and all additions and accessions thereto and all substitutions and replacements thereof, and all proceeds, products and accounts thereof, including, without limitation, all proceeds from the *sale* or transfer of the Collateral and of insurance covering the same and of any tort claims in connection therewith, and all dividends, interest, cash, notes, securities, equity interest or other property at any time and from time to time acquired, receivable or otherwise distributed in respect of, or in exchange for, any or all of the Pledged Securities (as defined below):

(i)    All goods, including, without limitation, (A) all machinery, equipment, computers, motor vehicles, trucks, tanks, boats, ships, appliances, furniture, special and general tools, fixtures, test and quality control devices and other equipment of every kind and nature and wherever situated, together with all documents of title and documents representing the same, all additions and accessions thereto, replacements therefor, all parts therefor, and all substitutes for any of the foregoing and all other items used and useful in connection with any Debtor's businesses and all improvements thereto; and (B) all inventory;

(ii)    All contract rights and other general intangibles, including, without limitation, all partnership interests, membership interests, stock or other securities, rights under any of the Organizational Documents, agreements related to the Pledged Securities, licenses, distribution and other agreements, computer software (whether "off-the-shelf", licensed from any third party or developed by any Debtor), computer software development rights, leases, franchises, customer lists, quality control procedures, grants and rights, goodwill, Intellectual Property and income tax refunds;

(iii)    All accounts, together with all instruments, all documents of title representing any of the foregoing, all rights in any merchandising, goods, equipment, motor vehicles and trucks which any of the same may represent, and all right, title, security and guaranties with respect to each account, including any right of stoppage in transit;

(iv)    All documents, letter-of-credit rights, instruments and chattel paper;

(v)    All commercial tort claims;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

(vi)    All deposit accounts and all cash (whether or not deposited in such deposit accounts);

(vii)    All investment property;

(viii)    All supporting obligations; and

(ix)    All files, records, books of account, business papers, and computer programs; and

(x)    the products and proceeds of all of the foregoing Collateral set forth in clauses (i)-(ix) above.

Without limiting the generality of the foregoing, the "Collateral" shall include all investment property and general intangibles respecting ownership and/or other equity interests in each Guarantor, including, without limitation, the shares of capital stock and the other equity interests listed on Schedule H hereto (as the same may be modified from time to time pursuant to the terms hereof), and any other shares of capital stock and/or other equity interests of any other direct or indirect subsidiary of any Debtor obtained in the future, and, in each case, all certificates representing such shares and/or equity interests and, in each case, all rights, options, warrants, stock, other securities and/or equity interests that may hereafter be received, receivable or distributed in respect of, or exchanged for, any of the foregoing and all rights arising under or in Connection with the Pledged Securities, including, but not limited to, all dividends, interest and cash.

Notwithstanding the foregoing, nothing herein shall be deemed to constitute an assignment of any asset which, in the event of an assignment, becomes void by operation of applicable law or the assignment of which is otherwise prohibited by applicable law (in each case to the extent that such applicable law is not overridden by Sections 9-406, 9-407 and/or 9-408 of the UCC or other similar applicable law); provided, however, that to the extent permitted by applicable law, this Agreement shall create a valid security interest in such asset and, to the extent permitted by applicable law, this Agreement shall create a valid security interest in the proceeds of such asset.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL; AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit B**

**3 Week Budget**
**[June 7, 2019 through June 28, 2019]**

**BUCHALTER**
A PROFESSIONAL CORPORATION
LOS ANGELES

**SECOND STIPULATION FOR (1) AUTHORIZATION TO USE CASH COLLATERAL;
AND (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER**

BN 36480565v8

- DRAFT -

**Scoobeez et al**
13-Week Cash Flow Forecast

| Week Ended | Actual 5/17/2019 | Actual 5/24/2019 | Actual 5/31/2019 | Forecast 6/7/2019 | Forecast 1 6/14/2019 | Forecast 2 6/21/2019 | Forecast 3 6/28/2019 | Forecast 4 7/5/2019 | Forecast 5 7/12/2019 | Forecast 6 7/19/2019 | 6-Week Total | Percent of Receipts |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoiced | 905,000 | 945,000 | 945,000 | 945,000 | 945,000 | 945,000 | 945,000 | 845,000 | 1,000,000 | 900,000 | | |
| Beginning Cash | 1,140,000 | 1,035,630 | 1,385,708 | 2,172,173 | 1,741,550 | 1,855,900 | 1,504,000 | 2,116,850 | 968,462 | 1,788,812 | 1,741,550 | |
| Collections | 907,638 | 904,782 | 908,263 | 880,000 | 905,000 | 945,000 | 945,000 | 945,000 | 945,000 | 945,000 | 5,630,000 | 100.0% |
| **Cash Disbursements:** | | | | | | | | | | | | |
| Fuel | 52,596 | 50,000 | 63,280 | 60,000 | 60,000 | 60,000 | 60,000 | 50,000 | 60,000 | 60,000 | 350,000 | 6.2% |
| Payroll & Payroll Expenses | 852,532 | 399,189 | 10,705 | 996,573 | - | 1,130,000 | - | 1,130,000 | - | 1,110,000 | 3,370,000 | 59.9% |
| Corporate Payroll & Expenses | | | | 42,250 | - | 42,250 | 65,000 | 42,250 | - | 42,250 | 191,750 | 3.4% |
| Vehicle - Hertz | 97 | | | - | 520,000 | - | 90,000 | - | - | 420,000 | 1,030,000 | 18.3% |
| Vehicle - Accidents/Tolls/Citations | | | | 2,500 | - | 2,500 | - | 2,500 | - | 2,500 | 7,500 | 0.1% |
| Worker's Compensation | | | | 7,000 | 150,000 | 7,000 | 7,000 | 7,000 | 7,000 | 150,000 | 328,000 | 5.8% |
| Rent & Utilities | 6,498 | 2,361 | 300 | 20,500 | - | - | 20,500 | - | - | - | 20,500 | 0.4% |
| Insurance | 48,568 | 54,705 | 2,654 | 80,000 | - | - | - | 80,000 | - | - | 80,000 | 1.4% |
| Phones & Service | 2,942 | 5,281 | 29 | 20,000 | - | - | 20,000 | - | - | 20,000 | 40,000 | 0.7% |
| Travel | | | | - | 7,500 | - | 7,500 | - | 7,500 | - | 22,500 | 0.4% |
| Dues & Subscriptions | 460 | 801 | | 15,000 | - | 5,000 | - | 15,000 | - | 5,000 | 25,000 | 0.4% |
| IT Expenses | | | | 16,650 | - | - | 9,000 | 16,650 | - | - | 25,650 | 0.5% |
| Car Wash | | 180 | 90 | - | 3,000 | - | 3,000 | - | - | 3,000 | 9,000 | 0.2% |
| Other Expenses | 8,225 | 2,188 | 4,740 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 60,000 | 1.1% |
| **Total Operating Cash Disbursements** | 971,918 | 514,525 | 81,708 | 1,270,473 | 750,500 | 1,256,750 | 292,000 | 1,353,400 | 84,500 | 1,822,750 | 5,559,900 | 98.8% |
| **Operating Cash Flow** | (64,280) | 390,258 | 826,556 | (390,473) | 154,500 | (311,750) | 653,000 | (408,400) | 860,500 | (877,750) | 70,100 | 1.2% |
| **Financing Cash Flows** | | | | | | | | | | | | |
| Debt Principal | - | - | - | - | - | - | - | - | - | - | | 0.0% |
| Debt Interest | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 240,000 | 4.3% |
| Bank Fees | 90 | 180 | 90 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 900 | 0.0% |
| **Financing Cash Flows** | 40,090 | 40,180 | 40,090 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 240,900 | 4.3% |
| **Restructuring Cash Flows** | | | | | | | | | | | | |
| Debtor Counsel | - | - | - | - | - | - | - | 350,000 | - | - | 350,000 | 6.2% |
| Debtor CRO | - | - | - | - | - | - | - | 20,000 | - | - | 20,000 | 0.4% |
| Debtor Advisor | - | - | - | - | - | - | - | 60,000 | - | - | 60,000 | 1.1% |
| Board of Directors (2 Individuals) | - | - | - | - | - | - | - | 5,000 | - | - | 5,000 | 0.1% |
| Buchalter | - | - | - | - | - | - | - | 140,000 | - | - | 140,000 | 2.5% |
| Committee Counsel | - | - | - | - | - | - | - | 20,000 | - | - | 20,000 | 0.4% |
| Committee Professionals | - | - | - | - | - | - | - | 50,000 | - | - | 50,000 | 0.9% |
| Post Petition US Trustee Fees | - | - | - | - | - | - | - | 54,838 | - | - | 54,838 | 1.0% |
| **Restructuring Cash Flows** | - | - | - | - | - | - | - | 699,838 | - | - | 699,838 | 12.4% |
| **Net Total Cash Flow In / (Out)** | (104,370) | 350,078 | 786,466 | (430,623) | 114,350 | (351,900) | 612,850 | (1,148,388) | 820,350 | (917,900) | (870,638) | -15.5% |
| Cumulative Cash Flow | | | | | 114,350 | (237,550) | 375,300 | (773,088) | 47,262 | (870,638) | (870,638) | |
| Ending Cash Balance | 1,035,630 | 1,385,708 | 2,172,173 | 1,741,550 | 1,855,900 | 1,504,000 | 2,116,850 | 968,462 | 1,788,812 | 870,912 | 870,912 | |
| **Collateral Package** | | | | | | | | | | | | |
| Cash on Hand | 1,035,630 | 1,385,708 | 2,172,173 | 1,741,550 | 1,855,900 | 1,504,000 | 2,116,850 | 968,462 | 1,788,812 | 870,912 | | |
| AR Roll Forward | 3,485,719 | 3,530,000 | 3,570,000 | 3,640,000 | 3,680,000 | 3,680,000 | 3,680,000 | 3,580,000 | 3,640,000 | 3,600,000 | | |
| Loan Receivable and Uncategorized Assets | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | | |
| Fixed Assets | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | | |
| Other Assets | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | | |
| **Total Collateral** (1) | 7,106,876 | 7,501,235 | 8,327,700 | 7,967,077 | 8,121,427 | 7,769,527 | 8,382,377 | 7,133,989 | 8,014,339 | 7,056,439 | | |
| Estimated Outstanding Secured Loan (2) | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | | |

(1) Collateral details and amounts are being reviewed by the debtor and its advisors, and is subject to material changes.
(2) Estimated outstanding secured loan balance was provided by Hilco Capital's counsel and is disputed and currently under review by the debtor and its advisors.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
BUCHALTER, 1000 Wilshire Blvd, Suite 1500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*) **SECOND STIPULATION BETWEEN THE DEBTORS, THE COMMITTEE AND HILLAIR CAPITAL MANAGEMENT FOR (1) AUTHORIZATION TO USE CASH COLLATERAL ON AN INTERIM BASIS; (2) APPOINTMENT OF A CHIEF RESTRUCTURING OFFICER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
June 6, 2019_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

John-Patrick M Fritz    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com

- Alvin Mar    alvin.mar@usdoj.gov
- Ashley M McDow    amcdow@foley.com, sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
- Rejoy Nalkara    rejoy.nalkara@americaninfosource.com
- Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
- David L. Neale    dln@lnbyb.com
- Gregory M Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) June 6, 2019_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
Scoobeez
3463 Foothill Blvd.
Glendale, CA 91214

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) June 6, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

VIA COURIER
Presiding Judge
Hon. Julia W. Brand
U.S. Bankruptcy Court – Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

| June 6, 2019 | Sandra Alarcon | /s/ Sandra Alarcon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.