**RAINES FELDMAN LLP**
Hamid R. Rafatjoo (State Bar No. 181564)
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: 310.440.4100
Facsimile: 310.691.1367
E-mail: hrafatjoo@raineslaw.com

Attorneys for Shahan Ohanessian

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

|  |  |
|---|---|
| In re:<br><br>SCOOBEEZ, et al.,<br><br>　　　　　　Debtors. | Case No. 2:19-bk-14989-WB<br><br>Chapter 11<br><br>Jointly Administered with:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br><br>**OBJECTION TO APPLICATION TO EMPLOY ARMORY SECURITIES, LLC AS INVESTMENT BANKER PURSUANT TO 11 U.S.C. §§ 327(A) AND 328(A), RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL BANKRUPTCY RULE 2014-1; DECLARATION OF HAMID R. RAFATJOO IN SUPPORT THEREOF; AND REQUEST FOR HEARING PURSUANT TO LOCAL BANKRUPTCY RULE 2014-1(b)(5)**<br><br>Hearing:<br>Date:　[Hearing Requested]<br>Time:<br>Place:　Courtroom 1375<br>　　　　　255 E. Temple Street<br>　　　　　Los Angeles, CA 90012<br><br>The Honorable Julia W. Brand |

# TABLE OF CONTENTS

Page(s)

I.      PRELIMINARY STATEMENT ........................................................................................ 1

II.     BACKGROUND ........................................................................................................... 1
        A.      General. ............................................................................................................. 1
        B.      The Professionals. ............................................................................................. 2

III.    OBJECTION ................................................................................................................. 3
        A.      Employment of Armory is Not Necessary and The Application Should be
                Denied. .............................................................................................................. 3
                a.      "Familiarizing itself with the business, operations,
                        properties, financial condition and prospects of the Debtors" ........ 5
                b.      "Assisting the Debtors in evaluating their strategic
                        alternatives" ................................................................................... 6
                c.      "Advising and assisting the Debtors in structuring and
                        effecting the financial aspects of a Sale and/or Financing"
                        (emphasis added) ............................................................................ 6
                d.      "Providing financial advice and assistance to the Debtors in
                        connection with a Sale and/or Financing, identifying
                        potential acquirers and/or investors and, at the Debtors'
                        request, contacting such potential acquirers and/or
                        investors" ........................................................................................ 6
                e.      "Assisting the Debtors in preparing a memorandum (with
                        any amendments or supplements thereto, the "Sale
                        Memorandum" in the case of a Sale and a "Confidential
                        Information Memorandum" in the case of a Financing) to be
                        used in soliciting potential acquirers and/or investors…" ............. 6
                f.      "Assisting the Debtors in preparing a financial model used
                        for marketing the Debtors" ............................................................. 6
                g.      "Identifying and soliciting potential transaction parties" ................ 6
                h.      "Assisting the Debtors and their other professionals in
                        reviewing and evaluating the terms of any proposed
                        Transaction or other transaction, in responding thereto, and
                        if directed in developing and evaluating alternative
                        proposals for a transaction, whether in connection with a
                        Plan or otherwise" .......................................................................... 7
                i.      "Meeting with the Debtors' Chief Restructuring Officer
                        regularly to provide updates with respect to the proposed
                        Transaction or other transactions or alternative proposals" ........... 7
                j.      "Assisting the Debtors and/or participating in negotiations
                        with potential acquirers and/or investors" ...................................... 7
                k.      "If requested by the Debtors, participating in hearings
                        before the bankruptcy court with respect to the matters upon
                        which Armory Securities has provided advice, including, as
                        relevant, coordinating with the Debtors' counsel with
                        respect to testimony in connection therewith." ............................... 7
        B.      Armory's Proposed Compensation is Not Reasonable and the Application
                Should be Denied. .............................................................................................. 8

IV.     RESERVATION OF RIGHTS ...................................................................................... 11

V.      CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

Friedman Enters. v. B.U.M Int'l Inc. (In re B.U.M. Int'l, Inc.),
    229 F.3d 824, 829 (9th Cir. 2000) ........................................................................... 8

In re Circle K Corp.,
    279 F.3d 669 (9th Cir. 2002) .................................................................................. 8

**Statutes**

11 U.S.C. § 328(a) ................................................................................................... 8

**Rules**

Fed. R. Bankr. P. 2014(a) ....................................................................................... 3

ii

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, THE DEBTORS AND THEIR COUNSEL OF RECORD, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL OTHER PARTIES IN INTEREST:**

Shahan Ohanessian ("<u>Ohanessian</u>") hereby submits this Objection ("<u>Objection</u>") to Application to Employ Armory Securities, LLC as Investment Banker Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2014-1 (the "<u>Application</u>") [Docket No. 179], and Request for Hearing pursuant to Local Bankruptcy Rule 2014-1(b)(5).  In support of this Objection, Ohanessian respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

The cavalier burn of the Debtors' cash through professional fees must be harnessed for the benefit of these estates and creditors.  The Application is devoid of evidence that it is necessary to retain a new professional to serve as investment banker for the Debtors.  These cases, with experienced, capable professionals already employed, simply do not warrant that additional financial burden that has little, if any, benefit to the estates or their creditors.  Moreover, the Application fails to demonstrate that Armory's compensation is reasonable -- but rather it apparently provides Armory with a potential windfall of compensation without demonstrating that Armory's services benefited the estates or their creditors.  Accordingly, the Application should be denied.

## II.    BACKGROUND[1]

### A.    General.

On April 30, 2019 (the "<u>Petition Date</u>"), the Debtors each filed a petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "<u>Court</u>").  The Debtors continue in possession of their property and operate their businesses as debtors-in-possession.  No Trustee or examiner has been appointed in these cases.  On May 20,

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application.

1   2019, the Office of the United States Trustee appointed an Official Committee of Unsecured

2   Creditors (the "Committee") in these cases.

3        Pursuant to an Order of the Court, dated May 13, 2019, these cases are being jointly

4   administered under Case No. 19-1498 (the "Chapter 11 Cases").

5        The Debtors are a logistics and delivery company headquartered at 3463 Foothill Boulevard,

6   Glendale, California 91214.  Amazon is their largest customer.

7        According to the Application, over the past two (2) years, an increasing number of lawsuits

8   had been filed against one or more of the Debtors, including various labor disputes.  Most recently,

9   on or about April 22, 2019, Hillair Capital Management LLC ("Hillair") filed a three-count

10   complaint against the Debtors, alleging breach of contract, breach of guaranty and replevin  and

11   delivery, which is currently pending as case number 19GDCV00492 in the Superior Court of the

12   State of California, County of Los Angeles, North Central District (the "Los Angeles Case").  On

13   or about April 24, 2019, Hillair filed an Ex Parte Application to Appoint Receiver, Issue Temporary

14   Restraining Order and Set Order to Show Cause Why Receiver Should Not Be Confirmed and Why

15   Preliminary Injunction Should Not Be Issued (the "Ex Parte Application") in the Los Angeles Case.

16   The hearing on the Ex Parte Application was set for May 1, 2019 at 1:30 p.m., however, the Debtors

17   commenced the Chapter 11 Cases prior to that hearing. In addition, within the past 90-120 days, a

18   number of purported creditors have filed UCC-1 financing statements asserting liens against

19   substantially all, if not all, of the Debtors' personal property, including but not limited to accounts

20   receivable.

21       **B.**    **The Professionals.**

22       On or about May 16, 2019, approximately two weeks after the Petition Date, the Debtors

23   filed an application to retain Brian Weiss of Force 10 Partners LLC ("Force 10"), as Chief

24   Restructuring Officer of the Debtors [Dkt. No. 63] (the "Force 10 Retention Application").  By

25   Order dated, July 12, 2019, the Court approved the Force 10 Retention Application.  According to

26   the Force 10 Retention Application, Mr. Weiss "will assist the Debtors in evaluating and

27   implementing strategic and tactical options throughout the Chapter 11 process, among other

28   things."  Force 10 Retention Application, 3:18-19.

#48427694v2

On or about May 23, 2019, the Debtors filed an application to employ Conway Mackenzie, Inc. as Financial Advisors [Dkt. No. 90] (the "Conway Retention Application").[2]  That Application remains pending.  According to the Conway Retention Application, Conway will, among other things, "work with the Debtors on all aspects of their business operations and financial matters, as well as to assist the Debtors and their general bankruptcy counsel in preparing motions, pleadings, schedules, statements of financial affairs, and other necessary bankruptcy documents."  Conway Retention Application, 4:4-8.

On July 8, 2019, the Debtors filed the Application seeking to retain Armory Securities, LLC ("Armory") as Investment Banker Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2014-1.

According to the Application, the "Debtors have determined … that the size of their business operations and the amount of asserted secured and unsecured claims require them to employ an investment banker with knowledge of the Debtors' industry and business and experience with the chapter 11 process to assist with exploring sale and capital raising alternatives." Application, 3:13-17.  According to the Engagement Letter,[3] Armory is being engaged to provide investment banking services with respect to a possible chapter 11 Sale and/or a Financing (each as defined in the Engagement Letter).  Engagement Letter, at 1.

## III.    OBJECTION

### A.    Employment of Armory is Not Necessary and The Application Should be Denied.

An application to employ a professional under section 327 of the Bankruptcy Code must show "the necessity for the employment …."  Fed. R. Bankr. P. 2014(a).  The Debtor has failed to demonstrate that employment of Armory is necessary; simply, because it is not.

While the Application is replete with conclusory statements and boilerplate retention lingo, it is devoid of evidence that engagement of Armory as an investment banker is necessary or in the

---

[2]    A stipulation resolving objections to the Conway Retention Application was filed with the Court on July 7, 2019 [Dkt. No. 184], but no order approving the application has yet been entered.

[3]    A copy of the Engagement Letter is annexed as Exhibit A to the Perison Declaration, which was filed with the Application [Dkt. No. 179].

3

#48427694v2

1  best interests of these estates and their creditors.  At most, the Application asserts "[i]t is necessary

2  for the Debtors' successful completion of this process and cases that the Debtors employ Armory

3  Securities to render the foregoing professional services."  Application, 5:10-11.  This conclusory

4  assertion provides no evidence that Armory is actually necessary.  Why is a separate investment

5  banker necessary?  These are not large or complex cases.  The Debtors' business is not unique or

6  complicated.  The Debtors are a logistics and delivery company with primarily one customer –

7  Amazon.  And while it is financially distressed and has both secured and unsecured debt, there is

8  nothing complex about the Debtors' capital structure or operations.  A potential buyer will either

9  be interested or not, but nothing is complicated about these cases or any potential sale or refinance

10  transaction.

11       So how do you find that potential buyer or new lender?  Force 10, or one of the other

12  experienced professionals already being compensated, can provide those services (which should

13  not be extensive) more efficiently and economically than a new professional.  And what is the value

14  in spending additional estate funds to employ a separate investment banker if Hillair simply credit

15  bids and is the sole and thus prevailing bidder.  What is clear is that more professionals and fees,

16  with minimal, if any, benefit to the estates and creditors, are just not justified in these cases.

17       First, the 13-week cash flow forecast attached as Exhibit 1 to the Court's Order Granting

18  Continued Use of Cash Collateral Pursuant to that Certain Second Stipulation for (1) Authorization

19  to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer, dated July 3, 2019

20  [Dkt. No. 172], shows that during the 13-week period ending the week of September 6, 2019, these

21  estates are projected to incur over $1.5 million in professional fees, while having a negative cash

22  flow of over $570,000.[4]  See Exhibit A to the Declaration of Hamid R. Rafatjoo ("Rafatjoo

23  Declaration").  That list of professionals includes, the Debtors' counsel, Force 10, as CRO,

24  Conway, as financial advisers, Board of Directors, counsel for the secured lender – Hillair (which

25  is expected to charge more than twice in fees than the Committee's counsel), the Committee's

26  counsel and the Committee's professionals.  The professional fee frenzy of $115,000 per week is

27

28  [4]    The Court should not that even at this expense, the Debtors filed their May monthly operating
         reports almost 30 days late and the June monthly operating reports are now past due as well.

4

1    not sustainable for such a small company and needs to stop – but instead, the Debtors are seeking

2    to add on another professional for hundreds of thousands more in costs.  For what benefit?  None.

3    Second, the services outlined for Armory to provide, not surprisingly, overlap with the

4    services to be provided by Conway and/or Force 10.  More importantly, Force 10 can provide the

5    narrow investment banking type services that are needed here.  Force 10's website notes a variety

6    of services it provides, including "investment banking" services.  See Exhibit B to Rafatjoo

7    Declaration.  The Force 10 Retention Application expressly provides that "Weiss and Force 10

8    have substantial experience with providing financial advisory services for entities in chapter 11

9    including analyzing business operations, *financial modeling*, operational analyses, *capital raising*,

10    asset sales, serving in the capacity of financial advisor, and developing reorganization strategies."

11    Force 10 Retention Application, 3:8-10 (emphasis added).  The Force 10 Retention Application

12    also provides that Weiss has a customary hourly rate of $595 and "if other Force 10 personnel are

13    required, they will be charged at their customary hourly rates of $225-650 per hour."  See

14    Declaration of Brian Weiss annexed to Force 10 Retention Application.

15    Reviewing the duplicity of the services to be provided by Armory shows that Armory's

16    retention is not necessary:[5]

17        a.    **"Familiarizing itself with the business, operations, properties, financial condition and prospects of the Debtors"**

18

19           ➢    Both Conway and Force 10 are already familiar with the Debtors and their business.

20           ➢    Moreover, the Application states that the Debtors require "an investment

21    banker with knowledge of the Debtors' industry and business…" Application, 3:15-16.  The Application and Perison Declaration are devoid

22    of evidence that Armory is familiar with the Debtors' industry or business. The Application (which is not evidence) merely states that:

23    "Established in 2008, Armory Securities is the investment

24    banking division of Armory Group, LLC, a national investment banking and financial advisory firm with offices in Los Angeles,

25    New York, Chicago, Boston, and Dallas. Armory Securities provides clients with a wide range of financial advisory services

26    from mergers and acquisitions, debt or equity financing, special

27

28    _____
[5] These services are listed in the Application, 4-5 and the Engagement Letter, 1-2.

situations and restructuring, as well as general strategic advisory and transaction support.

Application, 3:20-24.  Nothing is stated about Armory's experience with the logistics industry, or prior experience with the Debtors' business – but to the contrary, the Application states Armory expects to "familiarize itself with the business" as part of its services.  That's contrary to what the Debtors said they were looking for.

b.    **"Assisting the Debtors in evaluating their strategic alternatives"**

> Force 10's services already fill that role.  Specifically, the Force 10 Retention Application provides that "Weiss will assist Debtors in evaluating and implementing strategic and tactical options throughout the Chapter 11 process." Force 10 Retention Application, 3:18-19.

c.    **"Advising and assisting the Debtors in structuring and effecting the <u>financial aspects</u> of a Sale and/or Financing" (emphasis added)**

> Conway and Force 10 are both financial advisors, although only Conway is serving in that official capacity for the Debtors.  Regardless, the Debtors do not need to add another financial advisor to this professional roster.

d.    **"Providing financial advice and assistance to the Debtors in connection with a Sale and/or Financing, identifying potential acquirers and/or investors and, at the Debtors' request, contacting such potential acquirers and/or investors"**

> The first part of this service description refers to "financial advice" again -- Conway's role; the latter part provides for identifying potential acquirers.

e.    **"Assisting the Debtors in preparing a memorandum (with any amendments or supplements thereto, the "Sale Memorandum" in the case of a Sale and a "Confidential Information Memorandum" in the case of a Financing) to be used in soliciting potential acquirers and/or investors…"**

> Likely, one or more of the already retained professionals can assist the Debtors with preparing a memorandum.  The preparation of a memorandum for a case like this is not so complicated that an investment banker is needed to prepare it.

f.    **"Assisting the Debtors in preparing a financial model used for marketing the Debtors"**

> The Conway Retention Application provides that Conway will "[a]ssist the Debtors in … preparation of a liquidation analysis, historical *financial data and projections"* and "[p]repare any additional work product as requested by management and other parties."  Conway Retention Application, 4:21-22; 24.

> As noted above, Force 10 also is capable of providing financial modeling services. <u>Supra</u>, 6:2-3.

g.    **"Identifying and soliciting potential transaction parties"**

> It is unclear how this service is different from the service described in the

6

latter part of section (d).

h.   **"Assisting the Debtors and their other professionals in reviewing and evaluating the terms of any proposed Transaction or other transaction, in responding thereto, and if directed in developing and evaluating alternative proposals for a transaction, whether in connection with a Plan or otherwise"**

➤ Force 10 can provide this service more efficiently.

i.   **"Meeting with the Debtors' Chief Restructuring Officer regularly to provide updates with respect to the proposed Transaction or other transactions or alternative proposals"**

➤ Force 10 can provide this service more efficiently.

j.   **"Assisting the Debtors and/or participating in negotiations with potential acquirers and/or investors"**

➤ Force 10 and/or Conway can provide this service more efficiently.

k.   **"If requested by the Debtors, participating in hearings before the bankruptcy court with respect to the matters upon which Armory Securities has provided advice, including, as relevant, coordinating with the Debtors' counsel with respect to testimony in connection therewith."**

➤ Force 10 and/or Conway can provide this advice and support service more efficiently.

The Application itself, as well as the prior applications to retain other professionals in these cases,[6] demonstrate a risk of duplicity of services among the professionals retained in these cases; to wit, the Application provides that "Armory … will use reasonable efforts to coordinate with the Debtors and other professionals retained in this case to avoid the unnecessary duplication of services."  Application, 5:13-15.  There is no need or benefit to risking further redundancies and inefficiencies and increasing the financial burden to these estates, at the cost of the creditors, by retaining another professional to serve as an investment banker.  If needed, expand the scope of services to be provided by Force 10, who is already familiar with the Debtors and is very capable

---

[6]   The US Trustee filed an objection to the retention of Force 10 on grounds that, among other things, the services to be rendered were duplicative of the services to be rendered by Conway.  See Objection to Application for an Order Authorizing (1) Appointment of Brian Weiss as Chief Restructuring Officer of the Debtors *Nunc Pro Tunc* to May 16, 2019, [Dkt. No. 86] at 8-9.  The Committee similarly raised concerns about the duplcitiy of services among the professionals in its opposition to the Force 10 Retention Application.  See Dkt. No. 88, at 3.

of soliciting interests in the Debtors' business much more efficiently and economically than a new investment banker.  Nothing more than that is warranted in these cases.

### B.    Armory's Proposed Compensation is Not Reasonable and the Application Should be Denied.

By the Application, the Debtors seek to compensate Armory pursuant to section 328(a) of the Bankruptcy Code; not section 330.[7]  Section 328(a) provides that a debtor in possession may, subject to court approval, employ "a professional person under section 327 . . . on any reasonable terms and conditions of employment . . . .  11 U.S.C. § 328(a).  However, unlike section 330 that provides the Court, and other parties in interest, with the benefit of hindsight when approving a professional's fees, once the terms of the professional's retention are approved by the Court under section 328(a), the professional will be paid pursuant to such pre-approved terms unless "such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).  A court "may not conduct a [section] 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under [section] 328." See Friedman Enters. v. B.U.M Int'l Inc. (In re B.U.M. Int'l, Inc.), 229 F.3d 824, 829 (9th Cir. 2000); In re Circle K Corp., 279 F.3d 669, 671 (9th Cir. 2002) (a professional's retention application that unambiguously specifies it seeks approval under § 328 is not subject to review under § 330). Accordingly, the Court must be extra vigilant in ensuring that the reasonableness of the proposed retention has been demonstrated *before* approving such professionals' retention.

Here, Armory's proposed compensation is not reasonable and the Application should be denied.  First, it appears that upon the Court's approval of the Application, Armory may be entitled to a minimum of $200,000 without necessarily providing any services or benefit to these estates.

The Application provides for payment to Armory of a "Monthly Fee" in the amount of $33,333 payable upon Court approval of the engagement and then "thereafter on the one month and

---

[7]    Ohanessian does not dispute that section 328 (rather than section 330) is an appropriate basis for an investment banker's compensation.

two-month anniversary."[8] Engagement Letter, at 3.  However, the Term of the engagement is six

(6) months. Engagement Letter, at 5.  So either (i) the total "Monthly Fee" is equal to approximately

$100,000 (i.e., $33.333 x 3 payments) and compensation is being front loaded with payments only

in the first two months regardless of whether Armory provides services in months 4  through 6, or

(ii) Armory is entitled to $33,333 per month for up to six months (i.e., totaling $200,000), regardless

of whether Armory is successful in bringing any new bidders to the table or can demonstrate it

provided any benefit to the estates and creditors.  The Application is unclear as to the intent and, at

minimum, the Debtors should clarify what is the maximum aggregate Monthly Fees Armory can

be paid under the Engagement Letter and on what terms.  What specifically will Armory be doing

that is worth $33,333 per month to these estates?  It appears that the estates may derive no benefit

and yet Armory would be entitled to be paid somewhere between $100,000 to $200,000.

Also, Armory may be entitled to a minimum $200,000 Transaction Fee just for being

engaged and without demonstrating any benefit to these estates or their creditors.[9]  Specifically, the

engagement provides that:

> a. Armory will receive "[a] fixed fee of $200,000 in the case of a Sale to the Debtors' existing secured lender or any of its affiliates through a credit bid or other Transaction." (Application, 6:4-5);
>
> b. "[I]n the event that the existing secured lender or any of its affiliates provides Financing to the Debtors, Armory Securities fee shall be limited to $200,000 on account of such Financing in lieu of the 2.5%-3.5% identified above and Armory Securities shall be entitled to 4.0% of any additional financing provided by third parties" (Application, 6-7); and
>
> c. "[T]he minimum fee payable to Armory Securities in connection with any Sale and/or Financing shall not be less than $200,000." (Application, 7:9-10).

The secured creditor Hillair is already very involved in these cases and has indicated that it

may credit bid.  If Hillair simply credit bids a di minimis amount and prevails, why should Armory

be entitled to $200,000?  Shouldn't there be a minimum credit amount under which Armory is not

---

[8]  Does this mean these three payments are the only "Monthly Fees" Armory would be entitled to and are capped at $100,000 even if Armory works the full six-month Term?  Even if $100,000 is the minimum fee, and not $200,000, some benefit to the estates should be demonstrated before that payment is made.

[9]  The Engagement Letter notes that the Monthly Fees paid will be credited against any Transaction Fees payable under the agreement.

9

paid a fee since Hillair is already expected to bid regardless of Armory's efforts?   As the Application currently reads, as soon as the Court signs an order approving the Application, in one form or another Armory will be entitled to a minimum of $200,000 without demonstrating any benefit to these estates.  How does that sound reasonable or even make sense?  It does not.

In addition to the $200,000 minimum fee concern, there are some other terms of Armory's engagement that are not reasonable (or at minimum, need to be clarified):

a. To the extent the Transaction Fee is based on a Transaction Value that includes an "earn-out or contingent" payment component, the Debtors should clarify that no fee is earned unless such earn-out or contingent payments are actually received.

b. The Application provides that whether or not any transaction contemplated by the Engagement Letter is proposed or consummated, the Debtors shall "reimburse [Armory] on a monthly basis for its reasonable travel and other reasonable out-of-pocket expenses (including all fees, disbursements and other charges *of counsel to be retained by Armory*)." Application, 7:16-21 (emphasis added).

i. It is unclear what "travel" will be required of Armory, but any travel and other out-of-pocket expenses should be subject to review and approval by the Court, Committee and creditors.

ii. Is Armory also retaining professionals (attorneys) at the cost of the Debtors?  More professional fees at the expense of creditors of these estates?  For what?  The unnecessary and unreasonable professional fees need to be cutoff.

iii. "Such reimbursements shall be made promptly upon submission by Armory Securities of statements for such expenses." Application, 8:21-22.  No oversight or pre-approval?  Armory's attorneys' fees must be subject to review and approval before payment is made by the Debtors.

There is no evidence submitted that supports the amount of these fees.  Armory needs to provide evidence that its fee request is "market."

As discussed above, the professional fees being accrued in these cases are out of proportion to the simple nature of these cases, and the spigot needs to be turned off – or, at least not opened more. The Court should not allow Armory to earn the Transaction Fee at the expense of the Debtors' other stakeholders unless Armory actually plays a meaningful role in securing a recovery (through a sale or refinancing) that would not otherwise be available to unsecured creditors.

If Armory is retained, it should be on terms that will (a) reasonably compensate Armory for services performed for the benefit of the estates and creditors, and (b) properly incentivize Armory to pursue and obtain transactions that will add value to these estates.  The Application fails to accomplish these objectives.

## IV.    <u>RESERVATION OF RIGHTS</u>

Ohanessian expressly reserves its rights to raise any issue properly before the Court at the hearing on the Application as well as any subsequent hearing thereon.  Ohanessian also expressly reserves its right to amend or supplement this Objection, to introduce evidence supporting this Objection at any hearing on the subject matter of this Objection, and to file additional and supplemental objections at the conclusion of discovery on such matters.

## V.    <u>CONCLUSION</u>

For the reasons discussed above, Ohanessian requests that the Court deny the Application and order such other and further relief as is just and proper.

Dated: July 22, 2019                                        RAINES FELDMAN LLP

                                                        By: /s/ Hamid R. Rafatjoo
                                                            Hamid R. Rafatjoo
                                                            Attorneys for Shahan Ohanessian

#48427694v2

# DECLARATION OF HAMID R. RAFATJOO

I, Hamid R. Rafatjoo, hereby declare and state as follows:

1.      I am an attorney admitted to practice law in the State of California and before this Court.  I am a partner of Raines Feldman LLP, counsel to Shahan Ohanessian ("Ohanessian").  I make this Declaration based on facts within my personal knowledge.  If called upon to testify, I would testify to the facts set forth in this Declaration.

2.      I make this Declaration in support of the Objection to Application to Employ Armory Securities, LLC as Investment Banker Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2014-1 (the "Application") [Docket No. 179].  Any term not specifically defined herein shall have the meaning set forth in the Application.

3.      The 13-week cash flow forecast attached as Exhibit 1 to the Court's Order Granting Continued Use of Cash Collateral Pursuant to that Certain Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer, dated July 3, 2019 [Dkt. No. 172], shows that during the 13-week period ending the week of September 6, 2019, these estates are projected to incur over $1.5 million in professional fees, while having a negative cash flow of over $570,000.[10]  A true and correct copy of the 13-week cash flow forecast is attached hereto as Exhibit A.  That list of professionals includes, the Debtors' counsel, Force 10, as CRO, Conway, as financial advisers, Board of Directors, counsel for the secured lender – Hillair (which is expected to charge more than twice in fees than the Committee's counsel), the Committee's counsel and the Committee's professionals.  The professional fee frenzy of $115,000 per week is not sustainable for such a small company and needs to stop – but instead, the Debtors are seeking to add on another professional for hundreds of thousands more in costs.

4.      The services outlined for Armory to provide, not surprisingly, overlap with the services to be provided by Conway and/or Force 10.  More importantly, Force 10 can provide the narrow investment banking type services that are needed here.  Force 10's website notes a variety

---

[10]    The Court should not that even at this expense, the Debtors filed their May monthly operating reports almost 30 days late and the June monthly operating reports are now past due as well.

1   of services it provides, including "investment banking" services.  A true and correct copy of the

2   Force 10's Website home page is attached hereto as Exhibit B. The Force 10 Retention Application

3   expressly provides that "Weiss and Force 10 have substantial experience with providing financial

4   advisory services for entities in chapter 11 including analyzing business operations, *financial*

5   *modeling*, operational analyses, *capital raising*, asset sales, serving in the capacity of financial

6   advisor, and developing reorganization strategies." Force 10 Retention Application, 3:8-10

7   (emphasis added).  The Force 10 Retention Application also provides that Weiss has a customary

8   hourly rate of $595 and "if other Force 10 personnel are required, they will be charged at their

9   customary hourly rates of $225-650 per hour."

10      I declare under penalty of perjury under the laws of the State of California and the United

11  States of America that the foregoing is true and correct.

12      Executed this 22nd day of July, 2019, in Los Angeles, California.

13

14              _____/s/ Hamid R. Rafatjoo_____
                Hamid R. Rafatjoo

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

#48427694v2

# EXHIBIT A

DRAFT

**Scobeez et al**
13-Week Cash Flow Forecast

| Week No. | | Forecast 1 6/7/2019 | Forecast 2 6/14/2019 | Forecast 3 6/21/2019 | Forecast 4 6/28/2019 | Forecast 5 7/5/2019 | Forecast 6 7/12/2019 | Forecast 7 7/19/2019 | Forecast 8 7/26/2019 | Forecast 9 8/2/2019 | Forecast 10 8/9/2019 | Forecast 11 8/16/2019 | Forecast 12 8/23/2019 | Forecast 13 8/30/2019 | Forecast 9/6/2019 | 13-Week Total | Percent of Receipts |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Invoiced | | 945,000 | 945,000 | 945,000 | 945,000 | 945,000 | 1,000,000 | 900,000 | 900,000 | 900,000 | 850,000 | 850,000 | 850,000 | 850,000 | 850,000 | 11,630,000 | |
| Updated Routes | | | | | | | 93,989 | 93,989 | 93,989 | 93,989 | 93,989 | 93,989 | | | | 751,909 | |
| Total Invoiced | | 945,000 | 945,000 | 945,000 | 945,000 | 945,000 | 1,038,989 | 938,989 | 993,989 | 993,989 | 943,989 | 943,989 | 850,000 | 850,000 | 850,000 | 12,381,909 | 100.0% |
| Beginning Cash | | 2,172,173 | 1,741,550 | 1,855,900 | 1,504,000 | 2,104,596 | 1,483,199 | 826,286 | 1,634,382 | 536,357 | 1,438,441 | 2,031,026 | 1,283,665 | 1,437,424 | 1,136,968 | 1,741,550 | |
| Collections | | 880,000 | 905,000 | 945,000 | 945,000 | 945,000 | 945,000 | 945,000 | 1,038,989 | 938,989 | 993,989 | 993,989 | 993,989 | 943,989 | 943,989 | 12,627,920 | 100.0% |
| **Cash Disbursements:** | | | | | | | | | | | | | | | | | |
| Fuel | | 60,000 | 60,000 | 60,000 | 53,660 | 63,660 | 63,660 | 63,660 | 63,660 | 53,660 | 53,660 | 53,660 | 50,000 | 50,000 | 50,000 | 749,279 | 5.9% |
| Payroll & Payroll Expenses | | 996,573 | | | 1,247,545 | | 1,227,545 | | | 1,197,545 | | 1,137,545 | | 1,020,000 | | 6,960,181 | 55.1% |
| Corporate Payroll & Expenses | | 42,250 | 1,130,000 | 65,000 | 42,250 | 42,250 | 42,250 | | | 42,250 | | 42,250 | | 42,250 | | 318,500 | 2.5% |
| Vehicle - Hertz | | | | 90,000 | | | 470,325 | 70,000 | 70,000 | | 550,325 | | 90,000 | | | 1,790,650 | 14.2% |
| Vehicle - Accidents/Tolls/Citations | | 2,500 | 2,500 | | 2,500 | | 2,500 | 2,500 | 2,500 | | 2,500 | | 2,500 | | 2,500 | 15,000 | 0.1% |
| Workers Compensation | | 150,000 | 7,000 | 7,000 | 7,000 | 7,000 | 150,000 | 7,000 | 7,000 | 7,000 | 150,000 | 7,000 | 7,000 | 7,000 | 7,000 | 520,000 | 4.1% |
| Rent & Utilities | | 20,500 | | 20,500 | | | | | 20,500 | | | | | 20,500 | | 61,500 | 0.5% |
| Insurance | | 80,000 | | | 80,000 | | | | 80,000 | | | | | 80,000 | | 240,000 | 1.9% |
| Phones & Service | | 20,000 | | 20,000 | | | 20,000 | | 20,000 | | 20,000 | | | 20,000 | | 100,000 | 0.8% |
| Travel | | | | 7,500 | | 7,500 | | 7,500 | | 7,500 | | 7,500 | | 7,500 | | 52,500 | 0.4% |
| IT Expenses | | 15,000 | 5,000 | | 15,000 | | 5,000 | | 15,000 | | 5,000 | | | 15,000 | | 60,000 | 0.5% |
| Dues & Subscriptions | | 16,650 | | 9,000 | 16,650 | | | | 9,000 | 16,650 | | 9,000 | | 16,650 | | 76,950 | 0.6% |
| Car Wash | | | | 3,000 | | | 3,000 | | 3,000 | | 3,000 | | 3,000 | | | 15,000 | 0.1% |
| Other Expenses | | 10,000 | 10,000 | 10,000 | 18,594 | 18,594 | 18,594 | 18,594 | 18,594 | 18,594 | 18,594 | 10,000 | 10,000 | 10,000 | 10,000 | 198,755 | 1.6% |
| **Total Operating Cash Disbursements** | | 1,270,473 | 750,500 | 1,256,750 | 304,254 | 1,483,199 | 96,754 | 2,002,874 | 306,254 | 1,346,199 | 800,079 | 192,000 | 1,254,295 | 1,268,400 | 11,158,315 | 88.4% |
| **Operating Cash Flow** | | (390,473) | 154,500 | (311,750) | 640,746 | (538,199) | 848,246 | (1,057,874) | 942,234 | (252,211) | 193,909 | 801,989 | (260,307) | (324,411) | 1,469,606 | 11.6% |
| **Financing Cash Flows** | | | | | | | | | | | | | | | | | |
| Debt Principal | | | | | | | | | | 200,000 | | | | | | | 0.0% |
| Debt Interest | | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 20,000 | 40,000 | 40,000 | 40,000 | 40,000 | 520,000 | 4.1% |
| Bank Fees | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 60,000 | 150 | 150 | 150 | 150 | 1,950 | 0.0% |
| **Financing Cash Flows** | | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 521,950 | 4.1% |
| **Restructuring Cash Flows** | | | | | | | | | | | | | | | | | |
| Debtor Counsel | | | | | | 350,000 | | | | 200,000 | | | 130,000 | | 680,000 | 5.4% |
| Debtor CRO | | | | | | 20,000 | | | | 20,000 | | | 20,000 | | 60,000 | 0.5% |
| Debtor Advisor | | | | | | 60,000 | | | | 60,000 | | | 60,000 | | 180,000 | 1.4% |
| Board of Directors (2 Individuals) | | | | | | 5,000 | | | | 5,000 | | | 5,000 | | 15,000 | 0.1% |
| Buchalter | | | | | | 140,000 | | | | 80,000 | | | 50,000 | | 270,000 | 2.1% |
| Committee Counsel | | | | | | 20,000 | | | | 40,000 | | | 50,000 | | 110,000 | 0.9% |
| Committee Professionals | | | | | | 50,000 | | | | 50,000 | | | 50,000 | | 150,000 | 1.2% |
| Post Petition US Trustee Fees | | | | | | 54,961 | | | | | | | | | 54,961 | 0.4% |
| **Restructuring Cash Flows** | | | | | | 699,961 | | | | 455,000 | | | 365,000 | | 1,519,961 | 12.0% |
| **Net Total Cash Flow In / (Out)** | | (430,623) | 114,350 | (351,900) | 600,596 | (1,278,310) | 808,096 | (1,098,024) | 902,084 | 592,584 | (747,361) | 153,759 | 761,839 | (729,561) | (572,305) | -4.5% |
| Cumulative Cash Flow | | | 114,350 | (237,550) | 363,046 | (915,265) | (107,169) | (1,205,193) | (303,109) | 289,475 | (457,885) | (304,126) | 157,256 | (300,457) | (604,583) | (729,561) | (572,305) | |
| Ending Cash Balance | | 1,741,550 | 1,855,900 | 1,504,000 | 2,104,596 | 1,634,382 | 536,357 | 1,438,441 | 2,031,026 | 1,283,665 | 1,437,424 | 1,136,968 | 1,898,806 | 1,169,245 | | |
| **Collateral Package** | | | | | | | | | | | | | | | | | |
| Cash on Hand | | 1,741,550 | 1,855,900 | 1,504,000 | 2,104,596 | 1,634,382 | 536,357 | 1,438,441 | 2,031,026 | 1,283,665 | 1,437,424 | 1,136,968 | 1,898,806 | 1,169,245 | 1,898,806 | 1,169,245 | |
| AR Roll Forward | | 3,640,000 | 3,680,000 | 3,770,000 | 3,790,000 | 3,910,000 | 1,960,000 | 3,920,000 | 3,980,000 | 3,830,000 | 3,780,000 | 3,640,000 | 3,500,000 | 3,410,000 | 3,410,000 | |
| Loan Receivable and Uncategorized Assets | | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | |
| Fixed Assets | | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | |
| Other Assets | | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | |
| **Total Collateral** (1) | | 7,967,077 | 8,121,427 | 7,769,527 | 8,460,123 | 7,171,813 | 8,129,908 | 7,081,884 | 7,943,968 | 8,596,553 | 7,699,192 | 7,802,951 | 7,984,333 | 7,164,772 | | |
| Estimated Outstanding Secured Loan (2) | | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | 11,000,000 | |

(1) Collateral details and amounts are being reviewed by the debtor and its advisors, and is subject to material changes.
(2) Estimated outstanding secured loan balance was provided by Hilltar Capital's counsel and is disputed and currently under review by the debtor and its advisors.

Exhibit A, Page 14

# EXHIBIT B

HOME (/#HOME-SECTION)    OVERVIEW (/#OVERVIEW-SECTION)    SERVICES (/#OUR-SERVICES-SECTION)
HOME (/#HOME-SECTION)    OVERVIEW (/#OVERVIEW-SECTION)    SERVICES (/#OUR-SERVICES-SECTION)
TEAM (/#TEAM-SECTION)    RECORD (/#TRACK-RECORD-SECTION)    NEWSROOM (/#NEWSROOM-SECTION)
TEAM (/#TEAM-SECTION)    RECORD (/#TRACK-RECORD-SECTION)
CONTACT (/#CONTACT-US-SECTION)    DATA ROOMS (HTTPS://FORCE10PARTNERS.SHAREFILE.COM)
NEWSROOM (/#NEWSROOM-SECTION)    CONTACT (/#CONTACT-US-SECTION)
DATA ROOMS (HTTPS://FORCE10PARTNERS.SHAREFILE.COM)

# Look in to the eye of the storm.
# Look out to the sea and the sky.

LEARN MORE



# OVERVIEW

We are an advisory firm specializing in corporate restructuring, challenged businesses, litigation, and other special situations.

We work with the legal community and their clients to create advantage and financial return. Our unique insight is an amalgamation of accounting, finance, strategy, and gamesmanship -- all rooted in years of experience.

After 25 years of working at large firms, we formed Force 1o Partners to do it our way.

Exhibit B, Page 15

# SERVICES

Force 10's deep subject matter expertise and technical financial aptitude is applied to litigation, bankruptcy and insolvency situations in the following roles:

### Corporate Restructuring Services (/corporate-restructuring)

Force 10's professionals have substantial experience and thoroughly understand the Chapter 11 bankruptcy process. We advise clients through complex corporate restructurings, including both in and out-of-bankruptcy court matters. Many of our clients have complex capital structures, cross-collateralization issues, owner/shareholder fiduciary/conflict of interest concerns, and other issues. [Learn More] (/corporate-restructuring)

### Fiduciary Services (/fiduciary-services)

Force 10's breadth of skills and experience with operating businesses, financial discipline, forensic accounting, and litigation support have been widely recognized as an excellent fit for being appointed and serving in fiduciary capacities. Generally, Force 10 is appointed as a fiduciary in situations involving complex litigation, financial disputes, breaches of fiduciary duties, and general supervision and oversight of a business. [Learn More] (/fiduciary-services)

### Forensic Accounting (/forensic-accounting)

Force 10 professionals have an investigative mindset, deep analytical skills, and extensive experience in performing investigative and forensic accounting services. Our clients include boards of directors/special committees, creditors' committees, plaintiff's legal counsel, defendant's legal counsel, and trustees. These services encompass fraud investigation, financial disputes, fraudulent transfers, and the application of complex accounting issues. [Learn More] (/forensic-accounting)

### Turnaround & Crisis Management (/business-turnaround-crisis-management)

Force 10's team works closely with our clients' management teams, board of directors, and investors to develop and implement turnaround plans through significant improvement in financial and operating performance. We have

### Investment Banking (/investment-banking)

Force 10 professionals hail from leading investment banks (Oppenheimer, CIBC World Markets and Jefferies) and have decades of experience advising on mergers, acquisitions, divestitures, and corporate finance for distressed and healthy companies. Our leading

### Digital Forensics (/digital-forensics)

Force 10 is uniquely qualified to tackle digital forensics projects as we not only comprehend the data we are searching for but are also well-versed in the systems and software used to create the data. Our holistic understanding allows us to recreate the target environment in our lab to

Exhibit B, Page 16

extensive experience and know-how to quickly stabilize a crisis. We provide an independent evaluation of the key business drivers, operating infrastructure, competitive landscape, and strategy to reduce losses, increase liquidity, and improve the performance of the business. [Learn More] (/business-turnaround-crisis-management)

shareholders seeking to challenge a transaction 30 years ago. The bankruptcy code is well known. [Learn More] (/investment-banking)

production systems. Although we provide traditional e-discovery, which focuses strictly on documents, emails, and simple applications like Microsoft Office, we can go far beyond that. [Learn More] (/digital-forensics)

**Expert Testimony** (/expert-testimony)

Force 10 professionals are competent and credible expert witnesses with experience testifying about solvency, valuation, interest rates, securities, and accounting, as well as professional duty of care standards including financial advisors and investment bankers. [Learn More] (/expert-testimony)

# OUR TEAM

We apply the intellectual equivalent of mechanical advantage to deliver force amplified results. Learn more about each of us:

## Leadership



HOME (/#HOME-SECTION)    OVERVIEW (/#OVERVIEW-SECTION)    OUR SERVICES (/#OUR-SERVICES-SECTION)

TEAM (/#TEAM-SECTION)    RECORD (/#TRACK-RECORD-SECTION)    NEWSROOM (/#NEWSROOM-SECTION)

CONTACT (/#CONTACT-US-SECTION)    DATA ROOMS (HTTPS://FORCE10PARTNERS.SHAREFILE.COM)

Adam
Meislik

Bio → (/adam-
meislik)

Nicholas
Rubin

Bio → (/nicholas-
rubin)

Brian
Weiss

Bio → (/brian-
weiss)

Jeremy
Rosenthal

Bio → (/jeremy-
rosenthal)

Mike
Vanderley

Bio → (/mike-
vanderley)

## The Rest of the Team

**WESLEY APPELL (HTTPS://WWW.FORCE10PARTNERS.COM/WESLEY-APPELL)**

**LUKE GOETZ (HTTPS://WWW.FORCE10PARTNERS.COM/LUKE-GOETZ)**

**ERIK NATHAN (HTTPS://WWW.FORCE10PARTNERS.COM/ERIK-NATHAN)**

**DAVID COTTRELL (HTTPS://WWW.FORCE10PARTNERS.COM/DAVID-COTTRELL)**

**TYLER GOLDENBERG (HTTPS://WWW.FORCE10PARTNERS.COM/TYLER-GOLDENBERG)**

**ELLEN SPRAGUE (HTTPS://WWW.FORCE10PARTNERS.COM/ELLEN-SPRAGUE)**

**RAJ GAGLANI (HTTPS://WWW.FORCE10PARTNERS.COM/RAJ-GAGLANI)**

**CHAD KURTZ (HTTPS://WWW.FORCE10PARTNERS.COM/CHAD-KURTZ)**

**TODD WUERTZ (HTTPS://WWW.FORCE10PARTNERS.COM/TODD-WUERTZ)**

# INDUSTRIES

Force 10 achieves success in every major industry by pairing financial and technical aptitude with industry expertise.

**SECTOR IN FOCUS: HEALTHCARE (/HEALTHCARE)**

# TRACK RECORD

We extend our track record of success with each new engagement.
The following represents Force 10 professionals' successes:

| Debtor FA | . . . |
| --- | --- |

| Plan Agent/Trustee | . . . |
| --- | --- |

| Creditor FA | . . . |
| --- | --- |

| Investment Banking | . . . |
| --- | --- |

| Fiduciary Roles | . . . |
| --- | --- |

| Valuation Related | . . . |
| --- | --- |

# NEWSROOM

‹  ›

Exhibit B, Page 19

Force 10 Partners is
honored to be awarded
"Financials Deal of the
Year (Under $500 MM)
(/news-
room/2019/3/26/force-
10-partners-is-honored-
to-be-awarded-financials-
deal-of-the-year-under-
500-mm)

Read More → (/news-
room/2019/3/26/force-10-partners-is-
honored-to-be-awarded-financials-
deal-of-the-year-under-500-mm)

MAR 26, 2019

Warrior Custom Golf
Announces
Reorganization: Force 10 is
CRO and Financial Advisor
(/news-
room/2019/6/5/warrior-
custom-golf-announces-
reorganization-force-10-
is-cro-and-financial-
advisor)

Read More → (/news-
room/2019/6/5/warrior-custom-golf-
announces-reorganization-force-10-is-
cro-and-financial-advisor)

MAR 6, 2019

Force 10 Partner Brian
Weiss is appointed
Federal Court Receiver
over Eagan Avenatti!
(/news-
room/2019/2/13/force-
10-partners-brian-weiss-
is-appointed-federal-
court-receiver-over-
eagan-avenatti)

Read More → (/news-
room/2019/2/13/force-10-partners-
brian-weiss-is-appointed-federal-court-
receiver-over-eagan-avenatti)

FEB 13, 2019

# OUR OFFICES

**Orange County, CA**

20341 SW Birch Suite 220
Newport Beach, CA 92660

(949) 357-2360

**Los Angeles, CA**

10100 Venice Blvd.
Culver City CA 90232

(310) 870-3205





Exhibit B, Page 20

HOME (/#HOME-SECTION)   OVERVIEW (/#OVERVIEW-SECTION)   SERVICES (/#OUR-SERVICES-SECTION)

TEAM (/#TEAM-SECTION)   RECORD (/#TRACK-RECORD-SECTION)   NEWSROOM (/#NEWSROOM-SECTION)

CONTACT (/#CONTACT-US-SECTION)   DATA ROOMS (HTTPS://FORCE10PARTNERS.SHAREFILE.COM)

FORCE 10 PARTNERS, 20341 SOUTHWEST BIRCH STREET, SUITE 220, NEWPORT BEACH, CA,

92660   949 357 2360   CONTACT@FORCE10PARTNERS.COM (MAILTO:CONTACT@FORCE10PARTNERS.COM)

© 2019 Force Ten Partners LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1800 Avenue of the Stars. 12th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION TO APPLICATION TO EMPLOY ARMORY SECURITIES, LLC AS INVESTMENT BANKER PURSUANT TO 11 U.S.C. §§ 327(A) AND 328(A), RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL BANKRUPTCY RULE 2014-1; DECLARATION OF HAMID R. RAFATJOO IN SUPPORT THEREOF; AND REQUEST FOR HEARING PURSUANT TO LOCAL BANKRUPTCY RULE 2014-1(b)(5)**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 22, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- John-Patrick M Fritz    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
- Vivian Ho    BKClaimConfirmation@ftb.ca.gov
- Alvin Mar    alvin.mar@usdoj.gov
- Ashley M McDow    amcdow@foley.com, sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
- Stacey A Miller    smiller@tharpe-howell.com
- Shane J Moses    smoses@foley.com
- Akop J Nalbandyan    jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
- Rejoy Nalkara    rejoy.nalkara@americaninfosource.com
- Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
- David L. Neale    dln@lnbyb.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Gregory M Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Eric K Yaeckel    yaeckel@sullivanlawgroupapc.com

☐  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**:

On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) July 22, 2019 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Via FedEx
The Honorable Julia W. Brand
United States Bankruptcy Court
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/22/2019 | Bambi Clark | /s/ Bambi Clark |
|-----------|-------------|-----------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.