Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
         jsimon@foley.com
         smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SCOOBEEZ, et al.[1]<br><br>Debtors and Debtors in Possession. | Case No. 2:19-bk-14989-WB<br>Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br><br>Chapter 11 |
| Affects:<br><br>■ All Debtors<br><br>□ Scoobeez, ONLY<br><br>□ Scoobeez Global, Inc., ONLY<br><br>□ Scoobur LLC, ONLY | **MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF DEBTOR OUTSIDE THE ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, SUBJECT TO HIGHER AND BETTER BIDS; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE; AND (III) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRIAN WEISS**<br><br>Hearing:<br>Date:   October 17, 2019<br>Time:   10:00 a.m.<br>Place:  Courtroom 1375<br>        U.S. Bankruptcy Court<br>        255 East Temple Street<br>        Los Angeles, CA 90012 |

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

**TO THE HONORABLE JULIA BRAND, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on September 19, 2019, Scoobeez, Scoobeez Global, Inc., and Scoobur, LLC, the debtors and debtors in possession (collectively "<u>Debtors</u>") in the above-captioned chapter 11 bankruptcy cases (collectively the "<u>Chapter 11 Cases</u>") filed their motion (the "<u>Sale Motion</u>") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rule of Bankruptcy Procedure 6004-1 (the "<u>Local Rules</u>") for entry of an order (the "<u>Sale Order</u>") (i) authorizing the sale of substantially all the Debtors' assets (the "<u>Sale</u>"), free and clear of liens, claims, interests and encumbrances, including without limitation any successor liability, pursuant to that certain asset purchase agreement as may be modified (the "<u>Stalking Horse Purchase Agreement</u>") to Hillair Capital Advisors LLC (whose address is 118 Alta Street, San Francisco, CA 94133) as the stalking horse Buyer (the "<u>Stalking Horse Bidder</u>"), or to the Winning Bidder on a modified version of asset purchase agreement following a Court-approved auction and bidding process,  (ii) authorizing the assumption and sale of the Assumed Contracts to the Stalking Horse Bidder or the Winning Bidder in connection with the Sale, and (iii) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that subject to higher and better bids through an auction process overseen and approved by this Court, the Stalking Horse Purchase Agreement contemplates a sale of the Assets (which include substantially all the assets of the Debtors, including cash, accounts receivable, intellectual property, inventory and equipment and Assumed Contracts, subject to exclusions as provided in the Stalking Horse Purchase Agreement), to the Stalking Horse Bidder for a credit bid in the initial amount of $9,000,000.00, with the ability for the Stalking Horse Bidder to credit bid up to the full amount of its secured claim ($11,108,000, plus any further interest and fees payable pursuant to, and subject to the terms of, the Cash Collateral Stipulation and Cash Collateral Order) plus the Expense Reimbursement.  The Stalking Horse Bidder's right to Net Working Capital (including, without limitation, cash and accounts receivable) in the purchase will be reduced by a formula in the event its credit bid exceeds $9,000,000.  In the event the Stalking Horse Bidder's offer is overbid by a successful topping bid, the Stalking Horse Purchase Agreement provides for the Stalking Horse Bidder and the

Debtors to equally share the cash (or cash equivalent) proceeds of a sale above $9,000,000 (provided of course, the Stalking Horse Bidder's right to proceeds is capped at the remaining amount of debt owed). The Stalking Horse Bidder has agreed that (a) if it is the Winning Bidder or (b) if it is not the Winning Bidder in the Sale, but it is paid at least the $9,000,000 amount of its minimum credit bid and any amounts due under the sharing process agreed among the parties, then the Stalking Horse Bidder will not have an unsecured claim for any deficiency.   Except as otherwise provided in the Stalking Horse Purchase Agreement, the sale will be free and clear of all liens, claims and encumbrances, including any claims or liens of Queen Funding, LLC, App Group International, LLC, GTR Source, LLC, Premier Business Bank, Peter Rosenthal or the Peter Rosenthal Revocable Trust, HOP Capital, Corporation Service Company as representative, and CT Corporation System as representative.

The Stalking Horse Purchase Agreement also provides for the Debtors to retain and receive working capital assets in accordance with a formula intended to: (i) transfer a functional amount of working capital in the sold business, to incentivize buyers to submit bids; (ii) level the playing field of bidding in the event the Stalking Horse Bidder decides to credit bid more than $9,000,000 and (iii) keep valuable working capital assets in the estate.  Specifically, the Stalking Horse Purchase Agreement provides that (a) the Stalking Horse Bidder will receive the first $1,750,000 of "Net Working Capital" (as defined in the Stalking Horse Purchase Agreement) in the estate as of closing; (b) the Debtors will receive the second $1,750,000 of Net Working Capital and (c) the Debtors and the Stalking Horse Bidder will equally share Net Working Capital above $3,500,000 (provided, in all instances, the Stalking Horse Bidder's right to such assets is capped at the amount of debt owed).

The Stalking Horse Purchase Agreement further provides for the Stalking Horse Bidder to pay transfer taxes arising from the sale and to assume certain liabilities of the Debtors, including any scheduled liens which may be senior to The Stalking Horse Bidder, and postpetition trade accounts payable, accrued expenses, accrued employee compensation, absences, vacation pay and other liabilities arising in the ordinary course of business, including the payment of such amounts from working capital of the Debtors.

**PLEASE TAKE FURTHER NOTICE** that on September 17, 2019, the Court entered an order (the "Bid Procedures Order") approving procedures for the Sale (the "Bid Procedures").   In the Bid

MOTION for SALE of ASSETS
Case No. 2:19-bk-14989-WB

4833-2657-3730.5

Procedures Order, among other things, the Court established a process for the Debtors to solicit higher

and better bids to top the Stalking Horse Bidder's offer in the Stalking Horse Purchase Agreement, and

set an Auction to take place on October 14, 2019 at 10:00 a.m. at the offices of Foley & Lardner LLP,

555 South Flower Street, Suite 3500, Los Angeles, CA 90071, in the event qualifying bids were received

by the bid deadline of October 11, 2019 at 5:00 p.m.  Parties interested in bidding should read the Bid

Procedures Order and Bid Procedures in full, because they contain numerous requirements for potential

bidders.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bid Procedures Order, any and all

objections to the Sale or the relief requested in connection with the Sale in the Sale Motion (a "Sale

Objection"), other than a Supplemental Sale Objection (as defined below), must (a) be in writing; (b)

comply with the Bankruptcy Rules and the Local Rules (c) set forth the specific basis for the Sale

Objection; (d) be filed with the Clerk of the United States Bankruptcy Court for the Central District of

California, 255 East Temple Street, Los Angeles, CA 90012, together with proof of service, on or before

4:00 p.m. (Pacific time) on October 1, 2019 (the "Sale Objection Deadline"); and (e) be served, so as

actually to be received, on or before the Sale Objection Deadline, upon (i) the Debtors, care of their

Chief Restructuring Officer, Brian Weiss, Force 10 Partners LLC, 20341 SW Birch Suite 220, Newport

Beach, CA 92660 (bweiss@force10partners.com); (ii) counsel to the Debtors, Foley & Lardner LLP,

555 S. Flower Street, 33rd Floor, Los Angeles, CA 90071, Attn: Ashley M. McDow

(amcdow@foley.com) and John A. Simon (jsimon@foley.com); (iii) financial advisors to the Debtors,

Conway MacKenzie, Inc., 333 South Hope Street, Suite 3625, Los Angeles, CA  Attn: Michael Flynn

(mflynn@conwaymackenzie.com); (iv) the Debtors' investment banker, Armory Securities LLC, 1230

Rosecrans Avenue, Manhattan Beach, CA 90266, Attn: Eben Perison (eperison@armorysecurities.com)

and Jonathan Brownstein (jbrownstein@armorysecurities.com) ; (v) counsel to the Official Committee

of Unsecured Creditors, Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Blvd., Suite

1700, Los Angeles, CA 90067, Attn: David Neale (dln@lnbyb.com) and John-Patrick Fritz

(jpf@lnbyb.com); and (vi) counsel to Stalking Horse Bidder: Olshan Frome Wolosky LLP, 1325

Avenue of the Americas, New York, NY 10019, Attn: Adam Friedman (afriedman@olshanlaw.com)

and Buchalter, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, CA 90017 Attn: Anthony Napolitano

MOTION FOR SALE OF ASSETS
Case No. 2:19-bk-14989-WB

4833-2657-3730.5

(anapolitano@buchalter.com) and Steven Spector (sspector@buchalter.com) (collectively, the "Objection Notice Parties").  If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing to be held on October 17, 2019 at 10:00 a.m., except in connection with a timely filed Supplemental Sale Objection (as defined below), and this Court may enter the Sale Order without further notice to such party.

PLEASE TAKE FURTHER NOTICE that any and all objections to the conduct of the Auction (but not auction procedures) or the selection of the Winning Bidder or Back-Up Bidder as defined in the Bid Procedures (except for the Stalking Horse Bidder) (a "Supplemental Sale Objection"), shall (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Supplemental Sale Objection; (d) be filed with the Clerk of the United States Bankruptcy Court for the Central District of California, 255 East Temple Street, Los Angeles, CA 90012, together with proof of service, on or before 4:00 p.m. (Pacific time) on October 15, 2019 (the "Supplemental Sale Objection Deadline"); (e) be served, so as actually to be received, on or before the Supplemental Sale Objection Deadline, upon the Objection Notice Parties; and (f) in the case of objections to the Auction, be made only by a Qualified Bidder who attended the Auction.  If a Supplemental Sale Objection is not filed and served on or before the Supplemental Sale Objection Deadline in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Auction or the Sale to the Winning Bidder or Back-Up Bidder, as applicable, and shall not be heard at the Sale Hearing, except in connection with a timely filed Sale Objection, and this Court may enter the Sale Order without further notice to such party.

PLEASE TAKE FURTHER NOTICE that in support of the Sale Motion, the Debtor relies upon the Declaration of Brian Weiss in Support of the Sale Motion (the "Weiss Declaration")*,* the attached Memorandum of Points and Authorities, all pleadings and papers on file with this Court, and such other evidence, oral or documentary, as may be presented to this Court at or prior to the hearing on the Sale Motion.

PLEASE TAKE FURTHER NOTICE that copies of the Stalking Horse Purchase Agreement, the Bid Procedures Order, or the Bid Procedures are available upon request to the undersigned counsel.

MOTION FOR SALE OF ASSETS
Case No. 2:19-bk-14989-WB

4833-2657-3730.5

**WHEREFORE**, for all the foregoing reasons and the reasons stated in the Sale Motion, and such additional reasons as may be advanced at or prior to the hearing on the Sale Motion, the Debtor respectfully requests that this Court grant the relief sought in the Sale Motion and such other relief as is just and proper under the circumstances.

DATED:  September 19, 2019                    **FOLEY & LARDNER LLP**


                                                   _/s/ Shane J. Moses_
                                              Ashley M. McDow (245114)
                                              John A. Simon (*admitted Pro Hac Vice*)
                                              Shane J. Moses (250533)
                                              555 S. Flower St., Suite 3300
                                              Los Angeles, CA 90071
                                              Telephone:  213.972.4500
                                              Email:  amcdow@foley.com
                                                       jsimon@foley.com
                                                       smoses@foley.com

                                              Attorneys for Debtors Scoobeez, Scoobeez Global,
                                              Inc., and Scoobur LLC

4833-2657-3730.5

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.    STATEMENT OF FACTS ............................................................................. 1

    A.    Jurisdiction and Venue. ....................................................................... 1

    B.    The Bankruptcy Cases. ........................................................................ 1

    C.    Background. .......................................................................................... 1

    D.    The Proposed Sale Transaction and Sale Process. ........................... 3

II.   DISCUSSION ............................................................................................. 6

    A.    The Sale is Within the Sound Business Judgment of the Debtors and
        Should be Approved. ........................................................................... 6

    B.    The Sale Satisfies the Requirements of Section 363(f) of the
        Bankruptcy Code ................................................................................ 9

    C.    The Sale is Proposed in Good Faith Under Section 363(m) of the
        Bankruptcy Code ............................................................................... 10

    D.    The Debtors' Assumption and Assignment to the Buyer of Executory
        Contracts and Unexpired Leases Pursuant to the Assumption and
        Assignment Procedures Approved by the Court is Supported by
        Reasonable Business Judgment and Should be Approved ....................... 11

    E.    Relief From the Fourteen Day Waiting Period Under Bankruptcy Rule
        6004(h) and 6006(g) Is Appropriate ............................................. 13

III.  NOTICE .................................................................................................... 14

IV.   CONCLUSION .......................................................................................... 15

4833-2657-3730.5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A.    Jurisdiction and Venue.

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").

### B.    The Bankruptcy Cases.

2.    On April 30, 2019 (the "Petition Date"), the Debtors each filed in the Court a petition for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Cases.  The Debtors intend to continue in possession of their property and to operate their businesses as a debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  On May 20, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases.  On May 13, 2019, the Court entered an order approving the joint administration of the Debtors cases [Dkt. No. 44].

### C.    Background.

3.    The Debtors are a logistics and delivery company headquartered at 3463 Foothill Boulevard, Glendale, California 91214, with operations in Southern California, Illinois and Texas.

4.    The Debtors are a provider of last-mile delivery solutions, providing same-day, next day and two-day door-to-door logistics and delivery services that utilizes vehicles to facilitate fast deliveries of goods from merchant distribution points to consumers.  The Debtors' business generates revenues primarily when a customer pays the Debtors' fees for the delivery of products to consumers.

5.    The Debtors and have grown into a trusted provider of last mile delivery services. The Debtors' largest customer is Amazon.

6.      The Debtors employ approximately 1000 employees, which increases during the holiday season, and are projected to generate in excess of $45 million in annual revenue in 2019.  The Debtors' employees are not subject to a collective bargaining agreement.

7.      Prior to the Petition Date, the Debtors became embroiled in a dispute with their primary secured lender, Hillair Capital Investments, L.P. and its affiliates, and defaulted under their loan documents.  Or about April 22, 2019, Hillair Capital Management LLC ("Hillair") filed a three-count complaint against the Debtors, alleging breach of contract, breach of guaranty and replevin and delivery, which is currently pending as case number 19GDCV00492 in the Superior Court of the State of California, County of Los Angeles, North Central District (the "Los Angeles Case"). On or about April 24, 2019, Hillair filed an Ex Parte Application to Appoint Receiver, Issue Temporary Restraining Order and Set Order to Show Cause Why Receiver Should Not Be Confirmed and Why Preliminary Injunction Should Not Be Issued (the "Ex Parte Application") in the Los Angeles Case.  Hillair alleged, among other things, that the Sellers had suffered large losses prior to the Petition Date, and the Sellers' principal and largest shareholder, Shahan Ohanessian, had engaged in self-dealing and conduct that damaged creditors and shareholders.  The hearing on the Ex Parte Application was set for May 1, 2019 at 1:30 p.m., however, the Debtors commenced the Chapter 11 Cases prior to that hearing.

8.      On June 6, 2019, the Debtors filed the Second Stipulation Between the Debtors, the Committee and Hillair Capital Management for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer [Docket No. 132] (as amended, extended, restated, supplemented or otherwise modified or superseded from time to time in accordance with the Cash Collateral Order, the "Cash Collateral Stipulation").  Any Order approving the Cash Collateral Stipulation as amended, extended, restated, supplemented or otherwise modified or superseded from time to time is referred to herein as the "Cash Collateral Order").  The Debtors are presently operating under an extended budget under the cash collateral order.

9.      On June 12, 2019, the Court entered an order appointing Brian Weiss of Force 10 Partners LLC as the Debtors' Chief Restructuring Officer (the "CRO"), after a restructuring of the Debtors' board of directors.  Based on the aforementioned events and circumstances, amongst others, the

Debtors evaluated and implemented strategies aimed towards preserving and strengthening the Debtors' operations.   The Debtors' business is producing positive cash flow.

10.    Having stabilized their business, the Debtors have embarked on a process to secure a value-maximizing path for the Debtors' business to exit these Chapter 11 Cases.

11.    The Debtors determined, in conjunction with their professionals and in consultation with the Official Committee of Unsecured Creditors, that pursuing a sale or reorganization under Chapter 11 of the Bankruptcy Code provided the best option for the Debtors, their customer base, and their creditor constituents.

12.    On July 8, 2019, the Debtors filed their Application to retain Armory Securities, LLC ("Armory") as their investment banker, to market the Debtors' business for a sale or recapitalization. On September 4, 2019, the Court entered an order approving the retention of Armory [Dkt. No. 302].

13.    Armory is in the midst of the marketing process, including identifying and contacting potentially interested parties (both financial and strategic) who may be interested in acquiring the Debtors' business, signing such parties to non-disclosure agreements, processing and establishing a data room with due diligence information and preparing and circulating marketing materials to potentially interested parties and coordinating with interest parties on their questions and issues regarding the Debtors' assets.

**D.    The Proposed Sale Transaction and Sale Process.**

14.    In order to maximize the value of their business and advance the resolution of the Chapter 11 Cases, the Debtors decided, in their business judgment, after extensive negotiations amongst the Debtors, Hillair and the Committee, to pursue a process pursuant to section 363 of the Bankruptcy Code for the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets"), to a stalking horse purchaser subject to higher and better offers, while preserving a right to seek a recapitalization if revealed as a better alternative during the marketing process.   While the Committee remains open to other restructuring alternatives if they would yield a greater recovery by unsecured creditors, the Committee has agreed to support the Sale.

15.    In connection with the aforementioned negotiations, the Debtors, Hillair and the Committee entered into a Term Sheet among dated as of August 20, 2019 (the "Term Sheet").   In

4833-2657-3730.5

furtherance of the Term Sheet, the Debtors worked with the Committee and Hillair and eventually entered into the executed Asset Purchase Agreement attached as <u>Exhibit A</u> (the "<u>Stalking Horse Purchase Agreement</u>") between the Debtors, as Sellers, and Hillair Capital Advisors LLC, as the stalking horse Buyer (the "<u>Stalking Horse Bidder</u>").   A copy of the Stalking Horse Purchase Agreement was filed with the Court on September 13, 2019 [Dkt. No. 318].

16.    Pursuant to a motion (the "<u>Bid Procedures Motion</u>") filed with the Court on August 29, 2019 [Dkt. No. 293], the Debtors requested Court approval of procedures, deadlines, key dates and notices for the Sale process.  On September 17, 2019, the Court entered an order which, among other things, (i) approved procedures (the "<u>Bid Procedures</u>") for bidding on the Sale and set a potential auction for October 14, 2019 at 10:00 a.m.; (ii) approved procedures for the assumption and assignment of executory contracts and unexpired leases and notice to counterparties to the same (the "<u>Assumption and Assignment Procedures</u>"); (iii) approved notice procedures for the Sale and all relevant deadlines in connection therewith, which established October 1, 2019 as the general deadline for objections to the Sale; and (iv) set the hearing on the Sale (the "<u>Sale Hearing</u>") for October 17, 2019 at 10:00 a.m.

17.    Subject to higher and better bids through the bidding and Auction process approved by this Court in the Bid Procedures Order, the Stalking Horse Purchase Agreement contemplates a sale of the Assets to the Stalking Horse Bidder for a credit bid in the initial amount of $9,000,000.00, with the ability for the Stalking Horse Bidder to credit bid up to the full amount of its secured claim ($11,108,000, plus any further interest and fees payable pursuant to, and subject to the terms of, the Cash Collateral Stipulation and Cash Collateral Order), with the Stalking Horse Purchaser's right to Net Working Capital reduced by a formula in the event its credit bid exceeds $9,000,000, as discussed below.  In the event the Stalking Horse Bidder's offer is overbid by a successful topping bid, the Stalking Horse Purchase Agreement provides for the Stalking Horse Bidder and the Debtors to equally share the cash (or cash equivalent) proceeds of a sale above $9,000,000 (provided of course, the Stalking Horse Bidder's right to proceeds is capped at the remaining amount of debt owed).   The Stalking Horse Bidder has agreed that (a) if it is the Winning Bidder (as defined in the Bid Procedures) or (b) if it is not the Winning Bidder in the Sale, but it is paid at least the $9,000,000 amount of its minimum credit bid and any amounts due

4833-2657-3730.5

under the sharing process agreed among the parties, then the Stalking Horse Bidder will not have an unsecured claim for any deficiency.

18.    The Assets which will be sold are substantially all of the Debtors' assets including, but not limited to: cash, accounts receivable, and other current working assets of the Debtors subject to certain Working Capital Adjustments, inventory, equipment, deposits, intellectual property, assumed executory contracts and unexpired leases, permits, supplies, to the extent such interests are assignable, interests of the Debtors in non-disclosure, non-competition, and non-solicitation agreements, intangible assets, and certain causes of action.

19.    The Agreement contains mutual releases between the Debtors and Hillair, including the release of pre-petition claims of Hillair against the Debtors and certain of their officers, directors, employees, and representatives.

20.    The Stalking Horse Purchase Agreement also provides for the Debtors to retain and receive working capital assets in accordance with a formula intended to: (i) transfer a functional amount of working capital in the sold business, to incentivize buyers to submit bids; (ii) level the playing field of bidding in the event the Stalking Horse Bidder decides to credit bid more than $9,000,000 and (iii) keep valuable working capital assets in the estate.  Specifically, the Stalking Horse Purchase Agreement provides that (a) the Stalking Horse Bidder will receive the first $1,750,000 of "Net Working Capital" (as defined in the Stalking Horse Purchase Agreement) in the estate as of closing; (b) the Debtors will receive the second $1,750,000 of Net Working Capital and (c) the Debtors and the Stalking Horse Bidder will equally share Net Working Capital above $3,500,000 (provided, in all instances, the Stalking Horse Bidder's right to such assets is capped at the amount of debt owed).

21.    The Stalking Horse Purchase Agreement further provides for the Stalking Horse Bidder to assume certain liabilities of the Debtors, including any scheduled liens which may be senior to the Stalking Horse Bidder, and post-petition trade accounts payable, accrued expenses, accrued employee compensation, absences, vacation pay and other liabilities arising in the ordinary course of business.

22.    The Sale is an "as is" sale but includes limited representations, warranties, and covenants as set forth in the Stalking Horse Purchase Agreement provided representations and warranties will expire as of Closing.

MOTION FOR SALE OF ASSETS
Case No. 2:19-bk-14989-WB

4833-2657-3730.5

23.    By this Sale Motion, the Debtors request authority to sell substantially all their Assets, free and clear of all liens, claims, interests and encumbrances, to the Stalking Horse Bidder on the terms of the Stalking Horse Purchase Agreement, or to the Winning Bidder after the Auction process, on the forms of a Modified Agreement submitted pursuant to the Bid Procedures.   The Debtors also request authority to assume and assign Assumed Contracts selected by the buyer in accordance with such sale. The Bid Procedures Order already approved the Assumption and Assignment Procedures and notice procedures for the Sale, and the Debtors intend to follow the provisions of the Bid Procedures Order in that regard.

## II.

## DISCUSSION

### A.    The Sale is Within the Sound Business Judgment of the Debtors and Should be Approved.

24.    Section 363(b)(l) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(l).  Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts throughout the country have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. *See In re Ernst Home Centers, Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997); see also *In re Abbotts Dairies of Pennsylvania, Inc*., 788 F.2d 143 (3d Cir. 1986); see also *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983*); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co*., 124 B.R. 169, 176 (D.D.C. 1991).

25.    The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that

4833-2657-3730.5

adequate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith. *Abbotts Dairies*, 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).  Courts in the Ninth Circuit utilize a substantially similar approach.  *See*, *e.g.*, *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (B.A.P. 9th Cir. 1996) (noting a sale outside the ordinary course of business under Section 363 requires demonstration that the sale has a valid business justification and is proposed in good faith); *see also In re Alaska Fishing Adventure, LLC*, 594 B.R. 883, 887 (Bankr. D. Alaska 2018).  In this case, the Debtors submit that the decision to proceed with the Sale is based upon their sound business judgment and should be approved. A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).  Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case.  *Lionel*, 722 F.2d at 1071; *Montgomery Ward*, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

26.    Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper.  *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code); *In re Cooper Props. Liquidating Trust, Inc*., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities

Motion for Sale of Assets
Case No. 2:19-bk-14989-WB

1    a debtor may have in property for the benefit of its creditors as long as that protection is implemented in

2    a manner consistent with the bankruptcy laws.").

3        27.    The Debtors submit that more than ample business justification exists to sell the

4    Assets to the Stalking Horse Bidder or other Winning Bidder pursuant to the Bid Procedures.  The Debtors

5    believe that, under the circumstances, a targeted and robust sale process is most likely to achieve the

6    highest and best value for the Assets, assuming that a more attractive and feasible recapitalization

7    alternative is not offered during the marketing process.  The Court-approved marketing and bid procedures

8    provide a level playing field and reasonable process and timeline for parties interested in the Debtors'

9    business to offer higher and better bids or recapitalization proposals.  The Debtors' investment bankers,

10   Armory Securities, are scouring the marketplace and contacting parties who are likely to be interested in

11   making competing offers for the business.  By the time of the Bid Deadline, Armory Securities will have

12   been marketing the Debtors' business for sale or recapitalization for 90 days including a 30 day preparation

13   period.    Furthermore, it is critical that the Debtors avoid lingering in bankruptcy in order to give their

14   vendors and customers enhanced confidence in the continuity of the business.  Thus, the relief sought

15   herein is not only reasonable, but necessary, to maximize the value of the Debtors' estates for the benefit

16   of their stakeholders, satisfying the first prong of the *Abbotts Dairies* standard.

17       28.    The Court-approved Bid Procedures, in combination with Armory's marketing

18   efforts, will provide adequate notice to all potentially interested parties, including those who may be

19   interested in purchasing the Assets.  Indeed, the Debtors and their professionals have and will continue to

20   market the Assets, and have solicited the most likely interested competing bidders.  Furthermore, the Court

21   has approved the sale notice procedures as adequate pursuant to the Bid Procedures Order.  The Debtor

22   will also be providing the form notice required under Local Bankruptcy Rule 6007-1(f).    Accordingly,

23   the proposed Sale satisfies the second prong of the *Abbotts Dairies* standard.

24       29.    Moreover, under the circumstances, the Bid Procedures will maximize the value

25   received for the Assets.  The process being pursued by the Debtors, in cooperation with Hillair and the

26   Committee, allows for a timely and efficient auction process, given the circumstances facing the Debtors,

27   while providing bidders with adequate time and information to submit a bid and to perform diligence.

28   Through the Bid Procedures, the Debtors are subjecting the value of the Assets to a market test, permitting

Motion for Sale of Assets
Case No. 2:19-bk-14989-WB

1  prospective purchasers to bid on the Assets in a court-supervised Auction process as set forth in the Bid

2  Procedures.   Accordingly, the Debtor and all parties in interest can be assured that the consideration

3  received for the Assets will be fair and reasonable, and, therefore, the third prong of the *Abbotts Dairies*

4  standard is satisfied.  As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also

5  satisfied here.

6  **B.     The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code**

7  30.     Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all

8  or any part of its property free and clear of any and all liens, claims or interests in such property if: (i)

9  such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or

10  interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater

11  than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute;

12  or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding,

13  to accept a money satisfaction for such interest.  11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v.*

14  *Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code

15  is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one

16  of the subsections is met).  Because the Debtors expects that it will satisfy, at minimum, the first, second,

17  fourth and fifth of these requirements, if not others as well, approving the sale of the Assets free and clear

18  of all adverse interests is warranted.  Furthermore, courts have held that they have the equitable power to

19  authorize sales free and clear of interests that are not specifically covered by section 363(1).  *See, e.g., In*

20  *re Trans World Airlines, Inc.*, 2001 WL 1820325 at *3, 6 (Bankr. D. Del. March 27, 2001); *Volvo White*

21  *Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.*), 75 B.R. 944, 948 (Bankr,

22  N.D. Ohio 1987).

23  31.     At the closing of the Sale, Hillair's senior secured interest will be satisfied, either

24  by the credit bid or by payment if the Stalking Horse Bidder is not the Winning Bidder.  Such arrangement

25  is necessary and appropriate to procure Hillair's consent and to allow a sale free and clear of Hillair's

26  liens.  The arrangement also benefits the other creditors of the estates because Hillair's claim will be

27  satisfied through the Sale.  To the extent there are other purportedly secured claims, (i) the Stalking Horse

28  Bidder has agreed to assume them if they are senior to Hillair, (ii) such claims are junior to the Hillair

MOTION FOR SALE OF ASSETS
Case No. 2:19-bk-14989-WB

4833-2657-3730.5

1    claims, and thus a process exists whereby such claims could be foreclosed out, satisfying section 363(f)

2    or (iii) the Debtors dispute the validity of such liens and therefore, the Sale may proceed because such

3    liens are subject to bona fide disputes.  The Debtors reserve the right to provide additional arguments and

4    authority in respect of any secured claim in the event of an objection to this Sale Motion.

5         **C.      The Sale is Proposed in Good Faith Under Section 363(m) of the Bankruptcy Code**

6              32.      The Debtors requests that the Court find that the Winning Bidder is entitled to the

7    benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.

8    Section 363(m) of the Bankruptcy Code provides, in pertinent part:

9

10             The reversal or modification on appeal of an authorization under
               subsection (b) . . . of this section of a sale... of property does not affect the
11             validity of a sale . , under such authorization to an entity that purchased . .
               . such property in good faith, whether or not such entity knew of the
12             pendency of the appeal, unless such authorization and such sale . . . were
               stayed pending appeal,
13

14   11 U.S.C. § 363(m).

15             33.      Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold

16   pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased

17   assets if the order allowing the sale is reversed on appeal.  By its terms, section 363(m) of the Bankruptcy

18   Code applies to sales of interests in tangible assets, such as the Purchased Assets.

19             34.      The Debtors submit, and will present evidence at the Sale Hearing, if necessary,

20   that as set forth above, the Stalking Horse Purchase Agreement was an intensely negotiated, arm's-length

21   transaction between two separate and independent parties, in which both Hillair and the Debtors acted in

22   good faith. The Committee also participated in the negotiations and has agreed to the general terms of the

23   Stalking Horse Purchase Agreement. Accordingly, the Debtors request that the Court make the finding

24   that Hillair (or the Winning Bidder if not Hillair) has purchased the Assets in good faith within the meaning

25   of section 363(m) of the Bankruptcy Code.

26             35.      In connection with the hearing on the approval of this Sale Motion, the Debtors

27   expect to request, and submit sufficient evidence in support of such request, that the Court find that (i) the

28

1   sale is not avoidable under Section 363(n) or (ii) that there are no damages to be recovered under Section

2   363(n).

3   **D.    The Debtors' Assumption and Assignment to the Buyer of Executory Contracts and**

4   **Unexpired Leases Pursuant to the Assumption and Assignment Procedures**

5   **Approved by the Court is Supported by Reasonable Business Judgment and Should**

6   **Be Approved**

7   36.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in

8   possession "subject to the court's approval, may assume or reject any executory contract or [unexpired]

9   lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's

10  decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable

11  business judgment supports assumption or rejection. *See, e.g., In re Pomona Valley Med. Group, Inc.,* 476

12  F.3d 665, 670 (9th Cir. 2007); *In re American Suzuki Motor Corp.,* 494 B.R. 466, (Bankr. C.D. Cal. 2013);

13  *In re Stable Mews Assoc., Inc*., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). If the debtor's business

14  judgment has been reasonably exercised, a court should approve the assumption or rejection of an

15  unexpired lease or executory contract. *See Group of Institutional Investors v. Chicago M. St. P. & P.R.R.*

16  *Co.*, 318 U.S. 523 (1943); *Sharon Steel Corp*., 872 F.2d 36, 39-40 (3d Cir. 1989). The business judgment

17  test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of

18  the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re*

19  *Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *Stable Mews Assoc*.,

20  41 B.R. at 596). Any more exacting scrutiny would slow the administration of a debtor's estate and

21  increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the

22  estate, and threaten the court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital*

23  *Bank, NA*., 762 F.2d 1303, 1311 (5th Cir. 1985). Moreover, pursuant to section 365(b)(1) of the

24  Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate

25  assurance that the debtor will promptly cure," any default, including compensation for any "actual

26  pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).

27  37.    Once an executory contract is assumed, the trustee or debtor in possession may

28  elect to assign such contract. *See In re Rickel Home Centers, Inc*., 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he

Code generally favors free assignability as a means to maximize the value of the debtor's estate"); *see also In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) (noting purpose of section 365(f) is to assist trustee in realizing the full value of the debtor's assets).

38.    Section 365(o) of the Bankruptcy Code provides that the "trustee may assign an executory contract  . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided."  11 U.S.C. § 365(o)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See In re Great Northwest Recreation Center, Inc.,* 74 B.R. 846, 854 (Bankr. D. Mont. 1987); *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from debtors has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

39.    Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under title 11.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).  Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper.  *See In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  *See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code"); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr, W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity

1   and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their

2   creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

3      40. The Debtors have determined in their business judgment that it is necessary to

4   assume and assign the Assumed Contracts selected by a buyer, to the buyer, in connection with the Sale.

5   Moreover, the Debtors are complying with the Court-approved Assumption and Assignment Procedures,

6   which are, pursuant to the Bid Procedures Order, appropriate and reasonable to provide the Counterparties

7   to Assumed Contracts with adequate notice of the proposed assumption and assignment of their applicable

8   contracts, as well as proposed Cure Amounts, if applicable.  Such Counterparties to the Assumed Contracts

9   have an opportunity to object to such notice.  The Assumption and Assignment Procedures further provide

10  that, in the event an objection is not resolved, the Court will determine related disputed issues (including

11  any adequate assurance of future performance issues).  Accordingly, the Debtors submit that approval of

12  the Debtors' assumption and assignment of Assumed Contracts is appropriate in these cases.

13  **E. Relief From the Fourteen Day Waiting Period Under Bankruptcy Rule 6004(h) and**

14    **6006(g) is Appropriate**

15     41. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease

16  of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders

17  otherwise."  The Debtor request that the Sale Order be effective immediately by providing that the 14 day

18  stay under Bankruptcy Rule 6004(h) is waived.

19     42. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an

20  objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R.

21  Bankr. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as

22  to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, *Collier on*

23  *Bankruptcy* suggests that the stay period should be eliminated to allow a sale or other transaction to close

24  immediately "where there has been no objection to the procedure."  10 *Collier on Bankruptcy* 15th Ed.

25  Rev., 16064.09 (L. King, 15th rev. ed. 1988).  Furthermore, *Collier's* provides that if an objection is filed

26  and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to

27  the amount of time actually necessary to file such appeal.  *Id.*

28

MOTION FOR SALE OF ASSETS
Case No. 2:19-bk-14989-WB

4833-2657-3730.5

43.    As described above, time is of the essence, as the Debtors seek to avoid a decline in the value of the Assets.  Since the closing of the Sale promptly is of critical importance, the Debtors hereby request that the Court waive the 14 day stay periods under Bankruptcy Rule 6004(h) and 6006(d).

### III.

### NOTICE

44.    In accordance with the procedures ordered in the Bid Procedures Order, notice of this Sale Motion will be provided to (a) the Office of the United States Trustee, (b) the creditors appearing on the list filed in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (c) the Debtors' secured creditors and/or their counsel if known, (d) counsel for the Committee of Unsecured Creditors; (e) the Debtors' known equity holders; and (f) all parties who have requested notice in the case under Rule 2002.   In light of the nature of the relief requested, the Debtor submits that no further notice is required or needed under the circumstances.

///

///

///

4833-2657-3730.5

# IV.

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtors respectfully request that this Court enter an Order:

(1) granting the Sale Motion in its entirety;

(2) approving the Debtors' sale of substantially all their assets, and assumption and assignment of Assumed Contracts, to the Stalking Horse bidder or the Winning Bidder after the Auction process; and

(3) granting such other and further relief as the Court deems just and proper.

DATED:  September 19, 2019          **FOLEY & LARDNER LLP**

                                     _/s/ Shane J. Moses_
                                    Ashley M. McDow (245114)
                                    John A. Simon (*admitted Pro Hac Vice*)
                                    Shane J. Moses (250533)
                                    555 S. Flower St., Suite 3300
                                    Los Angeles, CA 90071
                                    Telephone:  213.972.4500
                                    Email: amcdow@foley.com
                                           jsimon@foley.com
                                           smoses@foley.com

                                    Attorneys for Debtors-in-Possession Scoobeez,
                                    Scoobeez Global, Inc. and Scoobur, LLC

4833-2657-3730.5

## DECLARATION OF BRIAN WEISS

I, Brian Weiss, hereby declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

2.      I am a partner and co-founder at Force Ten Partners, LLC ("Force 10"), which has its principal place office at 20341 SW Birch Street, Newport Beach, CA 92660.  I am the Debtors' Chief Restructuring Officer ("CRO").  I am authorized to make the declaration on behalf of the Debtors.

3.      I am familiar with the history, organization, operations and financial condition of the Debtors.  The statements set forth in this declaration are based upon my own personal knowledge and my knowledge of the Debtors' books and records.

4.      I make this declaration in support of the Debtor's Notice of Motion and Motion for Entry of an Order (I) Authorizing the Sale of Substantially All of the Assets of Debtor Outside the Ordinary Course of Business, Free and Clear of All Liens, Claims, Encumbrances and Interests, Subject to Higher and Better Bids; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Such Sale; (III) Granting Related Relief; Memorandum of Points and Authorities (the "Sale Motion") to which this declaration is annexed.[1]

5.      The Debtors are a logistics and delivery company headquartered at 3463 Foothill Boulevard, Glendale, California 91214, with operations in Southern California, Illinois and Texas.

6.      The Debtors are a provider of last-mile delivery solutions, providing same-day, next day and two-day door-to-door logistics and delivery services that utilizes vehicles to facilitate fast deliveries of goods from merchant distribution points to consumers.  The Debtors' business generates revenues from the delivery of products to consumers.

7.      The Debtors and have grown into a trusted provider of last mile delivery services.  The Debtors' largest customer is Amazon.

---

[1]  All capitalized terms used herein shall have the same meaning ascribed in the Sale Motion, unless otherwise stated.

8.      The Debtors employ approximately 1000 employees, which increases during the holiday season, and are projected to generate in excess of $45 million in annual revenue in 2019.  The Debtors' employees are not subject to a collective bargaining agreement.

9.      Prior to the Petition Date, the Debtors became embroiled in a dispute with their primary secured lender, Hillair Capital Investments, L.P. and its affiliates, and defaulted under their loan documents.  Or about April 22, 2019, Hillair filed a three-count complaint against the Debtors, alleging breach of contract, breach of guaranty and replevin and delivery, which is currently pending as case number 19GDCV00492 in the Superior Court of the State of California, County of Los Angeles, North Central District (the "Los Angeles Case").  On or about April 24, 2019, Hillair filed its Ex Parte Application to appoint a receiver in the Los Angeles Case.  Hillair alleged, among other things, that the Sellers had suffered large losses prior to the Petition Date, and the Sellers' principal and largest shareholder, Shahan Ohanessian, had engaged in self-dealing and conduct that damaged creditors and shareholders.  The hearing on the Ex Parte Application was set for May 1, 2019 at 1:30 p.m.  The Debtors commenced the Chapter 11 Cases prior to that hearing.

10.     On June 12, 2019, the Court entered an order appointing me as the Debtors' CRO, after a restructuring of the Debtors' board of directors.  Based on the aforementioned events and circumstances, amongst others, the Debtors evaluated and implemented strategies aimed towards preserving and strengthening the Debtors' operations.  The Debtors' business is producing positive operating cash flow.

11.     The Debtors have embarked on a process to secure a value-maximizing path for the Debtors' business to exit these Chapter 11 Cases.

12.     The Debtors determined, in conjunction with their professionals and in consultation with the Official Committee of Unsecured Creditors, that pursuing a sale or recapitalization under Chapter 11 of the Bankruptcy Code provided the best option for the Debtors, their customer base, and their creditor constituents.

13.     In order to achieve the most effective sale process, the Debtors retained Armory Securities as their investment banker to market the Assets for sale and/or recapitalization.

14.     Armory is in the midst of the marketing process, including identifying and contacting potentially interested parties (both financial and strategic) who may be interested in acquiring the

1  Debtors' business, signing such parties to non-disclosure agreements, processing and establishing a data

2  room with due diligence information and preparing and circulating marketing materials to potentially

3  interested parties and coordinating with interest parties on their questions and issues regarding the

4  Debtors' assets.

5         15.     In order to maximize the value of their business and advance the resolution of the

6  Chapter 11 Cases, the Debtors decided, in their business judgment, after extensive negotiations amongst

7  the Debtors, Hillair and the Committee, to pursue a recapitalization or a process pursuant to section 363

8  of the Bankruptcy Code for the Sale of the Assets to a stalking horse purchaser subject to higher and

9  better offers.

10         16.     In connection with the aforementioned negotiations, the Debtors, Hillair and the

11  Committee entered into the Term Sheet dated as of August 20, 2019.  In furtherance of the Term Sheet,

12  the Debtors have continued to work with the Committee and Hillair towards a stalking horse purchase

13  agreement, which has resulted in the executed Stalking Horse Purchase Agreement between the Debtors,

14  as Sellers, and Hillair, as the stalking horse Buyer, a copied of which is attached as Exhibit A to the

15  Motion.

16         17.     In an order entered on September 17, 2019 (the "Bid Procedures Order"), the Court

17  approved bidding procedures for the sale of substantially all the Debtors' assets to the Stalking Horse

18  Bidder, subject to higher and better bids to be solicited pursuant to the Bid Procedures, as defined in and

19  approved by the Bid Procedures Order, including an auction (the "Auction") if more than one Qualified

20  Bid is received.

21         18.     I believe that, under the circumstances, a targeted and robust sale process is most likely to

22  achieve the highest and best value for the Assets, assuming that a more attractive and feasible

23  recapitalization alternative is not offered during the marketing process.  The Court-approved marketing

24  and bid procedures provide a level playing field and reasonable process and timeline for parties

25  interested in the Debtors' business to offer higher and better bids or recapitalization proposals.   The

26  Debtors' investment bankers, Armory Securities, are scouring the marketplace and contacting parties

27  who are likely to be interested in making competing offers for the business.  By the time of the Bid

28  Deadline, Armory Securities will have been marketing the Debtors' business for sale or recapitalization

1

for 90 days including a 30 day preparation period.   Furthermore, I believe it is critical that the Debtors avoid lingering in bankruptcy in order to give their vendors and customers enhanced confidence in the continuity of the business.  Thus, I believe the relief sought in the Sale Motion is reasonable and necessary to maximize the value of the Debtors' estates for the benefit of their stakeholders.

19.    I believe that the Sale with the Court-approved Bidding Procedures will maximize the value of the Debtors' assets by market testing them at the Auction and through the ensuing Sale Hearing. Such procedures will increase the likelihood that the Debtors' stakeholders will receive the greatest possible consideration for the assets because they will ensure a competitive and fair bidding process.

20.    I believe the Bidding Procedures will promote active bidding from seriously interested parties and will dispel any doubt as to the highest or otherwise best offer reasonably available for the Debtors' assets.  In particular, the proposed Bidding Procedures allow the Debtors to conduct the auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction.

21.    For the foregoing reasons, the Debtors have determined to pursue a sale (including assumption and assignment of executory contracts and unexpired leases selected by the buyer) to the Stalking Horse Bidder, on the terms of the Stalking Horse Purchase Agreement, or to the Winning Bidder under a modified version of such agreement in accordance with the Court-approved Bid Procedures, which the Debtors determine is higher and better for the estate.  The Debtors believe that the Sale, including the terms of the Sale and the Sale process, will maximize value and is in the best interests of the Debtors, their respective estates and stakeholders.

22.    The Sale negotiations among the Debtors, Hillair and the Committee have been extensive, at arms-length, and in good faith, and have been carried out over a period of months. Moreover, the price ultimately to be paid by the Stalking Horse Bidder or another buyer will be subject to a market test and thus will be fair and reasonable, supporting the good faith of the process.

23.    Moreover, to maximize value, the Debtors believe that a Sale should be closed quickly upon approval, to meet the needs of customers during the holiday season and because it is a condition of the Stalking Horse Purchase Agreement.  Therefore, the Debtors have requested in the Sale Motion a waiver of the waiting periods under Federal Rules of Bankruptcy Procedure 6004 and 6006.

24.    For all the reasons set forth above and in the Sale Motion, I believe that entry of an order granting the Sale Motion and approving the Sale is in the best interests of the estates and their creditors.

Dated: September 19, 2019

_____

Brian Weiss

DECLARATION OF B. WEISS ISO MOTION FOR SALE OF ASSETS

4816-4377-8214.2

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled (*specify*):
**MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF DEBTOR OUTSIDE THE ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, SUBJECT TO HIGHER AND BETTER BIDS; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE; AND (III) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRIAN WEISS**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____9/19/2019___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Julia W. Brand
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/19/2019 | Shane J. Moses | /s/ Shane J. Moses |
|-----------|----------------|--------------------|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
4833-2657-3730.5

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **John-Patrick M Fritz**    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
- **Riebert Sterling Henderson**    shenderson@gibbsgiden.com
- **Vivian Ho**    BKClaimConfirmation@ftb.ca.gov
- **Alvin Mar**    alvin.mar@usdoj.gov
- **Ashley M McDow**    amcdow@foley.com,
  sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
- **Stacey A Miller**    smiller@tharpe-howell.com
- **Kevin H Morse**    kmorse@clarkhill.com, blambert@clarkhill.com
- **Shane J Moses**    smoses@foley.com
- **Akop J Nalbandyan**    jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
- **Rejoy Nalkara**    rejoy.nalkara@americaninfosource.com
- **Anthony J Napolitano**    anapolitano@buchalter.com,
  IFS_filing@buchalter.com;salarcon@buchalter.com
- **David L. Neale**    dln@lnbyb.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- **Gregory M Salvato**    gsalvato@salvatolawoffices.com,
  calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- **Jeffrey S Shinbrot**    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
- **Steven M Spector**    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Eric K Yaeckel**    yaeckel@sullivanlawgroupapc.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
4833-2657-3730.5

**F 9013-3.1.PROOF.SERVICE**