Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
      jsimon@foley.com
      smoses@foley.com

Attorneys for Debtors and Debtors in Possession, SCOOBEEZ, SCOOBEEZ GLOBAL, INC., and SCOOBUR, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>SCOOBEEZ, et al.[1]<br><br>    Debtors and Debtors in Possession.<br><br>SCOOBEEZ, INC.,<br>                            Plaintiff,<br>v.<br><br>AMAZON LOGISTICS, INC.,<br>                            Defendant. | CASE NO. 2:19-bk-14989-WB<br>Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br><br>CHAPTER 11<br><br>ADVERSARY NO.<br><br>**COMPLAINT FOR:**<br><br>**1. VIOLATION OF THE AUTOMATIC STAY [11 U.S.C. § 362];**<br>**2. DECLARATORY JUDGMENT;**<br>**3. INJUNCTIVE RELIEF; AND**<br>**4. BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING** |

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

4847-4803-5755.2

Plaintiff Scoobeez, Inc., one of the debtors and debtors-in-possession (the "Scoobeez" or "Plaintiff") in the above-captioned bankruptcy case (the "Bankruptcy Case"), by and through its undersigned counsel, for its Complaint against defendant Amazon Logistics, Inc. (the "Defendant" or "Amazon"), represents and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to sections 157 and 1334 of title 28 of the United States Code ("Title 28").

2. This proceeding is a core proceeding pursuant to sections 157(b)(2) (A) and (O) of Title 28.

3. Venue in this Court is proper pursuant to sections 1408 and 1409 of Title 28.

4. The Plaintiff consents, to the extent such consent is necessary, to the entry of final orders and judgments by this Court on the core matters and on non-core matters, if any.

## PARTIES

5. Plaintiff, Scoobeez, Inc., is a California corporation with its principal place of business in Glendale, California, and operations in Southern California, Illinois, and Texas.

6. Scoobeez, Scoobeez Global, Inc. and Scoobur, LLC (collectively, the "Debtors"), are the jointly administered debtors and debtor-in-possession in the Bankruptcy Case.

7. Defendant Amazon Logistics, Inc., is a Delaware corporation with its principal place of business in Seattle, Washington, and operations in all fifty states.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

8. The Debtors are a logistics and delivery company that provides logistics and delivery services to Amazon, with operations in Southern California, Illinois and Texas.

9. The Debtors provide "last-mile" delivery solutions, delivering goods by vehicle from merchant distribution points to consumers. These delivery solutions include same-day, next day, and two-day delivery to Amazon customers.

10. The Debtors employ approximately 1000 employees, with a seasonal increase during the holidays.

11. On April 30, 2019 (the "Petition Date"), the Debtors each filed a petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Cases. The Debtors continue in possession of their property and operate their businesses as a debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

12. On May 13, 2019, the Court entered an order approving the joint administration of the Debtors' cases [Bankr. Docket. No. 44]. On May 20, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases.

13. On June 12, 2019, the Court entered an order appointing Brian Weiss of Force 10 Partners LLC as the Debtors' Chief Restructuring Officer (the "CRO"), after a restructuring of the Debtors' board of directors.

14. The Debtors evaluated and implemented strategies aimed towards preserving and strengthening the Debtors' operations. The Debtors' business is producing positive cash flow. Having stabilized their business, the Debtors embarked on a process to secure a value-maximizing path for the Debtors' business to exit these Chapter 11 Cases.

15. The Debtors determined, in conjunction with their professionals and in consultation with the Committee, that pursuing a sale or reorganization under Chapter 11 of the Bankruptcy Code provided the best option for the Debtors, their customer base, and their creditor constituents. In connection with this, the Debtors employed Armory Securities, LLC ("Armory") as their investment banker, to market the Debtors' business for a sale or recapitalization.

16. In order to maximize the value of their business and advance the resolution of the Chapter 11 Cases, the Debtors decided, in their business judgment, after extensive negotiations amongst the Debtors, Hillair and the Committee, to pursue a process pursuant to section 363 of the Bankruptcy Code for the sale (the "Sale") of substantially all of the Debtors' assets to Hillair as a stalking horse purchaser subject to higher and better offers, while preserving a right to seek a recapitalization if revealed as a better alternative during the marketing process. The Committee supported the Sale.

17. On August 29, 2019, the Debtors filed a motion for approval for sale and bidding procedures in connection with the Sale process [Bankr. Docket No. 293] (the "Bid Procedures Order"). The Court approved the procedures by an ordered entered on September 17, 2019 [Bankr. Docket No. 321]. On September 19, 2019, the Debtors filed their motion for approval of the Sale.

18. Pursuant to the Bid Procedures Order, the deadline for oppositions to the Sale, or to assumption and assignment of contracts in connection with the Sale, was October 1, 2019. Only three oppositions were filed. Two were an opposition to the Sale filed by the former principals of the Debtors, the Ohanessians, together with a joinder by two other shareholders.

19. The third was an objection filed by Amazon to the assumption and assignment of the Amazon Contract in connection with the Sale [Docket No. 349] (the "Assignment Objection"). The Debtors timely filed their reply to the Assignment Objection [Bankr. Docket No. 366] (the "Reply to Amazon Objection"). The hearing on the Sale was originally set for October 17, 2019, but has been continued to November 7, 2019.

20. Amazon is the Debtors' only customer. Substantially all of the Debtors' revenue derives from payments from Amazon for deliveries from Amazon distribution points to Amazon's customers.

21. The Debtors' contract with Amazon (the "Amazon Contract") is made up of the Delivery Provider Terms of Service (the "Terms of Service"), which provides the overarching terms of the contract, and the Delivery Provider Terms of Service Work Order (as amended, the "Work Order"), which provides specific locations and pricing terms.[2]

22. The Work Order has been updated by amendment eighteen times, to update pricing and distribution points. The Terms specify that they are "a legally binding agreement between the applicable Amazon Contracting Party or any of its Affliates" and the Debtors.

23. Pursuant to the Amazon Contract, Amazon pays Scoobeez based on weekly invoices, based on the rates in the current Work Order. See Terms, § 3.a, 4. Amazon pays all

---

[2] Copies of the Amazon Contract documents are attached to Amazon's proof of claim in the Bankruptcy Case.

undisputed amounts within 30 days of receipt of the invoice. Any substantial change in volume or work would therefore have a rapid and direct impact on revenue.

24.  As described above, the Work Order provides the distribution points that Scoobeez will pick up packages from. On a weekly basis, Amazon sends specific route assignments ("Routes") to Scoobeez. Payments under the Amazon Contract are based on the Routes served, with specific pricing per Route as provided in the Work Order.

25.  Amazon has provided a reliable work flow to Scoobeez over the years. Although there is some seasonal variability, and Scoobeez model is designed to scale with that variability, Scoobeez has relied on a substantial value of Routes on a consistent basis, and employees more than 1,000 employees based on that work.

26.  Scoobeez has seen a consistent yearly volume that has increased over time.

27.  In 2019, overall Routes have been higher than in 2018 and 2017, but whereas Scoobeez experienced an expected seasonal increase in Routes in October in prior years, Routes have taken a sharp downturn in the past two months.

28.  In other words, Amazon is already cutting back Scoobeez's work under the Amazon Contract.

29.  Amazon has now precipitously decided to terminate its contractual relationship with Scoobeez.  This development has occurred suddenly and unexpectedly.

30.  Prior to the Debtors filing the Sale Motion, Amazon had not expressed any intention to cease or reduce business with Scoobeez. Rather, Amazon knowingly allowed the Debtors to proceed with a sale process that was based, at least in part, on an expectation of ongoing business with Amazon.

31.  Amazon finally raised an objection only when faced with a deadline to object to assumption of their contract.  Amazon filed its Assignment Objection on October 1, 2019. Even in the Assignment Objection, Amazon did not indicate or acknowledge that it was categorically unwilling to do business with the Debtors going forward.

32.  After filing the Assignment Objection, however, Amazon has made it clear that it intends to reduce or eliminate Routes assigned to Scoobeez, regardless of whether a sale to

Hillair is approved. This has been communicated both in telephone calls between counsel and representatives of Scoobeez and Amazon, and in writing.

33. On October 7, 2019, representatives of the Debtors and Hillair participated in a telephone call with Amazon's representatives. During that call, Amazon's representatives clearly and expressly stated that they did not intend to do business with Scoobeez beyond a brief transition period, and would begin reducing Routes assigned to Scoobeez. Amazon's representative also expressly stated that Amazon would not consent to do business with Hillair or any other buyer of the Scoobeez assets, again beyond a potential brief transition period.

34. On the October 7, 2019, telephone call, Amazon made it clear that its decision to terminate the Debtors' contract with Amazon was tied to what it viewed as pre-petition defaults by Scoobeez. Amazon's representative cited, as the sole reason provided for its decision to terminate the relationship, that Amazon felt that Scoobeez had not adequately fulfilled its duties to defend and indemnify Amazon from third party claims.

35. The Debtors dispute this claim, as discussed in their Reply to Amazon Objection. Regardless, the essential point here is that ***Amazon expressly stated that its reason for terminating its relationship with Scoobeez was its belief that Scoobeez had defaulted pre-petition on indemnity obligations under the Amazon Contract***.

36. On October 16, 2019, counsel for Amazon sent an email to counsel for Hillair, on which Debtors' counsel was copied, expressly spelling out Amazon's position.

37. Among other things, the October 16 email stated that: "Amazon will not continue to do business with Scoobeez, Hillair or a Hillair "Newco" for anything other than a transition period ending on January 6, 2020." The email went on to stay a timeline on which Amazon intended to communicate its decision to drivers, and then terminate the Amazon Contract. While the email suggested a separate agreement, with a modest separation payment by Amazon, it specifically stated that Amazon would proceed on the same timeline regardless of any agreement with the Debtors or Hillair. Amazon also expressly stated that it would begin reducing Routes if a sale is approved, and did not provide any assurance that it would not otherwise reduce Routes under any circumstance.

-5-                                COMPLAINT

38. Further, and even more alarmingly, Amazon has expressly stated that it intends to poach the Debtors' employees. During the October 7, 2019 call with Amazon business personnel, when the Debtors explained the positive scores the Debtors' employees were achieving in carrying out the Debtors' work for Amazon, Amazon's business representative said they agreed and in fact as such Amazon wanted to arrange for Amazon's other delivery service providers to hire the Debtors' employees. To effect this poaching, the bullet points in Amazon's October 16 email outlining Amazon's plan indicates that starting on October 25, 2019, Amazon will "provide drivers with information on how they can contact other Delivery Service Partners if they are interested in applying for employment with other companies."

39. While this is set forth a part of Amazon's proposal for a separation agreement, Amazon is clear that this is its plan with or without the Debtors' agreement. The October 16 email states that:

> Assuming that the sale is approved on Oct. 17 and that the transaction closes within a few days thereafter, **Amazon will still operate on the same timeline as laid out above in the 3rd bullet point regarding communication to drivers**, hopefully with the buyer's cooperation to ensure consistent, timely communication to drivers at all stations. **If Amazon does not have the buyer's cooperation, Amazon is still prepared to move forward on the same timeline as laid out above**.

40. Amazon's decision cannot be characterized as the result of any concerns with performance. Scoobeez receives weekly scorecards from Amazon. These have remained very good throughout 2019, with no material decrease in performance during the bankruptcy case.

41. In fact, the most recent scorecards extremely high marks across the board. Copies of these most recent scorecards are attached as Exhibit B to the Declaration of Scott Sheikh. Further, on the October 7 telephone call Amazon's representatives specifically stated that Amazon's decision what not based on any issues with Scoobeez's performance.

## FIRST CLAIM FOR RELEIF

### (Violation of the Automatic Stay 362)

42. The Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

43. The Amazon Contract is property of the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 541.

44. The Defendant has stated a specific intent to take actions in violation of the automatic stay, including but not limited to (1) terminating the Amazon Contract, (3) functionally termination the Amazon Contract by eliminating Routes, and (3) directly interfering with the Debtors employees by soliciting them to move from Scoobeez to Amazon or competing delivery service providers.

45. The Defendant has begun its planned actions in violation of the automatic stay by reduced Routes during October, in contrast to the historical and expected pattern of increased Routes.

46. The Plaintiff is informed and believes, based on specific communication from Amazon and its attorneys that Amazon intends to begin taking the aforementioned actions on October 25, 2019.

47. At the time that the Defendant took the aforementioned actions, the automatic stay was in effect.

48. At the time the Defendant took the aforementioned actions, the Defendant was aware of the pendency of the Bankruptcy Case and that the Amazon Contract constituted an asset of the bankruptcy estate.

49. The Plaintiff is informed and believes and based thereon alleges that the Defendant took and is continuing to take the aforementioned action willfully.

50. The Defendant took the aforementioned actions without seeking or obtaining relief from the automatic stay from Plaintiff via stipulation or Court via motion.

51. As a direct result of the Defendant's violations of the automatic stay, the Plaintiff has already incurred substantial administrative expenses and suffered other damages in an

amount to be proven at trial, and will continue to suffer damages in an amount to be proven at trial.

///

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment)

52. The Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

53. An actual and present controversy now exists between the Plaintiff and the Defendant herein pertaining to the applicability of the automatic stay to the Amazon Contract. The Plaintiff contends that the automatic stay precludes the Defendant from taking actions to exercise control over the Plaintiff's rights under the Amazon Contract and other property of the estate, including, without limitation, terminating the Amazon Contract, functionally termination the Amazon Contract through reducing Routes, threatening the unilateral termination of the Contract or reduction of Routes, and/or interfering with Scoobeez employees. The Defendant contends that it has the right to unilaterally take all of the above actions without relief from the automatic stay.

54. Based on the aforementioned pending disputes regarding the applicability of 11 U.S.C. § 362, the Plaintiff is entitled to a declaratory judgment regarding these matters.

## THIRD CLAIM FOR RELIEF

### (Injunction Pursuant to 11 U.S.C. §§ 105(a) and 362, Fed. R. Bankr. P. 7065)

55. The Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

56. The Defendant has unambiguously threatened to take actions, without obtaining relief from the automatic stay, including but not limited to (1) terminating the Amazon Contract, (3) functionally termination the Amazon Contract by eliminating Routes, and (3) directly interfering with the Debtors employees by soliciting them to move from Scoobeez to Amazon or competing delivery service providers.

57. Taking the aforementioned actions without obtaining relief from the automatic stay would constitute a violation of the automatic stay.

58. Taking any of the aforementioned actions would result in catastrophic and irreparable injury to the Debtors' estates, for the reasons set forth above. This damage includes, but is not limited to, eliminating the Debtors' sole source of revenue, causing the Debtors to be unable to pay their employees, and eliminating any reasonable likelihood of rehabilitation of the Debtors through reorganization or a sale that maximizes value to creditors.

59. The public interest will be served by the issuance of an injunction as it will advance the purposes of bankruptcy and promote the Debtor's successful reorganization, or a meaningful sale.

60. Amazon will suffer no harm, or only minimal harm from issuance of an injunction, as the effect will only be to continue to provide Routes at historical levels to a delivery service provider that Amazon itself continues to rank as providing excellent service.

61. The Debtor has no adequate remedy at law.

62. The Plaintiff is therefore entitled to an injunction pursuant to 11 U.S.C. § 105(a) and the principals of equity prohibiting the Defendant from taking actions in violation of the automatic stay.

### FOURTH CLAIM FOR RELIEF

### (Breach of the Duty of Good Faith and Fair Dealing)

63. The Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as though fully set forth herein.

64. The Amazon Contract provides the Defendant with discretion to, among other things, determine the number of delivery Routes provided to the Plaintiff on a daily basis. In additional to controlling the revenue to the Debtors, this exposes the Debtors to potential payment obligations for Routes that the Debtors are assigned but are unable to fulfill.

65. The implied duty of good faith and fair dealing requires the Defendant to act with good faith and deal fairly with the Plaintiff as its contract counterparty in setting Routes.

66. During the past month, the Defendant has ceased to provide consistent advance

1  notice of Routes. Instead, on a given day, Routes for each distribution point have varied
2  substantially from those communicated to Scoobeez in rolling monthly or weekly estimates.
3  This results in either Scoobeez having to pay drivers who are not needed, if the Routes are less
4  than previously communicated, or potentially having to pay Amazon fees for not being able to
5  deliver all Routes, if the Routes on a given day are more than previously communicated. This
6  is a change from the long course of conduct prior to the past month. These acts are in breach of
7  the Defendant's duty of good faith and fair dealing.

8       67.    The Defendant has breached the duty of good faith and fair dealing in reducing
9  Routes arbitrarily, or based on pre-petition defaults in violation of the Bankruptcy Code, and in
10  contravention of established patterns of business and practice between the parties.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment against the Defendant as follows:

A.    for an injunction pursuant to sections 105(a) and 362 of the Bankruptcy Code and in accordance with Rule 7065 of the Bankruptcy Rules prohibited Amazon from (i) terminating the Amazon Contract without relief from the automatic stay, (ii) reducing Routes from current seasonally adjusted levels, and (iii) soliciting employees of the Debtors for employment at Amazon or at other employers;

B.    for declaratory relief that termination of the Amazon Contract, elimination of Routes under the Amazon Contract, or any attempts to solicited employees of the Debtors for jobs at Amazon or at other employers would be a violation of the automatic stay;

C.    for damages in an amount to be proven at trial;

D.    for costs and attorneys' fees; and

///
///
///

-10-    COMPLAINT

4847-4803-5755.2

E.  for such other and further legal and equitable relief as this Court deems just and proper.

DATED: October 25, 2019    **FOLEY & LARDNER LLP**

*/s/ Shane J. Moses*
Shane J. Moses

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)

Attorneys for Debtors SCOOBEEZ, SCOOBEEZ GLOBAL, INC., and SCOOBUR, LLC

| | |
|---|---|
| Filename: | Scoobeez v. Amazon Complaint 4847-4803-5755 v.2.docx |
| Directory: | \\foleylaw.com\userdata\lad_home\25318\UserProfile\My Documents |
| Template: | C:\ProgramData\Esquire Innovations\iCreate\iTemplates\iPleading\Bankruptcy Courts\California Bankruptcy.icex |
| Title: | |
| Subject: | |
| Author: | Kristen Theologus |
| Keywords: | |
| Comments: | |
| Creation Date: | 10/25/2019 2:50:00 PM |
| Change Number: | 4 |
| Last Saved On: | 10/25/2019 3:18:00 PM |
| Last Saved By: | Moses, Shane J. |
| Total Editing Time: | 16 Minutes |
| Last Printed On: | 10/25/2019 3:49:00 PM |

As of Last Complete Printing
    Number of Pages:    12
    Number of Words:    2,507 (approx.)
    Number of Characters:    18,860 (approx.)