1    MORGAN, LEWIS & BOCKIUS LLP
      Richard W. Esterkin, SBN 70769
2    richard.esterkin@morganlewis.com
      300 S Grand Ave Fl 22
3    Los Angeles CA 90071-3132
      Tel:     (213) 612-2500
4    Fax:     (213) 612-2501

5    Attorneys for
      Amazon Logistics, Inc.

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **LOS ANGELES DIVISION**

11

12   **In re:**                              | Case No. 2:19-bk-14989-WB
                                              | Jointly Administered:
13       **SCOOBEEZ, et al.[1],**            | 2:19-bk-14991-WB, and 2:19-bk-14997-WB

14                                            | Chapter 11
             **Debtors and Debtors in**
15           **Possession.**                 | **AMAZON LOGISTICS, INC.'S NOTICE
                                              | OF MOTION AND MOTION FOR AN
16                                            | ORDER:  (A) DETERMINING THAT
                                              | THE AUTOMATIC STAY DOES NOT
17   Affects:                                 | REQUIRE AMAZON TO UTILIZE
      ■ All Debtors                           | DEBTOR'S SERVICES, AND (B)
18    □ Scoobeez, ONLY                        | MODIFYING THE AUTOMATIC STAY;
      □ Scoobeez Global, Inc., ONLY           | MEMORANDUM OF POINTS AND
19    □ Scoobur LLC, ONLY                     | AUTHORITIES AND REQUEST TO
                                              | TAKE JUDICIAL NOTICE IN SUPPORT
20                                            | THEREOF**

21                                            | Date:        November 19, 2019
                                              | Time:        10:00 a.m.
22                                            | Dept.:       United States Bankruptcy Court
                                              |              Edward Roybal Federal Building
23                                            |              255 E Temple St., Ctrm 1375
                                              |              Los Angeles CA 90012
24
                                              | Judge:  The Hon. Julia W. Brand
25

26

27   _____
      [1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows:
28    Scoobeez (6339); Scoobeez Global, Inc. (9779); and, Scoobur, LLC (0343).  The Debtors' address is 3463
      Foothill Boulevard, in Glendale, California 91214.

1

## MOTION

2          Amazon Logistics, Inc. ("Amazon") hereby moves the Court for the entry of an order:  (a)

3     determining that the automatic stay does not require Amazon to utilize the Debtor's services; (b)

4     granting it relief from the automatic stay in the event the Court determines that the automatic stay

5     requires Amazon to utilize the Debtors' services; and (c) granting it relief from the stay to

6     terminate its contract with the Debtor.[2]

7     Dated: October 28, 2019                    MORGAN, LEWIS & BOCKIUS LLP

8

9                                                By:   /s/ Richard W. Esterkin
                                                        Richard W. Esterkin
10                                               Attorneys for Amazon Logistics, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
   COSTA MESA

---

[2]    This motion is not utilizing any of the Court's mandatory relief from stay forms as those forms do not apply to
the form of relief being sought in this motion.

- 2 -

DB2/ 37680163.4

## MEMORANDUM OF POINTS AND AUTHORITIES

Amazon Logistics, Inc. ("Amazon") respectfully submits the following Memorandum of Points and Authorities in support of the instant motion:

## I.
## INTRODUCTION

This motion seeks an order: (a) that the automatic stay does not compel Amazon to provide the debtor, Scoobeez, Inc. ("Scoobeez"), with any particular volume of business, (b) if the Court concludes that the automatic stay applies, for relief from the stay and (c) for relief from the automatic stay to permit Amazon to terminate its contract with Scoobeez (the "Agreement").[3] In brief, the Agreement provides that, to the extent that Amazon wishes to utilize Scoobeez's services, Scoobeez will provide those services pursuant to the terms and conditions of the Agreement. The Agreement explicitly states that Amazon does not guarantee that it will utilize Scoobeez's services in any minimum amount, or at all:

> You acknowledge and agree that Amazon makes no promises or representations whatsoever as to the amount of business that you can expect at any time under these Terms …

Terms at ¶ 1(c). While the Agreement is property of the bankruptcy estate that is protected by the automatic stay, the automatic stay does not expand Scoobeez's rights under the Agreement, contrary to the express terms of the Agreement, to require Amazon to utilize Scoobeez's services contrary to Amazon's wishes.

The Terms also provide that either Amazon or Scoobeez may terminate the Agreement at any time, provided that they give the other party 30 days' notice of the termination.

> Either party may terminate these Terms at any time, with or without cause, by providing the other party with 30 days' prior written notice.

Terms at ¶ 8(a). Amazon wishes to exercise that right and, accordingly, seeks an order modifying the automatic stay to permit it to do so. Cause exists to modify the stay as requested for two

---

[3] The Agreement consists of two documents, the Delivery Provider Terms of Service – Work Order (the "Work Order") and the Delivery Provider Terms of Service (the "Terms"). Copies of the Work Order and Terms, including the 18 amendments to the Work Order are attached hereto as Exhibits 1 through 20, respectively.

reasons.  First, Scoobeez cannot provide Amazon with adequate protection for Amazon's interest in the Agreement.  The Agreement was carefully written to permit Amazon to cease utilizing Scoobeez's services by not providing Scoobeez with business and/or terminating the Agreement on 30 days' notice.  Amazon's ability to sever its relationship with Scoobeez is a property right held by Amazon to which Amazon is being denied by reason of the continuance of the automatic stay (assuming that it applies).  Scoobeez cannot provide adequate protection for that property right, other than by permitting the automatic stay to be modified so as to permit Amazon to exercise its rights.

Second, there is no purpose to be served by continuing the automatic stay in effect.  As noted above, Amazon is not obligated to provide Scoobeez with any business.  As a result, the Agreement is of no benefit to Scoobeez.  Even assuming that this Court were to approve the sale of Scoobeez's assets and, over Amazon's pending objection, approve the assumption and assignment of the Agreement to a buyer, the buyer would take the Agreement as it is written and, as a result, would succeed to a contract under which it was not entitled to any business and, because the automatic stay would not protect the purchaser, could be terminated 30 days following the date upon which the sale closed.  Thus, while perpetuation of the stay would interfere with Amazon's contractual rights, it would not confer any benefit upon Scoobeez's estate.  As a result, cause exists to modify the stay to permit Amazon to terminate the Agreement.

## II.
## THE AUTOMATIC STAY DOES NOT REQUIRE AMAZON TO UTILIZE SCOOBEEZ'S SERVICES

Although the automatic stay provides broad protection to debtors, it is not an amorphous provision that enlarges the debtor's rights.  More specifically, the only section of 11 U.S.C. § 362 that is even arguably implicated here is § 362(a)(3), which stays all entities from engaging in "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . "  It is axiomatic that a debtor's property rights are defined by applicable non-bankruptcy law.  *Butner v. Untied States*, 440 U.S. 48, 55, 99 S.Ct. 914 (1979) ("Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply

1    because an interested party is involved in a bankruptcy proceeding.'").

2        Here, Scoobeez's property interest in the Agreement is defined by the terms of the

3    Agreement itself.  That property interest does not include a right to receive any Amazon business.

4    To the contrary, the Agreement is explicit that Amazon has made no promises or representations

5    as to the amount of business that Scoobeez will receive under the Agreement.  As a result, under

6    Washington law, the covenant of good faith and fair dealing does not require Amazon to act

7    "reasonably" in awarding, or failing to award, Scoobeez business.[4]  *Johnson v.* Yousoofian, 84

8    Wash. App. 755 (1966) ("The implied duty of good faith is derivative, in that it applies to the

9    performance of specific contract obligations.  If there is no contractual duty, there is nothing that

10    must be performed in good faith." (Internal citations omitted)).[5]  Thus, whether Amazon elects to

11    provide Scoobeez with business or not, it has not interfered with Scoobeez's interest under the

12    Agreement, which is limited to such business as Amazon elects to provide to Scoobeez, and the

13    automatic stay simply does not apply to prevent Amazon from failing to award Scoobeez

14    business.

15                                **III.**
16              **AMAZON IS ENTITLED TO RELIEF FROM
              THE STAY TO TERMINATE THE AGREEMENT**

17        11 U.S.C. § 362(d)(1) provides that "the court ***shall*** grant relief from the stay provided

18    under subsection (a) of this section …(1) for cause, including the lack of adequate protection of

19    an interest in property of such party in interest."  Emphasis added.  "'Cause' is not defined in that

20    statute, giving bankruptcy courts the flexibility to define cause in a particular case." *In re*

21    *Mantachie Apartment Homes, LLC*, 488 B.R. 325, 331 (Bankr. N.D. Miss. 2013).  Here, cause

22    exists to grant relief from the stay for two independent reasons.

23        First, under the terms of the Agreement, Amazon has a right, with or without cause, to

24    decline to provide Scoobeez with business and to terminate the Agreement on 30 days written

25    notice to Scoobeez.  Those rights are property rights that Scoobeez contends to be stayed by the

26

27    [4]    The Agreement provides for the application of Washington law.  Terms at ¶ 11(f).

28    [5]    Although not obligated to do so, Amazon has acted reasonably under the circumstances. For the Court's
       convenience, a copy of *Johnson* is attached hereto as Exhibit B.

1    automatic stay. *Computer Communications, Inc. v. Codex Corp. (In re Computer*

2    *Communications, Inc.)*, 824 F.2d 725 (9th Cir. 1987). As a result, Amazon is entitled to adequate

3    protection of those property interests or to relief from the automatic stay to exercise those

4    property interests. 11 U.S.C. § 362(d)(1). Scoobeez has not suggested any means of adequately

5    protecting those property interests, nor is there any apparent means for it to do so, other than

6    stipulating to relief from the stay so that Amazon can exercise its contractual rights. Thus,

7    Amazon is entitled to relief from the stay for lack of adequate protection.

8    Second, as a court of equity, when determining whether "cause" exists for modifying the

9    automatic stay, courts "may consider the consequences of the stay on the parties and the "balance

10   of hurt" in tailoring relief appropriate for the factual scenario." *In re Tudor Motor Lodge*

11   *Associates, LTD. Partnership*, 102 B.R. 936 (Bankr. N.J. 1989). In this case, the Agreement

12   provides that Amazon has the right, with or without cause, to terminate the Agreement on 30

13   days' notice to Scoobeez. That right is enforceable as written. *Mayer v. Pierce County Medical*

14   *Bureau, Inc.*, 80 Wash. App. 416, 422 (1995) ("Provisions providing for the at will cancellation

15   of an agreement, although sometimes harsh, are enforceable in this State.").[6] Numerous courts

16   have held that, when a party has an unqualified right to terminate a contract, relief from the

17   automatic stay is appropriate to allow that party to exercise that right.

18   For example, in *Matter of West Electronics Inc.*, 852 F.2d 79 (3rd Cir. 1988), the

19   government had a contract with the chapter 11 debtor that could not be assumed because,

20   pursuant to 11 U.S.C. § 365(c)(1), non-bankruptcy federal law prohibited assignment of the

21   contract. The government moved for relief from the stay to terminate the contract. The

22   bankruptcy court denied the motion and the district court affirmed the bankruptcy court's

23   decision. The Third Circuit reversed stating:

24   The bankruptcy court was, therefore, confronted with a situation in
     which the debtor in possession was not entitled to assume the
25   contract without the government's consent and the government was
     unwilling to give that consent. In that situation, the debtor in
26   possession did not have a legally cognizable interest in the contract

27

28   [6]    For the convenience of the Court, a copy of *Mayer* is attached hereto as Exhibit C.

1    and it was an abuse of discretion for the court to decline to lift the
2    stay."

3    852 F.2d at 83-84. *See also, Bonneville Power Administration v. Mirant Corp. (In re Mirant*

4    *Corp.)*, 449 F.3d 238 (5th Cir. 2006) (relief from stay appropriate if exception to enforcement of

5    *ipso facto* clause provided for in § 365(e)(2) applies); *In re Adana Mortgage Bankers, Inc*., 12

6    B.R. 977 (Bankr. N.D. Ga. 1980) (relief from stay granted to terminate contract that was not

7    assumable); *In re National Environmental Waste Corp.,* 191 B.R. 832, 838 (Bankr. C.D. Cal.

8    1996) (court annuls stay retroactively to ratify discretionary termination of waste hauling contract

9    by City as, "had the City applied to the Court for relief from the automatic stay to terminate the

10   Newco contract, the Court would have routinely granted the motion."); *In re Deppe*, 110 B.R.

11   898, 907 (Bankr. Minn. 1990) (court grants relief from the stay to permit termination of rejected

12   contract, stating: "11 U.S.C. § 362(a)(3) maintains a tenuous veil of protection over the estate's

13   rights , such as they are.  Nothing would be gained for creditors of the estate by preserving that

14   veil.  [The non-debtor] is entitled to the relief which it requests.").

15        As in each of the foregoing cases, there is nothing to be gained by continuing the

16   automatic stay in effect in this case.  Amazon has the right to "*de facto*" end the Agreement by

17   refusing to award routes to Scoobeez.  But, even setting that fact aside, Amazon has the right to

18   terminate the Agreement on 30 days' notice.  The estate has now had the benefit of the automatic

19   stay preventing Amazon from exercising those rights for six months.  The automatic stay "is

20   meant to preserve the status quo of the entity with an interest in the debtor's property during a

21   reasonable length of time.  The rights of the creditor are frozen, but not changed." *In re Tudor*

22   *Motor Lodge Associates, LTD. Partnership*, 102 B.R. 936, 954 (Bankr. N.J. 1989).  In sum, the

23   estate has no right to insist upon the indefinite continuation of the Agreement contrary to the

24   express provisions of the Agreement that permit Amazon to decline to do business with Scoobeez

25   and to terminate the Agreement at its will on 30 days' notice.

26        Not only does the estate not have the right to prevent Amazon from terminating the

27   Agreement for an indefinite period of time, but the Agreement is not something that can provide

28   the foundation for a reorganization or that the estate can sell.  If Scoobeez does not sell its

business and attempts to reorganize, at such time as the Agreement vests in the reorganized

debtor, the automatic stay will terminate and Amazon will be free to exercise its termination right.

11 U.S.C. § 362(c)(1).  If Scoobeez is successful in assigning the Agreement to a buyer, similarly,

the automatic will terminate because the Agreement will no longer be property of the estate.  *Id.*

In either case, the Agreement is not an asset that will further Scoobeez's reorganization in any

material way, whether this case proceeds as a liquidation or a true reorganization.  Having

supported Scoobeez's reorganization efforts for the past six months by continuing to provide

Scoobeez with routes and refraining from seeking relief from the automatic stay to exercise its

termination right, Amazon is now entitled to relief from the stay.

## IV.
## <u>CONCLUSION</u>

Under the terms of the Agreement and Washington law, Scoobeez does not have any

cognizable property right to require Amazon to utilize its services.  As a result, were Amazon to

reduce the number of routes assigned to Scoobeez, it would not violate the automatic stay's

prohibition on acts to obtain or exercise control over property of Scoobeez's bankruptcy estate.

In addition, because the Agreement and Washington law provide that Amazon has the

unfettered right to terminate the Agreement without cause, Amazon is entitled to relief from the

automatic stay to exercise that right.  Scoobeez cannot provide adequate protection to Amazon for

the automatic stay's deferral of that right and, in any event, because the continuation of the stay

cannot confer any lasting benefit upon the estate, cause exists to modify the stay.

Dated: October 28, 2019                         MORGAN, LEWIS & BOCKIUS LLP


By:   */s/ Richard W.* Esterkin
                                                       Richard W. Esterkin
                                                  Attorneys for Amazon Logistics, Inc.

1

## REQUEST TO TAKE JUDICIAL NOTICE

2        Pursuant to the provisions of Federal Rule of Evidence 201, Amazon Logistics, Inc.

3   hereby requests that the Court take judicial notice of the contents of the Declaration of Vanessa

4   Delaney filed as part of *Amazon Logistics, Inc.'s Objection to Assumption and Assignment of*

5   *Delivery Provider Terms of Service Work Order; and Declarations of Vanessa Delaney and Zane*

6   *Brown in Support Thereof,* filed herein at Docket No. 349.  For the convenience of the Court and

7   the parties, a copy of the foregoing declaration, together with the exhibits to that declaration, is

8   attached hereto as Exhibit A.

9   Dated: October 28, 2019                    MORGAN, LEWIS & BOCKIUS LLP

10

11                                          By:   */s/ Richard W.* Esterkin
                                                Richard W. Esterkin
12                                          Attorneys for Amazon Logistics, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2 **CERTIFICATE OF SERVICE FORM**

3 **FOR ELECTRONIC FILINGS**

4 I hereby certify that on October 28, 2019, I electronically filed the foregoing document,

5 **Amazon Logistics, Inc.'s Notice of Motion and Motion for An Order:  (A) Determining That**

6 **the Automatic Stay Does Not Require Amazon to Utilize Debtor's Services. and (B)**

7 **Modifying the Automatic Stay; Memorandum of Points and Authorities and Request to**

8 **Take Judicial Notice in Support Thereof**, with the Clerk of the United States Bankruptcy

9 Court, Central District of California, Los Angeles Division, using the CM/ECF system, which

10 will send notification of such filing to those parties registered to receive notice on this matter.

11

12 _____
Renee Robles

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

### DECLARATION OF VANESSA DELANEY

I, Vanessa Delaney, declare:

1.      I am employed by Amazon Logistics, Inc. as a Contractor Relations Principal.  As a result, I am familiar with the contractual relationship between Amazon Logistics, Inc. ("Amazon") and Scoobeez, Inc. ("Scoobeez").

2.      The contractual relationship between Amazon and Scoobeez is documented in two agreements:  a Delivery Provider Terms of Service Work Order (the "Work Order") and a Delivery Service Provider Terms of Service, which is incorporated into the Work Order, (the "Terms").  Copies of the Work Order and Terms are attached hereto as Exhibits 1 and 2, respectively.

3.      The distribution points from which Scoobeez is to receive materials from Amazon for delivery are set forth in Schedule B to the Work Order.  The fees payable to Scoobeez for its delivery services from the various distribution points are set forth in Exhibit C to the Work Order.  Over time, both the distribution points and the fees varied.  As a result, there are 18 amendments to the Work Order that document those changes.  Attached hereto as Exhibits 3 through 20 are copies of the foregoing amendments.

4.      As of September 6, 2019, Amazon and Amazon.com, Inc. had been named as defendants in at least three lawsuits in which the plaintiffs contended that Scoobeez had violated various labor laws and that each of Amazon and Amazon.com, Inc. were liable to them as "co-employers" with Scoobeez:

> (a)      *Jassim Addal v. Amazon.com, Inc., et al.,* Los Angeles County Superior Court Case No. BC719783;

> (b)      *Unta Key, et al. v. Scoobeez, et al.,* San Diego County Superior Court Case No. 37-2017-00018285, consolidated with Case No. 37-2017-0039527; and

> (c)      *Bennie Hamilton v. Scoobeez, Inc., et al.,* Los Angeles County Superior Court Case No. BC669835.

5.      To date, Scoobeez has not provided Amazon or Amazon.com, Inc. with a defense in the foregoing litigation or indemnified them with respect to the plaintiffs' claims.  To date,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 37349286.5

Exhibit A - page 12

1  Amazon and Amazon.com, Inc. have incurred defense costs in connection with the foregoing

2  litigation and have not been reimbursed by Scoobeez for those costs.

3          I declare under penalty of perjury that the foregoing is true and correct and that this

4  declaration was executed at _____Hoboken_____, New Jersey on September $\underline{30}$, 2019.

5

6                                          DocuSigned by:

                                           Vanessa Delaney
                                           _____
                                           Vanessa Delaney

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
 BOCKIUS LLP
 ATTORNEYS AT LAW
  COSTA MESA

- 9 -

# EXHIBIT 1

DocuSign Envelope ID: 2E98DC47-8565-48F3-9CF03-FD05519345C7

### Delivery Provider Terms of Service

### Work Order

This Work Order (this "<u>Work Order</u>") is effective as of September 2, 2015 ("<u>Work Order Agreement Date</u>"), and is made a part of the Delivery Provider Terms of Service (as the same may be amended, modified or supplemented from time to time, the "<u>Terms</u>") between Amazon Logistics, Inc. ("<u>Amazon</u>"), and Scoobeez, Inc., a California corporation ("<u>you</u>").  By accepting this Work Order, you (a) agree to be bound by all terms and conditions of this Work Order, and (b) represent and warrant that you have legal authority to enter into and perform your obligations under this Work Order.   This Work Order incorporates the terms and conditions of each Schedule attached to this Work Order (including the policies set forth on <u>Schedule A</u> to this Work Order (the "<u>Policies</u>")).  Please see the Terms for definitions of certain capitalized terms used in this Work Order.

1.      <u>**Services**</u>.  Services under this Work Order will commence on the Work Order Agreement Date, and this Work Order will be subject to the same termination rights set forth in the Terms.  Deliverables may be tendered by Amazon or its designees from delivery stations, sort centers, fulfillment centers, and/or other distribution points (including merchant locations) (collectively, the "<u>Distribution Points</u>") and accepted by you Monday through Sunday, 365 days a year, at times and days designated by Amazon.  The initial Distribution Points at which Deliverables will be tendered are set forth on <u>Schedule B</u> to this Work Order.  Amazon and you may from time to time and at any time update the Distribution Points set forth on <u>Schedule B</u> to this Work Order.  Deliveries of Deliverables are to be made on the same day they are tendered to you and within the delivery time window specified by Amazon.  You will perform the Services in accordance with the Policies and with any standard operating procedures (including those relating to check-in and loading of Deliverables at Distribution Points and the delivery of Deliverables to Amazon customers) that are agreed between Amazon and you from time to time.

2.      <u>**Service Areas**</u>.  Deliverables will be delivered within the geographic areas serviced by the Distribution Points set forth on <u>Schedule B</u> to this Work Order, as updated from time to time by Amazon and you.

3.      <u>**Fees Payable by Amazon**</u>.  The Fees for Services set forth on <u>Schedule C</u> to this Work Order are the rates and charges to be charged to and paid by Amazon in consideration of the Services furnished by you.

4.      <u>**Insurance**</u>.  You will, at all times during which you provide the Services and for at least two years after all Services are completed, carry, at your expense: (a) "Commercial General Liability" insurance with limits of not less than $1,000,000 per occurrence and $2,000,000 in the general aggregate (or such other amounts approved by Amazon in writing); (b) "Business Automobile Liability" insurance (also known as 'motor fleet' insurance) with limits of not less than $1,000,000 per occurrence for bodily injury and property damage combined (or such other amount approved by Amazon in writing); (c) "Worker's Compensation" insurance, including but not limited to coverage for all costs, benefits and liabilities under workers' compensation and similar Laws that may accrue in favor of any person employed by you in all states where you perform Services, and "Employer's Liability" insurance with a limit of not less than $1,000,000

(or such other amount approved by Amazon in writing); and (d) "Cargo Legal Liability" insurance, or similar coverage, with limits sufficient to cover your liability under Section 6 (Claims for Loss or Damage) of the Terms, but in no event less than $25,000 per loss (or such other amount approved by Amazon in writing).  You may satisfy the foregoing minimum limits by any combination of primary liability and umbrella excess liability coverage that results in the same protection to you and Amazon insured parties.  You may self-insure for workers' compensation where allowed by applicable Law. Each of your insurance policies must: (u) be issued by companies with a rating of A-/VII or better in the current Best's Insurance Reports published by A.M. Best Company, Inc.; (v) provide that the coverage limits will not be reduced below the minimum amounts required by this paragraph and such policy will not be canceled or allowed to expire without at least 30 days' prior written notice from the insurance carrier to Amazon; (w) for (a) and (b) above, name Amazon and its Affiliates, and their respective officers, directors, employees, successors, assigns, licensees, distributors, contractors and agents as additional insureds with the standard separation of insureds provision or an endorsement for cross-liability coverage; (x) provide coverage on an occurrence basis; (y) waive any insurer right of subrogation against Amazon and its Affiliates and their respective officers, directors, employees, successors, assigns, licensees, distributors, contractors and agents, where allowed by applicable Law; and (z) provide primary coverage, without any right of contribution from any other insurance that Amazon or any of its Affiliates may have.

5.    **Audit Rights**.  Upon 72 hours' advance written notice to you, Amazon may, during normal business hours and at the expense of Amazon, review your records relating to the Terms, the Program Policies, this Work Order or your performance of the Services under this Work Order.  Upon 24 hours' advance written notice to you, Amazon may, during normal business hours and at the expense of Amazon, perform an on-site visit of your delivery operations or conduct "ride-along" observations of your Personnel performing the Services (each, a "Ride-Along Observation"); provided, that, without your consent, (a) during the first week of providing the Services under this Work Order, Amazon will conduct no more than one Ride-Along Observation per day, and (b) after the first week of providing the Services under this Work Order, Amazon will conduct no more than four Ride-Along Observations per month.  If any review establishes that there has been any noncompliance by you or overpayment by Amazon, you will promptly cure the non-compliance and/or refund the overpayment, as applicable, and will bear all expenses in connection with the review, all without limiting any other rights or remedies that may be available to Amazon.  Also, upon 24 hours' advance written notice, Amazon may, during normal business hours and at the expense of Amazon, inspect any of the processes, procedures, or systems related to your delivery operations.

6.    **Personnel Performing Services**.  You agree that you and all of your Personnel that perform the Services will satisfy the criteria set forth in the Policies and on Schedule F to this Work Order.

7.    **Notices to Amazon**.  Notices to Amazon under this Work Order or the Terms may be provided by (a) facsimile transmission to 206-266-2009, or (B) nationally recognized overnight courier service, certified mail (return receipt requested), or personal delivery to Amazon Logistics, Inc., 410 Terry Avenue North, Seattle, WA 98109-5210, Attention: General Counsel.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Work Order.

**Amazon Logistics, Inc.**

By: _Hany Elkordy_
     22D8D2660G204EE...

Name: _Hany Elkordy_

Title: _Director, AMZL NA_

Date Signed: _August 18, 2015_

**Scoobeez, Inc.**

By: _Benjamin Art_
     91D0B756FE7A4DA...

Name: _Benjamin Art_

Title: _CEO_

Date Signed: _August 17, 2015_

[Signature Page to Work Order]

Exhibit A - page 17

DocuSign Envelope ID: 2E99DC47-9E65-48F9-8F03-FBD5E192A5C7

**Schedule A**

**Policies**

<u>Your Personnel; No Subcontractors</u>.

Except as otherwise provided in this Work Order, (a) you will hire and employ all drivers, cyclists, walkers, and other Personnel who are assigned by you to perform the Services under this Work Order, and (b) you will not engage subcontractors to perform the Services without the prior           written           consent           of           Amazon.

## **Schedule B**

### **Distribution Points**

1. UCA3 – Los Angeles, CA

2. UCA4 – Irvine, CA

3. UCA5 – Los Angeles, CA

## Schedule C

### Fees Payable by Amazon

**Prime Now**

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA3, UCA4, and UCA5 | 4.5 hours | $81.00 | $5.00 | $86.00 |
|  | 6.5 hours | $124.00 | $5.00 | $129.00 |
|  | 8.5 hours | $167.00 | $5.00 | $172.00 |
|  | 10.5 hours | $210.00 | $5.00 | $215.00 |

For a period of three weeks commencing on the date on which you perform your first Planned Route under this Work Order, you will be permitted to engage independent contractors to perform the Services. Thereafter, unless you obtain prior written consent from Amazon to the contrary, you will hire and employ all drivers, cyclists, walkers, and other Personnel who are assigned by you to perform the Services under this Work Order. Notwithstanding the existence or terms of any subcontract, you will remain responsible for the full performance of the Services in accordance with the Terms and this Work Order. The terms and conditions of this Work Order and the Terms are binding upon you, your Affiliates and your and their respective Personnel. You will (a) ensure that such entities and individuals comply with this Work Order and the Terms, and (b) be responsible for all acts, omissions, negligence and misconduct of such entities and individuals. You will also ensure that all of your independent contractors effectively and irrevocably waive any lien upon (or other right with respect to) the Deliverables transported, regardless of whether such independent contractor would otherwise be entitled to such lien or other rights under contract or applicable Law, and waive any claim (including for amounts owed for delivery services) against Amazon, its Affiliates and any recipient. Without in any way limiting your obligations or Amazon's rights under Section 9 (Indemnification) of the Terms, if any of your independent contractors asserts any claim, demand, suit, or action (an "IC Claim") against Amazon or any of its Affiliates and you are then undergoing any bankruptcy proceeding, then Amazon may at its sole discretion, but is not obligated to, defend or settle such IC Claim at your cost and expense; provided, that, for the avoidance of doubt, if Amazon incurs or pays any loss, damage, settlement, cost, expense or any other liability (including reasonable attorneys' fees) relating to such IC Claim, Amazon may set off such amounts in full against any amounts Amazon owes to you or demand immediate full reimbursement from you.

## <u>Schedule D</u>

**Uniform Specifications**

<u>Uniform Shirt and Jacket</u>:

To be determined from time to time by Amazon.

<u>Uniform Pants or Shorts</u>:

To be determined from time to time by Amazon.

<u>Uniform Hat</u>:

To be determined from time to time by Amazon.

## <u>Schedule E</u>

### Vehicle Branding Specifications

Upon a request from Amazon, you agree to make available for branding by Amazon any and all Vehicles that will be used to provide Services under this Work Order.  If required by Amazon, such Vehicles must be branded before they are used to provide Services under this Work Order. Unless Amazon agrees otherwise, Vehicles that display Amazon branding will be dedicated exclusively to the Services and will not be used for any other purpose.

<u>**Schedule F**</u>

**Delivery Personnel Criteria**

<u>**Minimum Delivery Personnel Requirements**</u>

All of your delivery Personnel must satisfy the following requirements:

- Must possess valid driver's license of the type required by Law to operate applicable Vehicles and transport applicable Deliverables
- Minimum age: 21
- Minimum six months of verifiable experience in like Vehicle within last three years
- No DUI/DWI within five previous years
- No major preventable collisions within three previous years
- Maximum of two non-serious moving violation convictions or preventable minor collisions or any combinations thereof in a commercial or personal vehicle within previous three years
- No driver's license suspensions within previous three years relative to a moving violation in a commercial or personal vehicle
- Pass a drug and alcohol screening test
- Pass a background verification (described further below)
- Verify competency in critical skill areas for the specific driving position

<u>**Background Verification**</u>

You will require each applicant to provide a Social Security Number ("<u>SSN</u>") or equivalent unique identifier, and will conduct a SSN search confirming that the supplied SSN is valid and that it correctly identifies the applicant.  The SSN search ("<u>SSN Search</u>") must include:

1.      An identification of aliases via SSN search results; and

2.      A search by all aliases (including those provided by SSN search and those supplied by applicant) when conducting each criminal records search.

You will conduct:

1.      a search of the National Criminal Database and a search in each county and corresponding federal district, if any, in which a criminal history is identified by the National Criminal Database search;

2.      a federal crimes search of all federal districts in which the applicant has lived within the past seven years (as determined by a self-report and the SSN search);

3.      a felony and misdemeanor search of all county courts in which the applicant has lived in the past seven years (as determined by a self-report and the SSN Search); <u>provided</u>, that for former addresses located within AL, AK, AR, CO, CT, DE, DC, ID, MD, MN, NE, NJ, NM,

NY, NC, ND, OR, RI, SD, UT, WA, and WI only, a "statewide" search is permitted in lieu of a county court search;

4.      a search of the U.S. Department of Justice's National Sex Offender Database and a search in each county and corresponding federal district, if any, in which a criminal history is identified by the National Sex Offender Database; and

5.      a search of any relevant national governmental restricted or prohibited dealings lists, including the Office of Foreign Assets Control (OFAC) Specially Designated Nationals and Blocked Persons List.

**<u>Criminal History Review</u>**

Background checks should be adjudicated on a case by case basis using your best judgment to protect Amazon's and your respective employees, customers, data, and property. The factors listed below can help the decision-making process:

    a)    the nature of the job to be performed, including the job's duties, identification of the job's essential functions, the circumstances under which the job is performed, and the environment in which the job's duties are performed;

    b)    type of offense(s) or conduct;

    c)    facts or circumstances surrounding the offense or conduct;

    d)    number of offenses for which the individual was convicted;

    e)    age at the time of conviction or release from prison;

    f)    evidence that the individual performed the same type of work post-conviction;

    g)    length and consistency of employment history before and after the offense or conduct;

    h)    rehabilitation efforts;

    i)    employment or character references; and

    j)    whether the individual is bonded under a federal, state, or local bonding program.

# EXHIBIT 2

## DELIVERY PROVIDER TERMS OF SERVICE
(Last Updated: June 21, 2016)

These Delivery Provider Terms of Service (these "<u>Terms</u>") contain the terms and conditions that govern your performance of the Services and constitute a legally binding agreement between the applicable Amazon Contracting Party or any of its Affiliates that enters into a Work Order under these Terms ("<u>Amazon</u>"), on the one hand, and you or the entity that you represent ("<u>you</u>"), on the other hand.  These Terms take effect on the date when you click an "Agree" or similar button or check box presented with these Terms or, if earlier, when you begin to perform the Services (the "<u>Effective Date</u>").  By accepting these Terms, you (a) on behalf of yourself and the entity that you represent, agree to be bound by all terms and conditions of these Terms, and (b) represent and warrant that you have legal authority to bind the entity that you represent to these Terms.  Please see <u>Section 11</u> for definitions of certain capitalized terms used in these Terms.

1.    **<u>Services</u>**.

a.    <u>Work Orders</u>.  At Amazon's request and as specified in one or more work orders that become binding on you (whether by executing the same or otherwise agreeing to the applicable terms, including pursuant to the functionality of the Site) ("<u>Work Orders</u>"), you will provide transportation, delivery and related services (whether on foot, by bicycle, by motor vehicle, or otherwise) ("<u>Services</u>", as such term is further described in any Work Order) in accordance with the terms and conditions of these Terms, the Program Policies, and any performance standards set forth in each applicable Work Order.  These Terms and the Program Policies govern each Work Order, and if you commence Services for Amazon in the absence of a Work Order, these Terms and the Program Policies will nevertheless apply.

b.    <u>Affiliates</u>.  Any Affiliate of the applicable Amazon Contracting Party may enter into Work Orders with you pursuant to these Terms, and with respect to such Work Orders, such Affiliate becomes a party to these Terms and references to Amazon in these Terms are deemed to be references to such Affiliate.  Each Work Order is a separate obligation of the Affiliate of the applicable Amazon Contracting Party that is named in such Work Order, and neither the Amazon Contracting Party nor any other Affiliate of the Amazon Contracting Party has any obligation under such Work Order.

c.    <u>No Minimum Volume/No Exclusivity</u>.  You acknowledge and agree that Amazon makes no promises or representations whatsoever as to the amount of business that you can expect at any time under these Terms, whether before or after any Work Order becomes binding on you.  Amazon may from time to time give volume, density, weight, product distribution or other projections to you, but such projections are speculative only and will not in any event give rise to any liability on the part of Amazon.  The parties acknowledge and agree that Amazon may engage the services of other companies that may perform the same or similar services as those provided by you.  These Terms do not obligate you to perform any Services unless and until a Work Order has become binding on you in accordance with <u>Section 1.a</u>.

2.    **Personnel Performing Services; Relationship of the Parties; Transportation Authority; Vehicles; License of Equipment**.

a.    <u>Personnel Performing Services; Relationship of the Parties</u>.

i.    Each driver, cyclist, walker, and other Personnel provided by you to perform the Services will: (i) have such credentials (e.g., background investigation or references and drug screening), skills, training and expertise as are required by Law, the Program Policies and each applicable Work Order and otherwise be suitable and appropriate to perform the Services; and (ii) have satisfactorily completed your delivery person training program (as applicable) and any other vetting process that you have established prior to providing any Services to or on behalf of Amazon.  You will not permit any of your Personnel who at any time fails to satisfy the requirements of this <u>Section 2.a</u> to provide Services directly or indirectly for or on behalf of Amazon.  Further, upon receipt of a written notice (which may be by email) from Amazon specifying that any of your Personnel has failed to satisfy the requirements of this <u>Section 2.a</u>, you will not permit such Personnel to provide Services directly or indirectly for or on behalf of Amazon.

ii.    You are an independent contractor of Amazon.  As between Amazon and you, you have exclusive responsibility for your Personnel and exclusive control over your policies relating to wages, fees and other compensation, hours, and working conditions.  You have the exclusive right to hire, engage, transfer, suspend, lay off, recall, promote, discipline, discharge and adjust grievances with your Personnel.  Your Personnel are not eligible to participate in any employee benefit plans or other benefits available to employees of Amazon or any of its Affiliates.  Neither you nor any of your Personnel has any authority to bind Amazon or any of its Affiliates to any agreement or obligation.

b.    <u>Transportation Authority</u>.  During the Term (as defined in <u>Section 8.a</u>), you will obtain and maintain all motor carrier and other transportation related authorities, permits, and registrations with Governmental Authorities (including, without limitation, those relating to the transportation of alcohol products) as are required to perform the Services under these Terms, the Program Policies, and each applicable Work Order.

c.    <u>Vehicles</u>.  You will provide, operate, maintain and be responsible for, at your expense, all vehicles (including bicycles) required to perform the Services under these Terms, the Program Policies, and each applicable Work Order (each, a "<u>Vehicle</u>", and collectively, the "<u>Vehicles</u>"), and you will keep the Vehicles in good working order in accordance with the manufacturer's recommendations.  You agree that, if required by Law, all such Vehicles will display any applicable registration numbers and will satisfy all applicable safety, speed, hours of service and other requirements imposed by Law.

d.    <u>License of Equipment</u>.

i.    As used in these Terms: (A) "<u>Equipment</u>" means, collectively, Hardware and Licensed Materials; (B) "<u>Hardware</u>" means handheld communication devices/scanners and all associated equipment furnished to you by Amazon, together with any related manuals and other

Exhibit A - page 27

documentation; and (C) "Licensed Materials" means any software (including, without limitation, any scanning and delivery application), content or other information furnished to you (whether standalone or for use on Hardware, on devices owned by you, or otherwise) by Amazon, together with any related manuals and other documentation.

ii.    Amazon grants to you, during the Term, a limited, non-exclusive, non-transferable, non-sublicensable, revocable license to use the Equipment in each country in which you provide the Services, solely for the purpose of performing the Services.  You will provide all other equipment necessary for the performance of the Services at your own expense.  You will not, in whole or in part: (A) copy the Equipment; (B) distribute copies of the Equipment or any part of the Equipment to any third party; (C) modify, adapt, translate, reverse engineer, make alterations to, decompile, disassemble or make derivative works based on the Equipment or any part of the Equipment; (D) rent, loan, sublicense, lease, distribute or attempt to grant other rights to the Equipment or any part of the Equipment to third parties; (E) permit remote access to the Equipment by any third party; or (F) use the Equipment other than to perform the Services.  You will require all of your Personnel using the Equipment to attend the training specified by Amazon, including for updates and periodic refresher training.  You will keep all Hardware in good repair, good operating condition and working order and in compliance with the manufacturer's specifications and will furnish all Hardware to Amazon for maintenance, service and repair as specified by Amazon.  You will not make any additions, attachments, alterations or improvements to Hardware without the prior written consent of Amazon.  If any Hardware or part of any Hardware is lost, stolen, unreturned, damaged, sold, transferred, leased, encumbered or assigned without the express prior written consent of Amazon, you will promptly pay Amazon the full replacement cost of the Hardware, together with any incidental costs that are incurred by Amazon to replace the Hardware.

iii.    AMAZON LICENSES THE EQUIPMENT TO YOU "AS IS" AND MAKES NO WARRANTIES OF ANY KIND REGARDING THE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO, THE DESIGN, OPERATION OR CONDITION OF, OR THE QUALITY OF THE MATERIAL, COMPONENTS OR WORKMANSHIP IN, THE EQUIPMENT.  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, AMAZON EXPRESSLY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, NONINFRINGEMENT, TITLE OR FITNESS FOR A PARTICULAR PURPOSE.  AMAZON DOES NOT WARRANT THAT THE EQUIPMENT WILL MEET YOUR REQUIREMENTS OR WILL OPERATE UNINTERRUPTED, ERROR FREE OR PROVIDE ACCURATE, COMPLETE OR UP-TO-DATE INFORMATION.  AMAZON WILL NOT BE RESPONSIBLE FOR ANY LOSS, DAMAGE OR CLAIM CAUSED BY OR ATTRIBUTABLE TO ANY DEFECT OR DEFICIENCY IN ANY EQUIPMENT WHETHER ARISING OUT OF THE EQUIPMENT'S MANUFACTURE, DESIGN OR OTHERWISE.

iv.    Amazon will defend and indemnify you from any loss, damage, cost, and expense (including reasonable attorneys' fees and expenses) arising out of any claim, action or proceeding brought by a third party (each, a "Third-Party Claim") alleging that your use of the Equipment as authorized under this Section 2.d infringes or misappropriates any third-party patent, copyright, trademark, trade secret or other intellectual property rights (collectively, "Third-Party Proprietary Rights").  Amazon will have sole control of the defense of any Third-Party Claim, and

you will cooperate (at Amazon's expense) with Amazon in the defense.  Amazon's obligation to indemnify under this <u>Section 2.d(iv)</u> will not apply to the extent that any Equipment infringes or misappropriates any Third-Party Proprietary Rights as a result of (A) any modification of or to the Equipment made by you or any of your Personnel, (B) use of the Equipment by you or any of your Personnel other than as contemplated by this <u>Section 2.d</u>, or (C) the combination of the Equipment with other products or services.

3.    **Fees**.

    a.    Amazon will pay you in accordance with the rate structure included in each applicable Work Order or that is otherwise agreed between the parties pursuant to the functionality of the Site.  Except as provided in any Work Order or otherwise on the Site, the rate structure will not be subject to adjustment in the event that delivery volumes, number of stops, time per stop or between stops, distances traveled, labor or vehicle costs or any other forecast or assumption with respect to a Planned Route differs in any respect from the forecasts and assumptions used to set the rate structure set out in any Work Order or otherwise on the Site. Except as provided in any Work Order or otherwise on the Site, you will be entitled to no compensation or reimbursement of any expenses for performing the Services.

    b.    Amazon may (i) deduct from and offset against any amounts owing by Amazon to you under these Terms or any Work Order any sums payable by you to Amazon, or (ii) invoice you for such amounts due Amazon and you will pay Amazon invoiced amounts upon receipt of such invoice.

    c.    You acknowledge that, depending on the jurisdiction in which the Services are provided and the program to which the Services relate, an Amazon customer may be able during order checkout, at the customer's option, to provide that an e-tip be directed toward the delivery person and/or the persons responsible for fulfilling orders (the "<u>Tips</u>").  If applicable, Amazon will distribute to you all Tips collected in connection with applicable deliveries made by your Personnel, and you agree to distribute all such Tips to your Personnel in accordance with applicable Law.

4.    **Invoicing**.  Unless otherwise directed by Amazon, you will provide weekly invoices (at no charge) in a form acceptable to Amazon.  Each invoice will include at least the following data in addition to any other itemized data reasonably requested by Amazon:  service date, service type, number of Planned Routes per Service Area by shift (if applicable), and total cost.  At Amazon's request, you will issue separate invoices for each account established under these Terms or any Work Order.  The payment obligation under each invoice is a separate obligation of the account to which the invoiced Services were provided pursuant to the applicable Work Order, and no other account has any obligation under such invoice or Work Order.  Amazon will pay, or cause to be paid, all undisputed portions of your properly submitted invoices within 30 days of receipt. Amazon has no obligation to pay, or cause to be paid, any fees or expenses invoiced more than three months after the applicable Services are performed, and you waive any claim for payment of amounts not invoiced within that three-month period.  Amazon or its designee may conduct invoice audits to verify accuracy.  Discrepant invoices will be rejected or short paid with appropriate

explanation of the discrepancy.  The parties will use their commercially reasonable efforts to resolve any disputes promptly.

5.    **Representations, Warranties and Covenants**.

      a.    You represent and warrant to Amazon that you are a legal business entity duly formed, validly existing and in good standing under the Laws of the jurisdiction of your formation and that you have all requisite right, power and authority to enter into, and perform your obligations under, these Terms and each Work Order.

      b.    In addition to any compliance obligations set forth in these Terms, you are solely responsible for any and all obligations owed to your Personnel pursuant to applicable Law and for the management of your Personnel and promptly investigating and resolving all workplace complaints made by your Personnel.

      c.    You acknowledge that Amazon's Code of Business Conduct and Ethics posted at http://phx.corporate-ir.net/phoenix.zhtml?c=97664&p=irol-govConduct (the "Code") prohibits the paying of bribes to anyone for any reason, whether in dealings with Governmental Authorities or the private sector.  You will not violate or knowingly permit anyone to violate the Code's prohibition on bribery or any applicable anti-corruption Laws.  Amazon may immediately terminate or suspend performance under these Terms if you breach this Section.  You will maintain true, accurate and complete books and records concerning any payments made by you to any other person or entity in connection with the performance of the Services, including any such payments made on behalf of Amazon.  Amazon and its designated representatives may inspect your books and records to verify such payments and for compliance with this Section and the Code.

      d.    You will: (i) perform the Services in a competent and workmanlike manner in accordance with the level of professional care customarily observed by highly skilled professionals rendering similar services; (ii) not violate or infringe any third party's right in proprietary or confidential information in performing the Services; (iii) comply with all Laws pertaining to the Services, including without limitation all Laws applicable to transport, health and safety; (iv) hold and comply with all applicable licenses and permits required by Governmental Authorities in performing the Services; (v) notify Amazon as soon as possible of any event or circumstance that impairs the safety of or delays delivery of Deliverables, and use an acceptable industry standard of care in the protection of the Deliverables; (vi) at all times have sufficient equipment, Personnel and resources available to perform the Services (and, in any case in which you believe, in your reasonable business judgment, that you do not have sufficient equipment, Personnel and resources available to perform the Services, you will immediately notify Amazon); (vii) comply, at your sole cost and expense, with any social compliance and product safety requirements specified by Amazon, including Amazon's Supplier Code of Standards and Responsibilities posted at http://www.amazon.com/gp/help/customer/display.html?ie=UTF8&nodeId=200885140 (collectively, "Compliance Requirements"), and permit, as requested by Amazon from time to time, Amazon's designee to audit your compliance with any Compliance Requirements, and you will implement any corrective actions required by Amazon resulting from such audits at your expense; and (vii) not have any lien on Amazon property or assets, including any Deliverables or

any documents relating to any Deliverables, and you waive all rights to any lien upon any shipment or related documents on behalf of yourself and any third party engaged by you.

e.    <u>Hazardous Materials Notifications</u>.  You will notify Amazon's dangerous goods compliance department (at the phone number or email address designated by Amazon for this purpose) promptly (and in any event within 24 hours) after you become aware of any (i) injury to persons, property damage, environmental damage, fire, breakage, spillage, leakage, or any other accident or incident involving any product defined, designated, or classified as hazardous material, hazardous substance, or dangerous good (including limited and excepted quantities, consumer commodity, ORM-D, lithium batteries, and radioactive and magnetic materials) under any applicable Law and transported by you under these Terms (collectively, "<u>Hazardous Materials</u>"), (ii) event or circumstance involving Hazardous Materials that violates or is reasonably likely to violate any applicable Law, or (iii) investigation of any shipment containing Hazardous Materials by any governmental agency or authority.

6.    **Claims for Loss or Damage**.  You will be liable for Delay, loss or damage to Deliverables occurring while such Deliverables are in the care, custody or control of you and/or your Personnel in an amount equal to the actual cost of the Delayed, lost or damaged Deliverables, including the replacement cost of the Deliverables and direct costs associated with the original packaging, handling, and shipping (including the costs of packaging, handling and shipping the replacement). Claims for Delayed, lost or damaged Deliverables may be based upon Amazon's manifest, may be initiated electronically (including via email), and may be filed at any time within 120 days after the Deliverable was tendered to you.  You will acknowledge all claims within 30 days of receipt and will process all claims to conclusion and pay or credit the applicable account within 60 days of receipt. You will cooperate with Amazon's loss prevention and investigative personnel in the conduct of investigations related to fraud, theft and other matters of mutual concern.

7.    **Insurance**.  You will, at all times during which you provide the Services and for at least two years after all Services are completed, carry, at your expense, the types of insurance and minimum limits of insurance, in each case, that are specified in the Program Policies, each applicable Work Order, or otherwise on the Site.  You will submit certificates of insurance evidencing required insurance coverages to Amazon through the Site or by such other means specified by Amazon prior to the commencement of the Services and at each policy renewal thereafter.  You consent to Amazon disclosing your certificates of insurance or other information to third parties for the purpose of verifying your compliance with this <u>Section 7</u>.

8.    **Term and Termination**.

a.    <u>Term and Termination</u>.  The term of these Terms will begin on the Effective Date and will continue until terminated in accordance with this <u>Section 8.a</u> (the "<u>Term</u>.").  Either party may terminate these Terms at any time, with or without cause, by providing the other party with 30 days' prior written notice.  If the term of any Work Order extends beyond the Term, these Terms will survive for the purposes of that Work Order until the termination of that Work Order.

b.    <u>No Damages for Termination</u>.  Amazon will not be liable, on account of termination or expiration of these Terms, for loss of goodwill, prospective profits or anticipated orders.  Unless

specifically provided in any Work Order, Amazon will not be liable, on account of termination of these Terms or any Work Order, for any expenditures, investments, leases or commitments made by you under these Terms or any Work Order or for any other reason. You acknowledge and agree that you have no expectation, and that you have not received any assurances from Amazon or any other person, that your business relationship with Amazon will continue beyond the Term.

c.      <u>Transition Assistance</u>.  In connection with the termination or expiration of these Terms or any Work Order for any reason, you will provide reasonable assistance to Amazon in order to enable and facilitate an orderly transition of the Services to Amazon or a third party designated by Amazon.

9.      **Indemnification**.

a.      You will defend, indemnify and hold harmless Amazon and its Affiliates and successors, and each of their respective directors, officers and employees (each an "<u>Indemnified Party</u>" and, collectively, the "<u>Indemnified Parties</u>") from any third-party allegation or claim based on, or any loss, damage, settlement, cost, expense and any other liability (including but not limited to reasonable attorneys' fees and expenses) arising out of or in connection with, (i) any allegation or claim of negligence, strict liability or misconduct of you or your Personnel, (ii) a breach of these Terms, the Program Policies, or any Work Order by you or your Personnel, (iii) any action or inaction by you or any of your Personnel (including, without limitation, any and all loss or damage to personal property or bodily harm (including death)), or (iv) any allegation or claim that you or any of your Personnel failed to comply with applicable Law.  However, the foregoing indemnification obligation does not apply to the extent that any claim subject to indemnification results from the negligence or willful misconduct of the Indemnified Parties.

b.      Your duty to defend is independent of your duty to indemnify.  Your obligations under this Section are independent of any of your other obligations under these Terms.  You will use counsel reasonably satisfactory to the Indemnified Parties to defend each indemnified claim, and the Indemnified Parties will cooperate (at your expense) with you in the defense.  You will not consent to the entry of any judgment or enter into any settlement without the Indemnified Parties' prior written consent.

10.     **Confidentiality; Customer Information; Work Product**.

a.      You will at all times comply with the terms of any nondisclosure agreement executed or otherwise agreed to by you in favor of Amazon and/or its Affiliates (an "<u>NDA</u>").  If no NDA exists, you and your representatives will (i) protect and keep confidential the existence of these Terms (including all Work Orders), their terms and conditions, and any other information obtained from Amazon or any of its representatives that is identified as confidential or proprietary or that, given the nature of such information or the manner of its disclosure, reasonably should be considered confidential or proprietary (including, without limitation, all information relating to Amazon's technology, customers (including Customer Information (as defined below)), business plans, marketing activities, and finances) (collectively, "<u>Confidential Information</u>"), (ii) use Confidential Information solely for the purpose of providing Services, and (iii) return all Confidential Information to Amazon promptly following a request from Amazon.  All Confidential

Information will remain Amazon's exclusive property, and you will have no rights to use Confidential Information except as expressly provided in an NDA or these Terms.

b.        If you are required by any Governmental Authority to disclose the contents of any Deliverable, you will promptly provide Amazon with notice of such requirement.  In such instances, you will use commercially reasonable efforts to (i) ensure that any items removed from a container are promptly put back into the container following the relevant Government Authority's inspection, and (ii) provide Amazon with an audit against the manifest for such items.

c.        Except as expressly set forth in these Terms, the Program Policies, or any Work Order, you will not use any trade name, trademark, service mark, logo or commercial symbol, or any other proprietary rights of Amazon or any of its Affiliates in any manner (including but not limited to use in any client list, press release, advertisement or other promotional material) without the prior written authorization of such use by a Vice President of Amazon.  Without the prior written authorization by a Vice President of Amazon, you will not make any public announcement or other statement (including, without limitation, a press release, response to a media query, advertisement, or other promotional material) in which you refer to Amazon or its Affiliates, these Terms, any Work Order, the Services, or any Confidential Information.

d.        You will, and will cause your Personnel to, use all personally identifiable information concerning Amazon's customers, including names and addresses (collectively, "Customer Information"), solely for the purpose of providing Services. You will comply with all instructions of Amazon in respect of the processing of Customer Information, and you will maintain appropriate technical and organizational security measures to prevent unauthorized use or disclosure of Customer Information.  All Customer Information is and will remain the exclusive property of Amazon, and you will not transfer, rent, barter, trade or sell Customer Information and will not develop lists of or aggregate Customer Information.  Except as otherwise required by applicable Law, you will, and will cause your Personnel to, delete all instances (including backups and other copies) of Customer Information associated with each shipment within two weeks after completing the shipment.  Before disposing of any hardware, media or software (including any sale or transfer of such material or any disposition of your business) that contains or previously contained Customer Information, at Amazon's direction, you will either return such hardware, media or software to Amazon, or perform a complete forensic destruction of the Customer Information (which may include a physical destruction, preferably incineration, or secure data wipe) such that no Customer Information can be recovered or retrieved.  For the avoidance of doubt, the contents of Deliverables tendered by Amazon to you are Customer Information subject to this Section 10.

e.        The parties agree that, between the parties, any information or data arising out of or in connection with the Services, including without limitation any Amazon customer data or Customer Information and any data, analysis or other work specifically commissioned by Amazon and agreed to by you (collectively, "Work Product"), is owned by Amazon. For purposes of these Terms, Work Product does not include: (a) any inventions or developments made by you and existing prior to the Effective Date; or (b) any inventions or developments developed entirely independently by you, at any time, without any use, knowledge of, or reference to, the Confidential Information.  The Work Product has been specially ordered and commissioned by Amazon.  You

agree that the Work Product is a "work made for hire" for copyright purposes, with all copyrights in the Work Product owned by Amazon.  To the extent that the Work Product does not qualify as a work made for hire under applicable Law, and to the extent that the Work Product includes material subject to copyright, trade secret, or other proprietary rights protection, you hereby assign to Amazon (or to such of its Affiliates as it may designate), its successors and assigns, all right, title and interest in and to the Work Product.  To the extent necessary to effect this assignment, you will execute any documents that Amazon reasonably requests.  At any time upon request from Amazon and upon termination or expiration of these Terms, you will deliver to Amazon in tangible form all materials containing Work Product, whether complete or in process.  All Work Product will be Confidential Information that is subject to this <u>Section 10</u>.

11.    **<u>Defined Terms</u>**.

a.     "<u>Affiliate</u>" means, with respect to any entity, any person or other entity that directly or indirectly controls, is controlled by, or is under common control with, such first entity.

b.     "<u>Amazon Contracting Party</u>" means: (i) if the Services are provided in the United States, Amazon Logistics, Inc.; or (ii) if the Services are provided in the United Kingdom, Amazon UK Services Ltd.

c.     "<u>Chosen Courts</u>" means: (i) if the Services are provided in the United States, the federal and state courts in King County, Washington; or (ii) if the Services are provided in the United Kingdom, the courts in England and Wales.

d.     "<u>Delay</u>" means, with respect to any Deliverable, that such Deliverable was not delivered within the delivery window specified by Amazon.

e.     "<u>Deliverables</u>" means parcels, totes or other deliverables tendered by Amazon to you or any of your Personnel.

f.     "<u>Governing Laws</u>" means: (i) if the Services are provided in the United States, the laws of the State of Washington; or (ii) if the Services are provided in the United Kingdom, the laws of England and Wales.

g.     "<u>Governmental Authority</u>" means any governmental, quasi-governmental or regulatory authority, body, department, commission, board, bureau, agency, division, court, securities exchange or other legislative, executive or judicial governmental entity or instrumentality, whether foreign or domestic, of any country, nation, state, county, parish or municipality, jurisdiction or other political subdivision.

h.     "<u>Law</u>" means any national, federal, state, local or foreign statute, common law, ordinance, rule, regulation, order, judgment or agency requirement of, or issued, promulgated or entered into with, any Governmental Authority.

i.     "<u>Personnel</u>" means, with respect to any party, such party's employees, agents, representatives, and subcontractors.  For the avoidance of doubt, your Personnel will include any individual assigned by you to perform the Services.

j.      "<u>Planned Route</u>" means a number of Deliverables in a given area that Amazon plans for a single person and/or Vehicle for delivery on a specific shift and day and that in turn is assigned by you to a specific person and/or Vehicle for delivery on a specific shift and day.

k.      "<u>Program Policies</u>" means any terms, conditions, policies, guidelines and other information of which you are notified in accordance with <u>Section 12.c</u> or that are referenced in these Terms or posted on the Site.

l.      "<u>Service Area</u>" means the zip codes, cities, geographies or other areas with respect to which you provide the Services, as specifically defined in a Work Order.

m.      "<u>Site</u>" means the Amazon Delivery Provider website (or any successor or related website designated by Amazon).

n.      "<u>Taxes</u>" means those applicable sales or use taxes or value added taxes that you are legally obligated to charge.

12.    **<u>Miscellaneous</u>**.

a.      You will not assign any of your rights or obligations under these Terms or any Work Order without Amazon's prior written consent.  Any attempt by you to assign, subcontract or delegate in violation of this Section will be null and void.

b.      These Terms and the Work Orders are governed by the applicable Governing Laws, excluding any conflict of laws rules.  You irrevocably submit to venue and exclusive jurisdiction in the applicable Chosen Courts for any dispute arising out of or relating to these Terms, any Work Order or the Services, and you waive all objections to jurisdiction and venue of the applicable Chosen Courts.

c.      Notices to you under these Terms may be provided by (i) posting a notice on the Site, or (ii) sending a message to the email address then associated with your account.  Notices provided by posting on the Site will be effective upon posting, and notices provided by email will be effective when sent by Amazon.  It is your responsibility to keep your email address current, and you will be deemed to have received any email sent to the email address then associated with your account when Amazon sends the email, whether or not you actually receive it.  Notices to Amazon under these Terms may be provided by (A) facsimile transmission to the number stated in the Program Policies or any applicable Work Order, or (B) pre-paid post requiring signature on receipt or personal delivery to the address stated in the Program Policies or any applicable Work Order.  Amazon may update the facsimile number and/or address for notices to Amazon by posting a notice on the Site.  Notices to Amazon will be deemed effective when delivered in person, when delivered by pre-paid post, or when received by facsimile.

d.      If any provision of these Terms, the Program Policies, or any Work Order is determined to be unenforceable, the parties intend that these Terms, the Program Policies, or the Work Order (as applicable) be enforced as if the unenforceable provisions were not present and

that any partially valid and enforceable provisions be enforced to the extent that they are enforceable.

e.    A party does not waive any right under any provision of these Terms, the Program Policies, or any Work Order by failing to insist on compliance with, or by failing to exercise any right under, the applicable provision.  Any waivers granted under these Terms, the Program Policies, or any Work Order are effective only if recorded in a writing signed by the party granting such waiver.  The rights and remedies of the parties under these Terms, the Program Policies, and any Work Order are cumulative and are not exclusive, and either party may enforce any of its rights or remedies under these Terms, the Program Policies, or any Work Order or other rights and remedies available to it at law or in equity.  The Section headings of these Terms are for convenience only and have no interpretive value.

f.    The following provisions, along with any other provisions that by their nature should survive termination or expiration of these Terms, will survive: Sections 4, 6, 7, 8.b, 8.c, and 9-12.

g.    You acknowledge that any breach of these Terms, the Program Policies, or any Work Order by you or any of your representatives would cause irreparable harm to Amazon for which Amazon has no adequate remedies at law.  Accordingly, Amazon is entitled to specific performance or injunctive relief for any breach of these Terms, the Program Policies, or any Work Order by you or any of your representatives without the necessity of proving damages or posting bond.

h.    Except for your indemnity obligations under Section 9 and liability arising out of your breach of Section 10, neither party will be liable under any circumstances for lost opportunities or profits, consequential, special, punitive, incidental or indirect damages of any kind.  Nothing in these Terms shall limit or exclude either party's liability for any matter that may not be limited or excluded by applicable Law.

i.    You may charge and Amazon will pay Taxes invoiced by you, provided that those Taxes are stated on the original invoice that you provide to Amazon and your invoices state those Taxes separately and meet the appropriate tax requirements for a valid tax invoice, if any.  Amazon may provide you an exemption certificate acceptable to the relevant taxing authority, in which case, you will not collect the Taxes covered by the certificate.  You will be responsible for all other taxes (including interest and penalties) or fees arising from transactions and the documentation of transactions under these Terms and any Work Order.  Amazon will maintain the right to deduct or withhold any taxes that Amazon determines it is obligated to withhold from any amounts payable to you under these Terms or any Work Order, and payment to you as reduced by such deductions or withholdings will constitute full payment and settlement to you of all amounts payable to you under these Terms or any Work Order.  You will provide Amazon with any forms, documents, or certifications as may be required for Amazon to satisfy any information reporting or withholding tax obligations with respect to any payments under these Terms or any Work Order.

j.    These Terms (together with the Program Policies, which are incorporated in these Terms by this reference), any Work Orders, and any NDA constitute the complete and final

agreement of the parties pertaining to the Services and supersede and replace the parties' prior agreements, understandings, representations and discussions (whether written or oral) relating to the Services.

k.     Amazon may modify these Terms (including any Program Policies) at any time by posting a revised version on the Site or by otherwise notifying you in accordance with <u>Section 12.c</u>. The modified Terms will become effective upon posting or, if Amazon notifies you by email, as stated in the email message. By continuing to provide the Services after the effective date of any modification to these Terms, you agree to be bound by the modified Terms. It is your responsibility to check the Site regularly for modifications to these Terms.

l.     The parties may use standard business forms or other communications, but use of such forms is for convenience only and does not alter the provisions of these Terms. NEITHER PARTY WILL BE BOUND BY, AND EACH SPECIFICALLY OBJECTS TO, ANY PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THESE TERMS (WHETHER PROFFERED VERBALLY OR IN ANY QUOTATION, INVOICE, BILL OF LADING, SHIPPING DOCUMENT, ACCEPTANCE, CONFIRMATION, CORRESPONDENCE, OR OTHERWISE).

m.     You will not be liable for your failure or delay in fulfilling your obligations under these Terms, the Program Policies, or any Work Order if such failure or delay is caused by fire, flood, weather conditions or other Acts of God, invasions, riots, closing of public highways, civil unrest, war, or acts of terrorism or any circumstance beyond your reasonable control and without fault or negligence on your part ("<u>Force Majeure</u>"); <u>provided</u>, that (i) you will promptly notify Amazon in writing of the occurrence and details of any event of Force Majeure that has caused, or is likely to cause, you to either delay or fail to perform your obligations under these Terms or any Work Order, and (ii) you will use reasonable efforts to overcome or limit the effects of any such event of Force Majeure on Amazon. If the service interruption caused by the Force Majeure continues for 30 days, either party will have the right to terminate any affected Work Order with respect to the Services not being performed by giving the other party 24 hours' prior written notice. To be effective, such notice must be delivered during the service interruption.

n.     If there is a conflict among these Terms, the Program Policies, and any Work Order, the Program Policies will prevail over these Terms and the Work Order, and the Work Order will prevail over these Terms.

# EXHIBIT 3

DocuSign Envelope ID: 3941B542-812C-484A-9C5C-EF9271F5C62B

**First Amendment
to Work Order
under the Delivery Provider Terms of Service**

This First Amendment to Work Order (this "First Amendment") is effective as of September 30, 2015, and amends that certain Work Order, dated as of September 2, 2015 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this First Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

1.    **Amendment to Schedule B.**  Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

2.    **Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

3.    **No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this First Amendment and the terms of the Work Order, the terms of this First Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this First Amendment.

**Amazon Logistics, Inc.**

By: _Hany Elkordy_
22B0D2660C204EE...

Name: Hany Elkordy

Title: Director, AMZL NA

Date Signed: September 21, 2015

**Scoobeez, Inc.**

By: _Benjamin Art_
91D0B756FE7A4DA...

Name: Benjamin Art

Title: CEO

Date Signed: September 20, 2015

[Signature Page to First Amendment to Work Order]

**Schedule B**

**Distribution Points**

1.  UCA1 – San Francisco, CA

2.  UCA3 – Los Angeles, CA

3.  UCA4 – Irvine, CA

4.  UCA5 – Los Angeles, CA

5.  UNV1 – Las Vegas, NV

DocuSign Envelope ID: 3941B8430-81BC-4814-9D5C-EF52741F5662B

<u>Schedule C</u>

**Fees Payable by Amazon**

**<u>Prime Now</u>**

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $111.00 | $5.00 | $116.00 |
| | 6.5 hours | $169.00 | $5.00 | $174.00 |
| | 8.5 hours | $227.00 | $5.00 | $232.00 |
| | 10.5 hours | $285.00 | $5.00 | $290.00 |
| UCA3, UCA4, and UCA5 | 4.5 hours | $81.00 | $5.00 | $86.00 |
| | 6.5 hours | $124.00 | $5.00 | $129.00 |
| | 8.5 hours | $167.00 | $5.00 | $172.00 |
| | 10.5 hours | $210.00 | $5.00 | $215.00 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

# EXHIBIT 4

**Second Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

This Second Amendment to Work Order (this "Second Amendment") is effective as of October 19, 2015, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Second Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

1.    **Amendment to Schedule B.**  Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

2.    **Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

3.    **No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Second Amendment and the terms of the Work Order, the terms of this Second Amendment will control.

[Signature Page Follows]

        IN WITNESS WHEREOF, properly authorized representatives of the undersigned have
executed this Second Amendment.

**Amazon Logistics, Inc.**

By: _Hany Elkordy_____
        ─── 22B0B2600C204EE...

Name: _Hany Elkordy_____

Title: _Director, AMZL NA_____

Date Signed: _October 9, 2015_____

**Scoobeez, Inc.**

By: _Benjamin Art_____
        ─── 91D0B756FE7A4DA...

Name: _Benjamin Art_____

Title: _CEO_____

Date Signed: _October 8, 2015_____

[Signature Page to Second Amendment to Work Order]

**Schedule B**

**Distribution Points**

1.  UCA1 – San Francisco, CA

2.  UCA3 – Los Angeles, CA

3.  UCA4 – Irvine, CA

4.  UCA5 – Los Angeles, CA

5.  UCA6 – San Diego, CA

6.  UNV1 – Las Vegas, NV

## Schedule C

**Fees Payable by Amazon**

**Prime Now**

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $111.00 | $5.00 | $116.00 |
| | 6.5 hours | $169.00 | $5.00 | $174.00 |
| | 8.5 hours | $227.00 | $5.00 | $232.00 |
| | 10.5 hours | $285.00 | $5.00 | $290.00 |
| UCA3, UCA4, and UCA5 | 4.5 hours | $81.00 | $5.00 | $86.00 |
| | 6.5 hours | $124.00 | $5.00 | $129.00 |
| | 8.5 hours | $167.00 | $5.00 | $172.00 |
| | 10.5 hours | $210.00 | $5.00 | $215.00 |
| UCA6 | 4.5 hours | $75.00 | $5.00 | $80.00 |
| | 6.5 hours | $115.00 | $5.00 | $120.00 |
| | 8.5 hours | $155.00 | $5.00 | $160.00 |
| | 10.5 hours | $195.00 | $5.00 | $200.00 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

# EXHIBIT 5

**Third Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

This Third Amendment to Work Order (this "<u>Third Amendment</u>") is effective as of October 19, 2015, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, and the Second Amendment to Work Order, dated as of October 19, 2015 (the "<u>Work Order</u>"), by and between Scoobeez, Inc., a California corporation ("<u>you</u>") and Amazon Logistics, Inc., a Delaware corporation ("<u>Amazon</u>"). All capitalized terms used and not defined in this Third Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "<u>Terms</u>").

Amazon and you agree as follows:

**1.    Amendment to Schedule A.**  Schedule A to the Work Order is hereby deleted in its entirety and replaced with Schedule A attached hereto.

**2.    Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

**3.    No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Third Amendment and the terms of the Work Order, the terms of this Third Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Third Amendment.

**Amazon Logistics, Inc.**

By: _Hany Elkordy_
 ─────────────────────
 22B0D2660C204EE...

Name: Hany Elkordy
 ─────────────────────

Title: Director, AMZL NA
 ─────────────────────

Date Signed: October 14, 2015
 ─────────────────────

**Scoobeez, Inc.**

By: _Benjamin Art_
 ─────────────────────
 91D8B750FE7A4DA...

Name: Benjamin Art
 ─────────────────────

Title: CEO
 ─────────────────────

Date Signed: October 14, 2015
 ─────────────────────

[Signature Page to Third Amendment to Work Order]

**Schedule A**

**Policies**

<u>Your Personnel; No Subcontractors</u>.

Except as otherwise provided in this Work Order, (a) you will hire and employ all drivers, cyclists, walkers, and other Personnel who are assigned by you to perform the Services under this Work Order, and (b) you will not engage subcontractors to perform the Services without the prior written consent of Amazon.

<u>Tips</u>.

Without limiting the generality of Section 3(c) of the Terms, which requires you to distribute all Tips to your Personnel in accordance with applicable Law, you will distribute each Tip to your specific Personnel who delivered the shipment to which the Tip relates in accordance with the disbursement report derived from Amazon's systems and furnished to you by Amazon.

DocuSign Envelope ID: 5AB98F72-342A44B4-AFE95-04AC70A3E93E

## Schedule C

**Fees Payable by Amazon**

**Prime Now**

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $129.00 | $5.00 | $134.00 |
|  | 6.5 hours | $196.00 | $5.00 | $201.00 |
|  | 8.5 hours | $263.00 | $5.00 | $268.00 |
|  | 10.5 hours | $330.00 | $5.00 | $335.00 |
| UCA3, UCA4, and UCA5 | 4.5 hours | $81.00 | $5.00 | $86.00 |
|  | 6.5 hours | $124.00 | $5.00 | $129.00 |
|  | 8.5 hours | $167.00 | $5.00 | $172.00 |
|  | 10.5 hours | $210.00 | $5.00 | $215.00 |
| UCA6 | 4.5 hours | $75.00 | $5.00 | $80.00 |
|  | 6.5 hours | $115.00 | $5.00 | $120.00 |
|  | 8.5 hours | $155.00 | $5.00 | $160.00 |
|  | 10.5 hours | $195.00 | $5.00 | $200.00 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
|  | 6.5 hours | $112.00 | $5.00 | $117.00 |
|  | 8.5 hours | $151.00 | $5.00 | $156.00 |
|  | 10.5 hours | $190.00 | $5.00 | $195.00 |

# EXHIBIT 6

DocuSign Envelope ID: 2B2EAE3F-15E5-4801-9A62-7B40BE8983FC

**Fourth Amendment
to Work Order
under the Delivery Provider Terms of Service**

This Fourth Amendment to Work Order (this "Fourth Amendment") is effective as of January 17, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, and the Third Amendment to Work Order, dated as of October 19, 2015 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Fourth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

1.    **Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

2.    **No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms. In the event of any conflict between the terms of this Fourth Amendment and the terms of the Work Order, the terms of this Fourth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Fourth Amendment.

**Amazon Logistics, Inc.**

By: _Hany Elkordy_____

Name: _Hany Elkordy_____

Title: _Director, AMZL NA_____

Date Signed: _January 16, 2016_____

**Scoobeez, Inc.**

By: _Benjamin Art_____

Name: _Benjamin Art_____

Title: _CEO_____

Date Signed: _January 16, 2016_____

[Signature Page to Fourth Amendment to Work Order]

### Schedule C

**Fees Payable by Amazon**

**Prime Now**

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $129.00 | $5.00 | $134.00 |
|  | 6.5 hours | $196.00 | $5.00 | $201.00 |
|  | 8.5 hours | $263.00 | $5.00 | $268.00 |
|  | 10.5 hours | $330.00 | $5.00 | $335.00 |
| UCA3, UCA4, UCA5, and UCA6 | 4.5 hours | $86.04 | $5.00 | $91.04 |
|  | 6.5 hours | $131.56 | $5.00 | $136.56 |
|  | 8.5 hours | $174.08 | $5.00 | $182.08 |
|  | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
|  | 6.5 hours | $112.00 | $5.00 | $117.00 |
|  | 8.5 hours | $151.00 | $5.00 | $156.00 |
|  | 10.5 hours | $190.00 | $5.00 | $195.00 |

# EXHIBIT 7

DocuSign Envelope ID: 275A8450-2B4F84B8D-WE5A-3E9734745197

**Fifth Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

This Fifth Amendment to Work Order (this "Fifth Amendment") is effective as of February 14, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, and the Fourth Amendment to Work Order, dated as of January 17, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Fifth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

1.	**Amendment to Schedule B.**  Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

2.	**Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

3.	**No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Fifth Amendment and the terms of the Work Order, the terms of this Fifth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Fifth Amendment.

**Amazon Logistics, Inc.**                          **Scoobeez, Inc.**

By: _Hany Elkordy_____         By: _Benjamin Art_____

Name: _Hany Elkordy_____      Name: _Benjamin Art_____

Title: _Director, AMZL NA_____      Title: _CEO_____

Date Signed: _February 17, 2016___      Date Signed: _February 15, 2016___

## Schedule B

**Distribution Points**

1.  UCA1 – San Francisco, CA

2.  UCA3 – Los Angeles, CA

3.  UCA4 – Irvine, CA

4.  UCA5 – Los Angeles, CA

5.  UCA6 – San Diego, CA

6.  UCA8 – Berkeley, CA

7.  UNV1 – Las Vegas, NV

## Schedule C

**Fees Payable by Amazon**

**Prime Now**

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA3, UCA4, UCA5, and UCA6 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

# EXHIBIT 8

DocuSign Envelope ID: 2B91D4BCE-1272A-4626-9619-9410AB353368

**Sixth Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

      This Sixth Amendment to Work Order (this "Sixth Amendment") is effective as of February 19, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, and the Fifth Amendment to Work Order, dated as of February 14, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Sixth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

      Amazon and you agree as follows:

      **1.**    **Amendment to Schedule B.** Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

      **2.**    **Amendment to Schedule C.** Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

      **3.**    **No Other Amendments; Conflicts.** Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms. In the event of any conflict between the terms of this Sixth Amendment and the terms of the Work Order, the terms of this Sixth Amendment will control.

      [Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Sixth Amendment.

**Amazon Logistics, Inc.**

By: _Hany Elkordy_____
DocuSigned by:
Name: _Hany Elkordy_____
Title: _Director, AMZL NA_____
Date Signed: _February 20, 2016_____

**Scoobeez, Inc.**

By: _Benjamin Art_____
DocuSigned by:
Name: _Benjamin Art_____
Title: _CEO_____
Date Signed: _February 18, 2016_____

[Signature Page to Sixth Amendment to Work Order]

DocuSign Envelope ID: 2B31B4BCE-127BA16625-1A619-9A10AB35368

## Schedule B

### Distribution Points

1. UCA1 – San Francisco, CA

2. UCA3 – Los Angeles, CA

3. UCA4 – Irvine, CA

4. UCA5 – Los Angeles, CA

5. UCA6 – San Diego, CA

6. UCA8 – Berkeley, CA

7. UIL1 – Chicago, IL

8. UNV1 – Las Vegas, NV

### Schedule C

**Fees Payable by Amazon**

**Prime Now**

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA3, UCA4, UCA5, and UCA6 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

# EXHIBIT 9

DocuSign Envelope ID: 5C687707-5D05-4BE0-BAC3-85A3CB58A67A

**Seventh Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

This Seventh Amendment to Work Order (this "Seventh Amendment") is effective as of April 10, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, and the Sixth Amendment to Work Order, dated as of February 19, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon").  All capitalized terms used and not defined in this Seventh Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

**1.**    **Amendment to Schedule B.**  Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

**2.**    **Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

**3.**    **No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Seventh Amendment and the terms of the Work Order, the terms of this Seventh Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Seventh Amendment.

**Amazon Logistics, Inc.**

By: Hany Elkordy
    _____
    228DD2660C2A0EE

Name: Hany Elkordy
    _____

Title: Director, AMZL NA
    _____

Date Signed: April 14, 2016
    _____

**Scoobeez, Inc.**

By: Benjamin Art
    _____
    91D0B766EE7A4DA

Name: Benjamin Art
    _____

Title: CEO
    _____

Date Signed: April 11, 2016
    _____

[Signature Page to Seventh Amendment to Work Order]

DocuSign Envelope ID: 5C687707-5D05-4EE0-BAC3-85A3CBE2AA67

## Schedule B

**Distribution Points**

1.  UCA1 – San Francisco, CA

2.  UCA3 – Los Angeles, CA

3.  UCA4 – Irvine, CA

4.  UCA5 – Los Angeles, CA

5.  UCA6 – San Diego, CA

6.  UCA8 – Berkeley, CA

7.  UCA9 – Sacramento, CA

8.  UIL1 – Chicago, IL

9.  UNV1 – Las Vegas, NV

## Schedule C

### Fees Payable by Amazon

## Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA3, UCA4, UCA5, UCA6, and UCA9 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

# EXHIBIT 10

**Eighth Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

This Eighth Amendment to Work Order (this "Eighth Amendment") is effective as of April 22, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, and the Seventh Amendment to Work Order, dated as of April 10, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Eighth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

1. **Amendment to Schedule B.** Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

2. **Amendment to Schedule C.** Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

3. **No Other Amendments; Conflicts.** Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms. In the event of any conflict between the terms of this Eighth Amendment and the terms of the Work Order, the terms of this Eighth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Eighth Amendment.

**Amazon Logistics, Inc.**

By: _Hany Elkordy_____

Name: _Hany Elkordy_____

Title: _Director, AMZL NA_____

Date Signed: _April 26, 2016_____

**Scoobeez, Inc.**

By: _Benjamin Art_____

Name: _Benjamin Art_____

Title: _CEO_____

Date Signed: _April 26, 2016_____

DocuSign Envelope ID: 8440CE74-4E45-4817-BBC5-2BAEC4D9829E

**Schedule B**

**Distribution Points**

1. UCA1 – San Francisco, CA

2. UCA2 – Redondo Beach, CA

3. UCA3 – Los Angeles, CA

4. UCA4 – Irvine, CA

5. UCA5 – Los Angeles, CA

6. UCA6 – San Diego, CA

7. UCA8 – Berkeley, CA

8. UCA9 – Sacramento, CA

9. UIL1 – Chicago, IL

10. UNV1 – Las Vegas, NV

## Schedule C

### Fees Payable by Amazon

#### Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, UCA4, UCA5, UCA6, and UCA9 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

# EXHIBIT 11

DocuSign Envelope ID: 2F50742C-1620-4766-BF64-B454920D94E7

**Ninth Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

This Ninth Amendment to Work Order (this "Ninth Amendment") is effective as of May 11, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, and the Eighth Amendment to Work Order, dated as of April 22, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Ninth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

**1.** **Amendment to Schedule B.** Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

**2.** **Amendment to Schedule C.** Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

**3.** **No Other Amendments; Conflicts.** Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms. In the event of any conflict between the terms of this Ninth Amendment and the terms of the Work Order, the terms of this Ninth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Ninth Amendment.

**Amazon Logistics, Inc.**

By: _Hany Elkordy_

Name: _Hany Elkordy_

Title: _Director, AMZL NA_

Date Signed: _May 16, 2016_

**Scoobeez, Inc.**

By: _Shahan Ohanessian_

Name: _Shahan Ohanessian_

Title: _CEO_

Date Signed: _May 16, 2016_

[Signature Page to Ninth Amendment to Work Order]

DocuSign Envelope ID: 2F5B742C-162A-4760-BF64-B454B0D04527

**Schedule B**

**Distribution Points**

1. DCH1 – Alsip, IL

2. DCH2 – Chicago, IL

3. DCH3 – Lisle, IL

4. UCA1 – San Francisco, CA

5. UCA2 – Redondo Beach, CA

6. UCA3 – Los Angeles, CA

7. UCA4 – Irvine, CA

8. UCA5 – Los Angeles, CA

9. UCA6 – San Diego, CA

10. UCA8 – Berkeley, CA

11. UCA9 – Sacramento, CA

12. UIL1 – Chicago, IL

13. UNV1 – Las Vegas, NV

## Schedule C

**Fees Payable by Amazon**

## Part I – Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, UCA4, UCA5, UCA6, and UCA9 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

**Part II – Parcel**

| Distribution Point | Duration of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DCH1, DCH2, and DCH3 | 5.5 hours | $190.00 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $210.00 | $5.00 | | |
| | 7.5 hours | $230.00 | $5.00 | | |
| | 8.5 hours | $250.00 | $5.00 | | |
| | 9.5 hours | $271.00 | $5.00 | | |
| | 10.5 hours | $294.00 | $5.00 | | |

1. <u>Base Route Rate</u>. The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2. <u>Fuel Allowance</u>. The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed. For the purposes of this paragraph 2, the applicable index price level (the "<u>Index Price</u>") used to calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm. Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3. <u>Dispatcher Fee</u>. In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed. Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a dispatcher in connection with performing Services. If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4. <u>Uniform and Vehicle Brand Promotion Fee</u>. In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on <u>Schedule D</u> to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on <u>Schedule E</u> to this Work Order, which Amazon may change from time to time. In exchange for your participation, Amazon agrees to provide the identifying logos, marks and insignia that comprise the uniform and vehicle branding specifications. You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5. <u>Unplanned Time</u>. Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours. Such factors may include the late

arrival of a line haul to the Distribution Point and increased volumes on Planned Routes.  In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to $31.00 per hour at DCH1, DCH2, and DCH3.

**Attachment 1 to Part II of Schedule C**

| Index Price (Dollars per Gallon) | | Fuel Allowance |
|---|---|---|
| **From** | **To** | **Dollars per Mile** |
| *$1.20* | *$1.32* | $0.11 |
| *$1.33* | *$1.45* | $0.12 |
| *$1.46* | *$1.58* | $0.13 |
| *$1.59* | *$1.71* | $0.14 |
| *$1.72* | *$1.84* | $0.15 |
| *$1.85* | *$1.97* | $0.16 |
| *$1.98* | *$2.10* | $0.17 |
| *$2.11* | *$2.23* | $0.18 |
| *$2.24* | *$2.36* | $0.19 |
| *$2.37* | *$2.49* | $0.20 |
| *$2.50* | *$2.62* | $0.21 |
| *$2.63* | *$2.75* | $0.22 |
| *$2.76* | *$2.88* | $0.23 |
| *$2.89* | *$3.01* | $0.24 |
| *$3.02* | *$3.14* | $0.25 |
| *$3.15* | *$3.27* | $0.26 |
| *$3.28* | *$3.40* | $0.27 |
| *$3.41* | *$3.53* | $0.28 |
| *$3.54* | *$3.66* | $0.29 |
| *$3.67* | *$3.79* | $0.30 |
| *$3.80* | *$3.92* | $0.31 |
| *$3.93* | *$4.05* | $0.32 |
| *$4.06* | *$4.18* | $0.33 |
| *$4.19* | *$4.31* | $0.34 |
| *$4.32* | *$4.44* | $0.35 |
| *$4.45* | *$4.57* | $0.36 |
| *$4.58* | *$4.70* | $0.37 |
| *$4.71* | *$4.83* | $0.38 |
| *$4.84* | *$4.96* | $0.39 |
| *$4.97* | *$5.09* | $0.40 |
| *$5.10* | *$5.22* | $0.41 |
| *$5.23* | *$5.35* | $0.42 |
| *$5.36* | *$5.48* | $0.43 |
| *$5.49* | *$5.61* | $0.44 |
| *$5.62* | *$5.74* | $0.45 |
| *$5.75* | *$5.87* | $0.46 |
| *$5.88* | *$6.00* | $0.47 |

# EXHIBIT 12

**Tenth Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

This Tenth Amendment to Work Order (this "<u>Tenth Amendment</u>") is effective as of June 2, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, the Eighth Amendment to Work Order, dated as of April 22, 2016, and the Ninth Amendment to Work Order, dated as of May 11, 2016 (the "<u>Work Order</u>"), by and between Scoobeez, Inc., a California corporation ("<u>you</u>") and Amazon Logistics, Inc., a Delaware corporation ("<u>Amazon</u>").  All capitalized terms used and not defined in this Tenth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "<u>Terms</u>").

Amazon and you agree as follows:

**1.**    **<u>Amendment to Schedule B</u>.**  Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

**2.**    **<u>Amendment to Schedule C</u>.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

**3.**    **<u>No Other Amendments; Conflicts</u>.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Tenth Amendment and the terms of the Work Order, the terms of this Tenth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Tenth Amendment.

**Amazon Logistics, Inc.**

By: Hany Elkordy

Name: Hany Elkordy

Title: Director, AMZL NA

Date Signed: June 2, 2016

**Scoobeez, Inc.**

By: Shahan Ohanessian

Name: Shahan Ohanessian

Title: CEO

Date Signed: June 2, 2016

[Signature Page to Tenth Amendment to Work Order]

<u>**Schedule B**</u>

**Distribution Points**

1. DCH1 – Alsip, IL

2. DCH2 – Chicago, IL

3. DCH3 – Lisle, IL

4. DLA3 – Commerce, CA

5. DLA7 – Site location TBD

6. DLA8 – Hawthorne, CA

7. DLA9 – Irvine, CA

8. DSD1 – San Diego, CA

9. DSD2 – Carlsbad, CA

10. DSF3 – San Jose, CA

11. DSF4 – San Leandro, CA

12. DSF5 – San Francisco, CA

13. DSF6 – Richmond, CA

14. UCA1 – San Francisco, CA

15. UCA2 – Redondo Beach, CA

16. UCA3 – Los Angeles, CA

17. UCA4 – Irvine, CA

18. UCA5 – Los Angeles, CA

19. UCA6 – San Diego, CA

20. UCA8 – Berkeley, CA

21. UCA9 – Sacramento, CA

22. UIL1 – Chicago, IL

23. UNV1 – Las Vegas, NV

## Schedule C

**Fees Payable by Amazon**

### Part I – Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, UCA4, UCA5, UCA6, and UCA9 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

**Part II – Parcel**

| Distribution Point | Duration of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DCH1, DCH2, and DCH3 | 5.5 hours | $190.00 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $210.00 | $5.00 | | |
| | 7.5 hours | $230.00 | $5.00 | | |
| | 8.5 hours | $250.00 | $5.00 | | |
| | 9.5 hours | $271.00 | $5.00 | | |
| | 10.5 hours | $294.00 | $5.00 | | |
| DLA3 | 5.5 hours | $174.40 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $188.20 | $5.00 | | |
| | 7.5 hours | $202.00 | $5.00 | | |
| | 8.5 hours | $226.84 | $5.00 | | |
| | 9.5 hours | $248.92 | $5.00 | | |
| | 10.5 hours | $271.00 | $5.00 | | |
| DLA7 | 5.5 hours | $180.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $194.50 | $5.00 | | |
| | 7.5 hours | $208.75 | $5.00 | | |
| | 8.5 hours | $234.40 | $5.00 | | |
| | 9.5 hours | $257.20 | $5.00 | | |
| | 10.5 hours | $280.00 | $5.00 | | |
| DLA8 and DLA9 | 5.5 hours | $181.55 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $195.90 | $5.00 | | |
| | 7.5 hours | $210.25 | $5.00 | | |
| | 8.5 hours | $236.08 | $5.00 | | |
| | 9.5 hours | $259.04 | $5.00 | | |
| | 10.5 hours | $282.00 | $5.00 | | |
| DSD1 and DSD2 | 5.5 hours | $175.70 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $189.60 | $5.00 | | |
| | 7.5 hours | $203.50 | $5.00 | | |
| | 8.5 hours | $228.52 | $5.00 | | |
| | 9.5 hours | $250.76 | $5.00 | | |
| | 10.5 hours | $273.00 | $5.00 | | |
| DSF3 | 5.5 hours | $203.00 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $219.00 | $5.00 | | |
| | 7.5 hours | $235.00 | $5.00 | | |
| | 8.5 hours | $263.80 | $5.00 | | |
| | 9.5 hours | $289.40 | $5.00 | | |
| | 10.5 hours | $315.00 | $5.00 | | |
| DSF4 and DSF5 | 5.5 hours | $206.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $222.50 | $5.00 | | |
| | 7.5 hours | $238.75 | $5.00 | | |
| | 8.5 hours | $268.00 | $5.00 | | |
| | 9.5 hours | $294.00 | $5.00 | | |
| | 10.5 hours | $320.00 | $5.00 | | |
| DSF6 | 5.5 hours | $196.50 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $212.00 | $5.00 | | |
| | 7.5 hours | $227.50 | $5.00 | | |
| | 8.5 hours | $255.40 | $5.00 | | |
| | 9.5 hours | $280.20 | $5.00 | | |
| | 10.5 hours | $305.00 | $5.00 | | |

1. <u>Base Route Rate</u>.  The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2. <u>Fuel Allowance</u>.  The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed.  For the purposes of this paragraph 2, the applicable index price level (the "<u>Index Price</u>") used to calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm.  Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3. <u>Dispatcher Fee</u>.  In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed.  Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a dispatcher in connection with performing Services.  If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4. <u>Uniform and Vehicle Brand Promotion Fee</u>.  In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on <u>Schedule D</u> to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on <u>Schedule E</u> to this Work Order, which Amazon may change from time to time.  In exchange for your participation, Amazon agrees to provide the identifying logos, marks and insignia that comprise the uniform and vehicle branding specifications.  You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5. <u>Unplanned Time</u>.  Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours.  Such factors may include the late arrival of a line haul to the Distribution Point and increased volumes on Planned Routes.  In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to (a) $31.00 per hour at DCH1, DCH2, DCH3, and DSF6, (b) $27.60 per hour at DLA3 and DLA7, (c) $28.70 per hour at DLA8 and DLA9, (d) $27.80 per hour at DSD1 and DSD2, (e) $32.00 per hour at DSF3, and (f) $32.50 per hour at DSF4 and DSF5.

6. <u>Training Routes</u>.  If, at the request of Amazon, one of your new delivery associates accompanies an experienced delivery associate on a Planned Route for training purposes (a "<u>Training Route</u>"), Amazon will pay you (a) $194.35 per Training Route at DLA3, DLA7, DLA8, and DLA9, (b) $179.01 per Training Route at DSD1 and DSD2, (c) $210.64 per Training Route at DSF3, (d) $214.67 per Training Route at DSF4 and DSF5, and (e) $207.91 per Training Route at DSF6.

**Attachment 1 to Part II of Schedule C**

| Index Price (Dollars per Gallon) | | Fuel Allowance |
|---|---|---|
| **From** | **To** | **Dollars per Mile** |
| $1.20 | $1.32 | $0.11 |
| $1.33 | $1.45 | $0.12 |
| $1.46 | $1.58 | $0.13 |
| $1.59 | $1.71 | $0.14 |
| $1.72 | $1.84 | $0.15 |
| $1.85 | $1.97 | $0.16 |
| $1.98 | $2.10 | $0.17 |
| $2.11 | $2.23 | $0.18 |
| $2.24 | $2.36 | $0.19 |
| $2.37 | $2.49 | $0.20 |
| $2.50 | $2.62 | $0.21 |
| $2.63 | $2.75 | $0.22 |
| $2.76 | $2.88 | $0.23 |
| $2.89 | $3.01 | $0.24 |
| $3.02 | $3.14 | $0.25 |
| $3.15 | $3.27 | $0.26 |
| $3.28 | $3.40 | $0.27 |
| $3.41 | $3.53 | $0.28 |
| $3.54 | $3.66 | $0.29 |
| $3.67 | $3.79 | $0.30 |
| $3.80 | $3.92 | $0.31 |
| $3.93 | $4.05 | $0.32 |
| $4.06 | $4.18 | $0.33 |
| $4.19 | $4.31 | $0.34 |
| $4.32 | $4.44 | $0.35 |
| $4.45 | $4.57 | $0.36 |
| $4.58 | $4.70 | $0.37 |
| $4.71 | $4.83 | $0.38 |
| $4.84 | $4.96 | $0.39 |
| $4.97 | $5.09 | $0.40 |
| $5.10 | $5.22 | $0.41 |
| $5.23 | $5.35 | $0.42 |
| $5.36 | $5.48 | $0.43 |
| $5.49 | $5.61 | $0.44 |
| $5.62 | $5.74 | $0.45 |
| $5.75 | $5.87 | $0.46 |
| $5.88 | $6.00 | $0.47 |

# EXHIBIT 13

### EleventhAmendment
### to Work Order
### under the Delivery Provider Terms of Service

This Eleventh Amendment to Work Order (this "Eleventh Amendment") is effective as of July 26, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, the Eighth Amendment to Work Order, dated as of April 22, 2016, the Ninth Amendment to Work Order, dated as of May 11, 2016, and the Tenth Amendment to Work Order, dated as of June 2, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Eleventh Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

1.      **Amendment to Schedule B.**  Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

2.      **Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

3.      **No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Eleventh Amendment and the terms of the Work Order, the terms of this Eleventh Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Eleventh Amendment.

**Amazon Logistics, Inc.**

By: _Hany Elkordy_____
22B0D2660C204EE...

Name: _Hany Elkordy_____

Title: _Director, AMZL NA_____

Date Signed: _July 28, 2016_____

**Scoobeez, Inc.**

By: _Shahan Ohanessian_____
6A09B756EE74f2A...

Name: _Shahan Ohanessian_____

Title: _CEO_____

Date Signed: _July 28, 2016_____

[Signature Page to Eleventh Amendment to Work Order]

DocuSign Envelope ID: 2B4F0610-DD2B4835-4EA-4PCC535759B

### Schedule B

### Distribution Points

1.   DCH1 – Alsip, IL

2.   DCH2 – Chicago, IL

3.   DCH3 – Lisle, IL

4.   DLA1 – Inglewood, CA

5.   DLA2 – Buena Park, CA

6.   DLA3 – Commerce, CA

7.   DLA4 – Los Angeles, CA

8.   DLA7 – Site location TBD

9.   DLA8 – Hawthorne, CA

10.  DLA9 – Irvine, CA

11.  DSD1 – San Diego, CA

12.  DSD2 – Carlsbad, CA

13.  DSF3 – San Jose, CA

14.  DSF4 – San Leandro, CA

15.  DSF5 – San Francisco, CA

16.  DSF6 – Richmond, CA

17.  UCA1 – San Francisco, CA

18.  UCA2 – Redondo Beach, CA

19.  UCA3 – Los Angeles, CA

20.  UCA4 – Irvine, CA

21.  UCA5 – Los Angeles, CA

22.  UCA6 – San Diego, CA

23.  UCA8 – Berkeley, CA

24.  UCA9 – Sacramento, CA

25. UIL1 – Chicago, IL

26. UNV1 – Las Vegas, NV

## Schedule C

### Fees Payable by Amazon

## Part I – Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, UCA4, UCA5, UCA6, and UCA9 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

**Part II – Parcel**

| Distribution Point | Duration of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DCH1, DCH2, and DCH3 | 5.5 hours | $190.00 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $210.00 | $5.00 | | |
| | 7.5 hours | $230.00 | $5.00 | | |
| | 8.5 hours | $250.00 | $5.00 | | |
| | 9.5 hours | $271.00 | $5.00 | | |
| | 10.5 hours | $294.00 | $5.00 | | |
| DLA1, DLA2, DLA3, and DLA4 | 5.5 hours | $174.40 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $188.20 | $5.00 | | |
| | 7.5 hours | $202.00 | $5.00 | | |
| | 8.5 hours | $226.84 | $5.00 | | |
| | 9.5 hours | $248.92 | $5.00 | | |
| | 10.5 hours | $271.00 | $5.00 | | |
| DLA7 | 5.5 hours | $180.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $194.50 | $5.00 | | |
| | 7.5 hours | $208.75 | $5.00 | | |
| | 8.5 hours | $234.40 | $5.00 | | |
| | 9.5 hours | $257.20 | $5.00 | | |
| | 10.5 hours | $280.00 | $5.00 | | |
| DLA8 and DLA9 | 5.5 hours | $181.55 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $195.90 | $5.00 | | |
| | 7.5 hours | $210.25 | $5.00 | | |
| | 8.5 hours | $236.08 | $5.00 | | |
| | 9.5 hours | $259.04 | $5.00 | | |
| | 10.5 hours | $282.00 | $5.00 | | |
| DSD1 and DSD2 | 5.5 hours | $175.70 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $189.60 | $5.00 | | |
| | 7.5 hours | $203.50 | $5.00 | | |
| | 8.5 hours | $228.52 | $5.00 | | |
| | 9.5 hours | $250.76 | $5.00 | | |
| | 10.5 hours | $273.00 | $5.00 | | |
| DSF3 | 5.5 hours | $203.00 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $219.00 | $5.00 | | |
| | 7.5 hours | $235.00 | $5.00 | | |
| | 8.5 hours | $263.80 | $5.00 | | |
| | 9.5 hours | $289.40 | $5.00 | | |
| | 10.5 hours | $315.00 | $5.00 | | |
| DSF4 and DSF5 | 5.5 hours | $206.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $222.50 | $5.00 | | |
| | 7.5 hours | $238.75 | $5.00 | | |
| | 8.5 hours | $268.00 | $5.00 | | |
| | 9.5 hours | $294.00 | $5.00 | | |
| | 10.5 hours | $320.00 | $5.00 | | |
| DSF6 | 5.5 hours | $196.50 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $212.00 | $5.00 | | |
| | 7.5 hours | $227.50 | $5.00 | | |
| | 8.5 hours | $255.40 | $5.00 | | |
| | 9.5 hours | $280.20 | $5.00 | | |
| | 10.5 hours | $305.00 | $5.00 | | |

1.  <u>Base Route Rate</u>.  The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2.  <u>Fuel Allowance</u>.  The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed. For the purposes of this paragraph 2, the applicable index price level (the "<u>Index Price</u>") used to calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm. Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3.  <u>Dispatcher Fee</u>.  In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed.  Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a dispatcher in connection with performing Services.  If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4.  <u>Uniform and Vehicle Brand Promotion Fee</u>.  In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on <u>Schedule D</u> to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on <u>Schedule E</u> to this Work Order, which Amazon may change from time to time.  In exchange for your participation, Amazon agrees to provide the identifying logos, marks and insignia that comprise the uniform and vehicle branding specifications.  You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5.  <u>Unplanned Time</u>.  Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours.  Such factors may include the late arrival of a line haul to the Distribution Point and increased volumes on Planned Routes.  In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to (a) $31.00 per hour at DCH1, DCH2, DCH3, and DSF6, (b) $27.60 per hour at DLA1, DLA2, DLA3, DLA4, and DLA7, (c) $28.70 per hour at DLA8 and DLA9, (d) $27.80 per hour at DSD1 and DSD2, (e) $32.00 per hour at DSF3, and (f) $32.50 per hour at DSF4 and DSF5.

6.  <u>Training Routes</u>.  If, at the request of Amazon, one of your new delivery associates accompanies an experienced delivery associate on a Planned Route for training purposes (a "<u>Training Route</u>"), Amazon will pay you (a) $194.35 per Training Route at DLA1, DLA2, DLA3, DLA4, DLA7, DLA8, and DLA9, (b) $179.01 per Training Route at DSD1 and DSD2, (c) $210.64 per Training Route at DSF3, (d) $214.67 per Training Route at DSF4 and DSF5, and (e) $207.91 per Training Route at DSF6.

**Attachment 1 to Part II of Schedule C**

| Index Price (Dollars per Gallon) | | Fuel Allowance |
|---|---|---|
| **From** | **To** | **Dollars per Mile** |
| *$1.20* | *$1.32* | $0.11 |
| *$1.33* | *$1.45* | $0.12 |
| *$1.46* | *$1.58* | $0.13 |
| *$1.59* | *$1.71* | $0.14 |
| *$1.72* | *$1.84* | $0.15 |
| *$1.85* | *$1.97* | $0.16 |
| *$1.98* | *$2.10* | $0.17 |
| *$2.11* | *$2.23* | $0.18 |
| *$2.24* | *$2.36* | $0.19 |
| *$2.37* | *$2.49* | $0.20 |
| *$2.50* | *$2.62* | $0.21 |
| *$2.63* | *$2.75* | $0.22 |
| *$2.76* | *$2.88* | $0.23 |
| *$2.89* | *$3.01* | $0.24 |
| *$3.02* | *$3.14* | $0.25 |
| *$3.15* | *$3.27* | $0.26 |
| *$3.28* | *$3.40* | $0.27 |
| *$3.41* | *$3.53* | $0.28 |
| *$3.54* | *$3.66* | $0.29 |
| *$3.67* | *$3.79* | $0.30 |
| *$3.80* | *$3.92* | $0.31 |
| *$3.93* | *$4.05* | $0.32 |
| *$4.06* | *$4.18* | $0.33 |
| *$4.19* | *$4.31* | $0.34 |
| *$4.32* | *$4.44* | $0.35 |
| *$4.45* | *$4.57* | $0.36 |
| *$4.58* | *$4.70* | $0.37 |
| *$4.71* | *$4.83* | $0.38 |
| *$4.84* | *$4.96* | $0.39 |
| *$4.97* | *$5.09* | $0.40 |
| *$5.10* | *$5.22* | $0.41 |
| *$5.23* | *$5.35* | $0.42 |
| *$5.36* | *$5.48* | $0.43 |
| *$5.49* | *$5.61* | $0.44 |
| *$5.62* | *$5.74* | $0.45 |
| *$5.75* | *$5.87* | $0.46 |
| *$5.88* | *$6.00* | $0.47 |

# EXHIBIT 14

**Twelfth Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

This Twelfth Amendment to Work Order (this "<u>Twelfth Amendment</u>") is effective as of August 14, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, the Eighth Amendment to Work Order, dated as of April 22, 2016, the Ninth Amendment to Work Order, dated as of May 11, 2016, the Tenth Amendment to Work Order, dated as of June 2, 2016, and the Eleventh Amendment to Work Order, dated as of July 26, 2016 (the "<u>Work Order</u>"), by and between Scoobeez, Inc., a California corporation ("<u>you</u>") and Amazon Logistics, Inc., a Delaware corporation ("<u>Amazon</u>").  All capitalized terms used and not defined in this Twelfth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "<u>Terms</u>").

Amazon and you agree as follows:

1.      **Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

2.      **No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Twelfth Amendment and the terms of the Work Order, the terms of this Twelfth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Twelfth Amendment.

**Amazon Logistics, Inc.**

By: Hany Elkordy

Name: Hany Elkordy

Title: Director, AMZL NA

Date Signed: August 13, 2016

**Scoobeez, Inc.**

By: Shahan Ohanessian

Name: Shahan Ohanessian

Title: CEO

Date Signed: August 13, 2016

[Signature Page to Twelfth Amendment to Work Order]

## Schedule C

### Fees Payable by Amazon

## Part I – Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, UCA4, UCA5, UCA6, and UCA9 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

At UCA8, in addition to the applicable Planned Route rate set forth in the table above, Amazon will pay you $2.50 per delivery for Amazon Fresh deliveries only.

**Part II – Parcel**

| Distribution Point | Duration of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DCH1, DCH2, and DCH3 | 5.5 hours | $190.00 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $210.00 | $5.00 | | |
| | 7.5 hours | $230.00 | $5.00 | | |
| | 8.5 hours | $250.00 | $5.00 | | |
| | 9.5 hours | $271.00 | $5.00 | | |
| | 10.5 hours | $294.00 | $5.00 | | |
| DLA1, DLA2, DLA3, and DLA4 | 5.5 hours | $174.40 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $188.20 | $5.00 | | |
| | 7.5 hours | $202.00 | $5.00 | | |
| | 8.5 hours | $226.84 | $5.00 | | |
| | 9.5 hours | $248.92 | $5.00 | | |
| | 10.5 hours | $271.00 | $5.00 | | |
| DLA7 | 5.5 hours | $180.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $194.50 | $5.00 | | |
| | 7.5 hours | $208.75 | $5.00 | | |
| | 8.5 hours | $234.40 | $5.00 | | |
| | 9.5 hours | $257.20 | $5.00 | | |
| | 10.5 hours | $280.00 | $5.00 | | |
| DLA8 and DLA9 | 5.5 hours | $181.55 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $195.90 | $5.00 | | |
| | 7.5 hours | $210.25 | $5.00 | | |
| | 8.5 hours | $236.08 | $5.00 | | |
| | 9.5 hours | $259.04 | $5.00 | | |
| | 10.5 hours | $282.00 | $5.00 | | |
| DSD1 and DSD2 | 5.5 hours | $175.70 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $189.60 | $5.00 | | |
| | 7.5 hours | $203.50 | $5.00 | | |
| | 8.5 hours | $228.52 | $5.00 | | |
| | 9.5 hours | $250.76 | $5.00 | | |
| | 10.5 hours | $273.00 | $5.00 | | |
| DSF3 | 5.5 hours | $203.00 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $219.00 | $5.00 | | |
| | 7.5 hours | $235.00 | $5.00 | | |
| | 8.5 hours | $263.80 | $5.00 | | |
| | 9.5 hours | $289.40 | $5.00 | | |
| | 10.5 hours | $315.00 | $5.00 | | |
| DSF4 and DSF5 | 5.5 hours | $206.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $222.50 | $5.00 | | |
| | 7.5 hours | $238.75 | $5.00 | | |
| | 8.5 hours | $268.00 | $5.00 | | |
| | 9.5 hours | $294.00 | $5.00 | | |
| | 10.5 hours | $320.00 | $5.00 | | |
| DSF6 | 5.5 hours | $196.50 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $212.00 | $5.00 | | |
| | 7.5 hours | $227.50 | $5.00 | | |
| | 8.5 hours | $255.40 | $5.00 | | |
| | 9.5 hours | $280.20 | $5.00 | | |
| | 10.5 hours | $305.00 | $5.00 | | |

DocuSign Envelope ID: 3DA6968B-D7B5a180D-B5A5-C5E5730852A8

1. <u>Base Route Rate</u>.  The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2. <u>Fuel Allowance</u>.  The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed. For the purposes of this paragraph 2, the applicable index price level (the "<u>Index Price</u>") used to calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm.  Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3. <u>Dispatcher Fee</u>.  In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed.  Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a dispatcher in connection with performing Services.  If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4. <u>Uniform and Vehicle Brand Promotion Fee</u>.  In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on <u>Schedule D</u> to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on <u>Schedule E</u> to this Work Order, which Amazon may change from time to time.  In exchange for your participation, Amazon agrees to provide the identifying logos, marks and insignia that comprise the uniform and vehicle branding specifications.  You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5. <u>Unplanned Time</u>.  Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours.  Such factors may include the late arrival of a line haul to the Distribution Point and increased volumes on Planned Routes.  In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to (a) $31.00 per hour at DCH1, DCH2, DCH3, and DSF6, (b) $27.60 per hour at DLA1, DLA2, DLA3, DLA4, and DLA7, (c) $28.70 per hour at DLA8 and DLA9, (d) $27.80 per hour at DSD1 and DSD2, (e) $32.00 per hour at DSF3, and (f) $32.50 per hour at DSF4 and DSF5.

6. <u>Training Routes</u>.  If, at the request of Amazon, one of your new delivery associates accompanies an experienced delivery associate on a Planned Route for training purposes (a "<u>Training Route</u>"), Amazon will pay you (a) $194.35 per Training Route at DLA1, DLA2, DLA3, DLA4, DLA7, DLA8, and DLA9, (b) $179.01 per Training Route at DSD1 and DSD2, (c) $210.64 per Training Route at DSF3, (d) $214.67 per Training Route at DSF4 and DSF5, and (e) $207.91 per Training Route at DSF6.

### Attachment 1 to Part II of Schedule C

| Index Price (Dollars per Gallon) | | Fuel Allowance |
|---|---|---|
| From | To | Dollars per Mile |
| $1.20 | $1.32 | $0.11 |
| $1.33 | $1.45 | $0.12 |
| $1.46 | $1.58 | $0.13 |
| $1.59 | $1.71 | $0.14 |
| $1.72 | $1.84 | $0.15 |
| $1.85 | $1.97 | $0.16 |
| $1.98 | $2.10 | $0.17 |
| $2.11 | $2.23 | $0.18 |
| $2.24 | $2.36 | $0.19 |
| $2.37 | $2.49 | $0.20 |
| $2.50 | $2.62 | $0.21 |
| $2.63 | $2.75 | $0.22 |
| $2.76 | $2.88 | $0.23 |
| $2.89 | $3.01 | $0.24 |
| $3.02 | $3.14 | $0.25 |
| $3.15 | $3.27 | $0.26 |
| $3.28 | $3.40 | $0.27 |
| $3.41 | $3.53 | $0.28 |
| $3.54 | $3.66 | $0.29 |
| $3.67 | $3.79 | $0.30 |
| $3.80 | $3.92 | $0.31 |
| $3.93 | $4.05 | $0.32 |
| $4.06 | $4.18 | $0.33 |
| $4.19 | $4.31 | $0.34 |
| $4.32 | $4.44 | $0.35 |
| $4.45 | $4.57 | $0.36 |
| $4.58 | $4.70 | $0.37 |
| $4.71 | $4.83 | $0.38 |
| $4.84 | $4.96 | $0.39 |
| $4.97 | $5.09 | $0.40 |
| $5.10 | $5.22 | $0.41 |
| $5.23 | $5.35 | $0.42 |
| $5.36 | $5.48 | $0.43 |
| $5.49 | $5.61 | $0.44 |
| $5.62 | $5.74 | $0.45 |
| $5.75 | $5.87 | $0.46 |
| $5.88 | $6.00 | $0.47 |

Case 2:19-bk-14989-WB    Doc 349    Filed 10/01/19    Entered 10/01/19 18:00:45    Desc
Main Document    Page 108 of 184

# EXHIBIT 15

DocuSign Envelope ID: 2F0E9BB2-3D49-48A9-AB75-A912047C62C

**Thirteenth Amendment
to Work Order
under the Delivery Provider Terms of Service**

This Thirteenth Amendment to Work Order (this "Thirteenth Amendment") is effective as of August 28, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, the Eighth Amendment to Work Order, dated as of April 22, 2016, the Ninth Amendment to Work Order, dated as of May 11, 2016, the Tenth Amendment to Work Order, dated as of June 2, 2016, the Eleventh Amendment to Work Order, dated as of July 26, 2016, and the Twelfth Amendment to Work Order, dated as of August 14, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Thirteenth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

1. **Amendment to Schedule B.** Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

2. **Amendment to Schedule C.** Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

3. **No Other Amendments; Conflicts.** Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms. In the event of any conflict between the terms of this Thirteenth Amendment and the terms of the Work Order, the terms of this Thirteenth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Thirteenth Amendment.

**Amazon Logistics, Inc.**

By: _Harry Elkordy_

Name: _Harry Elkordy_

Title: _Director, AMZL NA_

Date Signed: _August 20, 2016_

**Scoobeez, Inc.**

By: _Shahan Ohanessian_

Name: _Shahan Ohanessian_

Title: _CEO_

Date Signed: _August 20, 2016_

[Signature Page to Thirteenth Amendment to Work Order]

**Schedule B**

**Distribution Points**

1.  DCH1 – Alsip, IL

2.  DCH2 – Chicago, IL

3.  DCH3 – Lisle, IL

4.  DDA1 – Farmers Branch, TX

5.  DDA2 – Garland, TX

6.  DDA3 – Ft. Worth, TX

7.  DLA1 – Inglewood, CA

8.  DLA2 – Buena Park, CA

9.  DLA3 – Commerce, CA

10. DLA4 – Los Angeles, CA

11. DLA7 – Site location TBD

12. DLA8 – Hawthorne, CA

13. DLA9 – Irvine, CA

14. DMI1 – Miami, FL

15. DMI2 – Miami Gardens, FL

16. DMI3 – Miami, FL

17. DSD1 – San Diego, CA

18. DSD2 – Carlsbad, CA

19. DSF3 – San Jose, CA

20. DSF4 – San Leandro, CA

21. DSF5 – San Francisco, CA

22. DSF6 – Richmond, CA

23. UCA1 – San Francisco, CA

24. UCA2 – Redondo Beach, CA

25. UCA3 – Los Angeles, CA

26. UCA4 – Irvine, CA

27. UCA5 – Los Angeles, CA

28. UCA6 – San Diego, CA

29. UCA8 – Berkeley, CA

30. UCA9 – Sacramento, CA

31. UIL1 – Chicago, IL

32. UNV1 – Las Vegas, NV

## Schedule C

### Fees Payable by Amazon

**Part I – Prime Now**

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, UCA4, UCA5, UCA6, and UCA9 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

At UCA8, in addition to the applicable Planned Route rate set forth in the table above, Amazon will pay you $2.50 per delivery for Amazon Fresh deliveries only.

**Part II – Parcel**

| Distribution Point | Duration of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DCH1, DCH2, and DCH3 | 5.5 hours | $190.00 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $210.00 | $5.00 | | |
| | 7.5 hours | $230.00 | $5.00 | | |
| | 8.5 hours | $250.00 | $5.00 | | |
| | 9.5 hours | $271.00 | $5.00 | | |
| | 10.5 hours | $294.00 | $5.00 | | |
| DDA1, DDA2, and DDA3 | 5.5 hours | $163.20 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $184.00 | $5.00 | | |
| | 7.5 hours | $194.50 | $5.00 | | |
| | 8.5 hours | $220.00 | $5.00 | | |
| | 9.5 hours | $244.00 | $5.00 | | |
| | 10.5 hours | $251.10 | $5.00 | | |
| DLA1, DLA2, DLA3, and DLA4 | 5.5 hours | $174.40 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $188.20 | $5.00 | | |
| | 7.5 hours | $202.00 | $5.00 | | |
| | 8.5 hours | $226.84 | $5.00 | | |
| | 9.5 hours | $248.92 | $5.00 | | |
| | 10.5 hours | $271.00 | $5.00 | | |
| DLA7 | 5.5 hours | $180.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $194.50 | $5.00 | | |
| | 7.5 hours | $208.75 | $5.00 | | |
| | 8.5 hours | $234.40 | $5.00 | | |
| | 9.5 hours | $257.20 | $5.00 | | |
| | 10.5 hours | $280.00 | $5.00 | | |
| DLA8 and DLA9 | 5.5 hours | $181.55 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $195.90 | $5.00 | | |
| | 7.5 hours | $210.25 | $5.00 | | |
| | 8.5 hours | $236.08 | $5.00 | | |
| | 9.5 hours | $259.04 | $5.00 | | |
| | 10.5 hours | $282.00 | $5.00 | | |
| DMI1 | 5.5 hours | $197.12 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $202.55 | $5.00 | | |
| | 7.5 hours | $220.39 | $5.00 | | |
| | 8.5 hours | $233.83 | $5.00 | | |
| | 9.5 hours | $239.98 | $5.00 | | |
| | 10.5 hours | $249.98 | $5.00 | | |
| DMI2 and DMI3 | 5.5 hours | $169.79 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $181.29 | $5.00 | | |
| | 7.5 hours | $193.12 | $5.00 | | |
| | 8.5 hours | $211.92 | $5.00 | | |
| | 9.5 hours | $230.79 | $5.00 | | |
| | 10.5 hours | $248.25 | $5.00 | | |
| DSD1 and DSD2 | 5.5 hours | $175.70 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $189.60 | $5.00 | | |
| | 7.5 hours | $203.50 | $5.00 | | |
| | 8.5 hours | $228.52 | $5.00 | | |
| | 9.5 hours | $250.76 | $5.00 | | |
| | 10.5 hours | $273.00 | $5.00 | | |

| DSF3 | 5.5 hours | $203.00 | $5.00 | $1,500.00 | See below. |
|---|---|---|---|---|---|
| | 6.5 hours | $219.00 | $5.00 | | |
| | 7.5 hours | $235.00 | $5.00 | | |
| | 8.5 hours | $263.80 | $5.00 | | |
| | 9.5 hours | $289.40 | $5.00 | | |
| | 10.5 hours | $315.00 | $5.00 | | |
| DSF4 and DSF5 | 5.5 hours | $206.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $222.50 | $5.00 | | |
| | 7.5 hours | $238.75 | $5.00 | | |
| | 8.5 hours | $268.00 | $5.00 | | |
| | 9.5 hours | $294.00 | $5.00 | | |
| | 10.5 hours | $320.00 | $5.00 | | |
| DSF6 | 5.5 hours | $196.50 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $212.00 | $5.00 | | |
| | 7.5 hours | $227.50 | $5.00 | | |
| | 8.5 hours | $255.40 | $5.00 | | |
| | 9.5 hours | $280.20 | $5.00 | | |
| | 10.5 hours | $305.00 | $5.00 | | |

1. <u>Base Route Rate</u>.  The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2. <u>Fuel Allowance</u>.  The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed.  For the purposes of this paragraph 2, the applicable index price level (the "<u>Index Price</u>") used to calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm.  Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3. <u>Dispatcher Fee</u>.  In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed.  Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a dispatcher in connection with performing Services.  If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4. <u>Uniform and Vehicle Brand Promotion Fee</u>.  In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on <u>Schedule D</u> to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on <u>Schedule E</u> to this Work Order, which Amazon may change from time to time.  In exchange for your participation, Amazon agrees to provide the identifying logos, marks and

Exhibit A - page 116

DocuSign Envelope ID: 2B0B9B82-3D4848A8-AB75-A91984759A2C

insignia that comprise the uniform and vehicle branding specifications.  You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5. <u>Unplanned Time</u>.  Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours.  Such factors may include the late arrival of a line haul to the Distribution Point and increased volumes on Planned Routes.  In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to (a) $29.00 per hour at DDA1, DDA2, and DDA3, (b) $31.00 per hour at DCH1, DCH2, DCH3, and DSF6, (c) $27.60 per hour at DLA1, DLA2, DLA3, DLA4, and DLA7, (d) $28.70 per hour at DLA8 and DLA9, (e) $28.50 per hour at DMI1, DMI2, and DMI3, (f) $27.80 per hour at DSD1 and DSD2, (g) $32.00 per hour at DSF3, and (h) $32.50 per hour at DSF4 and DSF5.

6. <u>Training Routes</u>.  If, at the request of Amazon, one of your new delivery associates accompanies an experienced delivery associate on a Planned Route for training purposes (a "<u>Training Route</u>"), Amazon will pay you (a) $189.60 per Training Route at DDA1, DDA2, and DDA3, (b) $194.35 per Training Route at DLA1, DLA2, DLA3, DLA4, DLA7, DLA8, and DLA9, (c) $160.00 per Training Route at DMI1, DMI2, and DMI3, (d) $179.01 per Training Route at DSD1 and DSD2, (e) $210.64 per Training Route at DSF3, (f) $214.67 per Training Route at DSF4 and DSF5, and (g) $207.91 per Training Route at DSF6.

## Attachment 1 to Part II of Schedule C

| Index Price (Dollars per Gallon) | | Fuel Allowance |
| --- | --- | --- |
| From | To | Dollars per Mile |
| $1.20 | $1.32 | $0.11 |
| $1.33 | $1.45 | $0.12 |
| $1.46 | $1.58 | $0.13 |
| $1.59 | $1.71 | $0.14 |
| $1.72 | $1.84 | $0.15 |
| $1.85 | $1.97 | $0.16 |
| $1.98 | $2.10 | $0.17 |
| $2.11 | $2.23 | $0.18 |
| $2.24 | $2.36 | $0.19 |
| $2.37 | $2.49 | $0.20 |
| $2.50 | $2.62 | $0.21 |
| $2.63 | $2.75 | $0.22 |
| $2.76 | $2.88 | $0.23 |
| $2.89 | $3.01 | $0.24 |
| $3.02 | $3.14 | $0.25 |
| $3.15 | $3.27 | $0.26 |
| $3.28 | $3.40 | $0.27 |
| $3.41 | $3.53 | $0.28 |
| $3.54 | $3.66 | $0.29 |
| $3.67 | $3.79 | $0.30 |
| $3.80 | $3.92 | $0.31 |
| $3.93 | $4.05 | $0.32 |
| $4.06 | $4.18 | $0.33 |
| $4.19 | $4.31 | $0.34 |
| $4.32 | $4.44 | $0.35 |
| $4.45 | $4.57 | $0.36 |
| $4.58 | $4.70 | $0.37 |
| $4.71 | $4.83 | $0.38 |
| $4.84 | $4.96 | $0.39 |
| $4.97 | $5.09 | $0.40 |
| $5.10 | $5.22 | $0.41 |
| $5.23 | $5.35 | $0.42 |
| $5.36 | $5.48 | $0.43 |
| $5.49 | $5.61 | $0.44 |
| $5.62 | $5.74 | $0.45 |
| $5.75 | $5.87 | $0.46 |
| $5.88 | $6.00 | $0.47 |

Case 2:19-bk-14989-WB    Doc 349    Filed 10/01/19    Entered 10/01/19 18:00:45    Desc
Main Document      Page 116 of 168

# EXHIBIT 16

**Fourteenth Amendment
to Work Order
under the Delivery Provider Terms of Service**

       This Fourteenth Amendment to Work Order (this "Fourteenth Amendment") is effective as of September 18, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, the Eighth Amendment to Work Order, dated as of April 22, 2016, the Ninth Amendment to Work Order, dated as of May 11, 2016, the Tenth Amendment to Work Order, dated as of June 2, 2016, the Eleventh Amendment to Work Order, dated as of July 26, 2016, the Twelfth Amendment to Work Order, dated as of August 14, 2016, and the Thirteenth Amendment to Work Order, dated as of August 28, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Fourteenth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

       Amazon and you agree as follows:

       **1.**     **Amendment to Schedule B.**  Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

       **2.**     **Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

       **3.**     **No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Fourteenth Amendment and the terms of the Work Order, the terms of this Fourteenth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Fourteenth Amendment.

**Amazon Logistics, Inc.**                    **Scoobeez, Inc.**

By: _Hany Elkordy_____            By: _Shahan Ohanessian_____

Name: _Hany Elkordy_____            Name: _Shahan Ohanessian_____

Title: _Director, AMZL NA_____            Title: _CEO_____

Date Signed: _September 11, 2016___          Date Signed: _September 11, 2016___

[Signature Page to Fourteenth Amendment to Work Order]

Exhibit A    page 121

## Schedule B

### Distribution Points

1. DCH1 – Alsip, IL

2. DCH2 – Chicago, IL

3. DCH3 – Lisle, IL

4. DDA1 – Farmers Branch, TX

5. DDA2 – Garland, TX

6. DDA3 – Ft. Worth, TX

7. DLA1 – Inglewood, CA

8. DLA2 – Buena Park, CA

9. DLA3 – Commerce, CA

10. DLA4 – Los Angeles, CA

11. DLA7 – Site location TBD

12. DLA8 – Hawthorne, CA

13. DLA9 – Irvine, CA

14. DMI1 – Miami, FL

15. DMI2 – Miami Gardens, FL

16. DMI3 – Miami, FL

17. DSD1 – San Diego, CA

18. DSD2 – Carlsbad, CA

19. DSF3 – San Jose, CA

20. DSF4 – San Leandro, CA

21. DSF5 – San Francisco, CA

22. DSF6 – Richmond, CA

23. SAT5 – San Antonio, TX

24. UCA1 – San Francisco, CA

25. UCA2 – Redondo Beach, CA

26. UCA3 – Los Angeles, CA

27. UCA4 – Irvine, CA

28. UCA5 – Los Angeles, CA

29. UCA6 – San Diego, CA

30. UCA8 – Berkeley, CA

31. UCA9 – Sacramento, CA

32. UIL1 – Chicago, IL

33. UNV1 – Las Vegas, NV

## Schedule C

### Fees Payable by Amazon

### Part I – Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, UCA4, UCA5, UCA6, and UCA9 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

At UCA8, in addition to the applicable Planned Route rate set forth in the table above, Amazon will pay you $2.50 per delivery for Amazon Fresh deliveries only.

**Part II – Parcel**

| Distribution Point | Duration/Type of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DCH1, DCH2, and DCH3 | 5.5 hours | $190.00 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $210.00 | $5.00 | | |
| | 7.5 hours | $230.00 | $5.00 | | |
| | 8.5 hours | $250.00 | $5.00 | | |
| | 9.5 hours | $271.00 | $5.00 | | |
| | 10.5 hours | $294.00 | $5.00 | | |
| DDA1, DDA2, and DDA3 | 5.5 hours | $163.20 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $184.00 | $5.00 | | |
| | 7.5 hours | $194.50 | $5.00 | | |
| | 8.5 hours | $220.00 | $5.00 | | |
| | 9.5 hours | $244.00 | $5.00 | | |
| | 10.5 hours | $251.10 | $5.00 | | |
| DLA1, DLA2, DLA3, and DLA4 | 5.5 hours | $174.40 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $188.20 | $5.00 | | |
| | 7.5 hours | $202.00 | $5.00 | | |
| | 8.5 hours | $226.84 | $5.00 | | |
| | 9.5 hours | $248.92 | $5.00 | | |
| | 10.5 hours | $271.00 | $5.00 | | |
| DLA7 | 5.5 hours | $180.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $194.50 | $5.00 | | |
| | 7.5 hours | $208.75 | $5.00 | | |
| | 8.5 hours | $234.40 | $5.00 | | |
| | 9.5 hours | $257.20 | $5.00 | | |
| | 10.5 hours | $280.00 | $5.00 | | |
| DLA8 and DLA9 | 5.5 hours | $181.55 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $195.90 | $5.00 | | |
| | 7.5 hours | $210.25 | $5.00 | | |
| | 8.5 hours | $236.08 | $5.00 | | |
| | 9.5 hours | $259.04 | $5.00 | | |
| | 10.5 hours | $282.00 | $5.00 | | |
| DMI1 | 5.5 hours | $197.12 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $202.55 | $5.00 | | |
| | 7.5 hours | $220.39 | $5.00 | | |
| | 8.5 hours | $233.83 | $5.00 | | |
| | 9.5 hours | $239.98 | $5.00 | | |
| | 10.5 hours | $249.98 | $5.00 | | |
| DMI2 and DMI3 | 5.5 hours | $169.79 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $181.29 | $5.00 | | |
| | 7.5 hours | $193.12 | $5.00 | | |
| | 8.5 hours | $211.92 | $5.00 | | |
| | 9.5 hours | $230.79 | $5.00 | | |
| | 10.5 hours | $248.25 | $5.00 | | |
| DSD1 and DSD2 | 5.5 hours | $175.70 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $189.60 | $5.00 | | |
| | 7.5 hours | $203.50 | $5.00 | | |
| | 8.5 hours | $228.52 | $5.00 | | |
| | 9.5 hours | $250.76 | $5.00 | | |
| | 10.5 hours | $273.00 | $5.00 | | |

DocuSign Envelope ID: 2DBA1818-1D45-4A1D-9560-9B4B29358AF5

| Distribution Point | Duration/Type of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DSF3 | 5.5 hours | $203.00 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $219.00 | $5.00 | | |
| | 7.5 hours | $235.00 | $5.00 | | |
| | 8.5 hours | $263.80 | $5.00 | | |
| | 9.5 hours | $289.40 | $5.00 | | |
| | 10.5 hours | $315.00 | $5.00 | | |
| DSF4 and DSF5 | 5.5 hours | $206.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $222.50 | $5.00 | | |
| | 7.5 hours | $238.75 | $5.00 | | |
| | 8.5 hours | $268.00 | $5.00 | | |
| | 9.5 hours | $294.00 | $5.00 | | |
| | 10.5 hours | $320.00 | $5.00 | | |
| DSF6 | 5.5 hours | $196.50 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $212.00 | $5.00 | | |
| | 7.5 hours | $227.50 | $5.00 | | |
| | 8.5 hours | $255.40 | $5.00 | | |
| | 9.5 hours | $280.20 | $5.00 | | |
| | 10.5 hours | $305.00 | $5.00 | | |
| SAT5 | 5.5 hours | $164.06 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $184.15 | $5.00 | | |
| | 7.5 hours | $195.60 | $5.00 | | |
| | 8.5 hours | $211.19 | $5.00 | | |
| | 9.5 hours | $230.12 | $5.00 | | |
| | 10.5 hours | $252.51 | $5.00 | | |
| | Helper (if applicable) | $135.32 | N/A | | |

1. <u>Base Route Rate</u>.  The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2. <u>Fuel Allowance</u>.  The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed. For the purposes of this paragraph 2, the applicable index price level (the "<u>Index Price</u>") used to calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm.  Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3. <u>Dispatcher Fee</u>.  In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed.  Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a

dispatcher in connection with performing Services. If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4. <u>Uniform and Vehicle Brand Promotion Fee</u>. In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on <u>Schedule D</u> to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on <u>Schedule E</u> to this Work Order, which Amazon may change from time to time. In exchange for your participation, Amazon agrees to provide the identifying logos, marks and insignia that comprise the uniform and vehicle branding specifications. You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5. <u>Unplanned Time</u>. Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours. Such factors may include the late arrival of a line haul to the Distribution Point and increased volumes on Planned Routes. In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to (a) $29.00 per hour at DDA1, DDA2, and DDA3, (b) $31.00 per hour at DCH1, DCH2, DCH3, and DSF6, (c) $27.60 per hour at DLA1, DLA2, DLA3, DLA4, and DLA7, (d) $28.70 per hour at DLA8 and DLA9, (e) $28.50 per hour at DMI1, DMI2, and DMI3, (f) $27.80 per hour at DSD1 and DSD2, (g) $32.00 per hour at DSF3, (h) $32.50 per hour at DSF4 and DSF5, and (i) $28.00 per hour at SAT5.

6. <u>Training Routes</u>. If, at the request of Amazon, one of your new delivery associates accompanies an experienced delivery associate on a Planned Route for training purposes (a "<u>Training Route</u>"), Amazon will pay you (a) $189.60 per Training Route at DDA1, DDA2, and DDA3, (b) $194.35 per Training Route at DLA1, DLA2, DLA3, DLA4, DLA7, DLA8, and DLA9, (c) $160.00 per Training Route at DMI1, DMI2, and DMI3, (d) $179.01 per Training Route at DSD1 and DSD2, (e) $210.64 per Training Route at DSF3, (f) $214.67 per Training Route at DSF4 and DSF5, (g) $207.91 per Training Route at DSF6, and (h) $161.56 per Training Route at SAT5.

### Attachment 1 to Part II of Schedule C

| Index Price (Dollars per Gallon) | | Fuel Allowance |
|---|---|---|
| From | To | Dollars per Mile |
| $1.20 | $1.32 | $0.11 |
| $1.33 | $1.45 | $0.12 |
| $1.46 | $1.58 | $0.13 |
| $1.59 | $1.71 | $0.14 |
| $1.72 | $1.84 | $0.15 |
| $1.85 | $1.97 | $0.16 |
| $1.98 | $2.10 | $0.17 |
| $2.11 | $2.23 | $0.18 |
| $2.24 | $2.36 | $0.19 |
| $2.37 | $2.49 | $0.20 |
| $2.50 | $2.62 | $0.21 |
| $2.63 | $2.75 | $0.22 |
| $2.76 | $2.88 | $0.23 |
| $2.89 | $3.01 | $0.24 |
| $3.02 | $3.14 | $0.25 |
| $3.15 | $3.27 | $0.26 |
| $3.28 | $3.40 | $0.27 |
| $3.41 | $3.53 | $0.28 |
| $3.54 | $3.66 | $0.29 |
| $3.67 | $3.79 | $0.30 |
| $3.80 | $3.92 | $0.31 |
| $3.93 | $4.05 | $0.32 |
| $4.06 | $4.18 | $0.33 |
| $4.19 | $4.31 | $0.34 |
| $4.32 | $4.44 | $0.35 |
| $4.45 | $4.57 | $0.36 |
| $4.58 | $4.70 | $0.37 |
| $4.71 | $4.83 | $0.38 |
| $4.84 | $4.96 | $0.39 |
| $4.97 | $5.09 | $0.40 |
| $5.10 | $5.22 | $0.41 |
| $5.23 | $5.35 | $0.42 |
| $5.36 | $5.48 | $0.43 |
| $5.49 | $5.61 | $0.44 |
| $5.62 | $5.74 | $0.45 |
| $5.75 | $5.87 | $0.46 |
| $5.88 | $6.00 | $0.47 |

# EXHIBIT 17

DocuSign Envelope ID: 2F5B78D5-6D95e65D0 AFC1-B7Q3D4B34C04

**Fifteenth Amendment
to Work Order
under the Delivery Provider Terms of Service**

This Fifteenth Amendment to Work Order (this "Fifteenth Amendment") is effective as of September 18, 2016, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, the Eighth Amendment to Work Order, dated as of April 22, 2016, the Ninth Amendment to Work Order, dated as of May 11, 2016, the Tenth Amendment to Work Order, dated as of June 2, 2016, the Eleventh Amendment to Work Order, dated as of July 26, 2016, the Twelfth Amendment to Work Order, dated as of August 14, 2016, the Thirteenth Amendment to Work Order, dated as of August 28, 2016, and the Fourteenth Amendment to Work Order, dated as of September 18, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Fifteenth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

Amazon and you agree as follows:

1. **Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

2. **No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Fifteenth Amendment and the terms of the Work Order, the terms of this Fifteenth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Fifteenth Amendment.

**Amazon Logistics, Inc.**

By: _Shahan Ohanessian_

Name: Shahan Ohanessian

Title: CEO

Date Signed: September 16, 2016

**Scoobeez, Inc.**

By: _Hany Elkordy_

Name: Hany Elkordy

Title: Director, AMZL NA

Date Signed: September 16, 2016

[Signature Page to Fifteenth Amendment to Work Order]

### Schedule C

**Fees Payable by Amazon**

## Part I – Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, UCA4, UCA5, UCA6, and UCA9 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

At UCA8, in addition to the applicable Planned Route rate set forth in the table above, Amazon will pay you $5.00 per delivery for Amazon Fresh deliveries only, effective as of September 4, 2016.

## Part II – Parcel

| Distribution Point | Duration/Type of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DCH1, DCH2, and DCH3 | 5.5 hours | $190.00 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $210.00 | $5.00 | | |
| | 7.5 hours | $230.00 | $5.00 | | |
| | 8.5 hours | $250.00 | $5.00 | | |
| | 9.5 hours | $271.00 | $5.00 | | |
| | 10.5 hours | $294.00 | $5.00 | | |
| DDA1, DDA2, and DDA3 | 5.5 hours | $163.20 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $184.00 | $5.00 | | |
| | 7.5 hours | $194.50 | $5.00 | | |
| | 8.5 hours | $220.00 | $5.00 | | |
| | 9.5 hours | $244.00 | $5.00 | | |
| | 10.5 hours | $251.10 | $5.00 | | |
| DLA1, DLA2, DLA3, and DLA4 | 5.5 hours | $174.40 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $188.20 | $5.00 | | |
| | 7.5 hours | $202.00 | $5.00 | | |
| | 8.5 hours | $226.84 | $5.00 | | |
| | 9.5 hours | $248.92 | $5.00 | | |
| | 10.5 hours | $271.00 | $5.00 | | |
| | Same Day Planned Route (7 hours) | Your Vehicle: $222.00<br><br>Delivery Associate Personal Vehicle: $205.00 | $5.00 | | |
| DLA7 | 5.5 hours | $180.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $194.50 | $5.00 | | |
| | 7.5 hours | $208.75 | $5.00 | | |
| | 8.5 hours | $234.40 | $5.00 | | |
| | 9.5 hours | $257.20 | $5.00 | | |
| | 10.5 hours | $280.00 | $5.00 | | |
| | Same Day Planned Route (7 hours) | Your Vehicle: $222.00<br><br>Delivery Associate Personal Vehicle: $205.00 | $5.00 | | |
| DLA8 and DLA9 | 5.5 hours | $181.55 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $195.90 | $5.00 | | |
| | 7.5 hours | $210.25 | $5.00 | | |
| | 8.5 hours | $236.08 | $5.00 | | |
| | 9.5 hours | $259.04 | $5.00 | | |
| | 10.5 hours | $282.00 | $5.00 | | |
| | Same Day Planned Route (7 hours) | Your Vehicle: $222.00<br><br>Delivery Associate Personal Vehicle: $205.00 | $5.00 | | |
| DMI1 | 5.5 hours | $197.12 | $5.00 | $1,450.00 | See below. |

| Distribution Point | Duration/Type of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| | 6.5 hours | $202.55 | $5.00 | | |
| | 7.5 hours | $220.39 | $5.00 | | |
| | 8.5 hours | $233.83 | $5.00 | | |
| | 9.5 hours | $239.98 | $5.00 | | |
| | 10.5 hours | $249.98 | $5.00 | | |
| DMI2 and DMI3 | 5.5 hours | $169.79 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $181.29 | $5.00 | | |
| | 7.5 hours | $193.12 | $5.00 | | |
| | 8.5 hours | $211.92 | $5.00 | | |
| | 9.5 hours | $230.79 | $5.00 | | |
| | 10.5 hours | $248.25 | $5.00 | | |
| DSD1 and DSD2 | 5.5 hours | $175.70 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $189.60 | $5.00 | | |
| | 7.5 hours | $203.50 | $5.00 | | |
| | 8.5 hours | $228.52 | $5.00 | | |
| | 9.5 hours | $250.76 | $5.00 | | |
| | 10.5 hours | $273.00 | $5.00 | | |
| DSF3 | 5.5 hours | $203.00 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $219.00 | $5.00 | | |
| | 7.5 hours | $235.00 | $5.00 | | |
| | 8.5 hours | $263.80 | $5.00 | | |
| | 9.5 hours | $289.40 | $5.00 | | |
| | 10.5 hours | $315.00 | $5.00 | | |
| DSF4 and DSF5 | 5.5 hours | $206.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $222.50 | $5.00 | | |
| | 7.5 hours | $238.75 | $5.00 | | |
| | 8.5 hours | $268.00 | $5.00 | | |
| | 9.5 hours | $294.00 | $5.00 | | |
| | 10.5 hours | $320.00 | $5.00 | | |
| DSF6 | 5.5 hours | $196.50 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $212.00 | $5.00 | | |
| | 7.5 hours | $227.50 | $5.00 | | |
| | 8.5 hours | $255.40 | $5.00 | | |
| | 9.5 hours | $280.20 | $5.00 | | |
| | 10.5 hours | $305.00 | $5.00 | | |
| SAT5 | 5.5 hours | $164.06 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $184.15 | $5.00 | | |
| | 7.5 hours | $195.60 | $5.00 | | |
| | 8.5 hours | $211.19 | $5.00 | | |
| | 9.5 hours | $230.12 | $5.00 | | |
| | 10.5 hours | $252.51 | $5.00 | | |
| | Helper (if applicable) | $135.32 | N/A | | |

1.  <u>Base Route Rate</u>.  The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2.  <u>Fuel Allowance</u>.  The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed.

For the purposes of this paragraph 2, the applicable index price level (the "Index Price") used to calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm. Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3.  Dispatcher Fee.  In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed.  Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a dispatcher in connection with performing Services.  If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4.  Uniform and Vehicle Brand Promotion Fee.  In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on Schedule D to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on Schedule E to this Work Order, which Amazon may change from time to time.  In exchange for your participation, Amazon agrees to provide the identifying logos, marks and insignia that comprise the uniform and vehicle branding specifications.  You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5.  Unplanned Time.  Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours.  Such factors may include the late arrival of a line haul to the Distribution Point and increased volumes on Planned Routes.  In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to (a) $29.00 per hour at DDA1, DDA2, and DDA3, (b) $31.00 per hour at DCH1, DCH2, DCH3, and DSF6, (c) $27.60 per hour at DLA1, DLA2, DLA3, DLA4, and DLA7, (d) $28.70 per hour at DLA8 and DLA9, (e) $28.50 per hour at DMI1, DMI2, and DMI3, (f) $27.80 per hour at DSD1 and DSD2, (g) $32.00 per hour at DSF3, (h) $32.50 per hour at DSF4 and DSF5, and (i) $28.00 per hour at SAT5.

6.  Training Routes.  If, at the request of Amazon, one of your new delivery associates accompanies an experienced delivery associate on a Planned Route for training purposes (a "Training Route"), Amazon will pay you (a) $189.60 per Training Route at DDA1, DDA2, and DDA3, (b) $194.35 per Training Route at DLA1, DLA2, DLA3, DLA4, DLA7, DLA8, and DLA9, (c) $160.00 per Training Route at DMI1, DMI2, and DMI3, (d) $179.01 per Training Route at DSD1 and DSD2, (e) $210.64 per Training Route at DSF3, (f) $214.67 per Training Route at DSF4 and DSF5, (g) $207.91 per Training Route at DSF6, and (h) $161.56 per Training Route at SAT5.

### Attachment 1 to Part II of Schedule C

| Index Price (Dollars per Gallon) | | Fuel Allowance |
|---|---|---|
| **From** | **To** | **Dollars per Mile** |
| *$1.20* | *$1.32* | $0.11 |
| *$1.33* | *$1.45* | $0.12 |
| *$1.46* | *$1.58* | $0.13 |
| *$1.59* | *$1.71* | $0.14 |
| *$1.72* | *$1.84* | $0.15 |
| *$1.85* | *$1.97* | $0.16 |
| *$1.98* | *$2.10* | $0.17 |
| *$2.11* | *$2.23* | $0.18 |
| *$2.24* | *$2.36* | $0.19 |
| *$2.37* | *$2.49* | $0.20 |
| *$2.50* | *$2.62* | $0.21 |
| *$2.63* | *$2.75* | $0.22 |
| *$2.76* | *$2.88* | $0.23 |
| *$2.89* | *$3.01* | $0.24 |
| *$3.02* | *$3.14* | $0.25 |
| *$3.15* | *$3.27* | $0.26 |
| *$3.28* | *$3.40* | $0.27 |
| *$3.41* | *$3.53* | $0.28 |
| *$3.54* | *$3.66* | $0.29 |
| *$3.67* | *$3.79* | $0.30 |
| *$3.80* | *$3.92* | $0.31 |
| *$3.93* | *$4.05* | $0.32 |
| *$4.06* | *$4.18* | $0.33 |
| *$4.19* | *$4.31* | $0.34 |
| *$4.32* | *$4.44* | $0.35 |
| *$4.45* | *$4.57* | $0.36 |
| *$4.58* | *$4.70* | $0.37 |
| *$4.71* | *$4.83* | $0.38 |
| *$4.84* | *$4.96* | $0.39 |
| *$4.97* | *$5.09* | $0.40 |
| *$5.10* | *$5.22* | $0.41 |
| *$5.23* | *$5.35* | $0.42 |
| *$5.36* | *$5.48* | $0.43 |
| *$5.49* | *$5.61* | $0.44 |
| *$5.62* | *$5.74* | $0.45 |
| *$5.75* | *$5.87* | $0.46 |
| *$5.88* | *$6.00* | $0.47 |

# EXHIBIT 18

**Sixteenth Amendment**
**to Work Order**
**under the Delivery Provider Terms of Service**

This Sixteenth Amendment to Work Order (this "Sixteenth Amendment") is effective as of January 1, 2017, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, the Eighth Amendment to Work Order, dated as of April 22, 2016, the Ninth Amendment to Work Order, dated as of May 11, 2016, the Tenth Amendment to Work Order, dated as of June 2, 2016, the Eleventh Amendment to Work Order, dated as of July 26, 2016, the Twelfth Amendment to Work Order, dated as of August 14, 2016, the Thirteenth Amendment to Work Order, dated as of August 28, 2016, the Fourteenth Amendment to Work Order, dated as of September 18, 2016, and the Fifteenth Amendment to Work Order, dated as of September 18, 2016 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Sixteenth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

1.    **Amendment to Schedule B.**  Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

2.    **Amendment to Schedule C.**  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

3.    **No Other Amendments; Conflicts.**  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Sixteenth Amendment and the terms of the Work Order, the terms of this Sixteenth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Sixteenth Amendment.

**Amazon Logistics, Inc.**

By: _Penny Register-Shaw_____
Name: _Penny Register-Shaw_____
Title: _Director Contractor Relations_____
Date Signed: _January 17, 2017_____

**Scoobeez, Inc.**

By: _Shahan Ohanessian_____
Name: _Shahan Ohanessian_____
Title: _CEO_____
Date Signed: _January 17, 2017_____

[Signature Page to Sixteenth Amendment to Work Order]

<u>**Schedule B**</u>

**Distribution Points**

1. DAU1 – Austin, TX

2. DCH1 – Alsip, IL

3. DCH2 – Chicago, IL

4. DCH3 – Lisle, IL

5. DDA1 – Farmers Branch, TX

6. DDA2 – Garland, TX

7. DDA3 – Ft. Worth, TX

8. DLA1 – Inglewood, CA

9. DLA2 – Buena Park, CA

10. DLA3 – Commerce, CA

11. DLA4 – Los Angeles, CA

12. DLA7 – Site location TBD

13. DLA8 – Hawthorne, CA

14. DLA9 – Irvine, CA

15. DMI1 – Miami, FL

16. DMI2 – Miami Gardens, FL

17. DMI3 – Miami, FL

18. DSD1 – San Diego, CA

19. DSD2 – Carlsbad, CA

20. DSF3 – San Jose, CA

21. DSF4 – San Leandro, CA

22. DSF5 – San Francisco, CA

23. DSF6 – Richmond, CA

24. SAT5 – San Antonio, TX

25. UCA1 – San Francisco, CA

26. UCA2 – Redondo Beach, CA

27. UCA3 – Los Angeles, CA

28. UCA4 – Irvine, CA

29. UCA5 – Los Angeles, CA

30. UCA6 – San Diego, CA

31. UCA8 – Berkeley, CA

32. UCA9 – Sacramento, CA

33. UIL1 – Chicago, IL

34. UNV1 – Las Vegas, NV

**Schedule C**

**Fees Payable by Amazon**

## Part I – Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, and UCA5 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA4, UCA6, and UCA9 | 2 hours | $43.70 | $5.00 | $48.70 |
| | 4 hours | $92.40 | $5.00 | $97.40 |
| | 6 hours | $141.10 | $5.00 | $146.10 |
| | 8 hours | $189.80 | $5.00 | $194.80 |
| | 9 hours | $214.15 | $5.00 | $219.15 |
| | 10 hours | $238.50 | $5.00 | $243.50 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

At UCA8, in addition to the applicable Planned Route rate set forth in the table above, Amazon will pay you $5.00 per delivery for Amazon Fresh deliveries only, effective as of September 4, 2016.

**Part II – Parcel**

| Distribution Point | Duration/Type of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DAU1 | 5.5 hours | $ 177.11 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $ 184.55 | $5.00 | | |
| | 7.5 hours | $ 196.23 | $5.00 | | |
| | 8.5 hours | $ 216.05 | $5.00 | | |
| | 9.5 hours | $ 235.57 | $5.00 | | |
| | 10.5 hours | $ 279.00 | $5.00 | | |
| | Same Day Planned Route (6.5 hours) | $ 184.55 | $5.00 | | |
| DCH1, DCH2, and DCH3 | 5.5 hours | $190.00 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $210.00 | $5.00 | | |
| | 7.5 hours | $230.00 | $5.00 | | |
| | 8.5 hours | $250.00 | $5.00 | | |
| | 9.5 hours | $271.00 | $5.00 | | |
| | 10.5 hours | $294.00 | $5.00 | | |
| DDA1, DDA2, and DDA3 | 5.5 hours | $163.20 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $184.00 | $5.00 | | |
| | 7.5 hours | $194.50 | $5.00 | | |
| | 8.5 hours | $220.00 | $5.00 | | |
| | 9.5 hours | $244.00 | $5.00 | | |
| | 10.5 hours | $251.10 | $5.00 | | |
| DLA1, DLA2, DLA3, and DLA4 | 5.5 hours | $174.40 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $188.20 | $5.00 | | |
| | 7.5 hours | $202.00 | $5.00 | | |
| | 8.5 hours | $226.84 | $5.00 | | |
| | 9.5 hours | $248.92 | $5.00 | | |
| | 10.5 hours | $271.00 | $5.00 | | |
| | Same Day Planned Route (7 hours) | Your Vehicle: $222.00  Delivery Associate Personal Vehicle: $205.00 | $5.00 | | |
| DLA7 | 5.5 hours | $180.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $194.50 | $5.00 | | |
| | 7.5 hours | $208.75 | $5.00 | | |
| | 8.5 hours | $234.40 | $5.00 | | |
| | 9.5 hours | $257.20 | $5.00 | | |
| | 10.5 hours | $280.00 | $5.00 | | |
| | Same Day Planned Route (7 hours) | Your Vehicle: $222.00  Delivery Associate Personal Vehicle: $205.00 | $5.00 | | |
| DLA8 and DLA9 | 5.5 hours | $181.55 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $195.90 | $5.00 | | |
| | 7.5 hours | $210.25 | $5.00 | | |

| Distribution Point | Duration/Type of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| | 8.5 hours | $236.08 | $5.00 | | |
| | 9.5 hours | $259.04 | $5.00 | | |
| | 10.5 hours | $282.00 | $5.00 | | |
| | Same Day Planned Route (7 hours) | Your Vehicle: $222.00 <br><br> Delivery Associate Personal Vehicle: $205.00 | $5.00 | | |
| DMI1 | 5.5 hours | $197.12 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $202.55 | $5.00 | | |
| | 7.5 hours | $220.39 | $5.00 | | |
| | 8.5 hours | $233.83 | $5.00 | | |
| | 9.5 hours | $239.98 | $5.00 | | |
| | 10.5 hours | $249.98 | $5.00 | | |
| DMI2 and DMI3 | 5.5 hours | $169.79 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $181.29 | $5.00 | | |
| | 7.5 hours | $193.12 | $5.00 | | |
| | 8.5 hours | $211.92 | $5.00 | | |
| | 9.5 hours | $230.79 | $5.00 | | |
| | 10.5 hours | $248.25 | $5.00 | | |
| DSD1 and DSD2 | 5.5 hours | $175.70 | $5.00 | $1,400.00 | See below. |
| | 6.5 hours | $189.60 | $5.00 | | |
| | 7.5 hours | $203.50 | $5.00 | | |
| | 8.5 hours | $228.52 | $5.00 | | |
| | 9.5 hours | $250.76 | $5.00 | | |
| | 10.5 hours | $273.00 | $5.00 | | |
| DSF3 | 5.5 hours | $203.00 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $219.00 | $5.00 | | |
| | 7.5 hours | $235.00 | $5.00 | | |
| | 8.5 hours | $263.80 | $5.00 | | |
| | 9.5 hours | $289.40 | $5.00 | | |
| | 10.5 hours | $315.00 | $5.00 | | |
| DSF4 and DSF5 | 5.5 hours | $206.25 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $222.50 | $5.00 | | |
| | 7.5 hours | $238.75 | $5.00 | | |
| | 8.5 hours | $268.00 | $5.00 | | |
| | 9.5 hours | $294.00 | $5.00 | | |
| | 10.5 hours | $320.00 | $5.00 | | |
| DSF6 | 5.5 hours | $196.50 | $5.00 | $1,500.00 | See below. |
| | 6.5 hours | $212.00 | $5.00 | | |
| | 7.5 hours | $227.50 | $5.00 | | |
| | 8.5 hours | $255.40 | $5.00 | | |
| | 9.5 hours | $280.20 | $5.00 | | |
| | 10.5 hours | $305.00 | $5.00 | | |
| SAT5 | 5.5 hours | $164.06 | $5.00 | $1,450.00 | See below. |
| | 6.5 hours | $184.15 | $5.00 | | |
| | 7.5 hours | $195.60 | $5.00 | | |
| | 8.5 hours | $211.19 | $5.00 | | |
| | 9.5 hours | $230.12 | $5.00 | | |
| | 10.5 hours | $252.51 | $5.00 | | |

| Distribution Point | Duration/Type of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
|  | Helper (if applicable) | $135.32 | N/A |  |  |

1. <u>Base Route Rate</u>.  The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2. <u>Fuel Allowance</u>.  The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed. For the purposes of this paragraph 2, the applicable index price level (the "<u>Index Price</u>") used to calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm. Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3. <u>Dispatcher Fee</u>.  In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed. Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a dispatcher in connection with performing Services. If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4. <u>Uniform and Vehicle Brand Promotion Fee</u>.  In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on <u>Schedule D</u> to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on <u>Schedule E</u> to this Work Order, which Amazon may change from time to time. In exchange for your participation, Amazon agrees to provide the identifying logos, marks and insignia that comprise the uniform and vehicle branding specifications. You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5. <u>Unplanned Time</u>. Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours. Such factors may include the late arrival of a line haul to the Distribution Point and increased volumes on Planned Routes. In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to (a) $29.00 per hour at DDA1, DDA2, and DDA3, (b) $31.00 per hour at DCH1, DCH2, DCH3, and DSF6, (c) $27.60 per hour at DLA1, DLA2, DLA3, DLA4, and DLA7, (d) $28.70 per hour at DLA8 and DLA9, (e) $28.50 per hour at DMI1, DMI2, and DMI3, (f) $27.80 per hour at

DSD1 and DSD2, (g) $32.00 per hour at DSF3, (h) $32.50 per hour at DSF4 and DSF5, (i) $28.00 per hour at SAT5, and (j) $30.00 per hour at DAU1.

6. <u>Training Routes</u>.  If, at the request of Amazon, one of your new delivery associates accompanies an experienced delivery associate on a Planned Route for training purposes (a "<u>Training Route</u>"), Amazon will pay you (a) $189.60 per Training Route at DDA1, DDA2, and DDA3, (b) $194.35 per Training Route at DLA1, DLA2, DLA3, DLA4, DLA7, DLA8, and DLA9, (c) $160.00 per Training Route at DMI1, DMI2, and DMI3, (d) $179.01 per Training Route at DSD1 and DSD2, (e) $210.64 per Training Route at DSF3, (f) $214.67 per Training Route at DSF4 and DSF5, (g) $207.91 per Training Route at DSF6, (h) $161.56 per Training Route at SAT5, and (i) $173.63 per Training Route at DAU1.

## Attachment 1 to Part II of Schedule C

| Index Price (Dollars per Gallon) | | Fuel Allowance |
|---|---|---|
| **From** | **To** | **Dollars per Mile** |
| *$1.20* | *$1.32* | $0.11 |
| *$1.33* | *$1.45* | $0.12 |
| *$1.46* | *$1.58* | $0.13 |
| *$1.59* | *$1.71* | $0.14 |
| *$1.72* | *$1.84* | $0.15 |
| *$1.85* | *$1.97* | $0.16 |
| *$1.98* | *$2.10* | $0.17 |
| *$2.11* | *$2.23* | $0.18 |
| *$2.24* | *$2.36* | $0.19 |
| *$2.37* | *$2.49* | $0.20 |
| *$2.50* | *$2.62* | $0.21 |
| *$2.63* | *$2.75* | $0.22 |
| *$2.76* | *$2.88* | $0.23 |
| *$2.89* | *$3.01* | $0.24 |
| *$3.02* | *$3.14* | $0.25 |
| *$3.15* | *$3.27* | $0.26 |
| *$3.28* | *$3.40* | $0.27 |
| *$3.41* | *$3.53* | $0.28 |
| *$3.54* | *$3.66* | $0.29 |
| *$3.67* | *$3.79* | $0.30 |
| *$3.80* | *$3.92* | $0.31 |
| *$3.93* | *$4.05* | $0.32 |
| *$4.06* | *$4.18* | $0.33 |
| *$4.19* | *$4.31* | $0.34 |
| *$4.32* | *$4.44* | $0.35 |
| *$4.45* | *$4.57* | $0.36 |
| *$4.58* | *$4.70* | $0.37 |
| *$4.71* | *$4.83* | $0.38 |
| *$4.84* | *$4.96* | $0.39 |
| *$4.97* | *$5.09* | $0.40 |
| *$5.10* | *$5.22* | $0.41 |
| *$5.23* | *$5.35* | $0.42 |
| *$5.36* | *$5.48* | $0.43 |
| *$5.49* | *$5.61* | $0.44 |
| *$5.62* | *$5.74* | $0.45 |
| *$5.75* | *$5.87* | $0.46 |
| *$5.88* | *$6.00* | $0.47 |

# EXHIBIT 19

DocuSign Envelope ID: 2A4500AC-12E9-49D4-4315-B3280732FEC

**Seventeenth Amendment
to Work Order
under the Delivery Provider Terms of Service**

This Seventeenth Amendment to Work Order (this "Seventeenth Amendment") is effective as of April 9, 2017, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, the Eighth Amendment to Work Order, dated as of April 22, 2016, the Ninth Amendment to Work Order, dated as of May 11, 2016, the Tenth Amendment to Work Order, dated as of June 2, 2016, the Eleventh Amendment to Work Order, dated as of July 26, 2016, the Twelfth Amendment to Work Order, dated as of August 14, 2016, the Thirteenth Amendment to Work Order, dated as of August 28, 2016, the Fourteenth Amendment to Work Order, dated as of September 18, 2016, the Fifteenth Amendment to Work Order, dated as of September 18, 2016, and the Sixteenth Amendment to Work Order, dated as of January 1, 2017 (the "Work Order"), by and between Scoobeez, Inc., a California corporation ("you") and Amazon Logistics, Inc., a Delaware corporation ("Amazon"). All capitalized terms used and not defined in this Seventeenth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "Terms").

1. **Amendment to Schedule B.** Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

2. **Amendment to Schedule C.** Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

3. **No Other Amendments; Conflicts.** Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms. In the event of any conflict between the terms of this Seventeenth Amendment and the terms of the Work Order, the terms of this Seventeenth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Seventeenth Amendment.

**Amazon Logistics, Inc.**

By: _Penny Register-Shaw_

Name: Penny Register-Shaw

Title: Director Contractor Relations

Date Signed: April 11, 2017

**Scoobeez, Inc.**

By: _Shahan Ohanessian_

Name: Shahan Ohanessian

Title: CEO

Date Signed: April 11, 2017

[Signature Page to Seventeenth Amendment to Work Order]

<u>**Schedule B**</u>

**Distribution Points**

1. DAU1 – Austin, TX

2. DCH1 – Alsip, IL

3. DCH2 – Chicago, IL

4. DCH3 – Lisle, IL

5. DDA1 – Farmers Branch, TX

6. DDA2 – Garland, TX

7. DDA3 – Ft. Worth, TX

8. DLA1 – Inglewood, CA

9. DLA2 – Buena Park, CA

10. DLA3 – Commerce, CA

11. DLA4 – Los Angeles, CA

12. DLA7 – Site location TBD

13. DLA8 – Hawthorne, CA

14. DLA9 – Irvine, CA

15. DMI1 – Miami, FL

16. DMI2 – Miami Gardens, FL

17. DMI3 – Miami, FL

18. DSD1 – San Diego, CA

19. DSD2 – Carlsbad, CA

20. DSF3 – San Jose, CA

21. DSF4 – San Leandro, CA

22. DSF5 – San Francisco, CA

23. DSF6 – Richmond, CA

24. SAT5 – San Antonio, TX

25. UCA1 – San Francisco, CA

26. UCA2 – Redondo Beach, CA

27. UCA3 – Los Angeles, CA

28. UCA4 – Irvine, CA

29. UCA5 – Los Angeles, CA

30. UCA6 – San Diego, CA

31. UCA8 – Berkeley, CA

32. UCA9 – Sacramento, CA

33. UIL1 – Chicago, IL

34. UNV1 – Las Vegas, NV

<u>Schedule C</u>

**Fees Payable by Amazon**

## Part I – Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, and UCA5 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA4, UCA6, and UCA9 | 2 hours | $43.70 | $5.00 | $48.70 |
| | 4 hours | $92.40 | $5.00 | $97.40 |
| | 6 hours | $141.10 | $5.00 | $146.10 |
| | 8 hours | $189.80 | $5.00 | $194.80 |
| | 9 hours | $214.15 | $5.00 | $219.15 |
| | 10 hours | $238.50 | $5.00 | $243.50 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

At UCA8, in addition to the applicable Planned Route rate set forth in the table above, Amazon will pay you $5.00 per delivery for Amazon Fresh deliveries only, effective as of September 4, 2016.

**Part II – Parcel**

| Distribution Point | Duration/Type of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DAU1 | 5.5 hours | $198.36 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $206.70 | $5.00 | | |
| | 7.5 hours | $219.78 | $5.00 | | |
| | 8.5 hours | $241.98 | $5.00 | | |
| | 9.5 hours | $263.84 | $5.00 | | |
| | 10.5 hours | $312.48 | $5.00 | | |
| | Same Day Planned Route (6.5 hours) | $198.36 | $5.00 | | |
| DCH1 | 5.5 hours | $214.70 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $237.30 | $5.00 | | |
| | 7.5 hours | $259.90 | $5.00 | | |
| | 8.5 hours | $282.50 | $5.00 | | |
| | 9.5 hours | $306.23 | $5.00 | | |
| | 10.5 hours | $332.22 | $5.00 | | |
| | Same Day Planned Route (6.5 hours) | $222.60 | $5.00 | | |
| DCH2, and DCH3 | 5.5 hours | $212.80 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $235.20 | $5.00 | | |
| | 7.5 hours | $257.60 | $5.00 | | |
| | 8.5 hours | $280.00 | $5.00 | | |
| | 9.5 hours | $303.52 | $5.00 | | |
| | 10.5 hours | $329.28 | $5.00 | | |
| | Same Day Planned Route (6.5 hours) | $291.76 | $5.00 | | |
| DDA1, DDA2, and DDA3 | 5.5 hours | $182.78 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $206.08 | $5.00 | | |
| | 7.5 hours | $217.84 | $5.00 | | |
| | 8.5 hours | $246.40 | $5.00 | | |
| | 9.5 hours | $273.28 | $5.00 | | |
| | 10.5 hours | $281.23 | $5.00 | | |

| | Same Day Planned Route (5.5 hours) | $182.78 | $5.00 | | |
|---|---|---|---|---|---|
| DLA1, DLA2, DLA3, DLA4 | 5.5 hours | $190.34 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $205.40 | $5.00 | | |
| | 7.5 hours | $220.46 | $5.00 | | |
| | 8.5 hours | $247.57 | $5.00 | | |
| | 9.5 hours | $271.67 | $5.00 | | |
| | 10.5 hours | $295.77 | $5.00 | | |
| | Same Day Planned Route (6 hours) | Your Vehicle: $205.4 | | | |
| | | Delivery Associate Personal Vehicle: $205.40 | $5.00 | | |
| DLA8 | 5.5 hours | $194.37 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $209.73 | $5.00 | | |
| | 7.5 hours | $225.09 | $5.00 | | |
| | 8.5 hours | $252.75 | $5.00 | | |
| | 9.5 hours | $277.33 | $5.00 | | |
| | 10.5 hours | $301.91 | $5.00 | | |
| | Same Day Planned Route (6 hours) | Your Vehicle: $194.36 | | | |
| | | Delivery Associate Personal Vehicle: $194.36 | $5.00 | | |
| DLA9 | 5.5 hours | $190.63 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $205.70 | $5.00 | | |
| | 7.5 hours | $220.76 | $5.00 | | |
| | 8.5 hours | $247.88 | $5.00 | | |
| | 9.5 hours | $271.99 | $5.00 | | |
| | 10.5 hours | $296.10 | $5.00 | | |
| | Same Day Planned Route (6 hours) | Your Vehicle: $210.95 | $5.00 | | |

AMAZON.COM LEGAL

|  |  | Delivery Associate Personal Vehicle: $210.95 |  |  |  |
|---|---|---|---|---|---|
| DSF4 | 5.5 hours | $206.25 | $5.00 | $1,800.00 | See below. |
|  | 6.5 hours | $222.50 | $5.00 |  |  |
|  | 7.5 hours | $238.75 | $5.00 |  |  |
|  | 8.5 hours | $268.00 | $5.00 |  |  |
|  | 9.5 hours | $294.00 | $5.00 |  |  |
|  | 10.5 hours | $325.00 | $5.00 |  |  |
|  | Same Day Planned Route (5.5 hours) | $210.00 | $5.00 |  |  |
| DSF5 | 5.5 hours | $233.96 | $5.00 | $1,800.00 | See below. |
|  | 6.5 hours | $252.40 | $5.00 |  |  |
|  | 7.5 hours | $270.83 | $5.00 |  |  |
|  | 8.5 hours | $304.01 | $5.00 |  |  |
|  | 9.5 hours | $333.51 | $5.00 |  |  |
|  | 10.5 hours | $363.00 | $5.00 |  |  |
|  | Same Day Planned Route (5.5 hours) | $252.66 | $5.00 |  |  |
| SAT5 | 5.5 hours | $183.75 | $5.00 | $1,800.00 | See below. |
|  | 6.5 hours | $206.25 | $5.00 |  |  |
|  | 7.5 hours | $219.07 | $5.00 |  |  |
|  | 8.5 hours | $236.53 | $5.00 |  |  |
|  | 9.5 hours | $257.73 | $5.00 |  |  |
|  | 10.5 hours | $282.81 | $5.00 |  |  |
|  | Helper (if applicable) | $135.32 | N/A |  |  |
|  | Same Day Planned Route (5.5 hours) | $183.75 | $5.00 |  |  |

1.  <u>Base Route Rate</u>.  The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2.  <u>Fuel Allowance</u>.  The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed. For the purposes of this paragraph 2, the applicable index price level (the "<u>Index Price</u>") used to

DocuSign Envelope ID: 2AA600AC-1DE3-49D4-A315-B32B07328EEC

calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm. Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3. <u>Dispatcher Fee</u>. In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed. Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a dispatcher in connection with performing Services. If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4. <u>Uniform and Vehicle Brand Promotion Fee</u>. In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on <u>Schedule D</u> to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on <u>Schedule E</u> to this Work Order, which Amazon may change from time to time. In exchange for your participation, Amazon agrees to provide the identifying logos, marks and insignia that comprise the uniform and vehicle branding specifications. You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5. <u>Unplanned Time</u>. Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours. Such factors may include the late arrival of a line haul to the Distribution Point and increased volumes on Planned Routes. In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to (a) $29.00 per hour at DDA1, DDA2, and DDA3, (b) $31.00 per hour at DCH1, DCH2, DCH3, and DSF6, (c) $27.60 per hour at DLA1, DLA2, DLA3, DLA4, and DLA7, (d) $28.70 per hour at DLA8 and DLA9, (e) $28.50 per hour at DMI1, DMI2, and DMI3, (f) $27.80 per hour at DSD1 and DSD2, (g) $32.00 per hour at DSF3, (h) $32.50 per hour at DSF4 and DSF5, (i) $28.00 per hour at SAT5, and (j) $30.00 per hour at DAU1.

6. <u>Training Routes</u>. If, at the request of Amazon, one of your new delivery associates accompanies an experienced delivery associate on a Planned Route for training purposes (a "<u>Training Route</u>"), Amazon will pay you (a) $189.60 per Training Route at DDA1, DDA2, and DDA3, (b) $194.35 per Training Route at DLA1, DLA2, DLA3, DLA4, DLA7, DLA8, and DLA9, (c) $160.00 per Training Route at DMI1, DMI2, and DMI3, (d) $179.01 per Training Route at DSD1 and DSD2, (e) $210.64 per Training Route at DSF3, (f) $214.67 per Training Route at DSF4 and DSF5, (g) $207.91 per Training Route at DSF6, (h) $161.56 per Training Route at SAT5, and (i) $173.63 per Training Route at DAU1.

**Attachment 1 to Part II of Schedule C**

| Index Price (Dollars per Gallon) | | Fuel Allowance |
|---|---|---|
| **From** | **To** | **Dollars per Mile** |
| $1.20 | $1.32 | $0.11 |
| $1.33 | $1.45 | $0.12 |
| $1.46 | $1.58 | $0.13 |
| $1.59 | $1.71 | $0.14 |
| $1.72 | $1.84 | $0.15 |
| $1.85 | $1.97 | $0.16 |
| $1.98 | $2.10 | $0.17 |
| $2.11 | $2.23 | $0.18 |
| $2.24 | $2.36 | $0.19 |
| $2.37 | $2.49 | $0.20 |
| $2.50 | $2.62 | $0.21 |
| $2.63 | $2.75 | $0.22 |
| $2.76 | $2.88 | $0.23 |
| $2.89 | $3.01 | $0.24 |
| $3.02 | $3.14 | $0.25 |
| $3.15 | $3.27 | $0.26 |
| $3.28 | $3.40 | $0.27 |
| $3.41 | $3.53 | $0.28 |
| $3.54 | $3.66 | $0.29 |
| $3.67 | $3.79 | $0.30 |
| $3.80 | $3.92 | $0.31 |
| $3.93 | $4.05 | $0.32 |
| $4.06 | $4.18 | $0.33 |
| $4.19 | $4.31 | $0.34 |
| $4.32 | $4.44 | $0.35 |
| $4.45 | $4.57 | $0.36 |
| $4.58 | $4.70 | $0.37 |
| $4.71 | $4.83 | $0.38 |
| $4.84 | $4.96 | $0.39 |
| $4.97 | $5.09 | $0.40 |
| $5.10 | $5.22 | $0.41 |
| $5.23 | $5.35 | $0.42 |
| $5.36 | $5.48 | $0.43 |
| $5.49 | $5.61 | $0.44 |
| $5.62 | $5.74 | $0.45 |
| $5.75 | $5.87 | $0.46 |
| $5.88 | $6.00 | $0.47 |

# EXHIBIT 20

**Eighteenth Amendment
to Work Order
under the Delivery Provider Terms of Service**

This Eighteenth Amendment to Work Order (this "<u>Eighteenth Amendment</u>") is effective as of April 30, 2017, and amends that certain Work Order, dated as of September 2, 2015, as amended by the First Amendment to Work Order, dated as of September 30, 2015, the Second Amendment to Work Order, dated as of October 19, 2015, the Third Amendment to Work Order, dated as of October 19, 2015, the Fourth Amendment to Work Order, dated as of January 17, 2016, the Fifth Amendment to Work Order, dated as of February 14, 2016, the Sixth Amendment to Work Order, dated as of February 19, 2016, the Seventh Amendment to Work Order, dated as of April 10, 2016, the Eighth Amendment to Work Order, dated as of April 22, 2016, the Ninth Amendment to Work Order, dated as of May 11, 2016, the Tenth Amendment to Work Order, dated as of June 2, 2016, the Eleventh Amendment to Work Order, dated as of July 26, 2016, the Twelfth Amendment to Work Order, dated as of August 14, 2016, the Thirteenth Amendment to Work Order, dated as of August 28, 2016, the Fourteenth Amendment to Work Order, dated as of September 18, 2016, the Fifteenth Amendment to Work Order, dated as of September 18, 2016, the Sixteenth Amendment to Work Order, dated as of January 1, 2017, and the Seventeenth Amendment to Work Order, dated as of April 9, 2017 (the "<u>Work Order</u>"), by and between Scoobeez, Inc., a California corporation ("<u>you</u>") and Amazon Logistics, Inc., a Delaware corporation ("<u>Amazon</u>").  All capitalized terms used and not defined in this Eighteenth Amendment have the respective meanings assigned to such terms in the Delivery Provider Terms of Service to which you agreed on the Delivery Provider Platform (as the same may be amended, modified, or supplemented from time to time, the "<u>Terms</u>").

1.    <u>**Amendment to Schedule B.**</u>  Schedule B to the Work Order is hereby deleted in its entirety and replaced with Schedule B attached hereto.

2.    <u>**Amendment to Schedule C.**</u>  Schedule C to the Work Order is hereby deleted in its entirety and replaced with Schedule C attached hereto.

3.    <u>**No Other Amendments; Conflicts.**</u>  Except as expressly amended hereby, the Work Order remains in full force and effect in accordance with its terms.  In the event of any conflict between the terms of this Eighteenth Amendment and the terms of the Work Order, the terms of this Eighteenth Amendment will control.

[Signature Page Follows]

IN WITNESS WHEREOF, properly authorized representatives of the undersigned have executed this Eighteenth Amendment.

**Amazon Logistics, Inc.**

By: _Penny Register-Shaw_

Name: Penny Register-Shaw

Title: Director Contractor Relations

Date Signed: May 5, 2017

**Scoobeez, Inc.**

By: _Shahan Ohanessian_

Name: Shahan Ohanessian

Title: CEO

Date Signed: May 2, 2017

[Signature Page to Eighteenth Amendment to Work Order]

## Schedule B

### Distribution Points

1. DAU1 – Austin, TX

2. DCH1 – Alsip, IL

3. DCH2 – Chicago, IL

4. DCH3 – Lisle, IL

5. DDA1 – Farmers Branch, TX

6. DDA2 – Garland, TX

7. DDA3 – Ft. Worth, TX

8. DLA1 – Inglewood, CA

9. DLA2 – Buena Park, CA

10. DLA3 – Commerce, CA

11. DLA4 – Los Angeles, CA

12. DLA7 – Site location TBD

13. DLA8 – Hawthorne, CA

14. DLA9 – Irvine, CA

15. DMI1 – Miami, FL

16. DMI2 – Miami Gardens, FL

17. DMI3 – Miami, FL

18. DSD1 – San Diego, CA

19. DSD2 – Carlsbad, CA

20. DSD3 – San Diego, CA

21. DSF3 – San Jose, CA

22. DSF4 – San Leandro, CA

23. DSF5 – San Francisco, CA

24. DSF6 – Richmond, CA

25. SAT5 – San Antonio, TX

26. UCA1 – San Francisco, CA

27. UCA2 – Redondo Beach, CA

28. UCA3 – Los Angeles, CA

29. UCA4 – Irvine, CA

30. UCA5 – Los Angeles, CA

31. UCA6 – San Diego, CA

32. UCA8 – Berkeley, CA

33. UCA9 – Sacramento, CA

34. UIL1 – Chicago, IL

35. UNV1 – Las Vegas, NV

<u>Schedule C</u>

**Fees Payable by Amazon**

## Part I – Prime Now

| Distribution Point | Duration of Planned Route | Fees for Services (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Total (per Planned Route) |
|---|---|---|---|---|
| UCA1 | 4.5 hours | $102.00 | $5.00 | $107.00 |
| | 6.5 hours | $155.50 | $5.00 | $160.50 |
| | 8.5 hours | $209.00 | $5.00 | $214.00 |
| | 10.5 hours | $262.50 | $5.00 | $267.50 |
| UCA2, UCA3, and UCA5 | 4.5 hours | $86.04 | $5.00 | $91.04 |
| | 6.5 hours | $131.56 | $5.00 | $136.56 |
| | 8.5 hours | $177.08 | $5.00 | $182.08 |
| | 10.5 hours | $222.60 | $5.00 | $227.60 |
| UCA4, UCA6, and UCA9 | 2 hours | $43.70 | $5.00 | $48.70 |
| | 4 hours | $92.40 | $5.00 | $97.40 |
| | 6 hours | $141.10 | $5.00 | $146.10 |
| | 8 hours | $189.80 | $5.00 | $194.80 |
| | 9 hours | $214.15 | $5.00 | $219.15 |
| | 10 hours | $238.50 | $5.00 | $243.50 |
| UCA8 | 4.5 hours | $97.60 | $5.00 | $102.60 |
| | 6.5 hours | $148.90 | $5.00 | $153.90 |
| | 8.5 hours | $200.20 | $5.00 | $205.20 |
| | 10.5 hours | $251.50 | $5.00 | $256.50 |
| UIL1 | 4.5 hours | $88.56 | $5.00 | $93.56 |
| | 5.5 hours | $111.95 | $5.00 | $116.95 |
| | 6.5 hours | $135.34 | $5.00 | $140.34 |
| | 8.5 hours | $182.12 | $5.00 | $187.12 |
| | 9.5 hours | $205.51 | $5.00 | $210.51 |
| | 10.5 hours | $228.90 | $5.00 | $233.90 |
| UNV1 | 4.5 hours | $73.00 | $5.00 | $78.00 |
| | 6.5 hours | $112.00 | $5.00 | $117.00 |
| | 8.5 hours | $151.00 | $5.00 | $156.00 |
| | 10.5 hours | $190.00 | $5.00 | $195.00 |

At UCA8, in addition to the applicable Planned Route rate set forth in the table above, Amazon will pay you $5.00 per delivery for Amazon Fresh deliveries only, effective as of September 4, 2016.

**Part II – Parcel**

| Distribution Point | Duration/Type of Planned Route | Base Route Rate (per Planned Route) | Uniform and Vehicle Brand Promotion Fee (per Planned Route) | Dispatcher Fee (per calendar week per Distribution Point) | Fuel Allowance |
|---|---|---|---|---|---|
| DAU1 | 5.5 hours | $198.36 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $206.70 | $5.00 | | |
| | 7.5 hours | $219.78 | $5.00 | | |
| | 8.5 hours | $241.98 | $5.00 | | |
| | 9.5 hours | $263.84 | $5.00 | | |
| | 10.5 hours | $312.48 | $5.00 | | |
| | Same Day Planned Route (6.5 hours) | $198.36 | $5.00 | | |
| DCH1 | 5.5 hours | $214.70 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $237.30 | $5.00 | | |
| | 7.5 hours | $259.90 | $5.00 | | |
| | 8.5 hours | $282.50 | $5.00 | | |
| | 9.5 hours | $306.23 | $5.00 | | |
| | 10.5 hours | $332.22 | $5.00 | | |
| | Same Day Planned Route (6.5 hours) | $222.60 | $5.00 | | |
| DCH2, and DCH3 | 5.5 hours | $212.80 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $235.20 | $5.00 | | |
| | 7.5 hours | $257.60 | $5.00 | | |
| | 8.5 hours | $280.00 | $5.00 | | |
| | 9.5 hours | $303.52 | $5.00 | | |
| | 10.5 hours | $329.28 | $5.00 | | |
| | Same Day Planned Route (6.5 hours) | $291.76 | $5.00 | | |
| DDA1, DDA2, and DDA3 | 5.5 hours | $182.78 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $206.08 | $5.00 | | |
| | 7.5 hours | $217.84 | $5.00 | | |
| | 8.5 hours | $246.40 | $5.00 | | |
| | 9.5 hours | $273.28 | $5.00 | | |
| | 10.5 hours | $281.23 | $5.00 | | |

| | | | | | |
|---|---|---|---|---|---|
| | Same Day Planned Route (5.5 hours) | $182.78 | $5.00 | | |
| DLA1, DLA2, DLA3, DLA4 | 5.5 hours | $190.34 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $205.40 | $5.00 | | |
| | 7.5 hours | $220.46 | $5.00 | | |
| | 8.5 hours | $247.57 | $5.00 | | |
| | 9.5 hours | $271.67 | $5.00 | | |
| | 10.5 hours | $295.77 | $5.00 | | |
| | Same Day Planned Route (6 hours) | Your Vehicle: $205.4 | | | |
| | | Delivery Associate Personal Vehicle: $205.40 | $5.00 | | |
| DLA8 | 5.5 hours | $194.37 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $209.73 | $5.00 | | |
| | 7.5 hours | $225.09 | $5.00 | | |
| | 8.5 hours | $252.75 | $5.00 | | |
| | 9.5 hours | $277.33 | $5.00 | | |
| | 10.5 hours | $301.91 | $5.00 | | |
| | Same Day Planned Route (6 hours) | Your Vehicle: $194.36 | | | |
| | | Delivery Associate Personal Vehicle: $194.36 | $5.00 | | |
| DLA9 | 5.5 hours | $190.63 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $205.70 | $5.00 | | |
| | 7.5 hours | $220.76 | $5.00 | | |
| | 8.5 hours | $247.88 | $5.00 | | |
| | 9.5 hours | $271.99 | $5.00 | | |
| | 10.5 hours | $296.10 | $5.00 | | |
| | Same Day Planned Route (6 hours) | Your Vehicle: $210.95 | $5.00 | | |

| | | Delivery Associate Personal Vehicle: $210.95 | | | |
|---|---|---|---|---|---|
| DSD1, DSD2, and DSD3 | 5.5 hours | $188.99 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $201.99 | $5.00 | | |
| | 7.5 hours | $217.99 | $5.00 | | |
| | 8.5 hours | $220.99 | $5.00 | | |
| | 9.5 hours | $228.99 | $5.00 | | |
| | 10.5 hours | $279.99 | $5.00 | | |
| DSF4 | 5.5 hours | $206.25 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $222.50 | $5.00 | | |
| | 7.5 hours | $238.75 | $5.00 | | |
| | 8.5 hours | $268.00 | $5.00 | | |
| | 9.5 hours | $294.00 | $5.00 | | |
| | 10.5 hours | $325.00 | $5.00 | | |
| | Same Day Planned Route (5.5 hours) | $210.00 | $5.00 | | |
| DSF5 | 5.5 hours | $233.96 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $252.40 | $5.00 | | |
| | 7.5 hours | $270.83 | $5.00 | | |
| | 8.5 hours | $304.01 | $5.00 | | |
| | 9.5 hours | $333.51 | $5.00 | | |
| | 10.5 hours | $363.00 | $5.00 | | |
| | Same Day Planned Route (5.5 hours) | $252.66 | $5.00 | | |
| SAT5 | 5.5 hours | $183.75 | $5.00 | $1,800.00 | See below. |
| | 6.5 hours | $206.25 | $5.00 | | |
| | 7.5 hours | $219.07 | $5.00 | | |
| | 8.5 hours | $236.53 | $5.00 | | |
| | 9.5 hours | $257.73 | $5.00 | | |
| | 10.5 hours | $282.81 | $5.00 | | |
| | Helper (if applicable) | $135.32 | N/A | | |
| | Same Day Planned Route (5.5 hours) | $183.75 | $5.00 | | |

DocuSign Envelope ID: 275A645D-925A-402C-9B26-2E5E3483A437

1. <u>Base Route Rate</u>.  The Base Route Rates set forth above are the rates payable by Amazon for any Planned Route that is actually performed by you.

2. <u>Fuel Allowance</u>.  The Base Route Rates will be supplemented by the fuel allowance rate per mile corresponding to the Index Price (as defined below) set forth on Attachment 1 to this Part II of <u>Schedule C</u> (as applied, the "<u>Fuel Allowance</u>") applicable on the date on which the Planned Route is performed. For the purposes of this paragraph 2, the applicable index price level (the "<u>Index Price</u>") used to calculate the Fuel Allowance payable in respect of Services performed in any given calendar month will be based on the applicable regional PADD-EIA prices for the prior calendar month. The PADD-EIA prices used to calculate the Fuel Allowance can be found at http://www.eia.gov/dnav/pet/pet_pri_gnd_a_epm0_pte_dpgal_m.htm. Mileage will be based on the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the prior calendar month, provided that if there is insufficient data to calculate average planned miles for the prior calendar month, mileage will be based on an estimate of the average planned miles (based on Amazon's route planning technology) for all Planned Routes originating from the applicable Distribution Point during the current calendar month.

3. <u>Dispatcher Fee</u>.  In connection with performing Services, it is anticipated that you will provide a dispatcher to assign Planned Routes to your delivery Personnel and to communicate with your delivery Personnel before, during, and after a Planned Route is completed.  Amazon will pay you the Dispatcher Fee set forth above on a weekly basis for each calendar week during which you actually provide a dispatcher in connection with performing Services.  If, for any given calendar week, the daily average number of Planned Routes that you perform from a specific Distribution Point is greater than 30 Planned Routes, Amazon will pay you a second Dispatcher Fee for such week.

4. <u>Uniform and Vehicle Brand Promotion Fee</u>.  In consideration of accepting the Uniform and Vehicle Brand Promotion Fee, you agree that (a) all of your Personnel who are visiting customer premises or otherwise interacting with customers will wear a uniform that complies with the specifications set forth on <u>Schedule D</u> to this Work Order, which Amazon may change from time to time, and (b) all of your Vehicles will, while being used to provide Services under the Agreement, meet the vehicle branding specifications set forth on <u>Schedule E</u> to this Work Order, which Amazon may change from time to time.  In exchange for your participation, Amazon agrees to provide the identifying logos, marks and insignia that comprise the uniform and vehicle branding specifications.  You may elect to cease receiving the Uniform and Vehicle Brand Promotion Fee by giving Amazon 30 days' prior written notice.

5. <u>Unplanned Time</u>.  Certain factors outside of your and your Personnel's control may make it impractical to complete a 10.5-hour Planned Route in no more than 10.5 hours.  Such factors may include the late arrival of a line haul to the Distribution Point and increased volumes on Planned Routes.  In such circumstances, Amazon may, in its discretion, elect to pay you for this unplanned time exceeding 10.5 hours at a rate equal to (a) $29.00 per hour at DDA1, DDA2, and DDA3, (b) $31.00 per hour at DCH1, DCH2, DCH3, and DSF6, (c) $27.60 per hour at DLA1, DLA2, DLA3, DLA4, and DLA7, (d) $28.70 per hour at DLA8 and DLA9, (e) $28.50 per hour at DMI1, DMI2, and DMI3, (f) $27.80 per hour at DSD1, DSD2 and DSD3, (g) $32.00 per hour at DSF3, (h) $32.50 per hour at DSF4 and DSF5, (i) $28.00 per hour at SAT5, and (j) $30.00 per hour at DAU1.

6. <u>Training Routes</u>.  If, at the request of Amazon, one of your new delivery associates accompanies an experienced delivery associate on a Planned Route for training purposes (a "<u>Training Route</u>"), Amazon will pay you (a) $189.60 per Training Route at DDA1, DDA2, and DDA3, (b) $194.35 per Training

Route at DLA1, DLA2, DLA3, DLA4, DLA7, DLA8, and DLA9, (c) $160.00 per Training Route at DMI1, DMI2, and DMI3, (d) $179.01 per Training Route at DSD1, DSD2 and DSD3, (e) $210.64 per Training Route at DSF3, (f) $214.67 per Training Route at DSF4 and DSF5, (g) $207.91 per Training Route at DSF6, (h) $161.56 per Training Route at SAT5, and (i) $173.63 per Training Route at DAU1.

### Attachment 1 to Part II of Schedule C

| Index Price (Dollars per Gallon) | | Fuel Allowance |
|---|---|---|
| From | To | Dollars per Mile |
| $1.20 | $1.32 | $0.11 |
| $1.33 | $1.45 | $0.12 |
| $1.46 | $1.58 | $0.13 |
| $1.59 | $1.71 | $0.14 |
| $1.72 | $1.84 | $0.15 |
| $1.85 | $1.97 | $0.16 |
| $1.98 | $2.10 | $0.17 |
| $2.11 | $2.23 | $0.18 |
| $2.24 | $2.36 | $0.19 |
| $2.37 | $2.49 | $0.20 |
| $2.50 | $2.62 | $0.21 |
| $2.63 | $2.75 | $0.22 |
| $2.76 | $2.88 | $0.23 |
| $2.89 | $3.01 | $0.24 |
| $3.02 | $3.14 | $0.25 |
| $3.15 | $3.27 | $0.26 |
| $3.28 | $3.40 | $0.27 |
| $3.41 | $3.53 | $0.28 |
| $3.54 | $3.66 | $0.29 |
| $3.67 | $3.79 | $0.30 |
| $3.80 | $3.92 | $0.31 |
| $3.93 | $4.05 | $0.32 |
| $4.06 | $4.18 | $0.33 |
| $4.19 | $4.31 | $0.34 |
| $4.32 | $4.44 | $0.35 |
| $4.45 | $4.57 | $0.36 |
| $4.58 | $4.70 | $0.37 |
| $4.71 | $4.83 | $0.38 |
| $4.84 | $4.96 | $0.39 |
| $4.97 | $5.09 | $0.40 |
| $5.10 | $5.22 | $0.41 |
| $5.23 | $5.35 | $0.42 |
| $5.36 | $5.48 | $0.43 |
| $5.49 | $5.61 | $0.44 |
| $5.62 | $5.74 | $0.45 |
| $5.75 | $5.87 | $0.46 |
| $5.88 | $6.00 | $0.47 |

# EXHIBIT B

Johnson v. Yousoofian, 84 Wash.App. 755 (1996)

930 P.2d 921

⚑ KeyCite Yellow Flag - Negative Treatment

Disagreed With by Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge
FM, Inc., Tenn., January 17, 2013

84 Wash.App. 755
Court of Appeals of Washington,
Division 1.

Elmer JOHNSON and his marital community;
Robert Lenhart and his marital community;
d/b/a Little Deli Mart, Appellants,
v.
M.P. YOUSOOFIAN and Jane Doe
Yousoofian, his wife, and the marital
community composed thereof, Respondents.

No. 35860–0–I.
|
Dec. 16, 1996.
|
Order Granting in Part Motion
to Publish Jan. 29, 1997.

**Synopsis**

Lessees brought action for declaratory relief and damages for breach of commercial lease and intentional interference with business expectancy, based on lessor's failure to consent to lease assignment. The Superior Court, King County, Sally Passette, J., entered judgment in favor of lessor and denied lessee's motion to reconsider. Lessees appealed. The Court of Appeals, Coleman, J., held that: (1) lease requiring lessee to obtain lessor's consent to assignment imposed no implied covenant of good faith requiring lessor to be reasonable in refusing such consent, and (2) fact that lessor withheld consent to assignment of lease did not support lessees' claim of tortious interference with business expectancy.

Affirmed.

West Headnotes (7)

**[1]** **Landlord and Tenant**
🔑 Reasonableness

Lease containing unqualified requirement that lessee obtain lessor's consent to any assignment imposed no implied covenant of good faith requiring lessor to be reasonable in refusing such

consent, despite provision in lease giving lessor right of first refusal on any offer to purchase lessee's business; right of first refusal did not impose duty to consent to contemporaneous lease assignment.

4 Cases that cite this headnote

**[2]** **Contracts**
🔑 Terms implied as part of contract

Duty of good faith exists only in relation to performance of specific contract terms, and does not obligate party to accept new obligations.

25 Cases that cite this headnote

**[3]** **Contracts**
🔑 Terms implied as part of contract

Implied duty of good faith is derivative, in that it applies to performance of specific contract obligations; if there is no contractual duty, there is nothing that must be performed in good faith.

30 Cases that cite this headnote

**[4]** **Landlord and Tenant**
🔑 Consent of Lessor, and Waiver Thereof

Parties to lease are free to negotiate standard governing landlord's decision to grant or refuse consent to assignment.

1 Cases that cite this headnote

**[5]** **Torts**
🔑 Landlord and tenant

Fact that lessor withheld consent to assignment of lease to prospective purchaser of lessee's business did not support lessees' claim of tortious interference with business expectancy, where lease required that lessee obtain lessor's consent to any assignment and imposed no explicit duty on lessor to be reasonable in refusing such consent.

3 Cases that cite this headnote

**[6]** **Torts**

Exhibit B page 172

    Business relations or economic advantage,
in general

**Torts**
    Contracts

**Torts**
    Prospective advantage, contract or relations;
expectancy

Prima facie elements of tortious interference with business expectancy are existence of valid contractual relationship or business expectancy; knowledge of relationship or expectancy on part of interferer; intentional interference inducing or causing breach or termination of relationship or expectancy; that defendant interfered for improper purpose or used improper means; and resultant damage.

1 Cases that cite this headnote

[7]   **Torts**
    Burden of proof

Once elements of tortious interference with business expectancy are established, interferer bears burden of legally justifying interference or establishing claim of privilege.

1 Cases that cite this headnote

**Attorneys and Law Firms**

**\*\*922   \*755** David Balint and David Gossard, De Funis & Balint, P.S., Seattle, for Appellants.

Jeffrey Broihier, Broihier & Wotipka, Seattle, for Respondents.

OPINION

**\*756** COLEMAN, Judge.

Elmer Johnson and Robert Lenhart argue that the trial court erred in holding that their landlord, M.P. Yousoofian, had no implied duty to act in good faith under a lease provision that prohibited assignment without the landlord's consent. They also claim that the trial court erred in holding that they failed to prove tortious interference with a business

expectancy, because without Yousoofian's consent to the lease assignment, a prospective sale of the lessees' business failed to close. We affirm.

*FACTS*

Johnson and Lenhart own and operate a business known as Little Deli Mart, which includes a number of stores that sell sandwiches and deli food. In 1982, they opened the first Little Deli Mart at 2701 Airport Way South, Seattle, Washington. This property was and is owned by M.P. Yousoofian, who granted Johnson and Lenhart a ten-year lease with an option for five additional years.

Sometime in 1991, Johnson and Lenhart agreed that they would sell their Little Deli Mart stores one at a time. By letter dated November 25, 1991, however, the lessees wrote to Yousoofian to express their desire to enter into a new ten-year lease for the Airport Way property. Although Yousoofian was initially only willing to grant the five-year extension under the original lease, he ultimately agreed to a new ten-year lease, which was executed on May 6, 1992.

The new lease included an assignment clause that was identical to that of the original lease. Paragraph 12 provided in relevant part:

 **\*757**  Lessee shall not ... assign this lease or any part thereof without the written consent of the Lessor, or Lessor's agents. In the event of any assignment so consented to, a minimum charge of 10% of one month's rent shall be made by M.P. YOUSOOFIAN for their [*sic*] services in transferring or assigning this lease, and shall be paid by Lessee. This lease shall not be assignable by operation of law.

In June 1992, Johnson and Lenhart advised their real estate broker, Sam Yun, that they wished to sell the Airport Way business. Yun soon found a prospective purchaser, James Y. Lee, who agreed to purchase the business for $320,000, contingent upon Yousoofian's consent to a lease assignment. The purchase agreement stated a closing date of September 30, 1992. On August 18, 1992, the lessees sent a registered letter to Yousoofian informing him of the purchase terms and of his contractual right of first refusal, but they did not request consent to assign the lease to Lee.

Exhibit B page 173

Johnson v. Yousoofian, 84 Wash.App. 755 (1996)
930 P.2d 921

On July 27, 1992, the Airport Way building's insurer, Unigard Insurance, had expressed concern to Yousoofian's agent, Susan Thompson, about perceived structural problems. Thompson inspected the building with Yousoofian on August 21, 1992. Yousoofian informed Thompson that the lessees would be making improvements on the building that would address Unigard's concerns. Thompson persuaded Unigard to continue insuring property. In an August 25, 1992, letter to the lessees, Yousoofian requested a prompt reply as to the date they would begin remodeling the building, but he did not mention the proposed sale of the business to Lee.

When the lessees failed to respond to this letter, Yousoofian mailed it again on September 8, 1992, with a postscript again requesting response to the remodeling question. The lessees replied by letter dated September 10, 1992, that they intended to repair a sagging canopy, but the letter made no mention of remodeling the building. On September 21, 1992, Yousoofian's attorney wrote to the lessees, reiterating his client's request **\*\*923** for a timetable of the expected remodel. Again, no reply followed.

 **\*758** On September 28, 1992, the lessees had still not requested Yousoofian's consent to assignment. They signed an addendum to the purchase and sale agreement with Lee, extending the closing date to October 15, 1992. The lessees' attorney then prepared a letter requesting Yousoofian's signature on an Assignment of Lease form. The letter, dated October 5, 1992, made no mention of remodeling.

On October 9, 1992, Yousoofian's attorney wrote a letter to the lessees' attorney, stating that Yousoofian had relied on the lessees' promise to remodel when he agreed to the new lease and that he would not discuss any lease assignment until the remodel matter was resolved. The lessees did not reply to this letter. On October 27, 1992, the lessees' attorney again requested Yousoofian's written consent to assignment, but the letter did not mention the remodel issue.

On October 27, 1992, a commercial lender approved Lee's purchase loan request subject to receipt of the written consent to lease assignment and a consent to encumber per Small Business Administration requirements. The lessees' attorney wrote to Yousoofian's attorney on October 30, 1992, again requesting consent to the assignment and offering to place $90,000 of the Little Deli Mart sale proceeds in escrow. Yousoofian's attorney responded by letter dated November 4, 1992, that Yousoofian would not consent to any assignment until the remodeling issue was resolved.

On November 4, 1992, Lee offered to further extend the sale closing date, but lowered his purchase offer to $300,000. Johnson and Lenhart rejected the offer. Their attorney again wrote to Yousoofian's attorney requesting a consent to assignment, offering $8,000 as consideration. Yousoofian rejected this offer by letter dated November 9, 1992. The parties made no further communications.

On November 17, 1992, Johnson and Lenhart commenced this action for declaratory relief and damages for breach of lease and intentional interference with business **\*759** expectancy. Six days later, the Lee purchase and sale agreement was rescinded. On June 3, 1993, the court granted partial summary judgment for the lessees, holding that the lease contained no requirement that the lessees remodel the premises. The order provided that Yousoofian's right to refuse consent to assignment was governed by lease paragraph 12, and reserved all other issues for trial. Within two months, Yousoofian consented to an assignment of the remaining lease term to another purchaser, who bought the Airport Way Store for $235,000.

At trial, the court ruled that:

> Paragraph 12 of the lease does not impose an obligation on the Defendant to consent to assignment of the lease. Paragraph 12 rather imposes a prohibition upon tenants from assigning the lease without the written consent of the landlord. Under Paragraph 12, the Defendant was legally privileged to withhold consent.

The court added that the implied covenant of good faith imposed no duty to consent to any proposed assignment without an express contractual obligation. Holding additionally that the lessees had failed to prove improper interference with a business expectancy, the court awarded $25,000 in attorney fees to Yousoofian, subject to an offset of $7,500 for the lessees' fees in the partial summary judgment proceeding. The award was made pursuant to a lease provision. The court denied the lessees' motion to reconsider.

Exhibit B page 174

### ANALYSIS

 **[1]**    The central issue here is whether the implied covenant of good faith requires a landlord to be reasonable in refusing consent to a lease assignment, when the lease prohibits assignment without the landlord's consent but imposes no explicit standard of conduct.

Paragraph 12 is an unqualified prohibition on assignment by the lessees without the landlord's consent. **\*760**  The lessees argue that under the implied covenant of good faith, a landlord may not arbitrarily refuse consent to proposed assignments. Yousoofian argues that paragraph 12 imposes no obligation to consent to any assignment, so that he has no duty to which the implied covenant of good faith can attach. Contract interpretation is a matter of law that this  **\*\*924**  court reviews *de novo* on appeal. *Absher Constr. Co. v. Kent School Dist. 415,* 77 Wash.App. 137, 890 P.2d 1071 (1995). We agree with Yousoofian and affirm.

This issue was resolved by the Supreme Court in *Alwen v. Tramontin,* 131 Wash. 78, 228 P. 851, 40 A.L.R. 551 (1924), and *Coulos v. Desimone,* 34 Wash.2d 87, 208 P.2d 105 (1949). Both cases held that a lease's unqualified requirement of the landlord's consent to the tenant's assignment imposes no duty on the landlord to be reasonable in refusing consent. *Alwen,* 131 Wash. at 81, 228 P. 851; *Coulos,* 34 Wash.2d at 98–99, 208 P.2d 105. No subsequent Washington case has revisited the issue. But since *Alwen* and *Coulos* were decided, courts have recognized an implied duty to perform all contractual duties in good faith. *E.g., Miller v. Othello Packers, Inc.,* 67 Wash.2d 842, 844, 410 P.2d 33 (1966). The dispute here centers on the effect of this development on the reasoning of *Alwen* and *Coulos.*

In *Alwen,* tenants leased an apartment house for $1,000 per month. *Alwen,* 131 Wash. at 79, 228 P. 851. The lease contained an assignment clause almost identical to paragraph 12 at issue in this case:

> "Neither this lease nor any part thereof shall be assigned ... without the written consent of the lessors, or their agents, being indorsed thereon. But in case an assignment of this lease is consented to by said lessors, a charge of not to exceed ten percent of one month's rent

shall be made by the lessors for said assignment."

*Alwen,* 131 Wash. at 79, 228 P. 851. The original tenants subsequently assigned the lease, with the landlord's consent, to John Alwen. *Alwen,* 131 Wash. at 79, 228 P. 851. Alwen then contracted to sell the lease to another party for $400. *Alwen,* 131 Wash. at 79, 228 P. 851. When Alwen sought the landlord's consent to the **\*761**  assignment, the landlord demanded $800 consideration, which Alwen paid under protest. *Alwen,* 131 Wash. at 79, 228 P. 851. After the assignment was complete, Alwen brought suit against the landlord to recover $700, the difference between the amount he paid the landlord and the assignment charge the lease required. *Alwen,* 131 Wash. at 79, 228 P. 851.

The Supreme Court held that despite the provision for a ten percent charge, the landlord had acted within his rights in exacting greater consideration for his consent. *Alwen,* 131 Wash. at 80, 228 P. 851. It reasoned that the lease, requiring the landlord's consent before the lease could be assigned, imposed no duty on the landlord. *Alwen,* 131 Wash. at 80–81, 228 P. 851. Thus, imposing conditions on his consent was not a legal basis for complaint, "however much [Alwen] or others may think the exaction was not justified in morals." *Alwen,* 131 Wash. at 80, 228 P. 851.

In 1949, the Supreme Court affirmed the view that a landlord's consent may be arbitrarily refused. *Coulos v. Desimone,* 34 Wash.2d at 99, 208 P.2d 105. The court acknowledged that lease covenants requiring the landlord's consent to assignment are restraints on alienation and should be strictly construed. *Coulos,* 34 Wash.2d at 95, 208 P.2d 105. But it held that because nothing in the contract qualified the prohibition on assignment without consent, the landlord had "the full and arbitrary right to refuse to give his consent to an assignment, irrespective of the character of the proposed assignee and although he is actuated by mere caprice or whim.' " *Coulos,* 34 Wash.2d at 98, 208 P.2d 105 (quoting 32 Am.Jur. *Landlord & Tenant,* § 343 (1941)).

 **[2]**    Although *Alwen* and *Coulos* have never been expressly overruled, Johnson and Lenhart argue that the court's subsequent recognition of the implied duty of good faith and fair dealing in the performance of all contractual duties should alter their result. They concede that the duty of good faith "exists only in relation to the performance of specific contract terms and does not obligate [a] party to accept new

Exhibit B, page 175

obligations," citing *Miller v. U.S. Bank of Washington,* 72 Wash.App. 416, 425, 865 P.2d 536 (1994). **\*762** But they argue that Yousoofian assumed the obligation to consent to reasonable assignments under the contract.

The lessees point to Yousoofian's contractual right of first refusal concerning any offer to purchase the Airport Way store. They claim that, reading the contract as a whole, **\*\*925** this provision is "rendered meaningless" if Yousoofian has the right to thwart the sale of the business by refusing consent to assign the lease to the prospective buyer. They conclude that the right of first refusal provision proves that the lease contemplated the possible sale of the Little Deli Mart, and thus imposes a duty to consent to a contemporaneous lease assignment.

 **[3]**   **[4]**   The lessees' argument must fail. The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. *Miller,* 72 Wash.App. at 426 n. 5, 865 P.2d 536; *see also Betchard–Clayton, Inc. v. King,* 41 Wash.App. 887, 890, 707 P.2d 1361, *review denied,* 104 Wash.2d 1027 (1985).* If there is no contractual duty, there is nothing that must be performed in good faith. Contrary to the lessees' characterization of the trial court's ruling in this case, it did not create an exception to the good faith requirement for landlord-tenant leases. This lease simply does not impose an obligation on the landlord to consent to any assignment sought by the lessees. We observe that the parties to a lease are free to negotiate a standard governing the landlord's decision to grant or refuse consent. *See, e.g., Ernst Home Center, Inc. v. Sato,* 80 Wash.App. 473, 476, 910 P.2d 486 (1996) (lease providing that consent to assignment "shall not be unreasonably withheld").

Johnson and Lenhart correctly point out that a growing number of courts have adopted the Restatement view that landlords cannot unreasonably withhold consent under assignment clauses like paragraph 12. Restatement of Property Second § 15.2(2) (1977). But this is the minority view and contrary to established Washington law. This court is bound by the holdings in *Alwen* and *Coulos.* While giving landlords the right to arbitrarily refuse **\*763** consent to a lease assignment may lead to harsh or inequitable results in some cases, we are not at liberty to overrule Supreme Court precedent.

 **[5]**   This conclusion forecloses the lessees' argument that the trial court erroneously dismissed their tortious interference claim. Because Yousoofian had an absolute privilege to refuse consent to assignment under the lease, we affirm the judgment for Yousoofian on this tort claim.

 **[6]**   **[7]**   The tort of interference with a business expectancy prohibits wrongful interference of valid contractual expectancies by third parties. The *prima facie* elements are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that the defendant interfered for an improper purpose or used improper means; and (5) resultant damage. *Sintra, Inc. v. City of Seattle,* 119 Wash.2d 1, 28, 829 P.2d 765, *cert. denied, Robinson v. City of Seattle,* 506 U.S. 1028, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992). Once these elements are established, the interferor bears the burden of legally justifying the interference or establishing a claim of privilege. *Pleas v. City of Seattle,* 112 Wash.2d 794, 774 P.2d 1158 (1989).

The trial court held that Yousoofian was legally privileged to withhold consent to assignment of the lease under paragraph 12. Johnson and Lenhart's challenge to this conclusion is based on the earlier partial summary judgment order, which rejected Yousoofian's claim for rescission for the lessees' failure to remodel the premises. They claim that this order removed Yousoofian's "only excuse" to refuse consent. While the order precluded Yousoofian from asserting the alleged oral agreement, paragraph 12 of the lease gives Yousoofian the right to refuse consent to any assignment for any reason.

We affirm.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

WEBSTER and COX, JJ., concur.

**All Citations**

84 Wash.App. 755, 930 P.2d 921

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

Exhibit C - page 177

Mayer v. Pierce County Medical Bureau, Inc., 80 Wash.App. 416 (1995)
909 P.2d 1323

80 Wash.App. 416
Court of Appeals of Washington,
Division 2.

Harold MAYER and Maralyn Mayer, husband and
wife, and Harold Mayer, Inc., P.S., a Washington
professional service corporation, Appellants,
v.
PIERCE COUNTY MEDICAL BUREAU,
INC., a Washington non-profit corporation,
dba Pierce County Medical, Respondent.

No. 17941–5–II.
|
Dec. 19, 1995.
|
Publication Ordered Feb. 9, 1996.

**Synopsis**

Physician brought breach of contract action against health
care plan for cancelling his preferred provider status without
due process. The Superior Court, Pierce County, Karen
Strombom, J., granted summary judgment for health care
plan, and physician appealed. The Court of Appeals, Seinfeld,
C.J., held that: (1) preferred participation agreement did
not require arbitration; (2) plan's bylaw provision for due
process before terminating membership did not apply to
cancellation of preferred provider status without termination
of membership in plan; and (3) statute requiring certified
health plan to provide due process before terminating
participation in program did not apply retroactively or codify
preexisting common law.

Affirmed.

West Headnotes (16)

**[1]    Judgment**
👉 Absence of issue of fact

**Judgment**
👉 Presumptions and burden of proof

Trial court may grant summary judgment only if,
after viewing pleadings and record, and drawing
all reasonable inferences in favor of nonmoving
party, it finds there is no genuine issue of material

fact and moving party is entitled to judgment as
matter of law.

1 Cases that cite this headnote

**[2]    Contracts**
👉 Existence of ambiguity

**Contracts**
👉 Intention of Parties

**Contracts**
👉 Construing whole contract together

In construing written contract, basic principles
require that intent of parties controls, court
ascertains intent from reading contract as whole,
and court will not read ambiguity into contract
that is otherwise clear and unambiguous.

41 Cases that cite this headnote

**[3]    Contracts**
👉 Ambiguity in general

Interpretation of unambiguous contract is
question of law.

22 Cases that cite this headnote

**[4]    Judgment**
👉 Contract cases in general

If contract is unambiguous, summary judgment
is proper even if parties dispute legal effect of
certain provision.

18 Cases that cite this headnote

**[5]    Alternative Dispute Resolution**
👉 Construction

Preferred participant agreement between
physician and nonprofit health care plan could
be cancelled by plan without arbitration, though
agreement gave physician right to arbitration if
he complained about utilization review, where
physician did not request arbitration during
utilization review process or after he received
notice of cancellation of his "preferred provider
status"; duty of good faith did not require plan to
initiate arbitration.

Exhibit C - page 178

**[6]**    **Contracts**
🔑 Existence of ambiguity

Contract provision is "ambiguous" when its terms are uncertain or when its terms are capable of being understood as having more than one meaning.

33 Cases that cite this headnote

**[7]**    **Contracts**
🔑 Existence of ambiguity

Contract provision is not ambiguous merely because parties suggest opposing meanings.

34 Cases that cite this headnote

**[8]**    **Contracts**
🔑 Existence of ambiguity

Ambiguity will not be read into contract where it can be reasonably avoided.

14 Cases that cite this headnote

**[9]**    **Contracts**
🔑 Terms implied as part of contract

Implied duty of good faith and fair dealing that is part of every contract only arises in connection with terms agreed to by parties.

1 Cases that cite this headnote

**[10]**    **Contracts**
🔑 Option to renew or terminate contract

Provisions for at will cancellation of agreement, although sometimes harsh, are enforceable.

**[11]**    **Health**
🔑 Membership or affiliation with organization; contractual relationship

Health care plan's bylaw provision prohibiting cancellation of physician's participation in program without due process did not apply to cancellation of his preferred provider status; physician's participation agreement remained in effect after cancellation of his preferred provider status.

**[12]**    **Contracts**
🔑 General and specific words and clauses

When there is inconsistency between general and specific provision of contract, specific provision ordinarily qualifies meaning of general provision.

4 Cases that cite this headnote

**[13]**    **Contracts**
🔑 Construction as a whole

Interpretation of writing which gives effect to all of its provisions is favored over interpretation which renders some of language meaningless or ineffective.

8 Cases that cite this headnote

**[14]**    **Contracts**
🔑 Application to Contracts in General

Application of principles for contract interpretation is predicated upon finding that terms of contract are ambiguous or inconsistent.

8 Cases that cite this headnote

**[15]**    **Health**
🔑 Membership or affiliation with organization; contractual relationship
**Insurance**
🔑 Provider networks or other managed care organizations

Statute requiring notice and hearing before health plan can terminate provider's participation in program did not codify existing common-law due process, so as to have retroactive effect. West's RCWA 48.43.170.

**[16]**    **Statutes**
🔑 Presumptions and inferences

Absent contrary legislative intent, statutes are presumed to operate prospectively only.

Exhibit C - page 179

differences through binding arbitration as set forth by the Board of Trustees.

### Attorneys and Law Firms

**\*\*1324  \*417** Daniel R. Kyler, Rush, Hannula & Harkins, Tacoma, for Appellants.

Jack G. Rosenow, Cheryl A. Asche, Rosenow, Johnson, Graffe, Keay, Pomeroy & Moniz, Tacoma, for Respondent.

### Opinion

**\*418** SEINFELD, Chief Judge.

Dr. Harold Mayer appeals a summary judgment in favor of the Pierce County Medical **\*\*1325** Bureau in this breach of contract action. Finding that the trial court properly construed the contract, and that Mayer was not entitled to due process before cancellation of his Preferred Provider status, we affirm.

FACTS

Dr. Mayer practiced internal medicine. In 1966 he became a member of the Pierce County Medical Bureau (the Bureau), a non-profit health care provider, that contracts with physicians and hospitals to provide benefits to its health plan subscribers.

In 1984, Mayer entered into a "Participation Agreement" with the Bureau. Later that year, he entered into a separate "Preferred Participant Agreement" with the Bureau. In the latter, the Bureau agreed to compensate Mayer for his treatment of Preferred Provider subscribers. In turn, Mayer agreed to abide by a series of conditions set forth in six numbered paragraphs in the Preferred Participant Agreement, including:

> 2. The Preferred Participant agrees to utilization review. [1] To remain eligible for preferred participation, the Participant agrees to practice within the parameters of care established by the Corporation, understanding that such care meets the criteria of medical necessity, and to resolve any

[1]    The term "utilization review" refers to the process of comparing a particular physician's services and charges to the average services and charges for all physicians in a particular area of practice. In this way, the Bureau tracks the cost effectiveness of its health care providers.

**\*419** The final two paragraphs of the Preferred Participant Agreement provide:

> This Preferred Participant Agreement is in addition to, and does not replace the Participant Agreement between Corporation and Physician filed with the Bureau. All conditions and provisions of the Participant Agreement shall remain binding.

> THIS AGREEMENT shall be continuous unless and until cancelled by either party at any time, by giving thirty (30) days written notice to the other party hereto.

In November 1991, the Bureau's medical director, Lester A. Reid, M.D., advised Mayer that he "ranked very high" in his specialty "in average services and charges per patient, or in specific types of services such as cardiovascular or laboratory services per patient." Recognizing that the statistics may reflect "valid differences" among providers, Reid asked to review the records of particular patients. Mayer complied with Reid's request.

On or before January 27, 1992, Mayer received a copy of his Medical Provider Activity Summary showing the Utilization Review Committee's statistical findings concerning his medical practice. The graphs in this document confirm that Dr. Mayer's "dollar activity" and "services activity" were both high when compared to the specialty average.

On January 27, 1992, the Bureau notified Mayer that his "level of practice [was] too costly" and, therefore, it was cancelling his status as a Preferred Participant as of March 1, 1992. The letter said that the Bureau based its decision to terminate on the information it had gathered and evaluated during the utilization review process, and that the cancellation did not affect Mayer's participating provider status with the Bureau.

According to Mayer, without the benefit of Preferred Participant status, he could not afford to operate his private

Exhibit C - page 180

practice. Consequently, he closed his office and sought employment elsewhere.

**\*420**  In December 1992, Mayer filed a complaint, alleging, inter alia, that the Bureau's cancellation of his Preferred Participant status breached the parties' contract. The parties filed cross motions for summary judgment. The trial court granted the Bureau's motion with regard to the breach of contract claim on September 20, 1993 and it denied Mayer's motion for reconsideration on October 1, 1993. Mayer appeals these rulings.

ANALYSIS

**[1]**    **[2]**    A trial court may grant summary judgment only if, after viewing the pleadings and record, and drawing all reasonable inferences in favor of the non-moving party, it **\*\*1326** finds there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Higgins v. Stafford,* 123 Wash.2d 160, 168–69, 866 P.2d 31 (1994). In construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous. *Felton v. Menan Starch Co.,* 66 Wash.2d 792, 797, 405 P.2d 585 (1965).

**[3]**    **[4]**    Interpretation of an unambiguous contract is a question of law.  *Absher Constr. Co. v. Kent School District No. 415,* 77 Wash.App. 137, 141, 890 P.2d 1071 (1995). "If a contract is unambiguous, summary judgment is proper even if the parties dispute the legal effect of a certain provision." *Voorde Poorte v. Evans,* 66 Wash.App. 358, 362, 832 P.2d 105 (1992).

I

AMBIGUITY IN THE CONTRACT

**[5]**    Mayer contends that paragraph 2 and the final paragraph are ambiguous and conflict with one another. As the non-drafting party, he argues that any ambiguity in the contractual language should be resolved in his favor.  **\*421** *See Wise v. Farden,* 53 Wash.2d 162, 168, 332 P.2d 454 (1958). Accordingly, he argues that the Preferred Participant

Agreement required the Bureau to resolve any dispute arising from the utilization review through arbitration.

**[6]**    **[7]**    **[8]**    A contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning. *Shafer v. Board of Trustees of Sandy Hook Yacht Club Estates, Inc.,* 76 Wash.App. 267, 275, 883 P.2d 1387 (1994), *review denied,* 127 Wash.2d 1003, 898 P.2d 308 (1995). A provision, however, is not ambiguous merely because the parties suggest opposing meanings. *Shafer,* 76 Wash.App. at 275, 883 P.2d 1387. "[A]mbiguity will not be read into a contract where it can be reasonably avoided." *McGary v. Westlake Investors,* 99 Wash.2d 280, 285, 661 P.2d 971 (1983).

The terms of the Preferred Participant Agreement are not inconsistent or ambiguous. Paragraph 2 requires the physician, as a condition to remaining eligible as a preferred provider, to (1) submit to utilization review; (2) practice within the parameters of care established by the Bureau; and (3) resolve any "differences" presumably arising from the utilization review through binding arbitration. The final paragraph, on the other hand, provides that the agreement will "be continuous unless and until cancelled by either party at any time, by giving thirty (30) days notice to the other party hereto."

*St. Yves v. Mid State Bank,* 111 Wash.2d 374, 377, 757 P.2d 1384 (1988), presents a similar issue. The contract there contained a clause allowing for termination of employment at will and another clause setting forth the employee's term of employment. The *St. Yves* court found that the two clauses dealt with two separate contractual rights and that the term clause created only a "presumptive term of employment," which the Bank could terminate by the procedures set forth in the termination clause. *St. Yves,* 111 Wash.2d at 374–75, 757 P.2d 1384.

Reading the Preferred Participant Agreement as a whole, it is apparent that the contested provisions here, as **\*422** in *St. Ives,* govern two separate issues. Paragraph 2 is one of six paragraphs that impose certain conditions the Preferred Participant must satisfy to retain his status. The final paragraph governs cancellation of the agreement, granting *both* parties the right to cancel the agreement upon thirty days notice. The wording and placement of the contested provisions within the agreement show the parties' intent to trigger the arbitration requirement if and when the Preferred Participant complained about utilization review and the

Exhibit C – page 181

Mayer v. Pierce County Medical Bureau, Inc., 80 Wash.App. 416 (1995)

909 P.2d 1323

intent that the final paragraph modify the entire agreement, including paragraph 2.

Although the Bureau used its utilization review process to determine that Mayer's "level of practice [was] too costly," Mayer did not pursue his contractual right to arbitration. He did not request arbitration during the utilization review process or after he **1327 received notice of cancellation of his Preferred Provider status.

[9] [10] Finally, although an implied duty of good faith and fair dealing is part of every contract, this duty only arises in connection with terms agreed to by the parties. *Badgett v. Security State Bank,* 116 Wash.2d 563, 569, 807 P.2d 356 (1991). As the Bureau did not agree to initiate arbitration, the duty of good faith did not require it to do so. Provisions providing for the at will cancellation of an agreement, although sometimes harsh, are enforceable in this State. *See Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 233, 685 P.2d 1081 (1984). Thus, the trial court did not err in granting the Bureau summary judgment as a matter of law.

II

DUE PROCESS: THE BUREAU'S BYLAWS

[11] [12] [13] Mayer also contends that the Bureau's cancellation of the agreement denied him due process rights explicitly guaranteed by the arbitration clause of the Preferred Participant **423 Agreement and by the Bureau's Bylaws. [2] As support, he cites two principles of general contract construction: (1) when there is an inconsistency between a general and a specific provision, the specific provision ordinarily qualifies the meaning of the general provision, *Washington Local Lodge No. 104 of Int'l Bhd. of Boilermakers v. International Bhd. of Boilermakers,* 28 Wash.2d 536, 541, 183 P.2d 504 (1947) (quoting *Restatement of the Law of Contracts 327,* § 236(c)); and (2) courts favor the interpretation of a writing which gives effect to all of its provisions over an interpretation which renders some of the language meaningless or ineffective. *Newsom v. Miller,* 42 Wash.2d 727, 731, 258 P.2d 812 (1953).

[2] Article VI, section 6 of the Bureau's Bylaws provides:
Expulsion. Any member may be suspended from membership in the corporation by a majority vote of the Board of Trustees of the corporation at any meeting regularly called for the purpose for acts and conduct deemed prejudicial to the best interests of the corporation and members thereof, provided that such member shall first have been served with written notice of the accusations against him and shall have been given an opportunity to produce his witnesses, if any, and to be heard at the meeting at which such vote is taken.

[14] Application of these principles, however, is predicated upon a finding that the terms of the contract are ambiguous or inconsistent. *See International Bhd. of Boilermakers,* 28 Wash.2d at 541, 183 P.2d 504; *Newsom,* 42 Wash.2d at 731, 258 P.2d 812. As the contract terms here are unambiguous and consistent, it would be inappropriate for us to apply these interpretative rules.

Nor do we find merit in Mayer's claim that the Bureau's Bylaws prohibit the cancellation of Mayer's Preferred Provider status without due process. Despite Mayer's assertions to the contrary, the Bureau did not terminate Mayer's membership in the Bureau when it cancelled the Preferred Participant Agreement. Accordingly, article VI, section 6 of the Bylaws is inapplicable.

*424 III

DUE PROCESS: COMMON LAW AND RCW 48.43.170

[15] Mayer contends that RCW 48.43.170 codifies previously existing principles of common law due process. That statute provides, in relevant part:

If a certified health plan uses unpublished criteria to judge the quality and cost-effectiveness of a health care provider's practice under any specific program within the plan, the plan may not reject or terminate the provider participating in that program based upon such criteria until the provider has been informed of the criteria that his or her practice fails to meet and is given reasonable opportunity to conform to such criteria.

Exhibit C - page 182

Mayer v. Pierce County Medical Bureau, Inc., 80 Wash.App. 416 (1995)

909 P.2d 1323

RCW 48.43.170(2). Although clearly applicable to the circumstances in this case, Mayer concedes that this legislation did not take effect until 1993, one year after the Bureau cancelled the Preferred Participant Agreement. Nonetheless, he contends that the Legislature's adoption of this statute provides support for his claim that pre-existing common law principles required the Bureau to extend Mayer similar due process rights. *See Needelman v. Dade County Medical Ass'n,* 205 So.2d 17, 19–20 (Fla.Dist.Ct.App.1967), *cert. denied,* 211 So.2d 211 (Fla.1968).

**\*\*1328** **[16]** Absent contrary legislative intent, statutes are presumed to operate prospectively only. *Adcox v. Children's Orthopedic Hosp.,* 123 Wash.2d 15, 30, 864 P.2d 921 (1993). Mayer offers no authority suggesting that the Legislature intended RCW 48.43.170 to have a retroactive impact.

Mayer's contention that RCW 48.43.170 codifies pre-existing common law, while creative, is not persuasive. The only marginal support for this proposition in Washington, **\*425** *Schroeder v. Meridian Improvement Club,* 36 Wash.2d 925, 221 P.2d 544 (1950), addressed the merits of a by-law provision that cancelled a person's membership for failure to pay dues. The *Schroeder* court concluded that such a by-law provision could be self-executing, but noted that a member facing expulsion for a "crime or misconduct inimical to the organization's being" must be afforded notice and hearing

before he can be expelled. *Schroeder,* 36 Wash.2d at 933, 221 P.2d 544.

Here, however, Mayer's membership in the Bureau is not at issue; the Preferred Participant Agreement expressly states that it does not supplant the Participation Agreement between the Participant and the Bureau. Similarly, the Bureau's letter of cancellation states that Mayer's Participation Agreement with the Bureau remains intact.

Mayer also cites to cases from other jurisdictions. Those, however, also all deal with the due process rights afforded to a member who is being expelled from an organization, which is not the case here. Thus, they do not support Mayer's theories that the common law recognizes such rights or that RCW 48.43.170 codified pre-existing common law rights.

The trial court did not err in determining that the Bureau did not breach its contract with Mayer by cancelling his preferred provider status without first providing notice and an opportunity to be heard. Consequently, we affirm.

BRIDGEWATER, J., and WIGGINS, J. Pro Tem., concur.

**All Citations**

80 Wash.App. 416, 909 P.2d 1323

---

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit C - page 183

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Morgan Lewis & Bockius, LLP
300 S Grand Ave Fl 22, Los Angeles CA 90071-3132

A true and correct copy of the foregoing document entitled (*specify*): Amazon Logistics, Inc.'s Notice of Motion and
Motion for An Order: (A) Determining That the Automatic Stay Does Not Require Amazon to Utilize Debtor's Services,
and (B) Modifying the Automatic Stay; Memorandum of Points and Authorities and Request to Take Judicial Notice in
Support Thereof
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)   10/28/2019   , I served
the following persons and/or entities by personal delivery, overnight mail service, or, (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

The Hon. Julia W. Brand, Suite 1382
U.S. Bankruptcy Court, Roybal Federal Building
255 E Temple St, Los Angeles CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/28/2019 | Renee Robles | *Renee Robles* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.