Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
      jsimon@foley.com
      smoses@foley.com

Attorneys for Debtors and Debtors in Possession, SCOOBEEZ, SCOOBEEZ GLOBAL, INC., and SCOOBUR, LLC

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SCOOBEEZ, et al.[1]<br><br>Debtors and Debtors in Possession.| Case No. 2:19-bk-14989-WB<br>Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br><br>Chapter 11 |
| Affects:<br><br>■ All Debtors<br>☐ Scoobeez, ONLY<br>☐ Scoobeez Global, Inc., ONLY<br>☐ Scoobur LLC, ONLY | **DEBTORS' OPPOSITION TO AMAZON LOGISTICS, INC.'S NOTICE OF MOTION AND MOTION FOR AN ORDER: (A) DETERMINING THAT THE AUTOMATIC STAY DOES NOT REQUIRE AMAZON TO UTILIZE DEBTOR'S SERVICES, AND (B) MODIFYING THE AUTOMATIC STAY**<br><br>Hearing:<br>Date: November 18, 2019<br>Time: 10:00 a.m.<br>Place: Courtroom 1375<br>      U.S. Bankruptcy Court<br>      255 East Temple Street<br>      Los Angeles, CA 90012 |

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

4831-3722-5132.2

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ 1

I. INTRODUCTION ........................................................................................... 1

II. FACTS .............................................................................................................. 2

    A.    BACKGROUND OF THE DEBTORS ................................................. 2

    B.    THE AMAZON CONTRACT AND SCOOBEEZ HISTORY OF WORK WITH AMAZON .......................................................................... 3

    C.    AMAZON'S DECISION TO TERMINATE AND TIMELINE FOR VIOLATION OF THE STAY ................................................................. 5

III. ARGUMENT .................................................................................................... 7

    A.    THIS COURT SHOULD NOT INDULGE AMAZON WITH AN IMPERMISSIBLE ADVISORY OPINION REGARDING THE SCOPE OF THE AUTOMATIC STAY ................................................. 7

    B.    THE BROAD AND FUNDAMENTAL PROTECTIONS OF THE AUTOMATIC STAY PROHIBIT THE ACTIONS SOUGHT TO BE TAKEN BY AMAZON BY AND THROUGH THE STAY RELIEF MOTION ............................................................................................... 8

        1.    The Amazon Contracts, And The Debtors' Interest In And Rights Thereunder, are Critically Important Property of the Debtors' Estates Protected by the Automatic Stay ........................................................................ 8

        2.    Amazon Cannot Circumvent The Automatic Stay By Functionally Terminating The Amazon Contracts Through The Reduction And/Or Elimination Of Routes ................ 9

        3.    The Covenants Of Good Faith And Fair Dealing Under The Amazon Contracts Are Also Entitled to Protection by The Automatic Stay ..................................................... 11

    C.    THE COURT SHOULD DENY THE STAY RELIEF MOTION BECAUSE AMAZON HAS NOT PROVEN THAT "CAUSE" EXISTS TO LIFT THE AUTOMATIC STAY ...................................... 12

        1.    Amazon Has Fallen Woefully Short Of Meeting Its Burden to Demonstrate "Cause" Justifying Relief from the Automatic Stay .................................................................. 12

        b.    Amazon Has Not Shown Any Basis To Support A Finding of "Cause" And The Balance of Harms Compels Denial of The Stay Relief Motion ............................... 14

IV. CONCLUSION ............................................................................................... 16

Scoobeez, Scoobeez Global, Inc., and Scoobur, LLC, the debtors and debtors in possession (collectively "Debtors" or "Scoobeez") in the above-captioned chapter 11 bankruptcy cases (collectively the "Chapter 11 Cases") hereby file their opposition to AMAZON LOGISTICS, INC.'S NOTICE OF MOTION AND MOTION FOR AN ORDER: (A) DETERMINING THAT THE AUTOMATIC STAY DOES NOT REQUIRE AMAZON TO UTILIZE DEBTOR'S SERVICES, AND (B) MODIFYING THE AUTOMATIC STAY [Docket No. 393], filed on October 28, 2019 (the "Stay Relief Motion").

## I.  INTRODUCTION

By and through the Motion, Amazon unabashedly seeks the blessing of this Court to single-handedly destroy any chance the Debtors have at successfully exiting from the Chapter 11 Cases - whether through a reorganization or an orderly sale of the Debtors' assets – despite the fact that the Debtors have received increasingly exemplary scores from Amazon since the Chapter 11 Cases were commenced.  Perhaps even more astonishing, however, is the brazen manner in which Amazon essentially admits that they are now seeking this relief – nearly six (6) months after the Chapter 11 Cases were commenced – based primarily on two things: (1) the Debtors' purported inability/unwillingness to satisfy *pre-petition* indemnification obligations in favor of Amazon (an unequivocal violation of the automatic stay); and (2) Amazon's desire to complete the transition of the Debtors' employees to other DSP providers (presumably with which they (will) enjoy a greater profit margin and over which they (will) exert significantly more operational and financial control) (which is tantamount to obliterating the Debtors' operational capabilities).  In addition, and as if the relief sought by and through the Motion were not sufficiently offensive to core of the bankruptcy process, Amazon has the audacity to ask that this Court enter a "comfort order" that will authorize Amazon to reduce (precipitously or otherwise) the routes it assigns to the Debtors in such a way that functional termination will be effectuated before year end if Amazon so chooses.  The effect of such an order and/or such an act would be catastrophic – not only to the Debtors' chance of rehabilitation, but to the nearly one thousand people employed by the Debtors who will likely have to be laid off before the holiday season.

Amazon has fallen woefully short of demonstrating "cause" sufficient to justify such drastic relief (particularly at this juncture of the Chapter 11 Cases) and thus the relief sought by and through the Stay Relief Motion must be denied.

## II. FACTS

### A. Background of the Debtors

The Debtors are a logistics and delivery company that provides logistics and delivery services to Amazon, with operations in Southern California, Illinois and Texas. The Debtors provide "last-mile" delivery solutions, delivering goods by vehicle from merchant distribution points to consumers. These delivery solutions include same-day, next day, and two-day delivery to Amazon customers. The Debtors employ approximately 1000 employees, with a seasonal increase during the holidays.

On April 30, 2019 (the "Petition Date"), the Debtors each filed a petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Cases. The Debtors continue in possession of their property and operate their businesses as a debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On May 13, 2019, the Court entered an order approving the joint administration of the Debtors' cases [Docket. No. 44]. On May 20, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases.

On June 12, 2019, the Court entered an order appointing Brian Weiss of Force 10 Partners LLC as the Debtors' Chief Restructuring Officer (the "CRO"), after a restructuring of the Scoobeez Global, Inc. board of directors. The Debtors evaluated and implemented strategies aimed towards preserving and strengthening the Debtors' operations. The Debtors' business is producing positive cash flow. Having stabilized their business, the Debtors embarked on a process to secure a value-maximizing path for the Debtors' business to exit these Chapter 11 Cases.

The Debtors determined, in conjunction with their professionals and in consultation with the Committee, that pursuing a sale or reorganization under chapter 11 of the Bankruptcy Code provided the best option for the Debtors, their customer base, and their creditor constituents. In connection with this, the Debtors employed Armory Securities, LLC ("Armory") as their investment banker, to market the Debtors' business for a sale or recapitalization.

In order to maximize the value of their business and advance the resolution of the Chapter 11 Cases, the Debtors decided, in their business judgment, after extensive negotiations amongst the Debtors, Hillair and the Committee, to pursue a process pursuant to section 363 of the Bankruptcy Code

for the sale (the "Sale") of substantially all of the Debtors' assets to Hillair as a stalking horse purchaser subject to higher and better offers, while preserving a right to seek a recapitalization if revealed as a better alternative during the marketing process. The Committee supported the Sale.

On August 29, 2019, the Debtors filed a motion for approval for sale and bidding procedures in connection with the Sale process [Docket No. 293] (the "Bid Procedures Order"). The Court approved the procedures by an ordered entered on September 17, 2019 [Docket No. 321]. On September 19, 2019, the Debtors filed their motion for approval of the Sale (the "Sale Motion").

Pursuant to the Bid Procedures Order, the deadline for oppositions to the Sale, or to assumption and assignment of contracts in connection with the Sale, was October 1, 2019. The majority shareholder of the Debtors, Mr. Ohanessian (which opposition was "joined" by two minority shareholders of the Debtors), filed the only opposition to the Sale, and Amazon filed the only objection to the assumption and assignment of their contracts with the Debtors (collectively, the "Amazon Contracts"). Amazon Contract in connection with the Sale [Docket No. 349] (the "Assignment Objection"). The Debtors timely filed their reply to the Assignment Objection [Docket No. 366]. The hearing to approve the Sale Motion was originally set for October 17, 2019, but has been continued to November 18, 2019 at the same time as the hearing on the Stay Relief Motion. **

**B.    The Amazon Contract and Scoobeez History of Work with Amazon**

Amazon is the Debtors' only customer, and the entirety of Debtors' revenue derives from payments from Amazon for deliveries from Amazon distribution points to Amazon's customers. The Amazon Contracts are comprised of the Delivery Provider Terms of Service (the "Terms of Service"), which provides the overarching terms of the contract, and the Delivery Provider Terms of Service Work Order (as amended, the "Work Order"), which provides specific locations and pricing terms. The Work Order has been updated by amendment eighteen times, to update pricing and distribution points. The Terms specify that they are "a legally binding agreement between the applicable Amazon Contracting Party or any of its Affiliates" and the Debtors. *See* Terms, p. 1.

Pursuant to the Amazon Contracts, Amazon pays the Debtors based on weekly invoices, based on the rates in the current Work Order. See Terms, § 3.a, 4. Amazon generally pays all undisputed

amounts within thirty (30) days of receipt of the invoice. Any substantial change in volume or work would therefore have a rapid and direct impact on revenue.

As described above, the Work Order provides the distribution points from which the Debtors pick up packages. On a weekly basis, Amazon assigns a specified number of routes ("Routes") to the Debtors. Payments under the Amazon Contracts are based on the Routes served, with specific pricing per Route as provided in the Work Order.

Amazon had provided a reliable work flow to Scoobeez over the years. Although there was some seasonal variability (which the Scoobeez model is designed to accommodate), Scoobeez has relied on a consistent and substantial number of Routes, and has employed (and still does employ) more than 1,000 employees based on those Routes. Until about two (2) months ago, Amazon had consistently provided Scoobeez with an annual volume of Routes that had increased over time. A chart showing year-over-year total Routes received under the Amazon Contracts for the eight-week period ending October 19, 2019, and a comparison of the four months from June through October 2018 and 2019 was appended to the Declaration of George Voskanian in Support of the Debtors' Motion For Preliminary Injunction to Prevent Violation of The Automatic Stay [Adv. ECF No. 2][2] (the "Voskanian Declaration")[3], and is hereby incorporated by reference. A chart of month by month routes for 2018 through 2019 is attached as Exhibit A to the Declaration of George Voskanian in support of the Debtors' Supplement Pleading in Support of the Debtors' Motion for Preliminary Injunction to Prevent Violation of the Automatic Stay [Adv. ECF No. 21] (the "Supplemental Voskanian Declaration"). This shows that overall Routes have been higher in 2019, whereas 2017 and 2018 showed the expected seasonal increase in Routes entering the fall, Routes have taken a sharp downturn in just the past two months. Moreover, since announcing its unequivocal and non-negotiable intention to terminate the Amazon Contracts, Amazon has begun to reduce the number of Routes assigned to the Debtors under the Amazon Contracts.

---

[2] All references to the Adv. ECF shall be to the docket in the related adversary proceeding bearing case number 2:19-ap-01456-WB (the "Amazon Adversary Proceeding").

[3] Pursuant to Federal Rule of Evidence ("FRE") 201, the Debtors respectfully request that the Court take judicial notice of the Voskanian Declaration.

**C.      Amazon's Decision to Terminate and Timeline for Violation of the Stay**

Prior to the Debtors filing of the Sale Motion, Amazon had not expressed any intention to cease or reduce business with the Debtors. Rather, Amazon knowingly allowed the Debtors to proceed with a sale process that was based, at least in part, on an expectation of ongoing business with Amazon. Amazon finally raised an objection only when faced with a deadline to object to assumption of the Amazon Contracts; however, even in the Assignment Objection, Amazon did not indicate or acknowledge that it was categorically unwilling to do business with the Debtors on a moving forward basis irrespective of the exit strategy the Debtors elected to pursue.

Since the filing of the Assignment Objection, however, Amazon has made it clear that it intends to terminate its relationship with the Debtors, irrespective of which path the Debtors choose to take (i.e. a sale or a rehabilitation). This has been communicated both in conference calls in which Amazon, the Debtors, Hillair, and the Committee have participated, and in writing. On October 7, 2019, representatives of the Debtors and Hillair participated in a telephone call with Amazon's representatives (the "Amazon Call"). During the Amazon Call, Amazon's representatives clearly and expressly stated that they did not intend to do business with the Debtors beyond a brief transition period, and would begin reducing the Routes assigned to the Debtors. Amazon's representative also expressly stated that Amazon would not consent to do business with Hillair or any other potential purchaser of the Debtors' assets, unless limited to a potential brief transition period.

During the Amazon Call, Amazon also made it clear that its decision to sever ties with the Debtors was tied to what it viewed as pre-petition defaults by the Debtors. More specifically, Amazon's representative stated that Amazon felt that the Debtors had not adequately fulfilled their duties to defend and indemnify Amazon from third party claims – claims which arose prior to the Petition Date. Although the Debtors substantively dispute the veracity of this assertion (as discussed in their Reply to Amazon Objection), it is worth reiterating that ***Amazon expressly stated that one of its primary reasons (if not the primary reason) for terminating its relationship with the Debtors was its belief that the Debtors had defaulted pre-petition on indemnity obligations under the Amazon Contracts***.

On October 16, 2019, counsel for Amazon sent an email to counsel for Hillair, on which Debtors' counsel was copied, expressly setting forth Amazon's position. A true and correct copy of this

email was appended to the Declaration of Ashley McDow in Support of the Debtors' Motion For Preliminary Injunction to Prevent Violation of The Automatic Stay [Adv. ECF No. 2] (the "McDow Declaration")[4] as Exhibit C, and is hereby incorporated by reference. Among other things, the email stated that: "Amazon will not continue to do business with Scoobeez, Hillair or a Hillair "Newco" for anything other than a transition period ending on January 6, 2020." The email went on to stay a timeline on which Amazon intended to communicate its decision to drivers, and then terminate the Amazon Contract. While the email suggested a separate agreement, with a modest separation payment by Amazon, it specifically stated that Amazon would proceed on the same timeline regardless of any agreement with the Debtors or Hillair. Amazon also expressly stated that it would begin reducing Routes if a sale is approved, and did not provide any assurance that it would not otherwise reduce Routes under any circumstance.

Further, and even more alarmingly, Amazon has expressly stated that it intends to poach the Debtors' employees. The bullet points in the October 16 email outlining Amazon's plan indicates that Amazon starting on October 25, 2019, Amazon personal will "provide drivers with information on how they can contact other Delivery Service Partners if they are interested in applying for employment with other companies. McDow Declaration, Ex C. While this is set forth a part of Amazon's proposal for a separation agreement, Amazon is clear that this is its plan with or without the Debtors' agreement:

> Assuming that the sale is approved on Oct. 17 and that the transaction closes within a few days thereafter, **Amazon will still operate on the same timeline as laid out above in the 3rd bullet point regarding communication to drivers**, hopefully with the buyer's cooperation to ensure consistent, timely communication to drivers at all stations. **If Amazon does not have the buyer's cooperation, Amazon is still prepared to move forward on the same timeline as laid out above**.

McDow Declaration, Ex. C (*emphasis added*). Amazon could not be more explicit about its intent to contact the Debtors' employees in order to recruit them to competitors, with or without the Debtors consent.

Amazon's decision cannot be characterized as the result of any concerns with performance. The Debtors receive weekly performance scorecards from Amazon, which have remained very good throughout 2019, with no decrease in performance during the Chapter 11 Cases. In fact, the most recent

---

[4] Pursuant to FRE 201, the Debtors respectfully request that the Court take judicial notice of the McDow Declaration.

scorecards extremely high marks across the board. True and correct copies of these most recent scorecards were appended to the Declaration of Scott Sheikh in Support of the Debtors' Motion For Preliminary Injunction to Prevent Violation of The Automatic Stay [Adv. ECF No. 2] (the "Sheikh Declaration")[5] as Exhibit B, and are hereby incorporated by reference.  Further, on the October 7 telephone call Amazon's representatives specifically stated that Amazon's decision to terminate the Amazon Contracts was *not* based on any issues with the Debtors' performance.

## III.  ARGUMENT

### A. This Court Should Not Indulge Amazon With An Impermissible Advisory Opinion Regarding The Scope Of The Automatic Stay

By and through the Stay Relief Motion, Amazon requests that this Court enter an order finding "that the automatic stay does not compel Amazon to provide the debtor …with any particular volume of business." Motion, page 3, lines 6-7. However, the provision of such an advisory opinion in the instant contested matter given the pendency of the related adversary proceeding in which this precise question is at issue is wholly improper.  "[T]he oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions…While there are many examples of advisory opinions, one type adverted to corresponds with the order before us, namely, where the "dispute" has not been properly framed and requires further proceedings…[S]uch advance expressions of legal judgment upon issues which remain unfocused because they are not pressed…with that clear concreteness provided when a question emerges precisely framed and necessary for decision…we have consistently refused to give." *In re Family Health Services, Inc.*, 130 B.R. 314, 317 (9th Cir. 1991) (*internal citations omitted*).

In *In re Family Health Services*, the Ninth Circuit vacated the order of the trial court "clarifying" the extent "of the automatic stay [as it] did not resolve the dispute in an adversary context but rather constituted a ruling on a hypothetical or non-justiciable controversy." *Id*.  In doing so, the Court opined that "[i]t is questionable that anything is added to the force of 11 U.S.C. 362 by advance comment on the scope of the automatic stay in the form of a 'clarification,' particularly where such order is not issued in

---

[5] Pursuant to FRE 201, the Debtors respectfully request that the Court take judicial notice of the Sheikh Declaration.

response to particular conduct by specific parties." *Id*. For precisely the same reasons, the same result must inure in the instant case. To the extent that Amazon seeks to have this Court adjudicate the nature, scope and/or applicability of the automatic stay as it pertains to the Amazon Contracts, it must do so by and through the Amazon Adversary Proceeding.

B. **The Broad And Fundamental Protections of The Automatic Stay Prohibit The Actions Sought To Be Taken By Amazon By And Through The Stay Relief Motion**

1. **The Amazon Contracts, And The Debtors' Interest In And Rights Thereunder, are Critically Important Property of the Debtors' Estates Protected by the Automatic Stay**

Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). The legislative history of section 541 illustrates that Congress intended that the scope of "property of the estate" is very broad and "[i]t includes all kinds of property, including tangible or intangible property . . . ." *See In re Computer Communications, Inc.*, 824 F.2d 725, 729 (9th Cir. 1987). It is well established in the Ninth Circuit that a debtor's contract rights are property of the estate under section 541.

By means of the automatic stay in Section 362(a) of the Bankruptcy Code, "Congress intended to give debtors a 'breathing spell' from their creditors and to stop 'all collection efforts, all harassment, and all foreclosure actions.'" *Delpit v. Commissioner Internal Revenue Service*, 18 F.3d 768, 771 (9th Cir. 1994), *quoting* H.R.Rep. No. 95–595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, at 6296–97. The "breathing spell" afforded by the automatic say permits a chapter 11 debtor to focus its efforts on reorganization. *See Plumberex Specialty Products, Inc.*, 311 B.R. 551, 556 ((Bankr. C.D. Cal. 2004) (emphasis added). The automatic stay also promotes the goal of equality of distribution by preventing piecemeal dismemberment of the bankruptcy estate while assuring that the debtor in possession has an opportunity to use property necessary for an effective reorganization. *Id.*; *see also Hollis Motors, Inc. v. Hawaii Auto Dealers' Association*, 997 F.2d 581, 586 (1993) (a principal purpose of the automatic stay is to preserve property for use in the reorganization of the debtor and prevent the dismemberment of the estate), *see also 3 Collier on Bankruptcy* ¶ 362.03, at 362–23 (Alan N. Resnick & Henry J. Sommers eds., 16th ed. rev. 2019. In furtherance of these essential goals of the bankruptcy process, "Congress intended the scope of § 362(a) to be broad, staying nearly every type of formal or informal action

against the debtor or property of the estate." *Plumberex*, 311 B.R. at 556.

Despite this well-settled law, Amazon argues that it can effectively, if not literally, terminate its contract with the Debtors without violating the automatic stay. As argued in the Debtors' motion for a preliminary injunction [Adv. ECF. No. 2], the automatic stay is clearly applicable here, and acts to bar Amazon's unilateral actions to destroy, modify and control property of the estate.

As Amazon grudgingly acknowledges, section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property form the estate, or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Any attempt by Amazon to suggest that there is some question whether this applies is simply wrong. It is axiomatic that the automatic stay applies to a debtor's interest in a contract. *See In re Carroll,* 903 F.2d 1266, 1271 (9th Cir. 1990) (an executory contract that is property of the estate can only be terminated after a grant of relief from stay). Unless an exception applies, the automatic stay prohibits any acts to terminate or modify an estate's interests in a contract and therefore the Court should prevent Amazon from doing so. *In re FirstEnergy Solutions Corp.,* 596 B.R. 631, 636 (Bankr. N.D. Ohio 2019); *see also In re National Environmental Waste Corp.,* 191 B.R. 832, 834 (Bankr. C.D.Cal. 1996) ("since Ninth Circuit law holds that contract rights constitute property of the estate, the City's unilateral termination of Newco's contract is clearly an action exercising control over property of the estate").

### 2. Amazon Cannot Circumvent The Automatic Stay By Functionally Terminating The Amazon Contracts Through The Reduction And/Or Elimination Of Routes

Amazon argues that even if the automatic stay bars it from terminating the Amazon Contracts, it can simply achieve the same result by no longer providing Routes to the Debtors. The Court cannot allow Amazon to torture the provisions, intent and critical protections of section 362 by allowing such behavior. The automatic stay is intended to be a broadly interpreted provision that provides a "breathing spell" by preserving the status quo and "precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy for a against the debtor or affecting property of the estate. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993). The preposterous proposition advanced by Amazon – that even if the automatic stay prevents an express termination of the Amazon Contracts, Amazon can simply achieve the same results by significantly reducing or eliminating the Routes – turns this concept on its head and is clearly contrary to the principals and policy underlying

section 362.

The sort of "functional termination" already undertaken in part by Amazon by reducing Routes for two months, causing substantial harm to the Debtors without any Court approval, and which Amazon now seeks this Court's blessing to continue and expand to decrease the Debtors' business to zero, in fact violates the stay. *See*, *e.g.*, *In re Ernie Haire Ford, Inc.,* 403 B.R. 750 (Bankr. M.D. Fla. 2009). The *Ernie Haire Ford* case is remarkably on point. In that case, the non-debtor party had a contractual right that gave them complete discretion to accept or reject customer auto loans submitted by the debtor car dealership. *Id.* at 754. The non-debtor contract counterparty argued that if it was barred by the automatic stay, it could simply use that discretion to refuse loan applications submitted under the contract, and the bankruptcy court found that any action that "effectively terminates" the agreement would be a violation of the automatic stay, regardless of whether it was a technical termination. *Id.* Therefore, the bankruptcy court entered an order compelling the non-debtor finance companies to apply the same standard they always did to continue business with the debtor rather than allow the finance companies to use the "at will" provision to refuse to continue to do business with the debtor. *Id*.

This case is remarkably on point. The argument that the non-debtor contract counterparty made in *Ernie Haire Ford* is nearly identical to Amazon's argument that it can simply cease doing business with the Debtors without technically terminating the Amazon Contracts. *See In re Ernie Haire Ford, Inc.*, 403 B.R. at 760. As the bankruptcy court did in that case, this Court must find that Amazon cannot end-run the stay. This is consistent with the critical underlying purpose and intentions of Congress in respect of the automatic stay. If the automatic stay is to preserve anything resembling a *status quo*, then it certainly must prevent the Debtors' only customer from unilaterally ending its contractual relationship with the Debtor, through whatever means. *See Hillis Motors*, 997 F.2d at 585 (purpose of the stay is to preserve the *status quo)*.

Moreover, based upon the explicit admissions made by Amazon, its effort to terminate the Amazon Contracts, and/or reduce and eliminate the Routes awarded thereunder, constitutes a stay violation that should not be countenanced by this Court. Amazon has made it clear that it wants to "transition" the Debtors' employees to other DSP providers utilized Amazon, which is further indicative

of its scheme to advance its own economic interest at the expense of the proverbial little guy – in this case, the Debtors.  Amazon cannot seek relief from the stay to cure or worse actually continue an effort that itself is a stay violation to destroy the Debtors' business.

### 3. The Covenants Of Good Faith And Fair Dealing Under The Amazon Contracts Are Also Entitled to Protection by The Automatic Stay

Amazon argues that it has no duty to act with good faith toward the Debtors.  *See Stay Relief Motion*, p. 5.  This misstates Washington law, which is the applicable choice of law pursuant to the Amazon Contracts.  Quite to the contrary, there is a clear duty of good faith and fair dealing that applies to the Amazon Contracts.

In a 2016 decision, the Supreme Court of Washington, sitting *en banc*, expressly held that there is a contractual duty of good faith and fair dealing under Washington law, and that it by definition extends to circumstances where there is no breach of the express terms of the applicable contract.[6] *Rekhter v. State Department of Social and Health Services*, 180 Wash.2d 102 (Wash. 2016).  The court observed that "[u] under Washington law, '[t] here is in every contract an implied duty of good faith and fair dealing' that 'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'" *Id.* at 112, quoting *Badgett v. Sec. State Bank*, 116 Wash.2d 563, 569 (Wash. 1991).

The duty of good faith and fair dealing "arises when one party has discretionary authority to determine a future contract term." *Rekhter*, 180 Wash.2d at 112.  The duty is to act with "good faith and fair dealing in setting and performing that contractual term." *Id.* at 115.  The duty would apply, therefore, when one party has discretion to determine quantity, price, or time elements. *Id.* at 113, citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995).  In *Rekhter*, the state entered into provider contracts with home health providers, which gave the state discretion over the number of hours that would be required and compensated. *Id.* at 113.  The Washington Supreme Court found that the covenant of good faith and fair dealing applied to the exercise of discretion in setting hours, and that the jury could property find that this duty was breached by the state's arbitrary changes in work volume. *Id.*

---

[6] To be clear, the Debtors are in no way conceding that Amazon's actions or proposed actions do not breach the express terms of one or more of the Amazon Contracts.

at 112-116.

The Amazon Contracts give Amazon discretion regarding the number of Routes provided to the Debtors. The Amazon Contracts require that the Debtor(s) either service the Routes designated by Amazon, or pay a penalty for Routes they are unable to service. This practically requires the Debtors to maintain the ability to service a large number of Routes with the service areas and based on the distribution points that have been designated by Amazon. The course of dealing between the parties shows that while numbers of Routes vary somewhat seasonally, monthly Routes have remained between seven thousand (7,000) and thirty thousand five hundred (13,500) for the past three (3) years, with predictable seasonal variation.

Under these circumstances, Amazon has a clear contractual duty to act with good faith and fair dealing in setting the discretionary number of Routes that it provides to the Debtors. *Rekhter*, 180 Wash.2d at 112. It is not in dispute that a sudden decrease or elimination of Routes would be catastrophic to the Debtors' business. The Debtors have a clear property interest in their rights under the Amazon Contracts, including those protected by the duty of good faith and fair dealing, which are protected by the automatic stay.

**C.  The Court Should Deny the Stay Relief Motion Because Amazon Has Not Proven That "Cause" Exists to Lift the Automatic Stay**

As discussed above, the automatic stay protects the Debtors' right to maintain the *status quo*, and clearly does not allow Amazon to take unilateral action. Amazon therefore argues in the alternative that it should be given relief from stay that would allow it to promptly eliminate the Debtors' only present source of revenue, and thereby bring the Debtors' business to an immediate grinding halt, without concern for the consequences to the Debtors, their creditors, or their over one thousand employees. Under the circumstances, the relief sought by Amazon is antithetical to the chapter 11 process and does not meet the standards required to lift the stay.

**1.  Amazon Has Fallen Woefully Short Of Meeting Its Burden to Demonstrate "Cause" Justifying Relief from the Automatic Stay**

Amazon seeks relief from the automatic stay pursuant to section 362(d)(1), which provides for relief *only for cause*. 11 U.S.C. § 362(d)(1) (emphasis added). Section 362(d)(1) provides that:

(d) On request of a party in interest and after notice and a hearing, the court shall

>grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>>(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C. § 362(d).  Thus, relief from stay can be granted to Amazon only to the extent there is sufficient "cause" for such relief.  *Id.*

Cause can include a lack of adequate protection of an interest in property, but is otherwise undefined.  Thus, "[w]hat constitutes 'cause' for granting relief from the automatic stay is decided on a case-by-case basis." *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (9th Cir. B.A.P. 2009); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990).

There is a shifting burden with regard to cause, but it is in the first instance the burden of the moving party to show that there is some cause for which it should be granted relief.  "To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case that 'cause' exists for relief under § 362(d)(1)." *Plumberex*, 311 B.R. at 557.  Only once the moving party has established its *primia facia* case does the burden shift "to the debtor to show that relief from the stay is unwarranted." *Id.* "The decision whether to grant or deny stay relief is within the broad discretion of the bankruptcy court." *Id.* at 558; *Kronemyer*, 405 B.R. at 919.  Further, "[i]f the movant fails to make an initial showing of cause," then "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990).

Based on the foregoing, Amazon has failed to demonstrate the requisite "cause" necessary for an award of relief from the automatic stay and accordingly the Stay Relief Motion must be denied.

a. *There is no "Cause" Based on a lack of Adequate Protection*

By and through the Stay Relief Motion, Amazon argues that there is sufficient "cause" to justify granting relief from the automatic stay based on a purported lack of adequate protection of its contractual right to terminate the Amazon Contracts on thirty (30) days written notice.  However, Amazon provides absolutely no evidence – admissible or otherwise - to support its contention that its rights under the Amazon Contracts are not adequately protected.  Moreover, Amazon also fails to

provide any legal authority that would support its position that it is entitled to any adequate protection of its right to termination, beyond the Debtors' continued performance under the Amazon Contract, which is not in dispute. That is because there is no such law. Indeed, a finding that relief could be granted based on a lack of adequate protection of a termination provision would turn the purpose of the automatic stay on its head, because every contract counter-party with a contractual right to termination would be entitled to relief from stay. For this reason, courts have held that "cause" to lift the stay does not arise from a lack of adequate protection of a termination clause. *See In re O-Jay Foods, Inc.*, 110 B.R. 895, 897 (Bankr. D. Minn. 1989); *In re Deppe*, 110 B.R. 898, 907 (Bankr. D. Minn. 1990).

Contrary to Amazon's assertions, Amazon's rights under the Amazon Contracts are clearly protected by the Debtors continued performance thereunder. Since the commencement of the Chapter 11 Cases, the Debtors have continued to perform in an exemplary fashion – a fact which Amazon clearly does not dispute as it does not even allege that the Debtors have failed to perform any of their delivery obligations. Indeed, the admissible evidence demonstrates that Amazon has rewarded the Debtors' performance with extremely high marks, and acknowledges that it had no issues with the performance of the Debtors. To the extent that Amazon is entitled to adequate protection, the Debtors' continued performance is more than sufficient. *See In re Nat'l Hydro-Vac Indus. Serv., L.L.C.,* 262 B.R. 781, 787 (Bankr. E.D. Ark. 2001).

Moreover, and despite what Amazon would have this Court believe, it is far from clear that Amazon actually has an unfettered right to terminate the Amazon Contracts on just thirty (30) days' notice. The provision that allegedly gives Amazon this right expressly only applies to the Terms (as that term is defined in the Amazon Contracts), leaving the provisions of the current work order in place. Even if the Terms were cancelled, the current Work Order would remain in effect, and the duty of good faith and fair dealing would require Amazon to act consistent with that duty in winding up the contractual relationship.

   b. **<u>Amazon Has Not Shown Any Basis To Support A Finding of "Cause" And The Balance of Harms Compels Denial of The Stay Relief Motion</u>**

Amazon's entire argument for relief from stay is based on its asserted termination right, which entirely misses the point of relief from stay. Amazon's argument that an at-will termination clause is itself cause for relief is absolutely unfounded. *See In re Elder-Beerman Stores Corp.*, 195 B.R. 1012

(Bankr. S.D. Ohio 1996). "The conditions under § 362(d) govern relief from the stay, and when those conditions are not met, courts have not hesitated to leave the stay intact, even in the presence of 'at will' termination clauses." *Id.* Indeed, the entirely purpose of section 362 and 365 of the Bankruptcy Code, as applied to executory contracts, is to prevent non-debtors from exercising contractual termination rights. Thus, the non-debtor is not entitled to relief simply based on a contractual right to terminate. *See Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New England Reins. Corp. (In re Minoco Group of Cos., Ltd.)*, 799 F.2d 517, 519 (9th Cir.1986) (staying the right to cancel insurance policy under § 362).

Indeed, Amazon acknowledges that in determining whether there is cause, the Court should apply a balance of hardships evaluation. The Stay Relief Motion correctly states that "when determining whether 'cause' exists for modifying the automatic stay, courts "may consider the consequences of the stay and the parties and the 'balance of hurt' in tailoring relief appropriate for the factual scenario.'" Stay Relief Motion, p. 6, quoting *In re Tudor Motor Lodge Associates, LTD. Partnership*, 102 B.R. 936 (Bankr. N.J. 1989). It is stunning, and a remarkable showing of Amazon's high-handed disregard for the effects of its actions on the Debtors, their employees, and their creditors, that Amazon thinks the "balance of hurt" somehow favors Amazon.

It is well established that in determining whether to grant relief from stay, the Court should consider the balance of hardships. *See, e.g., In re A Partners, LLC*, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006); *In re Tudor Motor Lodge*, 102 B.R. 936; *In re Velo Holdings, Inc.*, 475 B.R. 367, 390 (Bankr. S.D.N.Y 2012). Indeed, even where the moving party makes a showing of cause, relief may be denied based on the "balance of the harms and equities." *In re Velo Holdings*, 475 B.R. at 389; citing *In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 138 (S.D.N.Y. 2010) and *Sonnax*, 907 F.2d at 1286. Thus, where termination would "significantly impede [the debtor's] ability to restructure, if not eliminate the possibility of a successful restructuring entirely, while severely impairing creditor recoveries…," it was appropriate to deny relief for cause. *In re Velo Holdings*, 475 B.R. at 390.

The truth is that Amazon is not going to suffer harm if it does not receive authorization from this Court to terminate the Amazon Contracts, whether expressly or otherwise. On October 24, 2019, Amazon released financial results and stated that its operating cash flow increased 33% to $35.3 billion

for the 12 months ended September 30, 2019, on increased sales of goods and services of $193 billion during such period. Amazon is not suffering here.

The only harms that Amazon has suggested it may suffer if relief from the automatic stay is not granted are (1) being barred from exercising its asserted contractual right to terminate by the automatic stay, and (2) pre-petition failures to defend and indemnify. Neither one of these is an actual, cognizable harm. As to the first, Amazon has failed to show any way in which it is being hurt by continuing to do business with the Debtors. As set forth in detail above, the Debtors' performance continues to be exemplary, and Amazon has not suggested that it does not have an ongoing need for the delivery services that the Debtors provide, particularly with the impending holiday season. Indeed, Amazon has been completely unable and/or unwilling to articulate the actual reason that such a sudden and abrupt termination of the Amazon Contracts, as well as its relationship with the Debtors, is necessary.

In stark contrast, it is undisputed that the granting of relief from the automatic stay in favor of Amazon would be catastrophic for the Debtors and their creditors, but absolutely devastating for the nearly thousand employees of the Debtors who are counting on the Amazon revenues to provide for their own families this holiday season. Given these facts, the "balance of harms" clearly requires a finding that there is no cause for relief. *See In re Tudor Motor Lodge*, 102 B.R. 936; *In re Velo Holdings*, 475 B.R. at 389.

## IV. CONCLUSION

For the reasons set forth above, the Debtors respectfully request that this Court deny the relief sought by and through the Stay Relief Motion and award such other relief as this Court may deem just and proper.

DATED:  November 4, 2019            **FOLEY & LARDNER LLP**

                                    */s/ Shane J. Moses*
                                    Shane J. Moses

                                    Attorneys for Debtors and Debtors-in-Possession
                                    SCOOBEEZ, SCOOBEEZ GLOBAL, INC., and
                                    SCOOBUR, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Foley & Lardner LLP, 555 South Flower Street, Suite 3300, Los Angeles, CA 90072-2411

A true and correct copy of the foregoing document entitled (*specify*):
**DEBTORS' OPPOSITION TO AMAZON LOGISTICS, INC.'S NOTICE OF MOTION AND MOTION FOR AN ORDER: (A) DETERMINING THAT THE AUTOMATIC STAY DOES NOT REQUIRE AMAZON TO UTILIZE DEBTOR'S SERVICES, AND (B) MODIFYING THE AUTOMATIC STAY**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/4/19, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) 11/4/19, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Julia W. Brand
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/4/19 | Shane J. Moses | /s/ Shane J. Moses |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*      **F 9013-3.1.PROOF.SERVICE**
4831-3722-5132.2

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
   - **Richard T Baum**    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
   - **Richard W Esterkin**    richard.esterkin@morganlewis.com
   - **John-Patrick M Fritz**    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
   - **Riebert Sterling Henderson**    shenderson@gibbsgiden.com
   - **Vivian Ho**    BKClaimConfirmation@ftb.ca.gov
   - **David Brian Lally**    davidlallylaw@gmail.com
   - **Alvin Mar**    alvin.mar@usdoj.gov, dare.law@usdoj.gov
   - **Ashley M McDow**    amcdow@foley.com, sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
   - **Stacey A Miller**    smiller@tharpe-howell.com
   - **Kevin H Morse**    kmorse@clarkhill.com, blambert@clarkhill.com
   - **Shane J Moses**    smoses@foley.com
   - **Akop J Nalbandyan**    jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
   - **Rejoy Nalkara**    rejoy.nalkara@americaninfosource.com
   - **Anthony J Napolitano**    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
   - **Jennifer L Nassiri**    jennifernassiri@quinnemanuel.com
   - **David L. Neale**    dln@lnbyb.com
   - **Aram Ordubegian**    ordubegian.aram@arentfox.com
   - **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
   - **Gregory M Salvato**    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
   - **Jeffrey S Shinbrot**    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
   - **Steven M Spector**    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
   - **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
   - **Kimberly Walsh**    bk-kwalsh@texasattorneygeneral.gov
   - **Eric D Winston**    ericwinston@quinnemanuel.com
   - **Eric K Yaeckel**    yaeckel@sullivanlawgroupapc.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**
4831-3722-5132.2