| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RICHARD T. BAUM<br>State Bar No. 80889<br>11500 West Olympic Boulevard<br>Suite 400<br>Los Angeles, California  90064<br>310.277-2040 | fax 310.286.9525<br>rickbaum@hotmail.com<br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Rosenthal Family Trust | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>SCOOBEEZ, et al,<br>   Debtors.<br>_____<br>Affects:<br>☐ All Debtors<br>☐ Scoobeez, ONLY<br>▣ Scoobeez Global, Inc.  ONLY<br>☐ Scoobur LLC, ONLY<br><br>                                        Debtor(s). | CASE NO.: 2:19-bk-14989 WB<br>CHAPTER: 11<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(ACTION IN NONBANKRUPTCY FORUM)**<br><br>**DATE:** 01/07/2020<br>**TIME:** 10:00 am<br>**COURTROOM:** 1375 |

| **Movant**: ROSENTHAL FAMILY TRUST UTD 3/25/1988 | OR FOR ORDER THAT AUTOMATIC STAY DOES NOT APPLY |

1. **Hearing Location**:
   ☒ 255 East Temple Street, Los Angeles, CA 90012         ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

  a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

  b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

  c. ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  __11/26/2019__

LAW OFFICES OF RICHARD T. BAUM
Printed name of law firm (if applicable)

RICHARD T. BAUM
Printed name of individual Movant or attorney for Movant

/s/ Richard T. Baum
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION
OR FOR ORDER THAT AUTOMATIC STAY DOES NOT APPLY

1. **In the Nonbankruptcy Action, Movant is:**

   a. ☐ Plaintiff

   b. ☐ Defendant

   c. ☒ Other (*specify*):  Shareholder of Scoobeez Global, Inc.

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*:

   b. *Docket number*:

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending*:

   d. Causes of action or claims for relief (Claims):
      Shareholders held a shareholders meeting, removed one director, elected three others, and requested information from Debtors' management.

3. **Bankruptcy Case History:**

   a. ☒ A voluntary  ☐ An involuntary  petition under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13
      was filed on (*date*)  04/29/2019  .

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13
      was entered on (*date*) _____.

   c. ☐ A plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☐ The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☒ The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 3                          **F 4001-1.RFS.NONBK.MOTION**

f. ☐ The bankruptcy case was filed in bad faith.

   (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2) ☐ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

   (3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

   (4) ☐ The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g. ☐ Other (*specify*):


5. **Grounds for Annulment of Stay.** Movant took postpetition actions against the Debtor.

   a. ☐ The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

   c. ☒ Other (*specify*):
      Shareholders believe in good faith that the Automatic Stay does not prohibit their actions.

6. **Evidence in Support of Motion: (*Important Note: declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)**

   a. ☒ The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

   b. ☒ Supplemental declaration(s).

   c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

   d. ☒ Other evidence (*specify*):


7. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☐ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                                Page 4                          **F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☒ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☒ Other relief requested.

An order stating that the Automatic Stay did not prohibit the Shareholders from holding a meeting and from electing directors.

Date:  11/22/2019 

LAW OFFICES OF RICHARD T. BAUM
_____
Printed name of law firm (*if applicable*)

 RICHARD T. BAUM
_____
Printed name of individual Movant or attorney for Movant


 /s/ Richard T. Baum
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 5                          **F 4001-1.RFS.NONBK.MOTION**

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (name of Declarant) PETER ROSENTHAL                                          , declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding (Nonbankruptcy Action) because:

☐ I am the Movant.

☒ I am Movant's attorney of record in the Nonbankruptcy Action.

☐ I am employed by Movant as (title and capacity):

☒ Other (specify): One of the Trustees of the Rosenthal Family Trust UTD 3/25/1988, a shareholder in Debtor SCOOBEEZ GLOBAL, INC.

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

3. In the Nonbankruptcy Action, Movant is:

☐ Plaintiff

☐ Defendant

☒ Other (specify): Shareholder

4. The Nonbankruptcy Action is pending as:

a. *Name of Nonbankruptcy Action*:

b. *Docket number*:

c. *Nonbankruptcy court or agency where Nonbankruptcy Action is pending*:
Meeting of the Shareholders of Scoobeez Global, Inc. for purposes of electing new members of the board of directors, and other designated purposes

5. **Procedural Status of Nonbankruptcy Action**:

a. The Claims are:
Shareholder meeting was called on October 29, 2019, and the meeting was held on 11/1/2019.  At that meeting, Shareholders removed one director, elected three others, and requested information from Debtors' management.

b. True and correct copies of the documents filed in the Nonbankruptcy Action are attached as Exhibit  1    .

c. The Nonbankruptcy Action was filed on *(date)* _____.

d. Trial or hearing began/is scheduled to begin on (date) _____.

e. The trial or hearing is estimated to require _____ days (specify).

f. Other plaintiffs in the Nonbankruptcy Action are (specify):
Other shareholders who attended the meeting were Shahan Ohanessian.  Together with movant, they own more than 90% of the issued and outstanding shares of Debtor Scoobeez Global, Inc

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 6                          **F 4001-1.RFS.NONBK.MOTION**

g.   Other defendants in the Nonbankruptcy Action are (*specify*):


5.   **Grounds for relief from stay:**

a.   ☐   Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b.   ☐   Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c.   ☐   Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.  The insurance carrier and policy number are (*specify*):


d.   ☐   The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

   (1) ☐   It is currently set for trial on (*date*) _____.

   (2) ☐   It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____.  The basis for this belief is (*specify*):


   (3) ☐   The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e.   ☐   The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

   (1) ☐   Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2) ☐   The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):


   (3) ☐   Multiple bankruptcy cases affecting the Property include:

   (A) Case name:
        Case number:                                    Chapter:
        Date filed:            Date discharged:              Date dismissed:
        Relief from stay regarding this Nonbankruptcy Action   ☐ was   ☐ was not   granted.


---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(B) Case name:

Case number:                               Chapter:

Date filed:               Date discharged:                Date dismissed:

Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

(C) Case name:

Case number:                               Chapter:

Date filed:               Date discharged:                Date dismissed:

Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f.  ☐ See attached continuation page for other facts justifying relief from stay.

6.  ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a.  ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b.  ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

c.  ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/21/2019 | PETER ROSENTHAL | |
|---|---|---|
| Date | Printed name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 8                          F 4001-1.RFS.NONBK.MOTION

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3      A corporation is managed by its board of directors who answer to, and are elected

4    by the shareholders.  The Shareholders of SCOOBEEZ GLOBAL, INC. held a special

5    meeting at which they voted to remove one member of the board of directors and replace

6    him with three additional members.  That new board has not attempted to exercise control

7    over property of the estates, or to direct the actions of the Debtors in this case.  The

8    shareholders are greatly concerned over the course the Debtors have followed in this case,

9    particularly the undue influence that secured creditor Hillair has exercised over the "old

10   board" and management.  Movant, one of the shareholders attending the meeting, and

11   voting in favor of the actions taken at that meeting, requests that the court recognize the

12   the actions of the shareholders to created the newly constituted board as the current Board

13   of Directors of SCOOBEEZ GLOBAL, INC. and that the actions of the Board of Directors

14   do not violate the Automatic Stay of Proceedings, or alternatively, that the Board be

15   granted relief from stay so that it may freely govern the corporations.  Since this Debtor is

16   the parent of the other Debtors in this case, the decisions of that board will determine the

17   actions of those Debtors.  However, the shareholders made it clear to the new board

18   members that they would not countenance any attempt to put Shahan Ohanessian in

19   charge of, or with access to, the moneys of the Debtors.

20

21

## A SHORT HISTORY OF THE FACTS

22      The Debtors filed their Chapter 11 Petitions on April 30, 2019 .  The Debtors are

23   debtors-in-possession of their estates.  Cash collateral orders between the Debtors and

24   secured creditor Hillair Capital Management, LLC ("Hillair") were entered on an interim

25   basis throughout the case, and continue to be in effect.  On August 29, 2019, the Debtors

26   filed a motion seeking approval of the sale of substantially all assets, subject to a stalking

27   horse bid by senior secured creditor Hillair.  The Debtors also obtained orders setting forth

28

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER FOR RELIEF FROM AUTOMATIC STAY
OR, ALTERNATIVELY, FOR ORDER THAT AUTOMATIC STAY DOES NOT APPLY**

procedures for the marketing of the Debtors and their assets as well as the conduct of any sales in light of expected overbids.  At a hearing on October 17, 2019, the Debtors admitted that they had not obtained any offers.  The hearing was continued to November 7, and later to November 18 when the motion was denied.  Meantime, the Debtors filed a complaint against Amazon Logistics Inc. ("Amazon") on October 25, which turned around and filed a motion for relief from stay contending that it had the right to terminate its agreements with the Debtors.  Amazon provides the vast majority of the Debtors' delivery business.

If the motion to approve the sale of all of the Debtors' assets had been approved and secured creditor Hillair was the buyer, there would be no distribution to the unsecured creditors absent Hillair's charity, no distribution to equity, and a probable wholesale reduction in the workforce.  The relationship with Amazon has been allowed to sour to the point of litigation and threats of termination of contracts, and the future prospects of the Debtors are cast into substantial doubt.

On October 18, 2019, the shareholders of SCOOBEEZ GLOBAL, INC. made a written demand upon the co-executive officers that a special meeting of the shareholders be called and noticed within 15 days.  The executive officers did not respond to the demand, but instead stated that they were doing research and that a response would follow.

On October 29, 2019, majority shareholder Shahan Ohanessian served notice upon the Board, officers and bankruptcy counsel that due to their failure to call a shareholders meeting, he was calling one for November 1, 2019 to discuss the current status of Scoobeez Global, the actions of the current board of directors, Scoobeez Global's relationship with, and the recently filed lawsuit against, Amazon, as well as possible removal of the existing Board or some of its members.

The executives responded on October 31 that they would not call a special meeting of the shareholders because notice would have to be sent to all shareholders, that they did

not have a current list of shareholders, that the transfer agent of Scoobeez Global could compile such a list, that it would cost approximately $6,000 to obtain that list, that the cash collateral budget did not take such an expense into account, and that permission to incur that expense had been denied by the secured creditor.

The Special Meeting of the Shareholders took place on November 1, 2019 at approximately 12:00 noon.  Three shareholders were present.  Prior to any motions or votes, the shareholders discussed the Amazon situation, their dissatisfaction with the seeming take-over of the company by Hillair including the relations between Hillair and CRO Brian Weiss, the seeming absence of Daniel Harrow from governance, the potential sale of the company to Hillair with no return to creditors or shareholders, and the need to explore other means of reorganization.  After review of the situation, the shareholders voted to remove Daniel W. Harrow as a member of the board,, and voted to elect Chishona Ohanessian, Shahan Ohanessian and Gregori Sedrakyan as new directors.

The first act of this new board was to ask the Debtors' management why a sale is a better alternative than restructuring and reorganization of the Debtors.  It will seek answers into the issues of excess technology spending.  It will deal with conflicts of interest among the officers of the debtors, and it may seek a new Chief Restructuring Officer who does not have ties to Hillair.  It will not wrest control of the finances of the Debtors from its management.

The action by the shareholders should be recognized as a legitimate means to exercise their inherent power to control the Debtors' reorganization.

**DECISIONS OF DEBTORS' MANAGEMENT HAVE DELETERIOUSLY IMPACTED THE BUSINESS OF THE DEBTORS**

At a time when business is down 40% from its pre-bankruptcy level, when its best customer, Amazon, is threatening to cut off all business from the Debtors, and when its

1    buyer backed out of the APA causing its sale motion to be denied, the Debtors paid

2    $86,000 in one month to its Chief Restructuring Officer, and doubled the pay of its co-

3    CEOs, George Voskanian and Scott Sheikh, Ohanessian's former lawyer. A sophisticated

4    logistics company seems to be overspending on outside technology consultants.

5       Secured creditor Hillair took over the Debtors through its cash collateral powers

6    within three weeks of the Petition Date. It forced the ouster of Scoobeez' president and

7    founder, Shahan Ohanessian. It installed its own nominee as Chief Restructuring Officer,

8    Brian Weiss. It added a new board of directors, installing Weiss, respected Chapter 7

9    trustee Howard Grobstein, and Daniel W. Harrow, a man with a limited known background.

10    During this regime, revenue has dropped by 40% from pre-petition levels, the relationship

11    with Amazon has soured to litigation and threatened termination of contracts, and a sale

12    of the Debtors' estates to Hillair which would return nothing to anyone but Hillair was

13    floated and denied.

14       The sale to Hillair, while termed a stalking horse bid, was really an attempt to freeze

15    out any competition. The sale to Hillair would not have generated a return to unsecured

16    creditors let alone equity. The responsibility for undertaking these tasks lies with the Board

17    of Directors not just the attorneys who advise them and who follow their instructions. This

18    does not look like a board which understands its fiduciary obligations in a chapter

19    proceeding. Rather, it is a puppet of Hillair.

20       Debtors' top management is rife with conflicts of interest. Weiss is the chosen CRO

21    of Hillair, and undoubtedly hopes for future appointments. Sheikh remains the attorney of

22    ousted officer and director Ohanessian. That appears to be serving two masters with

23    different agendas.

24       In addition, the Debtors paid Weiss $86,000 in one month, which annualizes to over

25    $1,000,000. They apparently ran up over $1-million in Debtor-in-Possession attorneys'

26    fees (Application at docket # 376), plus the fees of Creditors Committee Counsel

27    ($244,000, docket # 378) others ($100,000 to Armory Securities, docket # 37, and

28

1   $272,500 to Conway MacKenzie, docket # 372).  Yet that Board refused reimbursement

2   to Shoushana Ohanessian for employee expenses she advanced at their request.

3          The Debtors have asked to extend exclusivity to file a Chapter 11 Plan, yet nothing

4   as been floated.  The old board is too beholden to Hillair to mount any kind of challenge

5   to its rule.  This new board is prepared to fashion a reorganization relying upon the

6   business acumen of its members, not just the financial analysis of its CRO.

7          For all of these reasons, the shareholders sought to call a meeting so that

8   management would answer their many questions regarding the fate of their companies.

9   When that was rebuffed, it was clear that more assertive action needed to be done.  They

10  convened a meeting of the shareholders in compliance with the By-Laws, removed a

11  director, installed three new directors, and demanded information from management.

12  Further steps await a decision of this motion.

13

14          **THE SHAREHOLDERS MEETING WAS PROPERLY CALLED AND HELD**

15

16          Scoobeez was originally organized in California, but as a result of a reverse merger

17  with ABT Mining, Inc., which later became ABT Holding, Inc., and now has changed its

18  name to Scoobeez Global, Inc., Scoobeez Global. Inc. is an Idaho corporation.  Idaho

19  Code Section 30-29-702(a) governs special meetings of the shareholders of a corporation.

20  In relevant part, the section provides:

21          "(2) If shareholders holding at least twenty percent (20%) of all the

22          votes entitled to be cast on any issue proposed to be considered at the

23          proposed special meeting sign, date and deliver to the corporation one (1)

24          or more written demands for the meeting describing the purpose or purposes

25          for which it is to be held, provided that the articles of incorporation may fix a

26          lower percentage or a higher percentage not exceeding thirty-three and

27          one-third percent (33 1/3%) of all the votes entitled to be cast on any issue

28

1    proposed to be considered. Unless otherwise provided in the articles of

2    incorporation, a written demand for a special meeting may be revoked by a

3    writing to that effect received by the corporation before the receipt by the

4    corporation of demands sufficient in number to require the holding of a

5    special meeting."

6        On October 18, 2019, majority shareholder Shahan Ohanessian served upon the

7    then co-Chief Executive Officers of Scoobeez Global, George Voskanian and Scott A.

8    Shiekh, a written demand, pursuant to Article II, Section 2 of the debtor's bylaws[1], that a

9    special meeting of the shareholders of Scoobeez Global be called and noticed within 15

10    days of the demand and set forth the issues to be addressed at the special meeting. The

11    demand was also sent to bankruptcy counsel, John Simon and Ashley M. McDow, and

12    then directors, Brian Weiss, Howard Grobstein and Daniel W. Harrow.  Ohanessian

13    received no response from the co-CEOs of Scoobeez Global, therefore, on October 23,

14    2019, he sent a follow up email inquiring about the status of the special meeting demanded

15    by way of the letter served on October 18, 2019.  On that same date, Ohanessian received

16    a response from Weiss indicating that his "legal counsel … are performing some research"

17    and that a response would be "provide[d] after this occurs."

18        On October 25, 2019, Ohanessian sent another follow-up correspondence to

19    Messrs. Voskanian, Shiekh, Simon, Weiss, Grobstein and Harrow, and Ms. McDow

20    following up on his demand for a special meeting of the shareholders.  The Board did not

21    take any action.  In light of management's refusal to address the demand, on October 29,

22    2019, Shahan served a notice on Messrs. Voskanian, Shiekh, Simon, Weiss, Grobstein

23    and Harrow, and Ms. McDow indicating that, he was calling a Special Meeting of the

24    _____

25    [1] That section provides: "Any action required to be taken at a meeting of the
26    shareholders, or any other action which may be taken at a meeting of the shareholders,
      may be taken without a meeting of a consent in writing, setting forth the action so taken,
27    must be signed by shareholders owning a majority of the Company's issued and
      outstanding common stock with respect to the subject matter thereof."

28    **POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER FOR RELIEF FROM AUTOMATIC STAY
      OR, ALTERNATIVELY, FOR ORDER THAT AUTOMATIC STAY DOES NOT APPLY**

1  Shareholders to be held at 1:00 p.m. PST on November 1, 2019, at Scoobeez Global's

2  principal offices.  Finally responding, on October 31, 2019, Co-CEO Sheikh sent an email

3  indicating that Shahan will not be allowed access to Scoobeez Global's principal offices on

4  November 1, 2019 for purposes of holding a shareholders meeting.

5      In light of these events, shareholders Peter Rosenthal (as Trustee of the Rosenthal

6  Family Trust), Ohanessian and Dick Dolan, who jointly own over 90% of the outstanding

7  common stock of Scoobeez Global, convened a shareholders meeting on November 1,

8  2019, at a location in Glendale, California (which was disclosed to the Company's

9  management in advance of the meeting), wherein they discussed: (i) the status of

10  Scoobeez Global, (ii) the actions taken by the current officers and directors, (iii) Scoobeez

11  Global's relationship with Amazon, (iv) Scoobeez Global's lawsuit against Amazon, and (v)

12  the actions and conduct of the directors and officers of Scoobeez Global.

13      At the meeting, Rosenthal made a motion to change the Board of Directors of

14  Scoobeez Global, to remove of Daniel W. Harrow and appoint new Directors to the Board.

15  The motion was seconded by Dick Dolan. A vote was held by the present shareholders,

16  with all three shareholders voting in favor, to remove Harrow from the Board of Directors,

17  and elected the following individuals to the Board:  Shoushana Ohanessian, Shahan

18  Ohanessian and Gregori Sedrakyan.   Brian Weiss and Howard Grobstein were not

19  removed from the Board.

20      That new board asked for information from the company's management, "why the

21  Sale Motion pending before the United States Bankruptcy Court is a better course of action

22  for the creditors than the Company filing a reorganization plan." The management's

23  response was to deny the legitimacy of the shareholders meeting and its actions.

24

25      Article 2, Section 8 of the Bylaws of Scoobeez Global provides as follows:

26          "Any action required to be taken at a meeting of the shareholders, or

27          any other action which may be taken at a meeting of the shareholders, may

28

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER FOR RELIEF FROM AUTOMATIC STAY
OR, ALTERNATIVELY, FOR ORDER THAT AUTOMATIC STAY DOES NOT APPLY**

1    be taken without a meeting of a consent in writing, setting forth the action so

2    taken, must be signed by shareholders owning a majority of the Company's

3    issued and outstanding common stock with respect to the subject matter

4    thereof."

5    This provision is consistent with Idaho law, which provides that:

6        "The articles of incorporation may provide that any action required or

7    permitted by this chapter to be taken at a shareholders' meeting may be

8    taken without a meeting, and without prior notice, if consents in writing

9    setting forth the action so taken are signed by the holders of outstanding

10    shares having not less than the minimum number of votes that would be

11    required to authorize or take the action at a meeting at which all shares

12    entitled to vote on the action were present and voted. (I.C. § 30-29-704(b).)"

13    Idaho law further provides that:

14        A consent signed pursuant to the provisions of this section has the

15    effect of a vote taken at a meeting and may be described as such in any

16    document. Unless the articles of incorporation, bylaws, or a resolution of the

17    board of directors provides for a reasonable delay to permit tabulation of

18    written consents, the action taken by written consent shall be effective when

19    written consents signed by sufficient shareholders to take the action have

20    been delivered to the corporation. (I.C. § 30-29-704(d).)

21

22    **THE FILING OF A BANKRUPTCY DOES NOT DEPRIVE SHAREHOLDERS**

23    **AND DIRECTORS OF THEIR CORPORATE MANAGEMENT POWERS**

24

25    It is axiomatic that a corporate entity is managed by a board of directors that is

26    elected by the shareholders.  The ultimate power of a corporation rests in its shareholders

27    whose power to elect and remove members of the board of directors can steer the course

28

1  the corporate follows.  This is true in the wide world, and it is also true while the corporation

2  navigates the reefs and shoals of bankruptcy.

3       The shareholders retain their rights to elect the board of directors of debtors in

4  bankruptcy. Jacobson v. AEG Capital Corp., 50 F.3d 1493, 1499-1500 (9th Cir 1995)

5  ("shareholders still have the power to elect directors of the corporation, and the directors

6  still have the power to select officers and to guide the corporation's business activities

7  where director action is required by state law", quoting Broude, Reorganizations Under

8  Chapter 11 of the Bankruptcy Code, § 6.06). Bankruptcy courts have long given wide

9  deference to the underlying corporate powers possessed by officers, directors and

10 shareholders of debtor corporations.  "As a consequence of the shareholders' right to

11 govern their corporation, *a prerogative ordinarily uncompromised by reorganization*, a

12 bankruptcy court should not lightly employ its equitable power to block an election of a new

13 board of directors." In re Johns Manville Corp., 801 F.2d 60, 64 (2d Cir. 1986) (Emphasis

14 added.).

15      As stated in In re Lifeguard Indus., Inc., 37 BR 3, 17 (Bankr SD Ohio 1983) "There

16 is little question that shareholders of a corporate debtor-in-possession retain their state law

17 rights to control a corporation, and that such rights cannot be lightly cast aside by this

18 Court."  The equitable principles that underlie bankruptcy law encourage respect for all

19 classes of claimants.  "Shareholders, moreover, should have the right to be adequately

20 represented in the conduct of a debtor's affairs, particularly in such an important matter as

21 the reorganization of the debtor."    In re Marvel Entm't Grp., 209 BR 832, 838 (D Del.

22 1997).  The course presently set by the Board seems to lead inexorably to a take-over by

23 the secured creditor to the extreme detriment of the creditor classes and the shareholders.

24      The "right to call a [shareholders] meeting may be impaired only if the Equity

25 Committee is guilty of "clear abuse" in attempting to call one. See In re J.P. Linahan, Inc.,

26 111 F.2d 590, 592 (2d Cir. 1940)." In re Johns-Manville Corp., 801 F.2d 60, 64 (2d Cir.

27 1986).  Providing themselves with a voice in the reorganization process is not a clear

28

1    abuse.

2        In an early case, <u>In re Bush Terminal Co.</u>, 78 F.2d 662 (2d Cir. 1935), the Second

3    Circuit reversed an order enjoining a shareholders' meeting which sought to advance a

4    rehabilitation plan more favorable to equity.  The court said:

5        "[T]he debtor is given the right to be heard on all questions. Obviously, the

6        stockholders should have the right to be adequately represented in the

7        conduct of the debtor's affairs, especially in such an important matter as the

8        reorganization of the debtor. Such representation can be obtained only by

9        having as directors persons of their choice. . . . [T]he debtor is given the

10        power to propose a plan of reorganization. No reason is advanced why

11        stockholders, if they feel that the present board of directors is not acting in

12        their interest, or has caused an unsatisfactory plan to be filed on behalf of

13        the debtor, should not cause a new board to be elected which will act in

14        conformance with the stockholders' wishes." Id at 664.

15        A significant factor which influences the courts appears to be equity's participation

16    in the reorganization process.  The position of the respective classes of creditors and

17    interest holders can be negotiated and incorporated into a reorganization plan; or be the

18    subject of a reorganization battle for votes after a disclosure statement makes clear the

19    consequences of confirmation for each class.  This process is lacking here where the

20    Debtor's directors seek to sell it and/or its assets as a Section 363(b) sale against the

21    expressed will of equity and without any significant disclosure of due diligence in locating

22    a buyer, the valuation of assets, or the consequences to each class if a sale is

23    consummated.  If equity participation is to be encouraged in the open reorganization

24    process, it stands to reason that it is to be welcomed where the process is shrouded in

25    mystery.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THE SHAREHOLDERS MEETING AND ELECTION OF NEW DIRECTORS
## IS NOT PROHIBITED BY THE AUTOMATIC STAY

A number of courts have considered the impact of the automatic stay vis-a-vis the inherent powers and structures of corporations and their interestholders, and virtually all have concluded that the automatic stay does not bar such actions.  The Second Circuit considered the issue of whether a court should issue an affirmative injunction to stop a disputed board election in the case of In re Johns-Manville Corp. Manville Corp. v. Equity Security Holders Committee (In re Johns-Manville Corp.), 801 F.2d 60, 63 (2d Cir. 1986). The Johns-Manville court upheld that the right of shareholders to compel a shareholders' meeting for the purposes of election a new board of directors continues during reorganization proceedings.  "A proceeding in bankruptcy ordinarily will not impair the right of a shareholder to compel an annual meeting."

While there are differences between annual and special shareholder meetings, they are more of formalities than of substance.  In each, shareholders may vote to take action. In Official Bondholder Committee v. Chase Manhatten [sic] Bank (In re Marvel Entm't Grp., Inc.), 209 B.R. 832 (D. Del. 1997) ("Marvel Entertainment"), the court held that the automatic stay provisions of the Bankruptcy Code were not implicated by the exercise of a shareholders' corporate governance rights.  Relying, in part, on Johns-Manville, the court held:

> "It is well settled that the right of shareholders to compel a shareholders' meeting for the purpose of electing a new board of directors subsists during reorganization proceedings. The right of shareholders to be represented by directors of their choice and thus to control corporate policy is paramount. Shareholders, moreover, should have the right to be adequately represented in the conduct of a debtor's affairs, particularly in such an important matter as the reorganization of the debtor. As a result, the

1    election of a new board of directors may be enjoined only under

2    circumstances demonstrating "clear abuse." "Clear abuse" requires a

3    showing that the shareholders' action in seeking to elect a new board of

4    directors demonstrates a willingness to risk rehabilitation altogether in order

5    to win a larger share for equity. The fact that the shareholders' action may

6    be motivated by a desire to arrogate more bargaining power in the

7    negotiation of a reorganization plan, without more, does not constitute clear

8    abuse." (citations and internal quotation marks omitted)

9    It is important to recognize the context of these cases.  The question at issue was

10   decided in the context of adversary proceedings seeking an injunction against the

11   shareholder action.  It was taken as a given that the automatic stay did not prohibit the

12   actions.  The court in <u>In re SS Body Armor I, Inc.</u>, 527 BR 597  (Bankr D Del 2015)

13   confronted the issue directly where, as here, a shareholder made a motion that the

14   automatic stay did not prohibit shareholder actions to convene a meeting and to replace

15   members of the board of directors. "This Court adopts the holdings of <u>Johns-Manville</u> and

16   <u>Marvel Entertainment.</u> The right of a shareholder to compel a shareholder's meeting for the

17   purpose of election of a new board of directors continues during bankruptcy and the

18   automatic stay is inapplicable to the exercise of that right, including the inception of state

19   court proceedings to compel a shareholder meeting." Id at 606-607.  While that right is not

20   unfettered, a showing of "'clear abuse', in other words, a showing of delay and real

21   jeopardy to a debtor's reorganization," must await an adversary proceeding seeking an

22   injunction against the shareholder action, Id at 607.

23   The court in <u>JohnsManville</u> cited <u>In re Potter Instrument Co.</u>, 593 F 2d 470 (2d Cir.

24   1979) (a case under the Act, not the Code), and then distinguished it.  Potter said:

25   "[T]he right of the majority of stockholders to be represented by directors of

26   their own choice and thus to control corporate policy is paramount and will

27   not be disturbed unless a clear case of abuse is made out. This has been the

28

1  rule all along in equity receivership, in ordinary bankruptcy and in

2  proceedings for reorganization under former section 77B of the Bankruptcy

3  Act [the antecedent of Chapter X] . . . [With respect to their choice of the type

4  of reorganization plan,] the stockholders are entitled to elect directors who

5  will abide by their wishes, provided of course the directors chosen are not

6  persons who will injure the honest and efficient management of the corporate

7  property. In re J. P. Linahan, Inc., 111 F.2d 590, 592 (2d Cir. 1940) (citations

8  omitted). See 6 Collier on Bankruptcy ¶ 8.15 (14th ed. 1978)." Potter at 475.

9      Potter was factually distinguished from Johns Manville since the shareholder had

10 failed to abide by previous court orders, and had expressed his goal of smashing the

11 debtor business.   The Potter lower court found that a shareholder election "might result

12 in unsatisfactory management and would probably jeopardize both PICO's rehabilitation

13 and the rights of creditors and stockholders—sounding the "death knell" to the debtor as

14 well as to appellant himself."

15     The new board has made demand for information from management.  It has not

16 seized the reins of the reorganization.  The Debtors reorganizations are not threatened;

17 rather it appears that they are furthered by having management pushed to devise a plan,

18 a course they have proved reluctant to follow.  The actions seek to further the debtors, not

19 to endanger them.

20

21                            **CONCLUSION**

22     Shareholder powers of meeting and election are not impacted by the bankruptcy

23 process.  The automatic stay does not prohibit either from being pursued because the

24 ultimate powers behind the throne are the shareholders.  Where shareholder actions

25 threaten the survival of the debtor, the court may weigh injunctive relief bringing to bear the

26 full gamut of equitable analysis.  But when the actions taken do not imperil the debtor, its

27 business, or its reorganization, there is no cause for injunctive relief.  To the contrary, this

28

1   court should grant the motion, find that the automatic stay does not prohibit the call of

2   Scoobeez Global's shareholders meeting, does not prohibit the removal and replacement

3   of board members, and does not prohibit that new board from acting on behalf of the

4   debtors in this case.

5

6   Dated: November 21, 2019

7                                 /s/ Richard T. Baum

8                                 RICHARD T. BAUM, Attorney for Shareholder
                                   ROSENTHAL FAMILY TRUST U/T/D

9                                 3/25/1988

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

### DECLARATION OF PETER ROSENTHAL

3

I, PETER ROSENTHAL, declare:

4      1.  Along with my wife Barbara, I am the trustee of Rosenthal Family Trust UTD

5   3/25/1988 ("RT" hereafter).  I have personal knowledge of the facts set forth herein and if

6   called as a witness I could testify competently thereto, except where stated on information

7   and belief, in which case I trust the source of information and believe the facts stated to

8   be true.

9      2.  Based upon review of records of the corporation shown to me sometime after RT

10   became a shareholder, Scoobeez was originally organized in California, but as a result of

11   a reverse merger with ABT Mining, Inc., which later became ABT Holding, Inc., and now

12   has changed its name to Scoobeez Global, Inc., Scoobeez Global. Inc. is an Idaho

13   corporation.

14      3. On October 18, 2019, majority shareholder Shahan Ohanessian served upon the

15   then co-Chief Executive Officers of Scoobeez Global, George Voskanian and Scott A.

16   Shiekh, our written demand, pursuant to Article II, Section 2 of the debtor's bylaws, that a

17   special meeting of the shareholders of Scoobeez Global be called and noticed within 15

18   days of the demand and set forth the issues to be addressed at the special meeting.  A

19   true copy is attached hereto as Exhibit 1.  The demand was also sent to bankruptcy

20   counsel, John Simon and Ashley M. McDow, and then directors, Brian Weiss, Howard

21   Grobstein and Daniel W. Harrow.    Neither Ohanessian nor I received a response.

22   Therefore, on October 23, 2019, he cc'd me on a follow up email inquiring about the status

23   of the special meeting demanded by way of the letter served on October 18, 2019, a true

24   copy of the print fo that email is attached as Exhibit 2.  On that same date, Ohanessian

25   received a response from Weiss indicating that his "legal counsel … are performing some

26   research" and that a response would be "provide[d] after this occurs."  A true copy of the

27   print of this email is attached as Exhibit 3.

28

4.   On October 25, 2019, Ohanessian sent another follow-up correspondence to Messrs. Voskanian, Shiekh, Simon, Weiss, Grobstein and Harrow, and Ms. McDow following up on his demand for a special meeting of the shareholders.  The Board did not take any action.  In light of management's refusal to address the demand, on October 29, 2019, Ohanessian served a notice on Messrs. Voskanian, Shiekh, Simon, Weiss, Grobstein and Harrow, and Ms. McDow indicating that, he was calling a Special Meeting of the Shareholders to be held at 1:00 p.m. PST on November 1, 2019, at Scoobeez Global's principal offices.  A true copy of the print of that email is attached as Exhibit 4. p.m. PST on November 1, 2019, at Scoobeez Global's principal offices.   On October 31, 2019, Co-CEO Sheikh finally responded and sent an email indicating that Ohanessian will not be allowed access to Scoobeez Global's principal offices on November 1, 2019 for purposes of holding a shareholders meeting.  A true copy of the print of this email is attached as Exhibit 5.

5.   On November 1, 2019, shareholders Ohanessian, Dick Dolan, and I (on behalf of RT), who jointly own over 90% of the outstanding common stock of Scoobeez Global, convened a shareholders meeting at a location in Glendale, California.  The address of the meeting was disclosed to the Company's management in advance of the meeting.  We discussed: (i) the status of Scoobeez Global, (ii) the actions taken by the current officers and directors, (iii) Scoobeez Global's relationship with Amazon, (iv) Scoobeez Global's lawsuit against Amazon, and (v) the actions and conduct of the directors and officers of Scoobeez Global.  we discussed the 40% fall in revenue disclosed by Ms McDow.  We discussed the falling out of favor with Amazon, the litigation initiated by the Debtors against it, and Amazon's motion for relief from stay which contends that it has the right to terminate its contract with the Debtors.  We discussed the implications of such a course, and the need to restore the good relations with the Debtor's most important customer.  The failure to repair that relationship greatly troubled each of us. Ohanessian expressed concern that review of the Monthly Operating Report in the bankruptcy indicated that the Debtors were

1  spending a lot of money on technology issues which, in Ohanessian's experience, was

2  unnecessary.  As shareholders we expressed that this issue needed to be explored.  We

3  were very concerned over the influence which Hillair was having with the Debtors, and

4  decided to ask for information from the company's management, specifically "why the Sale

5  Motion pending before the United States Bankruptcy Court is a better course of action for

6  the creditors than the Company filing a reorganization plan."  A true copy of the letter to the

7  Board is attached as Exhibit 6.  We discussed concerns regarding the officers of

8  Scoobeez:  Weiss is the chosen CRO of Hillair, and undoubtedly hopes for future

9  appointments.  Voskanian and Sheikh had their salaries doubled (thanks to Hillair), and

10  Sheikh remains the attorney of ousted officer and director Ohanessian.  While we were

11  concerned about these many things, it was specifically stated by Ohanessian that neither

12  we as shareholders, nor the new board, would attempt to wrest control of the finances

13  away from management.  He also stated that while he was dissatisfied with the work of

14  Brian Weiss, the new board might replace him with another qualified Chief Reorganization

15  Officer.  That person, he said, would not be him.

16      6.   After some discussion, I made a motion to change the Board of Directors of

17  Scoobeez Global, to remove of Daniel W. Harrow and appoint new Directors to the Board.

18  The motion was seconded by Dick Dolan. A vote was held by the present shareholders,

19  with all three of us voting in favor and none opposed, to remove Harrow from the Board of

20  Directors, and to elect the following individuals to the Board:  Shoushana Ohanessian,

21  Shahan Ohanessian and Gregori Sedrakyan.  Brian Weiss and Howard Grobstein were

22  not removed from the Board.  Minutes fo the meeting were prepared by Ohanessian, a true

23  copy of which is attached as Exhibit 7.  We also acted by written consent to remove Harrow

24  and elect Shoushana Ohanessian, Shahan Ohanessian and Gregori Sedrakyan as

25  directors.  A true copy of that Action By Written Consent is attached as Exhibit 8.

26

27

28

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER FOR RELIEF FROM AUTOMATIC STAY
OR, ALTERNATIVELY, FOR ORDER THAT AUTOMATIC STAY DOES NOT APPLY**

1    7.  After the vote, the shareholders stated clearly to the new board members that

2    they would not countenance any attempt to put Shahan Ohanessian or Shoushana

3    Ohanessian in charge of, or with access to, the moneys of the Debtors

4    8.  The procedures undertaken by us, the shareholders, are consistent with the By-

5    Laws of Scoobeez Global, Inc. and with Idaho law.  Article 2, Section 8 of the Bylaws of

6    Scoobeez Global provides as follows:

7         "Any action required to be taken at a meeting of the shareholders, or

8         any other action which may be taken at a meeting of the shareholders, may

9         be taken without a meeting of a consent in writing, setting forth the action so

10        taken, must be signed by shareholders owning a majority of the Company's

11        issued and outstanding common stock with respect to the subject matter

12        thereof."

13    9.  This provision in the By-Laws is consistent with Idaho law, which provides:

14        The articles of incorporation may provide that any action required or

15        permitted by this chapter to be taken at a shareholders' meeting may be

16        taken without a meeting, and without prior notice, if consents in writing

17        setting forth the action so taken are signed by the holders of outstanding

18        shares having not less than the minimum number of votes that would be

19        required to authorize or take the action at a meeting at which all shares

20        entitled to vote on the action were present and voted. (I.C. § 30-29-704(b).)

21    10.  Idaho law further provides that:

22        A consent signed pursuant to the provisions of this section has the

23        effect of a vote taken at a meeting and may be described as such in any

24        document. Unless the articles of incorporation, bylaws, or a resolution of the

25        board of directors provides for a reasonable delay to permit tabulation of

26        written consents, the action taken by written consent shall be effective when

27        written consents signed by sufficient shareholders to take the action have

28

1    been delivered to the corporation. (I.C. § 30-29-704(d).)

2

3    I declare under penalty of perjury under the laws of the United States of America

4    that the foregoing is true and correct. Executed this 21 day of November, 2019 in Los

5    Angeles County, California.

6

7                                        _____

8                                        PETER ROSENTHAL

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  11500 West Olympic Boulevard, Suite 400, Los Angeles, California 90064-1525.

A true and correct copy of the foregoing document described as  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On November 26, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

◉ Service information continued on attached page

II. <u>SERVED BY U.S. MAIL:</u>
On November 26, 2019 , I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Judge Julia Brand, United States Bankruptcy Court, 255 East Temple Street, Suite 1382, Los Angeles, California  90012

◉     Service information continued on attached page

**III. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 26, 2019 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 26, 2019 | RICHARD T. BAUM | /s/ Richard T. Baum |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                                                                                                F 9013-3.1

1  By Notice of Electronic Filing (NEF)

2  Richard T Baum     rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
   Bradley E Brook     bbrook@bbrooklaw.com, paulo@bbrooklaw.com; brookecfmail@gmail.com
3  Richard W Esterkin     richard.esterkin@morganlewis.com
   John-Patrick M Fritz     jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
4  Riebert Sterling Henderson     shenderson@gibbsgiden.com
   Vivian Ho     BKClaimConfirmation@ftb.ca.gov
5  David Brian Lally     davidlallylaw@gmail.com
   Alvin Mar     alvin.mar@usdoj.gov, dare.law@usdoj.gov
6  Ashley M McDow     amcdow@foley.com, sgaeta@foley.com;
   mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
7  Stacey A Miller     smiller@tharpe-howell.com
   Kevin H Morse     kmorse@clarkhill.com, blambert@clarkhill.com
8  Shane J Moses     smoses@foley.com
   Akop J Nalbandyan     jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
9  Rejoy Nalkara     rejoy.nalkara@americaninfosource.com
   Anthony    J    Napolitano            anapolitano@buchalter.com,
10 IFS_filing@buchalter.com;salarcon@buchalter.com
   Jennifer L Nassiri     jennifernassiri@quinnemanuel.com
11 David L. Neale     dln@lnbyb.com
   Aram Ordubegian     ordubegian.aram@arentfox.com
12 Hamid R Rafatjoo     hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
   Gregory    M    Salvato            gsalvato@salvatolawoffices.com,
13 calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;
   gsalvato@ecf.inforuptcy.com
14 Jeffrey S Shinbrot     jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
   Steven M Spector   sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
15 United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
   Kimberly Walsh     bk-kwalsh@texasattorneygeneral.gov
16 Eric D Winston     ericwinston@quinnemanuel.com
   Eric K Yaeckel     yaeckel@sullivanlawgroupapc.com

17
   <u>By US Mail</u>:
18
   Conway MacKenzie, Inc.
19 333 S Hope St Ste 3625
   Los Angeles, CA 90071
20
   Daimler Trust
21 c/o BK Servicing, LLC
   PO Box 131265
22 Roseville, MN 55113-0011

23 Levene Neale Bender Yoo & Brill LLP
   10250 Constellation Blvd Ste 1700
24 Los Angeles, CA 90067

25

26

27

28
   ────────────────────────────────────────────────
   **POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER FOR RELIEF FROM AUTOMATIC STAY
   OR, ALTERNATIVELY, FOR ORDER THAT AUTOMATIC STAY DOES NOT APPLY**