Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
     jsimon@foley.com
     smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

In re:

SCOOBEEZ, et al.[1]

    Debtors and Debtors in Possession.

Case No. 2:19-bk-14989-WB
Jointly Administered:
2:19-bk-14991-WB; 2:19-bk-14997-WB

Chapter 11

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

| Affects: | |
|---|---|
| ■ All Debtors | **OMNIBUS REPLY OF DEBTORS' PROFESSIONALS TO: (1) OBJECTIONS OF THE UNITED STATES TRUSTEE TO FIRST INTERIM FEE APPLICATIONS OF ARMORY SECURITIES, LLC CONWAY MACKENZIE, INC., AND FOLEY & LARDNER LLP; (2) OBJECTION OF SHAHAN AND SHOUSHANA OHANESSIAN TO FIRST INTERIM FEE APPLICATION OF FOLEY & LARDNER LLP; AND (3) OMNIBUS OPPOSITION OF HILLAIR CAPITAL MANAGEMENT L.L.C. TO FIRST INTERIM FEE APPLICATIONS OF (I) FOLEY & LARDNER LLP, (II) CONWAY MACKENZIE, INC., (III) ARMORY SECURITIES, LLC, AND (IV) LEVENE, NEALE, BENDER, YOU, & BRILL L.L.P.** |
| ☐ Scoobeez, ONLY | |
| ☐ Scoobeez Global, Inc., ONLY | |
| ☐ Scoobur LLC, ONLY | |

Hearing:
Date:   December 5, 2019
Time:   10:00 a.m.
Place:  Courtroom 1375
         U.S. Bankruptcy Court
         255 East Temple Street
         Los Angeles, CA 90012

TO THE HONORABLE JULIA BRAND, UNITED STATES BANKRUTPCY JUDGE, THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:

Foley & Lardner LLP ("Foley"), general bankruptcy counsel to Scoobeez, Scoobeez Global, Inc., and Scoobur LLC, as debtors and debtors in possession (the "Debtors"), on behalf of the Debtors and the Debtors' professionals, Foley, Armory Securities, LLC ("Armory") and Conway MacKenzie, Inc. ("Conway" and with Foley and Armory, the "Debtors' Professionals"), hereby files this omnibus reply to (1) The United States Trustee's Objections (the "UST Objections") to the First Interim Fee Applications Of Armory [Dkt. No. 446], Conway [Dkt. No. 447] and Foley [Dkt. No. 448]; (2) The Objection (the "Ohanessian Objection") To First Interim

Fee Application Of Foley & Lardner LLP filed by Shahan and Shoushana Ohanessian (the "Ohanessians") [Dkt. No 449]; and (3) the Omnibus Opposition (the "Hillair Opposition") of Hillair Capital Management, L.L.C. ("Hillair") To First Interim Fee Applications Of (I) Foley, (II) Conway (III) Armory and (IV) Levene, Neale, Bender, You, & Brill L.L.P [Dkt. No. 450] (the "Hillair Objection," and collectively with the UST Objections and Ohanessian Objection, the "Objections").

## I. INTRODUCTION

Though there are three objections to Foley's fees and expenses in this case, as well as two objections to Armory's and two to Conway's, none of them substantively dispute that the vast majority of the fees incurred by the Debtors' professionals to date are reasonable and beneficial to the estate. On October 15, 2019, Foley filed its First Interim Fee Application for Allowance of Compensation and Reimbursement of Expenses for the Period from April 30, 2019 through August 31, 2019 [Docket No. 376] (the "Foley First Interim Application"), Conway filed its First Interim Fee Application for Allowance of Compensation and Reimbursement of Expenses for the Period from April 30, 2019 through August 31, 2019 [Dkt. No. 372] (the "Conway First Interim Application") and Armory filed its First Interim Fee Application for Allowance of Compensation and Reimbursement of Expenses for the Period from April 30, 2019 through August 31, 2019 [Dkt. No. 371] (the "Armory First Interim Application", and together with the Foley First Interim Fee Application and the Conway First Interim Fee Application, the "First Interim Applications"). The First Interim Fee Applications covered a time period when all of the parties were working together to facilitate a sale of the Debtors' assets, and the process was expected to be conducted expeditiously and smoothly. Indeed, the Debtors, with the assistance of their professionals, established a sale process that would be value maximizing and in which several potential bidders were interested. Unfortunately, the Debtors' primary customer, Amazon, chose to take an approach, without the fault or control of any professionals, to reduce routes and terminate its contract with the Debtors, which negatively affected the agreed and ordered sale process and resulted in Hillair's upset. However, hindsight in determining whether fees were appropriately incurred is not the standard for determining allowance and payment of the Debtors'

Professionals' fees and expenses. As more fully discussed herein, the Debtors' Professionals' fees and expenses have benefited the estate, and were reasonable and necessary at the time they were incurred. Therefore, this Court should approve the fees and expenses.

## II. RESPONSE TO UST OBJECTIONS

A.    <u>The UST Objection to Armory's First Interim Fee Application</u>.

The United States Trustee objects to total meal expenses of $716.46 for meals that Armory described in its First Interim Fee Application as meals while working late or during client site visits.   Armory submits that such amounts are actual and necessary expenses which are compensable under Section 330 of the Bankruptcy Code.  However, to resolve the UST Objection, Armory agrees to withdraw its request for reimbursement of such expenses.

B.    <u>The UST Objection to Conway's First Interim Fee Application</u>.

The United States Trustee objects to $7,605.44 in lodging expenses, $4,246.34 in travel expenses and $2,405.72 in meal expenses of Conway.

Section 330 of the Bankruptcy Code expressly authorizes reimbursement of professionals for "actual, necessary expenses".  11 U.S.C. § 330.  While Courts have sometimes ruled that expenses are not reimbursable where they are part of a firm's routine overhead, travel expenses, including meal expenses incurred during that travel are reimbursable. *See, e.g.*, *In re First Software Corp.*, 79 B.R. 108, 123-24 (Bankr. D. Mass 1989) (allowing meal expenses when incurred on business trips); *In re Stoecker*, 114 B.R. 965, 978 (Bankr. N.D. Ill. 1990) (refusing to allow reimbursement for meals not related to out of town travel).

In this case, Conway's primary professional responsible for this matter, Michael Flynn, resides in San Diego, California (it appears that the United States Trustee may not have been aware of that fact when it filed the objection). Therefore, he was required to travel to Los Angeles to be onsite at the Debtors' offices for several days per week, particularly at the outset of the cases. The Debtors knew of his travel and did not raise any objections to it. He took the train from San Diego to Los Angeles and stayed at a hotel in Los Angeles during this time, utilizing taxis as needed. Because he was onsite, he also needed to eat and his meals while onsite at the Debtors are compensable. Moreover, the expenses incurred by Conway are not "overhead"

4

subsumed in Conway's rates, but rather actual out-of-pocket expenses. Therefore the United States Trustee's objection should be overruled and Conway's expenses should be allowed in full.

        C.        <u>The UST Objection to Foley's First Interim Fee Application</u>.

The UST Objection to Foley's fees centers on its contention that the use of timekeepers who bill less than a certain number of hours on a case is somehow is not compensable. This is not the case. In fact, there is no magic number of attorneys that are appropriate, or a required amount of time that each attorney must bill, so long as the fees are reasonable. *In re Child World, Inc.*, 185 B.R. 14, 19 (Bankr. S.D.N.Y. 1995) (refusing to disallow the fees based solely on the objection that there were too many billers when the fees were reasonable overall). Therefore, the inquiry is whether the fees are reasonable. Here, to avoid unnecessary work otherwise required to research and address various matters, Foley turned to certain of its attorneys with subject matter expertise in their fields to answer questions and address issues on those areas that arose throughout the interim fee period. In doing so, Foley was able to leverage its broad expertise and obtain efficient results. Half an hour of an expert's time that quickly answers a question or solves a problem is more efficient than having another attorney who has billed more hours on the case but does not have the subject matter expertise try to resolve an issue. Here, there is no suggestion that Foley's fees are actually unreasonable, but rather that because certain attorneys only billed a few hours on the cases, then such time should not be compensable.

In most cases, the professionals highlighted in the UST Objection are experts in their field who assisted with very specific, targeted questions. Richard Lasater is a very experienced corporate lawyer who was able to efficiently answer corporate governance questions. Pamela Johnston and Jonathan Friedman are both experienced white collar defense lawyers who reviewed matters related to potential investigations of past corporate actions, given Hillair's allegations at the outset of the case. Michael Kirwan is a securities lawyer who was able to quickly advise on issues related to the publicly traded securities of one of the Debtors, Scoobeez Global, Inc. Gjina Lucaj and Omar Lucia are experienced corporate lawyers who advised on certain limited aspects of the sale transaction.

In other cases, the exigency of certain circumstances required the use of the professionals

who were available. For example, both Kristina Mabrie and Jessica Walker worked on matters that required immediate attention. In Ms. Walker's case, she was also involved in the pre-bankruptcy receiver litigation and was familiar with the issues in the case.

In an effort to compromise with the United States Trustee, Foley would agree to write off the fees incurred by Attorneys Moats, Roush, and Abarbanel on the Foley First Interim Application (a total of $1,226.50) and the meal expenses of $234.44 and secretarial overtime expense of $19.50.

For these reasons, the Court should overrule the UST Objection and allow the fees and expenses of Foley on the Foley First Interim Application, subject to the adjustments herein.

### III. RESPONSE TO OHANESSIAN OBJECTION

Shahan and Shoushana Ohanessian filed the Ohanessian Objection to the Foley First Interim Application. Mr. Ohanessian is the former CEO and majority shareholder of the Debtors. To resolve disputes over the use of cash collateral and the appointment of a chapter 11 trustee or Chief Restructuring Officer with Hillair, the Official Committee of Unsecured Creditors (the "Committee") and the United States Trustee based on the alleged misconduct of the Ohanessians, Mr. Ohanessian agreed to no longer serve as CEO or a directors of the Debtors, and to refrain from exercising various shareholder rights under an agreement with the Debtors and Hillair Capital Management, LLC ("Hillair") which provided for the appointment of a Chief Restructuring Officer. Mrs. Ohanessian was terminated by the Debtors.

The Ohanessian Objection argues essentially that Foley's fees should not be approved because, the Ohanessians allege, at this premature stage and totally without support, that the only party that has benefitted is Hillair. Moreover, despite the Court's cash collateral order, the Ohanessian Objection argues that Hillair is not actually a secured creditor, based entirely on a presently-dismissed complaint filed by the Committee to which Hillair did not file an answer or other response. It is the Debtors' and Foley's belief that Hillair would vigorously dispute any suggestion that it is not the first priority secured lender. Furthermore, the Committee still has the right to challenge Hillair's liens, and may choose to do so in the future.

The Debtors at the time of the stipulation regarding the use of cash collateral, determined

that Hillair had valid liens on the Debtors' property and that an agreement not to challenge those liens in exchange for the use of cash collateral and the continued operation of the Debtors' business in chapter 11 was appropriate. It was understood that a committee was likely to be appointed and would further investigate Hillair's secured position as has been done and could bring a challenge. Foley has at all times acted in the Debtors' interest and has attempted to resolve these cases efficiently and in the interests of all creditors. However, Hillair is the senior secured lender until a finding of this Court determines otherwise. The fact that, because of the Bankruptcy Code's well-established priority provisions, a senior secured creditor would recover its claim in a bankruptcy case before general unsecured creditors (who would recover for equity) does not mean that the work undertaken by the Debtors' counsel was only for the benefit of that creditor. More importantly, such a fact does not fees should be disallowed. Such a finding would chill attorneys from participating in cases where it was likely that secured lenders would be the primary recipients of distributions in the case (a very common scenario). In this case, the Ohanessians further ignore the fact that even if Hillair was somehow paid in full, with or without challenge, over $25 million in face amount of general unsecured claims would need to be paid (or crammed down in a plan, requiring new value) in order for Mr. Ohanessian to receive a recovery. Whether unsecured creditors receive a recovery is not yet clear. In any event, the duty of debtors in possession is to maximize value for all constituents, and priority of distribution is addressed by the Bankruptcy Code. For these reasons, the Ohanessian Objection should be overruled.

### **IV. RESPONSE TO HILLAIR OBJECTION**

Hillair's objections to the fees of the Debtors' and Committee's professionals are based upon on the fact that an unexpected event occurred, which derailed the Debtors' sale efforts (at least for the time being). Specifically, the Debtors' largest and essentially sole customer, Amazon, at the eleventh hour around the end of September and beginning of October 2019, revealed its intention to terminate the Debtors' contract. This is an event that neither the Debtors, nor the Committee, nor their professionals, could control, despite their extensive efforts and despite embarking on the sale process to which Hillair, the Debtors and the Committee

agreed.

However, Hillair does not specifically challenge the reasonableness of any particular fees or time entries, nor does it seek to have any fees disallowed. Rather, Hillair is reviewing the fees in hindsight, after unexpected events have transpired in the case. Hindsight is simply not the standard that the Court should apply. Rather, the Court should look to the reasonableness of the fees at the time they were incurred. Through August 31, 2019, all parties had agreed that a sale of the Debtors' assets was the best way to resolve these cases and ensure as much of a distribution as possible to the creditors. It was only after this time that it became apparent that the sale was no longer feasible in its present form because of Amazon's actions. That is not sufficient to deny allowance and payment of professional fees, and to rule otherwise would make the professionals guarantors of success, with is counter to the principles and reality of chapter 11 proceedings.

A. The Agreed-Upon Budget is not a Cap on Fees that can be Incurred by Professionals

Hillair argues that because the Debtors' Professionals exceeded the cap on their fees as stated in the budget approved in connection with various cash collateral stipulations in this case, somehow the professionals' fees cannot be allowed and paid. However, the budget is not a limitation on the fees that a professional can incur in the case. *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 860 (Bankr. D. Del. 2004) ("We agree with the Committee that the existence of a cap on fees for Committee's professionals in the DIP Financing Order does not limit allowance or payment of fees to those professionals."). If Hillair's position was valid, and professionals' fees cannot be allowed and paid above a budget amount, then secured lenders could control any bankruptcy case through the use of limited budgets and force debtors' professionals into untenable situations where they could not undertake steps they determined to be necessary or appropriate to prosecute the case or expand recoveries without being paid for those services.

Hillair argues that the Debtors cannot use cash collateral to pay the expenses of professionals because they are not adequately protected. However, unlike *In re Buttermilk Towne*

8

*Ctr.*, 442 B.R. 559 (6th Cir. B.A.P. 2010), a case relied on by Hillair, Hillair expressly consented to that use of cash collateral whereas the secured lender in *Buttermilk* did not. In fact, Hillair continued to consent, even after it became aware of the professionals' fees, because of the value being provided in connection with efforts to sell the company through the sale process agreed to by Hillair and the Committee. *See, e.g. Order Granting Continued Use Of Cash Collateral Through December 6, 2019 Pursuant To That Certain Second Stipulation For (1) Authorization To Use Cash Collateral; And (2) Appointment Of Chief Restructuring Officer* [Docket No. 328]. The parties stipulated to this continued use of cash collateral in early September, after Hillair received relevant monthly fee statements from the Debtors' Professionals. Therefore, even though Hillair is now unhappy that the sale it had hoped for might not materialize, Hillair should not be entitled to pull the rug out from under the professionals who were working appropriately toward a common goal, as sought by Hillair, the Committee and the Debtors. Indeed, the sale process yielded many interests parties and certain additional potential bidders, prior to Amazon's actions.

      Furthermore, in its Opposition, Hillair completely ignores the real circumstances of the budget.  First, the Second Cash Collateral Stipulation [Docket No. 132], at Section 3.3(a), expressly provides for a variance of 10% above or below the budgeted amount for each line item, including professional fees.  Therefore, Hillair's position that the fees must be limited to the budgeted line item amounts without inclusion of such variance, is incorrect.  Moreover, the budget period was intended to and actually did only cover the time at which monthly interim compensation would come due in the first few months of the case.  In other words, the budget covered the 80% of fees and 100% of expenses that were projected to come due during the budget period, but as per discussions between Hillair and the Debtors, the interim "holdback" amount outstanding was to be covered in subsequent budget(s) after interim approval of the first interim fee applications.   Therefore, the budget is not a limitation on allowance or payment of fees.

      <u>B. The Standard for Determining Approval of Fees is Not Based on Hindsight</u>

Hillair's argument that fees of the professionals were not reasonable and necessary to the estate

is based upon unexpected, and uncontrollable, issues with the sale, which occurred after the fees in this interim period were incurred. Bankruptcy cases are unpredictable and the ultimate outcome is often uncertain. Professionals are not and cannot be guarantors of success in the case. *In re Hospital Partners of America, Inc.*, 597 B.R. 763, 768-69 (Bankr. D. Del. 2019) (allowing fees of Chapter 7 trustee and counsel as reasonable even where the ultimate cash recovery from avoidance actions was lower than the fees incurred in their pursuit); *see also In re Value City Holdings, Inc.*, 436 B.R. 300, 307 (Bankr. S.D.N.Y. 2010) (success is "not a proper inquiry in determining the reasonableness of fees"). Therefore, courts do not use hindsight in determining whether fees should be allowed and paid. Rather, under Section 330 of the Bankruptcy Code, courts look to whether the services were reasonable at the time they were incurred. *In re Mednet*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000).

Here, the fees incurred through August 31, 2019 were reasonable and necessary at the time they were incurred. At that time, Hillair, the Debtors, and the Committee had all agreed to pursue a sale of the Debtors' assets to a successful conclusion. Hillair does not seriously dispute that this was the case, other than vaguely stating that it was "informed" Foley allegedly knew by mid to late August that Amazon would object to the sale and the assumption and assignment of its contract. However, this is not the case. Foley attorneys kept Amazon's counsel apprised of the case, including the plan for a sale when that was moved forward, and were not informed of Amazon's final decision to unilaterally terminate their contract and reduce routes until late September and early October when the objections were filed by Amazon. Furthermore, it is not realistic and against chapter 11 practice that Amazon or any contract counter-party would prospectively agree to assumption and assignment of its contracts before a sale was proposed and without knowing the details of the proposed sale and assumption, including the identity of the buyer and the cure provisions of the proposed sale. Therefore, Hillair's allegation that the Debtors' Professionals somehow should have obtained Amazon's consent in advance is irrational. Indeed, if it wished, Hillair should have pursued such conversations with Amazon itself as a proposed buyer for value.

Hillair also argues that no one from Foley or Armory ever discussed the sale with Amazon. As discussed above, this is incorrect because Foley was generally keeping Amazon's counsel informed as to the status of the case and the sale. However, in a meeting on or about July 31, 2019, with Hillair, the Committee, Foley and Armory, Hillair was informed that Armory was not speaking with Amazon at that time in the case (*i.e.* before any serious marketing had occurred), but that it would do so later, once serious bidders were identified, and that the Debtors thought that Hillair was doing so or planned to do so. Hillair did not indicate that it was doing so, and the Debtors do not know whether Hillair had its own discussions with Amazon.

In fact, it was far from clear that Amazon would make a final determination to terminate its contract with the Debtors, rather than permit a sale. In late September 2019 (well after the time period covered by the First Interim Applications), Amazon requested that potential purchasers provide certain information regarding themselves and their capabilities. Hillair was one of the parties that provided such information. There was also another serious potential bidder who provided information to Amazon. It was only after that information was sent that Amazon, and the date for objections to assumption and assignment of contracts occurred (October 1, 2019), that Amazon raised strenuous objections to the assumption and assignment of its contract, and began to plan its exits from its long-term relationship with the Debtors. A more detailed timeline of the Debtors' interactions with Amazon is provided in the *Debtors' Emergency Motion for Temporary Restraining Order and Preliminary Injunction to Prevent Violation of the Automatic Stay* [Adv. Proc. No. 19-01456] (the "TRO Motion") and the associated declarations filed in support of same. Amazon also filed its own Motion for an Order (A) Determining that the Automatic Stay Does Not Require Amazon to Utilize Debtors' Services; and (B) Modifying the Automatic Stay [Dkt. No. 393] (the "Amazon Stay Motion")

Currently the litigation regarding the TRO Motion and the Amazon Stay Motion are pending in this Court and the parties are negotiating and producing discovery in order to resolve the issues raised in both motions. Hillair is an active participant in this litigation and the negotiations. However, Hillair is now trying to have it both ways and complain about fees that were agreeable to it when the Debtors and their professionals were moving toward the sale that

Hillair (and the Committee) wanted to achieve. Now that the sale is unlikely to materialize, in hindsight, Hillair complains of the very work that it had encouraged previously. This Court should not allow this gamesmanship and should allow the fees incurred by the Debtors' Professionals, and order their payment.

C. Armory's Fees Were Pre-Approved Under Section 328 and Should Not Be Reviewed for Reasonableness under Section 330

To the extent that the Hillair Objection raises an objection to Armory's First Interim Application under Section 330 of the Bankruptcy Code, such objection should be overruled because Armory's retention and compensation were approved by this Court under Section 328, and are not subject to a reasonableness review under Section 330.[2] *Order Granting Debtors' Application to Employ Armory Securities, LLC as Investment Banker Pursuant to 11 U.S.C. §§ 327(a) and 328 (a), Rule 2014 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 2014-1* [Dkt. No. 302]; *see also In re Reimers*, 972 F.2d 1127, 1128-29 (9th Cir. 1992).

Even if it were subject to Section 330 review, the fees incurred by Armory were reasonable and benefitted the Debtors' estates. Armory was able to conduct a thorough marketing process for the Debtors' assets and had a number of serious potential bidders conducting due diligence before Amazon made its decision to object to assumption and assignment of its contract. Armory performed exactly as it promised, and this Court should not now reverse its prior decision. Any other course of action would not only be inequitable to Armory, but also would chill the ability of Debtors to retain investment bankers and other professionals retained under Section 328, because the expectations of those professionals would be severely undermined.

D. This Court Should Approve the First Interim Application, Pending Objections at the Final Fee Hearing

---

[2] Armory's expenses were subject to Section 330 review and the United States Trustee's objection to those expenses is discussed herein.

Hillair properly notes that this is only an interim fee application, and reserves its rights to object at the final fee hearing. Foley agrees that many of Hillair's concerns are better left to the Final Fee Hearing. Hillair also argues that the Debtors' Professionals should not be paid because there is the possibility that the estates will be administratively insolvent at the end of the case. However, that is an issue which this Court should revisit at the end of the case. The Debtors are currently holding $3 million in cash. It is not clear whether the estates will be administratively insolvent, and the Debtors and their professionals working to try to avoid this outcome, including pursuing the litigation regarding the Amazon contract and seeking to monetize any and all of their assets. Any determination of administrative insolvency and its impact is not appropriate now, but rather is a matter for a later date. Here, Hillair's conjecture alone, particularly when the outcome of the litigation related to Amazon's contract is unknown, should not cause this Court to deny allowance and payment of fees which were reasonable and necessary at the time they were incurred.

## V. CONCLUSION

For the reasons stated herein, Foley, Conway, Armory and the Debtors respectfully request that this Court allow the fees and expenses of Foley, Conway, and Armory, as detailed in the First Interim Application, subject to the modifications detailed herein, and authorize payment of the outstanding amounts from the Debtors, and order such further relief as is reasonable and proper under the circumstances.

DATED:  December 2, 2019             **FOLEY & LARDNER LLP**


/s/ Ashley M. McDow
Ashley M. McDow

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)

Attorneys for Debtors SCOOBEEZ, SCOOBEEZ GLOBAL, INC., and SCOOBUR, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**Foley & Lardner LLP, 555 South Flower Street, Suite 3300, Los Angeles, CA 90072-2411**

A true and correct copy of the foregoing document entitled (*specify*): **OMNIBUS REPLY OF DEBTORS' PROFESSIONALS TO: (1) OBJECTIONS OF THE UNITED STATES TRUSTEE TO FIRST INTERIM FEE APPLICATIONS OF ARMORY SECURITIES, LLC CONWAY MACKENZIE, INC., AND FOLEY & LARDNER LLP; (2) OBJECTION OF SHAHAN AND SHOUSHANA OHANESSIAN TO FIRST INTERIM FEE APPLICATION OF FOLEY & LARDNER LLP; AND (3) OMNIBUS OPPOSITION OF HILLAIR CAPITAL MANAGEMENT L.L.C. TO FIRST INTERIM FEE APPLICATIONS OF (I) FOLEY & LARDNER LLP, (II) CONWAY MACKENZIE, INC., (III) ARMORY SECURITIES, LLC, AND (IV) LEVENE, NEALE, BENDER, YOU, & BRILL L.L.P.** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/02/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 12/02/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| Honorable Julia W. Brand<br>United States Bankruptcy Court<br>Central District of California<br>Edward R. Roybal Federal Building and Courthouse<br>255 E. Temple Street, Suite 1382<br>Los Angeles, CA 90012 | |
|---|---|

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/02/2019 | Ashley M. McDow | /s/ *Ashley M. McDow* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  
4810-9009-4766.1

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT CONT.

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **John-Patrick M Fritz**    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
- **Riebert Sterling Henderson**    shenderson@gibbsgiden.com
- **Vivian Ho**    BKClaimConfirmation@ftb.ca.gov
- **Alvin Mar**    alvin.mar@usdoj.gov
- **Ashley M McDow**    amcdow@foley.com, sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
- **Stacey A Miller**    smiller@tharpe-howell.com
- **Kevin H Morse**    kmorse@clarkhill.com, blambert@clarkhill.com
- **Shane J Moses**    smoses@foley.com
- **Akop J Nalbandyan**    jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
- **Rejoy Nalkara**    rejoy.nalkara@americaninfosource.com
- **Anthony J Napolitano**    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
- **David L. Neale**    dln@lnbyb.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- **Gregory M Salvato**    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- **Steven M Spector**    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Eric K Yaeckel**    yaeckel@sullivanlawgroupapc.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
4810-9009-4766.1

**F 9013-3.1.PROOF.SERVICE**