Sean A. O'Keefe – SBN 122417
**OKEEFE & ASSOCIATES**
**LAW CORPORATION, P.C.**
130 Newport Center Drive, Suite 140
Newport Beach, CA 92660
Telephone: (949) 334-4135
Fax: (949) 274-8639
Email: sokeefe@okeefelc.com
Special Litigation Counsel to the Debtors

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:19-bk-14989-WB |
| SCOOBEEZ, INC., et al. | Chapter 11 |
| Debtors and Debtors in Possession. | (Jointly Administered with Case Nos. 2:19-bk-14991; 2:19-bk-14997) |
| Affects: | **DEBTORS' OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY OR FOR ORDER FINDING STAY DOES NOT APPLY; DECLARATION OF SCOTT A. SHEIKH IN SUPPORT THEREOF** |
| ☒    All Debtors | |
| ☐    SCOOBEEZ, INC., only | |
| ☐    SCOOBEEZ GLOBAL, INC. only | **Hearing:** |
| ☐    SCOOBUR, LLC only | Date: January 7, 2020 |
| | Time: 10:00 a.m. |
| | Place: U.S. Bankruptcy Court |
| | Courtroom 1375 |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |

1    Scoobeez Global ("Global"), Scoobeez, Inc. ("Scoobeez") and Scoobur, LLC ("Scoobur")

2    (together the "Debtors") hereby submit the within Opposition to the Motion for Relief from the

3    Automatic Stay (the "Motion") filed by Rosenthal Family Trust UTD 3/25/1988 ("Rosenthal").

4    This Opposition is supported by the attached Declaration of Scott A. Sheikh (the "Sheikh Decl.").

5                                          **I**

6                            **SUMMARY OF OPPOSITION**

7        The Motion is premised upon the following contentions: A) Rosenthal is a shareholder of

8    Global; B) Rosenthal, Shahan Ohanessian ("Ohanessian") and Dick Dolan ("Dolan") (the latter

9    are also shareholders of Global) attempted to hold a special meeting of Global's shareholders on

10   November 1, 2019 ("Special Meeting"); C) during this purported Special Meeting the shareholders

11   voted to remove one member of Global's three-member board of directors and to install three new

12   members of the board (the "New Board"); D) Rosenthal and the New Board have not yet

13   attempted to exercise control over property of the Debtors' estates, or to direct the actions of the

14   Debtors in this case. Based upon these representations, Rosenthal contends the Court should enter

15   an order either granting the shareholders relief from automatic stay in this case to take the

16   foregoing actions (presumably <u>nunc-pro-tunc</u>) or to rule the stay did not bar these actions.

17       The Debtors would respectfully submit the Motion should be denied for the following

18   reasons. First, the Special Meeting is void due to lack of proper notice under Idaho law and under

19   Global's bylaws. Second, Global's chief executive officer is only required to call a special meeting

20   when it is requested by shareholders holding at least 10% of the common stock. Together,

21   Rosenthal and Dolan own less than 3.0%. Since Shahan Ohanessian ("Ohanessian"), the holder of

22   more than 90% of Global's common stock, was contractually precluded from calling a special

23   meeting by that certain "Letter Agreement re: Resignation from Board of Directors and Limitation

24   on Shareholder Authority During the Pendency of Chapter 11 Bankruptcy" (the "Letter

25   Agreement") (Sheikh Decl., ex. 1), no meeting could be lawfully called without the consent of

26   Global's board. Third, Rosenthal, as an equity holder, has no "pecuniary interest" in the Debtors'

27   cases. Therefore, he lacks standing to seek relief. Fourth, contrary to the allegations in the Motion,

28   the actions taken at the Special Meeting were an attempt to exercise of control over property of the

1   estate. Accordingly, the automatic stay barred this course of conduct. Fifth, the Motion should be

2   denied on the grounds it is made in bad faith. Ohanessian is clearly the real-party-in-interest.

3   Rosenthal is just a straw man.

II

**SUMMARY OF MATERIAL FACTS**

6         **A.**      **The Chapter 11 Cases.**

7         On April 30, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under

8   Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District

9   of California. Since the Petition Date, the Debtors have managed their affairs and operated their

10   businesses in the ordinary course as debtors-in-possession pursuant to sections 1107(a) and 1108 of

11   the Bankruptcy Code.

12         **B.**      **The Debtors' Secured Creditor**.

13         Hillair Capital Management LLC and its affiliates (collectively, "Hillair") hold a lien

14   against substantially all of the Debtors' assets as security for an allowed claim in the approximate

15   amount of $11.0 million (the "Hillair Claim"). Hillair has authorized the Debtors to continue using

16   cash collateral on certain terms and conditions. These terms and conditions include the exclusion

17   of Shahan Ohanessian ("Ohanessian"), Global's 90% shareholder, from management as more fully

18   provided in that certain *Written Consent of The Majority Shareholder of Scoobeez Global, Inc.*

19   (the "Consent") (Sheikh Decl., ex. 2) and in the Letter Agreement. Additionally, pursuant to the

20   *Third Stipulation Regarding Continued Cash Collateral,* if any of the existing board members,

21   Brian Weiss, Howard Grobstein and Daniel Harrow, is removed from the board without Hillair's

22   consent, the Debtors will be in default under the terms of this stipulation. (Sheikh Decl., ex. 3).

23         **C.**      **The Appointment of a CRO and The Removal of The Ohanessian Board**.

24         On May 16, 2019, the Debtors filed that certain *Application for an Order Authorizing and*

25   *Approving (I) Appointing Brian Weiss as Chief Restructuring Officer of the Debtors Nunc Pro*

26   *Tunc to May 16, 2019* [Docket No. 63] (the "CRO Application"). (Sheikh Decl., ex. 4). On June 6,

27   2019, the Court entered an order granting the CRO Application. (Sheikh Decl., ex. 5). On June 5,

28

2

2019, Ohanessian executed the Consent and the Letter Agreement. (Sheikh Decl., ex. 1 & 2). The following actions were authorized in the Consent:

1. The number of authorized board seats was fixed a minimum of one and a maximum of five;

2. The existing board members were removed;

3. Brian Weiss and Daniel W. Harrow were installed as the sole members of the board[1].

(Sheikh Decl., ex. 1).

In the Letter Agreement, Ohanessian agreed, in pertinent part, as follows:

Furthermore, I hereby agree not to use the following powers afforded to me as a shareholder of Scoobeez Global during the pendency of the Chapter 11 Bankruptcy proceedings:

- Vote my shares in Scoobeez Global to remove or otherwise alter the composition of the Board of Directors of Scoobeez Global or Scoobeez except in the event that another shareholder attempts to remove or otherwise alter the composition of the Board of directors of Scoobeez Global or Scoobeez;

- Be involved with the management or financial affairs of Scoobeez Global or Scoobeez; and

- Affect the business or operations of Scoobeez Global or Scoobeez except as requested and necessary to preserve the relationship with Amazon.com and its affiliated companies

***

I request that a Court of competent jurisdiction enter an order to this effect and expressly agree that because there is no other adequate remedy available, Scoobeez Global and/or Scoobeez may enforce this Letter Agreement by way of injunctive relief.

(Sheikh Decl., ex. 2).

The Letter Agreement and the Consent were signed and implemented to resolve a series of issues raised by Hillair and to secure the following critical benefits for the Debtors: The continued use of cash collateral for business operations; relief from the predations of Ohanessian and his

---

[1] Subsequently, the Committee was permitted to appoint one member to the Board of Directors consisting of Howard Grobstein.

cronies; the vesting of corporate control in an independent Board of Directors, and the installation of a competent chief restructuring officer ("CRO").

**D.** **The Motion For Relief From Stay**.

In the Motion, Rosenthal makes the following representations:

"On October 29, 2019, majority shareholder Shahan Ohanessian served notice upon the Board, officers and bankruptcy counsel that due to their failure to call a shareholders meeting, he was calling one for November 1, 2019 to discuss the current status of Scoobeez Global, the actions of the current board of directors, Scoobeez Global's relationship with, and the recently filed lawsuit against, Amazon, as well as possible removal of the existing Board or some of its members."

"The Special Meeting of the Shareholders took place on November 1, 2019 at approximately 12:00 noon. Three shareholders were present."
"After review of the situation, the shareholders voted to remove Daniel W. Harrow as a member of the board, and voted to elect Chishona Ohanessian, Shahan Ohanessian and Gregori Sedrakyan as new directors."

"The first act of this new board was to ask the Debtors' management why a sale is a better alternative than restructuring and reorganization of the Debtors. It will seek answers into the issues of excess technology spending. It will deal with conflicts of interest among the officers of the debtors, and it may seek a new Chief Restructuring Officer who does not have ties to Hillair. It will not wrest control of the finances of the Debtors from its management."

According to the Motion, the aforementioned actions did not violate Global's automatic stay and the Court should enter an order confirming this fact. For the reasons stated below, the Motion should be denied.

**III**

**LEGAL ANALYSIS AND AUTHORITIES**

**A.** **The Special Meeting Was Void**.

Global is an Idaho corporation. The Idaho code section addressing special shareholder meetings states:

30-29-705. NOTICE OF MEETING. (a) A corporation shall notify shareholders of the date, time and place of each annual and special shareholders' meeting *no fewer than ten (10) nor more than sixty (60) days* before the meeting date.

Idaho Code Ann. § 30-29-705 (emphasis added). Subsection (c) of the above statute states

> Notice of a special meeting of shareholders ***must include a description of the purpose or purposes for which the meeting is called***.

Id. (emphasis added). Section 4 of Global's bylaws incorporates these same statutory provisions.

> Special meetings of the shareholders, for any purpose or purposes, unless otherwise prescribed by statute, may be called by the Chief Executive Officer or by the Board of Directors and must be called by the Chief Executive Officer at the request of the holders if not less than one-tenth of all the outstanding shares of the corporation entitled to vote are at the meeting.

(Sheikh Decl., ex. 6).

Based upon Rosenthal's representations to the Court, the purported Special Meeting failed to comply with the requirements in the bylaws for, inter alia, the following reasons:

1. To call a meeting without the consent of the board of directors or Global's chief executive officer, the requesting shareholders would need to establish that they held at least ten percent of Global's outstanding shares. Since Rosenthal's and Dolan's combined holding are less than 2.7%, they lacked this power, and Ohanessian was contractually precluded from making such a request;

2. The alleged Special meeting was set on two-days-notice, not the minimum of ten;

3. There is no evidence indicating that notice of the meeting was given to Global's other shareholders, or that this notice disclosed the meeting's intended purpose.

These deficiencies render the purported Special Meeting a nullity and all decisions made therein void. See Kemmer v. Newman, 161 Idaho 463, 466, 387 P.3d 131, 134 (2016) ("Actions taken in violation of a corporation's bylaws are void."); Glahe v. Arnett, 38 Idaho 736, 741, 225 P. 796, 798 (1924) (noting that actions taken at a meeting called in violation of the bylaws were void).

In response to the foregoing, Ohanessian will undoubtedly cite Section 8 of the bylaws, which states:

> Any action required to be taken at a meeting of the shareholders, or any other action which may be taken at a meeting of the shareholders, may be taken without a meeting of a consent in writing, setting forth the action so taken, must be signed by shareholders owning a majority of the Company's issued and outstanding common stock with respect to the subject matter thereof.

5

(Sheikh Decl., ex. 6). This argument should be rejected. The Letter Agreement barred Ohanessian from being "involved" in the Debtors' management during the pendency of their bankruptcy cases. Calling a special meeting to remove the board of directors and appointing himself to the board surely crosses this line. Ohanessian's contention that the Letter Agreement allows him to vote his shares in conjunction with a vote *by the other shareholders* is a contrivance. The vote by the other shareholders at the purported special meeting could not have occurred, but for Ohanessian's actions, since they did not own a sufficient number of shares to call a meeting. Orchestrating a vote to achieve an end run around the black letter prohibitions in the Letter Agreement is a clear breach of this contract.

**B.    Ohanessian Lacked The Authority To Call The Special Meeting**.

In the Letter Agreement, Ohanessian contractually agreed that he was barred from taking any of these actions during the pendency of the Debtors' cases:

- Vote my shares in Scoobeez Global to remove or otherwise alter the composition of the Board of Directors of Scoobeez Global or Scoobeez except in the event that another shareholder attempts to remove or otherwise alter the composition of the Board of directors of Scoobeez Global or Scoobeez;

- Be involved with the management or financial affairs of Scoobeez Global or Scoobeez; and

- Affect the business or operations of Scoobeez Global or Scoobeez except as requested and necessary to preserve the relationship with Amazon.com and its affiliated companies

In the joinder and declaration filed in support of the Motion, Ohanessian essentially admits he violated the first two prohibitions in the Letter Agreement. He admits he demanded the special meeting; he admits he voted to remove one of the three directors; and he admits he elected himself and his cronies to Global's board. As stated above, Ohanessian's contention that his actions were authorized by the "except in the event that another shareholder attempts to remove or otherwise alter the composition of the Board of directors of Scoobeez Global or Scoobeez" language fails.

Ohanessian also breached the second prohibition above. By voting himself onto Global's board he necessarily became "involved with the management…of Scoobeez Global". Accordingly,

1    his vote is void. Neither he nor any of the other purported new board members is in fact a member

2    of Global's board.

3        **C.**    **The Stay Applies and Relief Should Not Be Granted**.

4           Property of the estate includes "all legal and equitable interests of the debtor in property as

5    of the commencement of the case."  11 U.S.C. §541(a)(1). The Legislative history of section 541

6    states that the scope of the paragraph is broad "[i]t includes all kinds of property, including tangible

7    or intangible property…"  See In re Computer Communications, Inc., 824 F.2d 725, 729 (9th Cir.

8    1987) citing H.R.Rep. No. 595 at 367. It is well established in the Ninth Circuit that the contract

9    rights of a debtor are property of the estate under section 541.

10          The automatic stay enjoins the "enforcement of any act to obtain possession of property of

11   the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C.

12   §362(a)(3). Here, the Debtors' 90% shareholder is endeavoring to seize control of Global post-

13   petition after contractually relinquishing this right. This course of conduct should be deemed to

14   require relief from the automatic stay and in particular Section 362(a)(3).

15          The Delaware bankruptcy court in In re SS Body Armor, Inc., 527 B.R. 597 (Bankr. Del.

16   2015), held, in the context of a shareholder lawsuit to compel a corporate debtor to conduct a

17   shareholder meeting, that a bankruptcy court may enjoin the occurrence of a shareholder meeting as

18   well as the implementation of any directives resulting from such a meeting, if it is shown that they

19   would severely undermine the debtor's reorganization. Here, Ohanessian's actions are a direct and

20   immediate threat to the instant chapter 11 cases, which are at a critical stage given the recent actions

21   by Amazon to terminate its relationship with the Debtors and its objection to the sale and assignment

22   of its contracts to Hillair.

23          The court in SS Body Armor, adopted the approach taken by the Second Circuit in In re

24   Johns-Manville Corp., 801 F.2d 60 (2d Cir. 1986). While the Manville case and its progeny

25   recognize state law shareholder election rights, they give priority to federal interests in

26   reorganization cases in the event of conflict between the state law right to elect a board and the

27   federal law goal of reorganizing the corporation into a viable entity (or otherwise maximizing the

28   value of property of the estate). In Manville, the Second Circuit held the issuance of an injunction

to prevent a shareholders meeting to replace the board of a Chapter 11 debtor was appropriate if: (1) there was clear abuse present in calling the meeting (which clearly exists here as a result of the Letter Agreement, the Debtors' bylaws, and applicable state law); and (2) there is the risk of irreparable harm from such actions. In <u>Manville</u>, the Bankruptcy Court found that the debtor in possession was entitled to an injunction to prevent the shareholders meeting. <u>Manville Corp. v. Equity Security Holders' Committee (In re Johns-Manville Corp.)</u>, 66 B.R. 517 (Bankr. S.D.N.Y. 1986). Here, Ohanessian's orchestrated scheme to seize control of the Debtors not only violates the automatic stay, it is in breach of the Letter Agreement and it is a collateral attack on the order authorizing the use of cash collateral.

### D.    The Motion Was Filed In Bad Faith.

Ohanessian owns more than ninety percent of the shares of Global and Global owns ninety six percent of the shares of Scoobeez. It was Ohanessian who demanded a special shareholders meeting, it was Ohanessian who provided the necessary ownership percentage to force such a meeting to be scheduled, and it was Ohanessian who contends he now controls the board through the actions taken at this meeting. In sum, it was Ohanessian who arranged the failed coup attempt described in the Motion and it is Ohanessian's declaration that serves as the foundation of the Motion.

Given these facts, why is Rosenthal, a bit player who has no possibility of every recovering anything on his de minimis equity position, the moving party in the Motion? The answer is Ohanessian is not inclined to openly admit he breached the Letter Agreement and hence his actions are void. Accordingly, he has presented a straw man to the Court in his stead. This ruse is bad faith. The Motion should be denied.

### E.    Rosenthal Has No Pecuniary Interest In This Case.

Bankruptcy standing is much narrower than constitutional standing. <u>In re Cult Awareness Network, Inc.</u>, 151 F.3d 605 (7th Cir.1998). To have bankruptcy standing, "a person must have a pecuniary interest in the outcome of the bankruptcy proceedings." <u>Id.</u> "Only those persons affected pecuniarily by a bankruptcy order have standing [.]" <u>Id.</u>; <u>see also</u> <u>In re WorldPoint Interactive, Inc.</u>, No. BAP HI-06-1115-BKMO, 2007 WL 7553415, at *3–4 (B.A.P. 9th Cir. Mar. 7,

2007), <u>aff'd sub nom.</u> <u>In re Worldpoint Interactive, Inc.</u>, 335 F. App'x 669 (9th Cir. 2009) ("He did not file a claim in the bankruptcy case, and the time for doing so has passed, nor does his status as a shareholder, director, or officer, without a direct pecuniary interest, confer standing. *In re Dein Host, Inc.,* 835 F.2d 402, 406–07 (1st Cir.1987). We conclude Fuchs lacks standing and, accordingly, will dismiss the appeal."); <u>Matter of Point Ctr. Fin., Inc.</u>, 890 F.3d 1188, 1191 (9th Cir. 2018)("Under this prudential standing doctrine, only a "person aggrieved," that is, someone who is "directly and adversely affected pecuniarily" by a bankruptcy court's order, has standing to appeal that order."), <u>citing</u> <u>Fondiller v. Robertson (In re Fondiller)</u>, 707 F.2d 441, 443 (9th Cir. 1983).

The Debtors in this case are in dire financial straits. Their assets are over-encumbered by over $11.0 million in secured debt and a recent effort to sell their assets failed due to Amazon's notice that it intends to terminate the contract with the Debtors. Although the Debtors' management team is working to structure other alternatives that will yield a dividend for unsecured creditors, no distribution will be paid to equity in this case. Accordingly, Rosenthal has no pecuniary interest in this bankruptcy, and hence lacks standing to file the Motion.

**F.    <u>Bankruptcy Code 105(a) Authorizes the Interim Relief Requested</u>**

Bankruptcy Code section 105(a) authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Section 105(a) therefore authorizes bankruptcy courts to issue injunctions, enter orders and take other necessary steps in aid of their jurisdiction.

While the provisions of the automatic stay are "self-executing" and no order is required to trigger the protections of the automatic stay, additional relief under Section 105 is necessary. If Ohanessian is permitted to renege on the terms of the Letter Agreement, the Debtors' could forfeit the continued use of cash collateral. This would result in the closure of their business. Conversely, Ohanessian will not be injured by this interim relief, since he has already agreed not to have any involvement in management during the pendency of this case.

1

**IV**

2

## **CONCLUSION**

3      Based on the foregoing, the Debtors would respectfully pray that the Court deny the Motion,

4  or failing that, set the matter for a final hearing.

5  DATED: December 18, 2019                    OKEEFE & ASSOCIATES

6                                              LAW CORPORATION, P.C.

7

8                                     By: */s/ Sean A. O'Keefe*

9                                          Sean A. O'Keefe, Special

10                                         Litigation Counsel for the
                                           Debtors

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

**DECLARATION OF SCOTT SHEIKH**

I, Scott Sheikh, hereby declare and state as follows:

1.      I am over the age of eighteen years.

2.      The facts stated herein are within my personal knowledge or I have acquired knowledge of these facts through my familiarity with the books and records of Scoobeez Global, Inc., an Idaho corporation ("Global") and Scoobeez, a California corporation  ("Scoobeez").

3.      I am the co-chief executive officer and general counsel of Global and Scoobeez.

4.      Global and Scoobeez maintain their corporate books and records in a consistent and business-like manner, and at the present time I oversee the retention of these books and records in a supervisory capacity.

5.      Global is incorporated in the State of Idaho. It was originally incorporated under the name ABT Mining Company (ABT").

6.      In 2015, ABT acquired a significant and controlling stake in Scoobeez. On February 22, 2017, ABT changed its name to Scoobeez Global, Inc. Global now holds approximately 96% of Scoobeez' shares.

7.      On April 30, 2019 (the "Petition Date"), Global, Scoobeez, and Scoobur, LLC ("Scoobur) (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.

8.      Since the Petition Date, the Debtors have managed their affairs and operated their businesses in the ordinary course as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      Hillair Capital Management LLC and its affiliates (collectively, "Hillair") hold a lien against substantially all of the Debtors' assets as security for an allowed claim in the approximate amount of $11 million (the "Hillair Claim").

10.     Hillair has authorized the Debtors to continue using cash collateral on certain terms and conditions. These terms and conditions include the exclusion of Shahan Ohanessian ("Ohanessian"), Global's 90% shareholder, from management as more fully provided in that certain *Written Consent of The Majority Shareholder of Scoobeez Global, Inc.* (the "Consent") and in that

11

certain *Letter Agreement re: Resignation from Board of Directors and Limitation on Shareholder Authority During the Pendency of Chapter 11 Bankruptcy* (the "Letter Agreement").

11.    True and correct copies of the Consent and the Letter Agreement are attached hereto as Exhibit "1" and "2" respectively.

12.    Pursuant to the *Third Stipulation Regarding Continued Cash Collateral* entered into by and among Hillair and the Debtors (the "Stipulation"), if any of Global's existing board members, Brian Weiss, Howard Grobstein and Daniel Harrow, are removed from the board without Hillair's consent, the Debtors will be in default under the terms of the Stipulation. True and correct copies of the Stipulation and the order of this Court approving the same are attached hereto as Exhibits "3" and "4" respectively.

13.    On May 16, 2019, the Debtors filed that certain *Application for an Order Authorizing and Approving (I) Appointing Brian Weiss as Chief Restructuring Officer of the Debtors Nunc Pro Tunc to May 16, 2019* [Docket No. 63] (the "CRO Application"). On June 6, 2019, the Court entered an order granting the CRO Application (the "CRO Order"). A true CRO Order is attached hereto as Exhibit "5".

14.    Ohanessian owns more than 90% of Global's common stock.

15.    The Rosenthal Trust owns approximately 2.6% of Global's stock and Dick Dolan owns approximately .03%.

16.    Attached hereto as Exhibit "6" is a true and correct copy of Global's ByLaws.

17.    If the Debtors are denied the use of cash collateral due to the purported modification to the board of directors alleged by Ohanessian, Rosenthal and Dolan, this will force the Debtors to cease operations almost immediately. If this occurs the Debtors will lose potentially millions in value that could otherwise have been realized through a disposition of their business as a going concern. Moreover, the existence of confusion in the market regarding who controls Global and Scoobeez could have a materially adverse effect upon the Debtors' value.

18.    The Debtors assets are encumbered by over $11 million in secured debt and a recent effort to sell their assets failed due to Amazon's notice that it intends to terminate the contract with the Debtors.

12

1       I declare that the foregoing is true and correct under the penalty of perjury.

2       Executed this 16 day of December 2020 in Los Angeles, California.

Scott Sheikh

**EXHIBIT 1**

000014

**WRITTEN CONSENT OF THE MAJORITY SHAREHOLDER OF
SCOOBEEZ GLOBAL, INC.**

The undersigned, as the record owner of 150,000,000 shares of common stock and 18,400,000 shares of Series A preferred stock, representing approximately 92% of the outstanding shares entitled to vote of **SCOOBEEZ GLOBAL, INC.,** an Idaho corporation, does hereby consent by this writing to the adoption of the following resolutions:

**AMENDMENT OF THE BY-LAWS**

**RESOLVED,** that Article III, Section 2 of the By-Laws of Scoobeez Global, Inc. is deleted in its entirety and replaced with the following:

> **SECTION 2**    NUMBER, TENURE, AND QUALIFICATIONS
> The number of Directors of the corporation must be at least one but not more than five. Each director will hold office until the next annual meeting of shareholders and until the Director's successor has been elected and qualified.

**REMOVAL OF DIRECTORS**

**RESOLVED,** that the following named persons are hereby removed from the Board of Directors:

> Shahan Ohanessian
> Shoushana Ohanessian
> Jowita Chomentowska
> Lance Brinker
> Richard Dolan

**RESOLVED FURTHER,** that concurrently with the resignation of Shahan Ohanessian from the Board of Directors, he executed a Letter Agreement re: Limitation on Shareholder Authority During the Pendency of Chapter 11 Bankruptcy, which is adopted by the Board of Directors and may be executed on behalf of the company by any of its officers; the officers of the company may take any other action necessary to effectuate the foregoing.

**ELECTION OF DIRECTORS**

**RESOLVED,** that the following named persons are hereby elected to serve as the directors of the corporation to hold office until the next annual meeting of shareholders or until their successors are duly elected:

> Brian Weiss
> Daniel W. Harrow

The undersigned hereby consents to the foregoing resolutions and direct that this Written Consent be filed with the minutes of the proceedings of the shareholders of this corporation and that pursuant the relevant Idaho statutes and the Bylaws of this corporation, said resolutions shall have the same force and effect as if they were adopted at a meeting at which the undersigned were personally present.

**IN WITNESS WHEREOF,** the undersigned has executed this Written Consent as of this

000015

5___ day of June 2019.

Shahan Ohanessian

**SHARES HELD:**

Common: 150,000,000

Series A Preferred: 18,400,000

2

**EXHIBIT 2**

000017

**Letter Agreement re: Resignation from Board of Directors and Limitation on Shareholder Authority During the Pendency of Chapter 11 Bankruptcy**

To the Board of Directors of Scoobeez Global, Inc. and Scoobeez:

Effectively immediately, I hereby resign from the Board of Directors of Scoobeez Global Inc. ("**Scoobeez Global**"), an Idaho corporation, and Scoobeez ("**Scoobeez**"), a California corporation.

Furthermore, I hereby agree not to use the following powers afforded to me as a shareholder of Scoobeez Global during the pendency of the Chapter 11 Bankruptcy proceedings:

- Vote my shares in Scoobeez Global to remove or otherwise alter the composition of the Board of Directors of Scoobeez Global or Scoobeez except in the event that another shareholder attempts to remove or otherwise alter the composition of the Board of Directors of Scoobeez Global or Scoobeez;
- Be involved with the management or financial affairs of Scoobeez Global or Scoobeez; and
- Affect the business or operations of Scoobeez Global or Scoobeez except as requested and necessary to preserve the relationship with Amazon.com and its affiliated companies.

I reserve any other shareholder rights, including, but not limited to, the right to propose a Chapter 11 Plan in my capacity as a shareholder of Scoobeez Global.

I request that a Court of competent jurisdiction enter an order to this effect and expressly agree that because there is no other adequate remedy available, Scoobeez Global and/or Scoobeez may enforce this Letter Agreement by way of injunctive relief.

IN WITNESS WHEREOF, I have executed this Letter Agreement as of the date set forth below.

Agreed to and accepted by:

Dated: May 28, 2019

_____
Shahan Ohanessian

Agreed and accepted by:

Dated: 6/4/19

SCOOBEEZ GLOBAL, INC.,
an Idaho corporation

By: _____

Approved as to form by:

Dated: _____

_____
Name:

Agreed and accepted by:

Dated: 6/4/19

SCOOBEEZ,
a California corporation

By: _____

000018

**EXHIBIT 3**

000019

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
      jsimon@foley.com
      smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br>SCOOBEEZ, et al.[1]<br><br>    Debtors and Debtors in Possession. | Case No. 2:19-bk-14989-WB<br>Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br><br>Chapter 11 |
| Affects:<br>■ All Debtors<br>□ Scoobeez, ONLY<br>□ Scoobeez Global, Inc., ONLY<br>□ Scoobur LLC, ONLY | **THIRD STIPULATION REGARDING CONTINUED USE OF CASH COLLATERAL** |

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

000020

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; HILLAIR CAPITAL MANAGEMENT, LLC; THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; AND ALL INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:**

Scoobeez, Scoobeez Global, Inc., and Scoobur, LLC, the debtors and debtors in possession (collectively the "Debtors") in the above-captioned jointly administered chapter 11 bankruptcy cases (the "Chapter 11 Cases"), the Official Committee of Unsecured Creditors (the "Committee") and Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital Investments LP (collectively, "Hillair"), enter into this stipulation (the "Third Stipulation") regarding continued use of cash collateral as follows:

## RECITALS

A.      On May 1, 2019, the Debtors filed the Debtors' Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis [Docket No. 13] (the "Cash Collateral Motion").

B.      The Debtors are currently using cash collateral with the consent of Hillair, and pursuant to this Court's prior orders approving use of cash collateral.

C.      On June 6, 2019, the Debtors and Hillair entered into the Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer [Docket No. 132] (the "Second Stipulation") [Docket. No. 132], which was approved by the Court's order entered on June 7, 2019 [Docket No. 135].  The Second Stipulation provided for continued use of cash collateral through June 28, 2019, subject to the terms and conditions provided therein.

D.      On July 3, 2019, the Court entered the agreed Order Granting Continued Use of Cash Collateral Pursuant to That Certain Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer [Docket No. 172], extending the Debtors' use of cash collateral through September 6, 2019.

E.      On September 19, 2019, the Court entered the agreed Order Granting Continued Use of Cash Collateral Through December 6, 2019 Pursuant to That Certain Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer [Docket No. 328] (the "Continued Order").   The Continued Order extended the Debtors' authorization for use of

DEBTORS' THIRD STIPULATION
REGARDING CONTINUED USE OF CASH COLLATERAL
Case No. 2:19-bk-14989-WB

4851-7769-5406.1

000021

cash collateral through December 6, 2019, subject to the terms of the Second Stipulation as modified by the Continued Order, and pursuant to the budget attached to the Continued Order. The Continued Order also set a continued hearing on the Cash Collateral Motion for December 5, 2019 at 10:00 a.m. (the "Continued Hearing"). The period covered by the current budget attached to the Continued Order is through December 6, 2019.

F.    The Debtors have prepared a new 13-week budget that covers the period through March 6, 2020 (the "Budget"), a copy of which is attached hereto as **Exhibit A**. The Budget has been approved by the Debtors' secured creditor Hillair Capital Management LLC ("Hillair") and the Official Committee of Unsecured Creditors (the "Committee").

G.    The Debtors, Hillair and the Committee agree to the terms of this Third Stipulation.

## STIPULATION

1.    The Debtors, Hillair and the Committee agree to the continued use of cash collateral, pursuant to the terms of the Second Stipulation, subject to the new Budget, through March 6, 2020. Specifically, the budget approved pursuant to the Continued Order is superseded by the Budget attached hereto, and the "Termination Date" as defined in paragraph 14.1(a) in the Second Stipulation is modified to March 6, 2020.

2.    Paragraph 12.1 of the Second Stipulation is hereby modified to add the following events of default:

(k)    The composition of the Board of Directors of any of the Debtors is altered or any previous action to alter the composition of any such Board is determined to be valid such that Messrs. Weiss, Grobstein and Harrow no longer serve as the sole Directors of the Debtors.

(l)    The Debtors' agreements with Amazon are terminated or Amazon is given relief from the automatic stay to effectuate its termination rights.

(m)    Any chapter 11 plan of reorganization or liquidation is filed by the Debtors or any other third-party and Hillair does not consent to such plan.

DEBTORS' THIRD STIPULATION
REGARDING CONTINUED USE OF CASH COLLATERAL
Case No. 2:19-bk-14989-WB

4851-7769-5406.1

000022

3.  Except as provided for herein and in the *Stipulation Further Extending Deadline For Official Committee Of Unsecured Creditors To Challenge Claim And Lien Of Hillair Capital Management, LLC* [Docket. No. 439], the terms of the Second Stipulation remain in full force and effect.

4.  The Debtors, Hillair and the Committee request entry of the order approving this Third Stipulation in the form attached hereto as **Exhibit B**.

DATED:  December 3, 2019               **FOR THE DEBTORS:**


                                       */s/ Ashley M. McDow*
                                       Ashley M. McDow

                                       Ashley M. McDow (245114)
                                       John A. Simon (admitted Pro Hac Vice)
                                       Shane J. Moses (250533)
                                       FOLEY & LARDNER LLP

                                       Attorneys for Debtors SCOOBEEZ, SCOOBEEZ
                                       GLOBAL, INC., and SCOOBUR, LLC


                                       **FOR THE OFFICIAL COMMITTEE OF
                                       UNSECURED CREDITORS:**


                                       David L. Neale
                                       John-Patrick M. Fritz
                                       LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.,

                                       Attorneys for the Committee

DEBTORS' THIRD STIPULATION
REGARDING CONTINUED USE OF CASH COLLATERAL
Case No. 2:19-bk-14989-WB

4851-7769-5406.1

000023

3.   Except as provided for herein and in the *Stipulation Further Extending Deadline For Official Committee Of Unsecured Creditors To Challenge Claim And Lien Of Hillair Capital Management, LLC* [Docket. No. 439], the terms of the Second Stipulation remain in full force and effect.

4.   The Debtors, Hillair and the Committee request entry of the order approving this Third Stipulation in the form attached hereto as **Exhibit B**.

DATED:  December 3, 2019                    **FOR THE DEBTORS:**

_____

Ashley M. McDow

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
FOLEY & LARDNER LLP

Attorneys for Debtors SCOOBEEZ, SCOOBEEZ
GLOBAL, INC., and SCOOBUR, LLC

**FOR THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS:**

_____

David L. Neale
John-Patrick M. Fritz
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.,

Attorneys for the Committee

1
2

**FOR HILLAIR CAPITAL MANAGEMENT LLC
AND HILLAIR CAPITAL ADVISORS LLC**

3
4

Steven M. Spector
Anthony J. Napolitano

5

BUCHALTER, A Professional Corporation

6
7

Attorneys for Hillair Capital Management LLC and
Hillair Capital Advisors LLC

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

000026

**Scoobeez, et al.**
Cash Forecast through 3/6/2020

| Forecast Week No. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | Percent of |
| Week Ended | 12/13/2019 | 12/20/2019 | 12/27/2019 | 1/3/2020 | 1/10/2020 | 1/17/2020 | 1/24/2020 | 1/31/2020 | 2/7/2020 | 2/14/2020 | 2/21/2020 | 2/28/2020 | 3/6/2020 | Total Forecast | Collections |
| Invoiced Routes | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,150,000 | |
| Total Invoices | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,150,000 | |
| Beginning Cash | 2,077,865 | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | | |
| Collections | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,250,000 | 100.0% |
| **Cash Disbursements:** | | | | | | | | | | | | | | | |
| Fuel | 56,000 | 56,000 | 56,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 718,000 | 7.0% |
| Payroll & Payroll Expenses | 10,000 | 930,000 | 10,000 | 930,000 | 10,000 | 900,000 | 10,000 | 900,000 | 10,000 | 900,000 | 10,000 | 900,000 | 10,000 | 5,530,000 | 54.0% |
| Executive Compensation | - | 32,500 | - | 32,500 | - | 32,500 | - | 32,500 | - | 32,500 | - | 32,500 | - | 195,000 | 1.9% |
| Vehicle - Hertz (3) | 95,197 | 95,197 | 95,197 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 1,379,340 | 13.5% |
| Vehicle - Accidents/Tolls/Citations | - | 750 | - | 750 | - | 37,500 | - | 750 | - | 37,500 | - | 750 | - | 78,000 | 0.8% |
| Worker's Compensation | 7,000 | 86,022 | 7,000 | 86,022 | 7,000 | 83,247 | 7,000 | 83,247 | 7,000 | 83,247 | 7,000 | 83,247 | 7,000 | 554,031 | 5.4% |
| Rent & Utilities | - | - | - | 20,500 | - | - | - | 20,500 | - | - | - | 20,500 | - | 61,500 | 0.6% |
| Insurance | 41,276 | - | - | 75,227 | - | - | - | 75,227 | - | - | - | 75,227 | - | 266,957 | 2.6% |
| Phones & Service | 13,000 | - | 13,000 | - | 13,000 | - | 13,000 | - | 13,000 | - | 13,000 | - | 13,000 | 91,000 | 0.9% |
| Travel | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | 48,000 | 0.5% |
| IT Expenses | - | 12,200 | - | - | 5,000 | - | - | 12,200 | - | - | 5,000 | - | - | 34,400 | 0.3% |
| Dues & Subscriptions | 18,500 | 500 | 500 | 500 | 500 | 18,500 | 500 | 500 | 500 | 500 | 500 | 500 | - | 42,500 | 0.4% |
| DBB Tax Preparation Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Car Wash | - | - | 2,000 | - | - | - | 2,000 | - | - | - | 2,000 | - | - | 6,000 | 0.1% |
| Other Expenses | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 130,000 | 1.3% |
| Total Operating Cash Disbursements | 262,973 | 1,223,168 | 193,697 | 1,319,874 | 221,875 | 1,213,622 | 239,375 | 1,266,799 | 249,375 | 1,195,622 | 244,375 | 1,254,599 | 249,375 | 9,134,728 | 89.1% |
| **Operating Cash Flow** | **537,027** | **(423,168)** | **606,303** | **(519,874)** | **578,125** | **(413,622)** | **560,625** | **(491,799)** | **525,625** | **(420,622)** | **530,625** | **(479,599)** | **525,625** | **1,115,272** | **10.9%** |
| **Financing Cash Flows** | | | | | | | | | | | | | | | |
| Debt Principal | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Debt Interest | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 520,000 | 5.1% |
| Bank Fees | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,950 | 0.0% |
| Financing Cash Flows | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 521,950 | 5.1% |
| **Restructuring Cash Flows** | | | | | | | | | | | | | | | |
| Debtor Counsel | - | 50,000 | - | - | - | - | 50,000 | - | - | - | 50,000 | - | - | 150,000 | 1.5% |
| Debtor CRO | - | 40,000 | - | - | - | - | 25,000 | - | - | - | 25,000 | - | - | 90,000 | 0.9% |
| Debtor Advisor | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Board of Directors (2 Individuals) | - | 5,000 | - | - | - | - | 5,000 | - | - | - | 5,000 | - | - | 15,000 | 0.1% |
| Secured Lender Counsel | - | 50,000 | - | - | - | - | 50,000 | - | - | - | 50,000 | - | - | 150,000 | 1.5% |
| Committee Counsel | - | 12,500 | - | - | - | - | 12,500 | - | - | - | 12,500 | - | - | 37,500 | 0.4% |
| Special Counsel (Hillair) | 100,000 | - | - | - | - | - | - | - | - | - | - | - | - | 100,000 | 1.0% |
| Special Counsel (Debtor) | 20,000 | - | - | - | - | - | - | - | - | - | - | - | - | 20,000 | 0.2% |
| US Trustee Fees | - | - | - | - | 110,510 | - | - | - | - | - | - | - | 102,488 | 212,998 | 2.1% |
| Restructuring Cash Flows | 120,000 | 157,500 | - | - | 110,510 | - | 142,500 | - | - | - | 142,500 | - | 102,488 | 775,498 | 7.6% |
| **Net Total Cash Flow In / (Out)** | **376,877** | **(620,818)** | **566,153** | **(560,024)** | **427,465** | **(453,772)** | **377,975** | **(531,949)** | **485,475** | **(460,772)** | **347,975** | **(519,749)** | **382,987** | **(182,176)** | **-1.8%** |
| Ending Cash Balance | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | 1,895,689 | | |
| **Collateral Package** | | | | | | | | | | | | | | | |
| Cash on Hand | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | 1,895,689 | | |
| AR | 3,180,000 | 3,180,000 | 3,180,000 | 3,160,000 | 3,140,000 | 3,120,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | | |
| Loan Receivable and Uncategorized As | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | | |
| Fixed Assets | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | | |
| Other Assets | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | | |
| **Total Collateral** | **8,220,269** | **7,599,451** | **8,165,604** | **7,585,580** | **7,993,046** | **7,519,274** | **7,877,249** | **7,345,300** | **7,830,775** | **7,370,003** | **7,717,978** | **7,198,229** | **7,581,216** | | |
| Estimated Outstanding Secured Loan | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | | |

# Exhibit B

000028

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
         jsimon@foley.com
         smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SCOOBEEZ, et al.[1]<br><br>      Debtors and Debtors in Possession. | Case No. 2:19-bk-14989-WB<br>Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br><br>Chapter 11 |
| Affects:<br><br>■ All Debtors<br><br>□ Scoobeez, ONLY<br><br>□ Scoobeez Global, Inc., ONLY<br><br>□ Scoobur LLC, ONLY | **ORDER GRANTING CONTINUED USE OF CASH COLLATERAL THROUGH MARCH 6, 2020, PURSUANT TO THAT CERTAIN THIRD STIPULATION REGARDING CONTINUED USE OF CASH COLLATERAL** |

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

000029

4831-9136-2734.2

Scoobeez, Inc., Scoobeez Global, Inc., and Scoobur, LLC, the debtors and debtors-in-possession

in the above captioned jointly administered Chapter 11 bankruptcy cases (collectively, the "Debtors")

having filed the *Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an*

*Interim Basis* [Docket No. 13] (the "Cash Collateral Motion");

The Debtors presently have authorization to use cash collateral on an interim basis through

December 6, 2019, pursuant to the *Order Granting Continued Use Of Cash Collateral Through*

*December 6, 2019 Pursuant To That Certain Second Stipulation For (1) Authorization To Use Cash*

*Collateral; And (2) Appointment Of Chief Restructuring Officer* [Docket No. 172], entered on

September 19, 2019 (the "Prior Order"), which approved continued use of cash collateral under that

certain *Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief*

*Restructuring Officer* [Docket No. 132] (the "Second Stipulation") entered into by and among Hillair

Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital

Investments LP (collectively, "Hillair"), the Debtors, and the Official Committee of Unsecured

Creditors (the "Committee"), which was approved by this Court pursuant to that certain *Order*

*Approving Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of a*

*Chief Restructuring Officer* [Docket No. 135].

The Debtors seek continued use of cash collateral on an interim basis as set forth in their *Third*

*Stipulation Regarding Continued Use of Cash Collateral* [Docket No. [____]] (the "Third Stipulation").

The Court having considered the Cash Collateral Motion, the Second Stipulation, the Third Stipulation,

all oppositions and other supplemental papers filed with respect to the continued use of cash collateral,

and good cause appearing therefor, the Court makes the following findings:

A.    The Debtors, the Committee, and Hillair support the Debtors' continued use of cash

collateral on an interim basis.

B.    There are no defaults under the terms of the Second Stipulation, the Prior Order, or any

previous stipulation or order authorizing the Debtors' use of cash collateral.

C.    The express written consent of Hillair under Paragraph 3.4(c) of the Second Stipulation

for the use of cash collateral for the payment of any insider of the Debtor or any management person or

entity retained by the Debtors' or the Debtors' estate is as provided for in the Budget (as defined in the

4831-9136-2734.2

000030

Third Stipulation and as attached to this order (the "<u>Order</u>")).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Debtors' authorization to use cash collateral on a further interim basis pursuant to the terms of the Second Stipulation is approved subject to the modifications set forth in this Order.

2.     The term during which the Debtors are authorized to use cash collateral, as set forth in Paragraph 14.1(a) of the Second Stipulation, is hereby extended through March 6, 2020.

3.     The Budget as defined and referenced in Paragraph 3.3(a) of the Second Stipulation and attached as Exhibit B to the Second Stipulation is hereby superseded by the budget attached hereto as **<u>Exhibit A</u>** for the period from December 7 through March 6, 2019.

4.      Paragraph 12.1 of the Second Stipulation is hereby modified to add the following events of default:

(k)     The composition of the Board of Directors of any of the Debtors is altered or any previous action to alter the composition of any such Board is determined to be valid such that Messrs. Weiss, Grobstein and Harrow no longer serve as the sole Directors of the Debtors.

(l)     The Debtors' agreements with Amazon are terminated or Amazon is given relief from the automatic stay to effectuate its termination rights.

(m)     Any chapter 11 plan of reorganization or liquidation is filed by the Debtors or any other third-party and Hillair does not consent to such plan.

5.     The hearing on the Debtors' Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis [Docket No. 13] (the "<u>Motion</u>") shall be continued to March 5, 2020, at 10:00 a.m. in the above-captioned court.

6.     Supplemental briefs in support of the Motion and continued use of cash collateral shall be filed and served by no later than February 20, 2020.

7.     Supplemental responses in opposition to the motion and continued use of cash collateral shall be filed and served by no later than February 27, 2020.

# # #

Case No. 2:19-bk-14989-WB

4831-9136-2734.2

000031

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Foley & Lardner LLP, 555 South Flower Street, Suite 3300, Los Angeles, CA 90072-2411

A true and correct copy of the foregoing document entitled (*specify*): **THIRD STIPULATION REGARDING CONTINUED USE OF CASH COLLATERAL**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 6, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

                                                                                Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:                                    ☒
On (*date*) December 6, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Honorable Julia W. Brand**
**Central District of California**
**Edward R. Roybal Federal Building and Courthouse**
**255 E. Temple Street, Suite 1382**
**Los Angeles, CA 90012**

                                                               ☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

                                                               ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/6/2019 | Karla P. Hernandez | /s/ Karla P. Hernandez |
|-----------|--------------------|------------------------|
| Date      | Printed Name       | Signature              |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

000032

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **John-Patrick M Fritz**    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
- **Riebert Sterling Henderson**    shenderson@gibbsgiden.com
- **Vivian Ho**    BKClaimConfirmation@ftb.ca.gov
- **Alvin Mar**    alvin.mar@usdoj.gov
- **Ashley M McDow**    amcdow@foley.com,
  sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
- **Stacey A Miller**    smiller@tharpe-howell.com
- **Kevin H Morse**    kmorse@clarkhill.com, blambert@clarkhill.com
- **Shane J Moses**    smoses@foley.com
- **Akop J Nalbandyan**    jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
- **Rejoy Nalkara**    rejoy.nalkara@americaninfosource.com
- **Anthony J Napolitano**    anapolitano@buchalter.com,
  IFS_filing@buchalter.com;salarcon@buchalter.com
- **David L. Neale**    dln@lnbyb.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- **Gregory M Salvato**    gsalvato@salvatolawoffices.com,
  calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- **Steven M Spector**    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Eric K Yaeckel**    yaeckel@sullivanlawgroupapc.com

000033

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    F 9013-3.1.PROOF.SERVICE

**EXHIBIT 4**

000034

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
          jsimon@foley.com
          smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC

FILED & ENTERED

DEC 10 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

In re:

SCOOBEEZ, et al.[1]

          Debtors and Debtors in Possession.

Affects:

■ All Debtors

□ Scoobeez, ONLY

□ Scoobeez Global, Inc., ONLY

□ Scoobur LLC, ONLY

Case No. 2:19-bk-14989-WB
Jointly Administered:
2:19-bk-14991-WB; 2:19-bk-14997-WB

Chapter 11

**ORDER GRANTING CONTINUED USE OF
CASH COLLATERAL THROUGH MARCH
6, 2020, PURSUANT TO THAT CERTAIN
THIRD STIPULATION REGARDING
CONTINUED USE OF CASH
COLLATERAL**

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as
follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors'
address is 3463 Foothill Boulevard, Glendale, California 91214.

4831-9136-2734.2

Scoobeez, Inc., Scoobeez Global, Inc., and Scoobur, LLC, the debtors and debtors-in-possession

in the above captioned jointly administered Chapter 11 bankruptcy cases (collectively, the "Debtors")

having filed the *Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an*

*Interim Basis* [Docket No. 13] (the "Cash Collateral Motion");

The Debtors presently have authorization to use cash collateral on an interim basis through

December 6, 2019, pursuant to the *Order Granting Continued Use Of Cash Collateral Through*

*December 6, 2019 Pursuant To That Certain Second Stipulation For (1) Authorization To Use Cash*

*Collateral; And (2) Appointment Of Chief Restructuring Officer* [Docket No. 172], entered on

September 19, 2019 (the "Prior Order"), which approved continued use of cash collateral under that

certain *Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief*

*Restructuring Officer* [Docket No. 132] (the "Second Stipulation") entered into by and among Hillair

Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital

Investments LP (collectively, "Hillair"), the Debtors, and the Official Committee of Unsecured

Creditors (the "Committee"), which was approved by this Court pursuant to that certain *Order*

*Approving Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of a*

*Chief Restructuring Officer* [Docket No. 135].

The Debtors seek continued use of cash collateral on an interim basis as set forth in their *Third*

*Stipulation Regarding Continued Use of Cash Collateral* [Docket No. [486]] (the "Third Stipulation").

The Court having considered the Cash Collateral Motion, the Second Stipulation, the Third Stipulation,

all oppositions and other supplemental papers filed with respect to the continued use of cash collateral,

and good cause appearing therefor, the Court makes the following findings:

A.      The Debtors, the Committee, and Hillair support the Debtors' continued use of cash

collateral on an interim basis.

B.      There are no defaults under the terms of the Second Stipulation, the Prior Order, or any

previous stipulation or order authorizing the Debtors' use of cash collateral.

C.      The express written consent of Hillair under Paragraph 3.4(c) of the Second Stipulation

for the use of cash collateral for the payment of any insider of the Debtor or any management person or

entity retained by the Debtors' or the Debtors' estate is as provided for in the Budget (as defined in the

Third Stipulation and as attached to this order (the "Order")).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Debtors' authorization to use cash collateral on a further interim basis pursuant to the terms of the Second Stipulation is approved subject to the modifications set forth in this Order.

2. The term during which the Debtors are authorized to use cash collateral, as set forth in Paragraph 14.1(a) of the Second Stipulation, is hereby extended through March 6, 2020.

3. The Budget as defined and referenced in Paragraph 3.3(a) of the Second Stipulation and attached as Exhibit B to the Second Stipulation is hereby superseded by the budget attached hereto as **Exhibit A** for the period from December 7 through March 6, 2019.

4. Paragraph 12.1 of the Second Stipulation is hereby modified to add the following events of default:

(k)   The composition of the Board of Directors of any of the Debtors is altered or any previous action to alter the composition of any such Board is determined to be valid such that Messrs. Weiss, Grobstein and Harrow no longer serve as the sole Directors of the Debtors.

(l)   The Debtors' agreements with Amazon are terminated or Amazon is given relief from the automatic stay to effectuate its termination rights.

(m)   Any chapter 11 plan of reorganization or liquidation is filed by the Debtors or any other third-party and Hillair does not consent to such plan.

5. The hearing on the Debtors' Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis [Docket No. 13] (the "Motion") shall be continued to March 5, 2020, at 10:00 a.m. in the above-captioned court.

6. Supplemental briefs in support of the Motion and continued use of cash collateral shall be filed and served by no later than February 20, 2020.

//

//

//

ORDER FOR CONTINUED USE OF CASH COLLATERAL
Case No. 2:19-bk-14989-WB

4831-9136-2734.2

000032

7.     Supplemental responses in opposition to the motion and continued use of cash collateral shall be filed and served by no later than February 27, 2020.

# # #

Date: December 10, 2019

Julia W. Brand
United States Bankruptcy Judge

**Scoobeez, et al.**
Cash Forecast through 3/6/2020

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total Forecast | Percent of Collections |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Forecast Week No. | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | |
| Week Ended | 12/13/2019 | 12/20/2019 | 12/27/2019 | 1/3/2020 | 1/10/2020 | 1/17/2020 | 1/24/2020 | 1/31/2020 | 2/7/2020 | 2/14/2020 | 2/21/2020 | 2/28/2020 | 3/6/2020 | | |
| Invoiced Routes | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,150,000 | |
| Total Invoices | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,150,000 | |
| Beginning Cash | 2,077,865 | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | | |
| Collections | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 775,000 | 10,250,000 | 100.0% |
| **Cash Disbursements:** | | | | | | | | | | | | | | | |
| Fuel | 56,000 | 56,000 | 56,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 55,000 | 718,000 | 7.0% |
| Payroll & Payroll Expenses | 10,000 | 930,000 | 10,000 | 930,000 | 10,000 | 900,000 | 10,000 | 900,000 | 10,000 | 900,000 | 10,000 | 900,000 | 10,000 | 5,530,000 | 54.0% |
| Executive Compensation | · | 32,500 | · | 32,500 | · | 32,500 | · | 32,500 | · | 32,500 | · | 32,500 | · | 195,000 | 1.9% |
| Vehicle - Hertz (3) | 95,197 | 95,197 | 95,197 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 109,375 | 1,379,340 | 13.5% |
| Vehicle - Accidents/Tolls/Citations | · | · | · | 750 | · | 37,500 | · | 750 | · | 37,500 | · | 750 | · | 78,000 | 0.8% |
| Worker's Compensation | 7,000 | 86,022 | 7,000 | 86,022 | 7,000 | 83,247 | 7,000 | 83,247 | 7,000 | 83,247 | 7,000 | 83,247 | 7,000 | 554,031 | 5.4% |
| Rent & Utilities | · | · | · | 20,500 | · | · | · | 20,500 | · | · | · | 20,500 | · | 61,500 | 0.6% |
| Insurance | 41,276 | · | · | 75,227 | · | · | · | 75,227 | · | · | · | 75,227 | · | 266,957 | 2.6% |
| Phones & Service | 13,000 | · | 13,000 | · | 13,000 | · | 13,000 | · | 13,000 | · | 13,000 | · | 13,000 | 91,000 | 0.9% |
| Travel | 12,000 | · | · | · | 12,000 | · | · | · | 12,000 | · | · | · | 12,000 | 48,000 | 0.5% |
| IT Expenses | · | 12,200 | · | · | 5,000 | · | 12,200 | · | · | 5,000 | · | · | · | 34,400 | 0.3% |
| Dues & Subscriptions | 18,500 | 500 | 500 | 500 | 500 | 500 | 18,500 | 500 | 500 | 500 | 500 | 500 | 500 | 42,500 | 0.4% |
| DBB Tax Preparation Fee | · | · | · | · | · | · | · | · | · | · | · | · | · | · | 0.0% |
| Car Wash | · | · | 2,000 | · | · | · | 2,000 | · | · | · | 2,000 | · | · | 6,000 | 0.1% |
| Other Expenses | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 130,000 | 1.3% |
| Total Operating Cash Disbursements | 262,973 | 1,223,168 | 193,697 | 1,319,874 | 221,875 | 1,213,622 | 239,375 | 1,266,799 | 249,375 | 1,195,622 | 244,375 | 1,254,599 | 249,375 | 9,134,728 | 89.1% |
| **Operating Cash Flow** | 537,027 | (423,168) | 606,303 | (519,874) | 578,125 | (413,622) | 560,625 | (491,799) | 525,625 | (420,622) | 530,625 | (479,599) | 525,625 | 1,115,272 | 10.9% |
| **Financing Cash Flows** | | | | | | | | | | | | | | | |
| Debt Principal | · | · | · | · | · | · | · | · | · | · | · | · | · | · | 0.0% |
| Debt Interest | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 520,000 | 5.1% |
| Bank Fees | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,950 | 0.0% |
| Financing Cash Flows | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 40,150 | 521,950 | 5.1% |
| **Restructuring Cash Flows** | | | | | | | | | | | | | | | |
| Debtor Counsel | · | 50,000 | · | · | · | 50,000 | · | · | · | 50,000 | · | · | · | 150,000 | 1.5% |
| Debtor CRO | · | 40,000 | · | · | · | 25,000 | · | · | · | 25,000 | · | · | · | 90,000 | 0.9% |
| Debtor Advisor | · | · | · | · | · | · | · | · | · | · | · | · | · | · | 0.0% |
| Board of Directors (2 Individuals) | · | 5,000 | · | · | · | 5,000 | · | · | · | 5,000 | · | · | · | 15,000 | 0.1% |
| Secured Lender Counsel | · | 50,000 | · | · | · | 50,000 | · | · | · | 50,000 | · | · | · | 150,000 | 1.5% |
| Committee Counsel | · | 12,500 | · | · | · | 12,500 | · | · | · | 12,500 | · | · | · | 37,500 | 0.4% |
| Special Counsel (Hillair) | 100,000 | · | · | · | · | · | · | · | · | · | · | · | · | 100,000 | 1.0% |
| Special Counsel (Debtor) | 20,000 | · | · | · | · | · | · | · | · | · | · | · | · | 20,000 | 0.2% |
| US Trustee Fees | · | · | · | · | 110,510 | · | · | · | · | · | · | · | 102,488 | 212,998 | 2.1% |
| Restructuring Cash Flows | 120,000 | 157,500 | · | · | 110,510 | 142,500 | · | · | · | 142,500 | · | · | 102,488 | 775,498 | 7.6% |
| **Net Total Cash Flow In / (Out)** | 376,877 | (620,818) | 566,153 | (560,024) | 427,465 | (453,772) | 377,975 | (531,949) | 485,475 | (460,772) | 347,975 | (519,749) | 382,987 | (182,176) | -1.8% |
| Ending Cash Balance | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | 1,895,689 | | |
| **Collateral Package** | | | | | | | | | | | | | | | |
| Cash on Hand | 2,454,742 | 1,833,924 | 2,400,077 | 1,840,053 | 2,267,519 | 1,813,747 | 2,191,722 | 1,659,773 | 2,145,248 | 1,684,476 | 2,032,451 | 1,512,702 | 1,895,689 | | |
| AR | 3,180,000 | 3,180,000 | 3,180,000 | 3,160,000 | 3,140,000 | 3,120,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | 3,100,000 | | |
| Loan Receivable and Uncategorized Assets | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | 1,654,172 | | |
| Fixed Assets | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | 868,687 | | |
| Other Assets | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | 62,668 | | |
| **Total Collateral** | 8,220,269 | 7,599,451 | 8,165,604 | 7,585,580 | 7,993,046 | 7,519,274 | 7,877,249 | 7,345,300 | 7,830,775 | 7,370,003 | 7,717,978 | 7,198,229 | 7,581,216 | | |
| Estimated Outstanding Secured Loan | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | 11,108,500 | | |

**EXHIBIT 5**

1

2

3      FILED & ENTERED

4                    JUN 07 2019

5
       CLERK U.S. BANKRUPTCY COURT
6      Central District of California
       BY egarcia     DEPUTY CLERK

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11   | In re | Lead Case No. 2:19-bk-14989-WB |

12   SCOOBEEZ, INC., a California         Chapter 11
     corporation, et al.
13                                        Jointly administered with Case Nos. 2:19-bk-
                   Debtors and Debtors in  14991-WB and 2:19-bk-14997-WB)
14                 Possession.
                                          **ORDER APPROVING SECOND**
15                                        **STIPULATION FOR**
                                          **(1) AUTHORIZATION TO USE**
16   Affects:                             **CASH COLLATERAL; AND**
                                          **(2) APPOINTMENT OF CHIEF**
17   ☒       All Debtors                   **RESTRUCTURING OFFICER**

18   ☐       SCOOBEEZ, INC., only         **Hearing:**
                                          Date:      June 6, 2019
19   ☐       SCOOBEEZ GLOBAL, INC. only   Time:      10:00 a.m.
                                          Place:     U.S. Bankruptcy Court
20   ☐       SCOOBUR, LLC only                       Courtroom 1375
                                                     255 East Temple Street
21                                                   Los Angeles, CA 90012
                                          Judge:     Hon. Julia W. Brand
22

23

24

25

26

27

28

                              1

BN 36420013V2

Having reviewed the *Second Stipulation for (1) Authorization to Use Cash Collateral; and (2) Appointment of Chief Restructuring Officer* [Docket No. 132] (the "Stipulation") entered into by and between Hillair Capital Management LLC and Hillair Capital Advisors LLC, the general partner of Hillair Capital Investments LP (collectively, "Hillair"), Scoobeez, Inc., a California corporation, debtor in the above-captioned chapter 11 bankruptcy case ("Scoobeez"), and its affiliated debtors, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee"), and good cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Stipulation is approved.

2.      The hearing on the Debtors' *Emergency Motion for Entry of Interim Order Authorizing Use of Cash Collateral on an Interim Basis* [Docket No. 13] (the "Motion") shall be continued to June 27, 2019 at ~~10:00 a.m.~~ ***2:00 p.m.*** in the above-captioned court.

3.      Supplemental briefs in support of the Motion and continued use of cash collateral shall be filed and served by no later than June 20, 2019.

4.      Supplemental responses in opposition to the motion and continued use of cash collateral shall be filed and served by no later than June 25, 2019.

# # #

Date: June 7, 2019

*Julia W Brand*

Julia W. Brand
United States Bankruptcy Judge

2

BN 36420013V2

**EXHIBIT 6**

# By-Laws of Abot Mining Co.

**ARTICLE I**             **OFFICES**
The principal office of the corporation will be located at:

**ARTICLE II**             **SHAREHOLDERS**

**SECTION 1:**    ANNUAL MEETINGS
The annual meeting of the shareholders will be held on the First day of July in each year, beginning with the year, at the hour of 3:00 o'clock p.m. for the purpose of electing Directors and for the transaction of such other business as may come before the meeting.

If the day fixed for the annual meeting is a legal holiday in the State of Idaho, such meeting will be held on the next succeeding business day. If the election of Directors is not be held on the day designated herein for any annual meeting of the shareholders, or at any adjournment thereof, the Board of Directors will cause the election to be held at a special meeting of the shareholders as soon thereafter as conveniently may be.

**SECTION 2:**    SPECIAL MEETINGS
Special meetings of the shareholders, for any purpose or purposes, unless otherwise prescribed by statute, may be called by the Chief Executive Officer or by the Board of Directors and must be called by the Chief Executive Officer at the request of the holders if not less than one-tenth of all the outstanding shares of the corporation entitled to vote are at the meeting.

**SECTION 3**    PLACE OF MEETING
The Board of Directors may designate any place, either within or without the State of Idaho as the place of meeting for any annual or special meeting of shareholders. If no designation is made, the place of meeting will be the principal office of the corporation.

**SECTION 4**    NOTICE OF MEETING
Written or printed notice stating the place, day and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called, must be delivered not less than ten or more than fifty days before the date of the meeting, either personally or by mail, by or at the direction of the Chief Executive Officer, or the Secretary, or the officer or persons calling the meeting, to each shareholder of record entitled to vote at such meeting. If mailed, such notice will be deemed to be delivered when deposited in the United States mail, addressed to the shareholder at the Shareholder's address as it appears on the stock transfer books of the corporation, with postage thereon prepaid.

**SECTION 5**    QUORUM
A majority of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, will constitute a quorum at a meeting of shareholders. If less than a majority of the outstanding shares are represented at a meeting, a majority of the shares so represented may adjourn the meeting from time to time without further notice. At such adjourned meeting at which a quorum must be present or represented, any business may be transacted which might have been transacted at the meeting as originally notified.

**SECTION 6**    PROXIES
At all meetings of shareholders, a shareholder may vote by proxy executed in writing by the shareholder or by the Shareholder's duly authorized attorney in fact. Such proxy must be filed with the Secretary of the corporation before or at the time of the meeting. No proxy will be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

**SECTION 7**    VOTING OF SHARE
Subject to the provisions of Section 9, each outstanding share entitled to vote will be entitled to one vote upon each matter submitted to a vote at a meeting of shareholders.

### SECTION 8    INFORMAL ACTION BY SHAREHOLDER

Any action required to be taken at a meeting of the shareholders, or any other action which may be taken at a meeting of the shareholders, may be taken without a meeting of a consent in writing, setting forth the action so taken, must be signed by shareholders owning a majority of the Company's issued and outstanding common stock with respect to the subject matter thereof.

### ARTICLE III                BOARD OF DIRECTORS

### SECTION 1    GENERAL POWERS

The business and affairs of the corporation will be managed by its Board of Directors.

### SECTION 2    NUMBER, TENURE, AND QUALIFICATIONS

The number of Directors of the corporation must be at least five but not more than nine. Each director will hold office until the next annual meeting of shareholders and until the Director's successor has been elected and qualified.

### SECTION 3    REGULAR MEETINGS

A regular meeting of the Board of Directors will be held without other notice than this by-law immediately after, and at the same place as, the annual meeting of shareholders. The Board of Directors may provide, by resolution, the time and place, either within or without the State of Idaho, for the holding of additional regular meetings without other notice than such resolution.

### SECTION 4    SPECIAL MEETINGS

Special meetings of the Board of Directors may be called by or at the request of the Chief Executive Officer or any two Directors. The person or persons authorized to call special meetings of the Board of Directors may fix any place either within or without the State of Idaho as the place for holding any special meeting of the Board of Directors called by them.

### SECTION 5    NOTICE

Notice of any special meeting must be given at least four days previously thereto by written notice delivered personally or mailed to each Director at their customary business address. If mailed, such notice will be deemed to be delivered when deposited in the United States Mail so addressed, with postage thereon prepaid. Any Director may waive notice of any meeting. The attendance of a Director at a meeting will constitute a waiver of notice of such meeting, except where a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting.

### SECTION 6    QUORUM

A majority of the number of Directors fixed by Section 2 of this Article III will constitute a quorum for the transaction of business at any meeting of the Board of Directors, but if less than such majority is present at a meeting, a majority of the Directors present may adjourn the meeting from time to time without further notice.

### SECTION 7    MANNER OF ACTING

The act of the majority of the Directors present at a meeting at which a quorum is present will be the act of the Board of Directors.

### SECTION 8    VACANCIES

Any vacancy occurring in the Board of Directors may be filled by the affirmative vote of a majority of the remaining Directors though less than a quorum of the Board of Directors. A Director elected to fill a vacancy will be elected for the unexpired term of the predecessor in office.

### SECTION 9    COMPENSATION

By resolution of the Board of Directors, the Directors may be paid their expenses, if any, for attendance at each meeting of the Board of Directors, and may be paid a fixed sum for attendance at each meeting of the

Board of Directors. No such payment may preclude any director from serving the corporation in any other capacity and receiving compensation therefore.

**SECTION 10**    PRESUMPTION OF ASSENT

A Director of the corporation who is present at a meeting of the Board of Directors, at which action on any corporate matter is presumed to assent to the action taken unless the Director's dissent will be entered in the minutes, of the meeting or unless the Director will file a written dissent to such action with the person acting as the Secretary of the meeting before the adjournment thereof, or will forward such dissent by registered mail to the Secretary of the corporation immediately after the adjournment of the meeting. Such right to dissent will not apply to a Director who voted in favor of such action.

**SECTION 11**    EXECUTIVE COMMITTEE

The Board of Directors, by resolution adopted by the majority of the Directors fixed by the by-laws, may designate a committee of not less than two Directors which committee, in absence of a resolution of the Board of Directors limiting or restricting its authority will have and may exercise all of the authority of the Board of Directors in the management of all business and affairs of the corporation, except the Executive Committee may not fill vacancies in the Board of Directors or amend these by-laws. The Board of Directors may at any time remove any member of the Executive Committee with or without cause and may terminate or in any way in its sole discretion limit or restrict the authority of the Executive Committee. The Committee will keep a record of its proceedings and report such proceedings to the Board of Directors.

**ARTICLE IV**          **OFFICERS**

**SECTION 1**    NUMBER

The officers of the corporation will be a Chief Executive Officer, one or more Vice Presidents (the number thereof, if any, to be determined by the Board of Directors), a Secretary, and a Chief Financial Officer, each of who will be elected by the Board of Directors. Any officers may be held by the same person, including the offices of Chief Executive Officer and Secretary.

**SECTION 2**    ELECTION AND TERM OF OFFICE

The officers of the corporation to be elected by the Board of Directors will be elected annually by the Board of Directors at the first meeting of the Board of Directors held after each annual meeting of the shareholders. If the election of officers is not held at such meeting, such election will be held as soon thereafter as conveniently may be. Each officer will hold office until a successor has been duly elected and qualified or until the Officer's death or until the Officer has resign or has been removed in the manner hereinafter provided.

**SECTION 3**    REMOVAL

Any officer or agent elected or appointed by the Board of Directors may be removed by the Board of Directors, whenever in its judgment the best interests of the corporation would be served thereby, but such removal will be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer or agent will not of itself create contract rights.

**SECTION 4**    VACANCIES

A vacancy in any office because of death, resignation, removal, disqualification or otherwise, may be filled by the Board of Directors for the unexpired portion of the term.

**SECTION 5**    CHIEF EXECUTIVE OFFICER

The Chief Executive Officer will be the principal executive officer of the corporation and, subject to the control of the Board of Directors, will in general supervise and control all of the business and affairs of the corporation. The Chief Executive Officer, when present, will preside at all meetings of the shareholders and of the Board of Directors. The Chief Executive Officer may sign, with the Secretary or any other proper officer of the corporation thereunto authorized by the Board of Directors, certificates for shares of the corporation, and in general perform all duties incident to the office of Chief Executive Officer and such other duties as may be prescribed by the Board of Directors from time to time.

**SECTION 6**     THE VICE PRESIDENT

In the absence of the Chief Executive Officer or in the event of the Chief Executive Officer's death, inability or refusal to act, the Vice President (or in the event there be more than one Vice President, the Vice Presidents in the order designated at the time of their election, or in the absence of any designation, then in the order of their election) perform the duties of the Chief Executive Officer, and when so acting have all the powers of and be subject to all the restrictions upon the Chief Executive Officer. Any Vice President may sign, with the Secretary or an Assistant Secretary, certificates for shares of the corporation; and perform such other duties as from time to time may be assigned to the Vice President by the Chief Executive Officer or by the Board of Directors.

**SECTION 7**     THE SECRETARY

The Secretary will: (a) keep the minutes of the shareholders' and of the Board of Directors' meetings in one or more books provided for the purpose; (b) see that all notices are duly given in accordance with the provisions of these by-laws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation and see that the seal of which on behalf of the corporation under its seal is duly authorized; (d) keep a register of the post office address of each shareholder furnished to the Secretary by such shareholder; (e) sign with the Chief Executive Officer, or a Vice President, certificates for shares of the corporation, the issuance of which has been authorized by resolution of the Board of Directors; (f) have general charge of the stock transfer books of the corporation; and (g) in general perform all duties incident to the office of Secretary and such other duties as from time to time may be assigned to the Secretary by the Chief Executive Officer or by the Board of Directors.

**SECTION 8**     THE CHIEF FINANCIAL OFFICER

The Chief Financial Officer will (a) have charge and custody of and be responsible for all funds and securities of the corporation; (b) receive and give receipts for moneys due and payable to the corporation from any source whatsoever, and deposit all such moneys in the name of the corporation in such banks, trust companies or other depositaries as selected in accordance with the provisions of Article V of these by-laws; and (c) in general perform all of the duties incident to the office of the Chief Financial Officer and such other duties as from time to time may be assigned to the Chief Financial Officer by the Chief Executive Officer or by the Board of Directors.

**SECTION 9**     SALARIES

The salaries of the officers will be fixed from time to time by the Board of Directors and no officer may be prevented from receiving such salary by reason of the fact that the officer is also a Director of the corporation.

**ARTICLE V**                    **CONTRACTS, LOANS, CHECKS, AND DEPOSITS**

**SECTION 1**     CONTRACTS

The Board of Directors may authorize any officer or officers, agent or agents, to enter into any contract, to execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.

**SECTION 2**     LOANS

No loans may be contracted on behalf of the corporation and no evidences of indebtedness may be issued in its name unless authorized by a resolution of the Board of Directors. Such authority may be general or confined to specific instances.

**SECTION 3**     CHECKS, DRAFTS, ETC.

All checks, drafts, or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the corporation must be signed by such officer or officers, agent or agents, of the corporation and in such manner as from time to time determined by resolution of the Board of Directors.

**SECTION 4**     DEPOSITS

All funds of the corporation not otherwise employed will be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositaries as the Board of Directors may select.

**ARTICLE VI**          **CERTIFICATES FOR SHARES AND THEIR TRANSFER**

**SECTION 1**    CERTIFICATES FOR SHARES
Certificates representing shares of the corporation will be in such form as determined by the Board of Directors. Such certificates will be signed by the Chief Executive Officer or a Vice President and by the Secretary or an Assistant Secretary. All certificates for shares will be consecutively numbered or otherwise identified. The name and address of the person to whom the shares represented thereby are issued, with the number of shares and date of issue, will be entered on the stock transfer books of the corporation. All certificates surrendered to the corporation for transfer will be canceled and no certificates will be issued until the former certificate for a like number of shares has been surrendered and canceled, except that in case of a lost, destroyed or mutilated certificate, a new one may be issued therefore upon such terms and indemnity to the corporation as the Board of Directors may prescribe.

**SECTION 2**    TRANSFER OF SHARES
Transfer of shares of the corporation will be made only on the stock transfer books of the corporation by the holder of record thereof or by a legal representative, who must furnish proper evidence of authority to transfer, or by an attorney thereunto authorized by power of attorney duly executed and filed with the Secretary of the corporation, and on surrender for cancellation of the certificate for such shares. The person in whose name shares stand on the books of the corporation will be deemed by the corporation to be the owner thereof for all purposes.

**ARTICLE VII**          **FISCAL YEAR**
The fiscal year of the corporation will begin on the first day of January and end on the 31st day of December.

**ARTICLE VIII**          **DIVIDENDS**
The Board of Directors may from time to time declare, and the corporation may pay, dividends on its outstanding shares in the manner and upon the terms and conditions provided by law.

**ARTICLE IX**          **SEAL**
The Board of Directors may provide a corporate seal which will be circular in form and have inscribed thereon the name of the corporation and conditions provided by law.

**ARTICLE X**          **WAIVER OF NOTICE**
Whenever any notice is required to be given to any shareholder or director of the corporation under the provisions of these by-laws or under the provisions of the articles of incorporation or under the provisions of the laws of the State of Idaho, a waiver thereof in writing, signed by the person or persons entitled to such notice, whether before or after the time stated therein, will be deemed equivalent to the giving of such notice.

**ARTICLE XI**          **AMENDMENTS**
These by-laws may be altered, amended or repealed and new by-laws may be adopted by majority vote of the Board of Directors at any regular of special meeting of the Board of Directors, or by a majority vote of the outstanding shares. The foregoing initial by-laws of the corporation were adopted by the Board of Directors on this day _____

000048

# PROOF OF SERVICE OF DOCUMENT

1

2   I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business
address is: 130 Newport Center Drive, Suite 140, Newport Beach, CA 92660.

3
A true and correct copy of the foregoing document entitled **DEBTORS' OPPOSITION TO MOTION**

4   **FOR RELIEF FROM AUTOMATIC STAY OR FOR ORDER FINDING STAY DOES
NOT APPLY; DECLARATION OF SCOTT A. SHEIKH IN SUPPORT THEREOF** will be

5   served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and
**(b)** in the manner stated below:

6
**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

7   Pursuant to controlling General Orders and LBR, the foregoing document will be served by the
court via NEF and hyperlink to the document. On December 18, 2019, I checked the CM/ECF

8   docket for this bankruptcy case or adversary proceeding and determined that the following persons
are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated

9   below:

10   ☒  Service information continued on attached page

11   **2. SERVED BY UNITED STATES MAIL**: On December 18, 2019, I served the following persons and/or
entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and

12   correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be

13   completed no later than 24 hours after the document is filed.

14   ☒  Service information continued on attached page

15   **3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on

16   December 18, 2019, I served the following persons and/or entities by personal delivery, overnight mail
service, or (for those who consented in writing to such service method), by facsimile transmission and/or

17   email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight
mail to, the judge will be completed no later than 24 hours after the document is filed.

18
**Via Federal Express**

19   Honorable Julia Brand
United States Bankruptcy Court

20   255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

21
☐  Service information continued on attached page

22
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

23
12/18/2019            Rosanna Sumera

24   _Date_                _Printed Name_                        _Signature_

25

26

27

28

# NEF LIST

- **Richard T Baum**    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
- **Bradley E Brook**    bbrook@bbrooklaw.com,
  paulo@bbrooklaw.com;brookecfmail@gmail.com
- **Richard W Esterkin**    richard.esterkin@morganlewis.com
- **John-Patrick M Fritz**    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
- **Riebert Sterling Henderson**    shenderson@gibbsgiden.com
- **Vivian Ho**    BKClaimConfirmation@ftb.ca.gov
- **Dare Law**    dare.law@usdoj.gov
- **Ashley M McDow**    amcdow@foley.com,
  sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
- **Stacey A Miller**    smiller@tharpe-howell.com
- **Kevin H Morse**    kmorse@clarkhill.com, blambert@clarkhill.com
- **Shane J Moses**    smoses@foley.com
- **Akop J Nalbandyan**    jnalbandyan@LNtriallawyers.com,
  cbautista@LNtriallawyers.com
- **Rejoy Nalkara**    rejoy.nalkara@americaninfosource.com
- **Anthony J Napolitano**    anapolitano@buchalter.com,
  IFS_filing@buchalter.com;salarcon@buchalter.com
- **Jennifer L Nassiri**    jennifernassiri@quinnemanuel.com
- **David L. Neale**    dln@lnbyb.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com,
  bclark@raineslaw.com;cwilliams@raineslaw.com
- **Gregory M Salvato**    gsalvato@salvatolawoffices.com,
  calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- **Jeffrey S Shinbrot**    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
- **Steven M Spector**    sspector@buchalter.com,
  IFS_efiling@buchalter.com;salarcon@buchalter.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Kimberly Walsh**    bk-kwalsh@texasattorneygeneral.gov
- **Eric D Winston**    ericwinston@quinnemanuel.com
- **Eric K Yaeckel**    yaeckel@sullivanlawgroupapc.com

1

## REGULAR MAIL LIST

2

RICHARD T. BAUM
State Bar No. 80889
11500 West Olympic Boulevard, Suite 400
Los Angeles, California  90064

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28