John B. Quinn (Bar No. 90378)
johnquinn@quinnemanuel.com
Crystal Nix-Hines (Bar No. 2482073)
crystalnixhines@quinnemanuel.com
Eric Winston (Bar No. 202407)
ericwinston@quinnemanuel.com
Jennifer L. Nassiri (Bar No. 209796)
jennifernassiri@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Secured Creditor,
HILLAIR CAPITAL MANAGEMENT, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | CASE NO. 2:19-bk-14989-WB |
| SCOOBEEZ, et al.[1] | Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB |
| Debtors and Debtors in Possession. | Chapter 11 |
| Affects:<br><br>■ All Debtors<br><br>☐ Scoobeez, ONLY<br><br>☐ Scoobeez Global, Inc., ONLY<br><br>☐ Scoobur, LLC, ONLY | **HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO AMAZON'S MOTION FOR AN ORDER: (A) DETERMINING THAT THE AUTOMATIC STAY DOES NOT REQUIRE AMAZON TO UTILIZE DEBTORS' SERVICES, AND (B) MODIFYING THE AUTOMATIC STAY** |
| | Date:      February 25, 2020<br>Time:      10:00 am<br>Dept.:     1375<br>            United States Bankruptcy Court<br>            Edward Roybal Federal Building<br>            255 E. Temple Street<br>            Los Angeles, CA 90012 |
| | The Hon. Julia Brand |

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

## TABLE OF CONTENTS

Page

I.    INTRODUCTION.................................................................................................1

II.    BACKGROUND...............................................................................................3

    A.    Procedural History.................................................................................3

    B.    Discovery Proceedings...........................................................................5

    C.    Amazon Identifies DSPs for Potential Termination, and Decides to
        Terminate Scoobeez' Agreement on August 9, 2019 ..............................8

    D.    Debtors, Committee and Hillair Propose a Joint Plan............................10

III.    ARGUMENT ...................................................................................................11

    A.    Amazon Bears the Initial Burden of Demonstrating Cause for Relief from
        the Automatic Stay...............................................................................11

    B.    Amazon Cannot Satisfy its *Prima Facie* Burden of Establishing Cause ................14

        1.    Amazon's 2.0 DSP Business Model .............................................15

        2.    Performance by Scoobeez ...........................................................17

        3.    Lawsuits Involving Scoobeez.......................................................18

        4.    California Wage and Hour Issue ...................................................22

    C.    Case Law Supports Denial of Amazon's Motion.....................................22

IV.    THE HARM TO THE DEBTORS AND THE ESTATE OUTWEIGHS ANY
    HARM ALLEGEDLY SUFFERED BY AMAZON DUE TO THE AUTOMATIC
    STAY ..............................................................................................................23

    A.    Termination of the Amazon Agreement Will Cause Irreparable Harm:
        Decimation of Scoobeez' Business and Reorganization.........................24

    B.    Proposed Joint Plan Resolves Any Purported Concerns.........................25

V.    PREPETITION EVENTS HAVE NO BEARING ON AMAZON'S ALLEGED
    HARMS...........................................................................................................26

CONCLUSION ............................................................................................................27

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

# **TABLE OF AUTHORITIES**

Page

## **Cases**

*Bennie Hamilton v. Scoobeez, Inc., Amazon Logistics,*
  Los Angeles County Superior Court Case No. BC669835 ................................................. 9

*Brigade Leveraged Capital Structures Fund v. Garcia-Padilla,*
  217 F. Supp. 3d 508 (D.P.R. 2016) ............................................................... 12, 25

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),*
  912 F.2d 1162 (9th Cir.1990) ................................................................ 12

*Daghlian v. DeVry University, Inc.,*
  461 F. Supp. 2d 1121 (C.D. Cal. 2006) ........................................................ 12

*Docusign, Inc. v. Sertifi, Inc.,*
  468 F.Supp.2d 1305 (W.D. Wash. 2006) ....................................................... 12

*In matter of Shree Meldikrupa Inc.,*
  547 B.R. 862 (Bankr. S.D. Ga. 2016) ......................................................... 26

*In re Acis Capital Mgmt., L.P.,*
  2019 WL 406137 (Bankr. N.D. Tex. Jan. 31, 2019) ......................................... 24

*In re Aquarius Disk Services, Inc.,*
  254 B.R. 253 (Bankr. N.D. Cal. 2000) ........................................................ 14

*In re Brown,*
  311 B.R. 409 (E.D. Pa. 2004) ................................................................ 23

*In re Chama, Inc.,*
  265 B.R. 662 (Bankr. D. Del. 2000) .......................................................... 14

*In re Chan,*
  355 B.R. 494 (Bankr. E.D. Pa. 2006) ......................................................... 23

*In re Chatkin,*
  465 B.R. 54 (Bankr. W.D. Pa. 2012) ......................................................... 14

*In re Dabney,*
  45 B.R. 312 (Bankr. E.D. Pa. 1985) ...................................................... 13, 23

*In re Delaney-Morin,*
  304 B.R. 365 (B.A.P. 9th Cir. 2003) ..................................................... 12, 23

*In re El Paso Refinery, L.P.,*
  220 B.R. 37 (Bankr. W.D. Tex. 1998) ..................................................... 19, 21

*In re Ernst Home Ctr., Inc.,*
  209 B.R. 955 (Bankr. W.D. Wash. 1997) ....................................................... 18

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

*In re Forest Ridge, II, Ltd. P'ship*,
    116 B.R. 937 (Bankr. W.D.N.C. 1990) ........................................................ 13, 23

*In re Future Growth Enters., Inc.*,
    61 B.R. 469 (Bankr. E.D. Pa. 1986) .................................................................. 12

*In re Harner*,
    2014 WL 5308114 (Bankr. E.D. Cal. Oct. 15, 2014) ........................................ 13

*In re Harris*,
    85 B.R. 858 (Bankr. D. Colo. 1988) .................................................................. 13

*In re Hawker Beechcraft, Inc.*,
    2013 WL 2663193 (Bankr. S.D.N.Y. June 13, 2013) ........................................ 21

*In re Holly's, Inc.*,
    140 B.R. 643 (Bankr. W.D. Mich. 1992) ................................................ 13, 26, 27

*In re I. Burack, Inc.*,
    132 B.R. 814 (Bankr. S.D.N.Y. 1991) ............................................................... 14

*In re Kadlubek Family Revocable Living Tr.*,
    545 B.R. 660 (Bankr. D.N.M. 2016) .................................................................. 26

*In re Kim*,
    71 B.R. 1011 (Bankr. C.D. Cal. 1987) ............................................................... 22

*In re Lehman Bros. Holdings Inc.*,
    422 B.R. 407 (Bankr. S.D.N.Y. 2010) ............................................................... 21

*In re Lehman Brothers Holdings, Inc.*,
    435 B.R. 122 (S.D.N.Y. 2010) ..................................................................... 21, 22

*In re McMartin Indus., Inc.*,
    62 B.R. 718 (Bankr. D. Neb. 1986) ................................................................... 12

*In re Mense*,
    509 B.R. 269 (Bankr. C.D. Cal. 2014) ............................................................... 12

*In re Metro Transp. Co.*,
    82 B.R. 351 (Bankr. E.D. Pa. 1988) ............................................................ 11, 13

*In re Microwave Products of America, Inc.*,
    94 B.R. 967 (Bankr. W.D. Tenn. 1989) ............................................................. 14

*In re NewPage Corp.*,
    2017 WL 571478 (Bankr. D. Del. Feb. 13, 2017) ............................................. 21

*In re P.J. Clarke's Rest. Corp.*,
    265 B.R. 392 (Bankr. S.D.N.Y. 2001) ......................................................... 19, 25

*In re Pioneer Commercial Funding Corp.*,
    114 B.R. 45 (Bankr. S.D.N.Y. 1990) ................................................................. 14

*In re Plumberex Speciality Products, Inc.*,
    311 B.R. 551 (Bankr. C.D. Cal. 2004) ........................................................................ 11

*In re R.F. Cunningham & Co., Inc.*,
    355 B.R. 408 (Bankr. E.D.N.Y. 2006) .................................................................. 11, 14

*In re Shivshankar P'ship LLC*,
    517 B.R. 812 (Bankr. E.D. Tenn. 2014) ................................................................... 26

*In re Simasko Production Co.*,
    47 B.R. 444 (Bankr. D. Colo. 1985) ......................................................................... 14

*In re Tirey Distrib. Co.*,
    242 B.R. 717 (Bankr. E.D. Okla. 1999) .................................................................... 13

*In re Tri-National Development, Corp.*,
    2005 WL 6485990 (Bankr. S.D. Cal. June 15, 2005) ................................................ 19

*In re Tubular Techs., LLC*,
    348 B.R. 699 (Bankr. D.S.C. 2006) ........................................................................... 24

*In re U.S. Brass Corp.*,
    173 B.R. 1000 (Bankr. E.D. Tex. 1994) ..................................................................... 13

*In re U.S. Physicians, Inc.*,
    236 B.R. 593 (Bankr. E.D. Pa. 1999) ......................................................................... 13

*In re Velo Holdings Inc.*,
    475 B.R. 367 (Bankr. S.D.N.Y. 2012) .................................................................. 24, 25

*Jassim Addal v. Amazon.com, Inc; Scoobeez Inc.*,
    Los Angeles Superior Court Case No. BC719783 ....................................................... 9

*Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*,
    405 B.R. 915 (9th Cir. BAP 2009) ............................................................................. 12

*Milne v. Johnson (In re Milne)*,
    185 B.R. 280 (D.N.D. Ill. 1995) ................................................................................. 13

*Schmidt Indus., Inc. v. Schreiber (In re Schreiber)*,
    14 B.R. 1013 (Bankr. S.D. Fla. 1981) ....................................................................... 12

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
    907 F.2d 1280 (2d Cir. 1990) ............................................................................. 11, 17

*Unta Key, et al v. Scoobeez, et al.*,
    San Diego Superior Court Case No. 37-2017-00018285, consolidated with Case
    No. 37-2017-0039527 settled at a mediation on February 6, 2020 ............................. 9

### **Statutory Authorities**

11 U.S.C. § 362(d) .............................................................................................................. 14

11 U.S.C. § 362(d)(1) ......................................................................................................... 27

11 U.S.C. § 365 ................................................................................................................ 21

Hillair Capital Management, LLC ("Hillair"), the Debtors' senior secured creditor, hereby submits its supplemental opposition to the *Motion for an Order: (A) Determining that the Stay Does not Require Amazon to Utilize Debtor's Services and (B) Modifying the Automatic Stay* filed by Amazon Logistics, Inc. ("Amazon") on October 28, 2019 [Dkt. No. 393] (the "Stay Relief Motion").[2]  This Supplemental Opposition is based on evidence revealed through discovery among the parties and supported by the Declaration of Jennifer L. Nassiri (the "Nassiri Decl.").[3]

# I.    **INTRODUCTION**

This dispute raises a singular issue: whether Amazon should be permitted to override the protections of the Bankruptcy Code, gain relief from the automatic stay, and, within a month, terminate its contract with Scoobeez.  Leaving aside the callous nature of Amazon's request – destroying a business deemed high-performing by Amazon's own scorecards and employees, and terminating the jobs of nearly 900 workers in three states – Amazon cannot demonstrate cause to do so.

From high-level executives to line employees, Amazon witnesses have repeatedly confirmed that Amazon has suffered no harm, and will not suffer any harm, by continuation of the automatic stay.  This is particularly true since the Debtors (together with its principal constituents) have filed a reorganization plan that would permit Amazon to seek to part ways with the Debtors within months of confirmation without any fear of violating the automatic stay.  That Amazon needed "out" in October 2019 when it filed its Stay Relief Motion to escape some amorphous onslaught of harms is baseless.  Evidence obtained through discovery – which Amazon vigorously (and unsuccessfully) opposed – conclusively shows that the Debtors have actually *improved* their

---

[2]  Capitalized terms not defined herein have the meaning ascribed to them in Hillair's initial opposition to the Stay Relief Motion [Dkt. No. 418].

[3]  Amazon's counsel has informed Hillair that Amazon does not anticipate the hearing on February 25, 2020 to be an evidentiary hearing.  Hillair's position is that Amazon's motion failed to provide sufficient evidence to satisfy its initial burden to obtain relief from stay, but to the extent that the Court concludes there are factual matters to be resolved, Hillair requests an opportunity to cross-examine Amazon's witnesses in an evidentiary hearing.

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

1  performance during these chapter 11 proceedings, and ████████████████████

2  ████████████████  providing substantial economic benefit to Amazon.

3      Moreover, as is clear from the testimony of multiple witnesses, Amazon's alleged harms

4  are pretextual: they change from witness to witness; and they involve issues that Amazon either

5  caused on its own, ignored for months before filing its motion, do not pertain to Scoobeez, are

6  irrelevant to Amazon's business, were manufactured only after Amazon filed the Stay Relief

7  Motion, and, ultimately, do not constitute cause as a matter of law.  *None* of these rationales, alone

8  or together, provide *any* plausible basis for permitting Amazon to circumvent the protections

9  afforded debtors' estates in bankruptcy, and obtain immediate relief from the automatic stay.

10     Even the reason Amazon appears to have settled on after filing its Stay Relief Motion  –

11  that three prepetition employment-related litigation matters brought by drivers against Scoobeez

12  and Amazon were the "sole" basis for termination – cannot withstand ████████████████

13  ████████████████████████, never raised or filed any objections based on the

14  lawsuits in the bankruptcy proceedings for *six months,* and, perhaps most importantly, ████████

15  ████████████████████████████████████████████████

16  ████████████████████████  Amazon admitted that the ████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████  (which Amazon has categorically refused to produce).  In short, Amazon's utter failure to

20  demonstrate any plausible harm from continued business with Scoobeez while the automatic stay

21  is in effect is fatal to its efforts to show "cause" for relief, and its motion should be denied on that

22  basis alone.

23     Even if Amazon could somehow satisfy its initial burden to demonstrate cause (it cannot),

24  there is no doubt that the Stay Relief Motion must be denied because the harms to the Debtors'

25  estates and their creditors vastly outweigh any purported harms suffered by Amazon, including

26  destruction of an ongoing concern, displacement and loss of jobs for hundreds of workers, and

27  substantial loss of value to the Debtors' secured and unsecured creditors.  The Debtors, the

28  Creditors' Committee, and Hillair have jointly proposed a plan of reorganization that reorganizes

1   the Debtors, contemplates new senior leadership, gives unsecured creditors a meaningful recovery,

2   and provides Amazon certainty of when the Debtors will emerge from chapter 11 so that, if it

3   desires to continue to seek to terminate despite Scoobeez' excellent performance, it can do so

4   within six months of confirmation of the plan.  In light of this finite time-frame, and the magnitude

5   of the harms to the Debtors and other creditors if the bankruptcy protections are circumvented,

6   there is no simply basis to grant Amazon relief from the automatic stay.  For this reason, too,

7   Amazon's motion should be denied.

8        Finally, as discovery has further revealed, Amazon did violate the automatic stay, at least

9   until this Court's restraining order. ███████████████████████████████████████████

10  ███████████████████████████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████████████████████

16  ███████████████████████████ This reduction in routes has unfairly reduced Scoobeez'

17  revenue in violation of the automatic stay.  At the same time, ████████████████████

18  ████████████████████████████████████████ further militating in favor of denial of

19  Amazon's motion as a matter of equity.

20       For all of the reasons identified in Hillair's initial Opposition and in this Supplement, this

21  Court should deny the Stay Relief Motion.

22  **II.    BACKGROUND**

23       **A.    Procedural History**

24       On October 7, 2019, representatives of Amazon informed the Debtors and Hillair that

25  Amazon was terminating the Amazon Agreement and was providing the 30-day notice provided

26  for under the contract.  Terminating the Amazon Agreement would end the Debtors' business as a

27  going concern, as everyone, including Amazon, understood.  Weeks later, Amazon filed the Stay

28  Relief Motion, seeking this Court's permission to terminate the Amazon Agreement.  That

1   Amazon would unilaterally announce it was terminating the Amazon Agreement was surprising,

2   given that six days earlier, Amazon had filed an opposition to the Debtors' request to assume and

3   assign the Amazon Agreement, but did ***not*** indicate that the Amazon Agreement should be

4   terminated [Dkt. No. 349].  Moreover, the Debtors' performance since the Petition Date had been

5   overwhelmingly "great," "fantastic" and "fantastic plus," – the highest rankings on Amazon's

6   scorecards – and Amazon and all of its DSPs were gearing up for the "peak" period between the

7   2019 Thanksgiving and Christmas holidays.

8         On October 28, 2019, Amazon filed its opposition to the TRO Application ("<u>TRO Opp.</u>")

9   [Adv.Dkt. 10].  The only evidence submitted in support of the TRO Opp. was the Declaration of

10   James Wilson (the "<u>Wilson Decl.</u>"), which stated that Amazon decided to sever its relationship

11   with Scoobeez for only two reasons: (1) the existence of multiple prepetition wage and hour

12   litigation matters and Scoobeez' alleged failure to defend or indemnify Amazon in that litigation,

13   and (2) the DSPs currently being considered for new contracts with Amazon had attributes that

14   Scoobeez purportedly does not.  *See* TRO Opp. at 10-13.  Wilson, who is a relatively senior

15   manager at Amazon, and the company's 30(b)(6) witness, did not identify ***any*** other reasons.[4]

16         The same day that Amazon filed the TRO Opp. and after the bankruptcy case had been

17   pending for six months, Amazon filed the Stay Relief Motion.[5]  In support of the Stay Relief

18   Motion, the only evidence Amazon provided was a Request for Judicial Notice regarding the

19   contents of the Declaration of Vanessa Delaney ("<u>Delaney Declaration</u>"), which had been filed in

20   support of *Amazon Logistics, Inc.'s Objection to Assumption and Assignment of Delivery Provider*

21   *Terms of Service Work Order* [Dkt. No. 349].  The Delaney Declaration merely authenticated the

22   Amazon Agreement and identified the existence of three prepetition litigation cases which had

23   named Amazon as a co-defendant with the Debtors, and the Debtors' purported failure to honor

24

25       [4]  On October 28, 2019, the Court granted the Debtors' request for a temporary restraining
     order and ordered Amazon to maintain the status quo level of routes provided to the Debtors.  That
26   direction remains in effect.

27       [5]  Amazon also sought a determination from this Court that it could reduce Scoobeez' routes
     without violating the stay.
28

prepetition indemnification obligations related to that litigation.  *See* Dkt. No. 349 at ¶5.[6]  Amazon

did not submit any other evidence in support of the Stay Relief Motion.  Notably, Amazon failed

to describe any actual harm it had suffered by having the Debtors remain a DSP in its "last mile"

delivery program.  It also did not indicate that it had any concerns with the Debtors' prepetition

management or that it required discovery from the Debtors or Hillair.

Hillair immediately served discovery relating to the relief sought in the Stay Relief Motion

so that it could prepare its opposition, which Amazon tried to quash.  On November 4, 2019, this

Court denied the Motion to Quash and entered an order requiring Amazon to cooperate and

respond to the Hillair Discovery [Dkt. No. 423].  After Hillair, the Debtors and Committee filed

their initial oppositions to the Stay Relief Motion on November 11, 2019, Amazon filed an

omnibus reply in support of the Stay Relief Motion (the "Stay Relief Reply") [Dkt. No. 430].

Amazon submitted a new declaration from Wilson.  Rather than address the harm being suffered

as a result of the existence of prepetition litigation matters and the purported failure of the Debtors

to indemnify Amazon, Wilson's late declaration offered a new set of excuses, namely that: (1) the

perpetuation of the automatic stay allegedly imposes lost opportunity costs on Amazon; and (2)

the automatic stay forces Amazon to do business with what it believes to be a sub-par performer.

*See* Stay Relief Reply at 15-17.

**B.    Discovery Proceedings**

After this Court denied Amazon's Motion to Quash, Hillair proceeded with seeking

discovery.  Amazon then decided to engage in retaliatory discovery.  On November 18, 2019,

Amazon served discovery on Hillair and Scoobeez, even though it had previously argued no

discovery was needed (much less discovery of the Debtors or Hillair).

Though the parties have largely avoided this Court's intervention on discovery matters,

Amazon still has failed to produce several categories of documents.  Among other documents

---

[6]  On October 29, 2019, Hillair served a notice for Delaney's deposition.  In response, counsel
for Amazon informed Hillair that Delaney would only testify to the existence of the agreement
which was not in dispute by any of the parties. *See* Nassiri Decl., Exh. A.  As a result, Hillair
agreed to defer deposing her.

1  Amazon has refused to produce, Amazon has claimed its DSP Non Compliance Enforcement

2  Policy is a privileged document, even though █████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████████████████

4  ███████████  *See* Nassiri Decl. at Exh. B; Exh. F (Richardson Tr.) at 164:13-167:10.

5         Hillair's discovery focused extensively on the excuses Amazon has raised to support its

6  demand for relief from stay now.  That discovery has shown that Amazon's excuses are entirely

7  without merit.

8         **C.      Discovery Demonstrates That Amazon Lacks Cause**

9         Scoobeez participated in the initial Amazon program for last mile DSPs, which is referred

10  to as the 1.0 program ("1.0 Program").  In June 2018, Amazon launched a new program for

11  contracting with DSPs.  According to Amazon, the new program (the "2.0 Program") was

12  intended to cater to single-station DSPs with the "owner [] specifically invested in working in the

13  stations with their employees."  Nassiri Decl., Exh. C (McCabe Tr.) at 23:6-23, 60:9-14.  In other

14  words, the 2.0 Program was supposed to make it impossible for a DSP to operate in more than one

15  station.

16         Though it may have been the intent of the 2.0 Program to limit DSPs to operate out of a

17  single station (the "2.0 DSPs"), ████████████████████████████████████████████████

18  ████████████████████████████████████  Nassiri Decl., Exh. D (Wilson Tr.) at 98:1-

19  102:24.  Amazon offered all existing DSPs, including Scoobeez, the opportunity to migrate to the

20  2.0 program when it was first launched.  Of the approximately ███ 1.0 DSPs working with

21  Amazon in June 2018, about ███ DSPs declined to join the 2.0 program.  *Id.* at 57:12-58:17.

22  Scoobeez informed Amazon that it desired to postpone migration until after the 2018 "peak"

23  holiday period.  Nassiri Decl., Exh. E (Ojeda Tr.) at 159:9-160:11; Exh. G (Ojeda Ex. 12).

24         In January 2019, without any notice or indication that its prior offer had been revoked,

25  ████████████████████████████████████████████  Nassiri Decl., Exh. D (Wilson Tr.) at 106:21-107:18.[7]

26  ────────────────────

27     [7]  According to David Ojeda, ██████████████████████████████████  *See* Nassiri
Decl., Exh. E (Ojeda Tr.) at 161:13-161:15.

28

1 ████████████████████████████████████████████████████

2 ███████████████████████████ Nassiri Decl., Exh. D (Wilson Tr.) at 108:17-109:20;

3 Exh. G (Ojeda Ex. 12).  Even throughout February 2019, Scoobeez thought it had an agreement

4 with Amazon to postpone the migration until after the end of 2018, and, once the year ended,

5 would be entitled to complete the paperwork for the previously offered 2.0 contract.  The Amazon

6 manager in charge of all DSPs for North America received these e-mails and ████████████

7 ███████████████████████████████████████ Nassiri Decl., Exh. G

8 (Ojeda Ex. 12); Exh. E (Ojeda Tr.) at 161:16-162:18.[8]  At the time Scoobeez was seeking to

9 migrate into the 2.0 program, it was providing excellent service to Amazon, and had even assisted

10 Amazon with the successful launch of a new station in Pasadena, California, including advising

11 new DSPs (which presumably were 2.0 DSPs).  *See* Nassiri Decl. Exh. E (Ojeda Tr.) at 157:12-

12 159:8.

13     To this day, the 1.0 DSPs that migrated to the 2.0 program ("Migrated DSPs") continue to

14 operate out of multiple stations, notwithstanding that the supposed purpose of the 2.0 Program is

15 for each DSP to operate in a single station.  Nassiri Decl., Exh. D (Wilson Tr.) at 96:21-25.  In

16 addition, ██████ 1.0 DSPs continue to operate in Amazon's "last mile" delivery program,

17 further demonstrating that Amazon suffers no harm simply by the fact that Scoobeez is a 1.0 DSP.

18 Nassiri Decl., Exh. D (Wilson Tr.) at 58:9-13.

19     Despite being (improperly) denied the chance to join the 2.0 Program, Scoobeez has

20 continued to operate successfully as a 1.0 DSP, apparently to Amazon's satisfaction.  When

21 Scoobeez filed these chapter 11 cases, Scoobeez had resolved all outstanding compliance issues,

22 and Amazon has not substantiated any other compliance concerns to Scoobeez since.  Nassiri

23 Decl., Exh. F (Richardson Tr.) at 146:24-147:18, 208:8-11.

24 _____

25     [8]  The evidence strongly suggests that Amazon had offered to Scoobeez to migrate to the 2.0

26 Program and never communicated a withdrawal of that offer prior to the February 4 e-mail
indicating that Scoobeez had accepted the offer to migrate and was trying to finalize the

27 paperwork.  Importantly, the 2.0 DSP contract ██████████████ Had Scoobeez been able to
migrate to the 2.0 Program ████████████████████████████████████████

28

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

1    Amazon's weekly scorecard ratings of Scoobeez' performance have improved dramatically

2    post-petition.  Since the end of June 2019, more than 80% of Scoobeez' scorecards have been

3    "Great," "Fantastic" or "Fantastic Plus," the highest ratings given.  In fact, since September 2019,

4    *after* Amazon ███████████████████████████████████ Amazon's scorecards

5    for Scoobeez for each of the 12 stations have consistently earned mostly "Fantastic" or better

6    ratings—a score that Amazon's senior operation manager in Texas, who focuses solely on DSPs,

7    testified ██████████████. Nassiri Decl., Exh. E (Ojeda Tr.) at 73:21-23; Exh. H (Scoobeez'

8    performance summary); Exh. I (Scoobeez' scorecards).  This same manager remarked that

9    Scoobeez has been one of the largest DSPs and has performed superior services.  Nassiri Decl.,

10    Exh. E (Ojeda Tr.) at 69:4-12, 72:1-:4, 146:3-4.

11    Scoobeez' work has been so superior, that in the fourth quarter of 2019, ████████

12    ████████████████████████████ *See* Nassiri Decl., Exhs. J, K (Kaufman Exs.

13    17, 18).  If Scoobeez was such a poorly performing DSP, it would make no sense for Amazon to

14    offer it this business.

15    **D.    Amazon Identifies DSPs for Potential Termination, and Decides to Terminate**

16    **Scoobeez' Agreement on August 9, 2019**

17    In June 2019, Micah McCabe, Amazon's senior program manager of network health,

18    ████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████

20    ████████████████████████████████████████████████████

21    ████████████████████████████████████████████████████

22    Nassiri Decl., Exh. C (McCabe Tr.) at 33:6-37:1.

23    However, ████████████████████████████████████████

24    ████████████████████████████████ Nassiri Decl., Exh. L

25    (McCabe Ex. 18) at AMAZON_H002462. ██████████████████████

26    ████████████████████████████████████

27    ██████████████ Nassiri Decl., Exh. C (McCabe Tr.) at 48:2-50:7.  In

28

-8-

1  other words ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nassiri Decl, Exh. L (McCabe Ex. 18) at AMAZON_H002462 through -463.

6  Although Scoobeez was involved in three employment-related actions, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮[9]▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nassiri Decl, Exh. L. (McCabe Ex. 18) at

10  AMAZON_H002460 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nassiri Decl., Exh. D (Wilson Tr.) at 324:11-17.[10]

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nassiri Decl., Exh. L

15  (McCabe Ex. 18) at AMAZON_H002460; Exh. C (McCabe Tr.) at 39:22-40:10, 42:4-44:3; Exh.

16  D (Wilson Tr.) at 226:15-227:6.  David Ojeda, who was overseeing the Texas stations where

17  Scoobeez operated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and at the same

18  time was referring to Scoobeez as Amazon's "partner."  Nassiri Decl., Exh. E (Ojeda Tr.) at

19  110:18-111:17; Exh. M (Ojeda Ex. 13).  It was not until October 7, 2019 that Amazon

20

21  [9]  As of the submission of this Supplement, the status of the three actions referred to in the
Delaney Declaration is as follows:  (1) *Bennie Hamilton v. Scoobeez, Inc., Amazon Logistics,* Los

22  Angeles County Superior Court Case No. BC669835 was dismissed prepetition on December 20,
2018; (2) *Jassim Addal v. Amazon.com, Inc; Scoobeez Inc.,* Los Angeles Superior Court Case No.

23  BC719783 dismissed Scoobeez post-petition on or about September, 2019, and *Unta Key, et al v.*
*Scoobeez, et al.,* San Diego Superior Court Case No. 37-2017-00018285, consolidated with Case

24  No. 37-2017-0039527 settled at a mediation on February 6, 2020.  Nassiri Decl. ¶ 16.

25  [10]  As recently as February 11, 2020, in correspondence to counsel for Hillair, Amazon's
counsel wrote, "Amazon has produced a significant volume of discovery that conclusively

26  demonstrates that Amazon decided to terminate its contract with Scoobeez, along with more than a
dozen other DSPs, as part of a systemic review of its DSP population due to Scoobeez' history of

27  wage and hour litigation.  Nassiri Decl., Exh. N.

28

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

1    communicated to Scoobeez that the Amazon Agreement would be terminated. Just one week

2    before, on October 1, 2019, Amazon filed its objection to the assumption of the assignment of the

3    Amazon Agreement to Hillair in connection with the Sale Motion [Dkt. 349]. While Amazon

4    referenced unpaid prepetition indemnification claims and lack of adequate assurances of future

5    performance from Hillair as a basis for opposing assumption and assignment (i.e., default had not

6    been cured), Amazon neglected to inform the Court and Scoobeez that it was objecting to the

7    assignment because it no longer wanted Scoobeez in its network of DSPs, regardless of its owner.

8    **E.    Debtors, Committee and Hillair Propose a Joint Plan**

9    As first mentioned in their oppositions to the Stay Relief Motion, the Debtors, the

10    Committee and Hillair have been working on a plan of reorganization process. On February 14,

11    2020, the Debtors filed the *Chapter 11 Joint Plan of Reorganization, as Proposed by the Debtors,*

12    *Hillair and the Official Committee of Unsecured Creditors* (the "Joint Plan") [Dkt. No. 599]. The

13    Joint Plan allows the Debtors to emerge from chapter 11 in 2020 and continue operating as a going

14    concern. The Joint Plan also resolves all of the issues between the Debtors, Hillair, and the

15    Committee, and presents the greatest opportunity for distributions to unsecured creditors. The

16    estates, and ultimately, a creditors' litigation trust, will receive $1.5 million in cash to (i) cover

17    existing professional fee claims; (ii) fund the commencement of avoidance action litigation claims;

18    and (iii) provide a distribution to unsecured creditors. The unsecured creditors will also receive a

19    share of the net proceeds of the present litigation against Amazon, as well as a 20% equity interest

20    in the reorganized debtors. In exchange for its secured claim, Hillair shall receive (i) an 80%

21    equity interest in the reorganized debtors; (ii) a $3.0 million claim secured by the assets of the

22    reorganized debtors; (iii) the first $5.0 million of the net proceeds from the Amazon litigation, plus

23    75% of the net proceeds in excess of $5.0 million; (iv) a distribution of excess net working capital;

24    and (v) continued weekly payments through the effective date of the chapter 11 plan.

25    Among other conditions to the effectiveness of the Joint Plan after confirmation, the Joint

26    Plan becomes effective on the earlier of (a) the entry of a final, non-appealable order resolving the

27    existing Amazon Litigation; or (b) the passage of a period of time at Hillair's discretion not to

28    exceed six months following the Confirmation Date. This provides certainty to Amazon that,

1    under any circumstances, the automatic stay will not hinder Amazon from exercising its non-

2    bankruptcy rights before the end of 2020.

3    **III.    ARGUMENT**

4        **A.    Amazon Bears the Initial Burden of Demonstrating Extraordinary**

5              **Circumstances That Establish Cause for Relief from the Automatic Stay**

6        As bankruptcy courts have repeatedly made clear, the automatic stay afforded by

7    Bankruptcy Code section 362 is designed to maximize the value of the bankruptcy estate, and to

8    give chapter 11 debtors a "breathing spell" to develop a reorganization plan free from interference

9    from creditors. *In re Plumberex Specialty Products, Inc.,* 311 B.R. 551, 556 (Bankr. C.D. Cal.

10   2004). Because of the importance of preserving the status quo, protecting debtors from adverse

11   creditor actions and ensuring equality among competing creditors, an unsecured creditor's ability

12   to circumvent the purposes and protections of the automatic stay are extremely limited and

13   requires a showing of "extraordinary circumstances." *In re Chan*, 355 B.R. 494, 499 (Bankr. E.D.

14   Pa. 2006); *see also In re R.F. Cunningham & Co., Inc.*, 355 B.R. 408, 413 (Bankr. E.D.N.Y. 2006)

15   ("[t]he general principle is that "unsecured claims should not be granted relief from the stay

16   because to do so would result in a violation of one of the fundamental concepts of bankruptcy law;

17   that there should be an equality of distribution among creditors.") (citation omitted).

18       First, the party seeking relief from stay bears the burden of establishing a *prima facie* case

19   demonstrating "cause" for relief under Section 362(d)(1). *See Plumberex,* 311 B.R. at 557. This

20   showing requires the moving party to establish a "factual and legal right to the relief that it

21   seeks." 3 Collier on Bankruptcy ¶ 362.10, at 362-113 (Alan N. Resnick & Harry J. Sommer eds.,

22   15th ed. Rev.); *see also In re Metro Transp. Co.,* 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (the

23   burden of producing evidence to prevail on a motion for relief from stay is on the movant). If the

24   movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay must be

25   summarily denied. *See Plumberex,* 311 B.R. at 557; *see also Sonnax Indus., Inc. v. TriComponent*

26   *Prods. Corp. (In re Sonnax Indus., Inc.)* 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails

27   to make an initial showing of cause… the court should deny relief without requiring any showing

28   from the debtor that it is entitled to continued protection."). In fact, pursuant to L.B.R. 9013-

1  1(g)(4), "[n]ew arguments or matters raised for the first time in reply documents will not be

2  considered." *Accord Daghlian v. DeVry University, Inc.*, 461 F. Supp. 2d 1121, 1143 n.37 (C.D.

3  Cal. 2006) ("In general, '[i]t is improper for the moving party to "shift gears" and introduce new

4  facts or different legal arguments in the reply brief than [those that were] presented in the moving

5  papers.'"); *Docusign, Inc. v. Sertifi, Inc.*, 468 F.Supp.2d 1305, 1307 (W.D. Wash. 2006) (striking

6  new arguments and evidence introduced in reply and stating "[i]t is well established that new

7  arguments and evidence presented for the first time in Reply are waived").

8    Although neither Bankruptcy Code section 362 nor its legislative history defines "cause,"

9  and a determination is made based on the particularized facts of each case, courts "critically

10  analyz[e] the nature and extent of the harm that [the movant] allegedly face[s] if [its] requested

11  relief is denied." *Brigade Leveraged Capital Structures Fund v. Garcia-Padilla*, 217 F. Supp. 3d

12  508, 525 (D.P.R. 2016); *see also In re Mense*, 509 B.R. 269, 278 (Bankr. C.D. Cal. 2014)

13  ("'Cause' has no clear definition and is determined on a case-by-case basis.") (internal citation

14  omitted).  In determining whether cause has been satisfied, courts have considered factors such as

15  whether the creditor's interest in the estate is being nullified by the debtor's actions, whether the

16  debtor has failed to adhere to its obligations during the automatic stay, and the debtor's failure to

17  effectuate a reorganization plan.)[11]

18    In contrast, courts have denied motions for relief from the automatic stay where the

19  creditor cannot show it is being harmed by the imposition of the automatic stay and the debtor's

20  estate is otherwise complying with its obligations.  *See In re Holly's, Inc.*, 140 B.R. 643, 690

21  (Bankr. W.D. Mich. 1992) (prepetition mismanagement is not sufficient "cause" for stay relief

22    [11]  *See., e.g.*, *In re Future Growth Enters., Inc.,* 61 B.R. 469, 472 (Bankr. E.D. Pa. 1986)

23  ("cause" to lift stay exists when debtor is significantly in default under lease and has failed to
   successfully move for assumption); *In re McMartin Indus., Inc.,* 62 B.R. 718, 723 (Bankr. D. Neb.

24  1986) ("cause" exists to grant relief from the automatic stay when debtor fails to pay post-petition
   taxes, fails to disclose a bank account on its bankruptcy schedules, and fails to notify creditor of
   the existence of the account); *Schmidt Indus., Inc. v. Schreiber (In re Schreiber),* 14 B.R. 1013,

25  1014 (Bankr. S.D. Fla. 1981) (failure to file plan and comply with requirements of the Code

26  constitutes "cause" for relief from stay); *In re Delaney-Morin*, 304 B.R. 365, 370 (B.A.P. 9th Cir.

27  2003) (debtor's failure to make regular mortgage payments after filing for bankruptcy constitutes
   "cause" for relief from automatic stay).

28

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

1  when there are major institutional differences between the prepetition management and the post-

2  petition management); *In re Forest Ridge, II, Ltd. P'ship*, 116 B.R. 937, 946 (Bankr. W.D.N.C.

3  1990) ("cause" is not found when the property is not being presently mismanaged and its

4  performance has, in fact, improved during the pendency of the case); *In re Dabney*, 45 B.R. 312,

5  313-14 (Bankr. E.D. Pa. 1985) (denying stay relief motion for insufficient "cause" because,

6  although debtor had failed to fulfill prepetition obligations, the court reasoned that ordering the

7  debtor to comply with the prepetition obligations would be sufficient to protect the creditor, rather

8  than lifting the stay altogether).

9          Even if a creditor satisfies its initial burden, that does not mean "cause" has been shown to

10  grant relief from stay.  Courts engage in a balancing of harms, considering such factors as: (1) an

11  interference with the bankruptcy; (2) good or bad faith of the debtor; (3) injury to the debtor and

12  other creditors if the stay is modified; (4) injury to the movant if the stay is not modified; and (5)

13  the relative proportionality of the harms from modifying or continuing the stay.  *See, e.g. In re*

14  *Harner*, 2014 WL 5308114, at *2 (Bankr. E.D. Cal. Oct. 15, 2014); *In re Tirey Distrib. Co.,* 242

15  B.R. 717, 723 (Bankr. E.D. Okla. 1999); *Milne v. Johnson (In re Milne),* 185 B.R. 280, 283

16  (D.N.D. Ill. 1995); *see also In re Harris,* 85 B.R. 858, 860 (Bankr. D. Colo. 1988) (holding that

17  vacating the automatic stay is appropriate where "no great prejudice will result to the debtor" and

18  "the hardship to the creditor resulting from the continuation of the stay considerably outweighs the

19  hardship to the debtor by modification of the stay").

20          Unsecured creditors, like Amazon here, have a particularly difficult task obtaining relief

21  from the automatic stay; courts may grant relief only where a movant demonstrates that the

22  balance of hardships decidedly tip in its favor.  *See Metro Transp. Co.,* 82 B.R. at 353; *In re U.S.*

23  *Brass Corp.,* 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("[r]elief from the automatic stay will

24  be granted to an unsecured creditor... only when the 'balance of the hardships' tips in the

25  creditor's favor."); *In re U.S. Physicians, Inc.,* 236 B.R. 593, 596, 601 (Bankr. E.D. Pa. 1999)

26  (denying relief from stay because the physicians, as unsecured creditors, could not tip the balance

27  of hardships in their favor merely by showing a perceived entitlement to specific performance.

28  The court noted that relief for unsecured creditors is rarely granted in bankruptcy cases under 11

-13-

1  U.S.C. § 362(d)).  The challenge for unsecured creditors is that generally they are not entitled to

2  be paid on account of their claims (directly or indirectly) other than through a plan or through

3  distributions in a chapter 7 case.

4        Only in extraordinary circumstances will an unsecured creditor be allowed to jump the line

5  ahead of other unsecured creditors and be granted relief from the stay.  *See In re Chatkin,* 465 B.R.

6  54, 60 (Bankr. W.D. Pa. 2012)*; In re I. Burack, Inc.,* 132 B.R. 814, 817 (Bankr. S.D.N.Y. 1991);

7  *In re Pioneer Commercial Funding Corp.,* 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).  The general

8  principle is that "unsecured claims should not be granted relief from the stay because to do so

9  would result in a violation of one of the fundamental concepts of bankruptcy law; that there should

10  be an equality of distribution among creditors."  *R.F. Cunningham & Co.*, 355 B.R. at 413

11  (citation omitted).

12        Further, "[t]"here is no statutory requirement that unsecured creditors receive adequate

13  protection, and the lack of adequate protection does not entitle an unsecured creditor to relief from

14  the stay."  *See R.F. Cunningham & Co.*, 355 B.R. at 412-13 (citing to *In re Aquarius Disk*

15  *Services, Inc.,* 254 B.R. 253, 260 (Bankr. N.D. Cal. 2000)).  Amazon is merely an unsecured

16  creditor – it is not a creditor with a lien on any property, it has not licensed any intellectual

17  property to the Debtors that requires special protection, and it is not a landlord that has leased real

18  property to the Debtors.  It is also the counterparty to an executory contract, but if Scoobeez fails

19  to perform, Amazon may be entitled to an administrative expense under Bankruptcy Code sections

20  503(b) and 507, and may seek to compel assumption or rejection.  *See, e.g., In re Microwave*

21  *Products of America, Inc.,* 94 B.R. 967, 970 (Bankr. W.D. Tenn. 1989) (seller who failed to file

22  UCC-1 was an unsecured creditor not entitled to adequate protection); *In re Simasko Production*

23  *Co.,* 47 B.R. 444, 448–49 (Bankr. D. Colo. 1985) (unsecured creditor has no interest for which

24  adequate protection must be provided); *In re Chama, Inc.*, 265 B.R. 662, 669 (Bankr. D. Del.

25  2000) (bank, as a general unsecured creditor, is not entitled to any adequate protection).

26        **B.        Amazon Cannot Satisfy its *Prima Facie* Burden of Establishing Cause**

27        As indicated above, Amazon's purported harms from continuation of the automatic stay

28  are a moving target.  *See supra* at 3.  In its briefing, subsequent discovery, and emails from

1   counsel, Amazon has asserted different bases for "cause," hoping something will stick.  None do.

2   To the contrary, alone or together, none of Amazon's rationales even remotely suggest that

3   Amazon is being harmed by continuation of the automatic stay.  We address each rationale in turn:

4                    1.    Amazon's 2.0 DSP Business Model

5          Amazon erroneously claims that Scoobeez' alleged lack of alignment with Amazon's 2.0

6   business model is causing it harm.  In its Stay Relief Reply, Amazon argued for the first time that

7   the automatic stay prevents "Amazon from utilizing a DSP of its choice," and that Scoobeez "does

8   not fit [Amazon's desired] business model."  Stay Relief Reply at 8.  In depositions, Amazon

9   witnesses doubled-down on this theory, noting that Scoobeez is a 1.0 DSP with multiple stations,

10  while Amazon's  2.0 business model is a single owner-to-station model.  Although these witnesses

11  could not articulate with any precision the differences in the two models, Nassiri Decl., Exh. E

12  (Ojeda Tr.) at 54:25-55:10, and its corporate designee stated ████████████████████████

13  ██████████████████ Nassiri Decl., Exh. D (Wilson Tr.) at 98:16-24, Amazon nonetheless claims

14  that Amazon is suffering from lost business opportunities as a result of being tied to a 1.0 DSP.

15  Nassiri Decl., Exh. D (Wilson Tr.) at 221:14-223:15.  This assertion belies the facts, and certainly

16  cannot establish harm sufficient for relief from the automatic stay.

17         First, as indicated above, when Amazon invited Scoobeez and other DSPs to migrate to the

18  2.0 program in 2018, it never stated that entering the program was a prerequisite for remaining a

19  DSP.  As a result, more than ████████ of the DSPs in Amazon's network declined to

20  immediately enter into the program. Nassiri Decl., Exh. D (Wilson Tr.) at 58:9-59:12.  Had

21  Amazon informed Scoobeez about the importance of the 2.0 model it now trumpets in this

22  litigation, Scoobeez (and the other 1.0 DSPs) obviously would have responded differently.

23         Second, with Amazon's full knowledge and (at least tacit) consent, Scoobeez indicated that

24  it planned to delay its transition to the 2.0 Program until after the peak holiday period in 2018.

25  But in January 2019, without any notice or revocation of its prior ████████████████████████

26  ████████████████ Nassiri Decl., Exh. E (Ojeda Tr.) 160:24-162:18.  Even after Scoobeez indicated

27  it had *accepted* the 2.0 Program contract and was trying to finalize the paperwork, Amazon cagily

28  refused to respond to Scoobeez.  Nassiri Decl., Exh. E (Ojeda Tr.) 162:19-165:7.

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

1    In any case, Amazon's claim that the 2.0 program it integral to its business model is

2    contravened by Amazon's record.  To this day, there are approximately ███ Migrated DSPs of

3    which some continue to operate out of several stations.  Nassiri Decl., Exh. D (Wilson Tr.) 96:21-

4    97:11.  In addition, ████████ 1.0 DSPs that never migrated continue to operate in Amazon's "last

5    mile" delivery program, undermining Amazon's claim that it is suffering harm simply because

6    Scoobeez is a 1.0 DSP.  In short, Amazon has failed to identify any precise or quantifiable

7    "opportunity cost" that has been or will be lost as a result of maintaining the status quo of its

8    relationship with Scoobeez, particularly since Amazon maintains approximately ████████ 1.0

9    DSPs in its network, several of which ██████████████████████████████████

10   Nassiri Decl., Exh. L (McCabe Ex. 18) at AMAZON_H002453.

11       Moreover, if Amazon truly feared consequences from maintaining 1.0 DSPs, then

12   presumably Amazon would have terminated Scoobeez prepetition.  Again, Amazon did nothing,

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████ told Scoobeez about the termination in

15   October 2019.  Any purported harm resulting from Amazon's refusal to permit Scoobeez to

16   transition to a 2.0 DSP is entirely of its own making, and is insufficient to demonstrate cause for

17   relief.

18       In a related theory, Amazon witnesses have claimed that its inability to terminate under the

19   Amazon Agreement has undermined business certainty.  Specifically, Micah McCabe, who was in

20   charge of the exit program, stated that, ████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████████ Nassiri Decl., Exh. C (McCabe Tr.) at 120:6-

23   121:18.  Although McCabe acknowledged that he did ████████████████████████

24   ████████████████████████████████████████████████████████████

25   ████████████████████████████████████ *Id.* Similarly,

26   Wilson stated that a ███████████████████████████████████████

27   ████████████████████████████████████████████████████████████

28   ████████████████████████████████████

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

1    ████████████  Nassiri Decl., Exh. D (Wilson Tr.) at 220:25-223:5.  However, not only could

2    Wilson not identify any such businesses, but once again, this purported business uncertainty was

3    created by Amazon's objection to the transfer and assignment of Scoobeez' contract to Hillair, and

4    is not the product of any harm caused by Scoobeez itself.  In any case, any purported "tension" has

5    not affected Scoobeez' professionalism or performance, as evidenced by the high ratings in the

6    scorecards Amazon prepared for Scoobeez.

7        2.    Performance by Scoobeez

8        Amazon has asserted that Scoobez was a "sub-par performer" that is undermining

9    Amazon's delivery services.  Stay Relief Reply at 9.  Indeed, the Wilson Declaration submitted in

10   support of the Stay Relief Reply[12] misleadingly cited scorecard statistics in an attempt to color

11   Scoobeez' record as one of a poorly performing DSP.  Nassiri Decl., Exh. D (Wilson Tr.) at

12   198:24- 202:15 (explaining that percentiles represent ranking, so that 49.58% means Scoobeez is,

13   at worst, "virtually average").

14       However, as a complete review of the produced scorecards demonstrates, Scoobeez'

15   performance was well above average, and has thrived during the period of the automatic

16   stay.  Since September 2019 alone, Scoobeez' performance scores have consistently reached

17   Amazon's highest and most difficult to attain ratings.  Amazon's  compliance director further

18   acknowledged that Scoobeez' legal and regulatory compliance has been similarly exemplary.  *See*

19   *supra* at 8-9.  Even when viewed through Amazon's ████████████ Scoobeez

20   outperforms than almost all of the dozens of other DSPs identified for termination, ████████████

21   ████████████  Nassiri Decl., Exh. L (McCabe Ex. 18) at AMAZON_H002453.  Indeed,

22   _____

23       [12]   The Wilson Declaration submitted in connection with the Stay Relief Reply was untimely;
     everything therein was something Amazon knew prior to filing the Stay Relief Motion.  This
24   Court should disregard declarations submitted for the first time  in a reply brief, when such a
     declaration should have been submitted in support of the Stay Relief Motion.  Amazon's failure to
25   provide sufficient evidence with its initial pleading is sufficient in itself to deny Amazon's request
     for relief.  *See Sonnax Indus.,* 907 F.2d at 1285 ("[s]ection 362(d)(1) requires an initial showing of
26   cause by the movant… [i]f the movant fails to make an initial showing of cause, however, the
     court should deny relief without requiring any showing from the debtor that it is entitled to
27   continued protection.").

28

1    Scoobeez' work has been sufficiently superior that in the fourth quarter of 2019, leading to

2    ██████████████████████████████████████████████████ *See Supra* at 9.  If

3    Amazon actually believed Scoobeez was a poorly performing DSP, it would make no sense to

4    expand the scope of services that Scoobeez would perform.

5         In light of this excellent record, Amazon cannot show that Scobeez' performance is

6    harming Amazon in any way, much less to a degree sufficient to lift the automatic stay.  This

7    conclusion is particularly compelled by the fact that Amazon witnesses admitted that ████████

8    ██████████████████████████████████████ Nassiri Decl., Exh. E (Ojeda Tr.) at

9    67:9-19; Exh. C (McCabe Tr.) at 107:11-108:3; Exh. D (Wilson Tr.) at 223:17-224:4.  In fact,

10   █████████████████████████████████████████████████████████████████

11   █████████ If a DSP's performance ██████████████████████████████████

12   ████ it can hardly be used as evidence of harm for relief from stay – and clearly not when that

13   performance is superior to more than half of the other DSPs and moving in an upward trajectory.

14        Moreover, Scoobeez has timely and correctly performed all of its post-petition obligations

15   in accordance with the terms of the Agreement, and Amazon has not suggested to the contrary.  A

16   debtor who timely and correctly performs its obligations under an agreement post-petition has

17   adequately protected the contract counter-party's rights in the contract.  Hillair Opp. at 15; *see*

18   *also In re Ernst Home Ctr., Inc.*, 209 B.R. 955, 967 (Bankr. W.D. Wash. 1997) (noting that

19   adequate protection is not meant to be a guarantee that a creditor will be paid in full, and

20   consequently holding that the non-debtor contract counterparty was adequately protected because

21   the debtor-lessee was current on post-petition payments to them and had shown that it will have

22   sufficient funds to pay the taxes at issue at the time they become due under the lease terms.); *In re*

23   *P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001).  If Amazon tries to say

24   otherwise in its supplement, it is wrong.

25        3.    Lawsuits Involving Scoobeez

26        Amazon argues that the existence of unpaid pre-petition claims was the sole basis for

27   terminating the Amazon Agreement and justifies relief from the automatic stay.  This assertion is

28   not only misguided but misapprehends the very purpose of the automatic stay, which is to shelter a

1  bankruptcy estate from creditors trying to race to seize assets.  *See In re El Paso Refinery, L.P.*,

2  220 B.R. 37, 41 (Bankr. W.D. Tex. 1998) ("[t]he interests of the creditors collectively and the

3  bankrupt estate as a whole will not yield easily to the convenience or advantage of one creditor out

4  of many."). By attempting to use the existence of pre-petition lawsuits as justification for relief,

5  Amazon improperly seeks to disrupt the reorganization process and elevate its position over 90

6  other creditors – an inequality the Bankruptcy Code guards against.  *See id.* at 41.

7          Moreover, discovery has revealed ███████████████████████████████████

8  █████████████████████████████████████████████████████████████████████████████████

9  ██████████ that provoked its ouster.  Amazon witnesses admitted ████████████████

10 █████████████████████████████████████████████████████████████████████████

11 ████████████████████████████████ Nassiri Decl., Exh. C (McCabe Tr.) at 49:14-

12 50:7  In other words, Amazon readily admits that the Debtors' estate is being penalized solely

13 because a few third parties brought prepetition litigation *years* before the bankruptcy filing,

14 ██████████████████████████████████████████████████████████████████

15 ██████████  Surely, this cannot constitute "cause" under Bankruptcy Code section 362 as a matter

16 of law, and Amazon has not offered any evidence or authority to prove otherwise.

17         Moreover, Amazon's alleged concerns about prepetition litigation can hardly be deemed

18 credible given the risk level Amazon attaches to litigation and the length of time that passed before

19 Amazon raised any objections to the prepetition lawsuits involving Scoobeez.  Notably, Amazon's

20 highest-ranking witness, Carey Richardson, the head of compliance, testified ████████████

21 ████████████████████████████████████████████████████████████████████████████████

22 ██████████████████████████████████ Nassiri Decl., Exh. F (Richardson Tr.)

23 at 171:3-172:15[13]  In contrast, Richardson acknowledged ████████████████████████

24 ███████████████████████████████████████████████████████████████████████████

25 ███████████████████████  *Id.*

26 _____

27  [13]   These most serious harms are codified in Amazon's DSP Non-Compliance Policy, which
Amazon has declined to produce.

28

1    Nor did the lawsuits against Scoobeez rise even to the point of public comment.  Although

2    the lawsuits were filed in 2017 and 2018, Amazon did not express any concern about the litigation

3    or Scoobeez as a DSP *until October 7, 2019* when it first informed Scoobeez it wanted to

4    terminate the Amazon Agreement.

5        Further, in the intervening years between the filing of the lawsuits and October 2019,

6    ████████████████████████████████████ vincing a lack of concern for the litigation.

7    Indeed, in October of 2018, while all three lawsuits were still pending, ████████████████

8    ████████████████████████ Nassiri Decl. ¶ 17.  Amazon also acknowledged that during

9    the "peak" holiday period in 2018, Scoobeez was exceptionally helpful to Amazon.  Nassiri Decl.,

10    Exh. E (Ojeda Tr.) at 158:1-159:8.  While Amazon did file unliquidated proofs of claim based on

11    Scoobeez' prepetition indemnity obligations,[14] it took no other action on account of these claims

12    to exit Scoobeez from the DSP system.

13        Even after Amazon ████████████████████████████████████████████

14    ████████████████████████████████████████████████████████████████

15    ████████████ efore notifying Scoobeez of its decision, and then waited another month

16    before seeking stay relief.  Indeed, ████████████████████████████████████████

17    ████████████████████████████████████████████████████████████████

18    ████████████████████████████████████████ Courts have often denied

19    requests for relief which are delayed by months or even just weeks – precisely the outcome

20    compelled here.  *See, e.g. In re Lehman Brothers Holdings, Inc.*, 435 B.R. 122, 138 (S.D.N.Y.

21    2010) (affirming order denying relief from stay, where bankruptcy court held that delay in seeking

22    relief from stay demonstrated that movant was not likely to suffer any significant harm).

23        Amazon's claims that the prepetition wage and hour lawsuits cause a "PR [public

24    relations] risk associated with the litigation," Nassiri Decl., Exh. C (McCabe Tr.) at 202:5-25, is

25    similarly implausible.  For instance, while McCabe claimed that Amazon was harmed by recent

---

[14]    On September 6, 2019, Amazon.com filed proof of claim no. 31 in an unliquidated amount
and Amazon Logistics filed proof of claim no. 32, identical to proof of claim no. 31 other than the identity
of the claimant.

1   articles discussing driver lawsuits, he could not say whether Scoobeez was even mentioned.

2   Similarly, when asked if he knew whether Amazon's reputation had been harmed because of

3   Scoobeez' three employment-related actions, Wilson testified that he would have to speculate to

4   identify any harm specific to Scoobeez, other than the generalized costs and risks of

5   litigation.  Nassiri Decl., Exh. D (Wilson Tr.) at 306:15-307:10.  And Carey Richardson stated that

6   "if a driver was then to contact media, then Amazon, again, could be called out as the bad guy . . ."

7   Nassiri Decl., Exh. F (Richardson Tr.) at 168:13-169:9.  None of these speculative fears –

8   completely untied to Scoobeez – justify relief from the automatic stay.

9        Finally, if Amazon was suffering any plausible harm from the continuance of Scoobeez

10   operating as a DSP, it had several options under the Bankruptcy Code to attempt to protect its

11   interests once the bankruptcy had been filed.  But it did nothing.   For example:

12       •    Amazon could have moved to compel assumption or rejection of the agreement
13            under 11 U.S.C. §365, but it did not.[15]

14       •    Amazon could have immediately moved for relief from stay to terminate the
         Amazon Agreement after the Debtors filed their petitions for relief, but it did not.

15       •    Amazon could have immediately moved to convert the cases to chapter 7, which
16            would have shortened the time for the estate to assume or reject, but it did not.

17       •    Amazon could have objected to the Debtors' efforts to extend exclusivity, and
18            instead propose its own plan that would result in rejection, but, once again, it did
         not.

19        Rather, Amazon chose to wait for *nearly six months* post-petition without raising *any*

20   purported harms to the company as the result of litigation.  Only after the Debtors proposed to sell

21

---

22      [15] Amazon bears a more difficult burden of proof to show "cause" because the Debtors' estates
23   would otherwise have until confirmation to assume or reject the Amazon Agreement.  Courts do
not permit contract counterparties to use the relief from stay standards to circumvent the more
appropriate standard under section 365.  *See El Paso Refinery,* 220 B.R. at 42-43.  Amazon may
24   continue to press that the Amazon Agreement is somehow not executory, but as Hillair and the
Debtors already explained, it is.  Indeed, *In re Hawker Beechcraft, Inc.,* 2013 WL 2663193
25   (Bankr. S.D.N.Y. June 13, 2013), which Amazon cited in its Stay Relief Reply, actually confirms
that the Amazon Contract is executory.  *See id.* at *6; *see also In re NewPage Corp.,* 2017 WL
26   571478, at *6 (Bankr. D. Del. Feb. 13, 2017) (master agreement requiring servicing of materials,
maintenance of insurance, and reimbursement was executory); *Lehman Bros.* , 422 B.R. at 416
27   (master agreement expressly providing that obligations survive termination was executory).

28

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

1  their assets to Hillair, including assuming and assigning the Amazon Agreement, did Amazon

2  raise the issue and make an appearance in an effort to foreclose any chance of Scoobeez'

3  successful exit from bankruptcy and a meaningful recovery for creditors.  This delay alone negates

4  Amazon's claim of harm.  *See Lehman Brothers,* 435 B.R. at 138.  And now that Scoobeez has

5  filed its Joint Plan and there is a realistic exit date, there is simply no basis to circumvent the

6  protections of the automatic stay prior to the effective date of the Joint Plan.

7            4.    California Wage and Hour Issue

8         When pressed about the alleged harms to Amazon as a result of continued business with

9  Scoobeez, Carey Richardson interjected a new, and previously unarticulated, concern: ███████

10 ██████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████████

13 ██████  Nassiri Decl., Exh. F (Richardson Tr.) at 208:15-210:19.  Such a generalized concern

14 cannot establish cause for relief, and in any case, the fact that Amazon has only raised the issue in

15 deposition testimony after its Stay Relief Motion was filed precludes its consideration.  *See Hill v.*

16 *Opus Corp.*, 464 B.R. 361, 371 n.34 (C.D. Cal. 2011) ("The court declines to consider arguments

17 raised for the first time in reply, since the other party has no opportunity to respond").

18     **C.    Case Law Supports Denial of Amazon's Motion**

19         Taken together, the rationales Amazon has asserted cannot establish cause for relief as a

20 matter of law.  As the Bankruptcy Code has long recognized, [u]nsecured creditors are generally

21 entitled to relief from an automatic stay only in extraordinary circumstances."  *In re Chan*, 355

22 B.R. at 499 (Bankr. E.D. Pa. 2006).  Amazon has not come anywhere close.  Each of the rationales

23 it has asserted are either flatly wrong (Scoobeez' performance),  undermined by Amazon's own

24 actions (2.0 business model and lawsuits), or are speculative and untimely (California wage and

25 hour).

26         In analogous circumstances, courts have not been hesitant to deny relief from the automatic

27 stay.  For instance in *In re Forest Ridge, II, Ltd. P'ship*, 116 B.R. 937, 946 (Bankr. W.D.N.C.

28 1990), the court held that "cause" is not found when the property is not being presently

1  mismanaged and its performance has, in fact, improved during the pendency of the case. That is

2  precisely the same here where, as noted above, Scoobeez' ratings have been on an upward

3  trajectory, obtaining Amazon's highest ratings. *See supra* at 9. Similarly, in *Dabney*, the court

4  denied a stay relief motion for insufficient "cause," because, although the Debtor had failed to

5  fulfill prepetition obligations, the court reasoned that ordering the debtor to comply with the

6  prepetition obligations would be sufficient to protect the creditor, rather than lifting the stay

7  altogether. 45 B.R. at 313-14. Again, this reasoning is apt here since Amazon has not, and

8  cannot, show that Scoobeez has failed to adhere to its post-petition obligations in accordance with

9  the terms of the Agreement or placed the rights of its creditors at risk. *See Delaney-Morin*, 304

10 B.R. at 369-71 (reversing relief from stay granted on the basis of unspecified post-petition defaults

11 because movant failed to provide competent evidence of such defaults. The court further noted

12 that "lack of equity and pre-petition failure to pay property taxes did not constitute sufficient

13 cause."). In contrast, courts have only found cause for relief in such limited circumstances as

14 when the interests of a creditor in the estate are being decimated by the debtor's actions, the debtor

15 has failed to adhere in good faith to its obligations during the automatic stay, and the debtor has

16 failed to effectuate a reorganization plan. *See supra* fn. 11 (discussing cases). Such

17 "extraordinary circumstances" are plainly not present here. Accordingly, based on the failure to

18 demonstrate cause, alone, Amazon's Stay Relief Motion should be denied.

19 **IV.    THE HARM TO THE DEBTORS AND THE ESTATE OUTWEIGHS ANY HARM**

20 **ALLEGEDLY SUFFERED BY AMAZON DUE TO THE AUTOMATIC STAY**

21     Even if the Court finds that Amazon has made an initial showing of cause (it has not), the

22 Court still retains discretion to deny the Stay Relief Motion by considering the relative harms and

23 equities of the relief requested. *See In re Velo Holdings Inc.*, 475 B.R. 367, 389 (Bankr. S.D.N.Y.

24 2012) ("even if the Court did find that 'cause' exists, 'based on a balance of the harms and

25 equities,' the Court would not modify the automatic stay."). A balance of the harms here clearly

26 favors denying the Stay Relief Motion and permitting Debtors to continue their operations and

27 reorganization efforts, especially now that the Debtors are proceeding to confirmation and have

28 filed a joint plan with their major creditor constituents.

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

**A.    Termination of the Amazon Agreement Will Cause Irreparable Harm:**
**Decimation of Scoobeez' Business and Reorganization**

Allowing Amazon to terminate the Amazon Agreement will effectively end these chapter 11 cases because Scoobeez would need to wind down operations, ending a business that has been cash flow positive and employs nearly 900 people in three states.

Amazon has asserted in its previous filings that the automatic stay will not confer any continuing benefit on Scoobeez.  This is mistaken.  Maintaining the stay through confirmation of the Joint Plan will prevent Amazon from forcing Scoobeez out of business, the loss of nearly 900 jobs and upending the entire restructuring process.  *See, e.g. In re Tubular Techs., LLC*, 348 B.R. 699, 707 (Bankr. D.S.C. 2006) (balance of hardships weighs in debtor's favor because "the Court is persuaded that a cessation of operations for any extended period of time would severely harm, possibly irreparably, Debtor.")*; Velo Holdings*, 475 B.R. at 385 (denying stay relief motion because balance of harms weighed in favor of the debtors where termination of the agreements at issue would significantly impede their ability to restructure, if not eliminate the possibility of a successful restructuring entirely, in light of the fact that the agreements made up 95% of the debtor's transactions); *In re Acis Capital Mgmt., L.P.*, 2019 WL 406137, at *13 (Bankr. N.D. Tex. Jan. 31, 2019) (movant's actions would effectively terminate and destroy all value in the assets at issue, which would, in turn, effectively destroy the reorganized debtor's ability to perform under the plan to the detriment of the reorganized debtor, creditors and other parties-in-interest, and subsequently issuing the preliminary injunction).  In contrast, as demonstrated above, Amazon's alleged harms from continued business with Scoobeez are virtually nonexistent, making "the balance [of hardships] … extraordinarily one-sided."  *Velo Holdings*, 475 B.R. at 386 (issuing permanent injunction to prevent credit card processor from terminating Chapter 11 debtor-merchants' processing agreements).

The court's holding in *Velo Holdings* is instructive.  There, the court imposed a permanent injunction and denied modification to the automatic stay under very similar circumstances.  A credit card processor sought to terminate its processing agreement before the debtor elected to assume or reject the executory contract.  Because the debtor relied on the processor for at least

1  50% of its revenue stream, lifting the stay "would significantly impede [debtor's] ability to

2  restructure, if not eliminate the possibility of a successful restructuring entirely, while severely

3  impairing creditor recoveries." *Id.* at 390.  On the other hand, the "parade of hardships" alleged

4  by the creditor that it "may experience if it does not terminate the Processing Agreements

5  immediately" were "hypothetical and speculative."  *Id.* at 386.

6         Amazon's alleged harms are equally as dubious, while the adverse ramifications of lifting

7  the stay are significant.  As Amazon is well-aware, Scoobeez has worked diligently to provide

8  excellent service to Amazon at the expense of diversification to other customers.  Moreover, as

9  Amazon has acknowledged, when a DSP is forced to "exit", rarely more than 60% of drivers are

10  able to join other DSPs.  Nassiri Decl., Exh. F (Richardson Tr.) at 123:4-22.  Here, that would

11  mean hundreds of drivers will be left unemployed, solely because Amazon prefers to be relieved

12  from its obligations under the automatic stay now – rather than after confirmation of the

13  reorganization plan.  Such unnecessary and unjustified harms tips the balance of hardships sharply

14  in the Debtor's favor.  *See Brigade,* 217 F. Supp.3d at 520 (relief from stay would result in a

15  "death spiral in which a paralyzed government would ultimately be prevented from funding

16  essential services it needs to promote economic stability and growth."); *P.J. Clarke's Rest. Corp.*,

17  265 B.R. at 407-08 (denying landlord's request for additional adequate protection payments where

18  "the sole business of this Debtor and its affiliate is conducted on the premises at issue and loss of

19  the Lease would necessarily result in cessation of that business.").

20         **B.      Proposed Joint Plan Resolves Any Purported Concerns**

21         Any purported concerns Amazon has about lost opportunity costs or uncertainty in its route

22  planning for DSPs is alleviated by the filing of the Joint Plan.  Scoobeez, Hillair, and the

23  Committee are not asking the Court to require Amazon to continue providing routes to Scoobeez

24  in perpetuity.  Rather, the Joint Plan provides for the maintenance of the automatic stay for the

25  earlier of resolution of the Amazon litigation or six months from plan confirmation.  The three

26  plan proponents are moving with dispatch towards confirmation, and expect virtually no

27  opposition (other than perhaps from Amazon itself).

28

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

1    Courts have generally held that it is reasonable to preserve the status quo while the debtor

2  formulates a plan for reorganization, so long as the debtor can show it is moving meaningfully to a

3  plan. *See, e.g. Holly's*, 140 B.R. at 700; *In re Shree Meldikrupa Inc.*, 547 B.R. 862, 873 (Bankr.

4  S.D. Ga. 2016); *In re Kadlubek Family Revocable Living Tr.*, 545 B.R. 660, 667 (Bankr. D.N.M.

5  2016); *In re Shivshankar P'ship LLC*, 517 B.R. 812, 820–21 (Bankr. E.D. Tenn. 2014).  At most,

6  Amazon must maintain the status quo in the number of routes it provides Scoobeez through the

7  end of this year.  This is a reasonable amount of time, especially considering Amazon will

8  continue to receive high quality performance in the interim.

9    In short, on both the facts and the law, the balance of harms weighs in favor of the Debtors,

10  compelling denial of Amazon's motion.

11  **V.    PREPETITION EVENTS HAVE NO BEARING ON AMAZON'S ALLEGED**

12      **HARMS**

13    Although it did not raise any prepetition management concerns in its Stay Relief Motion,

14  and its decision in August 2019 to terminate the Amazon Agreement had nothing to do with the

15  Debtors' prepetition management, Amazon has sought extensive (and wasteful) discovery from

16  the Debtors and Hillair relating to whether the Debtors' prepetition senior management were

17  engaging in corporate mismanagement.  In its supplement, Amazon may argue that Scoobeez'

18  prior CEO, Shahan Ohanessian, was mismanaging the Debtors.

19    Yet, none of these assertions, even if true, bear on the balance of the harms analysis

20  required by this Court.  None of these issues or concerns have impacted Scoobeez' ability to be

21  one of Amazon's largest and best performing DSP in the stations where Scoobeez operates.  And

22  even in the face of Hillair's successful efforts to ensure an independent fiduciary would manage

23  the Debtors and this Court's oversight, *see Stipulation by Debtors and Hillair Capital*

24  *Management for (1) Authorization to Use Cash Collateral on an Interim Basis; (2) Appointment of*

25  *a Chief Restructuring Officer* [Dkt. No. 81], Amazon never raised a single concern.  It obviously

26  did not decide to terminate even after a CRO was appointed.

27    Ohanessian was terminated immediately after the case was filed.  At the earliest

28  opportunity, Brian Weiss was appointed the chief restructuring officer of Scoobeez.  Since

1   Ohanessian was the root of any potential mismanagement of Scoobeez, and he is no longer

2   associated with Scoobeez, anything that happened under his watch cannot serve as a basis for

3   cause.  Moreover the reorganization plan provides for new senior leadership.  In *Holly's*,

4   prepetition mismanagement was not a basis for relief from stay (absent any continuing harm

5   specific to the party seeking relief from stay).  140 B.R. at 690.  In finding that current

6   management had made "ongoing efforts toward correcting past mismanagement," the court held

7   that prepetition mismanagement should  not be considered sufficient cause for relief from stay.

8   *Id*.  The same result is warranted here.

9          And while post-petition mismanagement can constitute cause for relief from stay under

10  section 362(d)(1), there is no evidence to support that argument.  In fact, Scoobeez has achieved

11  its best performing ratings ever since the bankruptcy filing. *See supra* at 9.  Scoobeez has

12  continued to comply with all of its post-petition obligations under the Agreement and Amazon has

13  not cited to any act by Scoobeez occurring post-petition that has in any way impaired Amazon's

14  interest in the Agreement.  Accordingly, Amazon's motion should be denied.

15                                  **<u>CONCLUSION</u>**

16         Based on the additional facts and relevant legal authority set forth above, Hillair

17  respectfully requests that the Court: (1) deny the Stay Relief Motion, (2)  order Amazon to

18  continue providing Scoobeez with the status quo number of routes, (3) find that Amazon violated

19  the automatic stay by reducing routes in connection with its prior decision to terminate the

20  Amazon Agreement without first obtaining relief from stay, and (4) grant such other relief as is

21  just and proper under the circumstances of the case.

22

23

24

25

26

27

28

HILLAIR CAPITAL MANAGEMENT'S SUPPLEMENTAL OPPOSITION TO
AMAZON'S MOTION FOR RELIEF FROM STAY

1    DATED:  February 19, 2020                 QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP
2

3

4                                             By _____
                                                     /s/ Crystla Nix-Hines
5                                                 John B. Quinn
                                                  Crystal Nix-Hines
6                                                 Eric D. Winston
                                                  Jennifer L. Nassiri
7
                                                  *Attorneys for Secured Creditor Hillair Capital*
8                                                 *Management, LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On February 19, 2020, I served true copies of the following document(s) described as:

**HILLAIR CAPITAL MANAGEMENT, LLC'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO AMAZON LOGISTICS, INC.**

on the parties in this action as follows:

| | |
|---|---|
| Ashley M. McDow<br>John A. Simon<br>Shane J. Moses<br>FOLEY & LARDNER LLP<br>555 S. Flower St. 33rd Floor<br>Los Angeles, CA 90071<br>Tel. no. 213-972-4500<br>amcdow@foley.com<br>jsimon@foley.com<br>smoses@foley.com | Richard W. Esterkin<br>MORGAN, LEWIS & BOCKIUS<br>300 S. Grand Ave., Floor 22<br>Los Angeles, CA 90071-3132<br>Tel. no. 213-612-2500<br>richard.esterkin@morganlewis.com |
| John-Patrick M. Fritz<br>David L. Neale<br>LEVENE, NEALE, BENDER, YOO &<br>BRILL LLP<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, CA 90067<br>Tel. no. 310-229-1234<br>jpf@lnbyb.com<br>dln@lnbyb.com | Alvin P. Mar<br>OFFICE OF THE UNITED STATES<br>TRUSTEE<br>915 Wilshire Blvd., Suite 1850<br>Los Angeles, CA 90017<br>Tel. no. 213-894-4219<br>alvin.mar@usdoj.gov |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from the e-mail address jennifernassiri@quinnemanuel.com to persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 19, 2020, at Los Angeles, California.

*/s/ Jennifer Nassiri*
_____
Jennifer Nassiri