# EXHIBIT F
# FILED UNDER SEAL

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

---

| | | |
|---|---|---|
| In Re: | ) | Case No. |
| | ) | 2:19-bk-14989-WB |
| SCOOBEEZ, et al. | ) | Jointly Administered: |
| Debtors and Debtors in | ) | 2:19-bk-14991-WB |
| Possession. | ) | 2:19-bk-14997-WB |

---

VIDEO RECORDED DEPOSITION UPON ORAL EXAMINATION OF

CAREY RICHARDSON

---

10:08 a.m.

FEBRUARY 13, 2020

1200 FIFTH AVENUE, SUITE 1820

SEATTLE, WASHINGTON

REPORTED BY: CARLA R. WALLAT, CRR, RPR, CCR 2578

JOB NO. 3980836

PAGES 1 - 216

cure and it's a 30-day. And we are looking for the appropriate evidence to support, you know, closing out any sort of breach of contract. 02:09 02:09 02:09

Q. And do you look at driver performance in deciding which drivers to help transition to new opportunity? 02:11 02:11 02:11

essentially walked through what they could anticipate and expect at a 90-day scored audit and what they really should prepare for. So that is what Nehal is describing to Micah. 03:10

MR. ESTERKIN: So let me -- do you mind if I ask a quick question to clarify that? So when we're talking about the 30 and 90 days, you're talking about 30 days from the time a new DSP is onboarded? 03:11

THE WITNESS: That is correct. 03:11

MR. ESTERKIN: And 90 days from the time a DSP is onboarded? 03:11

THE WITNESS: That's correct. 03:11

MR. ESTERKIN: This wouldn't apply to DSPs that had been on -- been working with Amazon for some extended period of time prior to this. 03:11

THE WITNESS: That, too, is correct. 03:11

Q. (BY MS. NIX-HINES) But did the ones that had been, I think you referred to them as legacy DSPs, the ones who had already been in process, did they -- were the questions simplified for their audits? 03:11

A. Yes, they receive the same audit workbook. 03:11

Q. Okay. So it was reduced for everyone? 03:11

A. Uh-huh. 03:11

Q. But the only ones that got the 90-day walkthrough or preview were the new ones? 03:11

A. 30 day. 03:11
Q. I mean, the 30 day, sorry, yes. 03:11
A. Were the new DSPs. We did share the 30-day walkthrough, it's a simple one-page checklist, with DSPs who had not been audited yet. Again, just in preparation to help them prepare. 03:11 03:11 03:11 03:12
Q. And that checklist would be the same one used for the legacy DSPs? 03:12 03:12
A. I'd have -- I'd have to confirm because some of the -- I'd have to confirm only because legacy -- or DSP 1.0, maybe not all of the requirements would have been the same, so I'd have to work with my team to understand if we had two separate checklists to -- to share. 03:12 03:12 03:12 03:12 03:12 03:12
MR. ESTERKIN: And that would be -- be because of the contractual differences? 03:12 03:12
THE WITNESS: Uh-huh. The contractual differences would be the primary reasons for any sort of differences. 03:12 03:12 03:12
A. Oh, my gosh. 03:12
Q. (BY MS. NIX-HINES: So -- yeah, if you could just look at the headings on the top so while we go down -- 03:12 03:12 03:13
MS. DAVIS: Do you want it bigger? 03:13
MS. NIX-HINES: It could be a little 03:13

I'm recalling is we provided a current snapshot of their compliance. 03:45 03:45

Q. If you look at 2461, paragraph 3, "We will take your feedback on compliance and work with Carey's team to re-review the compliance history data and use the following criteria." 03:45 03:46 03:46 03:46

And then it's listed there. Is that what you're referring to, a deeper dive? 03:46 03:46

A. Yeah. "Audited more than once." 03:46

Q. "Five or more critical/high-risk compliance infractions"? 03:46 03:46

A. Uh-huh. 03:46

[redacted]



Exhibit Page 7 of 17

Page 165

Veritext Legal Solutions
866 299-5127



Exhibit Page 8 of 17

Page 166

Veritext Legal Solutions
866 299-5127

[redacted]

Q. (BY MS. NIX-HINES) What's the time table from when -- time frame when a DSP is identified to have a compliance-related issue or a litigation issue and then it's slated for termination? 03:50 03:51 03:51 03:51

MR. ESTERKIN: Objection. Incomplete hypothetical. Vague. Compound. 03:51 03:51

Q. (BY MS. NIX-HINES) How long does it take -- I'll rephrase. 03:51 03:51

How long does it take for -- once a DSP has been identified for termination, how long does it take to actually get that DSP out the door and no longer working for Amazon? 03:51 03:51 03:51 03:51

MR. ESTERKIN: Objection. Incomplete hypothetical. Vague. Calls for speculation. 03:51 03:51

A. I don't have the average time frame it takes 03:51

from decision made to actual out the door. Some of these are much more complicated than others where you'll have warn implications. So it could be 60-plus days. Others if they're operating out of one station with 15 drivers, there's no warn, pretty straightforward, so it could be shorter. 03:51 03:52 03:52 03:52 03:52 03:52

Q. (BY MS. NIX-HINES) Are there some DSPs that have been notified and then they're still working for the company, you know, three, six months later? 03:52 03:52 03:52

MR. ESTERKIN: Well, Scoobeez is one of those, isn't it? 03:52 03:52

A. I was going to say I don't know. 03:52

[redacted]

[redacted]

Q. (BY MS. NIX-HINES) Can you think of any other ways that Amazon would be harmed in such circumstances? 03:54 03:54
A. I mean, certainly they could be -- 03:54
MR. ESTERKIN: Objection. Incomplete hypothetical. 03:54 03:54
A. They could be sued, so financially, time and energy and financial related to a lawsuit. 03:54 03:54
Q. (BY MS. NIX-HINES) By the DSP that's being exited? 03:54 03:54
A. Yes. 03:54
Q. Has that ever occurred, to your knowledge? 03:54
A. Aren't we doing that right now? 03:54
Q. Have you seen any specific harms to Amazon from the fact that Scoobeez is still operating for the company? 03:55 03:55 03:55
A. I'm not -- I'm not close to the -- to the 03:55

have an on-the-job injury. 03:58

A. Uh-huh. 03:58



Q. (BY MS. NIX-HINES) So turning to 2467 in the same exhibit, Number 1, "Follow-ups: Generate the exit list by looking at DSPs who are uncooperative in ongoing litigation; and, two have a history of compliance issues, even if they don't currently have an open compliance issue." 04:01 04:02 04:02 04:02 04:02 04:02

What does that mean, what do those follow-ups mean? 04:02 04:02

MR. ESTERKIN: Objection. Compound. 04:02

Q. (BY MS. NIX-HINES) Okay. Let's take them one 04:02

might refresh her recollection as to whether they're still there. 05:09 05:09

A. Yeah, and unfortunately, I'm not familiar with the short codes and so I wouldn't -- I don't recall and I don't even know who some of these could even represent. 05:09 05:09 05:10 05:10

Q. (BY MS. NIX-HINES) Are there any on the list that are -- that you know are currently still delivering packages for Amazon? 05:10 05:10 05:10

A. Scoobeez. 05:10

Q. Besides Scoobeez? 05:10

A. Well, I don't even know if they're -- again, I don't -- I don't know how many routes Scoobeez even has, so. 05:10 05:10 05:10

[REDACTED]



Exhibit Page 15 of 17

Page 209

Veritext Legal Solutions
866 299-5127



Q. And when did this -- this issue arise? 05:14
A. We started -- 05:14
MR. ESTERKIN: Objection. Vague. 05:14
You're asking when -- 05:14
Q. (BY MS. NIX-HINES) When did this issue with 05:14
the four 10 schedule and the California regulation 05:14

REPORTER'S CERTIFICATE

I, CARLA R. WALLAT, the undersigned Certified Court Reporter pursuant to RCW 5.28.010 authorized to administer oaths and affirmations in and for the State of Washington, do hereby certify that the sworn testimony and/or proceedings, a transcript of which is attached, was given before me at the time and place stated therein; that any and/or all witness(es) were duly sworn to testify to the truth; that the sworn testimony and/or proceedings were by me stenographically recorded and transcribed under my supervision, to the best of my ability; that the foregoing transcript contains a full, true, and accurate record of all the sworn testimony and/or proceedings given and occurring at the time and place stated in the transcript; that a review of which was requested; that I am in no way related to any party to the matter, nor to any counsel, nor do I have any financial interest in the event of the cause.

WITNESS MY HAND AND DIGITAL SIGNATURE this 17th day of February, 2020.

Carla R. Wallat

CARLA R. WALLAT

Washington State Certified Court Reporter, #2578

Oregon State Certified Shorthand Reporter, #16-0443