Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: amcdow@foley.com
       jsimon@foley.com
       smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SCOOBEEZ, et al.[1]<br><br>    Debtors and Debtors in Possession. | Case No. 2:19-bk-14989-WB<br>Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br><br>Chapter 11 |
| Affects:<br><br>■ All Debtors<br><br>□ Scoobeez, ONLY<br><br>□ Scoobeez Global, Inc., ONLY<br><br>□ Scoobur LLC, ONLY | **DEBTORS' SUPPLEMENTAL BRIEF (A) IN FURTHER SUPPORT OF THE DEBTORS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION TO PREVENT VIOLATION OF THE AUTOMATIC STAY, AND (B) IN OPPOSITION TO AMAZON LOGISTICS INC.'S MOTION MODIFYING THE AUTOMATIC STAY; DECLARATION OF GEORGE VOSKANIAN** |
| SCOOBEEZ, INC.,<br><br>               Plaintiff,<br><br>v.<br><br>AMAZON LOGISTICS, INC.,<br><br>               Defendant. | Hearing:<br>Date:  February 25, 2020<br>Time:  10:00 a.m.<br>Place:  Courtroom 1375<br>       U.S. Bankruptcy Court<br>       255 East Temple Street<br>       Los Angeles, CA 90012 |

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................1

I. INTRODUCTION ......................................................................................1

II. ADDITIONAL FACTS REVEALED IN DISCOVERY ...........................3

    A.    AMAZON'S POST-PETITION DECISION TO TERMINATE SCOOBEEZ WAS BASED SOLELY ON PRE-PETITION WAGE AND HOUR CLAIMS.................................................................3

    B.    AMAZON IS NOT BEING HARMED, BECAUSE THERE ARE NO ISSUES WITH SCOOBEEZ PERFORMANCE.........................................4

    C.    AMAZON CANNOT IDENTIFY ANY COGNIZABLE HARM IT SUFFERS FROM CONTINUING TO WORK WITH SCOOBEEZ .........6

III. A PRELIMINARY INJUNCTION SHOULD BE GRANTED ................8

    A.    APPLICABLE LAW SUPPORTS INJUNCTIVE RELIEF.......................8

    B.    THE BALANCE OF HARMS CLEARLY SUPPORTS INJUNCTIVE RELIEF .................................................................9

IV. THERE IS NO BASIS FOR RELIEF FROM STAY ...........................12

    A.    THERE IS NO CAUSE FOR RELIEF FROM THE AUTOMATIC STAY..................................................................................12

    B.    THE BALANCE OF HARMS STRONGLY FAVORS MAINTENANCE OF THE STATUS QUO THROUGH PLAN CONFIRMATION ....................................................................15

V. CONCLUSION......................................................................................15

Scoobeez, Scoobeez Global, Inc., and Scoobur, LLC, the debtors and debtors in possession (collectively "Debtors" or "Scoobeez") in the above-captioned chapter 11 bankruptcy cases (collectively the "Chapter 11 Cases"), hereby file their supplemental brief (1) in Support of the *Emergency Motion for Temporary Restraining Order and Preliminary Injunction to Prevent Violation of the Automatic Stay* [A.P. Docket No. 2] (the "P.I. Motion"); and (2) in opposition to *Amazon Logistics, Inc.'s Notice of Motion and Motion for an Order: (A) Determining That the Automatic Stay Does Not Require Amazon to Utilize Debtor's Services, and (B) Modifying the Automatic Stay* [Docket No. 393] (the "Stay Relief Motion").  This brief further supplements the Debtors' arguments in the P.I. Motion, the Debtors' Supplemental Pleading in support of the P.I. Motion [A.P. Docket No. 21] (the "Supplement") and the Debtors' opposition to the Stay Relief Motion [Docket No. 419] (the "Scoobeez Opposition").

## I. INTRODUCTION

According to the Fortune Global 500 published on July 22, 2019, the Debtors' sole customer Amazon Logistics, Inc. with its affiliates ("Amazon"), is the 13th largest company in the world by annual revenue, with over $230 billion in revenues during 2018 and 647,000 employees.  Based on the Financial Times Global 500, in 2019, Amazon was one of the three most valuable companies in the world, with a current market capitalization as of February 19, 2020 of approximately $1.084 trillion dollars.  Amazon is one of the biggest growth stories of the 21st century and its impact in commerce continues to be unprecedented.

Since 2016, the Debtors have been relentlessly and loyally committed to focusing on Amazon's needs, and thus grew to their delivery service provider ("DSP") business to revolve around Amazon. After essentially starting operations at zero in 2016, the Debtors generated over $45 million in revenue in 2019.  In fact, the Debtors grew every month, compared with their performance as of the year before, until Amazon started cutting the Debtors' delivery routes without notice in August 2019, in the midst of the Debtors' chapter 11 proceedings.

Prior to the Petition Date, the Debtors faced certain challenges, including allegations of mismanagement and misappropriation of funds by their 90-percent shareholder and former Chief Executive Officer, and attendant cash flow issues.  Upon commencing these chapter 11 cases, in

accordance with the goals and powers of chapter 11, the Debtors took decisive and effective action to

address the management and misappropriation concerns that existed prior to the Petition Date and

stabilize their business and finances.  The Debtors obtained use of cash collateral from their secured

lender, Hillair, under agreed stipulations and orders.  In connection with obtaining the use of cash

collateral from Hillair, and resolving concerns of the Official Committee of Unsecured Creditors (the

"Committee") and then-present requests by the Office of the United States Trustee to appoint a chapter

11 trustee, the Debtors obtained the agreement of their former CEO, the central target of the prepetition

allegations of impropriety, to: (i) step down as Chief Executive Officer; (ii) remove himself and his wife

and a family member and the rest of the prepetition board of directors, and appoint Brian Weiss, the

Chief Restructuring Officer ("CRO"), and two independent members to the board (one of whom was

selected by the Committee); (3) not exercise his shareholder powers to change the board composition

and (4) generally not be involved with the management or financial affairs of Scoobeez or Scoobeez

Global.   The Debtors also established that the CRO would have the exclusive right to review and

authorize expenses in excess of $10,000, in order to address any financial misappropriation concerns

going forward.

Having fixed issues that plagued the Debtors prior to the Petition Date, the Debtors hired an

investment banker and conducted a fulsome marketing process to sell or recapitalize their business,

contacting over 200 parties considered after research to be the most likely interested bidders.  Many

parties made inquiries as to their interest in acquiring the Debtors' business.  It appeared the Debtors

were on path to have an auction with competing bidding against Hillair as the Stalking Horse Bidder.

The Debtors were on path to exit chapter 11 quickly and safely and protect their business and

employees.

However, Amazon pulled the rug out from the Debtors and destroyed the Debtors' sale process.

Amazon advised the Debtors that they were going to terminate the Debtors' contract with Amazon (the

"Amazon Contract") during the bankruptcy case.   Eventually, almost two months after cutting the

Debtors' routes, Amazon sought relief from the automatic stay to do so.   Although Amazon, as one of

the world's largest companies, faces minimal, if any, harm from continued business with the Debtors

(who receive good scorecards from Amazon as to their delivery performance), such termination would

1  substantially and irreparably harm the Debtors, their reorganization efforts, and their creditors.  "Cause"

2  does not exist to permit Amazon to lift the stay to terminate its contract with the Debtors, and to the

3  contrary, Amazon should be enjoined from terminating the Amazon Contract.  The Debtors have a path

4  towards reorganization, as evidenced by their negotiation of their Chapter 11 Joint Plan of

5  Reorganization, which was filed on February 14, 2020 [Docket No. 599], and which is proposed jointly

6  by the Debtors, Hillair, and the Committee to preserve value for the Debtors and their creditors.

7          The facts uncovered in discovery, and applicable legal authority, mandate that Amazon's request

8  that this Court bless Amazon's request for authorization to substantially harm the Debtors'

9  reorganization effort at this delicate stage should be denied.

10

11              **II.  ADDITIONAL FACTS REVEALED IN DISCOVERY**

12          After extensive discovery, the record only more clearly establishes that (1) Amazon's basis for

13  terminating Scoobeez has nothing to do with performance or compliance issues, (2) Scoobeez

14  performance is at least on par with other DSPs, and (3) Amazon simply does not suffer any material

15  harm from continuing to maintain route levels to Scoobeez pending plan confirmation.

16      **A.**    **Amazon's Post-Petition Decision to Terminate Scoobeez was Based Solely On Pre-**

17              **Petition Wage and Hour Claims**

18          There is no question that Amazon's decision to terminate Scoobeez was based on only one

19  factor, which had nothing to do with any concerns regarding Scoobeez performance as a DSP.  Rather,

20  Amazon decided, on August 9, 2019, to terminate Scoobeez based solely one factor: the fact that pre-

21  petition, Scoobeez had been named in "had been involved in multiple" wage and hour litigations.

22  Wilson Depo. at 146:1-9; 216:1-19.  Scoobeez was one of 15 DSPs that Amazon decided on that date to

23  terminate based on involvement in wage and hour litigations.  *Id.*  The decision to terminate Scoobeez

24  was based on three pre-petition wage and hour litigations.  Wilson Depo., at 300:8-15.  In the course of

25  making this decision, Amazon did not even consider whether any of the claims against Scoobeez had

26  any merit.  Amazon did no analysis in this regard; Amazon's review was simply "to look at the number

27  of litigation cases the DSP had." McCabe Depo. at 49:18-25.

28

4811-1952-6069.1

1    On October 7, representatives of the Debtors and Hillair participated in a telephone call with

2    Amazon's representatives (the "Amazon Call"). During the Amazon Call, Amazon's representatives

3    clearly and expressly stated that Amazon did not intend to do business with the Debtors beyond a brief

4    transition period, and would reduce the Routes assigned to the Debtors. Amazon's representative also

5    expressly stated that Amazon would not consent to do business with Hillair or any other potential

6    purchaser of the Debtors' assets, unless limited to a potential brief transition period. *See, e.g.*, Kauffman

7    Depo. at 352:13-17. During the Amazon Call, Amazon also made it clear that its decision to sever ties

8    with the Debtors was tied to what it viewed as pre-petition defaults by the Debtors. *See, e.g.*, Kauffman

9    Depo. at 352:13-17. More specifically, Amazon's representative stated that Amazon felt that the Debtors

10    had not adequately fulfilled their duties to defend and indemnify Amazon from third party claims –

11    claims which each arose prior to the Petition Date related to the wage and hour lawsuits. *See, e.g.*,

12    Kauffman Depo. at 352:13-17; McCabe Depo. at 40:18-25.

13    As Amazon itself testified, neither the fact that Scoobeez was a 1.0 DSP or the Debtors'

14    performance was a "reason why Scoobez was slotted for termination from the DSP Program." Wilson

15    Depo. at 218:13-16. It was all about the prepetition claims under the Amazon Contract for

16    indemnification from litigation.

17    B.    **Amazon is Not Being Harmed, Because There are no Issues With Scoobeez**

18         **Performance**

19    In deposition, Amazon employees stated that they had "no" concerns with Scoobez's

20    performance. Ojeda Depo. at 70:3-6. Indeed, Amazon's representatives specifically stated that they had

21    no issues with Scoobeez performance at the time that they informed Scoobeez and Hillair that they were

22    terminating the Agreement. During the Amazon Call, Amazon's representatives clearly and expressly

23    stated that they did not intend to do business with the Debtors beyond a brief transition period, and

24    would begin reducing the Routes assigned to the Debtors. Amazon's representative also expressly stated

25    that Amazon would not consent to do business with Hillair or any other potential purchaser of the

26    Debtors' assets, unless limited to a potential brief transition period. *See, e.g.*, Kauffman Depo. at

27    352:13-17. At the same time, however, Amazon's representatives acknowledged that they had no issues

28    with the performance of the Debtors. *See, e.g.,* Kauffman Depo., at 237:15-22.

The evidence clearly shows that there were and are no issues with Scoobeez's actual performance. Amazon provides weekly scorecards that are graded on a scale of "fantastic plus," "fantastic," "great," "fair," or "poor." *See* Wilson Depo., at 204:2-7. ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ *See* Wilson Depo., at 234:2-7, 239:8-10. In other words, more than 75% of Scoobeez Scorecard ratings were at least "great." Even Amazon's own submission in support of its Stay Relief Motion acknowledges that Scoobeez performance is average for the DSPs in the stations out of which it operates. *See* Wilson Declaration in Support of Reply [Docket No. 430] at, p. 16; Wilson Depo., p. 199:16-205:25 (discussing the table presented in the Wilson Declaration). This is consistent with the admissions of Amazon's employees that in their experience Scoobeez performance was as good as the average Amazon DSP. *See* Kozin Depo., at 231:21-232:3. In fact, Mr. Ojeda, who was responsible for the Texas locations that Scoobeez worked out of, testified that there was no reason to disagree that Scoobeez "did a great job in the stations." *See* Ojeda Depo. at 156:5-8.

In other words, unless Amazon views fully half of its DSPs as underperforming, there is no real concern with Scoobeez performance. It should be noted that Scoobeez performance has, if anything, only improved during the bankruptcy case, as shown by recent scorecards.

Any pretense of a concern about performance would be just that: pretense. Besides the fact that Scoobeez performance has been good, the reality is that it would be extraordinary for Amazon to terminate a DSP based on performance metrics. Mr. Ojeda testified in fact that he was not aware of any DSP that has been terminated based on scorecard performance. *See* Ojeda Depo., at 65:13-15. In fact, Amazon has never taken any adverse action against a DSP based on their performance. Ojeda Depo., at 65: 19-21.

While Scoobeez performance was at least average before, Scoobeez scorecard ratings generally went up after Ms. Ohanessian was terminated as director of operations and Mr. Scott Sheihk became more involved in operations. *See* Sheikh Depo., at 237:20-22. Indeed, at DCH-1 (Chicago), Amazon provides a "Heavyweight Belt" to what they perceive as the best performing DSP, and that was given to Scoobeez' Chicago hub leader in December 2019 or early in 2020. *See* Sheikh Depo., at 251:20-24.

1   Moreover, Amazon's representatives, including Victor Kozin and Aarie Hibbler told Mr. Sheikh they

2   were pleased with Scoobeez' service and performance.  *See* Sheikh Depo., at 252:7-24.

3       **C.    Amazon Cannot Identify any Cognizable Harm it Suffers From Continuing to Work**

4           **With Scoobeez**

5       Amazon effectively admitted from this outset that it was suffering no ongoing harm as a result of

6   continuing to work with Scoobeez as a DSP.  As discussed in the Scoobeez Opposition, the only

7   "harms" Amazon alleged it will suffer if relief from the automatic stay is not granted are (1) being

8   barred from exercising its asserted contractual right to terminate by the automatic stay, and (2) pre-

9   petition failures to defend and indemnify.  *See* Scoobeez Opposition, p. 16.  Neither of these is a

10  cognizable ongoing harm.  The testimony of Amazon's employees only underscores this reality.  As set

11  forth above, the testimony of Amazon's employees demonstrations that Scoobeez performance is on par

12  with other DSPs, and that there are no concerns with Scoobeez performance.

13      Further, Amazon's employees could not articulate any actual harm, and certainly not any harm

14  other than whatever amorphous risk might be associated with operating with a DSP that had been

15  subject to more than one wage and hour complaint at some point in its history.  Mr. Wilson specifically

16  testified that, other than risks associated with wage and hour litigation, the only harm he could think of

17  was some sort of theoretical opportunity cost associated with not bringing in other DSPs.  *See* Wilson

18  Depo., at 329:9-18.  As to that "opportunity cost," Mr. Wilson only testified that having Scoobeez in the

19  system meant that Amazon could not bring in other DSPs, and therefore it was hindering the ability of

20  other DSPs to "grow and scale their business."  *See* Wilson Depo., at 222:6-13.  Obviously this is not

21  even an opportunity cost to Amazon – there is no protectable interest in some other DSP growing its

22  business.  When asked to identify whether there was any actual monetary harm, from these supposed

23  lost opportunities, Mr. Wilson could not identify any.  *See* Wilson Depo., at 222:10-16.

24      Likewise, when asked about harms as a result of continuing to do business with Scoobeez, Mr.

25  McCabe could only identify the cost of the bankruptcy process, the general notion of risk of litigation,

26  and a vague hinderance to "business planning of an unknown" regarding when the termination would

27  actually happen.  *See* McCabe Depo., at 199:10-202:25.

28

1    Amazon has suggested it is somehow harmed by being forced to continue to work with

2    Scoobeez, because Scoobeez is under its previous "DSP 1.0" Contract, instead of the newer "DSP 2.0"

3    contract Amazon has moved toward.  There is no harm here.  Despite Amazon's representations to the

4    Debtors and others during this litigation, there are still DSPs similar to the Debtors that Amazon

5    continues to contract and do business with. ████████████████████████████████████████████

6    ████████████████████  *See* Wilson Depo. at. 58:12-14. ████████████████████████████████

7    ██████████████████████████████████████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████ *See* Wilson Depo., at 96:21-25; 97:11.  The evidence also

10   shows that even if Scoobeez wanted to "migrate" to a DSP 2.0 contract, Amazon would not allow it to,

11   because Amazon temporarily halted migrations as of January 1, 2019, because it wanted to put together

12   a framework for doing migrations.  *See* Wilson Depo., at 109:17-20.  At the same time, Amazon

13   acknowledges that there is a possibility that other DSP 1.0s like Scoobeez could migrate to the new 2.0

14   program in the future, once Amazon has a framework for any such migrations.  *See* Wilson Depo., at

15   109:17-20.  Amazon's own decision to put a pause on migration of DSP 1.0s is not "cause" for relief

16   from the stay, nor harm to Amazon.

17       As discussed above, based on Amazon's own admissions, whether or not Scoobeez was a "DSP

18   1.0" or "DSP 2.0" was not the reason for Amazon's termination of Scoobeez.  However, Scoobeez did

19   not have a position that it would never transition to a DSP 2.0.  *See* Voskanian Depo., at 275:1-7.

20   Scoobeez in fact never received from Amazon a final structure of what a DSP 2.0 migration might look

21   like.  *See* Voskanian Depo., at 277:22-24.  To the contrary, the Debtors would have moved to DSP 2.0 if

22   Amazon told them they had to do so. *See* Voskanian Depo., at 288:20-24.

23       In addition, the reality is that Amazon's DSP program is growing rapidly to add DSPs for

24   delivery capacity, and there is therefore no basis to argue that doing business with Scoobeez is harming

25   Amazon's ability to bring in other DSPs. ████████████████████████████████████████████

26   ██████████████████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████ Wilson Depo., at 84:7-9; 85:18-25.

28

Moreover, as far as any concerns Amazon has about prepetition issues the Debtors' had, and their integrity, such as the pre-bankruptcy alleged misappropriation of funds, and the Ohanessian's alleged conduct (including the former Chief Financial Officer's whistleblower letter), the post-bankruptcy operational controls of having a Chief Restructuring Officer and payment approval by him over $10,000 and 3 independent board members was oversight that sufficiently corrected any issues. *See* Sheikh Depo., at 288:7-22. The Debtors' secured lender, Hillair, also testified that bankruptcy had fixed the company's issues. *See* Scoot Kaufman Depo., at 300:12-19 (Since the company went into bankruptcy: "For lack of better words, the transgressions of the past have stopped that we didn't know about. Now that we've known about them, they've been fixed; they've been stopped. The company has tremendous reporting standards to the government, to the bankruptcy courts. And it's performed very well for Amazon.")

### III.  A PRELIMINARY INJUNCTION SHOULD BE GRANTED

A.    <u>Applicable Law Supports Injunctive Relief</u>

This Court has the broad authority to enter injunctive relief not only to enforce specific Bankruptcy Code provisions, but also to "protect the general purpose and intent of the Bankruptcy Code." *In re Whitaker*, 341 B.R. 336, 346-47 (S.D. Ga. 2006); *In re Family Health Servs.*, 105 B.R. 937, 943 (C.D. Cal. 1989). The law supporting entry of a preliminary injunction is discussed fully in the P.I. Motion. In general, injunctive relief may be based either on the traditional factors for injunctive relief, or specific bankruptcy considerations. The traditional factors are (1) irreparable harm, (2) probable success on the merits, (3) a balance of hardships that tips in the movant's favor, and (4) that a preliminary injunction is in the public interest. *See, In re Family Health Servs., Inc.*, 105 B.R. at 943 (citing *F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084, 1088-89 (9th Cir. 1985)). These four injunction factors are not prerequisites to relief; rather, they are factors to be balanced in considering whether the requested relief is appropriate. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir 2014).

It is well established that a loss of the ability to operate a business amounts to irreparable harm. *See Doran v. Salem Inn, Inc*., 422 U.S. 922 (1975); *Stenberg v. Cheker Oil Co.,* 573 F.2d 921, 924 (6th Cir. 1978) ("[I]rreparable harm may be established by" "proof of … severe financial hardship" that

causes plaintiff's business to be "completely wiped out."); *N.W. Controls v. Outboard Marine Corp.*, 317 F. Supp. 698, 703 (D. Del. 1970) ("Where the economic loss involved would be so great as to threaten destruction of the moving party's business, a preliminary injunction should be issued to maintain the status quo.")

The additional factors in the bankruptcy context include: "1. Will the threatened actions interfere with, deplete or adversely affect property of the bankruptcy estate? 2. Will the threatened actions frustrate the statutory bankruptcy scheme? 3. Will the threatened actions interfere with the bankruptcy rehabilitative process? 4. If one or more of the foregoing effects is/are present, is the requested stay reasonable as to scope and duration? 5. If one or more of the foregoing effects is/are present, are appropriate means available to protect the non-debtor party's interests?" *In re Casner*, 302 B.R. 695, 703-704 (E.D. Cal. 2003).

Applying either analysis, as set forth in the P.I. Motion, injunctive relief is appropriate here. Whether to grant the Debtors the requested injunction is within the discretion of the court. *Synanon Found., Inc. v. California*, 444 U.S. 1307, 100 S. Ct. 496 (1979). The Debtors submit that the Court should exercise that discretion to preserve the status quo pending plan confirmation.

**B.    The Balance of Harms Clearly Supports Injunctive Relief**

After extensive discovery, it is clear that the situation is exactly as set forth in the initial briefing on the P.I. Motion: the balance of harms tips dramatically in Scoobeez's favor. Amazon will suffer at most negligible harm from continuing to work with Scoobeez, whereas Scoobeez will suffer catastrophic harm if Amazon is allowed to unilaterally terminate (either actually or functionally) prior to Joint Plan confirmation.

Amazon employees have acknowledged that Scoobeez's performance is and remains par for its DSPs. Both the subjective impression of the Amazon employees responsible for dealing with Scoobeez, and Amazon's analytics model, establish that Scoobeez is average. *See* Kozin Depo., at 231:21-232:3; Wilson Depo., p. 199:16-205:25 (discussing the table presented in the Wilson Declaration). There simply cannot be any coherent argument that Amazon is being harmed with regard to any material element of the contractual relationship by continuing to do business with a DSP that is on par with its average performing DSPs.

1    Amazon can produce no evidence that it will suffer harm if it does not receive authorization from

2    this Court to terminate the Amazon Contracts, whether expressly or otherwise. ████████████

3    ████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████ (McCabe Depo. at 99:17-

6    18); (2) issues regarding business planning due to the "unknown" timelines; (McCabe Depo. at 199:18-

7    19); (3) being in a relationship with a DSP who has been subject to "multiple litigation" (Wilson Depo.

8    at 221:16-222:2); and (4) "hindering" Amazon's ability "ability to grow and scale their businesses"

9    [apparently referring to other DSPs] because we planned "to not have [Scoobeez] in our network."

10    Wilson Depo. at 222:7-11.

11    Preliminarily, even if they were true, these amorphous "harms" would not come close to

12    outweighing the real and substantial harm that would that would be suffered by the Debtors from

13    termination or further reduction in routes below historical levels.  Upon closer examination, however,

14    Amazon's rationales are simply excuses and should be rejected outright.

15    First, it is an axiomatic principle of bankruptcy law that Amazon cannot claim they are somehow

16    "harmed" by the bankruptcy and the related filings.  The suggestion is absurd, since the litigation is the

17    result of Amazon's unilateral actions to seek termination of the Agreement.  Such a rationale should be

18    rejected outright.

19    Second, Amazon has testified that even once Amazon decides to terminate a DSP, there is no

20    firm time table: "the average time it takes from a notification to an exit is somewhere around 75 days…

21    with a very wide range of some taking less, like three weeks, others taking much longer, like six months

22    or longer."  McCabe Depo. at 15-19.  Thus, the uncertainty is not unusual.  Regardless, this argument

23    again ignores reality that **the uncertainty Amazon complains of is solely the result of Amazon's**

24    **actions**.  If Amazon wanted certainty in is planning, all it would have to do is agree to continue to work

25    with Scoobeez for an agreed time period.

26    Third, the supposed risks associated with wage and hour litigation are illusory.  Amazon's

27    position is based on three litigation matters, all of which are pre-petition.  Terminating now in no way

28    impacts Amazon's costs associated with those litigations.  Further, one of the cases was already settled

pre-petition, another has now settled in principle, and a third included allegations that the plaintiff was battered by an Amazon employee (undermining the suggested that Scoobeez's was the cause of the complaint). It should also be noted that the pending settlement of the Vega/Key PAGA case will bar any other California wage and hour claims, substantially reducing any risk there might be to Amazon.

██████████████████████████████████████████████████

███████████   *See* Wilson Depo. at 84:7-9; 85:18-25. There is no testimony, nor could there be testimony, that Scoobeez is somehow taking the "spot" of another DSP, given Amazon's substantial projected growth.

In contrast, allowing Amazon to lift the stay and terminate the Amazon Contract immediately as requested by Amazon would cause substantial destruction of the Debtors' businesses and reorganization efforts, cause the Debtors to potentially incur administrative claims and become administratively insolvent (including due to WARN Act liability, which requires 60 days advance notice of closure to avoid), and needlessly disrupt the lives of the Debtors' employees.

On Feburary 14, 2020, the Debtors filed their Chapter 11 Joint Plan of Reorganization, supported and agreed among the Debtors, their secured lender Hillair and the Committee on behalf of general unsecured creditors. The Plan calls for a reorganization of the Debtors, provided they continue to meet a threshold amount of net working capital. The Plan provides a $1.5 million carveout for the Estates, and a trust with litigation claims and potential excess from the carveout in which Class 4 General Unsecured Creditors share if they vote in favor of the Plan. The Plan provides more value to the estate and its constituents than would result from a chapter 7 conversion. The Debtors expect to imminently file their disclosure statement and motion seeking approval of solicitation procedures, in order to pursue confirmation of the Plan. If the Court allows Amazon to terminate the Amazon Contract as requested by Amazon, it would derail the Plan and the Debtors and their constituents will be irreparably harmed.

The Debtors have a reorganization under their chapter 11 Plan in sight with the support of their secured lender Hillair and the Committee on behalf of general unsecured creditors. The Debtors require runway in order to achieve it, as intended by the Bankruptcy Code and the automatic stay.

## IV.  THERE IS NO BASIS FOR RELIEF FROM STAY

As abundantly discussed in the oppositions of the Debtors [Docket No. 419], the Committee [417] and Hillair [418], to Amazon's motion requesting that this Court lift the automatic stay, the Debtors' rights under the critical Amazon Contract are entitled to the fundamental protection of the automatic stay as property of the estate.  11 U.S.C. §§ 541(a)(1), 326(a)(3); *see also In re Computer Communications, Inc.*, 824 F.2d 725, 729 (9th Cir. 1987); *In re Carroll*, 903 F.2d 1266, 1271 (9th Cir. 1990).  The automatic stay promotes the goal of equality of distribution by preventing piecemeal dismemberment of the bankruptcy estate while assuring that the debtor in possession has an opportunity to use property necessary for an effective reorganization. *See Plumberex Specialty Products, Inc.*, 311 B.R. 551, 556 (Bankr. C.D. Cal. 2004).   Precisely in accordance with that key goal of chapter 11, the Debtors propose that the Court maintain the status quo to prevent dismemberment of their estates, and not allow Amazon to terminate its contract, which is the lifeblood of the Debtors' business, while the Debtors are trying to reorganize through their pursuit of confirmation of the Plan proposed by the Debtors, Hillair and the Committee.

Unless an exception applies, the automatic stay prohibits any acts to terminate or modify an estate's interests in a contract and therefore the Court should prevent Amazon from doing so.  *In re FirstEnergy Solutions Corp.,* 596 B.R. 631, 636 (Bankr. N.D. Ohio 2019); *see also In re National Environmental Waste Corp.,* 191 B.R. 832, 834 (Bankr. C.D.Cal. 1996) ("since Ninth Circuit law holds that contract rights constitute property of the estate, the City's unilateral termination of Newco's contract is clearly an action exercising control over property of the estate").

### A.    There is No Cause for Relief from the Automatic Stay

Amazon has failed to meet its burden of proof that "cause" exists to lift the automatic stay as requested by Amazon pursuant to section 362(d)(1) of the Bankruptcy Code.  *Plumberex*, 311 B.R. at 557.[2]  As fully set forth in the Scoobeez Opposition, Amazon cannot establish "cause" based solely on a contractual right to terminate.

---

[2] Amazon has not even argued that the Debtors do not have equity in the Amazon Contract or that the Amazon Contract is not necessary to an effective reorganization pursuant to section 362(d)(2), presumably because Amazon understands that the Debtors have such equity and the Amazon Contract is necessary for the Debtors to have an effective reorganization. Therefore, Amazon's request to modify the automatic stay should be denied.

1    Amazon provides no evidence to support its contention that its rights under the Amazon

2    Contracts are not adequately protected.  Moreover, Amazon also fails to provide any legal authority that

3    would support its position that it is entitled to any adequate protection of its right to termination, beyond

4    the Debtors' continued performance under the Amazon Contract, which is not in dispute.  That is

5    because there is no such law.  Indeed, a finding that relief could be granted based on a lack of adequate

6    protection of a termination provision would turn the purpose of the automatic stay on its head, because

7    every contract counter-party with a contractual right to termination would be entitled to relief from stay.

8    For this reason, courts have held that "cause" to lift the stay does not arise from a lack of adequate

9    protection of a termination clause.  *See In re O-Jay Foods, Inc.*, 110 B.R. 895, 897 (Bankr. D. Minn.

10   1989); *In re Deppe*, 110 B.R. 898, 907 (Bankr. D. Minn. 1990).

11       Contrary to Amazon's assertions, Amazon's rights under the Amazon Contracts are clearly

12   protected by the Debtors continued performance thereunder.  Since the commencement of the Chapter

13   11 Cases, the Debtors have continued to perform in an exemplary fashion – a fact which Amazon clearly

14   does not dispute as it does not even allege that the Debtors have failed to perform any of their delivery

15   obligations.  Indeed, the admissible evidence demonstrates that Amazon has rewarded the Debtors'

16   performance with extremely high marks, and acknowledges that it had no issues with the performance of

17   the Debtors.  To the extent that Amazon is entitled to adequate protection, the Debtors' continued

18   performance is more than sufficient.  *See In re Nat'l Hydro-Vac Indus. Serv., L.L.C.*, 262 B.R. 781, 787

19   (Bankr. E.D. Ark. 2001).  As discussed in above, and as was evidenced by the deposition of James

20   Wilson, Amazon's own internal documents show that more than 75% of the Debtors' Scorecard ratings

21   by Amazon were at least "great".  The Debtors' efforts to run their businesses better, through changes in

22   chapter 11, has worked, as evidenced by Amazon's admission that the Debtors' performance is on par

23   with the other Delivery Service Providers in the same Amazon hubs.  *See Kozin Depo.*, at 231:21-232:3.

24       The evidence revealed in discovery, as discussed above, proves that Amazon's only reason for

25   terminating Scoobeez was because of 3 litigations that were commenced pre-petition.  *See Wilson Depo.*

26   at 300:8-15.  However, in evaluating whether "cause" exists to lift the automatic stay, Bankruptcy

27   Courts focus more on whether cause presently exists, rather than whether it existed in the past.

28   Amazon's complaints about the way the company was run prior to the chapter 11 bankruptcy filing

(which, again, the evidence indicates are the actual reason for Amazon's termination and lift stay effort, rather than any other noise Amazon has alleged), are not appropriate bases for "cause" given the Debtors' transformation using chapter 11.  Those issues are in the past and do not constitute the requisite "cause" required by the Bankruptcy Code.   The case *In re Holly's, Inc.*, 140 B.R. 643, is illustrative.  In that case, a creditor argued that "cause" existed for the Court to lift or modify the automatic stay, because of alleged prepetition breaches, mismanagement and financial malfeasance (including misappropriation of funds, increases in salary on the eve of bankruptcy and failure to pay taxes) under the prior, deceased CEO (who ruled the debtor like a "Czar" as "his company").  *Id*. at 689.  The Bankruptcy Court determined that the problems were due to the prior CEO and current postpetition management made efforts to correct the mismanagement, such as using separate bank accounts, improving their financial reporting and implementing a different organizational management structure. Therefore, the Bankruptcy Court ruled that prepetition mismanagement should not be considered sufficient "cause" to modify the stay.  *Id. at* 690.  Similarly, in this case, the Debtors resolved any alleged mismanagement or financial improprieties through the chapter 11 process, as intended, including through separation with the former CEO who was the alleged mastermind of any misappropriation of funds and establishment of financial reporting and a new corporate governance structure including Chief Restructuring Officer, a new board of directors and a requirement for prior approval by the CRO of payments above $10,000.  Therefore, as in the *Holly's* case, "cause" does not exist to lift the stay.

Moreover, and despite what Amazon would have this Court believe, it is far from clear that Amazon actually has an unfettered right to terminate the Amazon Contracts on just thirty (30) days' notice.  The provision that allegedly gives Amazon this right expressly only applies to the Terms (as that term is defined in the Amazon Contracts), leaving the provisions of the current work order in place. Even if the Terms were cancelled, the current Work Order would remain in effect, and the duty of good faith and fair dealing would require Amazon to act consistent with that duty in winding up the contractual relationship.

**B.** **The Balance of Harms Strongly Favors Maintenance of the Status Quo Through Plan Confirmation**

Even to the extent "cause" exists (which it does not) the Court would consider a balancing of harms in determining whether to grant relief from stay. For the reasons set forth above with regard to the balance of harms with regard to injunctive relief, any rational evaluation of harms clearly tips heavily in favor of the Debtors, and maintaining the going concern value of their business pending confirmation of the Joint Plan.

## V. CONCLUSION

For the reasons set forth in the P.I. Motion, the Supplement, the Scoobeez Opposition, and as further set forth above, the Debtors respectfully request that this Court (1) deny the relief sought by and through the Stay Relief Motion, (2) enter a preliminary injunction to maintain the status quo through plan confirmation, and (3) award such other relief as this Court may deem just and proper.

DATED:  February 19, 2019

**FOLEY & LARDNER LLP**

*/s/ Shane J. Moses*
Shane J. Moses

Attorneys for Debtors and Debtors-in-Possession
SCOOBEEZ, SCOOBEEZ GLOBAL, INC., and
SCOOBUR, LLC

## <u>DECLARATION OF GEORGE VOSKANIAN</u>

I, George Voskanian, hereby declare as follows:

1.      I am over 18 years of age.  I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

2.      I am the Chief Financial Officer and Co-Chief Executive Officer for the Debtors, and, in those capacities, among other, maintain books, records, files and documents relating to the Debtors. As such, I am generally responsible for managing the operations of the Debtors and, thus, am familiar with the Debtors' operations, assets, and liabilities. In the ordinary course of business, I rely on the maintenance of true and correct copies of various documents relating to the Debtors. I have personally worked on books, records, files and documents, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from my business records, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of the Debtors' business at or near the time of the acts, conditions or events to which they related.

3.      I make this declaration in support of the Debtor's motion for preliminary injunction (the "P.I. Motion") and the Debtor's opposition to Amazon's motion for relief from stay (the "Scoobeez Opposition"), and specifically in support of the supplemental pleading to which this declaration is annexed.[1]

4.      Attached hereto as **<u>Exhibit A</u>** are true and accurate charts showing total Routes per month, and total revenue under the Amazon Contract for 2018, 2019, and 2020 to date.  This also shows that whereas 2018 showed the expected seasonal increase in Routes entering the fall, Routes in 2019 did not include any peak season increase, and instead decreased overall from September through December 2019.

5.      Attached hereto as **<u>Exhibit B</u>** is a true and accurate summary of Scoobeez scorecard overall ratings from week 1, 2019 through present.  Both the numerical table and the chart show the overall rating for each station on a 1 through 4 scale.  Under Amazon's current scorecard system, a 1 on the attached chart represents "poor," 2 represents "fair," 3 represents "great," and 4 represents both

---

[1] All capitalized terms used herein shall have the same meaning ascribed in the P.I. Motion and Scoobeez Opposition, unless otherwise stated.

"fantastic" and "fantastic plus."  Under the prior scorecards, there were only four levels, so fantastic and

fantastic plus were both represented here as a 4 for consistency, and to create a conservative

representation.  As can clearly be seen, Scoobeez scorecards since week 39 of 2019 have been almost

universally at least "great."

6.      Attached hereto as **<u>Exhibit C</u>** are true and correct copies of the Scoobeez scorecards for

week six of 2020.  All twelve scorecards have an overall rating of "fantastic" or "fantastic plus."

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct to the best of my knowledge, information and belief.

Executed this 19th day of February, 2020.


GEORGE VOSKANIAN
Co-CEO and Chief Financial Officer

DECLARATION OF G. VOSKANIAN

4816-0895-0709.1

# EXHIBIT A

| | Jan-18 | Feb-18 | Mar-18 | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | Sep-18 | Oct-18 | Nov-18 | Dec-18 | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | Aug-19 | Sep-19 | Oct-19 | Nov-19 | Dec-19 | Jan-20 | Feb-20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Chicago** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *DCH1* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes - AM (Monthly) | 723 | 604 | 695 | 669 | 683 | 592 | 703 | 755 | 771 | 864 | 931 | 1,130 | 644 | 686 | 744 | 767 | 1,019 | 957 | 1,106 | 1,228 | 976 | 681 | 805 | 822 | 736 | 178 |
| Number of routes - PM (Monthly) | 333 | 305 | 340 | 308 | 313 | 308 | 331 | 342 | 326 | 336 | 308 | 325 | 306 | 300 | 334 | 298 | 363 | 308 | 326 | 319 | 341 | 363 | 352 | 338 | 346 | 87 |
| *DCH2* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | 476 | 514 | 534 | 503 | 510 | 490 | 507 | 495 | 493 | 508 | 467 | 575 | 445 | 407 | 453 | 431 | 587 | 492 | 564 | 634 | 660 | 820 | 823 | 800 | 600 | 136 |
| *DCH3* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | 600 | 533 | 599 | 574 | 572 | 577 | 568 | 531 | 567 | 534 | 447 | 631 | 407 | 352 | 376 | 333 | 469 | 419 | 474 | 434 | 379 | 453 | 420 | 492 | 497 | 127 |
| *Total* | **2,132** | **1,956** | **2,168** | **2,054** | **2,078** | **1,967** | **2,109** | **2,123** | **2,157** | **2,242** | **2,153** | **2,661** | **1,802** | **1,745** | **1,907** | **1,829** | **2,438** | **2,176** | **2,470** | **2,615** | **2,356** | **2,317** | **2,400** | **2,452** | **2,179** | **528** |
| **Los Angeles** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *DLA3* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | 717 | 632 | 730 | 619 | 660 | 673 | 689 | 707 | 712 | 796 | 874 | 983 | 771 | 675 | 751 | 794 | 1,103 | 946 | 1,040 | 1,095 | 947 | 620 | 601 | 618 | 587 | 147 |
| Number of routes - PM | 274 | 248 | 282 | 306 | 312 | 304 | 301 | 386 | 414 | 344 | 236 | 219 | 126 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| *DLA8* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | 642 | 554 | 597 | 538 | 559 | 563 | 591 | 605 | 540 | 582 | 635 | 683 | 641 | 542 | 609 | 595 | 779 | 641 | 755 | 740 | 670 | 667 | 734 | 802 | 571 | 138 |
| Number of routes - PM | 271 | 253 | 278 | 266 | 278 | 270 | 269 | 277 | 265 | 178 | 5 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| *DLA9* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | 738 | 669 | 787 | 661 | 709 | 721 | 756 | 849 | 883 | 987 | 1,308 | 1,400 | 829 | 803 | 917 | 851 | 1,108 | 835 | 893 | 898 | 796 | 669 | 632 | 717 | 560 | 137 |
| *DPS1* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | - | - | - | - | - | - | - | - | - | 125 | 554 | 706 | 534 | 461 | 507 | 556 | 899 | 759 | 881 | 786 | 740 | 939 | 926 | 952 | 870 | 224 |
| *Total* | **2,642** | **2,356** | **2,674** | **2,390** | **2,518** | **2,531** | **2,601** | **2,824** | **2,814** | **3,012** | **3,612** | **3,991** | **2,901** | **2,481** | **2,784** | **2,796** | **3,889** | **3,181** | **3,569** | **3,519** | **3,153** | **2,895** | **2,893** | **3,089** | **2,588** | **646** |
| **Texas** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| *DAU1* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | 955 | 787 | 858 | 885 | 854 | 892 | 974 | 954 | 1,078 | 1,571 | 1,664 | 1,764 | 1,444 | 1,072 | 1,253 | 1,151 | 1,468 | 1,371 | 1,342 | 1,344 | 1,287 | 1,251 | 1,112 | 1,142 | 893 | 206 |
| *DDA1* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | - | - | - | - | 156 | 492 | 629 | 533 | 547 | 528 | 678 | 941 | 464 | 305 | 355 | 442 | 824 | 737 | 754 | 741 | 681 | 665 | 668 | 695 | 559 | 144 |
| *DDA2* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | 707 | 710 | 799 | 798 | 763 | 707 | 871 | 969 | 953 | 1,059 | 1,290 | 1,336 | 1,170 | 1,011 | 1,119 | 1,100 | 1,494 | 1,233 | 1,386 | 1,441 | 1,256 | 809 | 985 | 1,182 | 1,169 | 319 |
| *DDA3* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | 907 | 620 | 823 | 755 | 757 | 805 | 765 | 728 | 839 | 917 | 1,224 | 1,475 | 1,029 | 623 | 724 | 736 | 1,225 | 956 | 1,162 | 1,189 | 996 | 905 | 953 | 1,254 | 1,101 | 248 |
| *SATS* | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Number of routes (Monthly) | 689 | 639 | 687 | 689 | 749 | 677 | 810 | 899 | 875 | 903 | 841 | 1,285 | 1,079 | 901 | 1,135 | 1,064 | 1,412 | 1,233 | 1,321 | 1,228 | 964 | 801 | 556 | 782 | 666 | 151 |
| *Total* | **3,258** | **2,756** | **3,167** | **3,127** | **3,279** | **3,573** | **4,049** | **4,083** | **4,292** | **4,978** | **5,697** | **6,801** | **5,186** | **3,912** | **4,586** | **4,493** | **6,423** | **5,330** | **5,965** | **5,943** | **5,184** | **4,431** | **4,274** | **5,055** | **4,388** | **1,068** |
| **Total** | 8,032 | 7,068 | 8,009 | 7,571 | 7,875 | 8,071 | 8,759 | 9,030 | 9,263 | 10,232 | 11,462 | 13,453 | 9,889 | 8,138 | 9,277 | 9,118 | 12,750 | 10,687 | 12,004 | 12,077 | 10,693 | 9,643 | 9,567 | 10,596 | 4,388 | 8,127 |

| 01/31/18 | 02/28/18 | 03/31/18 | 04/30/18 | 05/31/18 | 06/30/18 | 07/31/18 | 08/31/18 | 09/30/18 | 10/31/18 | 11/30/18 | 12/31/18 | 01/31/19 | 02/28/19 | 03/31/19 | 04/30/19 | 05/31/19 | 06/30/19 | 07/31/19 | 08/31/19 | 09/30/19 | 10/31/19 | 11/30/19 | 12/31/19 | 01/31/20 | AS OF 2/8 02/29/20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8,032 | 7,068 | 8,009 | 7,571 | 7,875 | 8,071 | 8,759 | 9,030 | 9,263 | 10,232 | 11,462 | 13,453 | 9,889 | 8,138 | 9,277 | 9,118 | 12,750 | 10,687 | 12,004 | 12,077 | 10,693 | 9,643 | 9,567 | 10,596 | 9,155 | 8,127 |



3:56 PM
02/19/20
Accrual Basis

**Scoobeez**
**Profit & Loss**
**August 2018 through April 2019**

| Revenue | Aug 18 | Sep 18 | Oct 18 | Nov 18 | Dec 18 | Jan 19 | Feb 19 | Mar 19 | Apr 19 | May 19 | June 19 | July 19 | August 19 | September 19 | October 19 | November 19 | December 19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ordinary Income/Expense | | | | | | | | | | | | | | | | | |
| Income | | | | | | | | | | | | | | | | | |
| 44000 · Sales | | | | | | | | | | | | | | | | | |
| 40200 · AMZL | | | | | | | | | | | | | | | | | |
| 40201 · DCH1 - Alsip, IL | 387,715.35 | 389,778.10 | 406,302.15 | 502,698.12 | 590,872.82 | 578,761.09 | 342,881.52 | 390,339.81 | 417,402.36 | 434,824.11 | 461,504.96 | 493,058.37 | 543,466.51 | 458,081.01 | 347,459.03 | 307,810.09 | 399,682.54 |
| 40213 · DDA3 - Ft. Worth, TX | 265,548.34 | 319,023.91 | 316,311.55 | 459,287.71 | 516,378.91 | 443,325.20 | 236,921.31 | 292,573.60 | 311,313.49 | 387,697.04 | 389,723.78 | 396,840.94 | 304,505.78 | 326,088.00 | 296,158.53 | 343,567.19 | 458,059.08 |
| 40216 · SAT5 - San Antonio, TX | 316,922.81 | 309,773.31 | 305,403.87 | 423,352.15 | 453,856.61 | 406,756.94 | 326,243.32 | 423,670.68 | 415,338.73 | 462,039.37 | 458,852.35 | 468,258.22 | 464,807.79 | 373,127.00 | 303,994.44 | 242,540.70 | 311,092.38 |
| 40217 · DDA1 - Farmers Branch, TX | 170,820.12 | 171,279.85 | 154,617.09 | 282,052.75 | 263,056.96 | 145,073.30 | 98,061.59 | 126,318.16 | 161,733.85 | 208,059.97 | 235,460.52 | 220,962.30 | 217,389.12 | 200,631.96 | 214,137.90 | 213,655.15 | 219,293.35 |
| 40218 · DDA2 - Garland, TX | 355,303.30 | 352,475.80 | 351,687.98 | 472,693.29 | 468,427.13 | 420,467.10 | 345,505.04 | 394,688.70 | 387,867.90 | 447,728.24 | 437,563.46 | 478,496.92 | 483,213.67 | 420,598.04 | 304,440.44 | 388,205.55 | 422,413.26 |
| 40223 · DCH3 - Lisle, IL | 203,749.66 | 224,749.26 | 205,027.70 | 236,501.04 | 316,279.51 | 173,758.39 | 141,814.14 | 163,773.09 | 151,206.82 | 170,150.44 | 192,365.58 | 183,050.31 | 175,484.05 | 162,979.00 | 189,619.36 | 176,691.00 | 212,625.93 |
| 40224 · DLA3 - Commerce | 358,748.49 | 371,530.04 | 358,097.86 | 412,314.18 | 423,823.06 | 314,977.44 | 239,891.18 | 248,709.57 | 307,399.27 | 355,648.23 | 358,395.95 | 374,815.50 | 398,955.09 | 345,166.00 | 233,602.75 | 244,720.11 | 250,861.61 |
| 40226 · DLA8 - Hawthorne, | 288,542.63 | 271,718.80 | 248,080.64 | 318,568.17 | 257,370.53 | 246,591.10 | 202,753.35 | 236,721.80 | 239,877.22 | 255,920.38 | 263,422.15 | 274,230.14 | 275,439.24 | 252,104.00 | 252,316.85 | 276,567.66 | 303,060.27 |
| 40227 · DLA9 - Irvine | 323,861.76 | 350,389.67 | 348,946.15 | 503,406.49 | 504,048.53 | 303,961.44 | 295,980.60 | 349,645.36 | 342,382.01 | 361,302.79 | 327,168.40 | 329,551.92 | 322,290.12 | 287,387.00 | 247,020.03 | 237,191.88 | 285,728.17 |
| 40230 · DCH2 - Chicago, IL | 199,184.49 | 200,845.37 | 194,230.35 | 205,530.78 | 239,688.41 | 189,817.99 | 159,767.45 | 191,160.96 | 194,031.03 | 207,501.78 | 216,775.27 | 215,845.62 | 250,253.25 | 260,331.00 | 332,549.79 | 333,186.48 | 307,012.83 |
| 40231 · DAU1 - Austin, TX | 353,478.22 | 402,774.65 | 536,257.21 | 634,563.18 | 777,566.73 | 511,403.61 | 374,289.90 | 455,645.62 | 437,376.21 | 457,226.10 | 435,746.67 | 453,421.54 | 447,888.15 | 431,992.01 | 433,641.88 | 385,674.98 | 394,022.58 |
| 40232 · DPS1 - Pasadena, CA | 0.00 | 0.00 | 42,452.99 | 240,097.80 | 258,003.15 | 197,233.51 | 174,092.63 | 193,756.05 | 236,848.66 | 290,812.50 | 303,224.36 | 325,494.31 | 286,588.21 | 272,915.01 | 376,285.93 | 356,646.13 | 368,695.00 |
| Total 40200 · AMZL | 3,223,875.17 | 3,364,338.76 | 3,469,415.54 | 4,691,065.66 | 5,089,374.35 | 3,586,695.11 | 2,838,202.03 | 3,467,003.42 | 3,602,797.55 | 4,038,910.95 | 4,080,203.45 | 4,214,026.09 | 4,260,280.98 | 3,791,400.03 | 3,531,226.93 | 3,566,456.92 | 3,941,547.00 |

| | August 2019 TTM | September 2019 TTM | October 2019 TTM | November 2019 TTM | December 2019 TTM |
|---|---|---|---|---|---|
| | $ 46,802,314 | $ 47,229,375 | $ 47,291,187 | $ 46,166,578 | $ 45,018,750 |

**Scoobeez**

**Profit & Loss**

**August 2018 through April 2019**

Revenue



Chart Title

# EXHIBIT B

| Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|------|---|---|---|---|---|---|---|
| DCH2 | 2 | 4 | 4 | 3 | 3 | 2 | 3 |
| DCH1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 |
| DCH3 | 2 | 2 | 3 | 2 | 3 | 2 | 3 |
| DLA3 | 3 | 3 | 3 | 3 | 2 | 2 | 4 |
| DLA8 | 2 | 2 | 3 | 4 | 2 | 2 | 2 |
| DLA9 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| DPS1 | 3 | 3 | 3 | 4 | 2 | 3 | 2 |
| DAU1 | 3 | 2 | 2 | 2 | 2 | 2 | 3 |
| DDA1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 |
| DDA2 | 3 | 3 | 3 | 3 | 3 | 2 | 2 |
| DDA3 | 2 | 2 | 3 | 2 | 2 | 3 | 2 |
| DSX1 | 3 | 3 | 3 | 3 | 3 | 2 | 3 |



| 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|----|----|----|----|----|----|----|----|----|----|----|
| 2 | 2 | 2 | 3 | 3 | 4 | 3 | 2 | 3 | 2 | 2 | 2 | 3 |
| 1 | 2 | 2 | 2 | 2 | 3 | 3 | 2 | 2 | 1 | 1 | 2 | 2 |
| 2 | 2 | 3 | 2 | 2 | 3 | 3 | 2 | 3 | 3 | 2 | 3 | 4 |
| 3 | 3 | 3 | 4 | 4 | 4 | 4 | 3 | 2 | 2 | 3 | 2 | 3 |
| 3 | 2 | 3 | 3 | 2 | 4 | 2 | 3 | 2 | 2 | 2 | 4 | 3 |
| 3 | 2 | 2 | 2 | 2 | 3 | 2 | 2 | 2 | 3 | 3 | 3 | 2 |
| 3 | 2 | 2 | 3 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 2 | 2 |
| 2 | 3 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| 2 | 2 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 2 | 3 | 2 | 2 |
| 3 | 2 | 3 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 |
| 3 | 2 | 2 | 2 | 4 | 3 | 2 | 2 | 2 | 3 | 2 | 2 | 2 |
| 3 | 3 | 4 | 3 | 3 | 2 | 2 | 3 | 3 | 2 | 3 | 2 | 3 |

Scorecard grades from 1-4 (1=poor, 2=fair, 3=great, 4=fantastic or fantastic plus)



| 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 |
|----|----|----|----|----|----|----|----|----|----|----|----|----|
| 3 | 3 | 3 | 3 | 3 | 2 | 2 | 3 | 2 | 3 | 4 | 3 | 3 |
| 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 |
| 3 | 3 | 3 | 3 | 3 | 4 | 3 | 3 | 3 | 3 | 4 | 2 | 3 |
| 2 | 4 | 1 | 1 | 1 | 2 | 1 | 1 | 2 | 2 | 2 | 3 | 2 |
| 3 | 2 | 2 | 1 | 2 | 1 | 2 | 3 | 1 | 3 | 2 | 3 | 3 |
| 3 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| 2 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 3 | 3 | 3 | 3 |
| 3 | 3 | 1 | 1 | 1 | 2 | 2 | 2 | 1 | 3 | 2 | 3 | 3 |
| 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 |
| 3 | 3 | 2 | 3 | 3 | 4 | 4 | 3 | 3 | 4 | 3 | 4 | 3 |
| 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 3 | 3 | 4 |
| 2 | 4 | 4 | 3 | 3 | 4 | 4 | 4 | 3 | 4 | 4 | 4 | 4 |



| 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 |
|----|----|----|----|----|----|----|----|----|----|----|----|----|
| 3 | 2 | 2 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 4 |
| 2 | 2 | 1 | 2 | 2 | 2 | 3 | 2 | 3 | 3 | 3 | 3 | 4 |
| 1 | 4 | 2 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 4 |
| 1 | 2 | 2 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 |
| 2 | 3 | 2 | 3 | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 4 | 4 |
| 2 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 3 | 4 | 4 | 4 |
| 1 | 3 | 2 | 3 | 3 | 3 | 4 | 3 | 3 | 3 | 3 | 3 | 3 |
| 2 | 2 | 3 | 3 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 3 |
| 1 | 2 | 2 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| 1 | 2 | 2 | 2 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 |
| 1 | 2 | 3 | 2 | 3 | 4 | 3 | 4 | 3 | 4 | 4 | 3 | 4 |
| 2 | 2 | 4 | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |



| 47 | 48 | 49 | 50 | 51 | 52 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|----|----|----|----|----|----|----|----|----|----|----|----|----|
| 4 | 4 | 4 | 3 | 4 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 |
| 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| 4 | 4 | 3 | 3 | 3 | 4 | 3 | 4 | 4 | 3 | 4 | 4 | 3 |
| 4 | 4 | 3 | 4 | 3 | 3 | 3 | 4 | 3 | 3 | 4 | 4 | 4 |
| 4 | 3 | 4 | 3 | 3 | 4 | 3 | 4 | 4 | 4 | 3 | 4 | 3 |
| 4 | 4 | 4 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| 4 | 4 | 4 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| 3 | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 |
| 4 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 3 |
| 4 | 4 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 4 |
| 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 4 | 4 | 4 | 4 | 4 |
| 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |

EXHIBIT C

# DSP Delivery Excellence Performance

**SCBZ at DAU1**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic** | 1. Attrition Rate | |
| *See details on next page* | 2. Customer Escalation Defect DPMO |  |
| | 3. Delivered and Received | |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal        eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DAU1**
**Week 06**
**2020**

**Overall Standing:**    **Fantastic**



## SCBZ at DAU1 - Week 06

**DA Current Week Performance**

| | | | |
|---|---|---|---|
| **Fantastic** | A Top Performer! | | |
| **Great** | Exceeding Amazon Expectations | | |
| **Fair** | Meeting Amazon Expectations | | |
| **Poor** | Below Amazon Expectations | | |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps. | CC Opps. |
|---|------|----------------|--------------|-----------|----------------|-----|-----|---------|--------|--------|--------|------|-----------|----------|

# SCBZ at DAU1 - Week 06

**DA Trailing 6-Week Performance**

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings





# DSP Delivery Excellence Performance

**SCBZ at DCH1**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic**<br><br>*See details on next page* | 1. Attrition Rate<br>2. Customer Escalation Defect DPMO<br>3. Attended Delivery Accuracy |  |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal        eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DCH1**
**Week 06**
**2020**

**Overall Standing:**    **Fantastic**

| Poor | Fair | Great | Fantastic | Fantastic Plus |



## SCBZ at DCH1 - Week 06

**DA Current Week Performance**

| | | |
|---|---|---|
| Fantastic | A Top Performer! |
| Great | Exceeding Amazon Expectations |
| Fair | Meeting Amazon Expectations |
| Poor | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps. | CC Opps. |
|---|------|----------------|--------------|-----------|----------------|-----|-----|---------|--------|--------|--------|------|-----------|----------|

## SCBZ at DCH1 - Week 06

**DA Trailing 6-Week Performance**

*Drivers ranked by overall score, descending.*

| | | | | | |
|---|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings

**Metric**                                                                                    **Weighting**





# DSP Delivery Excellence Performance

**SCBZ at DCH2**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic** | 1. Attrition Rate | |
| *See details on next page* | 2. Customer Escalation Defect DPMO | |
| | 3. Delivered and Received | |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal        eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DCH2**
**Week 06**
**2020**

**Overall Standing:**    **Fantastic**



| Poor | Fair | Great | Fantastic | Fantastic Plus |

## SCBZ at DCH2 - Week 06

**DA Current Week Performance**

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps. | CC Opps. |
|---|------|----------------|--------------|-----------|----------------|-----|-----|---------|--------|--------|--------|------|-----------|----------|

## SCBZ at DCH2 - Week 06

**DA Trailing 6-Week Performance**

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|------|----------------|--------------|-----|-----|---------|--------|--------|--------|---------------------------|-------|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings

**Metric**

**Weighting**



# DSP Delivery Excellence Performance

**SCBZ at DCH3**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic** | 1. Attrition Rate | |
| | 2. Delivered and Received | |
| *See details on next page* | 3. Customer Escalation Defect DPMO | |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal        eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DCH3**
**Week 06**
**2020**

**Overall Standing:** **Fantastic**

| Poor | Fair | Great | Fantastic | Fantastic Plus |



## SCBZ at DCH3 - Week 06

**DA Current Week Performance**

| | Fantastic | A Top Performer! |
|---|---|---|
| | Great | Exceeding Amazon Expectations |
| | Fair | Meeting Amazon Expectations |
| | Poor | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps. | CC Opps. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

# SCBZ at DCH3 - Week 06

## DA Trailing 6-Week Performance

| | | | |
|---|---|---|---|
| **Fantastic** | A Top Performer! | | |
| **Great** | Exceeding Amazon Expectations | | |
| **Fair** | Meeting Amazon Expectations | | |
| **Poor** | Below Amazon Expectations | | |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|------|----------------|--------------|-----|-----|---------|--------|--------|--------|---------------------------|-------|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings

**Metric**

**Weighting**



# DSP Delivery Excellence Performance

**SCBZ at DDA1**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic** | 1. Attrition Rate | |
| *See details on next page* | 2. Delivered and Received | |
| | 3. Customer Escalation Defect DPMO | |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal          eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DDA1**
**Week 06**
**2020**

**Overall Standing:** **Fantastic**



## SCBZ at DDA1 - Week 06

**DA Current Week Performance**

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps. | CC Opps. |
|---|------|----------------|--------------|-----------|----------------|-----|-----|---------|--------|--------|--------|------|-----------|----------|

## SCBZ at DDA1 - Week 06

**DA Trailing 6-Week Performance**

| | Fantastic | A Top Performer! |
|---|---|---|
| | Great | Exceeding Amazon Expectations |
| | Fair | Meeting Amazon Expectations |
| | Poor | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings

**Metric**                                                                                          **Weighting**



# DSP Delivery Excellence Performance

**SCBZ at DDA2**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic** | 1. Attrition Rate | |
| *See details on next page* | 2. Customer Escalation Defect DPMO | |
| | 3. Delivered and Received | |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal          eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DDA2**
**Week 06**
**2020**

**Overall Standing:**   **Fantastic**



**SCBZ at DDA2 - Week 06**

**DA Current Week Performance**

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps. | CC Opps. |
|---|------|---------------|-------------|-----------|----------------|-----|-----|---------|--------|--------|--------|------|-----------|----------|

## SCBZ at DDA2 - Week 06

**DA Trailing 6-Week Performance**

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings

**Metric**
**Weighting**



# DSP Delivery Excellence Performance

**SCBZ at DDA3**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic** | 1. Attrition Rate | |
| *See details on next page* | 2. Customer Escalation Defect DPMO | |
| | 3. Delivered and Received | |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal          eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DDA3**
**Week 06**
**2020**

**Overall Standing:**    **Fantastic**



**SCBZ at DDA3 - Week 06**

## DA Current Week Performance

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps. | CC Opps. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

## SCBZ at DDA3 - Week 06

**DA Trailing 6-Week Performance**

| | |
|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings

**Metric**                                                                 **Weighting**





# DSP Delivery Excellence Performance

**SCBZ at DLA3**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic Plus**<br>*See details on next page* | 1. Delivered and Received<br>2. Delivery Completion Rate<br>3. High Performers Share |  |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal          eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DLA3**
**Week 06**
**2020**

**Overall Standing:**    **Fantastic Plus**



**SCBZ at DLA3 - Week 06**

**DA Current Week Performance**

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps. | CC Opps. |
|---|------|----------------|--------------|-----------|----------------|-----|-----|---------|--------|--------|--------|------|-----------|----------|

## SCBZ at DLA3 - Week 06

**DA Trailing 6-Week Performance**

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings

| Metric | Weighting |
| --- | --- |



# DSP Delivery Excellence Performance

**SCBZ at DLA8**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic** | 1. Attrition Rate | |
| *See details on next page* | 2. Customer Escalation Defect DPMO | |
| | 3. Delivered and Received | |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal          eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DLA8**
**Week 06**
**2020**

**Overall Standing:**    **Fantastic**



## SCBZ at DLA8 - Week 06

**DA Current Week Performance**

| | | | |
|---|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps | CC Opps |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

## SCBZ at DLA8 - Week 06

**DA Trailing 6-Week Performance**

| | Fantastic | A Top Performer! |
|---|---|---|
| | Great | Exceeding Amazon Expectations |
| | Fair | Meeting Amazon Expectations |
| | Poor | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings

**Metric**                                                                                        **Weighting**





# DSP Delivery Excellence Performance

**SCBZ at DLA9**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic Plus**<br>*See details on next page* | 1. Attrition Rate<br>2. Delivered and Received<br>3. Delivery Completion Rate |  |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal        eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DLA9**
**Week 06**
**2020**

**Overall Standing:**    **Fantastic Plus**



## SCBZ at DLA9 - Week 06

**DA Current Week Performance**

| Fantastic | A Top Performer! |
|---|---|
| Great | Exceeding Amazon Expectations |
| Fair | Meeting Amazon Expectations |
| Poor | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD Opps. | CC Opps. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

# SCBZ at DLA9 - Week 06

**DA Trailing 6-Week Performance**

*Drivers ranked by overall score, descending.*

| | | | | |
|---|---|---|---|---|
| Fantastic | A Top Performer! | | | |
| Great | Exceeding Amazon Expectations | | | |
| Fair | Meeting Amazon Expectations | | | |
| Poor | Below Amazon Expectations | | | |

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |

# Metric Definitions and Weightings

**Metric**                                                                                              **Weighting**



# DSP Delivery Excellence Performance

**SCBZ at DPS1**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic** | 1. Attrition Rate | |
| *See details on next page* | 2. Delivered and Received | |
| | 3. Customer Escalation Defect DPMO | |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal          eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DPS1**
**Week 06**
**2020**

## Overall Standing:  **Fantastic**



**SCBZ at DPS1 - Week 06**

**DA Current Week Performance**

| | Fantastic | A Top Performer! |
|---|---|---|
| | Great | Exceeding Amazon Expectations |
| | Fair | Meeting Amazon Expectations |
| | Poor | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD | CC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

## SCBZ at DPS1 - Week 06

**DA Trailing 6-Week Performance**

| | | |
|---|---|---|
| Fantastic | A Top Performer! |
| Great | Exceeding Amazon Expectations |
| Fair | Meeting Amazon Expectations |
| Poor | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Average Tier | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer Status | Weeks | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Fant. | Great | Fair | Poor |



# Metric Definitions and Weightings

**Metric**                                                                    **Weighting**



# DSP Delivery Excellence Performance

**SCBZ at DSX1**
**Week 06**
**2020**

## Week 06 Performance

| Overall Standing | Key Focus Areas | Top Drivers |
|---|---|---|
| **Fantastic Plus**<br><br>*See details on next page* | 1. Attrition Rate<br>2. Delivered and Received<br>3. Delivery Completion Rate | |

## Resources

1 Delivery Excellence Performance Program Guide
2 Delivery Excellence Performance Program Recorded Training Presentation
3 eDriving Mentor Portal        eDriving Support Page
4 Scorecard SOP

Questions?
- Discuss with your On-Road Area Manager
- Leverage the resources in the links above.
- Email the DSP Service Level Standards team (dsp-performance@amazon.com)

# DSP Scorecard

**SCBZ at DSX1**
**Week 06**
**2020**

**Overall Standing:** **Fantastic Plus**



## SCBZ at DSX1 - Week 06

**DA Current Week Performance**

| | |
|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

*Drivers ranked by overall score, descending.*

| # | Name | Transporter ID | Overall Tier | Delivered | Key Focus Area | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | DNRs | POD | CC |
|---|------|----------------|--------------|-----------|----------------|-----|-----|---------|--------|--------|--------|------|-----|-----|

## SCBZ at DSX1 - Week 06

**DA Trailing 6-Week Performance**

*Drivers ranked by overall score, descending.*

| | | |
|---|---|---|
| **Fantastic** | A Top Performer! |
| **Great** | Exceeding Amazon Expectations |
| **Fair** | Meeting Amazon Expectations |
| **Poor** | Below Amazon Expectations |

| # | Name | Transporter ID | Average | DCR | DAR | SWC-POD | SWC-CC | SWC-SC | SWC-AD | High/Low Performer | Weeks |
|---|------|----------------|---------|-----|-----|---------|--------|--------|--------|--------------------|-------|

# Metric Definitions and Weightings

**Metric**

**Weighting**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Foley & Lardner LLP, 555 South Flower Street, Suite 3300, Los Angeles, CA 90072-2411

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS' SUPPLEMENTAL BRIEF
(A) IN FURTHER SUPPORT OF THE  DEBTORS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION TO
PREVENT VIOLATION OF THE AUTOMATIC STAY, AND (B) IN OPPOSITION TO AMAZON LOGISTICS INC.'S
MOTION MODIFYING THE AUTOMATIC STAY; DECLARATION OF GEORGE VOSKANIAN** will be served or was
served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated
below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
02/19/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 02/19/2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case
or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first
class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

Honorable Julia W. Brand
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 02/19/2020, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/19/2020 | Sonia Gaeta | /s/ Sonia Gaeta |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
4811-1952-6069.1

# F 9013-3.1.PROOF.SERVICE

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Richard T Baum      rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
Michael Jay Berger      michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
Bradley E Brook      bbrook@bbrooklaw.com, paulo@bbrooklaw.com;brookecfmail@gmail.com
Richard W Esterkin      richard.esterkin@morganlewis.com
John-Patrick M Fritz      jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
Riebert Sterling Henderson      shenderson@gibbsgiden.com
Vivian Ho      BKClaimConfirmation@ftb.ca.gov
Dare Law      dare.law@usdoj.gov
Bret D Lewis      Bretlewis@aol.com, bdlawyager@gmail.com
Ashley M McDow      amcdow@foley.com,
sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
Stacey A Miller      smiller@tharpe-howell.com
Kevin H Morse      kmorse@clarkhill.com, blambert@clarkhill.com
Shane J Moses      smoses@foley.com, vgoldsmith@foley.com
Akop J Nalbandyan      jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
Rejoy Nalkara      rejoy.nalkara@americaninfosource.com
Anthony J Napolitano      anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
Jennifer L Nassiri      jennifernassiri@quinnemanuel.com
David L. Neale      dln@lnbyb.com
Sean A OKeefe      sokeefe@okeefelc.com, seanaokeefe@msn.com
Aram Ordubegian      ordubegian.aram@arentfox.com
Hamid R Rafatjoo      hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
Gregory M Salvato      gsalvato@salvatolawoffices.com,
calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
Daren M Schlecter      daren@schlecterlaw.com, assistant@schlecterlaw.com
Jeffrey S Shinbrot      jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
Steven M Spector      sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov
Kimberly Walsh      bk-kwalsh@texasattorneygeneral.gov
Eric D Winston      ericwinston@quinnemanuel.com
Eric K Yaeckel      yaeckel@sullivanlawgroupapc.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**