Ashley M. McDow, SBN 245114
John A. Simon (pro hac vice)
Shane J. Moses, SBN 250533
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2411
Telephone:   213.972.4500
Facsimile:   213.486.0065
Email:       amcdow@foley.com

Attorneys for the Debtors and Debtors in
Possession, Scoobeez, Inc., Scoobur, LLC,
Scoobeez Global, Inc.


David L. Neale, SBN 141225
John-Patrick M Fritz, SBN 245240
LEVENE NEALE BENDER
YOO & BRILL, LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067
Telephone:   310.229.1234
Facsimile:   310.229.1244
Email:       dln@lnbyb.com
Email:       jpf@lnbyb.com

Attorneys for the Official Committee
of Unsecured Creditors

Anthony J Napolitano, SBN 227691
BUCHALTER, A PROFESSIONAL
CORPORATION
1000 Wilshire Blvd., Suite1500
Los Angeles, CA 90017-2457
Telephone:   213.891.5109
Facsimile:   213.630.5834
Email:       anapolitano@buchalter.com


Adam H. Friedman (pro hac vice)
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, NY  10019
Telephone:   212.451.2216
Facsimile:   212.451.2222
Email:       afriedman@olshanlaw.com

Attorneys for Hillair Capital
Management LLC

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SCOOBEEZ, INC. et al.<br><br>        Debtors and Debtors<br>        in Possession. | Lead Case No. 2:19-bk-14989-WB<br>(Jointly Administered with<br>Case Nos. 2:19-bk-14991; 2:19-bk-14997)<br><br>Chapter 11<br><br>**FIRST AMENDED CHAPTER 11 JOINT PLAN OF REORGANIZATION AS PROPOSED BY THE DEBTORS, HILLAIR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

## TABLE OF CONTENTS

**Page**

| | | | |
|---|---|---|---|
| **I.** | INTRODUCTION | | 1 |
| **II.** | DEFINITIONS AND RULES OF CONSTRUCTION | | 1 |
| | **A.** | **Defined Terms** | 1 |
| | **B.** | **Other Terms** | 15 |
| | **C.** | **Computation of Time** | 16 |
| | **D.** | **Exhibits** | 16 |
| **III.** | CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS | | 16 |
| | **A.** | **Summary** | 16 |
| | **B.** | **Unclassified Claims** | 16 |
| | | **1.** In General | 16 |
| | | **2.** Adequate Protection Claims | 17 |
| | | **3.** Administrative Expenses | 17 |
| | | **4.** Priority Tax Claims | 19 |
| | | **5.** Intercompany Claims | 20 |
| | **C.** | **Classification and Treatment** | 20 |
| | | **1.** Class 1: Other Priority Claims | 20 |
| | | **2.** Class 2: Senior Secured Hillair Claims | 21 |
| | | **3.** Class 3: Other Secured Claims | 21 |
| | | **4.** Class 4: General Unsecured Claims | 22 |
| | | **5.** Class 5: Equity Interests | 23 |
| **IV.** | ACCEPTANCE OR REJECTION OF THE PLAN | | 24 |
| | **A.** | **Voting Classes** | 24 |
| | **B.** | **Voting Rights of Holders of Disputed Claims** | 24 |
| | **C.** | **Acceptance by Impaired Classes** | 24 |
| | **D.** | **Presumed Acceptance/Rejection of the Plan** | 24 |
| **V.** | PROVISIONS FOR TREATMENT OF DISPUTED. CONTINGENT. OR UNLIQUIDATED CLAIMS AND ADMINISTRATIVE EXPENSES | | 24 |
| | **A.** | **Resolution of Disputed Claims** | 24 |
| | **B.** | **Reserve for Disputed Claims** | 25 |
| | **C.** | **Exclusive Right to Object to Claims** | 26 |
| | **D.** | **Investigation Regarding Disputed Claims** | 26 |
| | **E.** | **Distribution After Allowance** | 27 |
| **VI.** | IMPLEMENTATION OF THE PLAN | | 27 |
| | **A.** | **Transfer of the Hillair Causes of Action** | 28 |
| | **B.** | **Vesting of the Remaining Assets and Transfer** | 28 |
| | **C.** | **Vesting of the Creditor Trust Assets** | 29 |
| | **D.** | **Corporate Action** | 29 |
| | **E.** | **Issuance of New Equity Interests** | 31 |
| | **F.** | **Securities Registration Exemption** | 31 |
| | **G.** | **Effective Date Funding** | 31 |
| | **H.** | **Withdrawal of the Committee Challenge** | 32 |
| | **I.** | **Working Capital Requirement** | 32 |
| | **J.** | **Corporate Governance and Management** | 32 |
| | **K.** | **Cancellation of Existing Securities and Agreements** | 32 |
| | **L.** | **Substantive Consolidation** | 32 |
| | **M.** | **Establishment of the Creditor Trust** | 33 |
| | | **1.** Generally | 33 |
| | | **2.** Beneficiaries | 33 |
| | | **3.** Implementation of the Creditor Trust | 33 |
| | | **4.** Transfer of the Creditor Trust Assets | 34 |
| | | **5.** Representative of the Estate | 34 |
| | | **6.** Provisions Relating to Federal Income Tax Compliance | 35 |

|  | 7. | Cooperation with Creditor Trustee. | 35 |
|  | 8. | Compensation of the Creditor Trustee/Removal of the Creditor Trustee. | 36 |
|  | 9. | Resignation of Creditor Trustee. | 36 |
|  | 10. | Funding of Post-Effective Date Plan Expenses. | 36 |
|  | 11. | Estate Causes of Action. | 37 |
|  | 12. | Post-Effective Date Professional Fees. | 38 |
|  | 13. | Approval for Disposition of Assets. | 39 |
|  | 14. | Compromise of Controversies. | 39 |
|  | 15. | Bankruptcy Court Approval Relative to Post-Confirmation Matters | 39 |
|  | 16. | Creditor Trustee Certification. | 39 |
|  | 17. | Final Decree. | 40 |
|  | 18. | Other Rights, Powers and Duties of Creditor Trustee. | 40 |
|  | 19. | Resolution of Disputes. | 40 |
|  | 20. | Termination of Employment of Creditor Trustee. | 40 |
|  | 21. | Bar Date for Filing Avoidance Action Payment Claims. | 40 |
|  | N. | Issuance and Execution of Plan Related Documents. | 41 |
|  | O. | Dissolution of the Committee. | 41 |
| VII. | | DISTRIBUTIONS UNDER THE PLAN | 41 |
|  | A. | In General. | 41 |
|  | B. | Manner of Payment Under the Plan. | 41 |
|  | C. | Manner of Distribution of Other Property. | 42 |
|  | D. | Set-offs. | 42 |
|  | E. | Distribution of Unclaimed Property. | 42 |
|  | F. | De Minimis Distributions. | 42 |
|  | G. | Saturday, Sunday or Legal Holiday. | 42 |
|  | H. | Delivery of Distributions, Address of Holder. | 42 |
|  | I. | Payment of Fees and Expenses of Creditor Trustee. | 43 |
|  | J. | Approval for Schedule of Proposed Distributions. | 43 |
|  | K. | Further Assurances Regarding Distributions. | 43 |
|  | L. | Creditor's Payment of Obligations or Turn Over of Property to the Creditor Trustee. | 43 |
| VIII. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 44 |
|  | A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 44 |
|  | B. | Bar Date for Rejection Damage Claims. | 45 |
|  | C. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. | 45 |
|  | D. | Procedures Relating to the Assumption and Rejection of Executory Contracts | 45 |
|  | E. | Modifications, Amendments, Supplements, Restatements or Other Agreements. | 47 |
|  | F. | Reservation of Rights. | 47 |
|  | G. | Insurance Policies. | 47 |
| IX. | | EFFECTIVENESS OF THE PLAN | 48 |
|  | A. | Conditions Precedent. | 48 |
|  | B. | The Effective Date. | 48 |
|  | C. | Confirmation Request. | 49 |
|  | D. | Notice of the Effective Date. | 49 |
| X. | | RETENTION OF JURISDICTION. | 49 |
| XI. | | RELEASES, EXCULPATION AND INJUNCTION | 51 |
|  | A. | Exculpation | 51 |
|  | B. | Releases | 51 |
|  | C. | Exception from All Releases | 54 |
|  | D. | No Liability for Solicitation or Participation. | 54 |
|  | E. | Good Faith. | 54 |
|  | F. | Injunction Enjoining Holders of Claims Against Debtors. | 54 |
|  | G. | Discharge of the Debtors | 55 |

4847-5170-1428.8

| | | | |
|---|---|---|---|
| **XII.** | | MISCELLANEOUS PROVISIONS .................................................... | 56 |
| | A. | Payment of Statutory Fees. ............................................................ | 56 |
| | B. | Preservation of Rights of Action. .................................................. | 56 |
| | C. | Exemption from Stamp, Transfer and Other Taxes. ..................... | 57 |
| | | 1. Headings. ............................................................................ | 57 |
| | | 2. Binding Effect. .................................................................... | 57 |
| | D. | Revocation or Withdrawal. ............................................................ | 57 |
| | | 1. Right to Revoke. ................................................................. | 57 |
| | | 2. Effect of Revocation. .......................................................... | 57 |
| | | 3. Governing Law .................................................................... | 58 |
| | | 4. Withholding, Reporting, and Payment of Taxes.................. | 58 |
| | | 5. Other Documents and Actions............................................ | 58 |
| | | 6. Modification of the Plan. ................................................... | 58 |
| | | 7. Notices. ............................................................................... | 59 |
| | E. | Severability of Plan Provisions. .................................................... | 59 |
| | F. | Successors and Assigns. ................................................................. | 60 |
| | G. | Post-Confirmation Notice. ............................................................. | 60 |
| | H. | Books and Records transferred to the Creditor Trustee. ............. | 60 |
| | I. | Effectiveness of Court Orders. ...................................................... | 60 |
| | J. | No Waiver. ...................................................................................... | 60 |
| | K. | Other Documents and Actions. ...................................................... | 61 |
| | L. | Inconsistencies. .............................................................................. | 61 |
| | M. | Implementation of Section 1142 of the Bankruptcy Code. ............ | 61 |
| | N. | Plan Compromise. .......................................................................... | 61 |
| **XIII.** | | CONFIRMATION REQUEST............................................................ | 62 |
| **XIV.** | | RECOMMENDATION ..................................................................... | 63 |

## I.  **INTRODUCTION**

Scoobeez, Inc., a California corporation, and debtor and debtor in possession in this captioned chapter 11 case ("Scoobeez"), and its affiliated debtors and debtors in possession, Scoobeez Global, Inc., an Idaho corporation (formerly known as ABT Holdings, Inc.) ("Scoobeez Global") and Scoobur, LLC, a California limited liability company ("Scoobur") (collectively, the "Debtors"), Hillair Capital Management, LLC ("HCM")  and Hillair Capital Investments LP ("Hillair LP" and together with HCM, "Hillair"), and the Official Committee of Unsecured Creditors of Scoobeez and Scoobeez Global (the "Committee," and collectively with the Debtors and Hillair, the "Proponents"), together propose the following *First Amended Proposed Joint Chapter 11 Plan of Reorganization* (along with any amendments, supplements and exhibits hereto, collectively, the "Plan") pursuant to section 1121(a) of the Bankruptcy Code for resolution of all Claims against and interests in the Debtors and their Estates.

The Disclosure Statement, which will accompany the Plan, discusses the Debtors' history, business, Chapter 11 Cases, and estimates of the distributions of the Debtors' remaining assets to creditors, and contains a summary and discussion of the Plan. Holders of Claims are encouraged to read the Disclosure Statement before voting to accept or reject the Plan.

Following solicitation of acceptances for the Plan, the Proponents will seek the Bankruptcy Court's Confirmation of the Plan. No solicitation materials other than the Disclosure Statement and any schedules, exhibits or other documents attached thereto or referenced therein have been authorized by the Proponents or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## II.  **DEFINITIONS AND RULES OF CONSTRUCTION**

### A.  **Defined Terms**.

As used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural, and masculine and feminine forms of the terms defined):

1.      "Administrative Expense Claim" means any cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including any

actual and necessary post-petition expenses of preserving the Estate, any actual and necessary post-petition expenses of administering and liquidating the Estate (including postpetition accounts payable and accrued expenses), all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330, 331, 363 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code.

2.    "Administrative Expense Claims Bar Date" means the first Business Day that is forty-five (45) days after the Effective Date.

3.    "Allowed" means with respect to any Claim or Equity Interest: (a) a Claim or Equity Interest that is evidenced by a proof of Claim or proof of Equity Interest, as applicable, filed by the applicable Claims Bar Date (or for which Claim or Equity Interest under the Plan, the Bankruptcy Code, or a Final Order of the Court, a proof of Claim is not required to be filed); (b) a Claim or Equity Interest that is listed in the Schedules, but is not listed as contingent, unliquidated, or disputed, and for which no proof of Claim or proof of Equity Interest, as applicable, has been timely filed; or (c) a Claim or Equity Interest allowed pursuant to the Plan or a Final Order of the Court; provided that with respect to a Claim or Equity Interest described in clauses (a) and (b) above, such Claim or Equity Interest, as applicable, shall be considered Allowed only if and to the extent that with respect to such Claim or Equity Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Equity Interest, as applicable, shall have been Allowed for voting purposes only by a Final Order. Any Claim or Equity Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no proof of Claim or proof of Equity Interest is or has been timely filed shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Any portion of a Claim that is satisfied or released during the Chapter 11 Cases is not an Allowed Claim.

4.    "Allowed Class ____ Claim" means an Allowed Claim in the Class specified.

5.　　"Amazon Creditor Trust Proceeds" means, after payment of the Minimum Net Amazon Recovery to Hillair, if any, 25% of the remaining recoveries on account of Amazon Litigation thereafter, if any.

6.　　"Amazon Hillair Proceeds" means, the Minimum Net Amazon Recovery, if any, and 75% of the remaining recoveries on account of any Amazon Litigation thereafter, if any.

7.　　"Amazon Litigation" means all of the Debtors' rights, claims and causes of action against Amazon, Inc., Amazon Logistics, Inc. and each of their affiliates, including the adversary proceeding captioned *Scoobeez v. Amazon Logistics, Inc.*, No. 19-ap-01456 (WB).

8.　　"Assets" means all assets of the Debtors' Estates including "property of the estate" as described in section 541 of the Bankruptcy Code, including Cash, Estate Causes of Action, any and all claims and causes of action that may be asserted by the Debtors against any third party or third parties, securities, proceeds of insurance and insurance policies, all rights and interests, all real and personal property, and all files, books and records of the Debtor' Estate, including documents that are subject to any applicable privilege.

9.　　"Assumed Post-Petition Current Liabilities" means, solely with respect to the determination of Net Working Capital, all trade accounts payable, accrued expenses, accrued employee compensation, absences, vacation pay and other liabilities of the Debtors arising in the ordinary course of business after the Petition Date, excluding non-Hillair Professional Fees.

10.　　"Available Cash" means the Cash in the Creditor Trust that is not otherwise designated by the Creditor Trustee as Cash to be used to satisfy Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and expenses of the Creditor Trust or otherwise subject to a reserve established by the Creditor Trustee

11.　　"Avoidance Action" means any claim or right under the following: sections 544, 545, 547, 548, 549, 550, 551 and 553(b) of the Bankruptcy Code; all prevailing fraudulent conveyance and fraudulent transfer laws; all non-bankruptcy laws vesting in creditors' rights to avoid, rescind, or recover on account of transfers, including claims relating to illegal dividends; all preference laws; the Uniform Fraudulent Transfer Act; and California Civil Code sections 3439 and 3440, et seq.

3

12.      "Avoidance Action Payment Claim" means a Claim based upon or arising from an entity's payment to the Debtors or the Reorganized Debtors of a claim asserted against the entity pursuant to an Avoidance Action. Any Avoidance Action Payment Claim shall be treated hereunder as a Class 4 Claim.

13.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended.

14.      "Bankruptcy Court" means the United States Bankruptcy Court for the Central District of California, Los Angeles Division or, in the event such court ceases to exercise jurisdiction over the Chapter 11 Cases, such other court that exercises jurisdiction over the Chapter 11 Cases.

15.      "Bankruptcy Rules" means, collectively, (i) the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, and (ii) the Local Bankruptcy Rules applicable to cases pending before the Bankruptcy Court, as now in effect or hereafter amended.

16.      "Bar Date Order" means the *Order (A) Establishing Procedures and Deadlines for Filing (i) Proofs of Claim (B) Approving Manner of Notice of Bar Dates; and (C) Granting Related Relief* entered by the Bankruptcy Court on August 2, 2019 [Dkt. No. 244].

17.      "Beneficiaries" means the Holders of Claims who are the beneficiaries of the Creditor Trust.

18.      "Business Day" means any day which is not a Saturday, a Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

19.      "Cash" means cash or cash equivalents.

20.      "Cash Collateral" means cash collateral of Hillair used or otherwise held by any Debtor.

21.      "Cash Collateral Orders" means that certain Interim Order (1) Authorizing Use of Cash Collateral on an Interim Basis and (2) Granting Related Relief dated May 15, 2019 [Dkt. No. 52], as modified by Docket Numbers: 135 dated June 7, 2019, 172 dated July 3, 2019, 328 dated

4

September 19, 2019, 490 dated December 10, 2019, 662 dated March 6, 2020 and as may be modified thereafter.

22.     "Case Closing Date" means the date on which the Bankruptcy Court enters a final decree closing the Chapter 11 Cases, in accordance with section 350 of the Bankruptcy Code.

23.     "Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code, commenced by the Debtors on the Petition Date in the Bankruptcy Court, styled "*In re Scoobeez, et al.*," jointly administered under Case No. 2:19-bk-14989-WB.

24.     "Claim" means (a) any right to payment from the Debtors' Estates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor' Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

25.     "Claims Bar Date" means September 6, 2019, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtor that arose prior to the Petition Date.

26.     "Class" means one of the Classes of Claims or Classes of Equity Interests designated in the Plan.

27.     "Class 4 New Equity Interests" shall mean 20% of the New Equity Interests issued to the Creditor Trust under the Plan if Class 4 votes to accept the Plan.

28.     "Conditions Precedent" shall have the meaning ascribed to such term in Section IX.A of the Plan.

29.     "Confirmation" means the entry of the Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30.     "Confirmation Date" means the date on which the Confirmation Order becomes a final and non-appealable order.

31.     "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code to consider confirmation of the Plan.

32.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

33.    "Creditor Trust" means the trust created pursuant to the Plan, Confirmation Order, and the Creditor Trust Agreement, and created for the benefit of Holders of the Allowed Claims as set forth in Section VI.M.2 of the Plan. Except as otherwise expressly provided in the Plan, all of the Creditor Trust Assets will be transferred to the Creditor Trust on the Effective Date of the Plan.

34.    "Creditor Trust Agreement" means that certain Creditor Trust agreement, the form of which will be included in the Plan Supplement, by and between the Debtors and the Creditor Trustee to be entered into pursuant to the Plan and the Confirmation Order, as such may be amended from time to time.

35.    "Creditor Trust Assets" means the Amazon Creditor Trust Proceeds, if any, the Creditor Trust Claims, any portion of the Estate Cash Payment that may be available (but at least $25,000), after application pursuant to the Plan, and books and records of the Debtors pertaining to such Creditor Trust Claims, all books and records necessary for the Creditor Trustee to conduct a claims resolution process, and solely to the extent Class 4 votes to accept the Plan, the Class 4 New Equity Interests, all of which (except for the Class 4 New Equity Interests if Class 4 does not vote to accept the Plan) shall be transferred or assigned to the Creditor Trust on the Effective Date of the Plan, free and clear of any liens or claims that might otherwise have existed in favor of any party.

36.    "Creditor Trust Claims" means the Avoidance Action Claims except for Avoidance Action Claims against Shahan Ohanessian, which shall be assigned to Hillair as part of the D&O Claims.  To the extent that Shoushana Ohanessian is a subsequent transferee under 11 U.S.C. §§ 550 and/or 551 of an Avoidance Action claim against Shahan Ohanessian, the right to pursue such subsequent transferee claims shall be assigned to Hillair as part of the D&O Claims.

37.    "Creditor Trustee" means (a) if Class 4 votes to accept the Plan, the trustee identified by the Committee in the Disclosure Statement or the Plan Supplement, and any successor trustee appointed by the Committee pursuant to the Creditor Trust Agreement or (b) if Class 4 votes to reject the Plan, the trustee identified by Hillair prior to the Effective Date of the Plan, and any successor trustee appointed by Hillair pursuant to the Creditor Trust Agreement, in either case,

6

that has the powers and responsibilities set forth in the Plan, the Confirmation Order and the Creditor Trust Agreement and in such capacity shall act for the holders of the beneficial interests in the Creditor Trust. Whenever the Creditor Trustee is referred to herein, all such references are qualified by the Creditor Trustee's powers, rights and obligations as set forth in the Creditor Trust Agreement.

38.    "Creditor Trustee Claim Objection Deadline" means the first Business Day to occur after 120 days after the Effective Date, provided, however, that such date may be extended by (i) order of the Bankruptcy Court to a later date upon motion brought by the Creditor Trustee at any time before the occurrence thereof, or (ii) in the case of any Claim, by agreement between the Holder of the Claim and the Creditor Trustee. Any such later date shall then become the Creditor Trustee Claim Objection Deadline.

39.    "D&O Claims" means any and all manner of causes of action, claims, obligations, suits, debts, judgments, demands, rights of offset or recoupment, damages (actual, compensatory or punitive), counterclaims or affirmative defenses, whatsoever, whether in law or in equity of the Debtors and Estates, arising against prepetition managers, officers, directors, employees and/or agents of the Debtors for wrongful acts committed by such parties in their capacity as present or former managers, officers, directors, employees and/or agents of the Debtors occurring prior to the Effective Date, including claims against Shahan Ohanessian.

40.    "Disallowed Claim" means a Claim or any portion thereof that (i) has been disallowed by agreement with the creditor, (ii) has been disallowed by Final Order, (iii) is listed in the Schedules in an unknown amount, as zero, as contingent, disputed, or unliquidated, or is not listed in the Schedules, and as to which no proof of Claim or Administrative Expense Claim has been Filed, or (iv) has been withdrawn by the applicable creditor.

41.    "Disclosure Statement" means that certain document entitled "*First Amended Disclosure Statement in Support of the First Amended Chapter 11 Joint Plan of Reorganization as Proposed by the Debtors, Hillair and the Official Committee of Unsecured Creditors*" filed in the Chapter 11 Cases, including the exhibits attached thereto, either in its present form or as it may be amended, modified or supplemented from time to time.

7

42.    "Disputed Claim" means any Claim (i) which is listed in any of the Schedules of the Debtors as unliquidated, disputed, contingent, and/or unknown and for which no proof of Claim has been filed; (ii) as to which a proof of Claim has been filed and the dollar amount of such Claim is not specified in a fixed amount; or (iii) as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan and/or any order of the Bankruptcy Court, which objection or request for estimation has not been withdrawn or determined by a Final Order.

43.    "Disputed Claims Reserve" means the Cash to be set aside for, and in an amount sufficient to pay the required Distribution under the Plan to, all Disputed Claims which have not been finally adjudicated as of the Effective Date and which may become Allowed Claims after the Effective Date. The Disputed Claims Reserve may be established as a separate account, or in an account containing other funds, in the Creditor Trustee's discretion.

44.    "Distribution(s)" means any transfer under the Plan of Cash or other property or instruments to a Holder of an Allowed Claim.

45.    "Effective Date" means the earlier of (a) December 31, 2020 or (b) the entry of a final, non-appealable order resolving the existing Amazon Litigation; provided that the Conditions Precedent have been satisfied or waived pursuant to Section IX of the Plan.

46.    "Equity Interests" means any equity interest in any Debtor, including common stock, preferred stock, warrants, membership interests, and partnership interests, but excluding all New Equity Interests.

47.    "Estate Cash Payment" means $1,500,000 to be funded as a carve out from and under the Cash Collateral Order of the Debtors' Cash into the Estate Cash Escrow Account on the Confirmation Date, which shall be held in trust exclusively for the payment of outstanding unpaid and accrued post-petition Professional Fees (excluding Hillair Professional Fees), with any remaining balance (not to be less than $25,000), after reserves for accrued non-Hillair Professional Fees, payable to the Creditor Trust (or, if the Effective Date does not occur on or before December 31, 2020, the Debtors' estates, with the Debtors' use of such funds being subject to consultation with the Committee).

48.     "Estate Cash Escrow Account" means the escrow account to be created by the Debtors for the use of the Estate Cash Payment in accordance with the Plan.

49.     "Estate Cause of Action" means any and all manner of causes of action, claims, obligations, suits, debts, judgments, demands, rights of offset or recoupment, damages (actual, compensatory or punitive), counterclaims or affirmative defenses, whatsoever, whether in law or in equity of the Debtors and Estates, including Avoidance Actions, the Amazon Litigation, D&O Claims, claims against Shahan and Shoushana Ohanessian and any and all claims (if any) against former managers, officers, directors, employees and/or agents of the Debtor (except as any such claims and causes of action may be subject to exculpation or release under Article XI of the Plan).

50.     "Estate Released Parties" means (a) the Debtors and their respective employees (who are not officers or directors), attorneys, financial advisors, investment bankers, accountants, agents, representatives, and other Professional Persons, and successors and assigns, as well as the Identified Officers and Directors, and (b) the Committee, the members thereof in their capacity as such, and the Committee's Professional Persons.  For clarity, the Estate Released Parties do not include Shahan Ohanessian, Shoushana Ohanessian, Jowita Chomentowska, Lance Brinker and Richard Dolan.

51.     "Estates" means the estates created by section 541(a) of the Bankruptcy Code with respect to each Debtor upon the Petition Date.

52.     "Excess Working Capital" means the amount of the Debtors' actual Net Working Capital in excess of the Minimum Working Capital Requirement, if any, as of the Effective Date.

53.     "Exculpated Parties" means collectively and individually the Debtors, the Committee (and its members), Hillair, and each of their respective employees (who are not officers or directors), attorneys, financial advisors, investment bankers, accountants, agents, representatives and other Professional Persons, as well as the Identified Officers and Directors.  For clarity, the "Exculpated Parties" do not include Shahan Ohanessian, Shoushana Ohanessian, Jowita Chomentowska, Lance Brinker and Richard Dolan.

54.     "File," "Filed," "Files," or "Filing" means any document(s) properly and timely filed with the Bankruptcy Court in the Chapter 11 Cases, as reflected on the official docket of the

Bankruptcy Court for the Chapter 11 Cases, and served on parties, as and to the extent that such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

55.     "Final Order" means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or as to which any right to appeal, reargue, rehear, or petition for certiorari shall have been waived in writing in form and substance satisfactory to the Debtor prior to the Effective Date, or the Creditor Trustee after the Effective Date, respectively, or, in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed or from which reargument or rehearing was sought, or certiorari shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

56.     "General Unsecured Claim" means any Claim that is not an Administrative Expense Claim, Priority Tax Claim, a Claim classified in Class 1, 2, or 3, or an Equity Interest in the Debtor, including unsecured Claims arising from the rejection of executory contracts and unexpired leases.

57.     "Hillair Adequate Protection Claim" means superpriority claims of Hillair, if any, arising from the Cash Collateral Orders.

58.     "Hillair Causes of Action" means the Amazon Litigation, the D&O Claims, all related books and records and any applicable privilege of the Debtors in connection with the Claims.

59.     "Hillair Deficiency Claim" means the portion of any Claim of Hillair to the extent such portion exceeds the value of Hillair's liens arising on an account of such Claim.

60.     "Hillair New Equity Interests" shall mean 80% of the New Equity Interests issued under the Plan, which is the amount to be issued to the Holders of Class 2 Claims if Class 4 votes to accept the Plan.

61.    "Hillair Professional Fees" means the Professional Fees incurred by Hillair.

62.    "Hillair Released Parties" means Hillair and each of its agents, representatives, officers, directors, employees, attorneys and other professionals, agents and other representatives, and successors and assigns.

63.    "Hillair Trust Interest" means, if Class 4 does not accept the Plan, the 100% beneficial interest in the Creditor Trust that will be distributed to Hillair on the Effective Date.

64.    "Holder" means the owner of a Claim or Equity Interest.

65.    "Identified Officers and Directors" means the following current or former directors and officers of the Debtors: Brian Weiss, Dan Harrow, Howard Grobstein, George Voskanian and Scott Shiekh.

66.    "Impaired" has the meaning set forth in § 1124 of the Bankruptcy Code.

67.    "Minimum Working Capital Requirement" means the minimum Net Working Capital of $3,690,000 to be maintained by the Debtors as of the Confirmation Date.

68.    "Minimum Net Amazon Recovery" means $5,000,000 in proceeds arising from the Amazon Litigation, after accounting for payment of all related costs, legal fees and expenses.

69.    "Net Working Capital" means the total value as shown on the Debtors' balance sheet of the cash, accounts receivable (net of reserves), inventory (net of reserves), prepaid expenses, other current assets of the Debtors, together with post-petition payments made to Hillair through the Effective Date, less (i) amounts due to the Debtors from Shahan Ohanessian as set forth in Debtors' balance sheets prior to the Effective Date, (ii) the Assumed Post-Petition Current Liabilities (excluding Professional Fees); (iii) Allowed Other Secured Claims subject to the Effective Date treatment set forth in the Plan,  if any; (iv) the Estate Cash Payment of $1,500,000; and (v) Specified Cure Claims, if any.  For avoidance of confusion, the Net Working Capital computation as of December 31, 2019 and agreed to by the Parties is set forth in Exhibit 1.

70.    "New Common Stock" means the common stock newly issued by Scoobeez and Scoobeez Global on or after Effective Date.

71.    "New Equity Interests" means, collectively, the New Common Stock and New Membership Interests.

72.    "New Membership Interests" means the new membership interests issued by Scoobur on or after the Effective Date.

73.    "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

74.    "Other Secured Claim" means any Secured Claim other than a Secured Claim of a taxing authority or any Senior Secured Claim.

75.    "Person" means any individual, corporation general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision, governmental unit, official committee appointed by the Office of the United States Trustee, unofficial committee of creditors, or other entity.

76.    "Petition Date" means April 30, 2019, the date on which the Debtors filed their voluntary petitions commencing the Chapter 11 Cases.

77.    "Plan" means this chapter 11 plan of reorganization, including all exhibits hereto, either in their present form or as they may be altered, amended, or modified from time to time.

78.    "Plan Supplement" means the supplement to the Plan to be Filed within 5 days prior to the Confirmation Hearing.

79.    "Post-Confirmation Hillair Claim" means the Allowed Secured Claim of Hillair, which Secured Claim is a first priority senior secured debt secured by all such liens, claims and encumbrances as set forth in the Cash Collateral Orders, in the amount of $11,108,500, which shall be reduced on a dollar for dollar basis by the following as applicable:

    A.    Weekly payments made and to be made to Hillair between the Petition Date and the Effective Date.

    B.    Excess Working Capital, if any.

    C.    Proceeds from Hillair's share of the Amazon Litigation, if any.

    D.    Proceeds from the D&O Claims, if any.

80.    "Post Effective Date Claimant" shall have the meaning set forth in section VI.M.11.

81.    "Post-Effective Date Hillair Claim" means the debt, to be evidenced by a first priority senior secured promissory note with a maturity date not less than eighteen (18) months

12

from issuance in the principal amount of $3,000,000, subject to a dollar for dollar reduction as of the Effective Date for each dollar reduction of the Post-Confirmation Hillair Claim in excess of $8,108,100, and to be issued by the Reorganized Debtors to Hillair, which shall be secured by all assets in each of the Reorganized Debtors and the proceeds thereof, which shall bear interest at nine (9) percent per annum payable in kind, and which note shall further provide that such Claim be paid $100,000 weekly plus excess cash flow after all Administrative Expense Claims have been paid in full.

82.    "Post-Effective Date Notice Party" means the Reorganized Debtors and the Creditor Trustee.

83.    "Post-Effective Date Plan Expenses" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether matured, unmatured, non-contingent, contingent, liquidated, or unliquidated (collectively, "Expenses") incurred after the Effective Date related to the implementation of this Plan, including: (a) the Expenses associated with administering this Plan, including any taxes assessed against the Creditor Trust Assets; (b) all fees of the Office of the United States Trustee; (c) the Expenses associated with making the Distributions required by this Plan; (d) any Expenses associated with preparing and filing tax returns and paying taxes; (e) the Expenses of independent contractors and professionals providing services to the Creditor Trustee; and (f) the fees of the Creditor Trustee, and the reimbursement of expenses, to which the Creditor Trustee is entitled under the Creditor Trust Agreement.

84.    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

85.    "Pro Rata," "Pro Rata Share," and "Pro Rata Basis" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class; and "face amount," as used herein, means (a) when used in reference to a Disputed Claim, the full stated liquidated amount claimed by the Holder of the Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy

13

Court or other applicably bankruptcy law; and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

86.    "Professional Fees" means the fees for which any Professional Person seeks reimbursement from the Debtors' estates.

87.    "Professional Person" means, for purposes of this Plan, any person (a) employed in accordance with an order of the Bankruptcy Court under sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services under sections 327, 328, 329, 330, 331 and 504 of the Bankruptcy Code, or (b) for which compensation or reimbursement is requested under section 503(b)(2)-(b)(6) of the Bankruptcy Code.

88.    "Rejection Damage Claim" means a Claim for any obligations or damages arising under an unexpired real-property or personal-property lease or executory contract that the Estate rejects under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

89.    "Remaining Assets" mean all Assets as of the Effective Date of the Plan, including all Remaining Causes of Action, that are not Creditor Trust Assets nor Hillair Causes of Action, and Available Cash subject to reserves, if any.

90.    "Remaining Causes of Action" means all Estate Causes of Action except for Creditor Trust Claims and Hillair Causes of Action.

91.    "Reorganized Debtors" means, collectively, each of Scoobeez, Scoobeez Global and Scoobur, LLC on and after the Effective Date.

92.    "Schedules" means the schedules of assets and liabilities, list of equity security holders, and statement of financial affairs filed by the Debtor as required by section 521(a)(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(1) and(3) and (b)(1), and Official Bankruptcy Form Nos. 6 and 7, as amended from time to time.

93.     "Secured Claim" means a Claim against any Debtor to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest in property of the Debtors Estates securing such Claim.

94.    "Senior Secured Hillair Claim" means the Claim of Hillair totaling $11,108,500 in principal exclusive of interest and other fees as of the Petition Date that is secured by substantially all of the Debtors' assets.

95.    "Specified Cure Claims" means, solely to the extent assumed, the amounts required to cure any defaults under the executory contracts with Hertz and Booster fuels in the amounts of approximately $871,230.84 and $79,360.71 respectively.

96.    "Trust Interest" means a proportional beneficial interest in the Creditor Trust to be provided to each holder of an Allowed Class 4 Claim pursuant to Section III of the Plan if Class 4 votes to accept the Plan and to Hillair if Class 4 does not vote to accept the Plan.  The Trust Interests shall be uncertificated and nontransferable, except by will, intestate succession, or operation of law, or as otherwise provided in the Creditor Trust Agreement.

97.    "Voting Deadline" means 5:00 p.m. (Pacific Time) on the date established by order of the Bankruptcy Court for receipt of ballots voting to accept or reject the Plan.

**B.**    **Other Terms**.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder. The definition given to any term or provision in this Plan supersedes any different meaning that may be given to that term or provision in the Disclosure Statement.

Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural. Each pronoun stated in the masculine, feminine or neuter includes each of the masculine, feminine and neuter.  The word "including" shall be interpreted as "without limitation."  Any reference to an exhibit, schedule, instrument or other document means such exhibit, schedule, instrument or other document as it has been, or may be, amended, modified, restated or supplemented as of the Confirmation Date, and any such exhibit, schedule, instrument or other document shall be deemed to be included in this Plan, regardless of when it is filed.

C.    **Computation of Time**.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

D.    **Exhibits**.

Any and all exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

III.    **CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.    **Summary**.

The chart below summarizes the Classes of Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Deemed to have accepted |
| Class 2 | Senior Secured Hillair Claims | Impaired | Voting |
| Class 3 | Other Secured Claims | Impaired | Voting |
| Class 4 | General Unsecured Claims | Impaired | Voting |
| Class 5 | Interests in Debtor | Impaired | Deemed to have rejected |

B.    **Unclassified Claims**.

1.    **In General**.

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for purposes of voting on, or receiving Distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims are instead treated separately in accordance herewith and in accordance with the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

16

2.    **Adequate Protection Claims**.

The Hillair Adequate Protection Claim shall be waived as of the Effective Date in partial exchange for the treatment provided to the Holder as part of its Class 2 Claim.

3.    **Administrative Expenses.**

Subject to the allowance procedures and deadlines provided herein, the Creditor Trustee (or its agent) shall pay to each Holder of an Allowed Administrative Expense Claim, on account of the Allowed Administrative Expense Claim, and in full satisfaction thereof, Cash equal to the amount of such Allowed Administrative Expense Claim, unless the Holder agrees to other treatment. Except as otherwise provided herein or in a prior order of the Bankruptcy Court: (i) payment of an Administrative Expense Claim that is an Allowed Claim as of the Effective Date shall be made on the later of the Effective Date or the date such payment would have become due for payment of such Allowed Administrative Expense Claim in the absence of the Chapter 11 Cases, whether pursuant to contract or applicable nonbankruptcy law; and (ii) payment of an Administrative Expense Claim that becomes an Allowed Claim following the Effective Date shall be made on or before the date that is thirty (30) days after an order deeming such Administrative Expense Claim an Allowed Claim becomes a Final Order.  Until the Effective Date, Administrative Expense Claims (with the exception of monthly, interim or final allowed non-Hillair Professional Fee Claims which shall be paid under the court approved cash collateral budgets or from the Estate Cash Payment) shall be paid (i) in the ordinary course of business from cash on hand and cash flow based on the contractual terms with each respective vendor or in the case of any payroll obligation, when the obligation becomes due and payable and (ii) as required for confirmation and effectiveness of the Plan.  Notwithstanding anything in the Plan to the contrary, outstanding and future unpaid and allowed Professional Fee Claims (except for Hillair Professional Fees) shall be paid in accordance with the amounts set forth in the Court-approved cash collateral budgets (the "Budgeted Professional Fees") and the Estate Cash Payment.[1]   The Budgeted Professional Fees

---

[1] The Budgeted Professional Fees shall include the proposed budgeted amounts for the period from March 4, 2020 through the Effective Date; provided, however, that such amounts are generally consistent with the amounts provided for under the current cash collateral budget.  On the Effective

shall be paid solely from the Debtors in accordance with the applicable Court-approved cash collateral budgets (and shall be capped at the line items therein without allowance for any variance and the Estate Cash Payment).  On or before May 28, 2020, the Debtors shall file for Court approval a proposed cash collateral budget for the period from June 5, 2020 through December 31, 2020, provided all parties' rights are reserved as to such budget.   The remaining balance of the Estate Cash Payment, if any, after reserves in accordance with this Term Sheet, shall be transferred to the Creditor Trust on the Effective Date, or retained by the Debtors.  For the avoidance of doubt, the Estate Cash Payment and Court-approved budgets shall be the sole source of payment of Budgeted Professional Fees, provided confirmation of the Plan is achieved on or before May 15, 2020.[2]

a.      Deadlines for Filing Claims.

Subject to the allowance procedures and deadlines provided below, the Creditor Trustee (or its agent) shall pay to each holder of an Allowed Administrative Expense Claim, on account of the Allowed Administrative Expense Claim, and in full satisfaction thereof, Cash equal to the amount of such Allowed Administrative Expense Claim, unless the holder agrees to other treatment. Except as otherwise provided in the Plan or in a prior order of the Bankruptcy Court: (i) payment of an Administrative Expense Claim that is an Allowed Claim as of the Effective Date shall be made on the later of the Effective Date or the date such payment would have become due for payment of such Allowed Administrative Expense Claim in the absence of the Chapter 11 Cases, whether pursuant to contract or applicable non- bankruptcy law; and (ii) payment of an Administrative Expense Claim that becomes an Allowed Claim following the Effective Date shall be made on or

_____

Date, the Committee shall be dissolved and the Chief Restructuring Officer and the pre-Effective Date board of directors (meaning Brian Weiss, Dan Harrow and Howard Grobstein) shall resign.
[2]. The Proponents expect that work required for the period between the Confirmation Date and the Effective Date, will be reduced and that thus the budgeted amounts for ongoing work by the Debtors, the Committee and the Chief Restructuring Officer after the Effective Date will be reduced.  In the event that the work required for the period between the Confirmation Date and Effective Date is materially greater than has been expected, the Estate professionals shall have neither duty nor responsibility for providing services above the budgeted amounts. The Debtors', Committee's and Hillair's rights are reserved as to the cash collateral budgets.

18

before the date that is thirty (30) days after an order deeming such Administrative Expense Claim an Allowed Claim becomes a Final Order.

All applications for final compensation of Professional Persons for services rendered and for reimbursement of expenses incurred on or before the Effective Date pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), 507(a)(1) or 1103 (except only for post-petition obligations incurred through the Effective Date in the ordinary course of the Debtors' post-petition business and obligations under section 1930 of title 28 of the United States Code) shall be filed no later than forty-five (45) days after the Effective Date and be paid in accordance with and shall comply with the Budget. Professional Persons and others that do not File such requests on or before the Administrative Expense Claims Bar Date shall be barred from asserting such Administrative Expense Claims against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trust, the Creditor Trustee, or any of their respective property. Objections to applications of Professional Persons or others for compensation or reimbursement of expenses must be Filed and served on the Creditor Trustee and its counsel, as well as the Professional Persons and others to whose application the objection is addressed, in accordance with the Bankruptcy Code, the Bankruptcy Rules or pursuant to any other procedure set forth by an order of the Bankruptcy Court.

### 4.    Priority Tax Claims

Allowed Priority Tax Claims shall be paid in full within 5 years of the Petition Date in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.  Except as otherwise provided in section 503(b)(l)(D) of the Bankruptcy Code and 28 U.S.C. § 960, all requests for payment of Claims by a governmental unit (as defined under section 101(27) of the Bankruptcy Code) for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established or is governing must be Filed on or before the later of: (a) sixty (60) days following the Effective Date; or (b) ninety (90) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Except as otherwise provided in section 503(b)(1)(D) of the Bankruptcy Code and 28 U.S.C. § 960, any Holder of a Claim for taxes is required to File a

4847-5170-1428.8

request for a payment of the post-petition taxes and other monies due related to such taxes. Except as otherwise provided in section 503(b)(l)(D) of the Bankruptcy Code and 28 U.S.C. § 960, any Holder of a Claim for taxes which does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trust, the Creditor Trustee, or any of their respective property, whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date, and shall receive no Distribution under the Plan or otherwise on account of such Claim.

    **5.**  **Intercompany Claims**

    All Intercompany Claims between and among the Debtors are deemed cancelled as of the Effective Date.

    **C.**  **Classification and Treatment**.

    The treatment of Claims and Equity Interests under this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Holder or a Claim or Holder of an Equity Interest may have in or against the Debtors or their property. This treatment supersedes and replaces any agreements or rights which those entities have in or against the Debtors or their property.

**NO DISTRIBUTIONS SHALL BE MADE, AND NO RIGHTS SHALL BE RETAINED, ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

    **1.**  **Class 1: Other Priority Claims**.

      a.  Classification: Class 1 consists of all Claims entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, except Priority Tax Claims and Administrative Expense Claims.

      b.  Treatment: The Creditor Trustee shall pay all Allowed Claims in this Class in full, in Cash, on the later of: (i) the Effective Date; and (ii) the date on which an order allowing such Claim becomes a Final Order, and in each case or as soon thereafter as is practicable. Class 1 is not Impaired, and the holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.    **Class 2: Senior Secured Hillair Claims**.

    a.    Classification: Class 2 consists of Senior Secured Hillair Claims which Claims are hereby deemed Allowed in full as of the Confirmation Date.

    b.    Treatment: Prior to the Effective Date, Class 2 shall retain the Post-Confirmation Hillair Claim, which shall be Allowed as of the Confirmation Date.  On the Effective Date, in full satisfaction, settlement, and release of, and in exchange for, the Effective Date cancellation of Hillair's prepetition debt, the provisions regarding the payment of Administrative Expense Claims, the funding of the Estate Cash Payment, and the waiver of the Hillair Adequate Protection Claim and the Hillair Deficiency Claim, Holders of Allowed Class 2 Senior Secured Hillair Claims shall receive (i) If Class 4 accepts the Plan: (a) the Post-Effective Date Hillair Claim; (b) the Hillair New Equity Interests, and (c) the Hillair Causes of Action; and (ii) if Class 4 does not accept the Plan, Holders of Allowed Class 2 Senior Secured Claims shall receive: (a) the Post-Effective Date Hillair Claim, (b) 100% of the New Equity Interests; (c) the Hillair Causes of Action; and (d) 100% of the Trust Interests.

    c.    Class 2 is Impaired, and the Holders of Claims in Class 2 are entitled to vote to accept or reject the Plan.

3.    **Class 3: Other Secured Claims.**

    a.    Classification: Class 3 Consists of Other Secured Claims.

    b.    Treatment: On the Effective Date, unless a Holder of an Allowed Class 3 Claim agrees to a lesser treatment of such claim, in full satisfaction, settlement, and release of, and in exchange for, such Other Secured Claim, each Holder of an Allowed Class 3 Other Secured Claim shall receive a like such claim in the Reorganized

Debtors, which claims shall (a) be secured by the identical liens to the same extent they were secured against the Debtors; and (b) be paid in full within five years following the Petition Date. Class 3 is Impaired, and the Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.    **Class 4: General Unsecured Claims**.

a.    Classification: Class 4 consists of all General Unsecured Claims.

b.    Treatment: On the Effective Date, unless a Holder of an Allowed Class 4 Claim agrees to accept a lesser treatment of such Claim, (i) if Class 4 votes to accept the Plan, each Holder of an Allowed Class 4 Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such General Unsecured Claim, an allocated Trust Interest, which shall entitle the Holder to receive its Pro Rata share of funds available to Holders of Trust Interests pursuant to the Creditor Trust Agreement, or (ii) if Class 4 does not accept the Plan, than Class 4 Claims shall be extinguished and no distribution shall be made on account of such Class 4 Claims under the Plan.  Class 4 is Impaired, and the Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

c.    Timing of Distributions: The Creditor Trustee shall make Distributions to the Holders of Allowed Class 4 Claims on account of their respective Trust Interests. All Holders of Allowed Class 4 Claims shall receive an initial Distribution of their respective Trust Interests within 120 days following an affirmative recovery on account of the Creditor Trust Claims, or on such other date as the Creditor Trustee determines to be practicable, in the exercise of its sole and absolute discretion, and shall receive thereafter Distributions of their respective Trust Interests on each 180th-day anniversary of

22

the Effective Date, or on such other date as the Creditor Trustee determines to be practicable in the exercise of its sole and absolute discretion. Holders of Allowed Class 4 Claims shall receive any final Distribution of their respective Trust Interests within ten (10) days after the Creditor Trustee's filing of the Creditor Trustee Certification (as such term is defined in Section VI.M.16 hereof), or as soon thereafter as is practicable.

    d.    Conditions to Payment of Distributions:  Notwithstanding any other provision to the contrary contained in the Plan, no Distribution shall be made on account of any Allowed Class 4 Claim until each of the following occurs: (i) Class 4 is determined by the Court to have accepted the Plan; (ii) the Holders of Class 2 have received (a) the Post-Effective Date Hillair Claim; (b) the Hillair New Equity Interests, and (c) the Hillair Causes of Action and (iii) an adequate reserve is established by the Creditor Trustee for purposes of managing and administering the Creditor Trust in an amount to be determined by the Creditor Trustee in the exercise of its sole and absolute discretion.

**5.**    **Class 5: Equity Interests**.

    a.    Classification: Class 5 consists of Equity Interests.

    b.    Treatment: As of the Effective Date, each Holder of record of an Allowed Equity Interest shall not receive a Distribution under the Plan and all Equity Interests will be deemed to be cancelled and void.

Class 5 is Impaired and such Holders are deemed conclusively to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore the Holders of Interests in Class 5 are not entitled to vote to accept or reject the Plan.

23

IV.    **ACCEPTANCE OR REJECTION OF THE PLAN**

    A.    **Voting Classes**.

Each Holder of an Allowed Class 2, Allowed Class 3 and Allowed Class 4 Claim shall be entitled to vote to accept or reject the Plan. No other Holder of a Claim or Interest Equity shall be entitled to cast a vote with respect to the Plan.

    B.    **Voting Rights of Holders of Disputed Claims**.

A Disputed Claim will not be counted for purposes of voting on the Plan to the extent it is disputed, provided an objection to such Claim has been filed no later than seven (7) calendar days prior to the deadline for casting ballots on the Plan, unless an order of the Bankruptcy Court is entered after notice and a hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a).

    C.    **Acceptance by Impaired Classes**.

An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) more than one-half in number of the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

    D.    **Presumed Acceptance/Rejection of the Plan**.

Class 1 is unimpaired under the Plan and, therefore, are conclusively presumed by the Bankruptcy Code to accept the Plan. Class 5 is not receiving a Distribution under the Plan and therefore, for the purpose of the Plan, is conclusively presumed by the Bankruptcy Code to reject the Plan.

V.    **PROVISIONS FOR TREATMENT OF DISPUTED. CONTINGENT. OR UNLIQUIDATED CLAIMS AND ADMINISTRATIVE EXPENSES**

    A.    **Resolution of Disputed Claims**.

As of the Effective Date, and subject to the provisions of the Plan, the Creditor Trustee shall have the sole authority to investigate, administer, monitor, implement, litigate and settle all Disputed Claims. From and after the Effective Date, the Creditor Trustee may file and prosecute

4847-5170-1428.8

objections to Claims, including Administrative Expense Claims, Priority Tax Claims, Other

Priority Claims, and Other Secured Claims, but excluding the Senior Secured Hillair Claims which

are deemed Allowed under and subject to the Plan. All objections shall be filed prior to the Creditor

Trustee Claim Objection Deadline and served upon the Holder of the Claim to which the objection

is made.

        **B.**       **Reserve for Disputed Claims**.

Cash which would be distributed on account of Holders of Disputed Claims, in the event

that such Disputed Claims become Allowed Claims, shall instead be placed in the Disputed Claims

Reserve maintained by the Creditor Trustee. Such Cash in the Disputed Claims Reserve will be

reserved for the benefit of Holders of such Disputed Claims pending determination of their

entitlement thereto. Unless the Bankruptcy Court orders otherwise, the Creditor Trustee will

reserve Pro Rata Distributions for such Disputed Claims based upon the full amount of the

Disputed Claims or, in the case of a Disputed Claim that is an Administrative Expense Claim,

Priority Tax Claim or Other Priority Claim, Cash in the full amount of such Disputed Claim. No

reserve shall be required for any Disputed Claim to the extent of any effective insurance coverage

therefor. Such Cash so reserved shall be distributed by the Creditor Trustee to the holder of a

Disputed Claim to the extent that such Disputed Claim becomes an Allowed Claim pursuant to a

Final Order.

To the extent that a Disputed Claim ultimately is disallowed or allowed in an amount less

than the amount of Cash that has been reserved, the resulting surplus Cash shall be allocated among

Holders of Allowed Claims in the Class in which the Disputed Claim was classified as provided in

the Plan.

To the extent that any portion of a Disputed Claim is not disputed, the Creditor Trustee

shall establish a reserve in the Disputed Claims Reserve only on account of that portion of the

Disputed Claim that is in dispute and shall make one or more interim Distributions on account of

the portion of such Disputed Claim that is not in dispute.

The Creditor Trustee may, at the Creditor Trustee's sole discretion, file a tax election to

treat the Disputed Claims Reserve as a Disputed Ownership Fund ("DOF") within the meaning of

Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes, rather than tax such reserve as a part of the grantor Creditor Trust. If the election is made, the Creditor Trustee shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including the filing of a separate federal income tax return for the DOF and the payment of federal and/or state income tax due.

### C.    Exclusive Right to Object to Claims.

From and after the Effective Date, the Creditor Trustee shall have the sole and exclusive right to file, litigate and settle objections to Disputed Claims, except Professional Fee Claims. As the representative of the Estate, the Creditor Trustee shall succeed to all of the rights and powers of the Debtors and the Estate with respect to all objections to Disputed Claims, and shall be substituted for, and shall replace, the Debtor and the Estate as the party-in-interest in all litigation regarding Disputed Claims pending as of the Effective Date.

### D.    Investigation Regarding Disputed Claims.

Notwithstanding the fact that the Creditor Trustee shall have, after the Effective Date, the sole and exclusive right to file objections to Disputed Claims, nothing contained herein shall be deemed to obligate the Creditor Trustee to file any objection to a Claim, which action shall be determined by the Creditor Trustee in the exercise of its sole and absolute discretion.

**THE PROPONENTS HAVE NOT COMPLETED ANY INVESTIGATION REGARDING THE CLAIMS IN THE CHAPTER 11 CASES AND THE FILING OF OBJECTIONS TO DISPUTED CLAIMS. THIS INVESTIGATION IS ONGOING AND, SUBJECT ONLY TO THE CREDITOR TRUSTEE CLAIM OBJECTION DEADLINE, MAY OCCUR AFTER THE CONFIRMATION DATE. AS A RESULT, HOLDERS OF CLAIMS AND OTHER PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT AN OBJECTION TO A DISPUTED CLAIM MAY BE FILED AT ANY TIME, SUBJECT ONLY TO THE CREDITOR TRUSTEE CLAIM OBJECTION DEADLINE. THE CREDITOR TRUSTEE SHALL HAVE THE RIGHT TO OBJECT TO AMOUNTS THAT HAVE BEEN SCHEDULED BY THE DEBTORS, OR THAT ARE REFLECTED IN THE**

DEBTORS' BOOKS AND RECORDS, AND WHICH ARE FOUND TO BE
OBJECTIONABLE IN ANY RESPECT.

      **E.**      **Distribution After Allowance**.

Within fourteen (14) days following the date on which a Disputed Claim becomes an
Allowed Claim and is no longer a Disputed Claim, the Creditor Trustee, as disbursing agent under
the Plan, shall distribute to the Holder of such Allowed Claim any Cash or other property that
would have been distributable to such Holder as if, at the time of the making of any Distribution to
the Class of which such Holder is a member, such Claim had been an Allowed Claim and not a
Disputed Claim.

**VI.**      **IMPLEMENTATION OF THE PLAN**

The Estate Cash Payment shall be paid into the Escrow Cash Escrow Account on the
Confirmation Date and shall be held in trust by the Debtors through the Estate Cash Escrow
Account exclusively for the payment of outstanding unpaid and accrued post-petition Professional
Fees (excluding Hillair Professional Fees), with any remaining balance after reserves for accrued
non-Hillair Professional Fees payable to the Creditor Trust (or, if the Effective Date has not
occurred on or before December 31, 2020, the Debtors' estates, with the Debtors' use of such funds
being subject to consultation with the Committee).  Hillair shall not retain or receive any lien, right,
title or interest in the Estate Cash Payment after it is made and the Estate Cash Payment shall not
be subject to the claims of any chapter 7 trustee.

The Debtors shall provide notice to the Committee prior to making payments from the
Estate Cash Payment. On or soon as practicable after the Effective Date, the following shall occur
with respect to the implementation of the Plan: (i) all acts, documents and agreements appropriate
to implement the Plan shall be executed; (ii) the Creditor Trustee, as disbursing agent under the
Plan, shall make all Distributions required to be made on or about the Effective Date of the Plan in
accordance with the terms and conditions of the Plan; and (iii) the Creditor Trustee, as disbursing
agent under the Plan, shall fund reserves required to be funded pursuant to the Plan.

Upon the Effective Date, all transactions and matters provided for under the Plan shall be deemed to have been authorized and approved by the Debtors without any requirement of further action by the Debtors, or Holders of Equity Interests in the Debtors.

### A.    Transfer of the Hillair Causes of Action

On the Effective Date, the Hillair Causes of Action and all of the rights of the Estates to pursue such Hillair Causes of Action shall transfer to Hillair for its own benefit, subject solely to the contingent obligation to share the Amazon Creditor Trust Proceeds, if any, free and clear of all liens, claims, encumbrances, charges and other interests, and Hillair will be deemed to have standing to pursue such claims for all purposes. On and after the Effective Date, the vesting of the Hillair Causes of Action from the Estates to Hillair, will be deemed final and irrevocable.

### B.    Vesting of the Remaining Assets and Transfer.

On the Effective Date, the Remaining Assets, including the Remaining Causes of Action, and all rights of the Estates to pursue such Remaining Causes of Action, and remaining cash of the Debtors not used or transferred to the Creditor Trust and reserved to satisfy Allowed Administrative Expense Claims (including Claims arising under section 503(b)(9) of the Bankruptcy Code), Allowed Priority Tax Claims, or Allowed Other Priority Claims (including claims required to be paid upon confirmation and effectiveness of the Plan), and Budgeted Professional Fees, separate from the Estate Cash Payment, will vest in the Reorganized Debtors free and clear of all claims, liens, encumbrances, charges and other interests.   On and after the Effective Date, the vesting of the Remaining Assets from the Estates to the Reorganized Debtors, will be deemed final and irrevocable subject to the terms of this Plan.

In connection with the foregoing, the Confirmation Order will provide for the vesting of the Remaining Assets to the Reorganized Debtors and for the officers and directors of the Remaining Assets to take all actions necessary to effectuate same and to prosecute, settle and compromise (including by set-off or recoupment) any and all Remaining Causes of Action, without any need for notice to creditors or order or approval of the Bankruptcy Court.  As of the Effective Date, the Remaining Assets will be free and clear of all liens, claims and interests of Holders of Claims and Equity Interests, except as otherwise provided in the Plan.

4847-5170-1428.8

### C.    Vesting of the Creditor Trust Assets

Unless otherwise expressly provided under the Plan, on the Effective Date, the Creditor Trust Assets, will vest in the Creditor Trust free and clear of all claims, liens, encumbrances, charges and other interests, subject to the provisions of the Plan. On and after the Effective Date, the transfer of the Creditor Trust Assets from the Estate to the Creditor Trust will be deemed final and irrevocable and Distributions may be made from the Creditor Trust.

In connection with the foregoing:

On the Effective Date, the appointment of the Creditor Trustee shall become effective and the Creditor Trustee shall begin to administer the Creditor Trust pursuant to the terms of the Creditor Trust Agreement and the Plan and may use, acquire and dispose of property of the Creditor Trust free of any restrictions imposed under the Bankruptcy Code. The Creditor Trustee shall have the rights, powers and duties provided for by the Plan, the Creditor Trust Agreement, and by the Confirmation Order. The Creditor Trustee, in the exercise of its reasonable business judgment, shall be responsible for asserting the Creditor Trust Claims of the Debtors, and for making Distributions to Holders of Claims in as efficient, effective and economical manner as is reasonably practicable so as to produce for Holders of Claims as favorable a recovery on their Claims as is reasonably possible under the circumstances of this case.

The Confirmation Order will provide the Creditor Trustee with express authority to convey, transfer and assign any and all of the Creditor Trust Assets and to take all actions necessary to effectuate same and to prosecute, settle and compromise (including by set-off or recoupment) any and all Creditor Trust Claims and Disputed Claims, without any need for notice to creditors or order or approval of the Bankruptcy Court. As of the Effective Date, the Creditor Trust Assets will be free and clear of all liens, claims and interests of Holders of Claims and Equity Interests, except as otherwise provided in the Plan.

### D.    Corporate Action

On and after the Effective Date, the Reorganized Debtors shall have full authority and are authorized to take such actions and execute such documents as may be necessary to effectuate the transactions provided for in the Plan.  The Reorganized Debtors' post-Effective Date authority shall

include the right to operate their business as a going concern to purchase and/or sell assets; to commence and prosecute actions and proceedings; to open, maintain and close bank accounts and/or other investments on behalf of the Estates; to engage or retain professionals and to pay the fees and disbursements thereof; to file tax information and returns as required and, in connection therewith, to make such determinations of tax liability, challenge assessments, make tax elections, pay taxes and take other, related actions. Subsequent to the Effective Date, the Debtors' charter shall be amended to prohibit the issuance of non-voting securities and to otherwise comply with the terms and conditions of section 1123(a)(6) of the Bankruptcy Code.

On and after the Effective Date, the members of the Board of Directors of the Reorganized Debtors are authorized to, and may direct an officer to, issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of, and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those required pursuant to the Plan.

The adoption of the Amended Certificate and Bylaws, the selection of directors and officers of Reorganized Debtors, and all other actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan) by the Confirmation Order. All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors of the Reorganized Debtors in connection with the Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirements or further action by the security holders, directors, or managers of the Debtors or Reorganized Debtors. On the Effective Date, as applicable, the appropriate officers of the Debtors and /or Reorganized Debtors and members of the boards of directors or managers of the Debtors and/or Reorganized Debtors are authorized and directed to issue, execute and deliver, and cause the Reorganized Debtors to perform, the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Debtors and/or Reorganized Debtors.

4847-5170-1428.8

**E.**    **Issuance of New Equity Interests**

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall authorize 1,000 shares of New Common Stock, each in the case of Scoobeez and Scoobeez Global, each as reorganized, and 1,000 New Membership Interests in the case of Scoobur as reorganized.  The issuance of the New Equity Interests under the Plan is authorized without the need for any further corporate action or without any further action by any Holder of Claims or Interests.  The New Equity Interests issued under the Plan shall not be subject to dilution by any additional shares of common stock within two years after the Effective Date.  The Reorganized Debtors shall be authorized to enter into and adopt an incentive stock option plan for employees and management, as may be determined by the Reorganized Debtors' Board of Directors

All of the New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable.

**F.**    **Securities Registration Exemption**

The securities to be issued pursuant to the Plan are to be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.  To the extent section 1145 of the Bankruptcy Code is inapplicable, these issuances are exempt from registration under the Securities Act or any similar federal, state or local law in reliance on the exemption set forth in section 4(2) of the Securities Act or Regulation D promulgated thereunder.

**G.**    **Effective Date Funding**

Claims will be funded from the Estate Cash Payment (made on the Confirmation Date) and cash on hand as provided for in the Plan.  The proceeds of such funding will be used to, among other things to repay the Effective Date cash distributions under the Plan and to fund the Creditor Trust. A minimum of $25,000 of the Estate Cash Payment shall be used to fund the Creditor Trust. Under no circumstances shall Hillair be obligated to fund the Creditor Trust other than its consent for the making of the Estate Cash Payment.

The Reorganized Debtors may execute all documents and enter into all agreements as may be necessary and appropriate in connection with such funding.

**H.**    **Withdrawal of the Committee Challenge**

On the Confirmation Date and upon the payment and delivery of the Estate Cash Payment, the Creditors' Committee shall irrevocably waive any and all challenges to Hillair's Claims against the Debtors and related liens and the Challenge Period (as defined in the Cash Collateral Orders) shall terminate.

**I.**    **Working Capital Requirement**

The Debtors shall maintain the Minimum Working Capital Requirement until the Effective Date.

**J.**    **Corporate Governance and Management**

On the Effective Date, the Boards of Directors, management structure and initial officers of the Reorganized Debtors shall consist of those Persons chosen by Hillair and set forth in the Plan Supplement.

**K.**    **Cancellation of Existing Securities and Agreements**

On the Effective Date, the Equity Interests in the Debtors, shall be deemed, and shall be, cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise.  Similarly, on the Effective Date, except (a) as otherwise specifically provided for in the Plan, (b) with respect to unexpired leases that have been assumed by the Debtors, (c) for purposes of evidencing a right to Distributions under the Plan, or (d) with respect to any Claim that is Allowed under the Plan, on the Effective Date, any instruments or documents evidencing any Claims or Interests shall be deemed automatically canceled and deemed surrendered without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under the agreements, instruments, and other documents, indentures, and certificates of designations governing such Claims and Interests, as the case may be, shall be discharged.

**L.**    **Substantive Consolidation.**

At the Effective Date, the Estates of all of the Debtors are substantively consolidated, and all assets of the Debtors shall be considered to be assets of the consolidated Estates.  Any Allowed Claim against any of the Debtors shall be treated as an Allowed Claim against the consolidated

Estates.  Any Allowed Claim asserted against any Debtor that is also asserted against any other Debtor on the grounds that such other Debtor is a co-debtor, surety, guarantor, or is otherwise liable with respect to such Allowed Claim shall be treated as a single Allowed Claim against the consolidated Estates.  On the Effective Date, none of the Debtors will hold any Claims or Interests in or against any other Debtor and such Claims are disallowed.

        **M.**      **<u>Establishment of the Creditor Trust</u>**.

        **1.**      **Generally**.

On the Effective Date the Creditor Trust Agreement will become effective, and, if not previously signed, the Debtor and the Creditor Trustee will execute the Creditor Trust Agreement. The Creditor Trust is organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a Creditor Trust within the meaning of Treasury Regulation Section 301.7701-4(d).

        **2.**      **Beneficiaries**.

In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Creditor Trust will be the Holders of all Allowed Class 4 Claims against the Debtors but, if Class 4 does not accept the Plan, the Beneficiaries of the Creditor Trust will be the Holders of all Allowed Class 2 Claims. The Holders of such Allowed Claims will receive an allocation of the Creditor Trust Assets as provided for in the Plan and the Creditor Trust Agreement. The Beneficiaries of the Creditor Trust shall be treated as the grantors and owners of such Beneficiaries' respective portion of the Creditor Trust.

        **3.**      **Implementation of the Creditor Trust**.

On the Effective Date, the Debtors, on behalf of the Estate, and the Creditor Trustee will be authorized and directed to take all such actions as required to transfer to the Creditor Trust, from the Debtors and Estates, the Debtors' Assets in accordance with this Plan. From and after the Effective Date, the Creditor Trustee will be authorized to, and will, take all such actions to implement the Creditor Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Creditor Trustee, including directing Distributions to Holders of Allowed Claims, objecting, compromising and settling Claims (including exercising set-off or recoupment

33

rights and/or seeking the subordination and/or reclassification of Claims), prosecuting or otherwise resolving Creditor Trust Claims and causing Distributions from the Creditor Trust to be made to the Beneficiaries. The funding of the Creditor Trust will be from the Debtors' Cash on hand as of the Effective Date (which in turn is funded from the contributions of the Senior Secured Creditor), the remainder of the Estate Cash Payment (which shall not be less than $25,000) and the proceeds of the Creditor Trust Assets.

4.    **Transfer of the Creditor Trust Assets**.

On the Effective Date, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtors are authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Creditor Trustee all of the Debtors' and Estate's right, title and interest in and to the Creditor Trust Assets, including all Creditor Trust Claims, free and clear of all liens, Claims, encumbrances or interests of any kind in such property, except as otherwise expressly provided in the Plan. To the extent required to implement the transfer of the Creditor Trust Assets from the Debtors and Estates to the Creditor Trust, all Persons will cooperate with the Debtors and Estates to assist the Debtors and Estates to implement said transfers.

5.    **Representative of the Estate**.

The Creditor Trustee will be appointed as the representative of the Debtors' Estates pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such will be vested with the authority and power (subject to the Creditor Trust Agreement) to inter alia: (i) object to, settle and compromise Claims (including any Administrative Expense Claim) against the Debtors (including exercising set-off or recoupment rights and/or seeking the subordination and/or reclassification of Claims) and Equity Interests in the Debtors; (ii) administer, investigate, prosecute, settle and abandon all Creditor Trust Claims assigned to the Creditor Trust; (iii) make Distributions provided for in the Plan, including on account of Allowed Claims; and (iv) take such action as required to administer, wind-down, and close the Chapter 11 Cases. Except only for the filing of a final decree to close the Chapter 11 Cases pursuant to Rule 3022 of the Bankruptcy Rules, the Creditor Trustee may take, as representative of the Estate, all acts to implement and consummate the Plan and the Creditor Trust Agreement, including the acts set forth in this Section

34

V.B.5, without any need for notice to creditors or order or approval of the Bankruptcy Court. As the representative of the Estates, the Creditor Trustee will be vested with all of the rights and powers of the Debtors and Estates with respect to all Creditor Trust Claims assigned and transferred to the Creditor Trust, and the Creditor Trustee will be substituted in place of the Debtors and Estates, as applicable, as the party in interest in all such litigation pending as of the Effective Date.  For the avoidance of doubt, however, all Remaining Causes Of Action shall be transferred to the Reorganized Debtors, who shall be will be vested with all of the rights and powers of the Debtors and Estates with respect to all Remaining Causes of Action and transferred to the Reorganized Debtors, and the Reorganized Debtors will be substituted in place of the Debtors and Estates, as applicable, as the party in interest in all such litigation pending as of the Effective Date.

From and after the Effective Date, the Creditor Trustee shall, without any further notice or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan and Creditor Trust Agreement incurred by the Creditor Trust.

### 6. **Provisions Relating to Federal Income Tax Compliance**.

A transfer to the Creditor Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to creditors to the extent creditors are Beneficiaries. For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274. Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the Creditor Trusts. The Beneficiaries of the Creditor Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the Creditor Trust.

### 7. **Cooperation with Creditor Trustee**.

All Holders of Claims, Holders of Equity Interests and other parties-in-interest shall cooperate with the Creditor Trustee by executing any documents, and by taking any acts, appropriate to implement the provisions of the Plan.

**8.**    **Compensation of the Creditor Trustee/Removal of the Creditor Trustee**.

On the Effective Date of the Plan, the Creditor Trustee shall be appointed to serve under the Plan and the Creditor Trust Agreement. The Creditor Trustee's compensation shall be as provided in the Creditor Trust Agreement. The Creditor Trustee shall serve during the term of the Plan; provided, however, that, upon motion made with notice and an opportunity for a hearing given to the Post-Effective Date Notice Parties, any party-in-interest shall be entitled to request, for cause shown, that the Bankruptcy Court terminate the employment of the Creditor Trustee and replace it with another Person, who if appointed by Final Order of the Bankruptcy Court, will have all of the rights, powers and duties provided to the Creditor Trustee by the Plan, the Creditor Trust Agreement, the Confirmation Order and by the provisions of the Final Order of the Bankruptcy Court appointing such replacement Creditor Trustee.

**9.**    **Resignation of Creditor Trustee**.

Upon any resignation, death, disability or inability to serve of the Creditor Trustee ("Creditor Trustee Service Termination Event"), the members of the Committee as of the Confirmation Date may appoint a replacement Creditor Trustee after notice to the Post-Effective Date Notice Parties. In the event that no replacement Creditor Trustee is appointed within sixty (60) days after the date of any Creditor Trustee Service Termination Event, the Office of the United States Trustee may, after notice and an opportunity for hearing, request that the Chapter 11 Cases be converted to cases under chapter 7 of the Bankruptcy Code.

**10.**    **Funding of Post-Effective Date Plan Expenses**.

The Creditor Trust shall be entitled to incur, and to be reimbursed for, Post-Effective Plan Expenses in performing its duties and obligations under the Plan and Creditor Trust Agreement. All Post-Effective Date Plan Expenses shall be expenses of the Creditor Trust. The Creditor Trustee shall have no personal liability for any Post-Effective Date Plan Expenses. The Creditor Trustee shall disburse funds from the Creditor Trust Assets for the purpose of funding the Post- Effective Date Plan Expenses.

4847-5170-1428.8

11.    **Estate Causes of Action**.

Subject to the terms of this Plan, the right to enforce, file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon on behalf of the Debtors and the Estates any and all Estate Causes of Action, is deemed automatically transferred on the Effective Date from the Estates to Hillair, the Creditor Trust, and the Reorganized Debtors, and as divided amongst them respectively as set forth in this Plan (each, a "Post-Effective Date Claimant").

As of the Effective Date, each Post Effective Date Claimant shall be authorized to exercise and to perform the rights, powers and duties held by the Estates with respect to the respective Estate Causes of Action assigned or vested to it under this Plan and, from and after the Effective Date, each Post-Effective Date Claimant, solely with respect to the applicable Estate Causes of Action assigned or vested to it under the Plan, shall have the sole and exclusive right, to file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon claims and interests of the Estates with respect to the such Estate Causes of Action without the consent or approval of any third party, and without any further approval or order of the Bankruptcy Court.

Unless an Estate Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Plan or in any Final Order, such Estate Cause of Action is expressly reserved for later adjudication by the respective Post-Effective Date Claimant (including any Estate Causes of Action of which the Debtors presently may be unaware, or which may arise or exist by reason of facts or circumstances unknown to the Debtors at this time, or facts or circumstances which may change or be different from those which the Debtors now believe to exist) and, therefore, neither the failure of the Debtors to list any such Estate Causes of Action in their schedules or elsewhere, nor any preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to the applicable Post-Effective Date Claimant's prosecution of Estate Causes of Action based on the Disclosure Statement, the Plan, or the Confirmation Order.  Without limiting the generality of the foregoing, any Person with respect to which the Debtors has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has

37

transacted business with the Debtors, should assume that such obligation, transfer, or transaction may be evaluated by the Reorganized Debtors subsequent to the Effective Date and may be the subject of an Avoidance Action or other action or proceeding filed after the Effective Date. Without limiting the foregoing reservation of rights, a non-exclusive description of Estate Causes of Action shall be included in the Plan Supplement.

**THE PROPONENTS HAVE NOT COMPLETED ANY INVESTIGATION REGARDING THE EXISTENCE OF ESTATE CAUSES OF ACTION. AS A RESULT, ALL PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE OF ANY PARTICULAR ESTATE CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR SET FORTH IN THE PLAN, PLAN SUPPLEMENT OR SCHEDULES, AN ESTATE CAUSE OF ACTION MAY BE FILED AGAINST ANY CREDITOR OR OTHER PARTY AS THE CREDITOR TRUSTEE, HILLAIR, OR REORGANIZED DEBTORS, AS APPLICABLE, MAY DETERMINE, IN THE EXERCISE OF THEIR SOLE AND ABSOLUTE DISCRETION.**

12.    **Post-Effective Date Professional Fees**.

The Creditor Trustee may employ, without any need to give notice to Holders of Claims or other parties-in-interest or obtain any approval of the Bankruptcy Court, any professional to aid the Creditor Trustee in performing the Creditor Trustee's duties under the Plan or the Creditor Trust Agreement, as the Creditor Trust deems appropriate in the exercise of its sole and absolute discretion, including professionals who were employed by the Debtor or the Committee in the Chapter 11 Cases. Any professional employed by the Creditor Trustee after the Effective Date shall be entitled to obtain from the Creditor Trustee payment of the professional's fees and costs as a Post-Effective Date Plan Expense, in the ordinary course, without any need to give notice to Holders of Claims or other parties-in-interest or to obtain any approval or order of the Bankruptcy Court. Notwithstanding the foregoing, if the Creditor Trustee should fail to pay any post- Effective Date fees and costs of a professional entitled to such payment, within thirty (30) days after the professional's rendering of its billing statement, the professional shall be entitled to seek, by

application filed in accordance with the Bankruptcy Rules, an order of the Bankruptcy Court

requiring the Creditor Trustee to forthwith pay to the professional its fees and costs.

### 13.    Approval for Disposition of Assets.

From and after the Effective Date, the Creditor Trustee shall be entitled to sell, transfer,

assign, encumber or otherwise dispose of any interest in any of the Creditor Trust Assets, without

any need to give notice to Holders of Claims or parties-in-interest or to obtain any approval or

order of the Bankruptcy Court. Notwithstanding the foregoing, the Creditor Trustee shall be

entitled to seek, from the Bankruptcy Court, an order authorizing the sale of any Creditor Trust

Asset free and clear of liens pursuant to the provisions of section 363(f) of the Bankruptcy Code.

### 14.    Compromise of Controversies.

From and after the Effective Date, the Creditor Trustee shall be entitled to compromise any

objections to a Disputed Claim, or any controversies relating to Creditor Trust Claims after the

Confirmation Date, without any need to give notice to creditors or parties-in-interest or to obtain

any approval or order of the Bankruptcy Court.

### 15.    Bankruptcy Court Approval Relative to Post-Confirmation Matters.

Nothing contained in the Plan shall be deemed to impair in any manner the right of the

Creditor Trustee to seek at any time after the Effective Date orders of the Bankruptcy Court

approving actions to be taken, or granting relief, consistent with the Plan as may be necessary or

desirable to effectuate the provisions of the Plan.

### 16.    Creditor Trustee Certification.

On or before the date upon which the Creditor Trustee determines, in the exercise of its sole

and absolute discretion, that all Creditor Trust Claims and objections to Disputed Claims have been

resolved by Final Order, that all other Creditor Trust Assets have been liquidated or otherwise

disposed of, and that all Distributions required to be made under the Plan have been made or that

final Distributions are being made or will be made within ten (10) days or as soon thereafter as is

practicable by the Creditor Trustee, the Creditor Trustee shall file with the Bankruptcy Court and

serve upon the Office of the United States Trustee and any other Post-Effective Date Notice Party a

certification attesting to such determination ("Creditor Trustee Certification").

17.    **Final Decree**.

Unless earlier filed by the Creditor Trustee, by the thirtieth (30th) day after the filing of the Creditor Trustee Certification, the Creditor Trustee shall file, in accordance with Rule 3022 of the Chapter 11 Bankruptcy Rules, an application with the Bankruptcy Court to obtain a final decree to close the Cases.

18.    **Other Rights, Powers and Duties of Creditor Trustee**.

In addition to the rights, powers and duties granted expressly to the Creditor Trustee pursuant to the Plan, the Creditor Trustee shall have such other rights, powers and duties that are appropriate to implement and to carry out the provisions of the Plan for the benefit of Holders of Claims that are not inconsistent with the provisions of the Plan.

19.    **Resolution of Disputes**.

In the event that a dispute should arise between the Creditor Trustee and any party-in-interest in the Chapter 11 Cases regarding any matters pertaining to the Plan, the Creditor Trust Agreement or pertaining to the Creditor Trustee's performance of its duties and exercise of its rights, powers and remedies under the Plan, either of them may request, pursuant to the provisions of the Bankruptcy Rules, that the Bankruptcy Court resolve the merits of such dispute.

20.    **Termination of Employment of Creditor Trustee**.

Upon the Case Closing Date, the rights, powers and duties granted to the Creditor Trustee hereunder or under the Creditor Trust Agreement shall terminate and the Creditor Trustee shall be discharged.

21.    **Bar Date for Filing Avoidance Action Payment Claims**.

Any Avoidance Action Payment Claim shall be forever barred, shall not be enforceable against the Debtors, the Estates or the Creditor Trust and shall not be entitled to any Distribution under the Plan, unless a proof of Claim for such Avoidance Action Payment Claim is filed and served on the Creditor Trustee within thirty (30) days after the later of (a) the date of entry of the order of the Bankruptcy Court adjudging the creditor's liability to the Debtor on account of such Avoidance Action, or (b) the Effective Date.

40

**N.**    **Issuance and Execution of Plan Related Documents**.

As of the Effective Date, the Debtors, Hillair, the Reorganized Debtors and/or the Creditor Trustee will execute such amendments, modifications, supplements, and other documents as may be reasonably appropriate to implement the Plan. The Debtors, the Reorganized Debtors and/or the Creditor Trustee are authorized to execute such amendments, modifications, supplements and other documents as provided for in the Plan without any further corporate action, and upon such execution, such amendments, modifications, supplements and other documents as provided for in the Plan shall be deemed binding upon the Debtor, the Reorganized Debtors and/or the Creditor Trustee and such other parties as applicable.

**O.**    **Dissolution of the Committee**.

From and after the Effective Date, the Committee shall be dissolved and the Committee shall cease to exist and its members, designated representatives and/or agents (including attorneys and other advisors and agents) shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Committee. The Committee shall continue to exist after such date solely with respect to all the applications filed pursuant to sections 330 and 331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any professional.

**VII.**    **DISTRIBUTIONS UNDER THE PLAN**

**A.**    **In General**.

Except as otherwise provided herein, or as may be ordered by the Bankruptcy Court, Distributions to be made on account of Allowed Claims, other than Allowed Class 4 Claims, shall be made on or soon as reasonably practicable after the Effective Date. The date(s) for Distributions to be made on account of Allowed Class 4 Claims shall be selected by the Creditor Trustee in accordance with the Creditor Trust Agreement.

**B.**    **Manner of Payment Under the Plan**.

Any payment of Cash made by the Creditor Trustee pursuant to the Plan may be made either by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Creditor Trustee.

4847-5170-1428.8

**C.**     **Manner of Distribution of Other Property**.

Any Distribution under the Plan of property other than Cash shall be made by the Creditor Trustee (or its agent) in accordance with the terms of the Plan.

**D.**     **Set-offs**.

The Creditor Trustee may set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtors, Estates or the Creditor Trust may have against the Holder of such Claim; provided that neither the failure to effect such set-off nor the allowance of any Claim that otherwise would be subject to set- off, shall constitute a waiver or release by the Debtors, Estates or Creditor Trust of any such claim that the Debtors, Estates or Creditor Trust may have against such Holder.

**E.**     **Distribution of Unclaimed Property**.

Except as otherwise provided in the Plan, any Distribution of property (Cash or otherwise) under the Plan which is unclaimed after the later of (i) one hundred eighty (180) days following the Effective Date or (ii) ninety (90) days after such Distribution has been remitted to the Holder of the Allowed Claim, shall be deemed Available Cash and distributed as provided for under the Plan.

**F.**     **De Minimis Distributions**.

No cash payment of less than fifty dollars ($50.00) shall be made by the Creditor Trustee to any Holder of a Claim unless a request therefor is made in writing to the Creditor Trustee.

**G.**     **Saturday, Sunday or Legal Holiday**.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**H.**     **Delivery of Distributions, Address of Holder**.

For purposes of all notices and Distributions under this Plan, the Creditor Trustee shall be entitled to rely on, and Distributions to Holders of Allowed Claims shall be made by regular U.S. first class mail to, the following name and address for the Holder of each such Claim: (a) the address set forth in the proof of Claim Filed by such Holder; (b) the address set forth in any written

4847-5170-1428.8

notice of address change delivered by the Holder to the Debtor or the Creditor Trustee after the date on which any related proof of Claim was Filed, or (c) the address reflected on the Schedules if no proof of Claim is Filed and neither the Debtor nor the Creditor Trustee has received a written notice of a change of address. The Creditor Trustee shall be under no duty to attempt to locate Holders of Allowed Claims who are entitled to unclaimed Distributions.

      **I.**        **Payment of Fees and Expenses of Creditor Trustee**

The fees and expenses incurred by the Creditor Trustee, in connection with the performance of its duties as disbursing agent under this Plan, shall be paid from the Creditor Trust Assets.

      **J.**        **Approval for Schedule of Proposed Distributions**.

In the discretion of the Creditor Trustee, the Creditor Trustee shall be entitled to prepare a preliminary schedule of proposed Distributions to Holders of Claims ("Distribution Schedule"), and to apply, on an expedited basis, for an order of the Bankruptcy Court approving the making of such Distributions pursuant to the Distribution Schedule. Notice of any such application shall be served on the Post-Effective Date Notice Parties or as otherwise determined by the Bankruptcy Court.

      **K.**        **Further Assurances Regarding Distributions**.

As a condition to obtaining Distributions under this Plan, each Holder of a Claim shall execute and deliver to the Creditor Trustee, or join in the execution and delivery of, any agreement or instrument appropriate for the consummation of this Plan.

      **L.**        **Creditor's Payment of Obligations or Turn Over of Property to the Creditor Trustee**.

As a condition to obtaining Distributions under the Plan, any Holder of a Claim from which property is recoverable pursuant to a Final Order of the Bankruptcy Court under sections 542, 543, 550 or 553 of the Bankruptcy Code, or otherwise, or that is a transferee of a transfer avoidable pursuant to a Final Order of the Bankruptcy Court under sections 522, 544, 545, 547, 548 or 549 of the Bankruptcy Code or otherwise, shall turn over any such property or pay the amount to the Reorganized Debtors, the Creditor Trust, or Hillair (in accordance with the ownership of such

property or avoidable transfer claim as set forth in the Plan) for which such Holder of a Claim is liable to the Debtors.

## VIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases.

On the Effective Date, except as otherwise provided herein, all executory contracts or unexpired leases will be deemed rejected, other than those that are identified on a schedule of assumed executory contracts and unexpired leases to be filed in accordance with the procedures specified in Section VIII.D. herein. The Debtors shall seek to assume and assign the executory contracts and unexpired leases as determined by Hillair in its discretion.

Pursuant to sections 365(a) and 1123 of the Bankruptcy Code, entry of the Confirmation Order shall constitute a Court order approving the rejection of executory contracts not identified for assumption in accordance with the procedures specified in Section VIII.D. herein, and the assumption, or assumption and assignment, as provided in the Confirmation Order, of the executory contracts identified in accordance with the Plan. Unless otherwise indicated or set forth in a motion or order relating to the same, assumptions, assumptions and assignments, or rejections of executory contracts and unexpired leases pursuant to the Plan are effective as of the Effective Date. Each executory contract or unexpired lease assumed pursuant to the Plan or by Court order but not assigned to a third party pursuant to the Plan or such Court order, shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms.

Any motions to assume, or to assume and assign, executory contracts or unexpired leases filed in accordance with the procedures specified in Section VIII.D. herein but not determined as of the conclusion of the Confirmation Hearing, shall be subject to approval by a Final Order of the Court following the conclusion of the Confirmation Hearing.  The assumption, or assumption and assignment, of executory contracts approved by the Court after the conclusion of the Confirmation Hearing shall become effective on the later of the date upon which the order approving such assumption, or assumption and assignment, becomes effective, or the Effective Date.

**B.**    **Bar Date for Rejection Damage Claims**.

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Creditor Trustee and its counsel within thirty (30) days after the Effective Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtors, the Estate, the Creditor Trust, the Creditor Trustee, and their property, and the entities holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Creditor Trustee shall have the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than one hundred twenty (120) days after the Effective Date.

**C.**    **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**.

Any cure claims under an executory contract or unexpired lease, as reflected on the Cure Notice (as defined below) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the such Cure Claim in Cash on the Effective Date, or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree. In the event of a dispute regarding (1) the amount of any cure claims, (2) the ability of the Reorganized Debtors or any assignee, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (3) any other matter pertaining to assumption, payments on cure claims required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. The cure of all monetary defaults for contracts chosen to be assumed shall be made from cash on hand, provided further it shall not be a default excusing Hillair from performance in connection with the Plan if the Debtors are unable to assume and assign the Amazon contracts or if the Debtors do not pay cure under assumed contracts with their own funds (including the Estate Cash Payment).

**D.**    **Procedures Relating to the Assumption and Rejection of Executory Contracts**

At least twenty-one (21) days before the Confirmation Hearing, the Debtors shall file and distribute, or cause to be distributed, to the applicable counterparties a notice and schedule of all

executory contracts and unexpired leases that the Debtors propose to assume, or to assume and assign, and with respect to each such contract or lease, the proposed assignee (if any) and proposed amounts of cure claims (the "Cure Notice"), and a notice and schedule of proposed rejection to applicable counterparties whose contracts the Debtors will seek to reject. Any objection by a counterparty to an executory contract or unexpired lease to a proposed assumption or related cure amount, or rejection, must be filed, served and actually received by the Debtors at least fourteen (14) days before the Confirmation Hearing. Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption or amount of the cure claim in the Cure Notice will be deemed to have assented to such assumption or amount of the cure claim. Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed rejection in the rejection notice will be deemed to have assented to such rejection. Notwithstanding anything herein to the contrary, in the event that the Debtors decide to change the designation of any executory contract or unexpired lease after such 21-day deadline and prior to the commencement of the Confirmation Hearing, a Cure Notice of proposed assumption and proposed amounts of cure claims with respect to such executory contract or unexpired lease, or notice of rejection, as applicable, will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such executory contract or unexpired lease can be assumed or rejected.

Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise and payment of any cure amount that may be due pursuant to such executory contract or unexpired lease shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date upon which the Court approves the assumption, or assumption and assignment, of the contract or unexpired lease. Any Proofs of Claim Filed with respect to an executory contract or unexpired lease that has been assumed and for which the cure claim has been paid shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court.

**E.**    **Modifications, Amendments, Supplements, Restatements or Other Agreements**.

Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and executory contracts and unexpired leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan, or subject to a motion to reject such agreement.

**F.**    **Reservation of Rights**.

Neither the exclusion nor inclusion of any executory contract or unexpired lease on the notices and schedules of potentially assumed, assumed or rejected executory contracts and unexpired leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that the Reorganized Debtors have any liability thereunder.

**G.**    **Insurance Policies**.

For the avoidance of doubt, all of the Debtors' rights with respect to all insurance policies under which any of the Debtors may be a beneficiary (including all insurance policies that may have expired prior to the Petition Date, all insurance policies in existence on the Petition Date, all insurance policies entered into by the Debtors after the Petition Date, and all insurance policies under which the Debtors hold rights to make, amend, prosecute and benefit from claims) are retained according to their respective terms and will be transferred or assigned to the Reorganized Debtors pursuant to the Plan.

Notwithstanding the foregoing and any provision providing for the rejection of executory contracts herein, any insurance policy that is deemed to be an executory contract shall neither be rejected nor assumed by operation of the Plan and shall be the subject of a specific motion by the Reorganized Debtors who shall retain the right to assume or reject any such executory contract pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date; until such time as the Reorganized Debtors rejects any such executory contract, all

47

rights, interests, and remedies under such executory contract shall be retained fully by the

Reorganized Debtors.

## IX.    EFFECTIVENESS OF THE PLAN

### A.    Conditions Precedent.

The Effective Date shall not occur unless the following condition(s) (the "Conditions

Precedent") have been satisfied or waived:

(i)    the Bankruptcy Court shall have entered an order granting approval of the

Disclosure Statement and finding that it contains adequate information pursuant to section

1125 of the Bankruptcy Code and that order shall have become a Final Order;

(ii)    the Bankruptcy Court shall have entered a Confirmation Order that is in form

and substance satisfactory to Hillair;

(iii)    the Debtors' estate has sufficient resources to pay Administrative Expense

Claims (excluding Professional Fees, which shall be capped at the line items set forth in the

cash collateral budgets associated with the Cash Collateral Orders without allowance for

any variance, and with any amounts in excess of such budgeted amounts to be satisfied

solely from the Estate Cash Payment) or a binding commitment by Hillair to fund any

shortfall of the Administrative Expense Claims; and

(iv)    no stay of the Confirmation Order is in effect.

Notwithstanding the foregoing, with respect to Condition Precedent (i), such Condition

Precedent may be waived provided that each of the Proponents agree to such waiver (such waiver

shall not require any notice, Bankruptcy Court order, or any further action) and with respect to

Condition Precedents (ii), (iii) and (iv) such Condition Precedent may be waived solely by

agreement of Hillair and the Debtors (such waiver shall not require any notice, Bankruptcy Court

order, or any further action).

### B.    The Effective Date.

The Plan will not be consummated or become binding (except as to the provisions regarding

(i) the irrevocable carve out, (ii) payment of the Estate Cash Payment into trust for the purposes set

forth in this Plan upon Confirmation, and (iii) the release of the Hillair Released Parties and the

termination of the Committee's challenge rights upon the Confirmation) unless and until the Effective Date occurs.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

      **C.**      **Confirmation Request**.

In the event that all of the applicable requirements of section 1129(a) are met other than section 1129(a)(8), the Debtors request confirmation of the Plan under section 1129(b). If and to the extent applicable, the Debtors will provide further support for Confirmation of the Plan under the "cram down" provisions of section 1129(b) in its brief to be filed in support of the Plan.

      **D.**      **Notice of the Effective Date**.

As soon as practicable after the Effective Date has occurred, the Reorganized Debtors shall file with the Bankruptcy Court an informational notice specifying and confirming the occurrence of the Effective Date, as a matter of record.

## X.      **RETENTION OF JURISDICTION**

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. The Bankruptcy Court will retain and have exclusive jurisdiction to the fullest extent permissible over any proceeding (i) arising under the Bankruptcy Code or (ii) arising in or related to the Chapter 11 Cases or the Plan, including the following:

      a)      To hear and determine pending motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, if any are pending as of the Effective Date, the determination of any cure payments related thereto, and the allowance or disallowance of Claims resulting therefrom;

      b)      To determine any and all adversary proceedings, applications, motions, and contested matters instituted prior to the closing of the Chapter 11 Cases;

      c)      To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

      d)      To hear and determine any objections to Administrative Expense Claims and to proofs of Claims filed both before and after the Effective Date (including whether all or any part of any Claim set forth in any such proof of Claim or Administrative Expense Claim is subject to

partial or complete subordination pursuant to applicable law), and to allow or disallow any Disputed Claim in whole or in part, provided, however, that, for the avoidance of doubt, the Creditor Trustee may settle or compromise (including by set-off) any Disputed Claim without further Order of the Court;

e)       To hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under sections 330, 331, and 503(b) of the Bankruptcy Code;

f)       To hear and determine any disputes arising in connection with the interpretation, implementation, execution, or enforcement of the Plan, the Creditor Trust Agreement, the Confirmation Order, or any other order of the Bankruptcy Court;

g)       To hear or determine any action to recover assets of the Estate, wherever located;

h)       To hear and determine any actions or matters related to Estate Causes of Action, whether or not such actions or matters are pending on the Effective Date, provided that in the cases of Estate Causes of Action, the Bankruptcy Court's jurisdiction shall be deemed non-exclusive;

i)       To hear and determine any matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

j)       To hear and determine any objections to the allowance of Claims or Administrative Expense Claims, whether filed before or after the Confirmation Date, including any objections to the classification of any Claim, and any proceedings to allow, disallow, determine, liquidate, estimate, or establish the priority or the secured or unsecured status of any Claim, or to establish reserves pending the resolution of Disputed Claims;

k)       To hear and determine any proceeding to modify this Plan, after confirmation of this Plan, and, if in the best interests of Holders of Claims, modification of this Plan even after this Plan has been substantially consummated;

l)       To consider the issuance of injunctions or other orders as may be necessary or appropriate to aid in the implementation of this Plan or to restrain interference by any entity with the consummation or the enforcement of this Plan;

m)       To hear any other matter not inconsistent with the Bankruptcy Code;

n)       To hear any other matter deemed relevant by the Bankruptcy Court; and

4847-5170-1428.8

o)    To enter a final decree closing the Chapter 11 Cases.

## XI.    RELEASES. EXCULPATION AND INJUNCTION

### A.    Exculpation

*None of the Exculpated Parties shall have or incur any liability for any act or omission in connection with, related to, or arising out of, the filing or administration of the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, implementation, confirmation, or approval of the Plan, the administration of the Plan, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan, provided, however, that the foregoing provisions shall not (i) affect the liability of any Person that would result solely from any such act or omission to the extent that act or omission is determined by a Final Order by a court of competent jurisdiction to have constituted willful misconduct or gross negligence; or (ii) be deemed to release, waive or discharge any rights or obligations under the Plan.  The Debtor and the Committee (and their respective relevant members, postpetition agents, directors, officers, employees, advisors and attorneys) have participated in compliance with the Bankruptcy Code and applicable law with regard to solicitation and distributions pursuant to this Plan and therefore are not and on account of the same shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges, arguments and any other applicable law, court order, or rules protecting such Persons from liability.*

### B.    Releases

### a)    Release of the Estate Released Parties

*As of the Effective Date, the Debtors and their Estates shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each of the Estate Released Parties of and from any and all past, present and future legal actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts,*

51

*deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including those arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, and any and all alter ego, lender liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against the Estate Released Parties occurring from the beginning of time to and including the Effective Date related in any way, directly or indirectly, arising out of, and/or connected with any or all of the Debtors, their Estates, the Chapter 11 Cases, the Plan, solicitation of the Plan, and that could have been asserted by or on behalf of the Debtors, the Estates, the Creditor Trust, the Committee, (whether individually on or collectively) on behalf of the holder of any Claim or Equity Interest or other entity.*

      *b)     Release of Hillair Released Parties*

      *As of the Confirmation Date, the Debtors and their Estates shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each of the Hillair Released Parties of and from any and all past, present and future legal actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including those arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, and any and all alter ego, lender liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore*

*accrue against the Hillair Released Parties occurring from the beginning of time to and*

*including the Confirmation Date related in any way, directly or indirectly, arising out of, and/or*

*connected with any or all of the Debtors, their Estates, the Chapter 11 Cases, the Plan,*

*solicitation of the Plan, and that could have been asserted by or on behalf of the Debtors, the*

*Estates, the Creditor Trust, the Committee, (whether individually on or collectively) on behalf of*

*the holder of any Claim or Equity Interest or other entity.*

       *c)*       ***Release by Holders of Claims***

      *As of the Effective Date, each holder of a Claim in Class 1, and each holder of Claims in*

*Class 3 or Class 4 that does not opt out of the releases provided in this section, shall be deemed*

*to release and forever waive and discharge the Debtors, the Estate Released Parties, and the*

*Hillair Released Parties of and from any and all past, present and future legal actions, causes of*

*action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits,*

*adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies,*

*diminution in value, disbursements, expenses, losses and other obligations of any kind, character*

*or nature whatsoever, whether in law, equity or otherwise (including those arising under*

*Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, and any and all alter*

*ego, lender liability, indemnification or contribution theories of recovery, and interest or other*

*costs, penalties, legal, accounting and other professional fees and expenses, and incidental,*

*consequential and punitive damages payable to third parties), whether known or unknown, fixed*

*or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen,*

*suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue*

*from the beginning of time to and including the Effective Date related in any way, directly or*

*indirectly, arising out of, and/or connected with any or all of the Debtors, their Estates, the*

*Chapter 11 Cases, the Plan, or solicitation of the Plan, and that could have been asserted by or*

*on behalf of the Debtors, the Estates, the Creditor Trust, the Committee, (whether individually*

*on or collectively) on behalf of the holder of any Claim or Equity Interest or other entity;*

*provided however, that nothing in this section shall be construed to release the right of any*

53

*holder of a Claim in Class 1, Class 3 or Class 4 to receive distributions from the Debtors and*
*Creditor Trust on account of an Allowed Claim pursuant to this Plan.*

### C.    Exception from All Releases

Notwithstanding anything to the contrary in the Plan, this Article does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

### D.    No Liability for Solicitation or Participation.

As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

### E.    Good Faith.

Confirmation of this Plan shall constitute a finding that the Plan was proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with applicable provisions of the Bankruptcy Code.

### F.    Injunction Enjoining Holders of Claims Against Debtors.

The Plan is the sole means for resolving, paying or otherwise dealing with Claims and Equity Interests.  To that end, except as expressly provided in the Plan, at all times on and after the Effective Date, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors, arising prior to the Effective Date, will be permanently enjoined from taking any of the following actions, on account of any such Claim or Equity Interest, against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trust or its property (other than actions brought to enforce any rights or obligations under the Plan):

(1)    commencing, conducting or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trust, or the Creditor Trustee, their successors, or their respective property

or assets (including all suits, actions, and proceedings that are pending as of the Effective Date which will be deemed to be withdrawn or dismissed with prejudice);

(2)     enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trust, or the Creditor Trustee, their successors, or their respective property or assets;

(3)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien, security interest or encumbrance against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trust, or the Creditor Trustee, their successors, or their respective property or assets; and

(4)     proceeding in any manner in any place whatsoever against the Debtors, the Estates, the Reorganized Debtors, the Creditor Trust, or the Creditor Trustee, their successors, or their respective property or assets that does not conform to or comply with the provisions of the Plan.

From and after the Effective Date, to the extent of the releases and exculpation granted in this Plan, holders of Claims or Equity Interests as applicable shall be permanently enjoined from commencing or continuing in any manner against the Estate Released Parties, the Hillair Released Parties and the Exculpated Parties and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or exculpated pursuant to this Article.

### G.     Discharge of the Debtors

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each Person that is a Holder (as well as any trustees and agents on behalf of such Person) of a Claim or Interest and any affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtors and the Reorganized Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided herein, upon the Effective Date, all such Holders of Claims and Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524,

1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtors.

## XII.    MISCELLANEOUS PROVISIONS

### A.    Payment of Statutory Fees.

All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code shall be duly paid in full on or before the Effective Date, as required by section 1129(a)(12) of the Bankruptcy Code. The Creditor Trust shall be responsible for timely payment of such quarterly fees due and payable after the Effective Date and until the Chapter 11 Cases are closed, pursuant to section 1930(a)(6) of title 28 of the United States Code, with respect to cash disbursements made by the Creditor Trustee under the Plan. After the Effective Date and until the Chapter 11 Cases are closed, the Creditor Trustee shall file with the Office of the United States Trustee monthly financial reports specifying all disbursements made pursuant to the Plan and shall make all payments based upon such disbursements as required by applicable law.

### B.    Preservation of Rights of Action.

Except to the extent any rights, claims, defenses, and counterclaims are expressly and specifically released in connection with the Plan or in any settlement agreement approved during the Chapter 11 Cases: (i) any and all Hillair Causes of Action shall vest in Hillair, any and all Remaining Causes Action shall vest in the Reorganized Debtors and any and all Creditor Trust Claims shall vest in the Creditor Trust whether or not litigation relating to any of the foregoing is pending on the Effective Date, and whether or not any such Estate Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, and (ii) the Debtors' Estates do not waive, release, relinquish, forfeit, or abandon (and it shall not be estopped or otherwise precluded or impaired from asserting) any Estate Cause of Action that constitutes property of the Debtors' Estates: (a) whether or not such Estate Causes of Action has been listed or referred to in the Debtors' Schedules, the Plan, the Plan Supplement, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such Estate Cause of Action is currently known to the Debtors, Hillair or the

Creditor Trustee, and (c) whether or not a defendant in any litigation relating to such Estate Cause of Action filed a proof of claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.

C.      **Exemption from Stamp, Transfer and Other Taxes**.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan by the Debtors, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

1.      **Headings**.

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

2.      **Binding Effect**.

The Plan shall be binding upon and inure to the benefit of the Debtors' Estates, Holders of Claims, Holders of Equity Interests, and their respective successors or assigns.

D.      **Revocation or Withdrawal**.

1.      **Right to Revoke**.

Hillair reserves the right to revoke or withdraw the Plan (a) for any reason, prior to the Confirmation Date and (b) the Debtors' breach of a Cash Collateral Order or of any post-Confirmation Date obligation, prior to the Effective Date.

2.      **Effect of Revocation**.

If Hillair revokes the Plan pursuant to the Plan or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtors or Estates, or any other person or to prejudice in any manner the rights of the Debtors or Estates, or any person in any further proceedings involving the Debtors.

4847-5170-1428.8

**3.      Governing Law**.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, this Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

**4.      Withholding, Reporting, and Payment of Taxes**.

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Creditor Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Creditor Trustee shall report and pay taxes on the income of the Creditor Trust Assets, if any, as required by applicable law. In addition, to the extent required by applicable law, reported Distributions from such reserves shall include all interest and investment income, if any, attributable to the Cash or property being distributed net of taxes which are, or are estimated to be, due and payable thereon.

**5.      Other Documents and Actions**.

The Debtors on and prior to the Effective Date and the Creditor Trustee after the Effective Date may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**6.      Modification of the Plan**.

Prior to the Effective Date, the Plan may be altered, amended, or modified pursuant to section 1127 of the Bankruptcy Code with the consent of Hillair, the Committee and the Debtors. Such modification shall be without prejudice to any rights of any Proponent. After the Effective Date, the Reorganized Debtors shall have the sole authority and power to alter, amend, or modify the Plan pursuant to section 1127 of the Bankruptcy Code; however to the extent that a post-

Effective Date modification would affect the Creditor Trust, such modification shall require the consent of the Creditor Trustee.

7.    **Notices**.

Any notice to the Reorganized Debtors or Creditor Trustee required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

**The Reorganized Debtors:**

[To be set forth in the Plan Supplement]

**With a copy to:**

Adam H. Friedman, Esq.
Olshan Frome Wolosky LLP
1325 Avenue of the Americas
New York, New York 10019
afriedman@olshanlaw.com

**Creditor Trustee:**

TO BE SET FORTH IN THE PLAN SUPPLEMENT IF DESIGNATED BY THE CREDITORS' COMMITTEE, OR IN A SEPARATE FILING PRIOR TO THE EFFECTIVE DATE IF DESIGNATED BY HILLAIR.

E.    **Severability of Plan Provisions**.

If, prior to Confirmation, any term or provision of the Plan is found by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have

been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**F.      Successors and Assigns**.

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

**G.      Post-Confirmation Notice**.

From and after the Effective Date, any person who desires notice of any pleading or document filed in the Bankruptcy Court, or any hearing in the Bankruptcy Court, or other matter as to which the Bankruptcy Code requires notice to be provided, shall file a request for post-confirmation notice and shall serve the request on the Creditor Trustee; provided, however, the United States Trustee shall be deemed to have requested post-confirmation notice.

**H.      Books and Records transferred to the Creditor Trustee**.

Upon the Case Closing Date, the Creditor Trustee shall be authorized, in the exercise of its sole and absolute discretion, to discard or destroy any and all pre-Effective Date books and records of the Debtor that is in the Creditor Trustee's custody or control. The Creditor Trustee shall continue to preserve post-Effective Date books and records in its custody or control through the Case Closing Date, or as otherwise provided by order of the Bankruptcy Court.

**I.      Effectiveness of Court Orders**.

All orders and judgments, including injunctions, entered by the Bankruptcy Court during the Chapter 11 Cases, and in existence on the Confirmation Date, shall remain in full force and effect from and after the Effective Date, to the extent not inconsistent with the provisions of this Plan or the Confirmation Order.

**J.      No Waiver**.

Neither the failure to list a Claim in the Schedules filed by the Debtors, the failure to object to any Claim for purposes of voting, the failure to object to a Claim or Administrative Expense Claim prior to the Effective Date, the failure to assert an Estate Cause of Action prior to the Effective Date, nor any action or inaction with respect to a Claim, Administrative Expense Claim,

4847-5170-1428.8

or Estate Cause of Action, other than an a claim Allowed as of the Effective Date or a legally effective express waiver or release, shall be deemed to be a waiver or release of the right of the Creditor Trustee to object to or examine such Claim or Administrative Expense Claim, in whole or in part, or, the Reorganized Debtors and the Creditor Trustee, as applicable, to retain and assert, pursue, prosecute, litigate, or otherwise enforce any Estate Cause of Action.

K.    **Other Documents and Actions**.

Hillair, the Debtors, the Committee, the Reorganized Debtors and the Creditor Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

L.    **Inconsistencies**.

In the event that any provisions of this Plan are inconsistent with the provisions of the Disclosure Statement, the provisions of this Plan shall control.

M.    **Implementation of Section 1142 of the Bankruptcy Code**.

Pursuant to section 1142(a) of the Bankruptcy Code, the Debtors, the Reorganized Debtors and the Creditor Trustee are authorized to carry out the terms of the Plan. Pursuant to section 1142(b) of the Bankruptcy Code, all Holders of Claims and Holders of Equity Interests shall execute and deliver, or join in the execution and delivery of, any instrument or document appropriate to effectuate the Plan, and perform any other act that is appropriate for the consummation of the Plan. To the extent that any Holder of a Claim or Holder of an Equity Interest fails to comply with these provisions, the Debtors, the Reorganized Debtors and the Creditor Trustee shall be entitled to obtain, on an expedited basis, an order of the Bankruptcy Court compelling such Holder's compliance with these provisions, and, during the time period encompassed by such Holder's non-compliance, no payment shall be made to such Holder under the Plan.

N.    **Plan Compromise**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan and in

61

these Chapter 11 Cases. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan and the Chapter 11 Cases, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates and all Holders of Claims and Equity Interests against the Debtors.

## XIII.   **CONFIRMATION REQUEST**

To the extent necessary, the Proponents hereby request Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

4847-5170-1428.8

## XIV.  <u>**RECOMMENDATION**</u>

The Proponents each recommend that all creditors that receive a ballot and are eligible to vote on the Plan vote in favor of the Plan. The Proponents have thoroughly evaluated various alternatives to the Plan. After studying the other alternatives, each of the Proponents have concluded that the Plan is the best alternative, and will maximize recoveries to each of the Debtors' constituencies.

DATED:        April 28, 2020

SCOOBEEZ, INC. SCOOBUR, LLC,
SCOOBEEZ GLOBAL, INC.

By:_____
Brian Weiss
Chief Restructuring Officer

Presented by:
FOLEY & LARDNER LLP

By:    _/s/ John A. Simon_    .
John A. Simon
Ashley M. McDow
Shane J. Moses

Attorneys for Debtors

Presented by:
OLSHAN FROME WOLOSKY LLP

By: _/s/ Adam H. Friedman_
Adam Friedman

Attorneys For Hillair Capital Management LLC

Presented by:
LEVENE NEALE BENDER YOO & BRILL, LLP

By: _/s/ David L. Neale_
David L. Neale

Attorneys for Official Committee of Unsecured Creditors

63

**<u>EXHIBIT 1</u>**

4814-5620-9588.1

| | December 31, 2019 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| Checking/Savings | |
| Scoobeez DIP Operating #3680 | 2,088,438 |
| WF Scoobeez DIP Tax 8399 | 14,108 |
| WF Scoobeez DIP Payroll 8415 | 14,691 |
| Wells Fargo Business Choice1982 | |
| Wells Fargo Checking #4416 | |
| Total Checking/Savings | 2,117,237 |
| Accounts Receivable | |
| Accounts Receivable (A/R) | |
| Amazon AMZL-Logistics | 4,093,843 |
| HOPSY | 644 |
| Accounts Receivable (A/R) - Other | (954) |
| Total Accounts Receivable (A/R) | 4,093,533 |
| Total Accounts Receivable | 4,093,533 |
| Other Current Assets | |
| Uncategorized Asset | 7,174 |
| Other Current Assets | |
| Other Loan Receivable | |
| Prepaid Insurance | 38,982 |
| Deposit-PEX Holding | 55,734 |
| Security Deposits- Leases | 10,968 |
| Security Deposits-Other | 37,518 |
| Loan Receivables - Shahan/Autoc | 1,887,751 |
| Total Other Current Assets | 2,038,126 |
| Total Current Assets | 8,248,897 |
| **LIABILITIES & EQUITY** | |
| Liabilities | |
| **Current Liabilities** | |
| Accounts Payable - Post Petition | |
| Accounts Payable | 457,767 |
| Accrued Expenses | 145,622 |
| Accrued Payroll | 1,076,688 |
| Hillair Payments | (1,460,000) |
| Accrued Chapter 11 Professional Fees | 970,537 |
| | 1,190,614 |
| Total Current Liabilities | 1,190,614 |

| **NET WORKING CAPITAL** | |
|---|---|
| Current Assets | 8,248,897 |
| **Post-Petition Payments Made to Hillair** | 1,460,000 |
| Less Amounts due from Shahan | (1,887,751) |
| | 7,821,146 |
| Less: | |
| Post-Petition Current Liabilities | (1,680,077) |
| Accrued Chapter 11 Professional Fees | (970,537) |
| Adjustment for Estate Cash Payment ($1.5m-Accr. Prof Fees) | (529,463) |
| Assumed Secured Liabilities | - |
| Executory Cure Claims | (950,592) |
| Net Working Capital | 3,690,477 |