1  MORGAN, LEWIS & BOCKIUS LLP
   Richard W. Esterkin, SBN 70769
2  richard.esterkin@morganlewis.com
   300 S Grand Ave Fl 22
3  Los Angeles CA  90071-3132
   Tel:  (213) 612-2500; Fax:  (213) 612-2501
4
   MORGAN, LEWIS & BOCKIUS LLP
5  Jennifer Feldsher (*pro hac vice* pending)
   jennifer.feldsher@morganlewis.com
6  101 Park Ave
   New York NY  10178 0060
7  Tel:  (212) 309-6000; Fax:  (212) 309-6001

8  MORGAN, LEWIS & BOCKIUS LLP
   Tinos Diamantatos (admitted *pro hac vice*)
9  tinos.diamantatos@morganlewis.com
   77 W Wacker Dr
10 Chicago IL  60601-5094
   Tel:  (312) 324-1000; Fax:  (312) 324-1001
11
12 Attorneys for Amazon Logistics, Inc.

13           **UNITED STATES BANKRUPTCY COURT**

14      **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| 15 **In re:** | Case No. 2:19-bk-14989-WB |
| | (Jointly Administered with |
| 16 **SCOOBEEZ, et al.**[1] | 2:19-bk-14991-WB, and 2:19-bk-14997-WB) |
| 17 | Chapter 11 |
| **Debtors and Debtors in** | |
| 18 **Possession.** | **AMAZON LOGISTICS, INC.'S OBJECTIONS TO CONFIRMATION** |
| 19 | Date:        July 9, 2020 |
| 20 Affects: | Time:        10:00 a.m. |
| ■ All Debtors | Dept.:       1375 (via Zoom for Government; |
| 21 □ Scoobeez, ONLY | access to be provided at or after the Pre-Hearing |
| □ Scoobeez Global, Inc., ONLY | Technical Status Conference) |
| 22 □ Scoobur LLC, ONLY | |
| 23 | Judge:  The Hon. Julia W. Brand |

24
25
26
27

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows:
28 Scoobeez (6339); Scoobeez Global, Inc. (9779); and, Scoobur, LLC (0343).  The Debtors' address is 3463 Foothill
Boulevard, in Glendale, California  91214.

# **Table of Contents**

TABLE OF AUTHORITIES ................................................................................................. 3

I.      PRELIMINARY STATEMENT ................................................................................ 7

II.     OBJECTION ............................................................................................................. 9

      A.      The Plan's Effective Date Cannot Be Delayed for Six Months............................. 9
      B.      The Debtors Haven't Satisfied The Standard for Confirmation .......................... 13
      C.      The Plan Is Not Feasible .................................................................................. 13

             1.      The Plan is not Feasible Because the Estate Cash Payment
                   is Insufficient to Pay the Estate's Professional Fees in
                   Excess of the Amounts Budgeted for Those Fees................................... 14
             2.      There Is No Viable Enterprise After the Effective Date ......................... 16

      D.      The Plan Does Not Satisfy the Best Interest of Creditors Test
           Because Hillair Does Not Have a Security Interest in the Debtors'
           Post-Petition Receipts. ...................................................................................... 18
      E.      Various Other Plan Issues ................................................................................ 19

             1.      Third Party Releases ............................................................................. 19
             2.      Exculpation ........................................................................................... 22
             3.      Injunction and Discharge ...................................................................... 23
             4.      Miscellaneous Provisions...................................................................... 25

III.    RESERVATION OF RIGHTS ................................................................................. 28

IV.     CONCLUSION ....................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Hardwoods, Inc.*,
  885 F.2d 621 (9th Cir. 1989)...................................................................................20

*In re Ambanc La Mesa Ltd. P'ship*,
  115 F.3d 650 (9th Cir. 1997)...................................................................................13

*Blixseth v. Credit Suisse (In re Blixseth)*,
  Case No. 16-35304, 2020 WL 3089263, __ F.3d __ (9th Cir. June 11, 2020) ..................21, 22

*In re BNW, Inc.*,
  201 B.R. 838 (Bankr. S.D. Ala. 1996) ....................................................................27

*In re Cafeteria Operators, L.P.*,
  299 B.R. 400 (Bankr. N.D. Tex. 2003) ...................................................................19

*In re Caviata Attached Homes, LLC*,
  481 B.R. 34 (B.A.P. 9th Cir. 2012)..........................................................................27

*In re Chassix Holdings, Inc.*,
  533 B.R. 64 (Bankr. S.D.N.Y. 2015) .......................................................................20

*In re Clarkson*,
  767 F.2d 417 (8th Cir. 1985)....................................................................................16

*Crestar Bank v. Walker (In re Walker)*,
  165 B.R. 994 (E.D. Va. 1994)..................................................................................13

*In re Emerge Energy Servs. LP*,
  Case No. 19-11563 (KBO), 2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019).....................20

*In re Friendship Dairies*,
  Case No. 12-20405-RLJ-11, 2014 WL 29081 (Bankr. N.D. Tex. Jan. 3, 2014) .....................16

*In re G–1 Holdings, Inc.*,
  420 B.R. 216 (D.N.J. 2009) .....................................................................................13

*In re Indianapolis Downs, LLC.*,
  486 B.R. 286 (Bankr. D. Del. 2013) ........................................................................12

*In re Inv. Co. of The Sw., Inc.*,
  341 B.R. 298 (B.A.P. 10th Cir. 2006)................................................................16, 17

*In re Jones*,
  32 B.R. 951 (Bankr. Utah 1983) ..............................................................................10

*In re Krueger*,
  66 B.R. 463 (Bankr. S.D. Fla. 1986).......................................................................10

- 3 -    AMAZON'S CONFIRMATION OBJECTION

1

*In re Lehman Bros. Holdings Inc.*,
   591 B.R. 153 (Bankr. S.D.N.Y. 2018) ...................................................................26

2

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   247 F.3d 44 (3d Cir. 2001) ...................................................................................22

3

4

*Miller v. Greenwich Cap. Fin. Prods., Inc. (In re Am. Fin. Servs., Inc.)*,
   361 B.R. 747 (Bankr. Del. 2007) ..........................................................................22

5

*In re NNN Parkway 400 26, LLC*,
   505 B.R. 277 (Bankr. C.D. Cal. 2014) ..................................................................13

6

7

*In re Nobel Grp., Inc.*,
   529 B.R. 284 (Bankr. N.D. Cal. 2015) ..................................................................27

8

*In re Nw. Timberline Enters., Inc.*,
   348 B.R. 412 (Bankr. N.D. Tex. 2006) ..................................................................16

9

10

*In re Olde Prairie Block Owner, LLC*,
   467 B.R. 165 (Bankr. N.D. Ill. 2012) ....................................................................17

11

*Matter of Pizza of Hawaii, Inc.*,
   761 F.2d 1374 (9th Cir. 1985) .........................................................................13, 17

12

13

*In re Plitt Amusement Co. of Wash., Inc.*,
   233 B.R. 837 (Bankr. C.D. Cal. 1999) ..................................................................24

14

*In re Potomac Iron Works, Inc.*,
   217 B.R. 170 (Bankr. Md. 1997) ..........................................................................10

15

16

*In re Premier Golf Props., LP*,
   477 B.R. 767 (Bankr. 9th Cir. 2012) .....................................................................18

17

*Resorts Int'l v. Lowenschuss (In re Lowenschuss)*,
   67 F.3d 1394 (9th Cir. 1995) .................................................................................20

18

19

*S & P, Inc. v. Pfeifer*,
   189 B.R. 173 (N.D. Ind. 1995) .............................................................................13

20

*In re Skagit Pac. Corp.*,
   316 B.R. 330 (Bankr. 9th Cir. 2004) .....................................................................19

21

22

*Spectrum Eng'g Inc. v. Goldin (In re Pegasus Gold Corp.)*,
   394 F.3d 1189 (9th Cir. 2005) ...............................................................................27

23

*Stern v. Marshall*,
   564 U.S. 462 (2011) .........................................................................................27, 28

24

25

*In re SunEdison, Inc.*,
   576 B.R. 453 (Bankr. S.D.N.Y. 2017) ..................................................................20

26

*In re Wash. Mut., Inc.*,
   442 B.R. 314 (Bankr. D. Del. 2011) ......................................................................20

27

28

*In re Wonder Corp. of Am.*,
    70 B.R. 1018 (Bankr. Conn. 1987) ...................................................................................10

*In re Yates Development, Inc.*,
    258 B.R. 36 (Bankr. M.D. Fla. 2000) ............................................................................9, 10

**Statutes**

11 U.S.C. § 365(b)(1).........................................................................................................24

11 U.S.C. § 365(d)(2).........................................................................................................8

11 U.S.C. § 524(a) ............................................................................................................23

11 U.S.C. § 524(e) ............................................................................................................21

11 U.S.C. § 524(b) ............................................................................................................21

11 U.S.C. § 552(a) ............................................................................................................18

11 U.S.C. § 1125 ...............................................................................................................25

11 U.S.C. § 1127 ...............................................................................................................25

11 U.S.C. § 1127(b) ..........................................................................................................27

11 U.S.C. § 1127(f)(2) .......................................................................................................25

11 U.S.C. § 1129 ...............................................................................................................8

11 U.S.C. § 1129(a) ..........................................................................................................13

11 U.S.C. § 1129(a)(7) ....................................................................................................9, 18

11 U.S.C. § 1129(a)(11) ..................................................................................................13, 17

11 U.S.C. § 1141(d)(1)(A) ...........................................................................................21, 23, 25

11 U.S.C. § 1142(b) ..........................................................................................................26

28 U.S.C. § 157(c) ............................................................................................................27

28 U.S.C. § 157(d) ............................................................................................................27

28 U.S.C. § 157(e) ............................................................................................................27

28 U.S.C. § 1334 ...............................................................................................................28

28 U.S.C. § 1334(a) ..........................................................................................................26

28 U.S.C. § 1334(b) ........................................................................................................26, 27

AMAZON'S CONFIRMATION OBJECTION

**Other Authorities**

7 *Collier on Bankruptcy* ¶ 1129.02 (Richard Levin & Henry J. Sommer eds., 16th
ed. 2019).................................................................................................................................18

8 *Collier on Bankruptcy* ¶ 1141.02 (Richard Levin & Henry J. Sommer eds., 16th
ed. 2020).................................................................................................................................20

Adjusting Chapter 11: Fine Tuning the Plan Process, 69 Am. Bankr. L.J. 551, 561
(1995)....................................................................................................................................10

1      Amazon Logistics, Inc. ("**Amazon**"), a creditor herein, hereby objects to confirmation of

2  the *First Amended Chapter 11 Joint Plan of Reorganization as Proposed by the Debtors, Hillair*

3  *and The Official Committee of Unsecured Creditors* [ECF No. 754] (the "**Plan**")[2] and represents

4  as follows:

5  **I.      PRELIMINARY STATEMENT**

6      Despite specific, undisputed language in its contract with the Debtors permitting Amazon

7  to terminate the contract with or without cause, consistent with its assurances to this Court and the

8  Court's rulings, Amazon has continued to work with the Debtors for over eight months.  During

9  those months, the Debtors have billed Amazon a total of $22,371,907 which the Debtors used to

10  fund their administrative expenses, including so-called adequate protection payments to the

11  Debtors' secured creditor, Hillair Capital Management, LLC ("**Hillair**").  During the same

12  period, Amazon incurred charges of between $1,566,033.49 and $2,237,190.70 in excess of the

13  charges that it would have incurred with another provider, if it had been permitted to terminate its

14  contract with the Debtors.[3]  Those overcharges will continue to accrue at the rate of

15  approximately $300,000 per month until one of three things happens: (a) a plan of reorganization

16  is confirmed and becomes effective, (b) the Debtors' motion to reject the Amazon contract is

17  granted and becomes effective or (c) Amazon is granted relief from the automatic stay.

18      Throughout these cases, the Debtors have professed that they would use chapter 11 to

19  diversify their operations.  However, the Debtors have not diversified – all of the income

20  projected in: (a) the budget filed June 5, 2020 [Dkt. No. 786] and (b) the Debtors' post-Effective

21  Date projections is from the Amazon contract.[4]  Now, in an effort to keep Amazon unjustifiably

22  tied to the Debtors for an indefinite period of time, the Debtors ask the Court to confirm a Plan

23  _____

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

24

25  [3] Deposition of George Voskanian (Jan. 28, 2020) ("**Voskanian Depo.**") at 283:7-13 ("And, again, the reason 2.0 didn't make sense for us specifically is because our pricing was higher than other DSPs.  So it was almost guaranteed that if we were to go with the 2.0 and if there's streamlined pricing, that means our pricing was going to go down by 7 to 10 percent.").

26  [4] Deposition of Brian Weiss ("**Weiss Depo.**") at 67:3-7 ("Q:  All right.  And as I'm looking at the budget, the payments on account of the Amazon routes are the only – is the only cash income reflected in the budge, correct?  A: Yes.").

27

28    Voskanian Depo. at 60:14-61:4.  *See,* Voskanian Depo. at 61:1-4 ("Q:  For purposes of those projections, did you assume that Scoobeez would acquire business from any other party besides Amazon?  A:  No.").

1    that does not satisfy the strict requirements of section 1129 of the Bankruptcy Code.  As such,

2    confirmation should be denied unless the Plan is amended as set forth below.

3        First, the Debtors' determination to reject the Amazon contract should be effective as of

4    the confirmation date.  Between the Plan and the Debtors' *Motion to Assume Certain Executory*

5    *Contracts and Unexpired Leases and Reject Certain Executory Contracts and Unexpired Leases*

6    *Pursuant to 11 U.S.C Section 365* [Dkt. No. 800] separately filed in connection with the Plan, the

7    Debtors impermissibly seek to retain the ability to designate contracts for assumption or rejection

8    through the Effective Date of the Plan.  Section 365(d)(2), however, only permits a debtor to

9    assume or reject executory contracts *before* confirmation of a chapter 11 plan and not after.

10   Moreover, this Court already held at the disclosure statement hearing that the Debtors had to

11   determine which contracts they were assuming and rejecting by the start of the confirmation

12   hearing.[5]

13       Second, the Plan improperly delays its Effective Date for six months after confirmation.

14   Unlike the "mega" cases cited in its confirmation brief where regulatory approvals, finalizing

15   agreed employment and financing documentation, and consummation of contemplated

16   settlements, were required between confirmation and the effective date, in this case there are no

17   pending approvals required for the Plan to go effective and no basis for the extraordinary delay

18   between the confirmation date and the Effective Date.  The ***only*** reason the Debtors have cited for

19   delaying the Plan's Effective Date for six months is to "provide the Debtors with . . . continued

20   generation of cash flow while they continue to operate for Amazon,"[6] allowing Hillair to extract

21   in excess of $1 million from Amazon between the confirmation date and the anticipated Effective

22   Date alone.  This Court has previously indicated its skepticism for the long delay and now that the

23   Debtors have admitted it is pure gamesmanship by seeking to reject the Amazon agreement, the

24   Court should not countenance it.  The Debtors have enjoyed the benefit of their contractual

25   relationship with Amazon well beyond the period they are entitled to do so, to Amazon's

26

27   [5] *Order (1) Approving the Disclosure Statement, etc.* (Dkt. No. 766) at ¶ 44.

28   [6] Declaration of Brian Weiss in Support of Confirmation of First Amended Plan of Reorganization as Proposed by
the Debtors, Hillair and the Official Committee of Unsecured Creditors (the "Weiss Decl.") at 4:1-3.

1   substantial economic detriment.  Enough is enough.  The Court should not condone the

2   unabashed bilking of Amazon the Debtors propose for an additional six months.

3       Absent the above amendments, confirmation of the Plan should be denied and the cases

4   converted to chapter 7.  Moreover, the Plan contains numerous additional deficiencies.  For

5   example, the Debtors lack the ability to fund Effective Date payments or establish the overall

6   feasibility of the Plan.  In fact, Amazon learned in discovery related to the Plan that the Debtors'

7   CFO was directed to include only Amazon revenues in the Debtors' projections related to the

8   Plan and assume, despite all evidence to the contrary, that the Amazon contract would continue

9   for at least three years after the Effective Date.  In reality, both the Debtors and Amazon are

10  seeking to reject the Amazon contract.  Therefore, the Debtors know their projections will never

11  be attainable.

12      The Plan also cannot be confirmed because it violates the "best interests of creditors test"

13  under section 1129(a)(7) as to general unsecured creditors and contains a number of

14  impermissible provisions in this Circuit, such as third party releases, overly broad exculpation

15  provisions, conditions that are unlikely to be attained, and attempts to expand the discharge to

16  which the Debtors will be entitled.

17      For these and the other reasons set forth herein, confirmation of the Plan should be denied.

18  **II.    OBJECTION**

19      **A.    The Plan's Effective Date Cannot Be Delayed for Six Months**.

20      The Plan Proponents have offered no legitimate basis to delay the Effective Date for six

21  months after the Confirmation Hearing.  As a result, if the Plan is confirmed, it should become

22  effective as soon as any stay of the confirmation order expires.

23      As explained by the Court in *In re Yates Development, Inc.* 258 B.R. 36 (Bankr. M.D. Fla.

24  2000):

25          There are two views as to when an effective date may occur.  Some
            courts hold that a plan's effective date should be on or close to the
26          date on which a confirmation order is entered.  Other courts have
            held that an effective date which occurs around the date a
27          confirmation order becomes final is acceptable. [The latter holding]
            was predicated upon the fact that any appeal, and thus, any resulting
28          delay in the case, would be instituted by the creditors, not the debtor.

> "This concern could be minimized if not completely avoided, since if the [creditors] do not create a delay, the effective date need be no later that *(sic)* 30 days after the entry of the Confirmation Order . . ."

258 B.R. at 42–43 (quoting *In re Wonder Corp. of Am.*, 70 B.R. 1018, 1021 (Bankr. Conn. 1987) (internal citations omitted)). *See also, In re Potomac Iron Works, Inc.*, 217 B.R. 170 (Bankr. Md. 1997); *In re Krueger,* 66 B.R. 463, 465 (Bankr. S.D. Fla. 1986) (holding four month delay between plan confirmation and the effective date is unreasonable); *In re Jones*, 32 B.R. 951, 959, n. 13 (Bankr. Utah 1983) ("[T]he effective date of the plan should be reasonably close to the date of the confirmation hearing."). Amazon is not aware of any cases that have held that the effective date can be delayed for over six months solely so that the debtor's secured lender can extract more value from a contract that is being rejected.

The reasoning for such a general rule is clear: deferral of the effective date shifts risks to the objecting party. *Yates Dev.*, 258 B.R. at 43 (when there is a delay between confirmation and the effective date, the objecting party is "forced to bear all of the risk of the delay."). Moreover, in the event there is a short delay between confirmation and the effective date, "the effective date [must be] linked to the happening of a particular event and [be] no later than is reasonably necessary to accomplish a legitimate purpose . . ." *Wonder Corp. of Am.*, 70 B.R. at 1021; *see also* Kenneth N. Klee, Adjusting Chapter 11: Fine Tuning the Plan Process, 69 Am. Bankr. L.J. 551, 561 (1995) ("This all-important date [*i.e.*, the effective date] should not be left to conjecture or undue manipulation."). As acknowledged by Mr. Voskanian, the longer the gap between the confirmation hearing and a plan's effective date, the cloudier the crystal ball that the Court must use to assess the plan's feasibility.[7]

---

[7] Voskanian Depo. at 64:24-65:4 (Q: Okay. At the time – at the time you thought it was pretty speculative that the Amazon contract would continue, correct? Mr. Simon: Objection. Speculation. A: Every model is – every model is speculative. Like, for anyone to guess where the numbers are going to be, there's not a single person who could forecast three months out and be accurate. Everything is speculative on a model It's educated guessing.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Assuming there is no resolution of the Amazon Litigation (and such a resolution does not

2  appear likely in the near term), the Plan's Effective Date is expected (but not guaranteed) to occur

3  on December 31, 2020— nearly six months after the Confirmation Hearing.  Yet, there is no

4  legitimate reason for this delay.  To the contrary, most of the conditions to the Plan will occur

5  automatically but all of which can be accomplished immediately following the Confirmation

6  Date.  Specifically, the Plan contemplates only the following limited set of transactions before the

7  Effective Date can occur:

8       • Hillair is to receive 80% of the equity interests in the Reorganized Debtors and a

9          secured note for $3,000,000 with interest at 9% per annum, payable at the rate of

10         $100,000 per week.  Plan §§ III.C.2 and II. A.8.

11      • The Estate Cash Payment ($1,500,000) is to be transferred to the Escrow Cash

12         Account on the Confirmation Date and automatically vest in the Creditor Trust on

13         the Effective Date.  Plan §§ VI and IV.C.

14      • The Hillair Causes of Action is to automatically vest in Hillair as of the Effective

15         Date.  Plan § VI.A.

16      • Any Remaining Causes of Action are to automatically vest in the Creditor Trust as

17         of the Effective Date.  Plan § VI.B.

18      • 20% of the equity interests in the Reorganized Debtors are to automatically vest in

19         the Creditor Trust.  Plan § VI.C. and II.A.35.

20      • Any Remaining Assets are to automatically vest in the Reorganized Debtors.  Plan

21         § VI.B.

22  None of these transactions require action by any third party or lengthy regulatory approvals or to

23  justify delaying the Effective Date beyond the time that any stay of the Confirmation Order may

24  be in effect.

25     The Debtors' reliance on the delayed effective dates of plans in "mega" cases filed by

26  Ambac Financial Group, Delphi Corp., Relativity Fashion, Sun Edison and W.R. Grace is

27  misplaced.  First, no creditor in any of those cases objected to the plans proposed in those cases

28  based upon any delay in the effective date of those plans.  Second, the plans in those cases

1    involved complex financial restructurings that required time to complete, unlike the simple,

2    straight-forward transactions among the Plan Proponents contemplated by the Plan.[8]  Most

3    importantly, however, none of these cases or plan were designed by the debtors to artificially be

4    delayed so that the debtors could extract value they were not entitled to from one of their

5    creditors.

6        *In re Indianapolis Downs, LLC.*, 486 B.R. 286, 298–99 (Bankr. D. Del. 2013) also relied

7    upon by the Debtors, is illustrative of when a delayed effective date is justified and when it is not.

8    In that case, the debtor operated a race track and casino.  During the case, the Court approved a

9    sale of substantially all of the debtor's assets to a third party, who applied for regulatory

10    approvals necessary to consummate the sale and operate the debtor's business.  The Court

11    considered confirmation of the debtor's plan prior to those regulatory approvals being received

12    and determined as follows:[9]

13            It is not at all unusual for consummation of a Chapter 11 plan to be
            conditioned upon the expectation of approval by regulatory
14            authorities, and courts have not typically held up confirmation of a
            plan to wait for issuance of such approvals.
15

16    486 B.R. at 298.  Concluding that the required approvals were probable, the Court confirmed the

17    plan despite the effective date being conditioned on such approvals.

18        Unlike *Indianapolis Downs*, and the other cases relied upon by the Debtors, there is no

19    justification for a delayed effective date in the present case, other than a desire by the Plan

20    Proponents to force Amazon to subsidize Hillair's future business operations.  If Hillair, the

21    primary beneficiary of the Debtors' proposed reorganization, intends to support the Reorganized

22    Debtors, there is no reason why it cannot start doing so immediately, rather than continuing to

23    hold Amazon hostage by artificially delaying the Effective Date.

24

25

26

27    [8]  *Id.*

28    [9]  486 B.R. at 298 ("[T]he Plan is built around the sale of the Debtor's business to Centaur.  If the necessary
     approvals are not obtained, that transaction will fail and the Plan will likewise fail.")

**B.    The Debtors Haven't Satisfied The Standard for Confirmation**

In order to confirm a plan, the plan proponent must satisfy the requirements under section 1129(a) of the Bankruptcy Code.  The proponent must satisfy this burden by a preponderance of the evidence.  *See, e.g.*, *In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir. 1997).  The Plan Proponents have not met this burden with Mr. Weiss's conclusory declaration.  As a result, confirmation must be denied.

**C.    The Plan Is Not Feasible**

Section 1129(a)(11) of the Bankruptcy Code requires that a bankruptcy court find that "[c]onfirmation of the plan [of reorganization] is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).  "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (internal citations omitted).

This "feasibility" analysis "requires courts to determine whether the Plan is feasible and has a reasonable likelihood of success." *In re G–1 Holdings, Inc.*, 420 B.R. 216, 267 (D.N.J. 2009) (citations omitted).  "But 'feasibility' can be read broader to ask simply, 'Is this plan even possible'?" *In re NNN Parkway 400 26, LLC*, 505 B.R. 277, 285 (Bankr. C.D. Cal. 2014).  To provide sufficient evidence of feasibility, "[t]he debtor must offer more than speculation about the source of funding for the plan." *Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 1003 (E.D. Va. 1994).  Among other things, "[s]ection 1129(a)(11) requires the plan proponent to show *concrete evidence* of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." *S & P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995) (emphasis added).

1.    **The Plan is not Feasible Because the Estate Cash Payment is Insufficient to Pay the Estate's Professional Fees in Excess of the Amounts Budgeted for Those Fees.**

The Plan provides that the estate's professional fees in excess of the amounts provided for in the cash collateral budgets approved by this Court are to be paid from the Estate Cash Payment in the amount of $1,500,000.

> Notwithstanding anything in the Plan to the contrary, outstanding and future unpaid and allowed Professional Fee Claims (except for Hillair Professional Fees) shall be paid in accordance with the amounts set forth in the Court-approved cash collateral budgets (the "Budgeted Professional Fees") and the Estate Cash Payment.

Plan § III.B.3 (emphasis in original).

On May 18, 2020, Scoobeez filed its operating report for the period ending April 30, 2020.[10]  According to that operating report, as of April 30, 2020, Scoobeez had incurred estimated counsel fees in the sum of $2,063,896.  In the just over 12 months that this case had been pending, that equates to an average of $171,991.33 per month.

The Court has entered six orders authorizing the Debtors to use Hillair's purported cash collateral, as follows:

| Stipulation Dkt. No. | Order Dkt. No. | Ending Date | Amount |
| --- | --- | --- | --- |
| None | No. 52 | May 14, 2019 | $0.00 |
| 132 | 135 | July 19, 2019 | $350,000 |
| None | 172 | September 6, 2019 | $330,000 |
| None | 328 | December 6, 2019 | $390,000 |
| 486 | 490 | March 6, 2020 | $100,000 |
| 654 | 662 | June 5, 2020 | $200,000[11] |
| 786 | 796 | December 31, 2020 | $250,000 |

Thus, as of April 30, 2020, the total budgeted fees for the Debtors' counsel were $1,170,000.[12]

---

[10]  As of the date of this objection, the Debtors have not filed their operating report for the period ending on May 31, 2020.

[11]  Of this amount, $150,000 was budgeted to be incurred prior to April 30, 2020.

[12]  $350,000 plus $330,000 plus $100,000 plus $150,000 (budgeted through April 30, 2020).

1    As of the same date, $893,896 remained to be paid from the Estate Cash Payment.[13]

2         For the period May 1, 2020 through December 31, 2020 (8 months), the cash collateral

3    orders budgeted a total of $300,000 for the Debtors' counsel.  Apart from ordinary administrative

4    functions, the Debtors' counsel either performed, or will have to perform, at least the following

5    services during that time period:

6         •    Preparation of the Amended Plan and Disclosure Statement and obtaining approval

7              of the Amended Disclosure Statement;

8         •    Distribution of the Court approved Solicitation Materials and computation of plan

9              ballots;

10        •    Briefing, preparation and appearance at a contested plan confirmation hearing.

11        •    Briefing, preparation and appearance on the Debtors' motion to assume and reject

12             executory contracts;

13        •    Plan implementation;

14        •    Preparation of a final fee application; and

15        •    Litigation of the Amazon Adversary Proceeding.

16   Assuming that the Debtors' counsel continues to incur fees at slightly below the average monthly

17   amount incurred through April 30, 2020 ($170,000) for the remaining 8 months prior to the

18   Effective Date, Debtors' counsel is likely to incur at least $1,360,000 in additional fees prior to

19   December 31, 2020, or $1,060,000 in excess of the budgeted amount.  When added to the

20   accumulated fees in excess of budget as of April 30, 2020, the total fees in excess of budget soar

21   to over $2.2 million or more than $750,000 more than the $1,500,000 Estate Cash Payment.

22   Notably, this calculation excludes all other professionals, such as the CRO, ordinary course

23   professionals, or the Committee's professionals who may similarly come in over budget.

24        The Plan Proponents bear the burden of proving that the proposed Plan is feasible and

25   have not offered an iota of evidence regarding whether the Estate Cash Payment will be

26   sufficient.  There is also no concrete economic support for the Plan from Hillair.  As a result,

27   neither creditors nor this Court can conclude that the Plan is feasible.

28

---

[13]  $2,063,896 less $1,170,000.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -        AMAZON'S CONFIRMATION OBJECTION

### 2.    There Is No Viable Enterprise After the Effective Date

There is also no dispute that the Amazon contract will now be terminated sooner rather than later, since Debtors have filed a motion to reject it.  With this undisputed reality, confirming the Plan so as to defer the inevitable termination of the Amazon contract would serve no purpose but to "shelter the [d]ebtors from the inevitable."  *In re Friendship Dairies*, Case No. 12-20405-RLJ-11, 2014 WL 29081, at \*9 (Bankr. N.D. Tex. Jan. 3, 2014) (quoting *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 111 (Bankr. W.D. Tex. 1987)).

The only evidence the Debtors offer to prove that the Reorganized Debtors will be able to perform their Plan obligations post Effective Date and not require further restructuring are two paragraphs in Mr. Weiss's declaration.  First, Mr. Weiss summarily declares that:

> Based on the Debtors' projections, there will be sufficient cash for the Debtors to make all required "Effective Date" payments and otherwise satisfy their obligations under the Plan.

Weiss Decl. at ¶ 16.  Despite their burden of proof, the Debtors failed to provide the Court and creditors with those projections, or to explain the facts or assumptions upon which they are based.  Manifestly, this is insufficient for the Debtors' to satisfy their burden of proof and support any finding by the Court that the Plan is feasible.  *See In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985) ("The [debtors] failure to file operation reports or audit reports makes informed expectations about the plan's success virtually impossible."); *Friendship Dairies*, 2014 WL 29081, at \*11 ("[C]ourts should be wary of debtors manipulating their projections by presenting a 'moving target,' that is, adjusting their projections or morphing them in a way that suggests gamesmanship."); *In re Inv. Co. of The Sw., Inc.*, 341 B.R. 298, 311 (B.A.P. 10th Cir. 2006) ("Feasibility determinations must be firmly rooted in predictions based on objective fact."); *In re Nw. Timberline Enters., Inc.*, 348 B.R. 412, 426–27 (Bankr. N.D. Tex. 2006) (noting debtors' projections were amorphous and were difficult to tie to financial statements).

According to the Disclosure Statement, Amazon is the Debtors' "only customer" (Disclosure Statement at § VII.G) and 100% of the revenue projected in the Debtors' cash

1    collateral budget is from the Amazon contract.[14]  The Plan Proponents offer no explanation as to

2    how the Reorganized Debtors will operate post-Effective Date and pay the $100,000 per week to

3    Hillair that the Plan requires.  In fact, the only post-Effective Date projections that the Debtors

4    prepared inexplicably assume no revenue from sources other than Amazon.[15]

5        As stated by the Ninth Circuit, the purpose of the feasibility requirement of section

6    1129(a)(11) "is to prevent confirmation of visionary schemes which promise creditors and equity

7    security holders more under a proposed plan than the debtor can possibly attain after

8    confirmation."  *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d

9    1374, 1382 (9th Cir. 1985).  The instant Plan is not even a visionary scheme, because the Plan

10   Proponents have not offered the Court any view of the Reorganized Debtors' business.  Rather,

11   the Plan Proponents ask this Court to take a leap of faith off the confirmation cliff blindfolded

12   because at its essence all they want is another six months of revenue from Amazon.

13   11 U.S.C. § 1129(a)(11), however, prevents this Court from doing so.

14       Mr. Weiss also stated that:

15           Post-Effective Date, Hillair will be the primary debt and equity
             holder of the Reorganized Debtors and has expressed to me that they
16           plan to support the business and attempt to attract new customers.

17   Weiss Decl. at ¶ 17.  However, Mr. Weiss testified that Hillair has not provided any specific

18   details of that support, and that there is no agreement with Hillair to do so.[16]  As with the

19   undisclosed projections, such vague indications of support are not a sufficient basis to support a

20   feasibility finding.  *In re Olde Prairie Block Owner, LLC*, 467 B.R. 165, 169 (Bankr. N.D. Ill.

21   2012) ("[S]incerity, honesty and willingness are not sufficient to make the plan feasible, and

22   neither are visionary promises."); *Inv. Co. of The Sw.*, 341 B.R. at 311 ("Feasibility

23   determinations must be firmly rooted in predictions based on objective fact.").

24       Mr. Weiss also testified that, even if the Debtors' were to liquidate immediately following

25

26   [14]  Weiss Depo. at 67:3-7 ("Q:  All right.  And as I'm looking at the budget, the payments on account of the Amazon
     routes are the only – is the only cash income reflected in the budge, correct?  A:  Yes.").

27   [15]  Voskanian Depo. at 60:14-61:4.  *See,* Voskanian Depo. at 61:1-4 ("Q:  For purposes of those projections, did you
     assume that Scoobeez would acquire business from any other party besides Amazon?  A:  No.").

28   [16]  Weiss Depo. at 114:19-116:6.

1   the Effective Date, there would be sufficient cash on hand to satisfy all of the Debtors'

2   obligations.[17]  This is demonstrably false.  The current cash collateral budget projections reflect

3   an ending cash balance as of January 1, 2021 in the amount of $3,833,172.[18]  The budget does not

4   factor the Estate Cash Payment required to be paid on the Confirmation Date.  Taking that into

5   account, as well as Scoobeez's net receivables through April 30, 2020 of 280,080, the projected

6   amount available to pay Hillair's $3,000,000 note is only $2,613,792.  The deficiency is even

7   greater if one accounts for other claims.

8           **D.**      **The Plan Does Not Satisfy the Best Interest of Creditors Test Because Hillair**
              **Does Not Have a Security Interest in the Debtors' Post-Petition Receipts.**
9

10          The Plan also fails because creditors would fare better under a hypothetical chapter 7

11  liquidation.  Therefore, the Plan does not satisfy the "best interests of creditors" test.  Notably, a

12  class vote in favor of confirmation does not cure this infirmity.  Collier on Bankruptcy ¶ 1129.02

13  (The best interests of creditors test "renders irrelevant class votes if but one member of that class

14  would get less than their liquidation preference under the plan.").

15          Pursuant to Bankruptcy Code section 1129(a)(7), unless agreed otherwise, "a creditor or

16  interest holder must receive property that has a present value equal to that participant's

17  hypothetical chapter 7 distribution if the debtor were liquidated instead of reorganized on the

18  plan's effective date."  7 *Collier on Bankruptcy* ¶ 1129.02 (Richard Levin & Henry J. Sommer

19  eds., 16th ed. 2019).

20          Bankruptcy Code section 552(a) establishes the general rule that the property that the

21  debtor acquires after the commencement of the bankruptcy case is not subject to pre-petition

22  liens.  While section 552(b) limits this general rule, Hillair's lien does not extend to the Debtors'

23  employees or the value generated by their labor.  *See, e.g.*, *In re Premier Golf Props., LP*, 477

24  B.R. 767, 774–75 (Bankr. 9th Cir. 2012) (affirming bankruptcy court's finding that a lender's lien

25

26  _____

    [17]  Weiss Decl., ¶ 16 ("In fact, the Debtors' projections illustrate that even if the business ceased operating
27  immediately after the Effective Date, rather than financed the continuation of the business over time, there would be
    cash to pay Hillair's $3 million reduced secure claim in full as well as pay all projected post-petition liabilities in the
    ordinary course of business with an excess of approximately $1.1 million.

28  [18]  Dkt. No. 786 at pg. 8 of 14.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

AMAZON'S CONFIRMATION OBJECTION

1  on a debtor golf club operator's personal property, general intangibles, license fees and "all

2  proceeds thereof," and real estate, and all rents, profits, issues, and revenues from the real

3  property did not extend to postpetition green fees or driving range fees); *In re Skagit Pac. Corp.*,

4  316 B.R. 330, 336 (Bankr. 9th Cir. 2004) (holding that despite prepetition liens on accounts

5  receivable, postpetition accounts receivable were not included within the definition of "proceeds"

6  where the revenue was derived, in part, from postpetition services performed by the debtor); *In re*

7  *Cafeteria Operators, L.P.*, 299 B.R. 400, 405 (Bankr. N.D. Tex. 2003) (the "revenues generated

8  post-petition solely as a result of the debtor's labor are not subject to a pre-petition lender's

9  security interest.").

10      Because the amounts paid by Amazon pursuant to its contract result from delivery

11  services performed by the Debtors' employees, those revenues are *not* subject to Hillair's security

12  interests, Mr. Weiss's conclusion that creditors would be better under the Plan than in a

13  liquidation – based upon his assumption that Hillair's claim is fully secured and unsecured

14  creditors would receive nothing in a liquidation - is incorrect.  And, as a consequence, the Plan

15  Proponents have not demonstrated that the Plan satisfies the best interests of creditors test and the

16  Plan cannot be confirmed.

17      **E.    Various Other Plan Issues**

18      In addition to the above defects, there are a number of other issues that, unless corrected,

19  prevent confirmation.

20      **1.    Third Party Releases**

21      The Plan purports to require all unsecured creditors who do not opt out to:

22      release and forever waive and discharge ***the Debtors, the Estate***
23      ***Release Parties, and the Hillair Released Parties*** of and from any
        and all past, present and future legal actions, causes of action, choses
        in action, rights, demands, suits, claims, liabilities, encumbrances,
24      lawsuits, adverse consequences, amounts paid in settlement, costs,
        fees,   damages,   debts,   deficiencies,   diminution   in   value,
25      disbursements, expenses, losses and other obligations of any kind,
        character or nature whatsoever, whether in law, equity or otherwise
26      (including those arising under Chapter 5 of the Bankruptcy Code and
        applicable non-bankruptcy law, and any and all alter ego, lender
27      liability, indemnification or contribution theories of recovery, and
        interest or other costs, penalties, legal, accounting and other
28      professional fees and expenses, and incidental, consequential and

1
2
3
4
5

punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or *which may heretofore accrue from the beginning of time to and including the Effective Date* related in any way, directly or indirectly, arising out of, and/or connected with any or all of the Debtors, their Estates, the Chapter 11 Cases, the Plan, or solicitation of the Plan . . .

6    Plan § XI.B.c (emphasis added). The "Estate Released Parties" are "(a) the Debtors and their

7    respective employees (who are not officers or directors), attorneys, financial advisors, investment

8    bankers, accountants, agents, representatives, and other Professional Persons, and successors and

9    assigns, as well as the Indemnified Officers and Directors and (b) the Committee, the members

10   thereof in their capacity as such, and the Committee's Professional Persons." The "Hillair

11   Released Parties are "Hillair and each of its agents, representatives, officers, directors, employees,

12   attorneys and other professionals, agents and other representatives, and successors and assigns."

13   Plan § II.A.62.

14       There are four problems with this release. First, the Ninth Circuit has held that third-party

15   plan releases—consensual or otherwise—are generally inappropriate. 8 *Collier on Bankruptcy* ¶

16   1141.02 (Richard Levin & Henry J. Sommer eds., 16th ed. 2020) (quoting *Underhill v. Royal*,

17   769 F.2d 1426, 1432 (9th Cir. 1985) ("[T]he bankruptcy court has no power to discharge the

18   liabilities of a nondebtor pursuant to the consent of creditors as part of a reorganization plan");

19   *Resorts Int'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995) (the

20   Ninth Circuit "has repeatedly held, without exception, that [section] 524(e) precludes bankruptcy

21   courts from discharging the liabilities of non-debtors."); *In re Am. Hardwoods, Inc.*, 885 F.2d

22   621, 625 (9th Cir. 1989). More particularly, "opt out" releases, such as the ones provided for in

23   the Debtors' Plan are not permitted. *In re Emerge Energy Servs. LP*, Case No. 19-11563 (KBO),

24   2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) ("[I]t cannot be said with certainty that

25   those failing to return a ballot or Opt-Out Form did so intentionally to give the third-party release

26   . . ."); *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017); *In re Chassix Holdings, Inc.*,

27   533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015); *In re Wash. Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D.

28   Del. 2011) ("However, the Court concludes that the opt out mechanism is not sufficient to support

1  the third party releases anyway, particularly with respect to parties who do not return a ballot (or

2  are not entitled to vote in the first place). Failing to return a ballot is not a sufficient manifestation

3  of consent to a third party release."). Under Ninth Circuit precedent, broad, non-debtor releases

4  are not permissible unless they are consensual, and providing an opt-out provision is insufficient

5  to render them consensual.

6         Second, the release purports to release claims against categories of unnamed entities and

7  individuals (see definitions of Hillair Released Parties and Estate Released Parties quoted above).

8  That creditors have no means of identifying the individuals and entities swept into the release by

9  that language underscores the fact that the proposed releases are not truly consensual as creditors

10  could not possibly know what claims they were releasing, or who was being released from those

11  claims, when they voted on the Plan.

12         Third, the release purports to expand upon the discharge that the debtors are entitled to

13  receive by extinguishing claims, rather than discharging them, and operating as of the Effective

14  Date, rather than the Confirmation Date. A discharge operates as an injunction to prevent the

15  collection of a discharged debt as a personal liability of the discharged debtor. 11 U.S.C. §

16  524(b). It does not release or extinguish the discharged debt. *Blixseth v. Credit Suisse (In re*

17  *Blixseth)*, Case No. 16-35304, 2020 WL 3089263, at *6, __ F.3d __ (9th Cir. June 11, 2020) ("a

18  discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from

19  personal liability….") (quoting *Landsing Diversified Props.-II v. First Nat'l Bank & Tr. Co. of*

20  *Tulsa (In re W. Real Estate Fund)*, 922 F.2d 592, 600 (10th Cir. 1990)). This is an important

21  distinction because, among other things, third parties who may also be responsible for payment of

22  a discharged debtor's obligations, such as guarantors and insurers, remain liable to pay the

23  discharged debt, but would not be liable if the discharged debt were also released or extinguished.

24  11 U.S.C. § 524(e) ("discharge of a debt of the debtor does not affect the liability of any other

25  entity on, or the property of any other entity for, such debt."). Also, the release purports to

26  release claims as of the Effective Date, rather than as of the date that the Plan is confirmed as

27  provided in § 1141(d)(1)(A). 11 U.S.C. § 1141(d)(1)(A) ("confirmation of a plan – (A)

28  discharges the debtor from any debt that arose before the date of such confirmation …"). If the

1  Plan is confirmed, the Debtors would not be entitled to a discharge of claims accruing between

2  the Confirmation Date and the Effective Date, much less a release of those claims.

3      Fourth, the release purports to release claims premised upon acts or omissions that have

4  not yet occurred (because the release applies to claims in existence as of the Effective Date,

5  which will not occur, if at all, until December 31, 2020.)  Releases of "future" claims are not

6  permissible.  *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 58 (3d

7  Cir. 2001) ("[A] release usually will not be construed to bar a claim which had not accrued at the

8  date of its execution or a claim which was not known to the party giving the release."); *Miller v.

9  Greenwich Cap. Fin. Prods., Inc. (In re Am. Fin. Servs., Inc.)*, 361 B.R. 747, 754 (Bankr. Del.

10  2007) ("[A] release is overly broad if it releases claims based on a set of operative facts that will

11  occur in the future.") (quoting *UniSuper Ltd. v. News Corp.*, 898 A.2d 344, 347 (Del. Ch. 2006)).

12      As a result, § XI.B.c should be stricken from the Plan.  The Debtors do not need a release

13  because, if the Plan is confirmed, they will receive a discharge.  Granting a release to third party

14  beneficiaries is contrary to binding Ninth Circuit authority and public policy.

15  **2.    Exculpation**

16      In *Blixseth,* the Ninth Circuit approved the inclusion of narrowly tailored exculpation

17  clauses in plans of reorganization.  The Plan's exculpations, however, exceed the permissible by

18  including a finding of fact for which there is no evidentiary support and for which there could not

19  possibly be any evidentiary support because the proposed finding refers to events that have not

20  yet occurred.

21  > The Debtor and the Committee (and their respective relevant
22  > members, postpetition agents, directors, officers, employees,
   > advisors and attorneys) have participated in compliance with the
23  > Bankruptcy Code and applicable law with regard to solicitation ***and
   > distributions pursuant to this Plan*** and therefore are not and on
24  > account of the same shall not be liable at any time for the violation
   > of any applicable law, rule or regulation governing the solicitation of
25  > acceptances or rejections of this Plan ***or such distributions made
   > pursuant to this Plan.***

26  Plan § XI.A (emphasis added).  Distributions under the Plan will not be made until after the

27  Effective Date.  Thus, this Court cannot possibly conclude that such distributions were made "in

28  compliance with the Bankruptcy Code and applicable law" or that the named parties cannot be

1    liable for their actions in making such distributions.

2         Further, to the extent that this provision was intended to provide a standard with which to

3    assess any potential, future claims arising in connection with distributions under the Plan, it is

4    overly broad and fails to exempt claims for willful misconduct or gross negligence. *See, Blixith*

5    at *5 approving exculpation clause that "applies only to negligence claims; it does not release

6    parties 'from willful misconduct or gross negligence.'"

7         **3.**      **Injunction and Discharge**

8         The Plan also includes broad injunction and discharge provisions that do not comport with

9    the Bankruptcy Code.

10        a.      **The Injunction**

11        The Plan contains a broad injunction at Section XI.F.  That provision should be deleted or

12   amended for the following reasons:

13
14       •   <u>The Injunction is not necessary</u>.  With respect to the Debtor, the injunction is

15          unnecessary.  The Debtor receives a *discharge* as a matter of law that operates as

16          an injunction against efforts to collect discharged debts.  *See* 11 U.S.C. § 524(a).

17       •   <u>The Injunction is overly broad because it applies to Claims arising prior to the</u>

18          <u>Effective Date</u>.  Bankruptcy Code section 1141(d)(1)(A) provides that a

19          reorganized debtor is entitled to a discharge of its debts that arose before

20          confirmation of the debtor's plan.  At page 54, line 25, the Plan, however, provides

21          for an injunction against Claims that arise "prior to the Effective Date."  This is

22          improper.  If the Court is otherwise inclined to confirm the Plan and provide for

23          the requested injunction, this provision should be amended to reflect that the

24          injunction applies only to claims that arose prior to Plan confirmation.

25       •   <u>The Injunction's prohibition on the filing of actions and requiring the dismissal of</u>

26          <u>pending actions is overly broad</u>.  This provision would preclude the filing of

27          proceedings in the Bankruptcy Court relating to matters other than the enforcement

28

of the Plan.  There is no reason to do so.  More importantly from Amazon's

perspective, Amazon's appeal from this Court's denial of its motion for relief from

the stay is currently pending before the District Court.  This provision would

appear to deem that appeal as withdrawn or dismissed.  There is no authority

justifying the Plan Proponents' attempt to deprive Amazon of its appellate rights.

- The Injunction violates Bankruptcy Code section 365.  The injunction, if issued,
  would preclude parties to assumed executory contracts from asserting their
  contractual right to indemnity and/or contribution from the Reorganized Debtors
  with respect to claims that remain contingent as of the assumption date and,
  therefore, are not paid as part of the monetary cure required by Bankruptcy Code
  section 365(b)(1).  If an executory contract is assumed, it is assumed *cum onre*,
  and those obligations include any obligation to indemnify the contract counter-
  party.  *See In re Plitt Amusement Co. of Wash., Inc.*, 233 B.R. 837, 840 (Bankr.
  C.D. Cal. 1999) (Courts reject "attempt[s] to assume part of a contract or lease,
  and to reject the remainder.").

- The Injunction imposes unnecessary risks on third parties.  Finally, the injunction
  bars the assertion of all claims barred by the Plan's broad release and exculpation
  provisions.  The Plan's exculpation provision, however, cannot bar claims for
  willful misconduct or gross negligence.  Thus, under this provision, any party
  wishing to assert a claim in which an exculpated party may have engaged in
  willful misconduct or gross negligence risks being held in contempt if, at trial, a
  court concludes that the conduct was merely negligent or not actionable at all.
  Parties believing that they have such claims based upon an exculpated party's
  willful misconduct or gross negligence should not have to risk being held in
  contempt if, at trial, those claims are not found to be meritorious.

    b.    **The Discharge**

Section XI.G purports to restate the discharge to which the Debtor would be entitled in the

1  event that the Plan is confirmed and the Effective Date occurs.  That provision should also be

2  deleted or amended for the following reasons:

3  • The provision is unnecessary.  Bankruptcy Code section 1141(d) states that, unless

4  a plan provides otherwise, confirmation of a plan discharges the Debtors from

5  debts that arose prior to the confirmation date.  Section 524 prescribes the effect of

6  that discharge.  There is no reason to restate the provisions of those sections, or the

7  myriad of cases construing those sections, in the Plan and, by doing so, attempt to

8  expand the relief to which the Reorganized Debtors are entitled.

9  • This section improperly attempts to discharge the Debtors from claims that arose

10  prior to the Effective Date.  As indicated above, the Plan impermissibly provides

11  for a discharge of claims that "arose prior to the Effective Date."  Bankruptcy

12  Code section 1141(d)(1)(A) is explicit – a chapter 11 discharge discharges claims

13  that arose prior to the date that a chapter 11 plan is confirmed.  This provision

14  should either be deleted or amended to conform to section 1141(d)(1)(A).

15  **4.    Miscellaneous Provisions**

16  a.    **Plan Modifications**

17  Section VI.N of the Plan permits the Debtors, Hillair, the Reorganized Debtors and/or the

18  Creditor Trustee to "execute such amendments, modifications, supplements, and other such

19  documents as may be reasonably appropriate to implement the Plan."  This section appears to

20  permit the foregoing parties to amend the Plan without obtaining this Court's approval of the

21  amendment in violation of Bankruptcy Code section 1127(f)(2).  11 U.S.C. § 1127(f)(2) ("The

22  plan, as modified, shall become the plan only after there has been disclosure under section 1125

23  as the court may direct, notice and a hearing, and such modification is approved.").  This

24  provision should either be stricken or modified to make it clear that the Plan cannot be modified

25  following its confirmation without complying with § 1127.

26  b.    **Orders in Aid of Plan Implementation**.

27  Sections VII.K and XII.M of the Plan improperly impose broad, and undefined,

28  obligations on Claim holders.  Section VII.K requires holders of Claims to "join in the execution

1  and delivery of, any agreement or instrument *appropriate* for the consummation of this Plan."

2  Emphasis added.  Similarly, Section XII.M of the Plan provides that "all Holders of Claims . . .

3  shall execute and deliver . . . any instrument . . . *appropriate* to effectuate the Plan, and perform

4  any other act that is *appropriate* for the consummation of the Plan."  (Emphasis added).

5          Bankruptcy Code section 1142(b) provides that "the *court* may direct" necessary parties

6  "to execute or deliver … any instrument *required* to effect a transfer of property dealt with by a

7  confirmed plan, and to perform any other act … that is *necessary* for the consummation of the

8  plan." (Emphasis added).  *In re Lehman Bros. Holdings Inc.*, 591 B.R. 153, 159 (Bankr.

9  S.D.N.Y. 2018) ("[S]ection 1142(b) is not an independent source of power; section 1142(b) does

10 not confer any substantive rights on a party apart from what is provided for in the plan.").  If a

11 party refuses to comply with its obligations under the Plan, the party implementing the Plan may

12 return to this Court to obtain an appropriate order under section 1142(b).  The Court cannot, and

13 should not, abdicate its proper role in implementing the Plan by obligating third parties to execute

14 documents and perform actions merely because a party implementing the Plan believes that it is

15 "appropriate" for them to do so.

16         Further, section 1142(b) refers to instruments "required" to effectuate property transfers

17 and "necessary" to consummate the plan.  The Plan goes further – referencing agreements,

18 instruments and acts "appropriate" to consummate the Plan.  What is appropriate or convenient

19 may not be required or necessary.  Thus, the Plan improperly attempts to expand the authority

20 granted to the Court by section 1142(b).

21                         c.        **Retention of Jurisdiction**

22         The Plan's retention of jurisdiction provision (Article X) is also improper.  Article X

23 purports to grant to this Court *exclusive* jurisdiction over "any proceeding (i) arising under the

24 Bankruptcy Code or (ii) arising in or related to the Chapter 11 Cases or the Plan …"  Congress'

25 grant of exclusive jurisdiction to the district courts (and, by reference, to the bankruptcy courts) is

26 limited to "cases under title 11."  28 U.S.C. § 1334(a).  The district courts' jurisdiction over

27 proceedings "arising under title 11, or arising in or related to cases under title 11" is non-

28 exclusive.  28 U.S.C. § 1334(b).  The Plan, therefore, cannot deprive parties of their right to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -          AMAZON'S CONFIRMATION OBJECTION

1    institute proceedings arising under title 11, or arising in or related to cases under title 11, in other

2    fora, nor can it grant this Court exclusive jurisdiction over those proceedings when Congress

3    chose not to do so.

4        In addition to ignoring the express grant of non-exclusive jurisdiction in section 1334(b),

5    the granting of exclusive jurisdiction to this Court violates parties' rights to a *de novo* hearing

6    over "non-core" matters pursuant to 28 U.S.C. § 157(c) and to obtain the withdrawal of the

7    reference of matters pursuant to 28 U.S.C. § 157(d).[19]  The provision also violates 28 U.S.C. §

8    157(e) by depriving parties entitled to a jury trial of their right to consent to any jury trial that

9    may be conducted by this Court, or of their Seventh Amendment right to a jury trial.  As a result,

10   the provision conflicts with the Supreme Court's holding in *Stern v. Marshall*, 564 U.S. 462

11   (2011).  Moreover, while bankruptcy courts may retain jurisdiction post-confirmation, such

12   jurisdiction must have a "close nexus" to the bankruptcy plan or proceedings.  *Spectrum Eng'g*

13   *Inc. v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005).  The Plan cannot

14   confer jurisdiction on this Court where it does not otherwise exist.  *In re Nobel Grp., Inc.*, 529

15   B.R. 284, 291 (Bankr. N.D. Cal. 2015) ("Subject matter jurisdiction cannot be conferred by

16   consent of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties

17   cannot create it by agreement, even in a plan of reorganization." (citations omitted)).

18       Moreover, Section X(k) of the Plan purports to confer jurisdiction on this Court to modify

19   the Plan "even after this Plan has been substantially consummated."  Bankruptcy Code section

20   1127(b) does not permit modification of a "substantially consummated" plan.  *In re Caviata*

21   *Attached Homes, LLC*, 481 B.R. 34, 46 (B.A.P. 9th Cir. 2012) ("Section 1127(b) provides that a

22   chapter 11 plan may be modified before but not after 'substantial consummation' of the plan.");

23   *In re BNW, Inc.*, 201 B.R. 838, 845 (Bankr. S.D. Ala. 1996) ("Modification of a plan under 11

24   U.S.C. § 1127(b) is only appropriate if the plan is not substantially consummated and the

25   proponent of the plan or the reorganized debtor seeks it.").

26       Additionally, Sections X.m and X.n of the Plan constitute "blank checks" regarding the

27

28

---

[19]  Although the Amazon Litigation is presently pending in this Court, Amazon intends to file a motion to withdraw the reference of that proceeding to this Court so that the matter can be heard in the district court.

Court's "exclusive" post-confirmation jurisdiction. Those sections provide for the retention of

post-confirmation jurisdiction to hear "any other matter not inconsistent with the Bankruptcy

Code" or "deemed relevant by the Bankruptcy Court." "Bankruptcy Code" is defined in the Plan

as "title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended." Bankruptcy

jurisdiction is provided for at 28 U.S.C. § 1334, not in the "Bankruptcy Code." Thus, these

provisions purport to grant this Court unlimited post-confirmation jurisdiction despite the

limitations on that jurisdiction in Title 28 and applicable case law, such as *Stern*.

All of these provisions should be deleted before confirmation of the Plan is considered.

### d.    **Existing Orders**

While perhaps not intended to do so, Section XII.I of the Plan could be read as depriving

Amazon of its appellate rights with respect to this Court's denial of Amazon's motion for relief

from the stay. That Section provides that "[a]ll orders and judgments . . . entered by the

Bankruptcy Court during the Chapter 11 Cases, and in existence on the Confirmation Date, shall

remain in full force and effect from and after the Effective Date, to the extent not inconsistent

with the provisions of this Plan or the Conformation Order." This Court's order denying

Amazon's motion for relief from the stay is one such order that will be in effect on the

Confirmation Date, if the Plan is confirmed. Because there is no exception in this provision for

orders or judgments on appeal, the effect of this provision on appeals that are pending on the

Confirmation Date is unclear. This Section should either be deleted as unnecessary (since there is

nothing in the Plan or applicable law that would expunge any existing orders or judgments), or

revised to make it clear that this provision does not affect any party's appellate rights.

## III.    <u>RESERVATION OF RIGHTS</u>

The Plan provides that the Plan Proponents will file a "Plan Supplement" "within 5 days

prior to the Confirmation Hearing." Plan § II.A.78. While the Plan describes some of the things

that will be included in the Plan Supplement (*see* Plan §§ II.A.34, VI.J, and VI.M.11), there is

nothing in the Plan that indicates that those items are an exclusive list of the items that may be

included in the Plan Supplement. Because the Plan Supplement has not been filed as of the date

of this plan objection, Amazon reserves its right to assert such other and further objections to the

1  Plan Supplement as may be appropriate.

2       Amazon also reserves the right to further amend, modify, or supplement this Objection,

3  including at the Confirmation Hearing.  Amazon further reserves all of its rights to supplement

4  this Objection with respect to any amendments or modifications to the Plan (including any

5  exhibits or supplements to be filed with the Plan Supplement), the proposed Confirmation Order,

6  or any other documents submitted to the Bankruptcy Court prior to the Confirmation Hearing.

7  **IV.**    **CONCLUSION**

8       In conclusion, the Plan as proposed is plainly unconfirmable for the reasons stated above.

9  There is also no evidence that a confirmable plan is in prospect.  Rather, the Debtors are

10  unabashedly seeking to further delay termination of the Amazon contract.  This is not a valid

11  basis to confirm an unconfirmable plan.  Rather, confirmation should be denied and these cases

12  converted to cases under chapter 7 so that a trustee, rather than a chief restructuring officer hand-

13  picked by Hillair, can pursue the best interests of creditors and the estate.

14

15

16  Dated: June 26, 2020                                      MORGAN, LEWIS & BOCKIUS LLP

17

18                  By:   */s/ Richard W. Esterkin*
                      Richard W. Esterkin

19                 Attorneys for Amazon Logistics, Inc.

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE FORM**

**FOR ELECTRONIC FILINGS**

1.      I hereby certify that on June 26, 2020, I electronically filed the foregoing document, **AMAZON LOGISTICS, INC.'S OBJECTIONS TO CONFIRMATION,** with the Clerk of the United States Bankruptcy Court, Central District of California, Los Angeles Division, using the CM/ECF system, which will send notification of such filing to those parties registered to receive notice on this matter.

_____

Renee Robles

Morgan, Lewis &
Bockius LLP
Attorneys at Law
los angeles

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Morgan Lewis & Bockius LLP
300 S Grand Ave Fl 22, Los Angeles CA  90071-3132

A true and correct copy of the foregoing document entitled (*specify*):  Amazon Logistics, Inc.'s Objections to
Confirmation
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
06/26/2020          , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

   See Service List attached

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)   06/26/2020          , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

   See E-Mail Only Service List, attached.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/26/2020 | Renee Robles | *Renee Robles* |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**2:19-bk-14989-WB Service List:**

Richard T Baum on behalf of Stockholder Rosenthal Family Trust
rickbaum@hotmail.com, rickbaum@ecfinforuptcy.com

Richard W Esterkin on behalf of Creditor Amazon Logistics, Inc.
richard.esterkin@morganlewis.com

John-Patrick M Fritz on behalf of Attorney Official Committee Of
Unsecured Creditors jpf@lnbyb.com,
JPF.LNBYB@ecf.inforuptcy.com

John-Patrick M Fritz on behalf of Creditor Committee Official Committee of
Unsecured Creditors jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com

John-Patrick M Fritz on behalf of Interested Party Levene, Neale, Bender,
Yoo & Brill L.L.P. jpf@lnbyb.com, JPF.LNBYB@ecf. inforuptcy.com

John-Patrick M Fritz on behalf of Plaintiff Official Committee of Unsecured Creditors of the
Estates of Scoobeez

and Scoobeez Global, Inc.

jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com

Riebert Sterling Henderson on behalf of Interested Party Courtesy NEF
shenderson@gibbsgiden.com

Vivian Ho on behalf of Creditor FRANCHISE TAX BOARD
BKClaimConfirmation@ftb.ca.gov

David Brian Lally on behalf of Attorney Grigori Sedrakyan
davidlallylaw@gmail.com

David Brian Lally on behalf of Attorney Peter and Barbara Ro Trustees of the Rosenthal Family
Trust UTD

3/25/1988

davidlallylaw@gmail.com

Alvin Mar on behalf of U.S. Trustee United States Trustee (LA)
alvin.mar@usdoj.gov, dare.law@usdoj.gov

Ashley M McDow on behalf of Debtor Scoobeez

amcdow@foley.com,
sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com

Ashley M McDow on behalf of Debtor Scoobeez Global, Inc.

amcdow@foley.com,
sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com

Ashley M McDow on behalf of Debtor Scoobur LLC

amcdow@foley.com,
sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com

Ashley M McDow on behalf of Plaintiff Scoobeez, Inc.

amcdow@foley.com,
sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com

Stacey A Miller on behalf of Creditor Porsche Financial Services, Inc.
smiller@tharpe-howell.com

Stacey A Miller on behalf of Creditor Porsche Financial Services, Inc. dba Bentley
Financial Services smiller@tharpe-howell.com

Stacey A Miller on behalf of Creditor Porsche Leasing Ltd.
smiller@tharpe-howell.com

Kevin H Morse on behalf of Creditor Avitus Group, Inc.
kmorse@clarkhill.com, blambert@clarkhill.com

Shane J Moses on behalf of Debtor Scoobeez
smoses@foley.com

Shane J Moses on behalf of Plaintiff Scoobeez, Inc.
smoses@foley.com

Akop J Nalbandyan on behalf of Creditor Roy Anthony Catellanos
jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com

Akop J Nalbandyan on behalf of Interested Party INTERESTED PARTY
jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com

Rejoy Nalkara on behalf of Creditor BMW Financial Services NA, LLC, c/o AIS
Portfolio Services, LP rejoy.nalkara@americaninfosource.com

Anthony J Napolitano on behalf of Creditor Hillair Capital Management LLC
anapolitano@buchalter.com,
IFS_filing@buchalter.com;salarcon@buchalter.com

David L. Neale on behalf of Attorney Official Committee Of Unsecured
Creditors dln@lnbyb.com

David L. Neale on behalf of Creditor Committee Official Committee of Unsecured
Creditors dln@lnbyb.com

David L. Neale on behalf of Interested Party Levene, Neale, Bender, Yoo & Brill
L.L.P. dln@lnbyb.com

Aram Ordubegian on behalf of Interested Party Courtesy NEF
ordubegian.aram@arentfox.com

Hamid R Rafatjoo on behalf of Creditor Shahan Ohanessian
hrafatjoo@raineslaw.com,
bclark@raineslaw.com;cwilliams@raineslaw.com

Gregory M Salvato on behalf of Creditor Azad Baban

gsalvato@salvatolawoffices.com,

calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf. inforuptcy.com

Gregory M Salvato on behalf of Interested Party INTERESTED PARTY
gsalvato@salvatolawoffices.com,

calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf. inforuptcy.com

Jeffrey S Shinbrot on behalf of Creditor Shahan Ohanessian
jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com

Steven M Spector on behalf of Creditor Hillair Capital Management LLC
sspector@buchalter.com,
IFS_efiling@buchalter.com;salarcon@buchalter.com

United States Trustee (LA)
ustpregion16.1a.ecf@usdoj.gov

Kimberly Walsh on behalf of Creditor Texas Comptroller of Public
Accounts bk-kwalsh@texasattorneygeneral.gov

Eric D Winston on behalf of Creditor Hillair Capital Management, LLC
ericwinston@quinnemanuel.com

Eric K Yaeckel on behalf of Creditor Arturo Vega
yaeckel@sullivanlawgroupapc.com

**2:19-bk-14989-WB Electronic Mail-Only Service List**

Adam Friedman on behalf of Creditor, Hillair Capital Management, LLC
Olshane Frome Wolosky LLP
afriedman@olshanlaw.com

John A. Simon on behalf of Debtor, Scoobeez, Inc.
Foley & Lardner, LLP
jsimon@foley.com