Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)
**FOLEY & LARDNER LLP**
555 S. Flower St., 33rd Floor
Los Angeles, CA 90071
Telephone: 213.972.4500
Facsimile: 213.486.0065
Email: amcdow@foley.com
          jsimon@foley.com
          smoses@foley.com

Attorneys for Debtors and Debtors in
Possession, SCOOBEEZ, SCOOBEEZ GLOBAL,
INC., and SCOOBUR, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SCOOBEEZ, et al.[1]<br><br>Debtors and Debtors in Possession. | Case No. 2:19-bk-14989-WB<br>Jointly Administered:<br>2:19-bk-14991-WB; 2:19-bk-14997-WB<br><br>Chapter 11 |
| Affects:<br><br>■ All Debtors<br><br>□ Scoobeez, ONLY<br><br>□ Scoobeez Global, Inc., ONLY<br><br>□ Scoobur LLC, ONLY | **JOINT REPLY OF THE DEBTORS, HILLAIR CAPITAL MANAGEMENT, LLC, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS PLAN PROPONENTS, TO AMAZON LOGISTICS, INC.'S OBJECTIONS TO CONFIRMATION**<br><br>Hearing:<br>Date:   July 9, 2020<br>Time:   10:00 a.m.<br>Place:   Courtroom 1375<br>          U.S. Bankruptcy Court<br>          255 East Temple Street<br>          Los Angeles, CA 90012<br>          (via Zoom) |

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Scoobeez (6339); Scoobeez Global, Inc. (9779); and Scoobur, LLC (0343). The Debtors' address is 3463 Foothill Boulevard, Glendale, California 91214.

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................... 1

II. THE PLAN IS FEASIBLE ..................................................................... 4

    A.    THE PLAN IS NOT LIKELY TO BE FOLLOWED BY
LIQUIDATION OR FURTHER REORGANIZATION ........................... 4

        1.    Feasibility Requires Only a Reasonable Probability of
Success ............................................................................... 4

        1.    Amazon's Discussion of the Law is Misplaced ............................. 5

        2.    The Reorganized Debtors Have the Ability to Carry out
the Terms of the Plan ....................................................... 7

    B.    THE PLAN PROVISIONS FOR PAYMENT OF PROFESSIONAL
FEES ARE FEASIBLE ................................................................. 10

III. THE PROPOSED EFFECTIVE DATE IS REASONABLE ................................. 13

**ERROR! BOOKMARK NOT DEFINED.**

    A.    THE "EFFECTIVE DATE" CASES CITED BY AMAZON ARE
EASILY DISTINGUISHED FROM THE CASE AT HAND ................. 13

    B.    THE PROPOSED EFFECTIVE DATE OF DECEMBER 31, 2020 IS
SUPPORTED BY REASONABLE AD LEGITIMATE BASES AND
THE DEBTORS' REASONABLE BUSINESS JUDGMENT ................ 17

IV. THE PLAN IS CONFIRMABLE ............................................................. 19

    A.    THE PLAN SATISFIES THE "BEST INTERESTS OF
CREDITORS" TEST BECAUSE HILLAIR HOLDS A VALID,
PERFECTED SECURITY INTEREST IN THE DEBTORS' POST-
PETITION ASSETS ....................................................................... 19

    B.    THE RELEASE CLAUSES WILL BE TAILORED ................................. 21

    C.    THE EXCULPATION CLAUSE IS APPROPRIATE ............................... 22

    D.    THE INJUNCTION AND DISCHARGE PROVISIONS ARE
STANDARD AND APPROPRIATE ................................................. 22

    E.    AMAZON'S MISCELLANEOUS OBJECTIONS .................................. 24

V. CONCLUSION .................................................................................. 25

# I.  INTRODUCTION

Scoobeez, Scoobeez Global, Inc. and Scoobur, LLC, the debtors and debtors-in-possession in the above-captioned jointly administered bankruptcy proceedings (collectively, the "Debtors"), hereby submit their reply to *Amazon Logistics, Inc.'s Objections to Confirmation* [Docket No. 807] (the "Amazon Objection"), and in support of confirmation of the *First Amended Chapter 11 Plan of Reorganization* (the "Plan") proposed by the Debtors, Hillair, and the Committee.[2]

The Plan is the result of extensive negotiations among the Debtors, the Debtors' primary secured creditor Hillair Capital Management LLC ("Hillair"), and the Official Committee of Unsecured Creditors (the "Committee"), and is supported by all three of these major constituencies.  All voting classes voted unanimously to accept and approve the Plan.  Amazon is the sole voice opposing confirmation of the Plan.[3]  Notwithstanding the unanimous creditor support, and the fact that the Plan constitutes the best and potentially only possible recovery for unsecured creditors, Amazon seeks to derail the Plan process and brazenly requests the conversion of these Debtors' chapter 11 cases to chapter 7 liquidation cases, which would destroy value for all creditors and the chance for unsecured creditor recoveries.  This is despite the fact that Amazon failed to persuade this Court in connection with its motion for relief from stay that it has suffered any harm as a result of its continued dealings with the Debtors and nothing has changed in that regard in the three months since that hearing.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning provided in the Plan or in the Debtors memorandum in support of confirmation [Docket No. 792].  This Reply is supported by the Supplemental Declaration of Brian Weiss in Support of Confirmation of the Chapter 11 Joint Plan of Reorganization filed concurrently herewith (the "Supplemental Weiss Declaration"), the  Declaration of Brian Weiss in Support of Confirmation of First Amended Chapter 11 Joint Plan of Reorganization as Proposed by the Debtors, Hillair and the Official Committee of Unsecured Creditors [Dkt. No. 791] (the "Initial Weiss Declaration"), the Declaration of George Voskanian in Support of the Joint Reply of the Debtors, Hillair Capital Management, LLC and the Official Committee of Unsecured Creditors, as Plan Proponents, to Amazon Logistics, Inc.'s Objections to Confirmation filed concurrently herewith (the "Voskanian Declaration"), the Declaration of Scott D. Kaufman in Support of Confirmation of First Amended Chapter 11 Joint Plan of Reorganization as Proposed by the Debtors, Hillair Capital Management, and the Official Committee of Unsecured Creditors filed concurrently herewith (the "Kaufman Declaration"), and the Declaration of Shane Moses filed concurrently herewith (the "Moses Declaration"), as well as the record of and other filings in, these cases.
[3] On July 1, 2020, the Internal Revenue Service filed an untimely objection to the Plan [Dkt. No. 821], alleging it is owed $173,007 as a priority tax claim, and requesting that the Plan should clarify the length of time over which the IRS will be paid.  The IRS' claim is already contained in the Plan projections as a priority tax claim, and the Debtors would propose to resolve the IRS' objection by paying such claim immediately upon the Effective Date of the Plan.

1    In a liquidation, the general unsecured creditors would receive nothing.  Meanwhile, under the

2    Plan, the estate receives the $1.5 million Estate Cash Payment, and general unsecured creditors receive

3    the Creditor Trust Assets, including 20% of the equity in the Reorganized Debtors, a share of potential

4    proceeds in the litigation against Amazon, at least $25,000 in immediate cash, as well as the Creditor

5    Trust Claims, including various avoidance action claims.  The Plan provides a far superior result.

6    The creditors overwhelmingly support the Plan because the Plan represents the best possible

7    outcome in this difficult situation.  The Debtors' options are limited.  Amazon is the Debtors' largest

8    current customer and source of revenue, but has made no secret of its desire to terminate its relationship

9    with the Debtors, notwithstanding either the Debtors ongoing exemplary performance (as measured by

10    Amazon's own metrics) or the cost to creditors.  Nevertheless, through their hard work, the plan

11    proponents have developed a viable Plan that gives the Reorganized Debtors a reasonable runway to

12    develop new business, and provides the possibility of a recovery to unsecured creditors.  The only

13    alternative, which Amazon has expressly stated its desire to force the Debtors into, is Chapter 7.  While

14    a meaningful recovery for unsecured creditors is speculative under the Plan, there is no possibility of

15    any recovery for general unsecured creditors in Chapter 7, and indeed almost no chance of any recovery

16    for anyone other than Hillair.

17    The Plan is feasible.  Amazon's self-serving arguments to the contrary are red herrings.  The

18    Debtors have provided clear, concrete evidence of the ability to make all payments required under the

19    plan.  While there is long-term uncertainty as to the future of the company post-Amazon, this is

20    recognized in the Plan and only affects the value of the equity stake provided to creditors, who voted to

21    accept the Plan.  Critically, any uncertainty about the future does not affect the ability to make payments

22    required for effectiveness under the plan, which are all provided for as of the Effective Date, or

23    immediately thereafter.

24    Likewise, while the Plan effectively caps funds available for payment of professional fees, the

25    amounts allocated should be sufficient to pay all allowed fees.  Again, no professionals are objecting to

26    their treatment.  The only real objection comes from Amazon, a contract counterparty with no stake in

27    the issues that form the basis of its feasibility objection, and no standing to raise objections on behalf of

28

professionals.  It is noteworthy also that Amazon failed to submit any vote in connection with Plan confirmation.

Amazon also objects to the Effective Date provisions of the Plan, which target an effective date of December 31, 2020.  It is clear that Amazon would like the effective date to occur sooner so that Amazon can terminate is contract with the Debtors, but there is no legitimate basis for the Objection.  The Debtors have shown good cause for this structure in order to provide a sufficient runway to exit Chapter 11 on stable footing, and Amazon has failed to demonstrate that this is not legally permissible.  On a practical level, Amazon is simply not harmed by continuing to do business with the Debtors for the remaining 5 months of the year.  The Debtors' scorecards from Amazon continue to demonstrate that it is providing exemplary service, which has generally improved throughout the chapter 11 bankruptcy case, to the point that the Debtors' scorecards are on average now in the range of "Fantastic" to "Fantastic Plus" (the highest performance designation of Amazon).  Voskanian Declaration, ¶ 3, 6.  A spreadsheet showing the trend of the Debtors' performance scorecards from Amazon is set forth in **Exhibit A (P_Ex_1)** to the Voskanian Declaration.  While Amazon alleges that the Debtors cost more than alternatives, Amazon has failed to provide any evidence on this point.   Moreover, Amazon continues to do business with DSP 1.0s other than Scoobeez.  It is also absurd that Amazon, which had $280 billion in revenue in 2019 and is on track for even more in 2020 as the demand for delivery services has skyrocketed due to the COVID-19 crisis and lock down, asserts that it is materially damaged by continuing for a few months to pay pricing that it agreed to.

It is utterly transparent that Amazon's Objection is grounded, not in any legitimate concern about the viability of the Plan, but rather in Amazon's desire to use any means necessary to obtain the quickest possible exit from its contract, even if that means conversion of the case at the expense of literally every single creditor.  Indeed, it is no secret that this is Amazon's objective; Amazon admits as much.  Amazon's arguments provide no basis to deprive the Debtors and their creditors of the only realistic possibility for a reorganization.

///

///

## II.  THE PLAN IS FEASIBLE

A.  <u>**The Plan is Not Likely to be Followed by Liquidation or Further Reorganization**</u>

1.  <u>*Feasibility Requires Only a Reasonable Probability of Success*</u>

The Bankruptcy Code requires that a plan of reorganization be feasible.  In particular, this requires that the Court find that the Plan "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

"Feasibility does not mean certainty."  *In re N. Valley Mall, LLC*, 432 B.R. 825, 838 (Bankr. C.D. Cal. 2010) (internal quotations omitted).  In the Ninth Circuit, the feasibility standard is simply whether the plan has a reasonable probability of success.  *In re Acequia, Inc.*, 787 F.2d 1352, 1364-65 (9th Cir. 1986); *Wells Fargo Bank, N.A. v. Loop 76, LLC et al. (* (9th Cir. BAP 2012) ("In this circuit, all a debtor need demonstrate is that the plan 'has a reasonable probability of success.'").  This "does not require debtor to prove that success is inevitable or assured, and a relatively low threshold of proof will satisfy § 1129(a)(11)."  *In re N. Valley Mall*, 432 B.R. at 838 (citing *Computer Task Group, Inc. v. Brotby (In re Brotby )*, 303 B.R. 177, 191 (9th Cir. BAP 2003).  Thus, a plan meets the feasibility standard if it "offers a reasonable prospect of success and is workable."  *In re Seasons Partners, LLC*, 439 B.R. 505, 515 (Bankr. D. Ariz. 2010).

The "probability of success" that is required is focused on the ability to carry out the terms of the plan. Thus, "feasibility generally requires a "reasonable probability" that (i) there will be sufficient cash on hand on the effective date to make the payments required on the effective date (such as those under Section 1129(a)(9)(A)); and (ii) there will be sufficient cash over the life of the plan to make the required payments."  *In re Art & Architecture Books of the 21st Century*, 2016 WL 1118743, at *21 (Bankr. C.D. Cal. Mar. 18, 2016); *see also In re Jorgensen (Jorgensen v. Federal Land Bank of Spokane)*, 66 B.R. 104, 108 (9th Cir. BAP 1986) ("Feasibility has been defined as whether the things which are to be done after confirmation can be done as a practical matter under the facts").

There is no basis for Amazon's feasibility argument.  It is true that, because of Amazon's own actions, without new customers, there is uncertainty regarding the post-Effective Date future of the business.  The Plan recognizes this, and therefore (i) provides means to satisfy all Plan obligations

1    except to Hillair on or immediately after the Effective Date, so that long-term uncertainty about the

2    company does not jeopardize fulfillment of the terms of the Plan, and (ii) provides an extended runway

3    for the business to operate in a lean, "start-up" form while working to find new customers.  In order to

4    make its objection, Amazon deliberately and wrongly substitutes the actual requirement of Section

5    1129(a)(11) that there be a reasonable likelihood that the Reorganized Debtors will be able to perform

6    under the terms of the Plan, with an imaginary requirement that the Debtors or any other Plan

7    Proponents guarantee the long-term success of the business.  While the Debtors believe that long-term

8    success of the business is achievable,[4] the reality is that the Debtors can show by a preponderance of the

9    evidence that they have a reasonable likelihood of performing under the Plan, and that is all that is

10    required by Section 1129(a)(11).

11            *1.    Amazon's Discussion of the Law is Misplaced*

12            Amazon's feasibility argument is based on cases holding that bankruptcy courts should not

13    confirm "visionary schemes which promise creditors and equity security holders more under a proposed

14    plan than the debtor can possibly attain after confirmation."  *Matter of Pizza of Hawaii, Inc.*, 761 F.2d

15    1374, 1382 (9th Cir. 1985) (internal citations omitted).  Amazon's arguments, however, miss the point,

16    because they focus on the speculative future of the company, ignoring the fundamental question of

17    whether the Debtors can perform under the Plan.  *See, e.g., In re Loop 76, LLC*, 465 B.R. at 544.

18            None of the cases cited by Amazon actually support Amazon's argument that the structure of the

19    Debtors' plan is not feasible.   The cases cited by Amazon that found a lack of feasibility were based on

20    serious flaws not relevant here.  *See, Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir.

21    1985) (finding plan was not feasible where required plan payments ignored possibility of significant

22    additional claim that might result from litigation); *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985)

23    (without financial reports, it was not possible to evaluate the ability to make future required payments);

24    *In re NNN Parkway 400 26, LLC, 505 B.R. 277, 285* (Bankr. C.D. Cal. 2014) (finding a plan not feasible

25    where it required imposing a complicated new equity structure on non-debtor tenants in comment,

26

27    _____

28    [4] Given that the most likely source of recovery for unsecured creditors is the equity interest they are to
receive under the Plan, unsecured creditors, who have voted unanimously in favor of the Plan, are
banking on the possible long-term success and profitability of the Reorganized Debtors.

without a clear legal basis for so doing); *Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 1003 (E.D. Va. 1994) (finding that the plan lacked an adequate means of implementation under Section 1123(a)(5) [5]; *In re Olde Prairie Block Owner, LLC*, 467 B.R. 165, 169-171 (Bankr. N.D. Ill. 2012) (plan requiring payment of at least $65 million in three years was not feasible where there was no clearly articulated means to raise the funds); *In re Inv. Co. of The Sw., Inc.*, 341 B.R. 298, 315-17 (B.A.P. 10th Cir. 2006) (finding that a plan was not feasible where it required specific payments to creditors over several years to be funded by property sales, but there was no evidence on the ability to general the necessary funds through sufficient sales); *In re Friendship Dairies*, 2014 WL 29081, at *15 (Bankr. N.D. Tex. 2014) (lack of feasibility where debtor had a history of not meeting projections and had provided no evidence of how proposed large balloon payments would be paid); I*n re Nw. Timberline Enterprises, Inc.*, 348 B.R. 412, 435 (Bankr. N.D. Tex. 2006) (incompetent projections, and inability to make plan payments unless specific wholly speculative events happened).

Other cases cited by Amazon simply state general principles that, if anything, support confirmation of the Plan. *In re G–1 Holdings, Inc.*, 420 B.R. 216, 267 (D.N.J. 2009) (confirming plan based on a finding that feasibility requires determining that there is a "reasonable probability the provisions of the Plan can be performed"); *S & P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995) (evaluating whether it might have been possible to present a confirmable plan in the context of a malpractice case, and noting that "[t]he prospect of financial uncertainty does not defeat plan confirmation on feasibility grounds since a guarantee of the future is not required").

Overall, Amazon's attempts to apply the cases it cites are misplaced, because these cases caution against issues that are irrelevant to the present situation. Specifically, Amazon's cited case law cautions against confirmation of plans which promise payments that cannot realistically be achieved (*see In re Walker*, 165 B.R. at 1003; *Olde Prairie*, 467 B.R. at 169-171; *In re Inv. Co. of The Sw., Inc.*, 341 B.R. at 315-17; *In re Friendship Dairies*, 2014 WL 29081, at *15; *In re Nw. Timberline Enterprises, Inc.*, 348

---

[5] The language cited by Amazon from the *In re Walker* case expressly dealt with the means of implementation requirement, not feasibility. It is misleading for Amazon to suggest that it is part of the feasibility case law, although the court did also find that where there was no articulate mechanism for sale of property to fund the plan, the plan was not feasible. These issues are not applicable to the Debtors' Plan.

B.R. 412, 435), or that ignore critical contingencies (*see Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382).  The Plan here does not rely on any visionary schemes, or speculative projections to be feasible, because all required payments (except to Hillair) under the Plan are made before or at the Effective Date, or immediately thereafter, and are fully funded.  Supplemental Weiss Declaration ¶ 5.   The Plan does not provide for certain payments to other parties such as general unsecured creditors (who voted in favor of the Plan) in a certain amount, as further confirmed by the Committee, a Plan Proponent, in its joinder to the Debtors' confirmation brief.  [Docket No. 799].  *Id.*  Furthermore, the ability to make the Effective Date payments actually proposed by the Plan is clearly demonstrated, based on detailed projections prepared by the Debtors experienced professional CRO, not idle speculation.  *Id*.

        2.      <u>The Reorganized Debtors Have the Ability to Carry out the Terms of the Plan</u>

       The Plan clearly and easily meets the standard of feasibility in the Ninth Circuit.  The Debtors' projections through the expected December 31, 2020, Effective Date clearly show that the Debtors will be able to meet all obligations under the Plan.  Supplemental Weiss Declaration, ¶ 6.  A copy of these projections (the "2020 Projections") is attached as **Exhibit A (P_Ex_2)** to the Supplemental Weiss Declaration. Contrary to Amazon's baseless allegation in its objection, the Debtors, Hillair and the Committee have not relied upon, and the Plan is not contingent upon, 3 years of post-Effective Date revenue from Amazon.  *See* Supplemental Weiss Declaration, ¶ 7.   As of the Effective Date, the Debtors are projected to have available cash of $1,762,807, and accounts receivable primarily from Amazon of $3,780,000, for a total of cash and receivables of $5,542,807.  The total projected post-petition payables (excluding professional fees and payroll) are estimated to be $377,446 on the Effective Date, and outstanding payroll obligations are estimated to be $1,085,296, for a total in Effective Date obligations of $1,462,742.[6]  In other words, on a cash basis alone, the Debtors will have sufficient funds to pay all Effective Date obligations, without even taking into account the $3.8 million in Amazon receivables to be collected subsequent to the Effective Date.  Supplemental Weiss Declaration ¶ 8.

       Further, the Reorganized Debtors are unambiguously solvent at the Effective Date.  Total cash and receivables are, as described above, $5,542,807.  Subtracting the $1,462,742 in Effective Date

---

[6] Again, excluding professional fees, which are separately provided for, and addressed below.

obligations, this leaves working capital following the Effective Date of an estimated $4,080,065. Further, as of the Effective Date, the Hillair debt is reduced to $3 million.  In other words, while the Reorganized Debtors have 18 months to pay the Hillair debt, they would have the capital available to pay the debt in full as of the December 31, 2020 Effective Date, and still have $1.1 million remaining to fund expenses and operations going forward.  Supplemental Weiss Declaration ¶ 9.

The Debtors will have a substantial and realistic runway to secure new customers and grow the business again, post-Effective Date.  The business structure was designed to be highly scalable.  After the termination of the Amazon Contract, the Debtors have the ability to scale back, and scale up again, as needed, as a large percentage of the Debtors' costs are variable.  As provided in the Supplemental Weiss Declaration, the Debtors can reduce their cost structure and operate with fixed costs of only approximately $60,000 per month, after termination of the Amazon Contract.  *See* Supplemental Weiss Declaration, ¶ 10.  The Debtors' projections of their post-Effective Date operating expenses are attached to the Supplemental Weiss Declaration as **Exhibit B (P_Ex_3)**.  Notably, even if the restructured $3 million in Hillair debt was *paid in full immediately after the Effective Date* (which is not required under the Plan), the Debtors would still have sufficient funds after the Effective Date to operate for 18 months in "restart" mode ($1.1 million/$60,000).  Supplemental Weiss Declaration, ¶ 11;  *See also* Kaufman Declaration, ¶ 11.  Similarly, if the Hillair debt is not paid off in full shortly after the Effective Date, the Debtors will have $4.1 million in working capital, and monthly costs of approximately $160,000 (consisting of $60,000 of fixed monthly costs and $100,000 in monthly payments to Hillair). Supplemental Weiss Declaration, 11.  Therefore, the Reorganized Debtors will have ample ability to make payments to Hillair while building the business, before even accounting for new business revenue. *Id*.

Based on their strong operational and execution performance, which has improved during these Chapter 11 Cases based on Amazon's own performance metrics and ratings, the Debtors, Hillair and the Committee strongly believe that the Reorganized Debtors will be able to build business after they exit from bankruptcy.  *See* Supplemental Weiss Declaration, ¶ 12; Voskanian Declaration, ¶ 7.  This is particularly strengthened by the COVID-19 pandemic and the surging demand for delivery services. Voskanian Declaration, ¶ 7.  The Debtors have had discussions with various potential customers, some

of which have expressed interest in using the Debtors' services. *Id.* However, when the process has

reached the point of signing a contract, or those potential customers' legal and risk review of the Debtors

to move the process forward towards a contract, the ongoing discussion with many of those potential

customers has not continued (without such potential customers expressing the reasons why). *Id.* The

Debtors believe that their present status as bankrupt debtors is affecting their efforts to obtain new

business. *Id.* at ¶ 8. The Debtors also believe that when they exit bankruptcy as restructured, they will

be able to obtain new customers more readily. *Id.;* Supplemental Weiss Declaration, ¶ 12. This is in

accordance with the very purpose of chapter 11, as envisioned by Congress, that companies exit from

chapter 11 bankruptcy with a "fresh start." Notwithstanding these challenges, the Debtors have already

been able to secure the start of business for their new customer Lone Star Overnight, and have already

earned an increase in the number of routes provided to such customer. Voskanian Declaration, ¶ 8. In

addition, the Debtors are on the cusp of at least one other new customer relationship imminently. *Id.*

Furthermore, pursuant to the Plan, the Reorganized Debtors will be under the majority ownership

of Hillair, which is in the business of deploying capital and advising to grow its portfolio businesses, and

indeed financed the growth of the Debtors' business from a start up to over $45 million in annualized

revenue. *See* Kaufman Declaration, ¶¶6-7. Hillair will be incentivized under the Plan to maximize the

value of its 80% majority equity and debt positions in the Reorganized Debtors. Hillair understands the

Debtors' business and believes the Debtors have been hampered in their new business development

efforts by the fact that the Debtors are currently operating in chapter 11. Kaufman Declaration, ¶¶ 7, 9-

10. Hillair is confident that the Reorganized Debtors will be able to achieve new customer relationships

once the Plan is confirmed and a clear exit from chapter 11 is established. Kaufman Declaration, ¶ 10.

Hillair intends to retain its ownership in the Reorganized Debtors and operate the business for the

foreseeable future. Kaufman Declaration, ¶ 12. Following the Effective Date of the Plan, Hillair

intends to invest in the Reorganized Debtors as necessary to further the expansion of the Reorganized

Debtors so long as such investment meets Hillair's criteria for deploying capital. *Id.*

The potential upside to unsecured creditors under the plan is based on (i) a 20% equity stake in

the Reorganized Debtors, (ii) potential avoidance action recoveries, (iii) the remainder, if any, of the

Estate Cash Payment, and (iv) an interest in the Amazon litigation. All of these potential sources of

4846-4995-2705.5

recovery are uncertain, but this does not impair the feasibility of the Plan.  The Plan is designed to capture this upside, but not to rely on a speculative future to provide guaranteed returns.  As discussed above, the Debtors have concrete, realistic projections to support their ability to make all required payments under the Plan.  *See* Supplemental Weiss Declaration, ¶ 8-9.  After payment of post-petition payables, payroll, professional fees and priority claims, as of the Effective Date, the Reorganized Debtors will have no further required payments under the Plan, except to Hillair.  While the long-term future of the Reorganized Debtors may be speculative, their ability to make the payments required and perform under the Plan is not.  Supplemental Weiss Declaration, ¶ 13.

Here again, Amazon's arguments are based on a pretense.  The parties actually affected by any uncertainty in the future of the Reorganized Debtors are Hillair (as to payment of its reduced $3 million secured debt), and the unsecured creditors (as to the potential upside provided through the creditor trust and 20% equity stake).  Hillair is presumably entitled to take the risk of non-payment of its $3 million restructured debt, and certainly does not need Amazon to protect its interests.  As to the unsecured creditors, no creditor other than Amazon (to the extent Amazon can correctly be characterized as a creditor) objected to the Plan by the deadline, the Committee supports the Plan, and ***the unsecured creditor class voted unanimously in favor of the plan***.  Through the ballot process, the unsecured creditors were given the ability to choose whether to vote for the Plan despite the uncertainty of their recovery, and they unequivocally voted "yes."  Amazon now seeks to stand alone and overturn the clearly expressed will of the unsecured creditors, and actually seek the liquidation of the Debtors, for Amazon's own purposes that transparently have nothing to do with the actual feasibility of the Plan.  And again, Amazon failed to cash a ballot.

### B.    The Plan Provisions for Payment of Professional Fees are Feasible

Amazon's primary argument regarding feasibility is that the Estate Cash Payment of $1.5 million is insufficient to pay professional fees.  It cannot be ignored that this issue has no bearing on Amazon.  Regardless, this argument is both based on unfounded and clearly unreasonable assumptions and speculation, and plainly incorrect with regard to the alleged implications for feasibility.

Amazon's objection is based on its own back-of-the-envelope math, which is unsupported by any evidence or testimony.  Rather, Amazon simply speculates that the Debtors will continue to incur

REPLY IN SUPPORT OF
PLAN CONFIRMATION
Case No. 2:19-bk-14989-WB

professional fee obligations post-confirmation at the same rate as pre-confirmation.  Amazon provides

no valid or sensible basis for this wildly incorrect assumption, which is markedly contrary to the realities

of bankruptcy practice, something of which Amazon's bankruptcy counsel surely is well aware.  It is

also highly troubling that Amazon's objection is based on assumptions regarding fees that are largely

driven by Amazon's own conduct, as Amazon relentlessly drives up costs of litigation at every

opportunity while it seeks the liquidation of the Debtors which would harm all other creditors and

destroy creditor recoveries.

In reality, as Amazon acknowledges, once the Plan is confirmed, the only material post-

confirmation work to be done by Debtors' counsel is (i) Plan implementation, (ii) a final fee application,

and (iii) prosecution of the Amazon litigation, which is also being prosecuted by Hillair's counsel

(without cost to the Debtors' estate) pursuant to this Court's Order Granting Hillair Capital

Management, LLC's Motion to Intervene as Co-Plaintiff dated March 27, 2020 [Dkt. No. 57].  The

suggestion that the work of Debtors' counsel post-confirmation would amount to $170,000 per month is

clearly disingenuous, especially given the expectation that counsel for Hillair will shoulder most of the

load in the Amazon litigation.  For example, while charges may vary based upon the confirmation

hearing work in opposition to Amazon, the charges of the Debtors' counsel for May 2020 fees were only

$34,022.00 in fees and $400.45 in expenses.  *See* Supplemental Weiss Declaration, ¶ 14.   The

estimated charges for Debtors' counsel for June 2020 fees, in preparing for the centerpiece of the

remaining tasks left to address in these cases – the confirmation dispute with Amazon – were higher in

the estimated approximate amount of $112,794.00 in fees and $5,460.20 in expenses.  *Id.*  The reduced

budget amounts in the cash collateral budget reflect the realistic expectation that estate professional fees

will decrease substantially post-confirmation.  *Id*.

Currently, the Debtors estimate that total unpaid estate professional fees through June 2020 will

be approximately $1,655,466.26, before adjustment for the $1.475 million cap under the Estate Cash

Payment.  *See* Supplemental Weiss Declaration, ¶ 15, **Exhibit C (P_Ex_4) to the Supplemental Weiss

Declaration**.  To the extent that post-confirmation fees exceed the budgeted amounts under the cash

collateral budget, this total unpaid amount might increase slightly leading up to the Effective Date.  On

the other hand, if post-confirmation fees are less than budget, this amount would decrease leading up to

1  the Effective Date, because the excess amounts under the budget will reduce those fees.  These amounts

2  also do not take into account any reductions in the allowed amount of fees, and all fees are subject to

3  final fee approval.  In other words, if there are no reductions in allowance of fees, and post-confirmation

4  fees are not less than budgeted, total unpaid fees at the effective date might be slightly more than $1.6

5  million.  While there are no guaranties, the Plan Proponents estimate that the fees will be reduced after

6  the Effective Date, as indicated on **Exhibit D (P_Ex_5)** to the Weiss Declaration, resulting in a decrease

7  of the total unpaid estate professional amounts to approximately $1,567,966.26.  *Id.*  In any event, this

8  does not affect feasibility.

9  As Amazon points out, feasibility under Section 1129 requires that the Plan is "not likely to be

10  followed by … liquidation, or the need for further financial reorganization…."  11 U.S.C. § 1129(a)(11).

11  The mechanism for payment of professional fees in the Plan, out of operating capital through the cash

12  collateral budget and out of the Estate Cash Payment as to any amounts above budget, does not present a

13  challenge to feasibility.  Even if unpaid professional fees at the effective date exceed the available funds

14  of $1,475,000 from Estate Cash Payment,[7] this will not lead to liquidation or further reorganization.

15  The structure of the Plan provides for payment of professional fees solely from the cash

16  collateral budget amounts, plus the Estate Cash Payment funds.  To the extent the unpaid fees at the

17  Effective Date exceed these amounts, this operates as a cap.  Whether or not this might be grounds for

18  an objection from a professional under 1129(a)(9), the affected professionals have not objected to this

19  treatment, and Amazon would not have standing to raise this objection.  In any event, there are

20  absolutely no grounds for the suggestion that this treatment might lead to a liquidation, which would be

21  the only basis for the objection Amazon asserts as to feasibility under 1129(a)(11).

22  ///

23  ///

24  ///

25

26

27

28

---

[7] The provisions of the plan require that a minimum of $25,000 be transferred to the creditor trust, reducing the available amount from the $1,500,000 funded.

### III.  THE PROPOSED EFFECTIVE DATE IS REASONABLE

**A.**  **The "Effective Date" Cases Cited by Amazon are Easily Distinguished From The Case at Hand**

It makes sense that Amazon does not delve into the details of the case law it cites in its objection to the Plan, because such case law does not support its position.   For example, Amazon's reliance on the Middle District of Florida Bankruptcy Court's decision in *In re Yates Development, Inc.*, 258 B.R. 36 (Bankr. M.D. Fla. 2000) is misplaced.  In the *Yates* case, the Court determined that the *entire purpose* of the Debtors' chapter 11 plan was to try to extend an option to purchase real estate and avoid a $5,000 per day penalty to exercise the option.   The *Yates* debtor's bankruptcy case was filed the day before the option was set to expire.  The option contract provided that the purchase price would be increased by $5,000 per day, starting the day after filing.  The *Yates* debtor filed an adversary proceeding seeking an order that the $5,000 per day increase in purchase price was an unenforceable penalty, as well as an objection to the optioner's claim for the daily increase amount, without EVER having exercised the option.  The Bankruptcy Court ruled against the Debtor on both of these matters and the Debtor appealed.

Meanwhile, to make an end-run around the Bankruptcy Court's ruling, the Debtor filed a chapter 11 Plan that said it would *only* go into effect if the debtor obtained a favorable ruling on appeal against the $5,000 per day Penalty provision under in its contract with optioner.  In other words, the effective date in the *Yates* case was completely contingent on an absolute uncertainty, without any clarity as to the likelihood of the contingency occurring or the timeline for such contingency to pass.

The Court found that the delay and conditioning of the effective date upon a single result – the Debtor winning the appeal – was unreasonable, because it put all the risk of the delay on only the optioner.  The optioner was forced to sit and accrue a penalty claim without knowing that there would be money to pay or that it would ever receive the right it had under the option contract because the Debtor never even exercised the option.  It is important to note that the Bankruptcy Court in *Yates* did not say *per se* that an effective date taking place after a confirmation date was problematic.  The court found that the Plan was not proposed in good faith because it would not achieve a result consistent with the purposes of the Bankruptcy Code and therefore the Plan could not be confirmed.

The joint Plan in these chapter 11 cases, on the other hand, is completely different.  The Plan achieves numerous valid objectives at the core of the provisions and purposes of chapter 11 bankruptcy. These include, without limitation: (i) reorganizing the Debtors' business so that it may exit chapter 11 as a going concern; (ii) restructuring the Debtors' debt and obligations; (iii) assuming valuable contracts and rejecting burdensome contracts; (iv) allocating the value of the Debtors' estate to creditors in accordance with the Bankruptcy Code, including through the sharing of equity in the Reorganized Debtors; (v) distributing funds and trust interests to and for the benefit of creditors, including unsecured creditors, who otherwise would have no recovery; (vi) providing a vehicle for pursuit of avoidance actions and claims for the benefit of creditors; and (vii) resolving litigation and claims.

Moreover, unlike the plan in *Yates*, which was contingent on the Debtor winning an uncertain litigation, the joint Plan is not contingent on a wholly speculative and contingent event.  Rather, the Plan proposes to go effective on a date certain and the requirements to do so have been met.

In addition, in the *Yates* case, the Bankruptcy Court determined that the purpose of the *Yates* plan was to shift risk to the optioner.  In this case, Amazon is not taking risk and is not harmed.  Amazon's Effective Date allegations as to harm are an attempt to re-litigate the unsuccessful arguments Amazon pursued in connection with its Motion for Relief from the Stay to terminate the Amazon Contract and Amazon's subsequent  challenge to the Disclosure Statement.   Amazon already argued that it were harmed by continuing to do business with the Debtors, including because the Debtors are not a DSP "2.0," although Amazon now argues that the fact Scoobeez is not a DSP 2.0 is somehow costing it between $1,566,033.49 and $2,237,190.70 (over some period which Amazon does not describe – is it over one month?  One year?  A decade?).  In the context of Amazon's motion to lift the automatic stay, extensive depositions and document productions and other discovery demonstrated that Amazon is not harmed.  At the March 19, 2020 hearing, this Court denied Amazon's motion to lift the automatic stay and ruled that the Debtors were performing adequately if not better and Amazon is making money as a result of the Debtors' performance.   Nothing has changed.   The Debtors are performing under the contract.  Continuing from prior evidence submitted by the Debtors, the Debtors are performing well according to Amazon's own metrics and their performance has improved overall through the chapter 11 proceeding.  *See* Voskanian Declaration, ¶¶ 3, 6.  Moreover, Amazon already had argued in connection

1  with its denied lift stay motion that it was harmed because Scoobeez is not a DSP "2.0".   Amazon

2  should not be able to argue this, when the evidence indicates that Scoobeez had previously said they

3  would agree to be a DSP 2.0 if Amazon had demanded it and have said as much during these cases.  *See*

4  Voskanian Declaration, ¶ 4; *See also* **Exhibit D (P_Ex_6) to Moses Declaration, Exhibit 11 to**

5  **Deposition: Email from Shahan Ohanessian Regarding 2.0]**.   Amazon did not respond and

6  effectively rejected the Debtors' becoming a DSP 2.0.  *Id.*   In addition, as of late January, Amazon

7  continues to do business with other DSP 1.0s other than Scoobeez (at least 35 of them).   See Transcript

8  of Deposition of James Wilson **Exhibit C (P_Ex_7) to Moses Declaration**, p. 58.   Moreover, given the

9  COVID-19 pandemic, the demand for delivery services has increased.   Voskanian Declaration, ¶ 7.

10  Amazon has provided no evidence that it is harmed and this was already determined in connection with

11  the lift stay motion.

12       Similarly, the case *In re Wonder Corporation of America*, 70 B.R. 1018 (Bankr. D. Conn. 1987),

13  cited by Amazon does not support Amazon's position.  In that case, three banks objected to a debtor's

14  effective date, arguing that the effective date was a date that was not defined and that the effective date

15  should be a short period after confirmation.  The Court explained that in the absence of a definition or

16  meaning for the plan "effective date" in the Bankruptcy Code, the Bankruptcy Court has the power to

17  supply such meaning, so that the effective date is linked to the happening of a particular event and is not

18  later than reasonably necessary to accomplish a legitimate purpose.  *Wonder Corp.*, 70 B.R. at 1020-21.

19  The Bankruptcy Court further observed that "it is not uncommon for a plan to fix the effective date to a

20  time after the confirmation order is final." and that "in the real world of bankruptcy reorganization, it

21  might not be attainable" to have a certain effective date close to confirmation.  *Id*. at 1020-21.

22  Accordingly, the Court overruled the banks' objections to the effective date being an uncertain date after

23  the confirmation date.

24       The case *In re Potomac Iron Works*, 217 B.R. 170 (Bankr. D. Maryland 1997), cited by Amazon,

25  is also readily distinguished.   In that case, the Debtor sought confirmation of a plan that contained an

26  effective date more than 1 year after the date of confirmation.  The *Potomac Iron Works* debtor filed its

27  plan approximately 4 years after the filing of its bankruptcy case, and after it was no longer operating as

28  a going concern.  The IRS and State of Maryland taxing authorities, who had already waited for 4 years

REPLY IN SUPPORT OF
PLAN CONFIRMATION
Case No. 2:19-bk-14989-WB

4846-4995-2705.5

to receive their taxes and who were entitled to payment of post-petition administrative tax claims that were entitled to payment on the effective date, objected to the plan providing for an effective date more than 1 year past confirmation.  Importantly, the *Potomac Iron Works* plan provided for the transfer of the operating entity to a buyer in the meantime, before the payment of administrative taxes, solely as an "if come" in the event the buyer generated enough money to pay.

Under those extreme circumstances, the Bankruptcy Court found that the plan forced the objecting taxing authorities to take all the risk of the plan, after they were already waiting for 4 years for distribution, and effectively forced those administrative creditors to finance the case and sale with complete uncertainty even though the debtor might never have the cash to pay them and waiting over one year more under the circumstances was an unreasonable period.

Again, this case is entirely distinguishable. Amazon is a customer whose contract is being rejected.  They are not entitled to tax payments on the effective date like the post-petition taxing authorities' claims in the *Potomac Iron Works* case.  Moreover, the transfer of the debtors' business is not taking place before the effective date, and there is not a need for merely "hoped for" amounts to pay administrative claims after the sale, as the *Potomac Iron Works* plan proposed.  In addition, the Plan Proponents are not asking for over a year after confirmation.   The proposed Effective Date of December 31, 2020 is less than half that time and supported by reasonable and legitimate bases.

*In re Kruger*, 66 B.R. 463 (Bankr. S.D. Fla 1986), another case cited by Amazon, is also very different than this case.   In *Krueger*, the debtors' plan proposed a sale of a building *without any effective date* and thus in substance (like the *Potomac Iron Works* plan, discussed above) indefinitely delayed payment of taxes required to be paid on the effective date until the uncertain time of the sale and required taking authorities to subsidize the plan.  The plan in the *Krueger* case also did not provide for any possible recovery for unsecured creditors (like the joint plan in this case does).   Furthermore, the Bankruptcy Court critically determined that the plan was inequitable because it forced the debtor's mortgage to be subordinated to inferior obligations.  Under those very different circumstances, the Court determined that the plan was not filed in good faith and was unreasonable and actually dismissed the chapter 11 case because the Court determined that the case was taking advantage of the secured creditor.

The case *In re Jones*, 32 B.R. 951 (Bankr. D. Utah 1983), cited by Amazon, does not even contain a ruling regarding the reasonableness of the timing of a proposed effective date, but is cited for a soundbite of dicta.  Rather, the dispute in the case was about the propriety of the debtors' attempt to use a deferred effective date to enable payments to a class over time but still keep a class as unimpaired (and thus avoid having to use cramdown under section 1129(b) of the Bankruptcy Code).  The court ruled that the deferred effective date made the relevant classes impaired and thus enabled them to vote.  *In re Jones*, 32 B.R. 951, 960 (Bankr. D. Utah 1983).

B.    <u>The Proposed Effective Date of December 31, 2020 Is Supported by Reasonable ad Legitimate Bases and the Debtors' Reasonable Business Judgment</u>

As provided in the Debtors' memorandum in support of confirmation, the Debtors have cited numerous cases that demonstrate that (i) plan effective dates taking place months or even longer after confirmation are a common and ordinary part of modern chapter 11 practice, and (ii) this Court has the discretion to approve an effective date after the confirmation date where a reasonable and legitimate basis exists.  In this case, the Debtors, Hillair and the Committee have several reasonable and legitimate bases for the proposed Effective Date of December 31, 2020.  Supplemental Weiss Declaration, ¶ 16. The Debtors require time to do an appropriate, protective winddown of their business with Amazon, to avoid problems for themselves and Amazon.  *Id*.  If the Debtors' business is forced to a crashing halt, they will have ongoing obligations for costs, (e.g., payroll), without generating consistent revenue to support such costs.  This would critically harm the Debtors' cash and their ability to reorganize. Moreover, the Debtors also need time to plan and provide appropriate WARN Act notices in order to avoid WARN Act liability that would swamp the Debtors' estates.  *Id*.  This would destroy value, causing irreparable harm to all constituents.  Importantly, although, contrary to Amazon's baseless claims, the Debtors' projections do not include any (let alone 3 years of) post-Effective Date revenues from Amazon; the projections include receipts from continued business until they exit bankruptcy on the Effective Date of December 31, 2020.  *Id*.

With respect to the Debtors' and other Plan Proponents' decision to reject the Amazon Contract, as of the bankruptcy exit, there is no "gamesmanship" as complained of by Amazon.  The decision was made to do so recently in accordance with the Plan timetable because it became clear, after months of

continuing disputes and litigation, that there was no point to trying to negotiate rationally with Amazon regarding continuing to do business after they exit from bankruptcy on the Effective Date. Supplemental Weiss Declaration, ¶ 17. This is evidenced further now by Amazon's objection, in which Amazon, despite having no rational business reason or benefit, and notwithstanding that they give Debtors' high marks for performance, vengefully states it wants the Debtors' business liquidated in a chapter 7.

Finally, as discussed further in the reply to Amazon's objection to the motion to assume or reject contracts, even though (a) no other contract counterparty (or literally anyone else) objected, and (b) the Debtors, under section 365 of the Bankruptcy Code, should have the right to assume or reject contracts for so long as they are in bankruptcy, to address Amazon's objection to the executory contract assumption and rejection motion in this regard, the Debtors would agree in the confirmation order that they cannot change the designation of assumed or rejected contracts after the confirmation date. Notably, the standard for rejecting an executory contract, as the Debtors have proposed to do with respect to the Amazon Contract, is that such rejection constitutes a sound exercise of the Debtors' business judgment. *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007), *quoting Durkin v. Benedor Corp.* (*In re G.I. Indust., Inc.*), 204 F.3d 1276, 1282 (9th Cir. 2000); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *see also In re Chi-Feng Huang*, 23 B.R. 798, 800 (9th Cir. BAP 1982). The Debtors determined to reject the Amazon Contract in an exercise of their sound business judgment. *See* Supplemental Weiss Declaration, ¶ 17. Therefore, the bankruptcy court should approve the rejection of an executory contract under section 365(a) "unless it finds that the debtor-in-possession's conclusion that rejection would be 'advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice.'" *Pomona Valley Med. Grp., Inc.*, 476 F.3d at 670, *quoting Lubrizol Enter. v. Richmond Metal Finishers*, 756 F.2d at 1047. Amazon has not even attempted to, and cannot, demonstrate that the Debtors' rejection of the Amazon Contract as of the Effective Date is an unsound exercise of the Debtors' business judgment.

# IV.  THE PLAN IS CONFIRMABLE

### A.    The Plan Satisfies the "Best Interests of Creditors" Test Because Hillair Holds a Valid, Perfected Security Interest in the Debtors' Post-Petition Assets

Amazon alleges that the Plan cannot be confirmed because the "best interests of creditors" test under section 1129(a)(7) cannot be satisfied.  In support of this argument, Amazon mistakenly claims that Hillair "does not have a security interest in the Debtors' post-petition receipts."  Objection, p. 18, ln. 8-9.  At the outset of this case, the Debtors, the Committee and Hillair entered into that certain Second Stipulation for (1) Authorization to Use Cash Collateral on an Interim Basis; and (2) Appointment of a Chief Restructuring Officer [Docket No. 132] **Exhibit A (P_Ex_8) to the Moses Declaration** (the "Cash Collateral Stipulation"), which has continued through the present cash collateral stipulation **Exhibit B (P_Ex_9) to the Moses Declaration**.  Under the Cash Collateral Stipulation, the Debtors granted Hillair "a postpetition security interest and replacement lien . . . in all present and future, prepetition and postpetition assets of the Debtors . . . to the extent of any postpetition diminution in value of the Prepetition Collateral."  See Docket No. 132, Para. 5.1.  The Cash Collateral Stipulation further provides that "the liens and security interests in favor of Hillair with respect to the Collateral, both prepetition and postpetition, . . . are valid, enforceable, perfected, and unavoidable under the Bankruptcy Code, including Section 552 and any other applicable law."  See Docket No. 132, Para. 18.1

In its Plan confirmation objection, Amazon conveniently ignores the Cash Collateral Stipulation and Hillair's post-petition security interest in the Debtors' post-petition assets, which this Court has approved time and time again.  *See*, *e.g.*, Docket Nos. 135, 172, 328, 490, 662, and 796.  Instead, Amazon erroneously claims that section 552(b) cuts off Hillair's lien postpetition and relies on the Bankruptcy Appellate Panel's decisions in *Premier Golf* and *Skagit Pacific* for the generalized proposition that a lender's prepetition security interest does not extend post-petition assets of the debtor.  *Objection*, p. 18, ln. 20 to p. 19, ln. 6.  Those cases do not apply here, where Hillair was granted a lien in postpetition assets.   Neither of those cases involved any cash collateral stipulations or other agreements or orders whereby the debtor granted the secured lender a security interest in its postpetition assets and waived its rights under section 552.

4846-4995-2705.5

Indeed, in *Premier Golf Properties* the secured lender filed a motion seeking to prohibit the debtor from using cash collateral generated by the debtor's postpetition green fees and driving range fees. *See In re Premier Golf Props., LP*, 477 B.R. 767, 769-71 (B.A.P. 9th Cir. 2012). The Bankruptcy Court found that that the green fees and driving range fees did not constitute rent for purposes of section 552(b)(2) or proceeds from payment intangibles or licenses in which the lender held a security interest for purposes of section 552(b)(1). *Id.* at 773-77. Further, there was no consensual cash collateral stipulation in which the debtor granted the lender a security interest in postpetition collateral and waived its rights to challenge that interest under the Bankruptcy Code, including under section 552. *Id.* Thus, Amazon's reliance on Premier Golf is misplaced.

Similarly, *Skagit Pacific* did not involve a consensual cash collateral stipulation granting an interest in postpetition collateral. In that case, the BAP reversed the bankruptcy court's determination that the secured lender had a security interest in the proceeds of a postpetition account receivable. *See In re Skagit Pac. Corp.*, 316 B.R. 330, 336-37 (B.A.P. 9th Cir. 2004). The court found that the proceeds at issue were collected in satisfaction of an account receivable that arose after the filing of the debtor's bankruptcy case and which did not constitute proceeds under section 552(b). Id. at 337. Further, the court determined that the secured creditor could not adequately demonstrate that the proceeds were traceable to a prepetition asset. Id. at 337-40. Again, the *Skagit Pacific* case did not involve a consensual cash collateral stipulation in which the debtor granted the lender a security interest in postpetition collateral. Thus, Amazon's reliance on *Skagit Pacific* is also misplaced.

While the Debtors granted Hillair postpetition liens in all present and future postpetition assets "to the extent of any postpetition diminution in value of the Prepetition Collateral," Amazon has not raised in its objection to Plan confirmation that Hillair has not suffered any diminution of in the value of the Prepetition Collateral. Nor could it. As of the Petition Date, Scoobeez held cash and cash equivalents in the amount of $824,272.77 and accounts receivable in the amount of $4,189,487.78. See Schedule A/B at Docket No. 112, pp. 17-18. During the early months of the Debtors' cases this cash and the proceeds from the accounts receivable were used to support the Debtors' ongoing business operations pursuant to the Cash Collateral Stipulation. The consumption of that prepetition collateral resulted in a diminution in value of approximately $5 million. Further, Scoobeez scheduled a "Loan

REPLY IN SUPPORT OF
PLAN CONFIRMATION
Case No. 2:19-bk-14989-WB

4846-4995-2705.5

Receivable" due from its principal, Shahan Ohanessian, in the amount of $1,587,750.64 as of the Petition Date. *See* Schedule A/B at Docket No. 112, p. 25. That loan receivable is essentially worthless given the commencement of Shahan Ohanessian's bankruptcy case, which is also pending before this Court. *See In re Ohanessian*, Case No. 2:20-bk-12167-WB (Bankr. C.D. Cal.). With these three categories of collateral alone, the diminution in value of Hillair's prepetition collateral exceeds $6.5 million. Accordingly, Hillair claims are secured by significant value of the Debtors' postpetition assets. The projected liquidation value of the Debtors' assets set forth in Exhibit A (Liquidation Analysis) to the First Amended Disclosure Statement is $6.39 million, which has not been challenged by Amazon or any other creditor. Thus, Hillair would arguably be entitled to all proceeds resulting from a liquidation of the Debtors' assets thereby satisfying the "best interest of creditors" test under section 1129(a)(7).[8]

### B.    The Release Clauses will be Tailored

Amazon objects to the third party release provisions of the Plan. The Plan Proponents intended to provide for consensual releases in Article IX.B.c. of the Plan by allowing creditors who voted to opt out of the releases if they so chose.

However, to the extent creditors did not opt out of the releases, such releases are consensual and permissible under Ninth Circuit law. *In re Pacific Gas & Elec.*, 304 B.R. 395, 416-18, n. 26 (N.D. Cal. 2004); *see also In re Station Casinos, Inc.*, No. 09-52477, 2011 WL 6813607 (Bankr. D. Nev. June 08, 2011) ("A release of non-debtor third parties voluntarily and knowingly given by a creditor or equity holder in connection with a chapter 11 plan does not implicate the concerns regarding third party releases discussed by the Ninth Circuit Court of Appeals in Lowenschuss.").

To the extent the third party releases are not deemed consensual and are therefore impermissible under Ninth Circuit law, the Confirmation Order will provide that the releases will not apply as to or be enforced against those parties.

---

[8] In the event the Plan is not confirmed or does not go effective, the Debtors and Committee and Hillair reserve all rights with respect to cash collateral and lien arguments vis a vis Hillair's claims and liens and do not waive any arguments based upon the statements herein.

### C.    The Exculpation Clause Is Appropriate

The exculpation clause at Section XI.A. of the Plan complies with the binding precedent of this Circuit.  The Plan exculpation clause is very similar to the clause that was recently approved in *Blixseth v. Credit Suisse*, 2020 WL 3089263 (9th Cir. June 11, 2020). In *Blixseth*, the Ninth Circuit upheld an exculpation clause that was limited only to issues regarding the bankruptcy case and only covered the parties that had participated in it. Id. at *5.  It also included limitations on exculpation for matters determined to be the result of gross negligence or willful misconduct. Id. Here, the Plan's Exculpation Clause specifically addresses the Chapter 11 Cases, the Plan approval process and the facts related to it, and those parties who were involved in these matters, and does not release any debts. Furthermore, it carves out from the exculpation any liability if there is a judicial determination of gross negligence or willful misconduct, as is required by Blixseth.  Therefore it should be approved.

### D.    The Injunction and Discharge Provisions are Standard and Appropriate

The Plan's injunction in section XI.F. is proper and should be approved with the Plan, and Amazon's objections are largely inapplicable.  Injunctions feature in nearly every chapter 11 bankruptcy plan in this district and others.  *See*, *e.g.*, *In re Pacific Gas & Elec.*, Case No. 19-30088, Bankr. N.D. Cal. June 20, 2020 (Confirmation Order, Dkt. No. 8053, ¶52); *In re QF Liquidation, Inc.*, Case No. 16-11202, Bankr. C.D. Cal.  July 29, 2019 (Confirmation Order, Dkt. No. 683, ¶18). To the extent that Amazon is concerned that its appeal of certain decisions in the Chapter 11 Cases would be affected, the Plan Proponents did not intend that result and will prepare language for the confirmation order that makes clear that the appeal is not affected by such injunction.

Without any evidence, Amazon also objects to the Injunction as it relates to parties with assumed contracts and some sort of hypothetical potential indemnity or contribution claims under such contracts.   This objection does not withstand the barest scrutiny.   First, Amazon's contract is not one of the contracts the Debtors are assuming.  Amazon has no standing to bring such an objection.   Moreover, to the extent a contract counterparty should have objected to assumption based on some hypothetical indemnity or contribution "cure" as alleged by Amazon, they had an opportunity to do so and did not. None of the counterparties to a contract the Debtors proposed to assume filed any objection to the assumption of their contracts or cure or any provisions of the Plan.  A core purpose of bankruptcy is

4846-4995-2705.5

1  clarity and resolution of such claims.   Amazon cannot turn this principle on its head based on

2  hypotheticals that are not even known to exist nor raised by parties with standing.

3              Furthermore, contrary to Amazon's allegations, the exculpation clause contains the

4  required limitation on liability for acts that arise from gross negligence or willful misconduct and is

5  proper under the binding precedent of this Circuit. The Injunction states that:

> To the extent of the releases and exculpation granted in this Plan, holders of Claims or
> Equity Interests as applicable shall be permanently enjoined from commencing or
> continuing in any manner against the Estate Released Parties, the Hillair Released Parties
> and the Exculpated Parties and their assets and properties, as the case may be, any suit,
> action or other proceeding, on account of or respecting any claim, demand, liability,
> obligation, debt, right, cause of action, interest or remedy released or exculpated pursuant
> to this Article.

13  Therefore, because claims for gross negligence and willful misconduct are not exculpated under

14  the Plan, the Injunction cannot apply to them, and parties may bring such claims.

15              Similarly, the Discharge provided for in Article XI.G is a common recitation of the

16  discharge to which the Debtors are entitled under the Bankruptcy Code. *See*, *e.g.*, *In re Pacific Gas &*

17  *Elec.*, Case No. 19-30088, Bankr. N.D. Cal. June 20, 2020 (Confirmation Order, Dkt. No. 8053, ¶49).

18  There is no reason to remove such discharge. The Debtors are entitled to a discharge.   As it is common

19  for chapter 11 plans to contain an effective date that is well after the confirmation date, contrary to the

20  entire purpose of bankruptcy reorganization, Amazon's position would expose debtors and reorganized

21  debtors, or even liquidating estates, in bankruptcy cases to a novel "window" for claims to survive

22  between every confirmation date and every effective date.  This result is nonsensical and would damage

23  chapter 11 practice.  If a party has a claim that arises after a confirmation date and before an effective

24  date, it can bring it before the Court for an appropriate determination of how it should be treated.  There

25  is no reason to create a risk to the Debtors' reorganization as requested by Amazon where no such claim

26  exists.

27

28

4846-4995-2705.5

### E. **Amazon's Miscellaneous Objections**

Amazon's various "kitchen sink" objections to "Miscellanous Provisions" of the Plan are no obstacle to confirmation.

With respect to the "Modification of the Plan" in section XII.D.6 of the Plan, to address Amazon's objection, the Plan Proponents would reasonably clarify in the confirmation order that Plan modifications are subject to the requirements of section 1127 to the extent such section applies to such modifications.

Amazon also objects to the terms of sections VII.K and VII. M. of the Plan, which are intended for ease and efficient use of estate and Court resources to allow the Plan Proponents to execute documents and take actions necessary or appropriate to effectuate the Plan, and to provide a clear expedited opportunity for the Court to address interference with the Plan by creditors or equity security holders.  The Debtors believe such provisions should be approved.  These provisions do not stop any party from seeking the relief of this Court if they believe the actions taken or requested by the Plan Proponents are not appropriate.

Without waiving any rights as to unrelated matters such as mootness, the Plan Proponents did not intend through section XII.I of the Plan regarding "Existing Orders" to affect Amazon's appeal rights and would clarify this in the confirmation order.

Finally, through the boilerplate "Retention of Jurisdiction" provision at Article X of the Plan, the Plan Proponents intended to establish clarity that this Bankruptcy Court *retains* appropriate bankruptcy jurisdiction, rather than effect any expansion of such jurisdiction.   The Plan Proponents can reasonably clarify in the confirmation order that this does not affect Amazon's right to argue in Court pleadings that the Bankruptcy Court does not have jurisdiction over a given matter, such as in respect of the Motion to Withdraw the Reference that Amazon states it intends to file with respect to the Debtors' and Hillair's claims against Amazon for violation of the automatic stay and certain other matters.

///

///

///

REPLY IN SUPPORT OF
PLAN CONFIRMATION
Case No. 2:19-bk-14989-WB

4846-4995-2705.5

## V.  CONCLUSION

As set forth above and in the Supplemental Weiss Declaration, the Initial Weiss Declaration, the Voskanian Declaration, the Kaufman Declaration, the Debtors' memorandum in support of confirmation of the Plan [Dkt. No. 792], and the Committee's joinder in the Debtors' memorandum [Dkt. No. 799], and in the Plan and Disclosure Statement, the Plan is feasible and confirmable.  The Plan constitutes the best and potentially only means of establishing a recovery for creditors other than Hillair. Accordingly, creditors overwhelmingly voted in favor of the Plan, and no party from Amazon has objected to Plan confirmation.   The Debtors, Hillair and the Official Committee of Unsecured Creditors respectfully request that the Court overrule the Amazon Objection and enter an order confirming the Plan.

DATED:  July 2, 2020

**FOLEY & LARDNER LLP**

*/s/ John Simon*
John Simon

Ashley M. McDow (245114)
John A. Simon (admitted Pro Hac Vice)
Shane J. Moses (250533)

Attorneys for Debtors SCOOBEEZ, SCOOBEEZ GLOBAL, INC., and SCOOBUR, LLC

**BUCHALTER, A PROFSSIONAL CORPORATION**

*/s/ Anthony Napolitano*
Anthony Napolitano

Attorneys for HILLAIR CAPITAL MANAGEMENT LLC AND HILLAIR CAPITAL ADVISORS LLC

**LEVINE, NEALE, BENDER, YOO & BRILL L.L.P.**

*/s/ David Neales*
David Neales

Attorneys for THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

REPLY IN SUPPORT OF
PLAN CONFIRMATION
Case No. 2:19-bk-14989-WB

-25-

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Foley & Lardner LLP, 555 South Flower Street, Suite 3300, Los Angeles, CA 90072-2411

**A TRUE AND CORRECT COPY OF THE FOREGOING DOCUMENT ENTITLED (*SPECIFY*): JOINT REPLY OF THE DEBTORS, HILLAIR CAPITAL MANAGEMENT, LLC, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS PLAN PROPONENTS, TO AMAZON LOGISTICS, INC.'S OBJECTIONS TO CONFIRMATION WILL BE SERVED OR WAS SERVED (A) ON THE JUDGE IN CHAMBERS IN THE FORM AND MANNER REQUIRED BY LBR 5005-2(D); AND (B) IN THE MANNER STATED BELOW:**

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 7/2/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 7/2/20, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Honorable Julia W. Brand
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| [7/2/2020] | Dianne Nichols | /s/ Dianne Nichols |
|------------|----------------|--------------------|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
4846-4995-2705.5

**F 9013-3.1.PROOF.SERVICE**

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

John-Patrick M Fritz    jpf@lnbyb.com, JPF.LNBYB@ecf.inforuptcy.com
Vivian Ho    BKClaimConfirmation@ftb.ca.gov
Alvin Mar    alvin.mar@usdoj.gov
Ashley M McDow    amcdow@foley.com,
sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
Stacey A Miller    smiller@tharpe-howell.com
Kevin H Morse    kmorse@clarkhill.com, blambert@clarkhill.com
Shane J Moses    smoses@foley.com
Akop J Nalbandyan    jnalbandyan@LNtriallawyers.com, cbautista@LNtriallawyers.com
Rejoy Nalkara    rejoy.nalkara@americaninfosource.com
Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
David L. Neale    dln@lnbyb.com
Aram Ordubegian    ordubegian.aram@arentfox.com
Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
Gregory M Salvato    gsalvato@salvatolawoffices.com,
calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Eric K Yaeckel    yaeckel@sullivanlawgroupapc.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**